# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
### COUNSELLORS AT LAW

CHARLES C. CARELLA
BRENDAN T. BYRNE
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES D. CECCHI (1933-1995)
JOHN G. GILFILLAN III (1936-2008)
ELLIOT M. OLSTEIN (1939-2014)

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
CARL R. WOODWARD, III
MELISSA E. FLAX
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
LINDSEY H. TAYLOR
CAROLINE F. BARTLETT

**5 BECKER FARM ROAD**
**ROSELAND, N.J. 07068-1739**
**PHONE (973) 994-1700**
**FAX (973) 994-1744**
www.carellabyrne.com

PETER G. STEWART
FRANCIS C. HAND
AVRAM S. EULE
CHRISTOPHER H. WESTRICK*
JAMES A. O'BRIEN III**

OF COUNSEL

*CERTIFIED BY THE SUPREME COURT OF
  NEW JERSEY AS A CIVIL TRIAL ATTORNEY
**MEMBER NY AND MA BARS ONLY

RAYMOND J. LILLIE
WILLIAM SQUIRE
STEPHEN R. DANEK
DONALD A. ECKLUND
MEGAN A. NATALE
ZACHARY S. BOWER+
MICHAEL CROSS
CHRISTOPHER J. BUGGY
JOHN V. KELLY III
MICHAEL A. INNES

+MEMBER FL BAR ONLY

September 16, 2019

<u>VIA ECF</u>

Hon. Madeline Cox Arleo
U.S. District Judge
Martin Luther King Federal Building
50 Walnut Street
Newark, New Jersey 07102

    Re: *In re American Medical Collection Agency, Inc.*
       *Customer Data Security Breach Litigation*
       <u>Civil Action No. 19-md-2904(MCA)(MAH)</u>

Dear Judge Arleo:

  I am Interim Lead Counsel on behalf of plaintiffs' in this important Multidistrict Litigation (the "MDL"). At present, the MDL is comprised of thirty-two overlapping class actions concerning the same alleged data security breach that compromised patient data provided by various medical diagnostic testing companies to the American Medical Collection Agency ("AMCA") for billing and collection purposes. There are approximately 100 qualified law firms that have filed these related cases.

  Since the creation of the MDL, and in accordance with Your Honor's Initial Case Management Order dated August 22, 2019 ("CMO-1") I have worked diligently with other counsel to both understand the parameters of the MDL, and to develop a coherent leadership proposal that will prosecute this MDL efficiently and effectively. While I am confident that the proposed structure achieves that objective, it does not have universal support, nor does it include every interested and capable lawyer that has filed a case now part of this MDL. That is unfortunate but inevitable. Any structure that included all interested and competent counsel would be far too unwieldy and would do a disservice to the clients, absent class members, and the Court. It just would not work. As the Court is aware, I have invited all counsel not included in my proposal to submit separate applications to Your Honor if they so desire. I anticipate that Your Honor will receive a number of proposals. What then is the proposal I can make?

  This MDL can logically be thought of as three related of cases - those cases involving the data-breach at Quest (Track One); cases involving the data breach at LabCorp. (Track Two and those cases involving data breaches at various other smaller laboratories (Track Three). My proposal incorporates this construct by suggesting the appointment of co-lead counsel (and a small

steering committee) for each track, under the overall leadership of a single lead counsel for the MDL. The proposal contemplates the appointment of a total of 22 lawyers, each working collectively and within each respective track. While this structure may seem large, I believe that it strikes the appropriate balance between inclusiveness, efficiency and the need to litigate these important and complex cases aggressively. The nature of the claims at issue also counsels in favor of the proposed structure.

### A. The Three Tracks We Propose

Interim Lead Counsel believes that a leadership structure comprised of separate leadership with responsibility for separate laboratories is most efficient because all plaintiffs and class members maintained direct relationships only with the specific laboratories to whom they entrusted their personal information. Those laboratories are primarily liable for whatever damages have accrued. The facts underlying that liability may be different for every laboratory.

In particular, every laboratory initially engaged AMCA at a different time, and based on differing internal considerations. Most laboratories maintained a direct relationship with AMCA, but Quest did not. Every laboratory made different representations to their customers regarding the security of their personal information. Every laboratory maintained different formal policies as to data security, and every laboratory enforced their policies to differing degrees. Every laboratory dealt with AMCA on differing terms, and maintained differing degrees of communication with, and oversight (if any) over, AMCA over the course of their respective relationships. The facts common to all class members, *i.e.*, those involving bankrupt defendant AMCA, are a small portion of the whole.

Even in cases in which the portion of facts common to all plaintiffs exceeded what it is in this case, courts have authorized the designation of separate class counsel, under the leadership of one lead counsel, to prosecute the claims of separate groups of plaintiffs. The court in *In re Microcrystalline Cellulose Antitrust Litig.*, No. 2:01-cv-00111 (E.D. Pa.), certified a class comprised of three subclasses. Two firms served as lead counsel for the class as a whole, as well as for one of the subclasses. Two other firms respectively served as lead counsel for each of the other two subclasses. *Id.*, Motion for Approval, Jan. 14, 2004 (ECF 37), at 4 (identifying class and subclass lead counsel). More recently, in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, early in the litigation the court approved the appointment of separate counsel for each of two subclasses under the leadership of co-lead counsel, after rejecting certain class members' claims that conflicts required the establishment of entirely separate classes. *See* No. 13-cv-7789 (S.D.N.Y.), ECF 655 (filed Aug. 31, 2016).[1]

---

[1] *See also In re Dynamic Random Access Memory Antitrust Litig.*, 2013 WL 12333442, at *40 (N.D. Cal. Jan. 8, 2013) (assigning allocation counsel for differently situated class members); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 2451960, *5 (S.D. Fla. July 8, 2005) (approving settlement where "the Attorneys General, by participating in the settlement and allocation negotiations, ably advocated on behalf of the consumer class members").

Hon. Madeline Cox Arleo
September 16, 2019
Page 3

### B. The Specific Proposed Structure

I have attached as Exhibit A to this letter a chart which illustrates the proposed structure for the MDL. In summary, the proposed structure seeks the appointment of co-lead counsel for each separate track, with a dedicated steering committee working within each track. Each track would work under the overall direction of Lead Counsel appointed by Your Honor in CMO-1. The candidates I propose have a diverse background in class-action litigation including many of whom have specific expertise in data-breach cases. Indeed, some of the candidates are pioneers in these cases. All of the candidates are, in my judgment, eminently qualified and have the proven ability to work cohesively with other lawyers in large, complex litigations. The resumes of each of the proposed candidates are annexed as Exhibits B-V.

#### 1. Quest Data Breach Track

The data breach at Quest is the largest of the subject laboratories, comprising over 12 million individuals. Although my objective was to propose two co-lead counsel for each track, I was able to reach consensus on my proposal by incorporating three co-lead counsel for the Quest track which is, again, the largest of the three proposed tracks. Proposed co-lead counsel are Christopher Seeger (Resume at Exhibit B), Jason Lichtman (Resume at Exhibit C) and Norm Siegel (Resume at Exhibit D). These attorneys are all nationally recognized, have vast complex litigation experience and have significant data breach experience. The proposed steering committee for the Quest track consists of Michelle Drake, Jason Dennett, Tim Blood and Todd Garber. (Resumes at Exhibits E, F, G, & H, respectively)

#### 2. LabCorp Data Breach Track

The data breach at LabCorp. Is the second largest of the subject data breaches, comprising approximately 7.7 million individuals. Proposed co-lead counsel are Linda Nussbaum (Resume at Exhibit I) and Stuart Davidson (Resume at Exhibit J). The proposed steering committee for the LabCorp track consists of Tina Wolfson, Jean Martin, and Marc Godino. (Resumes at Exhibits K, L, & M, respectively)

#### 3. The Additional Laboratory Track

There are 19 additional laboratories which experienced data breaches. These laboratories are scattered across the country and it will take a significant organized effort to investigate and litigate these cases. Proposed co-lead counsel for this track are Amy Keller and Joe DePalma. (Resumes at Exhibits N & O, respectively) The proposed steering committee consists Jamie Pizzirusso, Larry King, Douglas McNamara and Joe Gugliemo. (Resumes at Exhibits P, Q, R, & S, respectively)

Hon. Madeline Cox Arleo
September 16, 2019
Page 4

        **4.**       **Bankruptcy Liaison**

As the Court is aware, AMCA has filed for protection under the bankruptcy code and that case is pending in the Southern District of New York. A significant amount of work is necessary to obtain critical discovery in that proceeding. As such, I believe it important to have lawyers with bankruptcy experience lead our efforts in the bankruptcy court. We are proposing Scott Bursor as Lead Bankruptcy Liaison, (Resume at Ex. T) with a steering committee consisting of Todd Werts and Gerard Stranch, each of whom have significant bankruptcy experience. (Resumes at Exhibits U & V, respectively)

        **C.**       **The Proposed Structure Satisfies Rule 23**

In complex cases such as this one, it is well-established that the Court may appoint counsel to coordinate the prosecution of the litigation. Rule 23 specifically provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." The *Manual for Complex Litigation (Fourth)* elaborates:

> If . . . there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. *In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities*, such as making and responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement.

Manual for Complex Litigation, Fourth § 21.11 (emphasis added).

"Although neither the federal rules nor the Advisory Committee Notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)([A]), which govern the appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification." *In re Insulin Pricing Litigation,* 2017 WL 4122437, at *1 (D.N.J. Sept. 18, 2017); *Waudby v. Verizon Wireless Services, Inc.*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

These factors are: (i) [t]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *Insulin Pricing, id.*; *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *5 (D.N.J. Oct. 5, 2009) (citing Fed. R. Civ. P. 23(g)(1)(A)). The Court must decide if the candidate for class counsel is adequate under Rule 23(g)(1) and (4), and if there is more than one candidate, appoint the one who is best able to represent the interests of the class. Fed. R. Civ. P. 23(g)(2). In addition to those factors, "the Court may also consider

Hon. Madeline Cox Arleo
September 16, 2019
Page 5

any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class and may, if it deems it necessary, direct the proposed class counsel to provide information on any subject pertinent to the appointment." *Garvaccio v. St. Joseph's Hospital and Medical Center and Subsidiaries*, 2017 WL 1196458, at *2 (D.N.J. Mar. 13, 2017); *see also* Third Circuit Task Force on Selection of Class Counsel, 208 F.R.D. 340, 419-20 (3d Cir. 2002) (listing other relevant considerations to appointment of lead counsel).

These factors strongly support the proposed structure. There are numerous reasons supporting this conclusion:

### 1) Proposed Lead Counsel Filed Detailed And Comprehensive Complaints

With respect to the work that counsel has done in identifying or investigating potential claims, proposed Interim Class Counsel have filed a number of highly detailed and comprehensive complaints that reflect the care and commitment these Plaintiffs and their counsel have devoted, and will continue to devote, to this litigation. Of equal importance, the proposed group of attorneys has already demonstrated a commitment to working together in a collegial, efficient and professional manner to further the interests of their clients. This voluntary coordination demonstrates that this group is well suited to lead this important national MDL.

### 2) Proposed Counsel Are Highly Experienced In Class Action and Complex Litigation

The cases in which Proposed Counsel have served individually and collectively as lead or co-lead counsel in similarly large and complex consumer class actions are legion and detailed in each proposed counsel's resume.

### 3) Proposed Lead Counsel Will Commit The Necessary Resources To Vigorously Prosecute This Action

In addition to their ample experience and qualifications, the firms at which proposed Interim Class Counsel work are well capitalized, and are fully capable and prepared to staff and finance this action. Indeed, attorneys at all of the firms have already devoted significant time investigating the bases for the claims asserted in this action and have devoted significant resources to researching, investigating, and drafting detailed pleadings.

Interim Class Counsel's firms also regularly advance the costs of class actions and are prepared to do so in this case.

The proposed structure admittedly trends toward the large side. There are, however, numerous recent precedents where similar structures were adopted and worked efficiently to prosecute similarly complex cases including *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672; *In re Liquid Aluminum Sulfate*

*Antitrust Litigation*, MDL No. 2687; and *In re National Prescription Opiate Litigation*, MDL 2804.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

/s/ James E. Cecchi

JAMES E. CECCHI

cc:     All Counsel (via ECF)