

111 W. Washington Street
Suite 1240
Chicago, IL 60602
Phone: 312.750.1265
www.carlsonlynch.com

September 16, 2019

**FILED ELECTRONICALLY**

Hon. Madeline Cox Arleo
United States District Judge
Martin Luther King Jr. Federal Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

        **Re:** *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*,
        Civil Action No. 19-md-2904 (MCA) (MAH)

Dear Judge Arleo:

    Please accept this letter in support of my application pursuant to Your Honor's Case Management Order (ECF No. 9) and Federal Rule of Civil Procedure 23(g) for an individual appointment to a leadership position on behalf of the consumer plaintiffs in this matter. Specifically, I am seeking to be appointed as an additional member to the leadership structure being proposed by interim lead counsel, James Cecchi, and I am asking to serve on any of the steering committees being proposed by Mr. Cechhi. I have twenty-nine clients who have claims in this case, mostly against defendant Quest, and feel that I could be most helpful as a member of the steering committee for the litigation track involving Quest.

    By way of background, I am a 44 year-old female graduate of Seton Hall University School of Law and have devoted my career to pursuing class action lawsuits and multi-district litigation ("MDL") on behalf of consumers, investors and businesses, including data breach and privacy litigation. I am admitted to the New Jersey bar, have practiced extensively in this District and nationally, and am well versed in the rules of this Court. Apart from my legal experience, my inclusion on one of the leadership committees will reflect diversity of age and gender, as well as experience, skills, and background, consistent with the guidance and recommendation of the Duke Law Center for Judicial Studies *Standards and Best Practices for Large and Mass-Tort MDLs* (the "Duke Report").[1]

---

[1] Duke Law School, Center for Judicial Studies, MDL Standards and Best Practices, Duke Law Center for Judicial Studies, at 44 (Sept. 11, 2014), available at https://judicialstudies.duke.edu/sites/default/files/centers/judicialstudies/MDL_Standards_and_Best_Practices_2014-REVISED.pdf (last accessed September 12, 2019).

As detailed in my *curriculum vitae,* attached hereto as **Exhibit A,** I began my career in New Jersey in 2000 after graduating from law school. Prior to becoming the managing partner of Carlson Lynch's Chicago office in 2019, I was a member of Lite DePalma Greenberg, LLC, and worked both in Newark and in Chicago. Over the past eighteen years, I have gained direct experience leading MDL's and have served in leadership roles in major data breach litigation. In total, I have worked on over *one hundred class actions* in various capacities and have recovered more than $1 billion for my clients.

Because I have been involved in so many cases, I currently maintain a vast network of co-counsel relationships with some of the most prominent class action practitioners in the field. I am well-known by many (if not all) of the other leadership applicants in this case (including the members of Mr. Cecchi's proposed leadership team) and will be able to work seamlessly with these co-counsel, just as I have done so many times in the past. In fact, I have specifically been recognized for my professionalism in dealing with adversaries. In one complex MDL where I recently served as Co-Lead Counsel, Judge Amy J. St. Eve, now a sitting Judge on the United States Court of Appeals for the Seventh Circuit, referred to the lead attorneys as a "model I wish all lawyers would follow." My opposing counsel in that matter was Lori Lightfoot, then a partner at Mayer Brown LLP and now the Mayor of the City of Chicago.

In terms of data breach experience, I was personally appointed by the Honorable John A. Ross of the Eastern District of Missouri to Plaintiffs' Steering Committee in *In re Ashley Madison Customer Data Security Breach Litigation*, No. 4:15-md-2669 (E.D. Mo.), the MDL involving the highly publicized breach at Ashley Madison. I was extensively involved in that litigation and participated in plaintiff vetting, discovery coordination, and analysis relating to complex arbitration issues. The case ultimately settled for $11.2 million in 2017, an excellent result for the class. Also, I served as one of two Co-Lead counsel in *Storm et al. v. Paytime, Inc.*, No. 1:14-cv-1138 (M.D. Pa.), which settled and received final approval from the Honorable John E. Jones III of the Middle District of Pennsylvania in November of 2018 after an appeal to the Third Circuit. I was also Court-appointed Co-Lead counsel in *Lewert v. PF Chang's China Bistro, Inc.*, No. 1:14-cv-04787 (N.D. Ill.), representing P.F. Chang's customers who had their personal financial information compromised. That case was one of the first data breach cases on record, and I was responsible for all of the appellate briefing in ultimately obtaining a landmark ruling in the Seventh Circuit on Article III standing, hailed by Law360 as one of the "top privacy cases" of 2016. These successes are not exhaustive, but are meant to be illustrative for the Court.

My firm, Carlson Lynch, has been one of the select few at the forefront of almost every major data breach litigation on record. Our data breach cases have generated seminal legal authority in both trial and appellate courts. As is detailed on the firm resume attached as **Exhibit B**, we are co-lead counsel for financial institution plaintiffs in the landmark Equifax data breach, *In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL 2800 (N.D. Ga.), believed by many to be the largest and most damaging data breach to date. Carlson Lynch's appointment in *Equifax* follows the firm's successful leadership in *In re Home Depot Customer Data Security Breach*

*Litigation*, MDL 2583 (N.D. Ga.) (co-lead counsel for financial institution plaintiffs) and in *In re Target Corporation Customer Data Security Breach Litigation*, MDL 2522 (D. Minn.) (counsel for financial institution plaintiffs and executive committee member for the overall MDL). We also currently serve on the executive committee for consumers in *In Re: Marriott International, Inc.*, No. 8:19-md-2879-PWG and as co-lead counsel *First Choice Federal Credit Union v. The Wendy's Company et al*, 2:16-cv-0506, (W.D. Pa.), a case brought by financial institutions against the fast food chain for a 2015 data breach.

In short, my firm and I have extensive experience litigating many, if not all, of the major data breach cases of the past decade. But beyond this, allowing me to serve on one of Mr. Cecchi's proposed committees would promote much-needed diversity on the leadership team. As this Court is undoubtedly aware, MDL counsel structures historically reflect a dearth of women, with the majority of these positions being awarded to white, male attorneys.[2] But complex cases are a microcosm of a diverse nation and applying well-supported business principles to MDLs results in a natural parallel: diversity breads courtroom success.[3] Diverse groups tend to outperform nondiverse groups.[4] As the American Association for Justice[5], the Duke Report, and the National Association of Women Judges[6], among others, advocate, this Court can, and should, insist upon sufficiently diverse leadership to represent such a diverse group of plaintiffs.[7]

I am sure that the Court will evaluate the leadership applications of several well-qualified women. But simply appointing one or two of us may not be enough to truly promote diversity. As a woman and experienced class action litigator, I am uniquely positioned to bolster the leadership team's gender and age diversity and consequently, its effectiveness.

I know so because I am an advocate for diversity. In 2018, I was honored to be selected by the judges of the Northern District of Illinois and Chicago Bar Association to serve as a panelist at "May it Please the Court: Symposium on Women Lawyers in the Courtroom," a prestigious

---

[2] *See* Alyson Oliver and Reed Eriksson, *Why Leadership in Diversity in Litigation is Crucial*, March 2014 at 41-42, *available at* https://judicialstudies.duke.edu/sites/default/files/centers/judicialstudies/panel_2-why_leadership_diversity_is_crucial_oliver_and_reed_march.pdf (last accessed September 12, 2019)

[3] *Id*. at 42.

[4] *Id*. at 40.

[5] American Association for Justice, *Resolution on Diversity in Trial Court Appointments*, (July 25, 2016).

[6] National Association of Women Judges, *Resolution on Diversity in Trial Court Appointments*, (Oct. 8, 2016) *available at* https://www.nawj.org/uploads/files/resolutions/resolution-diversity_in_trial_court_appointments_2016.pdf (last accessed September 12, 2019).

[7] *See* Kellie Lerner and Chelsea Walcker, *Judges Can Demand Diversity in Rule 23(g) Applications*, August 15, 2018, *available at* https://www.robinskaplan.com/~/media/pdfs/judges%20can%20demand%20diversity%20in%20rule%2023g%20applications.pdf?la=en (last accessed September 12, 2019).

event which drew over five hundred attendees.  Many of the Symposium's discussions centered around inclusion and ensuring fair representation of women and minority groups in our profession.  Apart from simply speaking on diversity goals, however, I currently serve on the Advisory Board of Loyola University School of Law's Institute for Consumer Antitrust Studies and regularly mentor students and young lawyers as they begin their legal careers.  A position on the Committee would permit me to continue to be a role model and positive influence on the future of our industry.

My firm discussed with Mr. Cecchi the possibility of my being included in his proposed leadership group, but as Mr. Cecchi has correctly indicated to this Court, there are many qualified counsel vying for a leadership role and Mr. Cecchi had to limit his selections.  I am respectfully asking this Court to expand Mr. Cecchi's group to include me, for all of the reasons set forth herein.  I am confident that my inclusion is worth adding one more position to the leadership group in this case and respectfully request that the Court grant my application.

Respectfully submitted,

Katrina Carroll

cc: All Counsel of Record (via ECF)