### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>*This Document Relates To All Actions* | Civil Action No. 19-md-2904 (MCA)(MAH) (MDL 2904)<br><br>**ORDER FOR PRODUCTION OF DOCUMENTS AND <u>ELECTRONICALLY STORED INFORMATION</u>** |

THIS MATTER having been opened to the Court by Interim Lead Counsel for Plaintiffs,

in the presence of counsel for Defendants, and the Court having read the parties' papers, and

heard argument of counsel, and good cause appearing, *and the Court having considered the parties' 5/14/2020 Joint Status Report and their respective positions therein concerning whether search term hit reports must include unique identification numbers for each document with a hit (D.E.197); and for good cause shown;*

IT IS THIS ___26___ day of ~~May~~ *October*, 2020

ORDERED as follows:

## I.     GENERAL GUIDELINES

1.     **General.** The purpose of this Order is to facilitate the exchange of hard copy

documents and electronically stored information (as defined in Federal Rule of Civil Procedure

34(a)(1)(A), "ESI") in an efficient manner and in accordance with the Federal Rules. The Parties

agree to meet and confer to the extent that this Order imposes any undue burden or expense on a

Party with respect to any particular discovery request.

2.     **Scope.** Except as specifically set forth herein, this Order does not:  (a) alter or

affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local

Rules of the U.S. District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or

affect the relevance, discoverability, or admissibility as evidence of any document or ESI,

Case 2:19-md-02904-MCA-MAH    Document 243    Filed 10/26/20    Page 2 of 24 PageID:
35741
Case 2:19-md-02904-MCA-MAH    Document 19-1    Filed 05/14/20    Page 3 of 25 PageID: 2893

regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.

3.    **Variations.**  If any Party identifies a circumstance where application of this Order is not reasonably achievable for technological or other reasons, the Party will disclose to the Parties all the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order.  In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

4.    **Preservation.**  The Parties will continue to meet and confer regarding the scope of preservation, which will include discussions concerning custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation.

## II.    FORMAT OF PRODUCTIONS

5.    **File Types and Formats.**  All spreadsheets (*e.g.*, Microsoft Excel, Corel Quattro, etc.), presentation files (*e.g.*, Microsoft PowerPoint), word processing files (*e.g.*, Microsoft Word), image files (*e.g.*, .jpg, .gif), PDF files, and media files (*e.g.*, audio and video files) shall be produced in native format together with TIFF images (with the exception of spreadsheets, such as Microsoft Excel, and audio and video files, which will be produced in native format with corresponding slip-sheet indicating that the document is being produced in native format). Emails shall be produced as TIFFs.  The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials, and prototypes testing files, etc., where necessary.

6.    **Native Files**.  Any file produced in native file format shall be given a file name consisting of a unique Bates number.  For each native file produced for which a TIFF rendering

Case 2:19-md-02904-MCA-MAH    Document 243    Filed 10/26/20    Page 3 of 24 PageID:
3545
Case 2:19-md-02904-MCA-MAH    Document 197-1    Filed 05/14/20    Page 4 of 25 PageID: 2894

of the document is not produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided in Native Format."  To the extent that it is available, the original document shall be provided in a document level multi page UTF 8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file.  Native files will be produced in a separate folder on the production media.

7.    **TIFF Images**.  Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image.  Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image.  These *.tiff images should be provided in a separate folder.

8.    **Redactions**.  Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (*e.g.*, "A/C Privilege").    If documents that the Parties have agreed to produce in native format need to be redacted, they will be produced in conformance with the specifications below.  Other than as permitted by this Order, an order concerning confidentiality agreed to and/or entered in this litigation, or consent of the Parties, no redactions for relevance may be made within a produced document or ESI item.

Case 2:19-md-02904-MCA-MAH   Document 243   Filed 10/26/20   Page 4 of 24 PageID:
3546
Case 2:19-md-02904-MCA-MAH   Document 197-1   Filed 05/14/20   Page 5 of 25 PageID: 2895

(a)   <u>Spreadsheets.</u> Spreadsheet files requiring redaction, including Microsoft excel files, will be redacted within the native file, and the redacted native files will be produced as provided herein.

(b)   <u>Other Documents.</u>   All native files that require redaction shall first be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application, all of which shall be evident in the generated TIFF image(s). Where reasonably possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. The Parties shall honor reasonable request for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable. To the extent a requesting Party believes that color is necessary or useful to understand or use a particular redacted document or a particular set of redacted documents, and that document (or set of documents) in their un-redacted form contain color, then upon request the producing Party will reproduce color TIFF images within five (5) business days.

(c)   <u>Non-Email Redacted Child or Embedded Documents.</u> All redacted child or embedded documents will have the respective parent document produced in image format as specified above.

9.   **Load File Formats.** ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

10.     **Metadata to Be Produced**.  The metadata fields detailed in **Exhibit A** shall be produced for each document to the extent that such information is reasonably available or, in the case of metadata created during processing such as Bates numbers, created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

11.     **Extracted Text and OCR**.  Each document, whether produced in native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

(a)     Extracted Text (Unredacted Native ESI, and Natively Redacted Spreadsheets).  All un-redacted ESI and redacted spreadsheets produced as native files should be provided with complete document-level extracted text files.  Extracted text shall include all comments, track changes, and hidden content in word processing documents and speaker's notes and hidden content in presentation files.  Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

(b)     OCR (Redacted Native ESI, Hard Copy Documents).  In the event a document, other than natively redacted spreadsheets, *e.g.*, Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-redacted portions of the documents (and the native file shall not be provided).

Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (*e.g.*, pages are not angled or skewed, text is not blurred or obscured, etc.). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

      (c)    <u>Format of Extracted Text and OCR</u>. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder.

12.    **Production Format for Hard Copy Documents**. Documents that exist in hardcopy will be scanned to *.tiff image format and produced with a load file, single page TIFF images in the same format as electronic files (as described above in Paragraph 7), except the metadata fields provided will be limited to those in **<u>Exhibit A</u>** to the extent the metadata is reasonably available. For a scanned hard copy, OCR text will be provided instead of extracted text. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized[1]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and

---

[1]    Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

ending document and attachment fields. A producing Party will make their best efforts to unitize the documents correctly.

13. **Digital Photos**. Digital photos shall be produced in their native format.

14. **Databases, Structured, Aggregated or Application Data**. To the extent that a structured database contains relevant data, the Parties will meet and confer regarding an appropriate format for production of the data that will allow the requesting Party to use and search the data in a meaningful way and exchange information for this purpose, which may include information concerning the (a) database schema, (b) database schema standardized reports and queries, and (c) training manuals or standard operating procedures concerning operation and maintenance of the database.

15. **Non-English Documents**. To the extent that documents are produced that contain languages other than English, in whole or in part, the producing Party shall produce each such document in the original language or languages in which it was written when collected. The producing Party has no obligation to create a translation of the documents or any portion thereof; however, a producing Party shall produce any translations of such documents if such translations exist and are accompanied with the original document.

16. **Production Rules.** Due to the contextual relationship of ESI, the Parties will maintain family relationships for electronic data. The Parties will make relevancy and production determinations for hard copy documents at the document level.

17. **Mobile and Handheld Device Documents and Data**. The Parties will meet and confer to address the identification, production, and production format of any responsive, non-duplicative documents and data contained on any mobile or handheld device. In the event

documents or data contained on any mobile or handheld devices are produced, those documents
and data shall be produced in accordance with this Order.

18.     **De-NISTing**.   Electronic files will be De-NISTed, removing commercially
available operating system and application file information contained on the current NIST file
list.

19.     **Deduplication.**  The Parties shall make reasonable efforts to de-duplicate ESI.
ESI produced by the Parties shall be globally de-duplicated across all custodial and non-custodial
sources.  Documents are considered exact duplicates if a document family or stand-alone file has
a matching MD5 or SHA-1 hash value as compared against the same document type (*i.e.*, family
or stand-alone file).  Hash values of emails will be calculated on the concatenated values of at
least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment
Names, Body, and the hash values of all attachments.  The names of all custodians and non-
custodial sources who were in possession of a document prior to deduplication will be populated
in the ALL FILES PATHS[2] metadata field.

20.     **No Email Threading**.  Email thread suppression techniques will not be applied in
production without written agreement of all Parties, although such techniques may be used as a
review tool.

---

[2]     ALL FILES PATHS metadata field shall include the original file/folder paths, including
file name for non-emails, where reasonably available, of all the locations where copies of the
item were located at the time of collection, separated by semi-colons, in the order corresponding
to the order of names in ALL CUSTODIANS. For emails collected from container files (*e.g.*,
.psts), these include the original fle paths of the container files and the location of the emails
within the folder structure of the mail container/.pst from which it was collected, where
reasonably available.

21.     **Embedded Files**.  Embedded files, except for images and logos embedded in emails, are to be produced as family groups.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

22.     **Dynamic Fields**.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

23.     **Zero-byte Files**: The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

24.     **Parent-Child Relationships**.  For email families, the parent-child relationships (the association between emails and attachments) should be preserved and email attachments should be consecutively produced with the parent email record.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

25.     **Time Zone**.  To the extent possible, all ESI shall be processed so as to show the date and time in GMT.

26.     **Bates Numbering**.  Bates numbering shall be consistent across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder page.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

27.     **Excluded File Types**.  The Parties shall meet and confer regarding sources of potentially relevant information that a Party believes need not be searched absent a particularized need and good cause showing.

28.     **Encryption**.  To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection.  In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

29.     **Exception Files**.  The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI where the document appears to contain relevant content) ("Exception Files").  When a producing Party process or "runs" a set of documents for production, the producing Party shall compile an exception report enumerating any unprocessed or unprocessable documents in the production, their file type, and the file location, and where any such document is part of a family, e.g., an email attachment, a

\*.tiff image slipsheet indicating the production number of the document, and stating "Document

Not Produced Due to Production Issue" shall be included in the production.

## III.    IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI

30.    The Parties shall participate in an iterative and cooperative approach in which the

Parties meet and confer in an effort to agree upon the following: (a) the identity and role of

custodial and non-custodial sources possessing relevant information and from whom documents

will be collected or produced; (b) the location(s), description(s), and relevant date range of all

relevant data sources; (c) the sources of documents and ESI to be identified and reviewed

without the use of a search terms and/or Technology Assisted Review ("TAR"); (d) applicable

timeframe for collection and review of documents; (e) search methodologies to be used; and (f)

prioritization of categories of documents and ESI to be collected, reviewed, and produced.

(a)    **Search Terms**.  If a producing Party intends to use search terms in

connection with the collection and/or production of documents and ESI, including culling

documents prior to reviewing the documents, the producing Party shall first meet and

confer in good faith with the requesting Party to determine the mutually agreeable search

terms before the initial production of documents and ESI subject to such search terms.

To facilitate the meet and confer process, the Parties shall exchange a proposed list of

search terms with an explanation of how such terms will be applied, a list of proposed

custodians, and the time period or temporal scope of documents that will be searched.  To

the extent reasonably possible, search terms will be crafted with input from a Party's

custodians in order to identify appropriate nomenclature, code words, etc.  In the event

that the Parties cannot resolve a disagreement over a search term modification following

a meet-and-confer, the producing Party will provide search term hit reports for each

document collection where the terms were applied, including the following:

Case 2:19-md-02904-MCA-MAH   Document 243   Filed 10/26/20   Page 12 of 24 PageID:
3554
Case 2:19-md-02904-MCA-MAH   Document 197-1   Filed 05/14/20   Page 13 of 25 PageID: 2903

1. The number of documents with hits for that term.

2. [*Plaintiffs' proposed language*] A list of unique identifiers, i.e., IDs, for each document with a hit for that term ("ID List"). These identifiers need not be Bates numbers, or sequential or entirely numeric and may be values, such as hashes generated for this purpose, that do not reveal document sequence or other substantive document data.

3. The number of unique documents, i.e., documents which do not have hits for any other term, for that term, [*Plaintiffs' proposed language*] and the ID List for those documents.

[*Plaintiffs' proposed language*] IDs in items 2 through 3 are to be produced in a machine-processable format, e.g., as a list of comma-separated values in a plain text file, one line per term. The hit report will also include the total number of documents in the de-duplicated collection against which the search terms were applied and the total number of unique documents containing hits. The Parties will meet and confer to resolve disagreements over the search terms or their application.

(b)     **Use of TAR**: If a producing Party intends to use Technology Assisted Review ("TAR") in connection with the collection and/or production of documents and ESI, including culling documents prior to reviewing the documents, the producing Party shall first meet and confer in good faith with the requesting Party regarding the following parameters that will apply to the use of TAR. The producing Party shall identify to the requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures, prioritization and training of the TAR tool, as well as the precision and recall metrics that will be employed by the TAR tool.

31.      **Validation of the Parties' Search Methodology and Results**.  The Parties will meet and confer regarding quality control measures and reasonable methods to achieve appropriate levels of recall (the percentage of responsive documents in the collection against which the search terms were run which include a search term), which will include transparent and cooperative validation procedures and, which may include, as appropriate and/or ordered by the Court, random sampling both of nonresponsive sets and of the entire collection against which search terms were run.

32.      **Known Responsive ESI Must Be Produced**.   Documents or ESI that are responsive to a party's request that are regularly maintained in a known location, or in a location that is ascertainable upon a reasonable inquiry of the custodial and non-custodial sources identified in paragraph 30 of the ESI protocol, and those responsible for overseeing Defendants' document-management systems, shall be produced without regard to whether such documents or ESI was responsive to any search methodology set forth herein or otherwise agreed by the Parties, absent a specific objection to producing that document.

33.      **Discrete Document Collections / Custodian Identified Files**.   Counsel shall make reasonable efforts to identify discrete folders of documents and collections of documents compiled by Custodians relating to the AMCA Data Breach, this litigation, or for purposes of responding to discovery in this matter and review those documents for responsiveness without regard to whether those documents are responsive to any agreed upon search terms, TAR, or other agreed-upon search methodology.  The Parties will meet and confer in the event the producing Party believes that such a review would be unduly burdensome and disproportionate to the needs of the case.

34.     **Prior Productions**.  The Parties will meet and confer regarding the production of responsive documents and ESI previously collected and produced outside of the MDL litigation that is not in conformance with the provisions of this Order.

35.     **Unsearchable Documents.**  The Parties shall meet and confer regarding the type of review undertaken for documents or ESI for which text-based search technologies are fundamentally ineffective, such as certain databases or images and hard copy documents for which OCR is ineffective.

36.     **Reassessment.**  A Party may encounter the need to reassess such methodology and/or validation process and, in such case, the Parties will meet and confer to address any issues in a reasonable and timely manner.

37.     **Good faith**.  The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by any producing Party.

38.     **Continuing Obligations**.  The Parties recognize that discovery shall be an iterative and cooperative process.  The Parties will continue to meet and confer regarding any issues as necessary and appropriate.  This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

39.     **Reservation of Rights**.  The Parties retain the right, upon reviewing any productions made by any producing Party in this action or conducting other investigation and discovery, to request that documents or ESI from additional non-custodial data sources and custodians be produced or make reasonable requests for additional methods of identifying documents or ESI be applied to custodians or non-custodial data sources.  The Parties will meet and confer regarding such request(s) prior to any search or production related thereto.

## IV.    PROCESSING OF NON-PARTY DOCUMENTS

40.    The Order shall govern productions made by any non-Party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the non-Party.

41.    A Party that issues a non-Party subpoena ("Issuing Party") must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

42.    The Issuing Party is responsible for producing to all other Parties any document(s) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-Party.  Productions by a non-Party should be produced by the Issuing Party to all other Parties within ten (10) calendar days of the non-Party's production to the Issuing Party.

43.    For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## V.    MISCELLANEOUS PROVISIONS

44.    **Effect of Order.** The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown.  Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

45.    **Good Faith Compliance and Conferral Obligation.**  The Parties will make good faith efforts to comply with and resolve any differences concerning compliance with this Order.  No Party may seek relief from the Court concerning compliance with this Order unless it

Case 2:19-md-02904-MCA-MAH   Document 243   Filed 10/26/20   Page 16 of 24 PageID:
Case 2:19-md-02904-MCA-MAH   Document 197-1   Filed 05/14/20   Page 17 of 25 PageID: 2907
3558

has first conferred with the other Parties. If the Parties cannot reach agreement, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

## VI.   PRIVILEGE LOGS

46.   The Parties recognize that some documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, common interest/joint defense, or other recognized privilege or protection from disclosure (collectively, "privilege"). The Parties agree to produce a privilege log no later than 45 days after the date of a production from which the document would otherwise have been produced but was withheld. A Party's failure to provide a privilege log within the time set forth herein shall not by itself constitute a waiver of any privilege. However, the Parties shall not unreasonably fail to provide a privilege log within the time set forth herein.

47.   In the event a custodian of a producing Party is noticed for deposition, the producing Party shall, 30 calendar days prior to a scheduled deposition, inform the Party that has noticed the deposition whether all of the Custodian's responsive documents have been produced or logged. The party noticing the deposition may elect to waive the requirements of this paragraph, or extend the time for the party being deposed to make the disclosures required under this paragraph.

48.   The rolling privilege logs shall be produced in a cumulative manner, incorporating on each subsequently produced privilege log any previously produced privilege logs and identifying in a searchable/sortable manner documents added since the last log update and documents for which a privilege is no longer asserted, if any, since the last log update. No listings, therefore, shall be deleted from the log. The correspondence accompanying each

Case 2:19-md-02904-MCA-MAH    Document 243    Filed 10/26/20    Page 17 of 24 PageID:
3559
Case 2:19-md-02904-MCA-MAH    Document 197-1    Filed 05/14/20    Page 18 of 25 PageID: 2908

privilege log shall indicate the document production volume(s) and Bates range(s) to which the privilege log applies.

49.    For each responsive document withheld because of privilege, the Parties agree to include the following information on the privilege log:

(a)    A unique identifying number for each logged document ad seriatim starting with the number 1 (*i.e.*, the Privilege Log ID);

(b)    A field or column indicating the privilege log volume;

(c)    The date the privilege log containing the entry was served;

(d)    Custodian or source (the name of the person(s) or non-custodial source from which the document was collected);

(e)    Date of the document;

(f)    Document type (file extension or msg or similar indication of file type for e-mail);

(g)    Document Title (documents), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

(h)    Subject Line (email), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

(i)    For Documents produced, but redacted on the ground of privilege, the starting Bates number and for other documents not produced, a numerical identifier;

(j)    Author(s);

(k)     Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda);

(l)     General description of the document sufficient for the receiving Party and the Court to evaluate the assertion of privilege (not required for documents that have been redacted and have populated Redacted and RedactedReason metadata fields and the general description of the document is clear on the face of the document);

(m)     The basis for the privilege claim (e.g., attorney-client; work product) ; and

(n)     Released: field shall be populated if a document is released from the log.

50.     **Privilege Log Format**.  Privilege logs shall be produced in native Excel format. The Parties shall provide a list identifying outside and in-house counsel (and their respective staff and agents) whose names appear on the privilege log.

51.     **Privilege Log Descriptions of Document Families.**  Only privileged documents will be logged on the privilege log.  For example, if a parent document is privileged and the attachments are not privileged, only the parent will be logged on the privilege log and withheld. The withheld parent document will be produced as a slip-sheet attached to the non-withheld attachments to keep the family context.  The slip-sheet will receive a Bates number and be referenced on the log.  To the extent a non-privileged attachment to a privileged communication can be produced without revealing the privileged communication, that non-privileged attachment shall be produced with the slip sheet as indicated. In instances where a limited portion of the parent Document is privileged, the parent will be redacted and produced along with non-privileged attachments.  If an attachment is wholly privileged but the parent document is not privileged, the attachment will be slip-sheeted and produced along with the parent and any other non-privileged attachments in the family.

52.     **Documents to be excluded from Privilege Log.**   The following are presumptively privileged and shall not be logged: (1) communications between a Party(or an agent of such Party) and the Party's counsel (or an agent of such counsel) following the announcement in May 2019 of the data incident giving rise to this litigation (the "Data Incident"); (2) communications between and among counsel for a Party after the announcement of the Data Incident; and (3) work product created by counsel after the announcement of the Data Incident.   Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

53.     If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution.   If they cannot agree, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

## VII.   ESI LIAISONS

54.     To promote transparency, communications, and cooperation between the Parties, the Parties will designate e-discovery liaisons for purposes of meeting and conferring on ESI topics.   The ESI liaison for Plaintiffs shall be Parvin Aminolroaya of Seeger Weiss LLP.   The ESI liaison for Defendants shall be:

- For Optum360: Donald Houser of Alston & Bird, LLP.

- For Quest: Dan Craig of Sidley Austin LLP

- For LabCorp: Elizabeth Lockwood of Hogan Lovells

- For CareCentrix: Julie Flaming of Nelson Mullins Riley & Scarborough, LLP

- For Sonic:  Bradley Bartolomeno of Lewis Brisbois

55.     In addition, pursuant to Local Civil Rule 26.1(d), Defendants shall identify a person or persons with knowledge about their information management systems, including

Case 2:19-md-02904-MCA-MAH    Document 243    Filed 10/26/20    Page 20 of 24 PageID:
3562
Case 2:19-md-02904-MCA-MAH    Document 197-1    Filed 05/14/20    Page 21 of 25 PageID: 2911

computer-based and other digital systems, with the ability to facilitate, through counsel,

reasonably anticipated discovery.  All productions of ESI by any Defendant or non-party shall be

sent to the parties' respective ESI liaison and lead counsel.

_____

MICHAEL A. HAMMER, U.S.M.J.

## EXHIBIT A

| Field | Definition | Doc Type |
|---|---|---|
| SOURCE/ORGANIZATION | Name of party producing the document | All |
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.) | All |
| ALL CUSTODIANS | All persons or data where the document was found prior to deduplication. | |
| BEGDOC | Bates (number) of the first page of the document. | All |
| ENDDOC | Bates number of the last page of the document. | All |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| FILESIZE | File Size | All |

| APPLICAT | Commonly associated application for the specified file type. | All |
|---|---|---|
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and file source extension. If an email extracted from a container, e.g., from a .pst file, it should contain the name and location of the email container, and the folder within the container from which the email was collected | E-document, Email |
| ALL FILEPATHS | The locations where copies of the item were located at the time of collection | E-document, Email |
| NATIVEFILELINK | For documents provided in native format only | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| FAMILY DATE | If the document was part of a family, e.g., an email attachment, the date of the parent document | E-mail, E-Document |
| ATTACHCOUNT | Number of attachments to an e-mail | E-mail |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons | E-mail |
| DATESENT (mm/dd/yyyy hh:mm:ss AM) | Date Sent | E-mail |

| DATERCVD (mm/dd/yyyy hh:mm:ss AM) | Date Received | E-mail |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | MD5 hash value | All |
| TITLE | Title provided by user within the document | E-document |
| AUTHOR | Creator of a document | E-document |
| DATECRTD (mm/dd/yyyy hh:mm:ss AM) | Creation Date | E-document |
| LAST MODIFIED BY | Last person who modified (saved) a document | E-document |
| LASTMODD (mm/dd/yyyy hh:mm:ss AM) | Last Modified Date | E-document |
| DocumentType | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. | All |
| Importance | High Importance - indicates Priority E-mail message. | E-mail |
| Page Count | Page count or image count | All |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for un-redacted documents. | All |
| RedactionReason | Basis of redaction.  If more than one, separate reasons by semi-colons | If applicable |
| ProdVol | Production value number. | All |
| ProdDate | Date production volume produced by producing party | All |

| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
|---|---|---|
| HASHIDDENTEXT | Y, N or empty | Y if a Word document with hidden text |
| HASHIDDENSLIDES | Y, N or empty | Y if a PowerPoint document with hidden slides |
| HASSPEAKERNOTES | Y, N or empty | Y if a PowerPoint document with hidden slides (if field not reasonably available, permissible to identify existence of speaker notes using the |
| HASHIDDENROWS | Y, N or empty | Y if a Excel document with hidden rows |
| HASHIDDENCOLUMNS | Y, N or empty | Y if a Excel document with hidden columns |
| HASHIDDENWORKSHEETS | Y, N or empty | Y if a Excel document with hidden worksheets |