## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br><br>This Document Relates To: *Other Labs Track* | Civil Action No. 19-md-2904(MCA)(MAH) |

-------------------------------------------------------------------------------------------------------------

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE PROPOSED NOTICE OF THE SETTLEMENT, AND APPOINTMENT OF SETTLEMENT ADMINISTRATOR

-------------------------------------------------------------------------------------------------------------

James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
*Lead Counsel for Plaintiffs*

Joseph J. DePalma
Catherine B. Derenze
LITE DEPALMA GREENBERG &
AFANADOR LLC
570 Broad Street, Suite 1201
Newark, New Jersey 07102
(973) 623-3000

Amy Keller
Justin Hawal
DICELLO LEVITT LLC
10 North Dearborn Street, 6th Floor
Chicago, Illinois 60602
(312) 214-7900
*Other Labs Track Co-Lead Counsel*

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

I.   Preliminary Statement ........................................................................................... 1

II.  Background of the Action and Settlement Agreement ................................... 2

    A.   Procedural History of the Action ................................................................ 2

    B.   Negotiations Producing the Settlement .................................................... 3

    C.   The Material Terms of the Proposed Settlement .................................... 3

        1.   Settlement Class ................................................................................. 3

        2.   Settlement Amount .......................................................................... 4

        3.   Released Claims ................................................................................. 5

III. Legal Argument ...................................................................................................... 5

    A.   The Court Should Certify the Class for Purposes of the Proposed Settlement . 6

        1.   The Proposed Settlement Class Satisfies Rule 23(a) ............................ 6

            a.   Numerosity ............................................................................. 7

            b.   Commonality ........................................................................... 7

            c.   Typicality and Adequacy ........................................................ 8

        2.   The Proposed Class Satisfies Rule 23(b)(3) ......................................... 11

            a.   Common Legal and Factual Questions
                Predominate Over Any Individual Issues ................................. 11

            b.   Superiority .............................................................................. 12

    B.   The Settlement Meets the Criteria Necessary for Preliminary Approval .......... 13

        1.   The Settlement Occurred After Good Faith, Arm's-Length
            Negotiations Conducted by Well-Informed and Experienced Counsel . 15

        2.   The Relief Provided to the Class Is Adequate ..................................... 17

        3.   Plaintiffs' Proposed Method of Distributing Relief to the Class
            Is Effective and Treats Class Members Equitably ............................... 17

4.      Proposed Attorney's Fees ....................................................................... 18

C.      The Court Should Approve the Form and Plan for
        Disseminating Notice to the Settlement Class .................................................. 19

D.      The Court Should Adopt The Parties' Proposed Settlement Schedule............. 21

Conclusion ................................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfaro v. First Advantage Lns Screening Solutions, Inc.*,
  2017 WL 3567974 (D.N.J. Aug. 16, 2017) ............................................................ 13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................... passim

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................. 12

*Baby Neal for and by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................................ 9

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ......................................................................... 9

*Beltran v. SOS Ltd.*,
  2023 WL 319895 (D.N.J. Jan. 3, 2023) ......................................................... 19

*Buzzaro v. Ocean City*,
  2009 WL 1617887 (D.N.J. June 9, 2009) ....................................................... 10

*Dewey v. Volkswagen AG*,
  681 F.3d 170 (3d Cir. 2012) ....................................................................... 10

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ......................................................................... 5

*Georgine v. Amchem Prods., Inc.*,
  83 F.3d 610 (3d Cir. 1996) ........................................................................ 10

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................................. 14, 15

*Glaberson v. Comcast Corp.*,
  2014 WL 7008539 (E.D. Pa. Dec. 12, 2014) ................................................. 16

*Halley v. Honeywell Int'l, Inc.*,
  2016 WL 1682943 (D.N.J. Apr. 26, 2016) .................................................... 20

*In re Amaranth Nat. Gas. Commodities Litig.*,
  269 F.R.D. 366 (S.D.N.Y. 2010) ................................................................. 11

*In re Amthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)..................................................................... 5

*In re Capital One Data Security Breach Litig.*,
2022 WL 18107262 (E.D. Va. Sept. 13, 2022)............................................... 5

*In re Equifax Inc. Customer Data Security Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ....................................................................... 5

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
55 F.3d 768 (3d Cir. 1995)............................................................................. 10

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)..................................................................... 19

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................... 6

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003)........................................................................ 12

*In re Modafinil Antitrust Litigation*,
837 F.3d 238 (3d Cir. 2016)............................................................................. 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................... 16

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d  410 (3d Cir. 2016).............................................................. 9, 10, 11, 12

*In re NFL Players Concussion Injury Litig.*,
775 F.3d 570 (3d Cir. 2014)............................................................................. 6

*In re Pet Food Prods. Liab. Litig.*,
2008 WL 4937632 (D.N.J. Nov. 18, 2008) .................................................... 6

*In re Philips/Magnavox TV Litig.*,
2012 WL 1677244 (D.N.J. May 14, 2012) .................................................... 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)................................................................... passim

*In re Remicade Antitrust Litig.*,
2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ......................................... 8, 11, 12

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009).......................................................................... 9, 10

*In re Valeant Pharms. Int'l Inc. Third Party Payor Litig.*,
    2022 WL 252807 (D.N.J. Feb. 22, 2022) .................................................. 19

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)........................................................................ 5, 7

*In re Wellbutrin XL Antitrust Litig.*,
    282 F.R.D. 126 (E.D. Pa. 2011) ................................................................. 11

*In re Yahoo, Inc. Customer Data Security Breach Litig.*,
    2020 WL 421811 (N.D. Cal. July 22, 2020)................................................ 5

*James v. Global Tel*Link Corp.*,
    2020 WL 6197511 (D.N.J. Oct. 22, 2020).................................................. 19

*Kanefsky v. Honeywell Int'l Inc.*,
    2022 WL 1320827 (D.N.J. May 3, 2022)................................................... 15

*Kress v. Fulton Bank, N.A.*,
    2021 WL 9031639 (D.N.J. Sept. 17, 2021) ................................................. 2

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................... 19

*Mullane v. Cent. Hanover Bank &Tr. Co.*,
    339 U.S. 306 (1950)...................................................................................... 20

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013).......................................................................... 7

*Roofer's Pension Fund v. Paper*,
    333 F.R.D. 66 (D.N.J. 2019)......................................................................... 8

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
    15 F.4th 259 (3d Cir. 2021) ...................................................................... 7, 9

*Smith v. Merck & Co., Inc.*,
    2019 WL 3281609 (D.N.J. July 19, 2019)........................................... 8, 9, 13

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001).......................................................................... 7

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)................................................................. 8, 11, 12

*Varacallo v. Massachusdtts Mut. Life Ins. Co.*,
    226 F.R.D.207 (D.N.J. 2005)............................................................ 12, 13, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................... 7

**Statutes**

28 U.S.C. § 1715.................................................................................................. 21

**Rules**

Fed. R. Civ. P. 23(a)(1)......................................................................................... 7

Fed. R. Civ. P. 23(b)(3)................................................................................... 11, 12

Fed. R. Civ. P. 23(c)(2)(B)................................................................................. 19

Fed. R. Civ. P. 23(e) ............................................................................. 5, 14, 17, 18

**Treatises**

Rubenstein, *Newberg on Class Actions* § 4:25 (4th ed. 2010).................................... 11

I.      PRELIMINARY STATEMENT

After four years of contested litigation as part of an expansive Multi-District Litigation arising out of an alleged data breach at a medical collection agency, American Medical Collections Agency ("AMCA") in August 2018, Plaintiffs and CareCentrix have reached a proposed class-settlement.  The settlement requires CareCentrix to establish a non-reverting cash common fund of $6.3 million dollars which will be utilized to fund: (1) approved claims of all eligible and participating class members; (2) notice and administration costs; and (3) approved attorney's fees and expenses. In addition, CareCentrix will cease collection efforts with respect to any unresolved debts owed by class members to CareCentrix that were sent to AMCA.  At this time, Plaintiffs request entry of the proposed Preliminary Approval Order which will begin the final approval process by, among other things:

- preliminarily approving the terms of the respective settlement agreement between Plaintiffs and CareCentrix ("Settlement Agreement");

- approving the retention of Angeion Group as Settlement Administrator;

- approving the form and content of the Notice, Claim Form, and Summary Notice, attached respectively as Exhibits 1, 2, and 3 to the Preliminary Approval Order;

- finding the plan for disseminating the Notice and Claim Form and publishing the Summary Notice to constitute the best notice practicable under the circumstances and to satisfy the requirements of Rule 23, due process, and all other applicable laws and rules; and

- setting a schedule for (i) disseminating notice to the Class; (ii) requesting exclusion from the Class; (iii) objecting to the Settlement, or any part thereof; (iv) submitting Claim Forms in order to be eligible to participate in the Settlement; (v) submitting papers in support of final approval of the Settlement and related matters; (vi) submitting papers in support of Class Counsel's application for attorneys' fees, reimbursement of expenses, and Case Contribution Awards to Plaintiffs; and the (vii) the Fairness Hearing.

As discussed herein, the Settlement easily satisfies the standards for preliminary approval. *See Kress v. Fulton Bank, N.A.*, 2021 WL 9031639, at *9 (D.N.J. Sept. 17, 2021) ("[P]reliminary approval is not binding and is granted unless the proposed settlement is obviously deficient.").[1]

## II.    BACKGROUND OF THE ACTION AND SETTLEMENT AGREEMENT

### A.    Procedural History of the Action

The Court is well familiar with the procedural history of this case and the docket reflects the extensive work that has been invested by all parties since the MDL's formation.  Briefly, the case arises from an alleged data breach which occurred at AMCA, a company retained by defendants to collect delinquent accounts arising from medical services and procedures coordinated by CareCentrix and provided by the other defendants ("AMCA Security Incident"). Until the incursion was discovered in March 2019, Plaintiffs alleged the hackers exfiltrated personal identifying information and personal health information of millions of persons, including individuals for whom CareCentrix coordinated healthcare benefits ("Benefit Recipients").[2]   The allegedly exfiltrated data varied depending on the defendant but frequently included social security numbers and credit card information but—in some cases—medical information.  Not surprisingly, Plaintiffs contend some of the information found its way to the dark web—an underground criminal marketplace where all sorts of illicit transactions take place including the sale of stolen data which is then utilized to commit all sorts of frauds and scams.  AMCA notified Defendants of the incursion in May 2019.  AMCA soon collapsed and filed for bankruptcy protection in June 2019. CareCentrix notified the Benefit Recipients of the breach in July 2019.

---

[1]     Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations and footnotes are omitted.

[2]     CareCentrix coordinates the receipt of healthcare benefits for healthcare benefit plan participants through contracted network healthcare and durable medical equipment providers.

Following the AMCA Security Incident, class action complaints were filed against Defendants all over the country, which in turn, led to a petition to coordinate all of the actions in a single venue before the Judicial Panel for Multidistrict Litigation ("JPML"). By way of Order dated August 9, 2019, the JPML transferred all of these actions to the District of New Jersey. After the transfer, the Court organized the litigation and divided the cases into three tracks: a Quest/Optum track, a LabCorp track, and an Other Labs track (which included CareCentrix and Sonic Healthcare USA as well as its subsidiaries). (ECF 99.) Master consolidated complaints were filed against each set of Defendants on November 15, 2019, including against CareCentrix. (ECF 106.) Since that time, all of the usual and expected activities in a complex federal MDL have taken place including motions to dismiss, document and paper discovery, fact depositions, and corporate 30(b)(6) depositions. The parties have also sought the court's intervention on numerous disputed issues regarding the scope of discovery.

B.     **Negotiations Producing the Settlement**

The parties have discussed a potential resolution on numerous occasions over the past three years. Those discussions were not, however, particularly productive until formal mediation began under the direction of retired Magistrate Judge Joel Schneider in December 2022. After numerous meetings with Judge Schneider, including an all-day in-person mediation, the parties were able to reach a proposed settlement which is embodied in the current agreement.

C.     **The Material Terms of the Proposed Settlement**

1.     **Settlement Class**

The Settlement Class is defined as:

All individuals for whom CareCentrix coordinated healthcare benefits in the United States whose Personally Identifiable Information ("PII") was alleged as potentially exfiltrated between August 1, 2018 through March 30, 2019 in the AMCA Security Incident.

3

Excluded from the Class are CareCentrix, any entity in which CareCentrix holds a controlling interest, any parent or subsidiary of CareCentrix, and CareCentrix's officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns.  Also excluded are the judges and court personnel involved in this case and members of their immediate family.  It is estimated that the class includes 420,000 members.

### 2. Settlement Amount

The proposed settlement has two primary components: a non-reversionary cash common fund of $6.3 million and forward-looking relief which prohibits CareCentrix from continuing collection efforts for unresolved debts allegedly owed by the Class to CareCentrix that were sent to AMCA.  The common fund will be used to pay approved claims which fall into a variety of categories.  First, participating Class Members will have the option of being reimbursed for verifiable expenses associated with the Data Breach up to a total of $5,000.  The qualifying expenses are not all inclusive but generally include expenses the class member incurred remedying identity theft or fraudulent activity related to the data breach.

In addition, if the class members do not wish to submit documentation related to any fraudulent activity, the class member is eligible for Alternative Compensation of up to $50.  Either option would be subject to *pro rata* reduction depending upon the number of claims submitted.  In addition, participating Settlement Class Members can enroll for up to three years of state of the art identity monitoring services which would also be paid out of the settlement fund.  Participating Settlement Class members residing in California would be entitled to an additional $50, again, subject to *pro rata* reduction.  If any funds are left over after payment of all valid claims, those funds would be distributed on a *pro rata* basis to holders of valid claims based upon the value of their claim.  Every participating class member is eligible for relief from the common fund.

The types of relief provided for in the proposed agreement mirror other recent data breach settlements which were approved by courts including: *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1258-59 (11th Cir. 2021); *In re Capital One Data Security Breach Litig.*, 2022 WL 18107262, at *11 (E.D. Va. Sept. 13, 2022); *In re Yahoo, Inc. Customer Data Security Breach Litig.*, 2020 WL 421811, at *10-12 (N.D. Cal. July 22, 2020); and *In re Amthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 310-11 (N.D. Cal. 2018).

### 3.    Released Claims

As provided in the Settlement Agreement, the Settlement includes standard release language of all claims which were alleged or could have been alleged in the pending class action, reserving such claims related to the enforcement of the Settlement Agreement. *See* Section IX of the Settlement Agreement.

## III.    LEGAL ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for any class-wide resolution of claims. *See* Fed. R. Civ. P. 23(e). It is well-established in the Third Circuit that the settlement of class action litigation is favored and encouraged. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("Settlement [a]greements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). Judicial review of a proposed class action settlement is a two-step process. Pursuant to Rule 23(e)(1)(B), the parties must "show[] that the [C]ourt will likely be

able to: (i) approve the [settlement] proposal under Rule 23(e)(2); and, (ii) certify the class for purposes of judgment on the proposal."[3]  Fed. R. Civ. P. 23(e)(1)(B).

### A.      The Court Should Certify the Class for Purposes of the Proposed Settlement

The propriety of certifying a class solely for purposes of settlement is well established in the Third Circuit.  *See, e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) ("*[P]reliminary* analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation.") (emphasis in original)[4]; *In re Pet Food Prods. Liab. Litig.*, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23.").  Moreover, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).  Nevertheless, a settlement class, like other certified classes, must satisfy all of the requirements of Rules 23(a) and (b), though the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").  As demonstrated below, the proposed Settlement Class satisfies these requirements.

### 1.      The Proposed Settlement Class Satisfies Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites for a class and requires that:

---

[3]      Consistent with past decisions by this Court and others, Plaintiffs proceed first with the class-certification analysis before addressing the preliminary approval of the Settlement.  *See, e.g.*, *Smith v. Merck & Co., Inc.*, 2019 WL 3281609, at **2-5 (D.N.J. July 19, 2019).

[4]      Cases pre-dating the amendments to Federal Rule of Civil Procedure 23 are cited so long as they are not inconsistent with the 2018 Amendments.

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265-66 (3d Cir. 2021) (citations omitted).

### a.     Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  In the Third Circuit, this prong is generally satisfied where "'the named plaintiff demonstrates the potential number of plaintiffs exceeds 40[.]'" *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 249-50 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Here, there are at least 420,000 individuals within the Settlement Class definition.  *See* Declaration of James Cecchi, ¶ 3.  Because joinder of all of these persons would be impracticable, the Court will have no trouble finding the Settlement Class is sufficiently numerous.  *See*, *e.g.*, *Modafinil*, 837 F.3d at 250 (noting that "[l]eading treatises have collected cases and recognized the general rule that . . . '[a] class of 41 or more is usually sufficiently numerous . . . .'") (citations omitted) (second alteration in original).

### b.     Commonality

Rule 23(a) requires that there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a). This commonality requirement is satisfied, "if the Named Plaintiffs share at least one question of law fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do."); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 381 (3d Cir. 2013) ("That burden is not

onerous.  It does, however, require an affirmative showing that the class members share a common question of law or fact.") (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011)).

Here, Plaintiffs allege that CareCentrix failed to take adequate steps to protect their PII and PHI that was sent to AMCA.  As alleged, CareCentrix's actions or failure to act is a question of fact common to all Class Members which underlies all of their claims herein.  *See In re Remicade Antitrust Litig.*, 2022 WL 3042766 at *5 (E.D. Pa. Aug. 2, 2022) ("Commonality is met in this case because each Class Member's claim depends on whether Defendants unlawfully engaged in anticompetitive behavior.") (citations omitted); *Roofer's Pension Fund v. Paper*, 333 F.R.D. 66, 75 (D.N.J. 2019) (finding commonality requirement met where "[t]he class claims are predicated upon the same underlying misrepresentations and commissions by Defendants, presenting common issues of both fact and law arising thereunder.").  This case involves further common legal and factual questions arising from CareCentrix's same course of conduct, including but not limited to: (1) whether CareCentrix violated applicable state statutes with respect to protecting PII and PHI; (2) whether CareCentrix's actions or failures to act violated the common law; and (3) the appropriate measure of Class Damages.

Based on the foregoing, the commonality requirement of Rule 23(a) is met here.  *See, e.g.*, *Smith v. Merck & Co., Inc.*, 2019 WL 3281609, *3 (D.N.J. July 19, 2019) ("In resolving the merits of [p]laintiffs 'claims, therefore, the focus is on [d]efendants 'salary grade structure and the resulting harm is caused, and not factual differences among individual class members.  The Court, accordingly, finds that the proposed class satisfies the commonality and predominance requirements of Rules 23(a)(2) and 23(B)(3), respectively.").

### c.    **Typicality and Adequacy**

As this Court has previously observed, "[t]he adequacy and typicality analyses under Rules 23(a)(3) and 23(a)(4), often merge and may, therefore, be discussed together."  *Smith*, 2019 WL

3281609 at *3; *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ("The Supreme Court has noted that the typicality and adequacy inquires often 'tend to merge 'because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (quoting *Amchem*, 521 U.S. at 626 n.20).  The typicality predicate set forth in Rule 23(a)(3) requires that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.  "'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where this is a strong similarity of legal theories 'or where the claim arises from the same practice or course of conduct."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions* ("*Prudential II*"), 148 F.3d 283, 312 (3d Cir. 1998)  (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)); *see also Russell*, 15 F.4th, at 271 n.4 ("We have 'set a low threshold for typicality.'") (quoting *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d  410, 428 (3d Cir. 2016)).

With regard to adequacy, Rule 23(a)(4) requires that: "the representative parties will fairly and adequately protect the interests of the class."   "The adequacy inquiry 'serves to uncover conflicts of interest between the named parties and the class they seek to represent '[and 'i]t assures that the named plaintiff's claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.'"  *Beck*, 457 F.3d at 296 (quoting *Amchem*, 521 U.S. at 591; *Baby Neal*, 43 F.3d at 55).  This predicate to class certification mandates two steps of inquiry ". . . designed to ensure that absentees 'interests are fully pursued."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) (quotation marks omitted) (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir.

1996), *aff'd*, *Amchem*, 521 U.S. 591).  The first step of inquiry "tests the qualifications of the counsel to represent the class," while the second "seeks to uncover conflicts of interest between named parties and the class they seek to represent." *In re Schering Plough Corp.*, 589 F.3d at 602. "When examining settlement classes, [the Third Circuit has] emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re NFL Players*, 821 F.3d at 431 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* 55 F.3d 768, 801 (3d Cir. 1995)). "The burden to prove representation is not adequate rests with the party challenging the class representation." *Buzzaro v. Ocean City,* 2009 WL 1617887, at *14 (D.N.J. June 9, 2009).  With regards to the second step of the inquiry, "[t]he 'linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *See In re NFL Players*, 821 F.3d at 431 (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)).

Here, as the Court is aware from its prior appointment, Interim Lead Counsel have extensive experience in complex litigation and class action proceedings throughout the United States.  As discussed in more depth below, the Settlement was reached after arm's length negotiations with the assistance of a neutral third-party mediator, Judge Joel Schneider (Ret.), and following vigorous prosecution by Counsel.  Class Counsel is therefore more than adequate for purposes of certification herein.

With regard to the second aspect of the adequacy inquiry and the typicality analysis, the claims of all Plaintiffs and Class Members arise from CareCentrix's alleged failure to protect Plaintiffs' and Class Members' PII and PHI properly.  This alleged failure affected all Plaintiffs and Settlement Class members in the same way.  Accordingly, the interests of Class Members and

Plaintiffs are entirely aligned because they arise from the same course of conduct by CareCentrix, rely upon identical legal theories, and Plaintiffs are not subject to any unique defenses. *See In re NFL Players*, 821 F.3d at 431 (affirming the district court's conclusion that "the incentives of class members were aligned because they 'allegedly were injured by the same scheme . . . .'"). Plaintiffs therefore respectfully contend the Court should find the typicality and adequacy requirements are met herein. *See, e.g.*, *In re Remicade.*, 2022 WL 3042766, at *7 ("Here, because the Named Plaintiffs 'and Class Members 'claims arise out of the same conduct and are based on the same legal theories[] . . . the Court concludes the typicality factor is satisfied.") (citing *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 138 (E.D. Pa. 2011)); *In re Amaranth Nat. Gas. Commodities Litig.*, 269 F.R.D. 366, 379 (S.D.N.Y. 2010) (typicality requirement met where plaintiffs and the class "transacted in the same contracts, in the same centralized marketplace, [and] were negatively impacted by the same common course of manipulative conduct from which the same group of defendants is alleged to be legally responsible for the damages[.]").

### 2.    The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class meets this standard.

### a.    Common Legal and Factual Questions Predominate Over any Individual Issues

In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance tests asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Sullivan*, 667 F.3d at 297 (quoting Rubenstein, *Newberg on Class Actions* § 4:25 (4th ed. 2010)).  The

touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 597. The rule, however, "does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, predominance is determined by whether: "the efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo v. Massachusdtts Mut. Life Ins. Co.*, 226 F.R.D.207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (finding predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members"). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. "The Third Circuit has counseled that courts should be 'more inclined to find the predominance test met in the settlement context.'" *In re Remicade*, 2022 WL 3042766, at *7 (quoting *NFL Concussion* 821 F.3d at 434, *as amended* (May 2, 2016)).

Here, the predominance requirement under Rule 23(b) is satisfied for many of the same reasons that the commonality requirement of Rule 23(a) is satisfied. CareCentrix's alleged actions or inactions with respect to protecting Class Members' PII and PHI affected all members of the class, and all class members were harmed as a result of CareCentrix's alleged conduct. The focus of any proofs is on CareCentrix's actions and failure to protect Plaintiffs 'and Class Members' PII and PHI.

### b.    Superiority

The last remaining criterion for certification is that the Court must be likely to find that: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Prudential II*, 148 F.3d at 316. "The matters

pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any ligation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the likely difficulties in managing a class action." *Id*.   Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated . . . ." *Amchem*, 521 U.S. at 615.

Similar to this Court's observations in *Smith*, here, "[t]he Settlement Class contains approximately [420,000] members, 'and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals[, and] . . . would burden the Court." *Smith*, 2019 WL 3281609, at *4 (quoting *Alfaro v. First Advantage Lns Screening Solutions, Inc.*, 2017 WL 3567974, at *4 (D.N.J. Aug. 16, 2017)).   Accordingly, based on, *inter alia*, judicial economy and economic barriers to individual enforcement, a class action is superior to other available options for fair and efficient adjudication of the Settlement Class's Claims. *See, e.g.*, *Alfaro*, 2017 WL 3567974, at *4; *Varacallo*, 226 F.R.D. at 233 (finding class satisfied the superiority requirement where it was "unlikely that individual Class Members would have the resources to pursue successful litigation on their own.").

### B.   The Settlement Meets the Criteria Necessary for Preliminary Approval

The proposed Settlement with CareCentrix is fair, reasonable, and adequate.   For the reasons set forth below, preliminary approval for the proposed Settlement should be granted.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.   It is well established in the Third Circuit that the settlement of class action litigation is favored and encouraged.   *See Ehrheart*, 609 at 594-95; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

Judicial review of a proposed class action settlement consists of a two-step process. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. Fed. R. Civ. P. 23(e). Preliminary approval requires that the parties proposing the settlement make a showing that the Court is likely able to:

> (i)      approve the proposal under Rule 23(e)(2); and
>
> (ii)     certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1)(B).

Approval of the settlement requires that the Court find that the settlement is "fair reasonable and adequate after considering whether:

> (A)     The class representatives and class counsel have adequately represented the class;
>
> (B)     The proposal was negotiated at arm's length;
>
> (C)     The relief provided for the class is adequate, taking into account:
>
> > (i)      the costs, risks, and delay of trial and appeal;
> >
> > (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)     any agreement required to be identified under Rule 23(e)(3)
>
> (D)     the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

These factors substantially overlap with the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) and *Prudential*, 148 F.3d at 323-24, which the Third Circuit continues to apply when evaluating proposed class action settlements. *See Kanefsky v. Honeywell Int'l Inc.,*

2022 WL 1320827, at *4 (D.N.J. May 3, 2022) ("Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors."). The nine *Girsh* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 531 F.2d at 157. The additional discretionary *Prudential* factors to be considered, when appropriate and relevant, are: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential*, 148 F.3d at 323. As set forth below, the Court is likely to find that the Settlement achieved in this case is fair, reasonable, and adequate, and that the Settlement satisfies the *Girsh* factors and the relevant *Prudential* factors.

> **1.     The Settlement Occurred After Good Faith, Arm's-Length Negotiations Conducted By Well-Informed and Experienced Counsel**

The Settlement is the result of extensive arm's-length negotiations undertaken in good faith by counsel for the Parties. As noted above, the Parties' negotiations involved a number of in-person and virtual meetings, and the assistance of the mediator, Judge Schneider.

Throughout every stage of their negotiations, the Parties weighed the strengths and weaknesses of the Class's claims and CareCentrix's defenses, including consideration of, among other issues, liability and damages. The Settlement was also consummated after extensive motion practice, rulings from the Court, and discovery. *See In re Philips/Magnavox TV Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent."). When the Settlement was reached, Plaintiffs and CareCentrix were well-informed regarding the case against CareCentrix, and the likelihood of recovery from CareCentrix. As a result, Plaintiffs and Class Counsel had an adequate basis for assessing the strengths of the Class's claims and the risks of continued litigation against CareCentrix when they entered into the Settlement.

Moreover, Class Counsel, firms with extensive experience in complex class actions and consumer protection claims in particular, believe that the Settlement is in the best interests of the Class. Counsel's judgment is entitled to considerable weight. *See Varacallo*, 226 F.R.D. at 240 ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."). The Settlement is also fully supported by the Plaintiffs.

The fact that the Settlement is the product of arm's length negotiations between experienced and well-informed counsel, with the assistance of a neutral mediator, demonstrates that the process by which the Settlement was reached was fair and not the product of collusion. *See, e.g.*, *Glaberson v. Comcast Corp.*, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) (finding a settlement is presumed to be fair "when the negotiations were at arm's length, there was sufficient

16

discovery, and the proponents of the settlement are experienced in similar litigation"). The process culminating in the present Settlement strongly supports the Court's granting of preliminary approval.

### 2.     The Relief Provided to the Class Is Adequate

Under amended Rule 23(e), the Court must also consider whether the relief to the class is adequate, taking into account: "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i).

As explained above, CareCentrix has agreed to pay $6.3 million and cease collection efforts against Class members as to unresolved debts placed with AMCA for collection purposes. This case has already been litigated for over four years. As with any trial, the trial in this case posed inherent risk. Moreover, as set forth in the procedural history, CareCentrix has demonstrated a willingness to litigate this matter to the fullest. It would be a virtual certainty that CareCentrix would appeal any adverse judgment, which would result in further delay of any recovery on behalf of the Class. While Plaintiffs believe their case is strong, there is an inherent benefit to a certain result now as opposed to the risks of trial (and appeal) where there is a chance of a greater recovery, but a chance of no recovery as well, and a near certainty of delay in any event.

### 3.     Plaintiffs' Proposed Method of Distributing Relief to the Class Is Effective and Treats Class Members Equitably

In connection with approval of notice of the Settlement, processing Class Member Claims and making distributions to Class Members, Plaintiffs also seek the Court's authorization to retain Angeion Group as the Settlement Administrator. Angeion Group is a nationally recognized notice and claims administration firm with extensive experience in settlement administration and will adequately fulfill its duties in this case.

Angeion Group will first obtain a viable and working mailing list of Class Members from CareCentrix, discerned from its records as last known, for use in distributing notice of the Settlement to the Class.  Notice of the proposed Settlement will be sent *via* email when available and via U.S. Mail as described in the Declaration of Steven Weisbrot describing the Notice Plan, which has been filed herewith.  Pursuant to the Notice Plan, Angeion will send a postcard notice *via* first-class U.S. Mail, postage pre-paid, to all Settlement Class Members for whom all mailing addresses are included on the Class List provided to Angeion. Weisbrot Dec., ¶¶ 14-15.  campaigns will supplement direct notice to the Settlement Class Members. Weisbrot Dec., ¶¶ 16-19. A Settlement Website for publishing case deadlines, case documents, and submission of Claim Forms, optimized for ease-of-use, will be made available to Settlement Class Members, along with a toll-free hotline available 24 hours a day, seven days a week.  Weisbrot Dec.,¶ 22.

The proposed method of distributing relief to Class Members is simple and will be based upon valid Claim Forms filed, subject to distribution as outlined in the Settlement Agreement at ¶ IV, 2.  These calculations are based upon Class Counsel's extensive experience in data breach settlements.  The Claims process also includes a dispute resolution and appeal process to allow Settlement Class Members a full and fair opportunity to cure any deficient Claims.  Settlement Agreement ¶ IV. 3.  This method easily satisfies Rules 23(e)(2)(C)(ii) and 23(e)(2)(D).

### 4.    Proposed Attorneys' Fees

The proposed Settlement Agreement provides that counsel for the Plaintiffs, subject to Court approval, may seek up to 33⅓% of the settlement or $2,066,664.66 for attorneys' fees and reimbursement of out-of-pocket costs and expenses of up to $250,000, and up to $5,000 to each class representative Plaintiff as a Case Contribution Award.  These amounts will be paid out of the Settlement Fund. The proposed attorneys' fee calculation is far below 33⅓% of the Settlement benefits, as—in addition to the Settlement Fund—Class Counsel have also negotiated that

CareCentrix will no longer pursue unresolved debt collection claims sent to AMCA for collection purposes. *See e.g.*, *Beltran v. SOS Ltd.*, 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023) ("In common fund cases, the fees typically awarded to class counsel generally range between 19% to 45% of the settlement fund."); *In re Valeant Pharms. Int'l Inc. Third Party Payor Litig.*, 2022 WL 252807, at *8 (D.N.J. Feb. 22, 2022); ("30% of a fund is a typical fee award."); *James v. Global Tel*Link Corp.*, 2020 WL 6197511, at *10 (D.N.J. Oct. 22, 2020) (award of 30.5% of settlement fund "is well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *9 (D.N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally ranged from 19% to 45% of the settlement fund. . . . Thus, the requested fee in this matter [of one-third of the settlement fund] is within the normal range."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (noting that "[c]ourts within the Third Circuit often award fees of 25% to 33⅓% of the recovery"); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent.").

### C.    The Court Should Approve the Form and Plan for Disseminating Notice to the Settlement Class

Plaintiffs request that the Court approve the form of the proposed Summary Notice and Notice substantially in the forms attached as Exhibits 1 and 2, respectively, to the Preliminary Approval Order, as well as the proposed plan for providing notice of the Settlement to Class Members as set forth in the Preliminary Approval Order. In clear, concise, and plain language, the proposed Notice will "provide all the required information concerning the class members' rights and obligations under the settlement." *Prudential*, 148 F.3d at 328; *see also* Fed. R. Civ. P.

23(c)(2)(B); *Halley v. Honeywell Int'l, Inc.*, 2016 WL 1682943, at \*17 (D.N.J. Apr. 26, 2016) (The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (quoting *Mullane v. Cent. Hanover Bank &Tr. Co.*, 339 U.S. 306, 314 (1950)).  The Notice will advise recipients of, among other things, the nature of the Action, the definition of the Class, the essential terms of the Settlement (including the claims that will be released), information regarding Plaintiffs' motion for attorneys' fees and reimbursement expenses, and the binding effect of the judgment.  The Notice will also provide specifics on the date, time and place of the Fairness Hearing and set forth the procedures, as well as deadlines, for: (i) requesting exclusion from the Class; (ii) entering an appearance; (iii) objecting to the Settlement, the Plan of Distribution and/or the motion for attorneys' fees and reimbursement of expenses; and (iv) submitting a Claim Form. The Summary Notice will provide a summary of the foregoing information and will advise potential Class Members how to obtain the more-detailed Notice.

Likewise, Plaintiffs' proposed notice plan provides notice in a reasonable manner to all Settlement Class Members who would be bound by the proposal—including direct notice via postcard, and supplemental media notice.  Weisbrot Dec., ¶¶ 14-20.  A Claim Form, substantially in the form attached as Exhibit 3 to the Preliminary Approval Order, will be posted on the Settlement Website, and may also be obtained by calling the Claims Administrator's toll-free hotline.  In addition to the Notices and Claim Form, other documents and information relevant to the Settlement will be posted on the Settlement Website, which will be established to give notice of certification of the Class.

This type of notice program is frequently used in class action cases.  The proposed Notice Plan meets the requirements of Rule 23, comports with due process, and will fairly apprise

potential Class Members of the existence of the Settlement and their options in connection therewith.  Accordingly, Plaintiffs respectfully submit that the proposed notice plan is adequate and should be approved by the Court.[5]

### D.    The Court Should Adopt The Parties' Proposed Settlement Schedule

In connection with preliminary approval of the Settlement, Plaintiffs respectfully propose the schedule set forth below for Settlement-related events.  The proposed schedule revolves around the date the Court enters the Preliminary Approval Order and the date of the Fairness Hearing—which Plaintiffs request be 90 days after the anticipated service of the CAFA notice by CareCentrix.

| EVENT | PROPOSED TIMING |
|---|---|
| CareCentrix to provide mailing information for class members | No later than 5 days after preliminary approval |
| Claims administrator to distribute notice to the class in accordance with the notice plan | 45 days after preliminary approval |
| Deadline for Class members to opt out | 60 days after notice |
| Deadline for Class members to object to settlement | 60 days after notice |
| Class counsel file fee application | 21 days before objection deadline |

---

[5]     The Class Action Fairness Act, 28 U.S.C. § 1715, requires notice of the proposed Settlement to be served on appropriate State and Federal officials.  CareCentrix will provide such notice.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, preliminarily certify the settlement class, and enter the proposed Preliminary Approval Order.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs


By:      /s/ James E. Cecchi
            JAMES E. CECCHI

Dated: May 5, 2023

Joseph J. DePalma
Catherine B. Derenze
LITE DEPALMA GREENBERG & AFANADOR LLC
570 Broad Street, Suite 1201
Newark, New Jersey 07102
(973) 623-3000

Amy Keller
Justin Hawal
DICELLO LEVITT LLC
10 North Dearborn Street, 6th Floor
Chicago, Illinois 60602
(312) 214-7900
*Other Labs Track Co-Lead Counsel*