# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# (Newark Vicinage)

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br><br>This Document Relates To:<br>Case No. 2:24-cv-00569-MCA-MAH,<br>*Bratten v. Quest Diagnostics et al.,*<br>*Quest/Optum Track* | Civil No. 2:19-md-02904-MCA-MAH<br><br>Judge Madeline Cox Arleo |

## QUEST DIAGNOSTICS AND OPTUM360'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND FOR MOTION TO DISMISS ............................................... 4

    A.    Allegations in Bratten's Complaint ................................................ 4

    B.    Court Rulings and Plaintiffs' Admissions in the MDL .............. 6

FURTHER BACKGROUND FOR MOTION FOR SUMMARY JUDGMENT ..... 8

    A.    Bratten's Information Was Sent to Only One Debt Collection Agency—AMCA ............................................................................ 8

    B.    Bratten Learns His Medical Information Was Sent to AMCA by No Later Than June 2019 ............................................................... 9

    C.    AMCA Provided Billing or Administrative Services to Defendants ....... 10

    D.    AMCA Never "Actually Viewed" Bratten's Medical Information .......... 11

LEGAL STANDARDS ..................................................................................... 14

ARGUMENT ..................................................................................................... 15

I.    BRATTEN'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................................................................. 15

    A.    Bratten's Claim Fails Because the CMIA Explicitly Authorizes Disclosure of Medical Information to Businesses That Provide Billing or Administrative Services .............................................. 17

    B.    Bratten Cannot State a Claim Under the CMIA Because He Does Not Allege any Injury or That His Information Was Viewed by the Debt Collector ...................................................................... 21

    C.    Bratten's CMIA Claim Fails Because It Is Untimely ............... 24

II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRATTEN'S CLAIM ..................................................................................... 29

    A.    The CMIA Explicitly Authorized Defendants to Disclose Bratten's Medical Information to AMCA Because AMCA Provided Billing or Administrative Services ............................... 31

        1.    The Evidence is Clear that AMCA Provided Billing or Administrative Services to Defendants ................................ 31

        2.    Bratten's Claim That Defendants Sent Unnecessary Medical Information to Debt Collectors Does Not Create a Genuine Issue of Material Fact as to Whether AMCA Provided Billing or Other Administrative Services ................................................. 32

    B.    Bratten Cannot Prove That Any Person at AMCA "Actually Viewed" His Medical Information ................................................ 34

    C.    The Evidence of Bratten's Actual Notice of the Data Breach Confirms That His Claim Is Time-Barred ................................... 38

CONCLUSION ................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Benak ex. rel. Alliance Premier Growth Fund v. All. Cap. Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006)...................................................................28, 36

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................14, 18

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ................................................ 23

*Brown v. Mortensen*,
242 Cal. Rptr. 3d 67 (Ct. App. 2019)....................................................24, 25

*Brown v. Mortensen*,
253 P.3d 522 (Cal. 2011) ...............................................................17, 19, 35

*Cal. Consumer Health Care Council v. Kaiser Found. Health Plan, Inc.*,
47 Cal. Rptr. 3d 593 (Ct. App. 2006)........................................................... 20

*Cammarata v. Port Auth. Of Allegheny Cty.*,
2005 WL 8174502 (W.D. Pa. Dec. 20, 2005) .............................................. 30

*Caprio v. Healthcare Revenue Recovery Grp., LLC*,
709 F.3d 142 (3d Cir. 2013)......................................................................... 14

*Celotex Corp. v. Catrett ex rel. Cartrett*,
477 U.S. 317 (1986) ...................................................................................... 15

*Curinga v. City of Clairton*,
357 F.3d 305 (3d Cir. 2004)......................................................................... 15

*Eisenberg Vill. of L.A. Jewish Home for the Aging v. Suffolk Constr. Co.*,
268 Cal. Rptr. 3d 334 (Ct. App. 2020).................................................24, 25

*Emmerick v. Ridgecrest Reg'l Hosp.*,
2018 WL 784302 (E.D. Cal. Feb. 8, 2018) ............................................18, 32

*Falkenberg v. Alere Home Monitoring, Inc.*,
2015 WL 800378 (N.D. Cal. Feb. 23, 2015)................................................ 22

*Flynn v. Dep't of Corr.*,
    739 F. App'x 132 (3d Cir. 2018) ................................................................. 30

*Grisham v. Philip Morris, USA, Inc.*,
    151 P.3d 1151 (Cal. 2007) ....................................................................... 27

*Heller v. Norcal Mut. Ins. Co.*,
    876 P.2d 999 (Cal. 1994) .................................................................. 17, 20

*Huber v. Simon's Agency, Inc.*,
    84 F.4th 132 (3d Cir. 2023) ..................................................................... 19

*Ieradi v. Mylan Labs., Inc.*,
    230 F.3d 594 (3d Cir. 2000) ..................................................................... 28

*Jolly v. Eli Lilly & Co.*,
    751 P.2d 923 (Cal. 1988) ......................................................................... 26

*Loreaux v. ACB Receivables Mgmt., Inc.*,
    2015 WL 5032052 (D.N.J. Aug. 25, 2015) ............................................... 30

*In re MCG Health Data Sec. Issue Litig.*,
    2023 WL 3057428 (W.D. Wash. Mar. 27, 2023) ...................................... 23

*In re MCG Health Data Sec. Issue Litig.*,
    2023 WL 4131746 (W.D. Wash. June 22, 2023) ...................................... 23

*Norgart v. Upjohn Co.*,
    981 P.2d 79 (Cal. 1999) ..................................................................... 26, 29

*Oddei v. Optum, Inc.*,
    2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) ............................................ 18

*Oddei v. ScanSTAT Techs., LLC*,
    2022 WL 17538747 (9th Cir. Dec. 8, 2022) ............................................. 18

*Peters v. David*,
    2013 WL 5232498 (D.N.J. Sept. 16, 2013) .............................................. 30

*Plumlee v. Pfizer, Inc.*,
    664 F. App'x 651 (9th Cir. 2016) ............................................................. 27

*Raifman v. Wachovia Secs., LLC*,
    649 F. App'x 611 (9th Cir. 2016) ....................................................... 26, 27

*Regents of Univ. of Cal. v. Super. Ct. of Sacramento Cty.*,
　　163 Cal. Rptr. 3d 205 (Ct. App. 2013)..................................................................*passim*

*In re: Retrieval-Masters Creditors Bureau, Inc.*,
　　No. 19-23185-rdd (Bankr. S.D.N.Y. June 17, 2020) .................................................. 10

*Rosas v. BASF Corp.*,
　　187 Cal. Rptr. 3d 354 (Ct. App. 2015)........................................................................ 26

*S.F. CDC LLC v. Webcor Constr. L.P.*,
　　276 Cal. Rptr. 3d 552 (Ct. App. 2021)........................................................................ 25

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*,
　　2008 WL 2473745 (D.N.J. June 13, 2008) .................................................................. 30

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
　　613 F. Supp. 3d 1284 (S.D. Cal. 2020) ........................................................................ 22

*Stephens v. Clash*,
　　796 F.3d 281 (3d Cir. 2015) ........................................................................................ 14

*Sutter Health v. Super. Ct. of Sacramento Cnty.*,
　　174 Cal. Rptr. 3d 653 (Ct. App. 2014)..........................................................22, 23, 38

*Tijerina v. Volkswagen Grp. of Am., Inc.*,
　　2023 WL 6890996 (D.N.J. Oct. 19, 2023) .................................................................. 27

*Vigil v. Muir Med. Grp. IPA, Inc.*,
　　300 Cal. Rptr. 3d 32 (Ct. App. 2022)........................................................ 21, 22, 34, 35

**Statutes**

Cal. Civ. Code § 56.10............................................................................................*passim*

Cal. Civ. Code § 56.26...................................................................................................... 16

Cal. Civ. Code § 56.35............................................................................................*passim*

Cal. Civ. Code § 56.36............................................................................................*passim*

Cal. Civ. Code § 56.101............................................................................................7, 8, 20

Cal. Civ. Code § 56.104.................................................................................................... 16

Cal. Civ. Code § 56.107.................................................................................................... 16

Cal. Code Civ. Proc. § 338(a) ............................................................ 24

Cal. Code Civ. Proc. § 340(a) ..................................................... 24, 25

**Other Authorities**

CDC, National Center for Health Statistics, *ICD-10-CM Preface*, https://ftp.cdc.gov/pub/Health_Statistics/NCHS/Publications/ICD10CM/ 2023/Preface.pdf .......................................................... 13

Centers for Medicare & Medicaid Services*, Professional paper claim form (CMS-1500)* (last modified Sept. 6, 2023), https://www.cms.gov/medicare/billing/electronic billingeditrans/1500 ........................................................................ 33

Christopher Rowland, *Quest Diagnostics discloses breach of patient records*, Wash. Post (June 3, 2019) .............................................................. 27

Fed. R. Civ. P. 12(b)(6) ............................................................. 14, 39

Fed. R. Civ. P. 56 ..................................................................... 15, 39

*Million Confidential Patient Records Exposed*, CPO Magazine (June 11, 2019), https://www.cpomagazine.com/cybersecurity/third-party-data-breach-hits-quest-diagnostics-with-12-million-confidential-patient-records-exposed/ ........................................................................ 28

Quest Diagnostics, Comprehensive Metabolic Panel, Test Code, https://testdirectory.questdiagnostics.com/test/test-detail/10231/comprehensive-metabolic-panel?cc=MASTER ................. 13

Quest Diagnostics, Kapa/Lambda Light Chain, Total, Serum, Test Code, https://testdirectory.questdiagnostics.com/test/test-detail/37863/kappalambda-light-chain-total-serum?cc=MASTER ........................ 13

*Quest Diagnostics Notice Provided to Individuals Regarding AMCA Data Security Incident*, https://newsroom.questdiagnostics.com/press-releases?item=137146 ................................................................ 27

*Quest Diagnostics Statement on the AMCA Data Security Incident*, https://newsroom.questdiagnostics.com/AMCADataSecurityIncidet ................. 27

## **INTRODUCTION**

This case, a renewed effort by counsel for Plaintiff Gregory Bratten and the MDL Plaintiffs to pursue a novel California Confidentiality of Medical Information Act ("CMIA") claim they previously withdrew in this MDL, should be dismissed. After years of contending that Defendants Quest Diagnostics Incorporated ("Quest") and Optum360, LLC ("Optum360") are liable in negligence for the data breach sustained by their vendor AMCA, the MDL Plaintiffs pivoted in March 2023 by seeking this Court's permission to bring this same CMIA claim using discovery obtained in the AMCA MDL. The theory contends that Defendants violated the CMIA at the moment they voluntarily disclosed patient medical information to AMCA in its capacity as their debt collection vendor, regardless of what happened to that information later. Bratten's sole claim is a copycat of that 2023 proposed claim, which the MDL Plaintiffs withdrew after the close of briefing on their motion for leave to amend.

Consistent with Defendants' arguments in opposition to Plaintiffs' motion for leave to amend, Bratten's claim still fails on the pleadings for several independent reasons. Bratten's claim is inconsistent with the express requirements of the statute and, indeed, asserts that Defendants are liable for doing what the statute expressly authorizes. He does not assert, as the CMIA requires, any statutorily-recognized injury or that any confidential information was *viewed*. And his claim is untimely in any event.

Further, though the Court need not proceed past Defendants' motion to dismiss arguments, the MDL discovery shows that Bratten cannot prove at least two of the

required elements or that his claim is timely, and that summary judgment should thus be granted for Defendants. Therefore, to prevent further waste of judicial resources on an untenable claim, Defendants have brought this motion asking the Court to dispose of Bratten's claim now, by dismissal on the pleadings or, alternatively, by entry of summary judgment.

*Motion To Dismiss*. Bratten's only claim rests on the theory that Defendants violated Section 56.10 of the CMIA, Cal. Civ. Code § 56.10, by allegedly disclosing patient medical information without authorization to their billing-collection vendors, such as AMCA, irrespective of the AMCA data breach. The Court need look no further than Bratten's ten-page Complaint to conclude that this theory is not viable.

*First*, as this Court has already determined, § 56.10's statutory language explicitly *authorizes* healthcare providers and contractors to disclose medical information to entities, including companies like AMCA, that provide billing and administrative services. That is fully dispositive here.

*Second*, the Complaint independently fails because it does not allege the necessary elements of either of the two CMIA private-right-of-action provisions it relies on. One provision (§ 56.35) requires a plaintiff to allege personal injury or economic loss. But Bratten does not allege any. The other provision (§ 56.36) requires a plaintiff to allege that the recipient of the allegedly-unauthorized disclosure actually *viewed* the medical information received. Bratten does not allege this either.

*Third*, Bratten's claim must be dismissed because it is untimely under the applicable statutes of limitations.

Any one of these three deficiencies is fatal to Bratten's Complaint. Because Bratten fails to state a claim and any attempt to amend would be futile, his Complaint should be dismissed with prejudice.

<u>Motion For Summary Judgment</u>. Bratten has asserted this unauthorized-disclosure-to-debt-collectors CMIA claim despite the factual record already developed in the MDL, which shows that he cannot *prove* it. Bratten's Complaint relies heavily on discovery from the MDL showing (i) which specific data about Bratten was transmitted to AMCA (the only collection agency to which it was sent); and (ii) what subset of that information was stored by AMCA for use by its personnel. Based on this discovery, there is no question that Bratten cannot carry his burden to prove his claim for at least three reasons.

*First*, the factual record conclusively establishes that AMCA provided billing and administrative services, such that disclosure to AMCA of Bratten's medical information was explicitly authorized under the very CMIA provision Bratten cites as his sole cause of action.

*Second*, Bratten will be unable to prove the required element that any AMCA personnel actually *viewed* his confidential medical information. Evidence regarding the actual information about Bratten that was stored at AMCA, and AMCA personnel's use of the database where that information was stored, demonstrates that Bratten's

confidential medical information was *not* actually viewed by AMCA.

    ***Third***, Bratten's claim is time-barred, as discovery confirms that Bratten had actual notice of his claim years ago.

    Therefore, the factual record before the Court is more than sufficient to enter summary judgment for Defendants on Bratten's CMIA claim on a number of independent bases.

*    *    *

    This Court is well-positioned to adjudicate Bratten's claim as a matter of law now, either by dismissing it on the face of the pleadings or summarily disposing of it based on a developed record that presents no genuine issue of material fact. As shown below, courts expediently dispose of cases where doing so would serve the interests of justice and promote the efficient use of judicial resources. The Court should do so here.

## BACKGROUND FOR MOTION TO DISMISS

### A.    Allegations in Bratten's Complaint

    Bratten alleges that he received blood testing services at a Quest laboratory as ordered by his physician and, when he failed to pay his bill, his account was sent to a debt collection agency. Complaint, *Bratten v. Quest Diagnostics Inc.*, No. 23-cv-00569 (D.N.J. Nov. 3, 2023), ECF No. 3-1 ("Bratten Compl.") ¶¶ 2, 10. Bratten's Complaint acknowledges that the latest date Defendants sent his information to a debt collection agency was December 31, 2018. *Id.* ¶ 2.

4

The Complaint further alleges that when Defendants referred a patient like Bratten to a debt collection agency, Defendants sent the patient's information to the debt collector in two separate "placement" files: one containing demographic and testing information and the other containing any diagnosis information that had been provided. *Id.* ¶¶ 11–13. Bratten alleges that the placement files Defendants provided to AMCA potentially contained his and other patients' demographic and contact information, the name of the referring physician, the date on which the patient received laboratory services from Quest, procedure codes identifying the tests that had been performed ("CPT Codes"), and diagnosis codes identifying the diagnoses that led to those tests ("ICD Codes"). *Id.* ¶¶ 2, 11–14.

Bratten does not and cannot allege that his information was sent to any other debt-collection vendor besides AMCA, but instead generically alleges that Defendants "transmitted Mr. Bratten's sensitive medical information to **a** third-party debt collection company." Bratten Compl. ¶ 2 (emphasis added).[1]

Bratten does not allege that anyone at any debt collection agency, including AMCA, actually viewed the medical information that Defendants allegedly sent to the agency. Bratten also does not allege that he suffered any economic loss or personal

---

[1] Despite relying heavily on discovery obtained in this MDL (hence its many redactions), the Complaint mentions AMCA only passingly, *id.* ¶ 39—presumably to try to support Bratten's unsuccessful effort to avoid having the JPML join his case with the MDL— and otherwise refers generally to Defendants' use of "third-party debt collection companies," *id.* ¶¶ 1, 10–11, 37, 39–40.

injury as a result of the alleged disclosure of his medical information to a debt collection agency. *See id.* ¶ 41 (principally seeking "nominal damages" authorized by statute).

**B.    Court Rulings and Plaintiffs' Admissions in the MDL**

Bratten's Complaint is a copy of the CMIA claim that the MDL Plaintiffs (represented by Bratten's counsel) attempted to bring in March 2023 through a proposed amended complaint, but which they ultimately withdrew after their motion for leave to amend had been fully briefed. *See* MDL ECF No. 490 (Mot. Leave to Amend); MDL ECF No. 530 (Ltr. Withdrawal Mot. Leave to Amend); MDL ECF No. 538 (Order Granting Withdrawal). Defendants showed in their opposition to the motion for leave to amend that the proposed amendment would have been futile for several reasons. First, the new CMIA claim was time-barred. Second, the proposed amended complaint otherwise failed to state a claim, both because § 56.10 of the CMIA authorizes disclosure to entities that provide "billing or other administrative services" (such as AMCA) and because the proposed complaint lacked any allegations that AMCA "viewed" confidential medical information, as required to state a claim under the CMIA. *See* MDL ECF No. 500 at 23–28.

Based on the explicit concessions in the MDL Plaintiffs' governing complaint, this Court confirmed in a prior opinion that § 56.10 authorizes disclosure to AMCA because AMCA provided billing services. Specifically, the MDL Plaintiffs repeatedly referred to AMCA in their complaint as a "*billing* collections vendor" or a "*billing* collector," or as providing "*billing* collection services" for Defendants. *See, e.g.,* MDL

ECF No. 317 (Am. Consol. Compl.) ¶¶ 1, 138, 343, 511, 543, 554, 571, 598, 619, 639, 647, 656, 665, 681, 696, 706 (emphases added). They also acknowledged that Defendants' purpose for sending patient information to AMCA related to billing and payment. *Id.* ¶ 336 (alleging Defendants "transfer[red] additional information to AMCA *for purposes of addressing billing questions, collection disputes,* and credit reporting issues," including "protected health information [PHI] under HIPAA"). And in the MDL Plaintiffs' explanation to this Court about why they should be allowed to amend their complaint to add the very CMIA cause of action that Bratten now brings, Plaintiffs acknowledged that disclosure of medical information from Defendants to a debt collector may be "needed to address billing questions, collection disputes, and credit reporting issues." MDL ECF No. 504 (Pls.' Reply Mot. Leave Amend) at 2.

This Court addressed this exact issue at the motion to dismiss stage, when not only Quest and Optum360 but also MDL Defendant Labcorp moved to dismiss the MDL Plaintiffs' different CMIA claim (under § 56.101, rather than § 56.10) included in the operative complaints. Ruling on the Labcorp motion first, the Court addressed Labcorp's showing that "providing information to AMCA for billing purposes was expressly authorized by the CMIA." MDL ECF No. 507 at 9. The Court concluded that all parties agreed: "Plaintiffs concede that CMIA expressly authorizes health providers to disclose medical information to an 'entity that provides billing, claims

management, medical data processing, or other administrative services,' Cal. Civ. Code § 56.10(c)(3), such as AMCA." *Id.* at 10.[2]

Just weeks after this Court made that statement regarding § 56.10 in its Labcorp ruling, the MDL Plaintiffs withdrew their motion for leave to amend the complaint to add a claim under § 56.10. Months later, the MDL Plaintiffs' counsel filed this action on behalf of Bratten in California Superior Court containing a carbon copy of that § 56.10 claim.

The JPML rejected Bratten's opposition to Defendants' motion to transfer and transferred Bratten's action to the MDL pending before this Court.

## FURTHER BACKGROUND FOR MOTION FOR SUMMARY JUDGMENT

### A. Bratten's Information Was Sent to Only One Debt Collection Agency—AMCA.

Bratten alleges his information was sent to only "*a*" single collection vendor, Bratten Compl. ¶ 2 (emphasis added), and he does not allege that Defendants sent his medical information to any debt collection agency besides AMCA. *See id.* Indeed, Defendants' records confirm that AMCA is the *only* collection vendor to which

---

[2] This Court held that the provision authorizing disclosure of medical information to billing-services entities found in § 56.10 (the CMIA section now at issue in Bratten's Complaint, as it would have been with respect to the MDL Plaintiffs' now-withdrawn proposed amended complaint) did not mandate dismissal of the MDL Plaintiffs' different CMIA claim premised on the data breach itself, which had been brought under a different section (§ 56.101). MDL ECF No. 507 (Mot. Dismiss Order relating to Labcorp) at 10. The Court reasoned that § 56.101 created an "independen[t]" duty that was separate from § 56.10, and the billing-entity-authorization language in § 56.10 is not found in § 56.101. *Id.*

Bratten's information was sent. Declaration of Christine D. Nimon ("Nimon Decl.") ¶ 4.

### B. Bratten Learns His Medical Information Was Sent to AMCA by No Later Than June 2019.

Bratten's Complaint alleges that his account was sent to a debt collection agency no later than December 31, 2018. Bratten Compl. ¶ 2. Discovery in the MDL shows his account was sent to AMCA earlier that year.

███████████████████████████████████

*See* Nimon Decl. ¶ 6. Then, on July 16, 2018, after Bratten had failed to pay his Quest bill for four months, Defendants sent his account to AMCA to attempt to collect on his unpaid bill. *Id.*

In June 2019, AMCA sent a letter to Bratten and other Quest patients notifying them that AMCA had suffered a potential data breach. Declaration of Carl Stevens ("Stevens Decl.") ¶¶ 4–7. AMCA's notice letter identified "a possible security compromise of [AMCA's] web payments page," and stated that it could not "rule out the possibility that the personal information on [AMCA's] system was at risk during the attack." Ex. A (example of notice letter prepared from AMCA template). AMCA further stated that "[t]he information on our system that was compromised *may* have included your: first and last name, Social Security Number, name of lab or medical service provider, date of medical service, referring doctor, certain other medical information, but not test results." *Id.* (emphasis added).

## C.    AMCA Provided Billing or Administrative Services to Defendants.

There has already been comprehensive discovery in the MDL, including from AMCA, regarding the services that AMCA provided to Defendants, the nature of the patient data (including Bratten's) that AMCA received, and how AMCA maintained that data.[3]

Documents produced in discovery and deposition testimony (including from AMCA's former executives and employees) show that AMCA provided Defendants billing and related administrative services. *See, e.g.,* Ex. B (contract between Quest and AMCA, later reassigned to Optum360, defining the services AMCA provided and authorizing AMCA to "collect[] Accounts that are true, correct, due and *unpaid*" and to "*[r]eceive payments* made on the Accounts") (emphases added); Ex. C, Deposition of Jennifer Kain (AMCA account manager) ("Kain Dep.") at 16:15–18:5 (explaining that

---

[3] AMCA produced its full email servers (with narrow privilege exceptions), as well as images of its internal systems. *In re: Retrieval-Masters Creditors Bureau, Inc.*, ECF No. 301 19-23185-rdd (Bankr. S.D.N.Y. June 17, 2020) (Order relating to MDL Discovery). In light of AMCA's bankruptcy and negotiated discovery agreement with the MDL parties, no additional document discovery is available from AMCA beyond what has been produced in the MDL. In addition, Defendants collectively produced more than 30,000 documents, including from their current and former employees who oversaw billing and collections for Quest's laboratory services. The MDL Plaintiffs also deposed five former AMCA employees and ten current or former Quest or Optum360 employees, during which they questioned witnesses extensively on, among other topics: the types of medical information transmitted to AMCA; the manner or method of transmission of account placement files containing medical information between Defendants and AMCA; how AMCA used medical information in connection with the services it provided to Defendants; and the security of AMCA's internal systems on which medical information was stored.

AMCA provided "administrative services" to "put together insurance claim forms," which it "would either *bill* directly or mail . . . off to [a patient's] insurance company") (emphasis added); Ex. D, Deposition of Jeffrey Wollman (AMCA CFO) ("Wollman Dep.") at 166:17–20 (explaining that AMCA collected on unpaid bills by providing patients with an option to make payments through AMCA's own payment portal); Ex. E, Deposition of Quest 30(b)(6) representative ("Quest Dep.") at 315:4–10 ("Collections services are part of billing services.").

### D.    AMCA Never "Actually Viewed" Bratten's Medical Information.

Upon receipt of account placement files from Defendants and other clients, AMCA utilized "an automatic process" to extract data from those files and load "[o]nly a subset" of the data into a proprietary database developed by AMCA called the "CHAMP database." Ex. C, Kain Dep. at 153:8–23; *see also id.* at 147:18–24 (placement files received from Defendants "were never sent to CHAMP"). The CHAMP database was produced to all parties in the MDL, including Bratten's counsel, years ago.

The evidence shows that the CHAMP database was the only place in AMCA's systems through which employees accessed medical information about debtors; and employees would access that medical information only if they spoke with an individual patient in an effort to collect on the outstanding debt. *See, e.g., id.* at 38:9–19 ("[T]hey [in the call center] pulled the information up on the screen when speaking to patients so they can have the information right in front of them as far as date of service, what doctor they saw, what tests were performed."); Ex. F, Deposition of Russell Fuchs

(AMCA CEO) ("Fuchs Dep.") at 56:10–15 (call center employees would "access the CHAMP system to obtain information about debtors").[4]

Two types of medical information are at issue in this case: diagnosis codes and procedure codes.[5] The account placement files for Bratten that Defendants transmitted to AMCA contained ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████.[6] Nimon Decl. ¶ 6.

*Diagnosis Codes*. **The CHAMP database did *not* contain Bratten's diagnostic codes**. Declaration of Ashim Kapur ("Kapur Decl.") ¶ 5. That is consistent with the

---

[4] Even within the CHAMP database, "medical information would not come up on the page that would be initially viewable on your screen"; if AMCA employees needed to view a particular piece of medical information for an individual patient, they had to "navigate to a separate page in order to be able to view that type of information." Ex. G, Deposition of David Ulrich (AMCA sales and marketing director) ("Ulrich Dep.") at 23:7–15.

[5] While Bratten's CMIA claim relates only to medical information, the account placement files sent to AMCA did not contain Bratten's social security number or any financial information (such as payment or insurance information). Nimon Decl. ¶ 7.

[6] Bratten's allegation that the placement files included a "later-resulting diagnosis" (e.g., a diagnosis made after the tests were performed), Bratten Compl. ¶ 14, is both unsupported and contradicted by the evidence in discovery. The evidence shows that the "diagnosis data" was provided by the "ordering clinician" *before* the testing services to "indicate[] why a patient was having lab work"—not after the physician received the results of the testing and potentially used those results to make, confirm, or change a diagnosis. Ex. H, Deposition of Pablo Lake (former Quest and Optum360 employee who oversaw billing and collections) ("Lake Dep.") at 146:20–147:9.

evidence that Defendants instructed AMCA not to use diagnosis codes around the time that the federal government promulgated a different diagnosis code classification scheme (years before Bratten's account was placed with AMCA for collections), which was not compatible with the technical parameters in Defendants' system for transmitting such codes to AMCA.[7] *See* Ex. I, Harkins Dep. at 164:3–20, 173:14–21.

    *Procedure Codes*. Two procedure codes Defendants provided for Bratten were stored on CHAMP, which reflected ██████████████████████████████████ ████████████████████████████████████████████████ *See* Kapur Decl. ¶ 4 (identifying codes ████████████████ on CHAMP).[8]

---

[7] The government's switch from the older classification scheme ("ICD-9") to the new one ("ICD-10") expanded the maximum number of characters in a diagnosis code from five digits to seven digits. *See* CDC, National Center for Health Statistics, *ICD-10-CM Preface*, https://ftp.cdc.gov/pub/Health_Statistics/NCHS/Publications/ICD10CM/2023/Preface.pdf. However, Defendants never updated their technical systems to allow for the longer codes to be included in the applicable field in the placement file—meaning that the diagnosis code information transmitted after the transition to ICD-10 was regularly truncated, and thus could not be reliably used by AMCA. As a result, Defendants informed AMCA around the time of the switch to ICD-10 that diagnosis codes were "invalid" and should be ignored. Ex. I, Deposition of Mickey Harkins (former Quest and Optum360 employee who worked closely with AMCA) ("Harkins Dep.") at 164:3–20, 173:14–21.

[8] *See also* Quest Diagnostics, ██████████████████████████████ █████████████████████████████████████ cc=MASTER (identifying CPT code ██████ as corresponding to a ██████); Quest Diagnostics, ██████████████████ ██████ ██████ ██████████ https://testdirectory.questdiagnostics.com/test/test-detail/██████████████████████ cc=MASTER (identifying CPT code ██████ as corresponding to a ██████████████████).

As stated above, AMCA employees accessed medical information only if needed when "speaking to patients" on a call. Ex. C, Kain Dep. at 38:9–19. Bratten's Complaint does not allege that he had any phone discussions—or any communications at all—with a representative of AMCA. AMCA's records likewise show that it never made contact with Bratten by phone. Kapur Decl. ¶ 6. Specifically, AMCA tracked in CHAMP its attempts to reach individual patients by phone to try to collect payment. The CHAMP database contains records of numerous attempts to reach Bratten by phone between July 18, 2018, and April 6, 2019, but none were successful.[9] *Id.* ¶¶ 6–9.

## LEGAL STANDARDS

Under Rule 12(b)(6), a district court should dismiss for failure to state a claim when the plaintiff fails to allege "sufficient factual matter, which if accepted as true, states a facially plausible claim for relief." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013) (citation omitted). The Court can credit only "well-pleaded, nonconclusory factual allegations" and must disregard "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009). Additionally, "a district court may grant a motion under Rule 12(b)(6) raising a limitations defense if the face of the complaint demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (cleaned up).

---

[9] For two of those attempts, AMCA recorded that the calls "Connected," which indicates that an automatic dialer connected an agent in AMCA's call center to a call that had been placed to Bratten's phone number, but both times the calls reached Bratten's "[a]nswering [m]achine" or received "[n]o [a]nswer." Kapur Decl. ¶¶ 6–9.

Summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Curinga v. City of Clairton*, 357 F.3d 305, 307 n.1 (3d Cir. 2004). The moving party is entitled to judgment when the non-moving party fails to make a sufficient showing on an essential element of his claim. *Celotex Corp. v. Catrett ex rel. Cartrett*, 477 U.S. 317, 323 (1986).

## **ARGUMENT**

## I.    **BRATTEN'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

A private individual bringing a CMIA claim must allege that (1) the defendant violated a substantive CMIA provision, and (2) the elements of a separate private-cause-of-action provision of the CMIA are met. *See Regents of Univ. of Cal. v. Super. Ct. of Sacramento Cty.*, 163 Cal. Rptr. 3d 205, 218 (Ct. App. 2013). Here, Bratten's sole cause of action alleges that Defendants violated Cal. Civ. Code § 56.10 (Bratten Compl. ¶¶ 35, 37, 41), which provides in relevant part:

> (a) A provider of health care . . . or contractor shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, ***except as provided in subdivision (b) or (c)***.
> . . .
> (c) A provider of health care . . . ***may disclose*** medical information as follows:
> . . .
>> (3) The information ***may be disclosed to a person or entity that provides billing,*** claims management, medical data processing, ***or other administrative services for providers of health care*** . . . .

(emphases added).

15

To satisfy the private-right-of-action requirement, Bratten's Complaint relies on two CMIA provisions. First, he cites Cal. Civ. Code § 56.35, which states that a patient "whose medical information has been used or disclosed in violation of Section 56.10 . . . and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages . . . attorney's fees . . . , and the costs of litigation."[10] Bratten Compl. at 10 ¶ D.1. Second, he cites Cal. Civ. Code § 56.36(b), which permits recovery of "nominal damages of one thousand dollars ($1,000)" and "[t]he amount of actual damages, if any"—but *only* if confidential medical information was "negligently released . . . in violation of [the CMIA]."[11] *Id.* at 10 ¶¶ D.2–3.

Bratten's Complaint fails to state a claim for three independent reasons. *First*, § 56.10 explicitly authorizes the very conduct Bratten claims is a CMIA violation: the disclosure of medical "information . . . to a person or entity"—i.e., AMCA—"that provides billing, claims management, medical data processing, or other administrative

---

[10] Cal. Civ. Code § 56.35 provides in full: "In addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10, 56.104, 56.107, or 56.20 or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

[11] Cal. Civ. Code § 56.36(b) provides in full: "In addition to any other remedies available at law, an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) Except as provided in subdivision (e), nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it is not necessary that the plaintiff suffered or was threatened with actual damages. (2) The amount of actual damages, if any, sustained by the patient."

services for providers of health care." Cal. Civ. Code § 56.10(c)(3). ***Second***, Bratten cannot meet the requirements of either private-right-of-action provision he relies on because he fails to allege that: (i) he suffered any economic loss or personal injury, as required by § 56.35, or (ii) someone at the recipient debt collector actually *viewed* his data, as California courts have held is a requirement of § 56.36(b). ***Third***, Bratten's CMIA claim is barred by the statute of limitations because it accrued no later than December 31, 2018, and Bratten waited years after being put on inquiry notice that his medical data had been transmitted to a third-party debt collector before asserting his claim.

### A. Bratten's Claim Fails Because the CMIA Explicitly Authorizes Disclosure of Medical Information to Businesses That Provide Billing or Administrative Services.

The CMIA provides that a healthcare provider is authorized to disclose medical information to a third party "if the provider can show that the disclosure is excepted either by the mandatory (§ 56.10, subd. (b)) or permissive (§ 56.10, subd. (c)) provisions of the act, allowing disclosure of medical information under specified circumstances." *Brown v. Mortensen*, 253 P.3d 522, 533 (Cal. 2011) (cleaned up) (quoting *Heller v. Norcal Mut. Ins. Co.*, 876 P.2d 999, 1003 (Cal. 1994)).

Here, because Bratten alleges that his information was disclosed to "a third-party debt collection company," Bratten Compl. ¶ 2, his claim is barred by the CMIA's exception explicitly authorizing medical information to be "disclosed to a person or entity that provides billing . . . or other administrative services for providers of health

care," Cal. Civ. Code § 56.10(c)(3). California courts consistently dismiss CMIA claims when the allegedly unauthorized disclosure was "related to billing and payment for treatment Plaintiff received." *See Emmerick v. Ridgecrest Reg'l Hosp.*, 2018 WL 784302, at *4 (E.D. Cal. Feb. 8, 2018) (dismissing CMIA claim because § 56.10(c)(3) applied); *see also Oddei v. Optum, Inc.*, 2021 WL 6333467, at *3 (C.D. Cal. Dec. 3, 2021) (noting that CMIA § 56.10(c)(3) permits disclosure to a third party providing health information management services without authorization from the patient), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022).[12]

Bratten attempts to avoid this straightforward conclusion with the assertion that "[t]hird-party debt collectors are not entities that provide billing, claims management, medical data processing, or other administrative services for Quest or Optum360." Bratten Compl. ¶ 18. That is "a legal conclusion and, as such, [is] not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680 (cleaned up).

And it is a legal assertion that strains credulity. Bratten provides no explanation for what "debt collectors" like AMCA were doing if not providing billing or other administrative services. Debt collection by its very nature involves sending bills and

---

[12] Also, as this Court previously observed in a motion to dismiss ruling regarding another claim in the MDL Plaintiffs' complaint, Defendants *did* have authorization via Quest's privacy policy to transmit patient medical data to AMCA, regardless of whether doing so was strictly necessary for debt collection. MDL ECF No. 578 (Mot. Dismiss Order relating to Quest/Optum360) at 5 ("Plaintiff[s'] argument that Quest provided more information than needed fails to rebut the undisputed fact that the policy permitted disclosure of private information to third parties such as AMCA when collections services were necessary.").

making efforts to collect payment on bills, and obviously falls within the ambit of billing services or, at least, other administrative services. *See, e.g., Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 141 (3d Cir. 2023) ("Crozer contracted with SAI—*a debt collection agency that specializes in medical billing*—to collect outstanding bills from Huber and other patients.") (emphasis added).[13]

Consistent with this obvious point, the MDL Plaintiffs (represented by Bratten's counsel) have repeatedly referred to AMCA as a "*billing* collections vendor" that provided "*billing* collection services." *See, e.g.*, MDL ECF No. 317 (Am. Consol. Compl.) ¶¶ 1, 138, 343, 511, 543, 554, 571, 598, 619, 639, 647, 656, 665, 681, 696, 706 (emphases added); *see also* MDL ECF No. 504 (Pls.' Reply Mot. Leave to Amend) at 2 (acknowledging that medical information may be "needed to address billing questions, collection disputes, and credit reporting issues"). And, critically, this Court *already determined* that AMCA provided billing-related services, observing: "Plaintiffs concede that CMIA expressly authorizes health providers to disclose medical information to an

---

[13] That the California legislature authorized the transmission of medical information to debt collectors should not be surprising because medical information often constitutes proof that a debt is owed. As explained by the California Supreme Court in *Brown*, which involved an attempt to collect a medical bill: "When [the patient] requested that [the debt collector] provide proof of the debt, [the debt collector] sent [the patient] a copy of [the patient's] dental chart, as well as the charts of [the patient's] minor children." *Brown*, 253 P.3d at 524–25. Notably, the plaintiff in *Brown* claimed that the debt collector's *subsequent* transmission to credit reporting agencies was illegal, but did *not* allege that transmission to the debt collector violated the CMIA. Bratten's reading of the CMIA would create an absurd situation, where a debt collector could not be provided the very information it needs to show a patient disputing a debt that the debt is in fact owed.

19

'entity that provides billing, claims management, medical data processing, or other administrative services,' Cal. Civ. Code § 56.10(c)(3), *such as AMCA*."[14] MDL ECF No. 507 (Mot. Dismiss Order relating to Labcorp) at 10 (emphasis added).

Bratten also claims that "third-party debt collectors did not need medical information to collect outstanding debts." Bratten Compl. ¶ 16. Even if that were true (and it is not, *see supra* at 6–7, 10–12, *infra* at 31–34), it would be irrelevant. The statutory text permits disclosure to entities providing "billing . . . or other administrative services," without any qualification. Cal. Civ. Code § 56.10(c)(3); *see also Heller*, 876 P.2d at 1003 (to determine the scope of a CMIA exception, the court "look[s] to the language of the statute itself to determine if the ordinary meaning is unambiguous"). Indeed, California courts have refused to "graft a relevancy limitation onto" a CMIA exception when "nothing in the language of this particular provision" supports that the legislature intended to create one. *Cal. Consumer Health Care Council v. Kaiser Found. Health Plan, Inc.*, 47 Cal. Rptr. 3d 593, 598 (Ct. App. 2006) (comparing relevancy limitations found in other sections of the CMIA, such as section 56.10(c)(8), and concluding that "*the absence of such parameters* from the language of [another provision of § 56.10] was intentional") (emphasis added). Because the text of § 56.10(c)(3) lacks any requirement of necessity,

---

[14] As noted *supra* at 8 n.2, the Court only denied dismissal of the MDL Plaintiffs' original CMIA claim because it was brought under a different, "independent" CMIA section (§ 56.101), which does not contain the authorization language found in § 56.10 (under which Bratten brings his claim). *See* MDL ECF No. 507 at 9–10.

whether medical information is necessary for bill collection is irrelevant to Bratten's claim.

In short, the CMIA explicitly authorizes the very conduct Bratten contends is a CMIA violation, and his claim must therefore be dismissed for failure to state a claim.

**B.     Bratten Cannot State a Claim Under the CMIA Because He Does Not Allege any Injury or That His Information Was Viewed by the Debt Collector.**

Bratten's claim also fails because he does not allege facts necessary for him to fall within either of the two CMIA private-right-of-action provisions on which he relies.

The first is Cal. Civ. Code § 56.35. *See* Bratten Compl. at 10 ¶ D.1. That provision, however, authorizes patients to bring suit only if they have "sustained economic loss or personal injury." Bratten alleges neither. That is fatal to his attempt to sue in reliance on § 56.35.

The second provision on which he relies is Cal. Civ. Code § 56.36(b). *See* Bratten Compl. at 10 ¶¶ D.2–3. But this too is unsupported because Bratten does not allege that his medical information was actually viewed by the debt collection agency to which it was allegedly disclosed. *See id.* ¶ 2. It is well-settled California law that § 56.36 requires that the patient's medical information disclosed by a healthcare provider must have been "*in fact, viewed* by an unauthorized individual." *Regents*, 163 Cal. Rptr. 3d at 221 (emphasis added); *accord Vigil v. Muir Med. Grp. IPA, Inc.*, 300 Cal. Rptr. 3d 32, 43–44 (Ct. App. 2022), *review denied* (Cal. Jan. 25, 2023). As *Regents* explained, the phrase "negligent release" in § 56.36(b) requires "more than an allegation of loss of possession

21

by the health care provider." 163 Cal. Rptr. 3d at 221. Rather, "[w]hat is required is pleading, and ultimately proving, that the confidential nature of the plaintiff's medical information was *breached. . . ." Id.* (emphasis added). Put simply, "a breach of confidentiality under the CMIA *requires a showing that an unauthorized party viewed* the confidential information." *Vigil*, 300 Cal. Rptr. 3d at 42 (emphasis added); *see Sutter Health v. Super. Ct. of Sacramento Cnty.*, 174 Cal. Rptr. 3d 653, 659 (Ct. App. 2014) ("[T]he *Regents* court held that to qualify for an award of nominal damages under section 56.36, subdivision (b)(1), a plaintiff must plead and prove that the records (in both that case and this case, the stolen records) *were actually viewed* by an unauthorized person.") (emphasis added and omitted).[15]

California courts have explained that this requirement that the plaintiff's information be "actually viewed" follows from § 56.36(b)'s use of the word "negligently," because "[i]mposing liability on a health care provider for the release of confidential information without a showing that an unauthorized party viewed the information would eliminate the injury and causation elements of negligence." *Vigil*, 300 Cal. Rptr. 3d at 43. And it is consistent with the purpose of the CMIA: "It is the medical information, not the physical record (whether in electronic, paper, or other

---

[15] *Accord In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1298–99 (S.D. Cal. 2020) ("When suing for nominal damages, plaintiffs do not have to prove they 'suffered or [were] threatened with actual damages,' Cal. Civ. Code § 56.36(b)(1), but they must plead that an unauthorized third party viewed or accessed their confidential information."); *Falkenberg v. Alere Home Monitoring, Inc.*, 2015 WL 800378, at *3 (N.D. Cal. Feb. 23, 2015) (same).

form), that is the focus of the Confidentiality Act," and "[w]hile there is certainly a connection between the information and its physical form, possession of the physical form without actually viewing the information does not offend the basic public policy advanced by the Confidentiality Act." *Sutter Health*, 174 Cal. Rptr. 3d at 660; *see also id.* at 657 ("The mere possession of the medical information or records by an unauthorized person [i]s insufficient to establish breach of confidentiality if the unauthorized person has not viewed the information or records.").

Courts therefore dismiss CMIA claims asserting authorization to sue under § 56.36(b) when the plaintiff fails to allege that the medical information at issue was actually viewed by an unauthorized third party—including in very recent federal-court decisions. *See, e.g., Regents*, 163 Cal. Rptr. 3d at 221; *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) (dismissing CMIA claim for failure to allege medical information was "viewed," even when third party to whom it was disclosed received the information and used it to generate targeted advertising); *In re MCG Health Data Sec. Issue Litig.*, 2023 WL 3057428, at *16 (W.D. Wash. Mar. 27, 2023) (dismissing CMIA claim because the plaintiff "ha[d] not sufficiently alleged an unauthorized individual *viewed* her medical information") (emphasis in original), *report and recommendation adopted*, 2023 WL 4131746 (W.D. Wash. June 22, 2023).

Here, Bratten fails to allege that anyone at the third-party debt collector that allegedly received his medical information actually *viewed* it. This is fatal to Bratten's

claim, and accordingly, for this additional independent reason, Bratten's Complaint should be dismissed.

### C. Bratten's CMIA Claim Fails Because It Is Untimely.

Bratten's claim also fails because it is barred by the statute of limitations. Two different limitations periods apply here—neither is met. Bratten's claim for statutory nominal damages brought under Cal. Civ. Code § 56.36(b)(1) is subject to the one-year statute of limitations for an "action upon a statute for a penalty." Cal. Code Civ. Proc. § 340(a).[16] The rest of his claim is subject to the three-year statute of limitations for an "action upon a liability created by statute, other than a penalty or forfeiture." Cal. Code Civ. Proc. § 338(a). Under either limitations period, Bratten's claim is facially untimely because, based on the allegations in his own Complaint, the transmission of his medical information occurred by December 31, 2018, at the latest. Bratten Compl. ¶ 2.[17] As a result, the statute of limitations expired on December 31, 2019 for Bratten's claim for statutory nominal damages and on December 31, 2021 for the rest of his CMIA claim.

To the extent Bratten may seek to rely on California's "discovery rule" to argue that his claim is not time barred, he cannot do so.

---

[16] *See also Brown v. Mortensen*, 242 Cal. Rptr. 3d 67, 74 (Ct. App. 2019) ("nominal statutory damages [under the CMIA] serve as a penalty"); *Eisenberg Vill. of L.A. Jewish Home for the Aging v. Suffolk Constr. Co.*, 268 Cal. Rptr. 3d 334, 343 (Ct. App. 2020) (a "penalty" for purposes of Section 340(a) is "a recovery without reference to the actual damage sustained") (cleaned up).

[17] Bratten, like the MDL Plaintiffs, has recognized that Defendants stopped sending the medical information at issue here to third-party debt collectors altogether in 2019. Bratten Compl. ¶ 39; MDL ECF No. 490-5 (Proposed Second Am. Compl.) ¶ 290.

First, the discovery rule is categorically inapplicable to Bratten's claim for statutory damages under Cal. Civ. Code § 56.36(b)(1), which is the primary basis for his claim given that he fails to plead any actual damages. Section 56.36(b) is a "penalty" claim governed by Cal. Code Civ. Proc. § 340(a) that is "not designed to compensate the plaintiff for any harm, but instead is intended to punish." *Eisenberg*, 268 Cal. Rptr. 3d at 344; *see also S.F. CDC LLC v. Webcor Constr. L.P.*, 276 Cal. Rptr. 3d 552, 563 (Ct. App. 2021) (same). The discovery rule, by contrast, "is an equitable rule, intended to avoid unjustly depriving plaintiffs of a remedy *for their injuries* when they have been diligent in seeking to protect their rights." *Eisenberg*, 268 Cal. Rptr. 3d at 344 (emphasis added). The discovery rule therefore applies only to claims "seeking recovery for any *damages* the plaintiff suffered"—and not to claims seeking penalties. *Id.* (emphasis added) (discovery rule does not apply to statutory disgorgement claim).

Here, statutory damages of $1,000 under Cal. Civ. Code § 56.36(b)(1) are not tethered to actual damages but instead "serve as a penalty." *Brown*, 242 Cal. Rptr. 3d at 74. Indeed, the statutory provision at issue expressly distinguishes the statutory damages of $1,000 from actual damages, stating: "In order to recover under this paragraph, it is not necessary that the plaintiff suffered or was threatened with *actual damages*." Cal. Civ. Code § 56.36(b)(1) (emphasis added). And it separately provides a recovery for actual damages. *Id.* § 56.36(b)(2). Thus, the discovery rule cannot apply to Bratten's claim.

Second, even if Bratten were seriously pursuing a claim for actual damages under § 56.35 or the discovery rule were applicable to § 56.36 penalty claims, California's

discovery rule would not save his claim from dismissal. Under the discovery rule, the statute of limitations runs from when the plaintiff "at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof." *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999). The California Supreme Court has explained:

> A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988). Moreover, the discovery rule does not rest on a party's subjective suspicion. "[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them *on inquiry* or if they have *the opportunity to obtain knowledge* from sources open to their investigation." *Rosas v. BASF Corp.*, 187 Cal. Rptr. 3d 354, 361 (Ct. App. 2015) (cleaned up) (emphasis original).

Here, any effort to invoke the discovery rule fails for multiple reasons. At the threshold, despite bringing claims that are facially untimely, Bratten does not "specifically plead facts" to support application of the discovery rule. *Raifman v. Wachovia Secs., LLC*, 649 F. App'x 611, 613 (9th Cir. 2016). This is fatal and requires dismissal. *See id.* ("To take advantage of the discovery rule, a plaintiff must '*specifically plead facts* to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'") (first emphasis added) (quoting

*Grisham v. Philip Morris, USA, Inc.*, 151 P.3d 1151, 1159 (Cal. 2007)); *see also, e.g., Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (same); *Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 WL 6890996, at *31 (D.N.J. Oct. 19, 2023) (recognizing the discovery rule under California law). As a result, Bratten's claim should be dismissed as untimely. *See Plumlee*, 664 F. App'x at 653 (affirming dismissal on limitations grounds); *Raifman*, 649 F. App'x at 613–14 (same).

In addition to this threshold pleading failure, any resort to the discovery rule is foreclosed because judicially noticeable documents show that Bratten has been on inquiry notice of his claim since the June 2019 public announcements of the AMCA data breach. In particular, Bratten was on notice through not only Quest's publicizing its notice on its own website, but also news articles circulating in print and online (such as those specifically incorporated by reference into the MDL Amended Consolidated Complaint) which disclosed that Defendants had sent patient medical information to third-party debt collectors, including AMCA.[18] At a minimum, Bratten had "the

---

[18] *See Notice Provided to Individuals Regarding AMCA Data Security Incident*, https://newsroom.questdiagnostics.com/press-releases?item=137146 (online posting regarding 2019 notice); *Quest Diagnostics Statement on the AMCA Data Security Incident*, https://newsroom.questdiagnostics.com/AMCADataSecurityIncident (online statement about data breach); *see also* Christopher Rowland, *Quest Diagnostics discloses breach of patient records*, Wash. Post (June 3, 2019), https://www.washingtonpost.com/business/economy/quest-diagnostics-discloses-breach-of-patient-records/2019/06/03/aa37b556-860a-11e9-a870-b9c411dc4312_story.html ("Quest Diagnostics, the medical testing company, said a data breach has affected about 11.9 million patients after an 'unauthorized user' gained access to financial data, Social Security numbers and medical data. . . .") (cited at MDL ECF No.

opportunity to obtain knowledge" that, as a Quest patient, his medical information was potentially provided to debt collectors as a result of the numerous public disclosures of the AMCA data breach. *See supra* at 27 n.18.

Indeed, based on these notices and disclosures, the original MDL Plaintiffs—represented by Bratten's same counsel—were able to allege in both their initial complaints and their November 2019 MDL consolidated complaint that Defendants had transmitted medical information to AMCA. *See* MDL ECF No. 104 (Consol. Compl.) ¶¶ 4, 310. Given that other individuals were able to allege transmission of their medical information to AMCA in November 2019 (and even before in complaints filed in transferor courts before the JPML's ruling), Bratten cannot argue that he did not have even a suspicion or an opportunity to obtain knowledge that he may have been impacted by the AMCA data breach (in which medical information transmitted by Defendants had been potentially compromised) while numerous MDL Plaintiffs identically situated to him were so aware of the breach announcement that they filed class action lawsuits within mere days of the announcement.

---

317 (Am. Consol. Compl.) ¶ 417); Scott Ikeda, *Third Party Data Breach Hits Quest Diagnostics with 12 Million Confidential Patient Records Exposed*, CPO Magazine (June 11, 2019), https://www.cpomagazine.com/cybersecurity/third-party-data-breach-hits-quest-diagnostics-with-12-million-confidential-patient-records-exposed/ (similar) (cited at MDL ECF No. 317 (Am. Consol. Compl.) ¶ 418). Even if these materials had not been incorporated by reference in pleadings before this Court, this Court would be able to take judicial notice of such "articles . . . to indicate what was in the public realm at the time." *Benak ex. rel. Alliance Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006); *see also Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2, 600 n.3 (3d Cir. 2000).

That Quest patient medical information was potentially compromised in the AMCA data breach at the very least created "reason . . . to suspect" that Quest had in fact sent patient medical information to AMCA and other third-party debt collectors. *See Norgart*, 981 P.2d at 88. Bratten therefore is charged with a "suspicion . . . of wrongdoing" since 2019, and the discovery rule cannot save his claim. *Id.* at 94.

*    *    *

For each of these independent reasons, Bratten's Complaint should be dismissed for failure to state a claim.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRATTEN'S CLAIM.

Even if the Court determines that Bratten has adequately *pleaded* a claim for breach of the CMIA, the facts relating to Bratten—reflected in the discovery already produced in the MDL—conclusively establish that Bratten cannot *prove* either of two essential elements of his CMIA claim.

First, as discussed above (*see supra* § I.A), disclosure of medical information to AMCA was *authorized* under the CMIA because already-completed discovery confirms that AMCA falls within the statutory exception for entities providing billing and administrative services. Second, in addition to failing to allege that any person at AMCA viewed his confidential medical information (*see supra* § I.B), existing discovery shows that no evidence has been or can be developed to prove that Bratten's medical information was *actually viewed* by AMCA. In addition to the failures on these two

elements, existing discovery confirms that the discovery rule cannot save any aspect of Bratten's claim from the statute of limitations (*see supra* § I.C). No amount of additional discovery can alter the record on any of these dispositive points.

Thus, summary judgment should be granted in Defendants' favor now to support judicial efficiency and protect both the parties and the court from needless further litigation of this claim. *See Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2008 WL 2473745, at *5 (D.N.J. June 13, 2008) (permitting early summary judgment motion on an issue "susceptible to resolution by summary judgment now rather than later" to "promote judicial efficiency by allowing [the defendant] to obtain the relief sought without burdening the court system"); *Loreaux v. ACB Receivables Mgmt., Inc.*, 2015 WL 5032052, at *4 (D.N.J. Aug. 25, 2015) (allowing defendant an opportunity to file an early summary judgment motion to "best serve the interests of judicial economy and promote efficiency").[19]

---

[19] Defendants seek summary judgment at this early stage in the interest of judicial economy and efficiency, and without prejudice to their ability to file a later motion for summary judgment if the Court were to deny Defendants' motion to dismiss and current motion for summary judgment and permit further discovery to occur. *See Flynn v. Dep't of Corr.*, 739 F. App'x 132, 139 (3d Cir. 2018); *see also Peters v. David*, 2013 WL 5232498, at *2 (D.N.J. Sept. 16, 2013) ("[E]ntertaining successive summary judgment motions and decisions falls within a trial court's discretion."); *Cammarata v. Port Auth. Of Allegheny Cty.*, 2005 WL 8174502, at *2 (W.D. Pa. Dec. 20, 2005) ("A renewed or successive summary judgment motion is appropriate especially if one of the following grounds exists: . . . the availability of new evidence or an expanded factual record . . ." (citation omitted)).

**A.    The CMIA Explicitly Authorized Defendants to Disclose Bratten's Medical Information to AMCA Because AMCA Provided Billing or Administrative Services.**

*1.    The Evidence is Clear that AMCA Provided Billing or Administrative Services to Defendants.*

As detailed above, § 56.10 of the CMIA expressly authorizes healthcare providers to disclose medical information to third parties in certain enumerated circumstances, including those applicable here—a health care provider may disclose such information to third parties that provide billing or administrative services. *See supra* § I.A (discussing Cal. Civ. Code § 56.10(c)(3)). Even on the pleadings there is no question that AMCA is an entity that provided "billing" and "other administrative services" for Defendants. And the evidence produced in the MDL by AMCA and Defendants confirms as much.

There is no genuine dispute that AMCA provided "billing"-related and other "administrative services" to Defendants. For example, as a former AMCA employee testified, AMCA provided "collection" and "administrative services" to "put together insurance claim forms," which AMCA "would [use to] either *bill* directly or mail off to [the patients'] insurance company." Ex. C, Kain Dep. at 16:15–18:5 (emphasis added); *see also*, *e.g.*, Ex. E, Quest Dep. at 315:4–10 ("Collections services are part of billing services."); Ex. B (contract between Quest and AMCA, later reassigned to Optum360,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████    Indeed, AMCA's primary function was to collect on Quest's

patients' *bills*, which included providing options to patients to pay unpaid bills through AMCA's own payment portal. *See* Ex. D, Wollman Dep. at 166:17–20. The collections services AMCA provided plainly are "related to billing and payment," and, at the very least, qualify as "administrative services." *Emmerick*, 2018 WL 784302, at *4 (holding § 56.10(c)(3) applies to services "related to billing and payment"). Thus, Defendants were explicitly authorized by § 56.10(c)(3) to provide medical information to AMCA.

> ### 2. Bratten's Claim That Defendants Sent <u>Unnecessary</u> Medical Information to Debt Collectors Does Not Create a Genuine Issue of Material Fact as to Whether AMCA Provided Billing or Other Administrative Services.

Bratten claims that his medical information sent to AMCA by Defendants was "not necessary to engage in debt collection." Bratten Compl. ¶ 39. As an initial matter, this is irrelevant for the reasons explained above. *See* § I.A. And in any event, sending information about an unpaid bill to a debt collection agency who has been hired by a healthcare provider (or its revenue-services contractor) to try to collect payment on the unpaid bill is entirely consistent with the debt collection agency providing "billing or other administrative services." Indeed, it is difficult to conceive of information that would be more instrumental to billing for a medical service than a procedure code, which is the most basic statement possible to describe the services for which payment is being requested. Ex. H, Lake Dep. at 142:1–3 ("So diagnosis and procedure code data basically explained why they were getting a bill in many circumstances."); *see also* Bratten Compl. ¶ 12 ("CPT Codes define the exact service performed by Quest on behalf of the patient."). In addition, the evidence already developed uniformly shows

that these precise categories of information sent to AMCA (*i.e.*, referring physician, date of service, and procedure and diagnosis codes) are routinely used for medical billing.

First, documents produced by Plaintiffs in the MDL show that Quest included this information—including "CPT [procedure] code[s]," "ICD [diagnosis] Codes," and other medical data—on its own invoices sent to patients. *See, e.g.*, Ex. J (Quest "laboratory invoice" listing the patient's name and address, date of service, referring physician, insurance information, and both CPT and ICD codes); Ex. K (similar).

Second, the "Health Insurance Claim Form" (commonly known as a "HCFA form") used by Medicare (and many state Medicaid agencies and private insurers)[20] to request coverage for medical services requires the same information, including both procedure and diagnosis codes. *See, e.g.*, Ex. L (2018 sample HCFA form used to train AMCA employees). This is an explicit acknowledgement by the federal government that these codes are needed for medical billing. And AMCA completed HCFA forms on behalf of Quest patients up until it ceased operations. *See* Ex. C, Kain Dep. at 17:2–18:9, 132:15–133:20 (explaining that AMCA needed procedure and diagnosis codes to complete HCFA forms, which occurred during Kain's "e[nt]ire employment" lasting until AMCA shut down); Ex. G, Ulrich Dep. at 83:5–84:6 (confirming that AMCA filled in information on HCFA forms as part of the services provided to Quest); Ex. D,

---

[20] *See* Centers for Medicare & Medicaid Services, *Professional paper claim form (CMS-1500)* (last modified Sept. 6, 2023), https://www.cms.gov/medicare/billing/electronic billingeditrans/1500.

Wollman Dep. at 161:17–162:2 (HCFA forms were "provided to a consumer, debtor" by AMCA); *see also* Ex. M (AMCA RFP Presentation to Quest identifying HCFAs as a provided "Inbound Patient Service").

As a matter of both law and undisputed fact, the CMIA expressly authorized Defendants to disclose patient medical information to AMCA because AMCA was providing billing-related and other administrative services to Defendants. Therefore, Bratten cannot prove an essential element of his CMIA claim: that there was any *unauthorized* disclosure of his medical information. On this basis alone, summary judgment should be granted in favor of Defendants.

## B. Bratten Cannot Prove That Any Person at AMCA "Actually Viewed" His Medical Information.[21]

Even if Bratten could plead and prove that Defendants lacked authorization to disclose his data to AMCA, his claim fails for the independent reason that he cannot prove that his information was "*in fact, viewed* by an unauthorized individual," as required under § 56.36(b). *Regents*, 163 Cal. Rptr. 3d at 221 (emphasis added); *Vigil*, 300 Cal. Rptr. 3d at 37 (affirming that each class member must show that his or her medical information was viewed by an unauthorized party to recover under the CMIA).[22] As the California

---

[21] Bratten also identifies no evidence of "economic loss or personal injury," which is required to invoke the CMIA's private right of action in § 56.35. *See supra* § I.B.

[22] *Vigil* also demonstrates that, even *if* Bratten's CMIA claim survives dismissal and summary judgment, he will not be able to certify a class. *Vigil* held that because "each class member would have to show that his or her medical information was viewed by an unauthorized party to recover under the CMIA," individualized questions about

Court of Appeal has emphasized: "a breach of *confidentiality* under the CMIA requires a showing that an unauthorized party *viewed* the confidential information." *Vigil*, 300 Cal. Rptr. 3d at 42 (emphases added); *see also Brown*, 253 P.3d at 533 ("[T]he interest protected [by the CMIA] is an interest in informational privacy[.]"). Therefore, where a plaintiff cannot prove "what happened" to his medical information after disclosure to a third party and whether it was actually viewed, the CMIA claim fails. *Regents*, 163 Cal. Rptr. 3d at 221.

Here, after years of discovery in the MDL, there is no evidence that Bratten's medical information was accessed—let alone "actually viewed"—by any person at AMCA. Indeed, Bratten's counsel had ample opportunity during the MDL discovery process to seek information regarding the "viewing" element of a CMIA claim. They did not do so.[23]

---

"whether third parties used plaintiffs' information" predominate over common issues, foreclosing class certification. 300 Cal. Rptr. 3d at 47–49.

[23] As discussed above, Bratten and his counsel have been aware since 2019 that Quest transmitted medical information to AMCA—the theory underlying his newly-asserted § 56.10 CMIA claim. *See supra* at 9 (discussing AMCA notice letter sent to Bratten in June 2019); MDL ECF No. 104 (Consol. Compl.) ¶ 307 ("It is unclear why Defendants would provide extremely sensitive health and diagnostic information to a collection agent who is solely responsible for bill collection."). However, even under the MDL Plaintiffs' counsel's contention in briefing on their now-withdrawn motion for leave to amend that they only "discovered" this claim in February 2023 (which is plainly wrong in the face of their allegations), *see* MDL ECF No. 490 (Mot. Leave to Amend) at 1, 4–9, they had months to develop the requisite "viewing" evidence in the MDL and failed to do so. In particular, during the remaining discovery period, the parties took depositions of three former AMCA employees at which Plaintiffs could have attempted to develop evidence of "viewing," but did not.

As a result, there is no evidence that *any* specific plaintiff's (much less Bratten's) medical information was viewed by AMCA personnel. Bratten's counsel did not ask a *single question* of any of the AMCA deponents about AMCA personnel's "viewing" of medical information, despite eliciting other testimony during depositions that they used to justify their new proposed CMIA claim. *See, e.g.*, MDL ECF No. 490 (Mot. Leave to Amend) at 7–8 (citing Optum360 testimony as purported basis to amend MDL complaint to add a CMIA claim under § 56.10). Nor did they seek additional document discovery or depositions on that topic. Though the record is clear that AMCA personnel did not view medical information for *all* patients, MDL Plaintiffs' counsel failed to develop evidence as to *which* individuals' medical information (if any) was viewed.[24]

Nor could they as to Bratten. As detailed below, a few simple, undisputed facts demonstrate that Bratten's medical information was not viewed by AMCA personnel.

*Diagnosis Codes*. The undisputed evidence shows that Bratten's diagnostic codes were **not** stored in the CHAMP database. Kapur Decl. ¶ 5. And the evidence also shows that CHAMP was the only platform through which AMCA's employees accessed and

---

[24] No amount of additional discovery could unearth the evidence Bratten needs to support his claim. MDL Plaintiffs have not identified any documents they have not yet received or witnesses they have not yet deposed that could shed any additional light on this critical element. Indeed, Bratten's counsel represented to this Court more than a year ago that "discovery on this issue is largely completed" and that no extension of the schedule would be necessary to conduct additional discovery on the CMIA claim under § 56.10, which the MDL Plaintiffs included in their now-withdrawn proposed amended complaint and Bratten now pleads. MDL ECF No. 490 (Mot. Leave to Amend) at 2, 11–12.

"viewed" patient medical information—and, even then, they did so only if needed when interacting with patients by phone about the debt. *See* Ex. C, Kain Dep. at 38:9–19 ("[Call center employees] pulled the information up on the screen when speaking to patients so they can have the information right in front of them as far as date of service, what doctor they saw, [and] what tests were performed."); *see also* Ex. F, Fuchs Dep. at 56:10–15 ("[C]all center employees access[ed] the CHAMP system to obtain information about debtors."). In short, Bratten's diagnosis codes were not even available on the only system that AMCA employees used to view patient medical information in connection with collecting on unpaid debts.

*Procedure Codes*. The undisputed evidence shows that Bratten's procedure codes stored on CHAMP reflect two routine laboratory tests. *See* Kapur Decl. ¶ 4; *supra* at 12–13. But, again, there is no evidence that Bratten's CPT codes were actually viewed by anybody at AMCA. To the contrary, as explained above, AMCA employees accessed medical information only if needed when "speaking to patients" on a call. Ex. C, Kain Dep. at 38:9–19. But the undisputed evidence confirms that AMCA *never made contact* with Bratten by phone. *See* Kapur Decl. ¶¶ 6–9; *supra* at 13–14. The CHAMP database records show that AMCA made numerous unsuccessful attempts to reach Bratten by phone between July 18, 2018, and April 6, 2019, with notes indicating that no AMCA employee ever spoke with Bratten by phone. Kapur Decl. ¶¶ 6–9. And of course, Bratten would know if he ever spoke with a representative of AMCA, but he alleges no

such communication. Therefore, the evidence does not permit a reasonable inference that *any* medical information about Bratten was viewed by AMCA.

Accordingly, Bratten cannot prove that any person at AMCA "actually viewed" any of his confidential medical information transmitted by Defendants. *Sutter Health*, 174 Cal. Rptr. 3d at 655–56. The undisputed factual record establishes that Defendants are entitled to summary judgment on yet another ground.

### C. The Evidence of Bratten's Actual Notice of the Data Breach Confirms That His Claim Is Time-Barred.

For the reasons explained above, no discovery is needed to show that Bratten's claim is time-barred. *See supra* § I.C. However, the evidence showing that Bratten received *actual notice* of the AMCA data breach, including the description that his medical information was potentially at issue, definitively confirms that the "discovery rule" cannot salvage any aspect of his untimely claim.

In June 2019, AMCA sent a letter to Bratten and other Quest patients notifying them that AMCA had suffered a potential data breach. *See* Stevens Decl. ¶¶ 4–7. AMCA's notice letter stated that it could not "rule out the possibility that the personal information on [AMCA's] system was at risk during the attack." Ex. A. The letter further stated that "[t]he information on our system that was compromised may have included your: first and last name, Social Security Number, name of lab or medical service provider, date of medical service, referring doctor, certain other *medical information*, but not test results." *Id.* (emphasis added)

38

The public announcements described above, *see supra* at 27 n.18, were more than sufficient to give Bratten "the opportunity to obtain knowledge" that, as a Quest patient, his medical information was potentially provided to debt collectors. But the actual letter he received from AMCA provided him with even more direct information and definitively establishes that the "discovery rule" does not apply.

## CONCLUSION

For the foregoing reasons, Quest and Optum360 respectfully submit that Plaintiff's sole claim fails under Fed. R. Civ. P. 12(b)(6) and, in the alternative, under Rule 56, and his Complaint should be dismissed with prejudice or, in the alternative, summary judgment should be granted in favor of Defendants.

Dated: July 11, 2024                          Respectfully submitted,

By: */s/ Donald M. Houser*                    By: */s/ Eamon P. Joyce*

Reade W. Seligmann                            David H. Hoffman
ALSTON & BIRD LLP                             Heather Benzmiller Sultanian
90 Park Avenue, 12th Floor                    SIDLEY AUSTIN LLP
New York, NY 10016                            One South Dearborn
Tel.: (212) 210-9453                          Chicago, IL 60603
reade.seligmann@alston.com                    Tel.: (312) 853-7000
                                              david.hoffman@sidley.com
Kristine M. Brown                             hsultanian@sidley.com
Donald M. Houser
ALSTON & BIRD LLP                             Eamon P. Joyce
1201 West Peachtree Street                    SIDLEY AUSTIN LLP
Atlanta, GA 30309                             787 Seventh Avenue
Tel.: (404) 881-7000                          New York, NY 10019
kristy.brown@alston.com                       Tel.: (212) 839-8555
donald.houser@alston.com                      ejoyce@sidley.com

Thomas P. Scrivo
Young Yu
O'TOOLE SCRIVO, LLC
14 Village Park Road
Cedar Grove, NJ 07009
Tel.: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

*Attorneys for Defendant Optum360, LLC*

Michael T. Hensley
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ  07932
Tel.: (973) 828-2613
mhensley@carltonfields.com

*Attorneys for Defendant Quest Diagnostics Incorporated*