**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(Newark Vicinage)**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br><br>This Document Relates To:<br>Case No. 2:24-cv-00569-MCA-MAH,<br>*Bratten v. Quest Diagnostics et al.,*<br>*Quest/Optum Track* | Civil No. 2:19-md-02904-MCA-MAH<br><br>Judge Madeline Cox Arleo |

## QUEST DIAGNOSTICS AND OPTUM360'S RULE 56.1 STATEMENT OF MATERIAL FACTS

In support of their Motion for Summary Judgment, and pursuant to Rule 56.1 of the Local Rules of this Court, Defendants Quest Diagnostics Incorporated ("Quest") and Optum360, LLC ("Optum360") contend that as to the following facts, no genuine dispute of material facts exists:

**A.    Quest Laboratory Services Provided to Bratten, and Placement of His Account With AMCA**[1]

1.    ████████████████████████████████████████

████     Nimon Decl. ¶ 6.

---

[1] Terms contained herein are defined as stated in Defendants' Memorandum in Support of Their Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

2.      On July 16, 2018, Defendants sent Bratten's account to AMCA for collection of his unpaid bill. Nimon Decl. ¶ 6.

3.      Bratten's account placement files transmitted to AMCA contained: ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Nimon Decl. ¶ 6 & Ex. 1; Ex. H, Lake Dep. at 146:20–147:9.

4.      Bratten's account placement files did not contain his social security number, insurance information, information about any insurance company's adjudication, or any other payment information. Nimon Decl. ¶ 7 & Ex. 1.

5.      Bratten's information was not sent to any debt collection vendor other than AMCA. Nimon Decl. ¶ 4.

## B.    AMCA's Services

6.      AMCA provided billing and administrative services to Defendants to collect payment on unpaid Quest bills, including by providing options to patients to pay unpaid bills through AMCA's own payment portal. *See, e.g.*, Ex. B, Quest_MDL_0000516; Ex. C, Kain Dep. at 16:15–18:5; Ex. D, Wollman Dep. at 166:17–20; Ex. E, Quest Dep. at 315:4–10.

7.      Certain medical information, including referring physician, date of service, and procedure and diagnosis codes, are used in medical billing to explain why patients

are receiving a bill. Quest included this medical information on its own invoices sent to patients. Ex. H, Lake Dep. at 142:1–3; *see also, e.g.*, Ex. J, Plaintiffs_Q_00013; Ex. K, Plaintiffs_Q_00184.

8.      The "Health Insurance Claim Form" (commonly known as a "HCFA form") used by Medicare (and many state Medicaid agencies and private insurers) to request coverage for medical services also requires certain medical information, including both procedure and diagnosis codes. Ex. L, AMCA_PROD_00022984; *see also* Centers for Medicare & Medicaid Services, *Professional paper claim form (CMS-1500)*, https://www.cms.gov/medicare/billing/electronicbillingeditrans/1500.

9.      AMCA completed HCFA forms on behalf of Quest patients up until it ceased operations. *See* Ex. C, Kain Dep. at 17:2–18:9, 132:15–133:20; Ex. G, Ulrich Dep. at 83:5–84:6; Ex. D, Wollman Dep. at 161:17–162:2; *see also* Ex. M, Quest_MDL_0024321 at 24327.

**C.      AMCA's CHAMP Database**

10.      Upon receipt of account placement files from Defendants and other clients, AMCA utilized an automatic process to extract data from those files and load a subset of the data into a proprietary database developed by AMCA called the "CHAMP database." Ex. C, Kain Dep. at 153:8–23, 147:18–24.

11.      The account placement files themselves were never stored in the CHAMP database. Ex. C, Kain Dep. at 147:18–24.

12.    The CHAMP database was the only place in AMCA's systems through which AMCA employees accessed medical information about debtors. AMCA employees would access medical information on an as-needed basis only if they spoke with an individual patient about a bill, in an effort to collect on the outstanding debt. Ex. C, Kain Dep. at 38:9–19; Ex. F, Fuchs Dep. at 56:10–15.

13.    The initially viewable home screen for each debtor in the CHAMP database did not contain medical information. To view medical information for an individual patient, AMCA employees had to navigate to a separate screen. Ex. G, Ulrich Dep. at 22:18–23:15.

14.    The CHAMP database tracked AMCA's attempts to reach individual patients by phone to try to collect payment. The CHAMP database contains records of numerous attempts to reach Bratten by phone between July 18, 2018, and April 6, 2019, but none were successful. For two of those attempts, AMCA recorded that an automatic dialer connected an agent in AMCA's call center to a call that had been placed to Bratten's phone number, but both times the calls reached Bratten's answering machine or received no answer. Kapur Decl. ¶¶ 6–9.

15.    The CHAMP database contained two procedure codes associated with Bratten. The procedure codes reflect ███████████████████████████ ███████████████████████████████████████ Kapur Decl. ¶ 4; *see also* Quest Diagnostics, ██████████ █████ ████ ███ ████, https://testdirectory.questdiagnostics.com/test/test-detail/████████████

4

 ?cc=MASTER; Quest Diagnostics, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮ ▮▮ ▮▮▮   https://testdirectory.questdiagnostics.com/test/test-
detail/▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ?cc=MASTER.

16.     The CHAMP database did not contain any diagnosis codes associated
with Bratten. Kapur Decl. ¶ 5.

**D.     The AMCA Data Security Incident**

17.     In June 2019, AMCA sent a letter to Bratten and other Quest patients
notifying them that AMCA had suffered a potential data breach. Stevens Decl. ¶ 4–7.

18.     AMCA's notice letter stated the following: "On March 20, 2019, [AMCA]
received notice of a possible security compromise of our web payments page from an
independent third-party compliance firm that works with credit card companies. We
have recently learned, after an external forensics review, that an unauthorized user had
access to our system between August 1, 2018 and March 30, 2019, and cannot rule out
the possibility that the personal information on our system was at risk during the attack.
. . . The information on [AMCA's] system that was compromised may have included
your: first and last name, Social Security Number, name of lab or medical service
provider, date of medical service, referring doctor, certain other medical information,
but not test results." Ex. A, Plaintiffs_Q_00093.

**E.     International Classification of Diseases Scheme**

19.     In October 2015, the federal government transitioned from using the
ICD-9 classification scheme to the ICD-10 classification scheme. The switch from the

older classification scheme to the new scheme expanded the maximum number of characters in a diagnosis code from five digits to seven digits. *See* CDC, National Center for Health Statistics, *ICD-10-CM Preface*, https://ftp.cdc.gov/pub/ Health_Statistics/NCHS/Publications/ICD10CM/2023/Preface.pdf.

20.    When the transition to the ICD-10 classification scheme occurred, Defendants did not update their technical systems to allow for the longer codes to be included in the applicable field in the placement files sent to debt collection vendors. Ex. I, Harkins Dep. at 164:3–10, 173:14–21.

21.    Around the time that the federal government promulgated the new ICD-10 diagnosis code classification scheme, Defendants instructed AMCA not to use diagnosis codes because those diagnosis codes were now "invalid." Ex. I, Harkins Dep. at 164:3–10, 173:14–21.

Dated:  July 11, 2024                                 Respectfully submitted,

By: */s/ Donald M. Houser*                      By: */s/ Eamon P. Joyce*

Reade W. Seligmann                              David H. Hoffman
ALSTON & BIRD LLP                               Heather Benzmiller Sultanian
90 Park Avenue, 12th Floor                      SIDLEY AUSTIN LLP
New York, NY  10016                             One South Dearborn
Tel.: (212) 210-9453                            Chicago, IL  60603
reade.seligmann@alston.com                      Tel.: (312) 853-7000
                                                david.hoffman@sidley.com
Kristine M. Brown                               hsultanian@sidley.com
Donald M. Houser
ALSTON & BIRD LLP                               Eamon P. Joyce
1201 West Peachtree Street                      SIDLEY AUSTIN LLP
Atlanta, GA  30309                              787 Seventh Avenue
Tel.: (404) 881-7000                            New York, NY  10019
kristy.brown@alston.com                         Tel.: (212) 839-8555
donald.houser@alston.com                        ejoyce@sidley.com

Thomas P. Scrivo
Young Yu
O'TOOLE SCRIVO, LLC
14 Village Park Road
Cedar Grove, NJ 07009
Tel.: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

*Attorneys for Defendant Optum360, LLC*

Michael T. Hensley
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ  07932
Tel.: (973) 838-2613
mhensley@carltonfields.com

*Attorneys for Defendant Quest Diagnostics Incorporated*