# EXHIBIT D

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2                   DISTRICT OF NEW JERSEY
 3              Case No. 2:19-md-02904-MCA-MAH
 4    _____
      IN RE:  AMERICAN MEDICAL COLLECTION)
 5                                       )
      AGENCY, INC., CUSTOMER DATA         )
 6                                       )
      SECURITY BREACH LITIGATION          )
 7                                       )
      _____)
 8
 9
10
11         VIDEOTAPED and REMOTE DEPOSITION OF
12                   JEFFREY S. WOLLMAN
13
14    DATE:           February 19, 2023
15    TIME:           9:03 a.m.
16    PLACE:          DoubleTree by Hilton Hotel Norwalk
                      789 Connecticut Avenue
17                    Norwalk, Connecticut
18      By:           Sarah J. Miner, RPR, LSR
19
20
21
22
23
24
25
```

```
 1   A P P E A R A N C E S:
 2   For the Plaintiffs:
 3   Stuart A. Davidson, Esq. (Appearing via Zoom)
     Robbins Geller Rudman & Dowd, LLP
 4   225 NE Mizner Boulevard, Suite 720
     Boca Raton, Florida   33432
 5
     and
 6
     Christopher Ayers, Esq.
 7   Frazer Thomas, Esq. (Appearing via Zoom)
     SeegerWeiss LLP
 8   55 Challenger Road
     Ridgefield Park, New Jersey   07660
 9
10   For the Defendant Quest Diagnostics, Incorporated:
11   Heather Sultanian, Esq.
     Rachel C. McKenzie, Esq. (Appearing via Zoom)
12   Sidley Austin, LLP
     One South Dearborn
13   Chicago, Illinois   60603
14
     For the Defendant, CareCentrix, Inc.:
15
     William S. Brown, Esq.
16   Nelson Mullins, LLP
     2 West Washington Street, Suite 400
17   Greenville, South Carolina   29601
18
     For the Defendant, Laboratory Corporation of
19   America Holdings:
20   Adam A. Cooke, Esq.
     Hogan Lovells, LLP
21   555 Thirteenth Street, NW
     Washington, D.C.   20004
22
23
24
25
```

Page 3

```
 1    A P P E A R A N C E S:
 2    For the Defendant, Optum360, LLC:
 3    Troy Stram, Esq.
      Alston & Bird, LLP
 4    90 Park Avenue, 12th Floor
      New York, New York  10016
 5
 6    For the Defendant, Sonic Healthcare USA, Clinical
      Pathology Laboratories, Inc., Aurora Diagnostic
 7    LLC, and Austin Pathology Associates:
 8    Ariadne Panagopoulou, Esq.
      Lewis Brisbois Bisgaard & Smith, LLP
 9    77 Water Street, Suite 211
      New York, New York  10005
10
11    For the Witness:
12    Richard Weinberg, Esq.
      Alex Peacocke, Esq.
13    Morville Abramowitz Grand Iason & Anello, P.C.
      565 Fifth Avenue
14    New York, New York  10017
15
      Also Present
16    Rocco Mercurio, Videographer
17
18
19
20
21
22
23
24
25
```

Page 7

1                    THE VIDEOGRAPHER:  We are now going
2            on the record.  Today is February 19,
3            2023, and the time is approximately 9:03.
4            This is the video deposition of Jeffrey
5            Wollman in the matter of In Re:  American
6            Medical Collection Agency, Quest, filed in
7            the U.S. District Court of New Jersey,
8            Docket Number 19-md-2904-DMJ.
9                    My name is Rocco Mercurio, and the
10           court reporter is Sarah Miner, and we are
11           with Veritext.  We are located at the
12           Doubletree by Hilton Hotel in Norwalk,
13           Connecticut.
14                   All appearances will be noted on the
15           stenographic record.
16                   The court reporter will now swear in
17           the witness and we can proceed.
18                       JEFFREY S. WOLLMAN,
19    having first been duly sworn by Sarah J. Miner,
20    LSR, a Notary Public in and for the State of
21    Connecticut, was examined and testified as follows:
22                       DIRECT EXAMINATION
23    BY MR. BROWN:
24        Q   Mr. Wollman, my name is William Brown.  We
25    met just a few minutes ago.  I represent a company

1           THE WITNESS:  The company -- I would
2      say the original system of the company was
3      the mainframe oriented system.  And all
4      client reporting, or most of it came from
5      that system.  So it was the primary source
6      of incoming data from clients.  It
7      processed all of our files that would be
8      used for sending debt collection letters
9      to consumers.
10          So its main functions were to be
11     primary -- to be the primary system of the
12     company, housing information for client
13     reporting, letters, transactions to be
14     posted to customer accounts.  That was the
15     main system of record, I would call it.
16  BY MR. AYERS:
17     Q   So earlier -- earlier, you had -- there
18  was some testimony related to HCFA's.
19          And could you describe what are those
20  forms?
21     A   The HCFA 1500 form is a document that --
22  especially before electronic insurance filing, was
23  used to disseminate billing information to submit
24  to an insurance carrier for payment.  And it also
25  served as -- dual purpose.  It also served as an

Page 162

```
 1    itemized statement of services provided.  So that
 2    could be provided to a consumer, debtor.
 3         Q   So when you are describing the mainframe
 4    system, would the data that is in the mainframe
 5    system be used to fill out those HCFA forms?
 6              MR. COOKE:  Objection to form.
 7              THE WITNESS:  Yes, I believe that the
 8         mainframe system was used to create the
 9         files for those HCFA 1500 forms.
10    BY MR. AYERS:
11         Q   And then -- and then on the other side,
12    there was the non-mainframe database, which was
13    CHAMP?
14              MR. COOKE:  Objection.
15              MS. SULTANIAN:  Objection as to form.
16    BY MR. AYERS:
17         Q   Is that correct?
18         A   It was a system that was developed for
19    other collection purposes, correct.
20         Q   So just so we get the record clear.  So
21    there was a mainframe system that was used for the
22    reporting and what you just described and then
23    there was the non-mainframe portion.
24              And what -- what did the non-mainframe
25    portion consist of?
```

Page 166

```
 1        Q   Was -- did AMCA use CHAMP as a means of
 2   distinguishing itself from its competitors?
 3        A   I don't know the answer to that.
 4        Q   Do you know if AMCA ever marketed itself
 5   to defendants with CHAMP?
 6        A   I am not aware of that.
 7        Q   By design, CHAMP is designed to be
 8   accessed from the internet.  Correct?
 9            MR. COOKE:  Objection to form.
10            THE WITNESS:  Not being technical, I
11        think there were portions of CHAMP that
12        were internal, meaning only internal
13        employees had access to certain things.
14        Externally, I believe certain clients may
15        have had access into their patient
16        accounts on that system.
17            And then I believe consumers could
18        make a payment through a secondary system
19        of CHAMP, you know, as a payment portal to
20        make payments.
21   BY MR. AYERS:
22        Q   And CHAMP was designed to speak with
23   various other parts of AMCA networks?
24            MS. SULTANIAN:  Objection to form.
25            MR. COOKE:  Objection to form.  Lacks
```