# EXHIBIT I

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CASE NO. 2:19-MD-02904-MCA-MAH

```
IN RE: AMERICAN MEDICAL       : VIDEOTAPED
COLLECTION AGENCY, INC.,        DEPOSITION OF:
CUSTOMER DATA SECURITY        :
BREACH LITIGATION               MICHELENA HARKINS
                              :
This Document Relates To:       (VIA ZOOM)
Quest/Optum Track             :
_____X
```

TRANSCRIPT of the stenographic notes of the proceedings in the above-entitled matter, as taken remotely by and before SEVA FLICSTEIN, Certified Court Reporter (New Jersey License No. 30XI000141300, California Certificate No. CSR 8727), Registered Merit Reporter, Certified Realtime Reporter, witness located in Punta Gorda, Florida, on Friday, April 7, 2023, commencing at 9:01 in the forenoon Eastern Standard Time.

```
 1   A P P E A R A N C E S:
 2
 3         STUEVE SIEGEL HANSON LLP
           BY:   AUSTIN MOORE, ESQ.
 4               BRANDI SPATES, ESQ.
           460 Nichols Road, Suite 200
 5         Kansas City, MO 64112
           (816) 714-7100
 6         moore@stuevesiegel.com
           spates@stuevesiegel.com
 7         Attorneys for Plaintiffs
 8
 9
10         SIDLEY AUSTIN, LLP
           BY:   HEATHER SULTANIAN, ESQ.
11         One South Dearborn
           Chicago, Illinois 60603
12         (312) 853-7714
           hsultanian@sidley.com
13         Attorneys for Quest Diagnostics
14
15
           ALSTON & BIRD, LLP
16         BY:   DONALD HOUSER, ESQ.
                 SARAH LEE, ESQ.
17         One Atlantic Center
           1201 West Peachtree Street
18         Suite 4900
           Atlanta, Georgia 30309-3424
19         (404) 881-7806
           donald.houser@alston.com
20         sarah.lee@alston.com
           Attorneys for Optum360
21
22
23
24
25
```

```
 1   A P P E A R A N C E S    (Cont'd.):
 2
 3         LEWIS BRISBOIS BISGAARD & SMITH, LLP
           BY:  ABAIGEAL FRANSON
 4         77 Water Street
           Suite 2100
 5         New York, New York 10005
           (212) 232-1300
 6         Abaigeal.Franson@lewisbrisbois.com
           Attorneys for Sonic
 7
 8
 9
10
11
12
     A L S O    P R E S E N T:
13
           BRIAN W. THOMSON, ESQ.
14         Senior Associate General Counsel -
           Optum Litigation at UnitedHealth Group
15
           MARC FRIEDMAN
16         Legal Video Specialist
17         BAILEY NEHER
           Technical Concierge
18
19
20
21
22
23
24
25
```

```
                                                          Page 7
 1   Solutions.
 2              I am not related to any parties in
 3   this action or financially interested in the
 4   outcome.
 5              If there are any objections to
 6   these proceedings, please state them now.
 7              Hearing no objection, counsel will
 8   be noted on the stenographic record.
 9              At this time, our court reporter
10   will swear in our witness, and we can proceed.
11   M I C H E L E N A    H A R K I N S,
12        residing at 12466 Gallagher Boulevard,
13        Port Charlotte, Florida  33981, having
14        been duly sworn by the Certified Court
15        Reporter, testifies as follows:
16                        -----
17                      EXAMINATION
18                        -----
19   BY MR. MOORE:
20        Q.   Good morning, Ms. Harkins.  My
21   name is Austin Moore.  I represent the consumer
22   plaintiffs in this litigation.
23              Can you state your full name for
24   the record.
25        A.   Yes.  It's Michelena Harkins.
```

Page 164

1        MS. SULTANIAN:  Object to form.
2    A.   Less than 5 percent.
3    Q.   Why did Quest instruct the
4 agencies to stop rebilling as a result of the
5 transition to ICD-10?
6    A.   The ICD-10 codes were a longer
7 character length than ICD-10 [sic] and we were
8 not doing programming in our system for the
9 collection agency files to extend that character
10 length; therefore, the codes would be invalid.
11    Q.   So around that time you had a
12 discussion about why would we send diagnosis
13 codes at all if none of the agencies are
14 performing rebilling?
15        MR. HOUSER:  Object to form.
16        Same instruction regarding
17 attorney-client privilege.  To the extent you
18 can answer without revealing attorney-client
19 communications, you may do so.
20    A.   Yes, that is correct.
21    Q.   Who did you discuss that issue
22 with?
23        MR. HOUSER:  Objection to form.
24    A.   That would have been discussed
25 with all of the agencies that performed

Page 165

1  rebilling for us.
2       Q.   Do you recall the form of those
3  discussions with AMCA specifically?
4            MR. HOUSER:  Objection to form.
5       A.   That would have been through phone
6  calls, conversations, and email communications.
7       Q.   Who would have been included on
8  those email communications?
9            MR. HOUSER:  Objection to form.
10      A.   So for the agencies, it would have
11 been our client liaison.  And then on the Quest
12 side, I would have either sent the email or Del
13 Howard.
14      Q.   And so for AMCA, the client
15 liaison was David Ulrich?
16           MS. SULTANIAN:  Object to form.
17      A.   That is correct.
18      Q.   So if there were email
19 communications between Quest and AMCA discussing
20 the transfer of diagnosis codes sent, those
21 emails would have included you and/or Del Howard
22 and Mr. Ulrich?
23           MR. HOUSER:  Objection to form,
24 mischaracterizes the testimony.
25      A.   It would have included at least

Page 173

1    did anyone else on the call speak up to ask
2    questions or to push back against your
3    statement?
4              MR. HOUSER:  Objection to form.
5        A.   No.  IT when you're on a
6    prioritization call would always ask if there
7    was a workaround, I guess you could call it, and
8    they would always ask if it was a
9    compliance-related issue.  So those types of
10   questions would have been asked at the time.
11       Q.   What were your answers to those
12   types of questions?
13             MR. HOUSER:  Objection to form.
14       A.   So I would have said that -- just
15   what I stated earlier, that by continuing to
16   send the data, it would be invalid.
17             But the workaround in the meantime
18   would be that the agencies were instructed to
19   not use those diagnosis codes because they were
20   invalid, and the agencies had already been
21   instructed to not rebill on our behalf.
22       Q.   What did the prioritization
23   committee ultimately decide with respect to your
24   clarity request to stop sending diagnosis codes
25   to the agencies?