**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| Designating Party | Material | Basis for Sealing | Clearly Defined and Serious Injury that Would Result if the Relief is Not Granted | Why a Less Restrictive Alternative to the Relief Sought is Not Available | Party in Opposition to Sealing, if any, and Basis |
|---|---|---|---|---|---|
|  | | | | | |
| | | **ECF 742 – Special Master Opinion & Order** | | | |
| Optum360 | Page 4<br>• From "he also" to "collection vendors."<br>• From "this investigation" to "collection vendors."<br><br>Page 5<br>• "vendor data security."<br><br>Page 20<br>• From "he and Sharon" to "requested information."<br>• "vendor assessment process."<br>• From "This email thread" to "revised version." | Optum360's interest in protecting this sensitive, proprietary, and confidential information far outweighs any public interest in access to that information. This non-public material discloses information pertaining to commercially sensitive information that could harm Optum360's business advantage if publicly disclosed because it reflects Optum360's ongoing confidential decision-making processes regarding Optum360's cyber incident investigation processes and methods of assessing risks related to debt collection vendor oversight. "[I]t is well established that the 'confidentiality of business agreements, trade secrets or commercial information are a legitimate private interest.'" *Bah v. Apple Inc.*, 2021 WL 4272829, at *2 (D.N.J. Sept. 9, 2021) (citation omitted). | Optum360 maintains that publicly disclosing ongoing confidential business strategy and decision-making processes regarding its cyber incident investigation processes and methods of assessing risks related to debt collection vendor oversight poses a substantial risk of harm to Optum360's legitimate proprietary interests and competitive positions. Optum360 would suffer harm if third parties, including competitors, who have no legitimate interest in Optum360's | Optum360 maintains that no less restrictive alternative to the relief sought is available because the material consists of its confidential commercial information. | Plaintiffs take no position on sealing these portions of the Order or transcript. |

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| | | | | | |
|---|---|---|---|---|---|
| | Page 21<br>• From "the Optum employees" to "spreadsheet form."<br>• From "concerning vendors" to "security data."<br><br>Page 22<br>• From "prepare risk" to "party vendors."<br>• From "most (if" to "collection vendors."<br>• "other third-party vendors."<br><br>Transcript 39:4-10<br>• From "Only one" to "version."<br><br>Transcript 39:18-23<br>• From "So they" to "investigations."<br><br>Transcript 42:10-13<br>• From "They did" to "their vendors."<br><br>Transcript 44:8-9<br>• "about vendor risk." | Optum360 should be "permitted to seal material that concerns business[] strategies and competitive tactics if those strategies remain relevant today and their release might injure [Optum360]." *Royal Mile Co. v. UPMC*, 2014 WL 47775, at *4 (W.D. Pa. Jan. 6, 2014). Work related to Optum360's cyber incident investigation processes and methods of assessing risks related to debt collection vendor oversight are highly relevant to current business practices as Optum360 is consistently monitoring and responding to the changing landscape of data security, including work with vendors who provide debt collection services, including collecting on Quest patient bad debt accounts, pursuant to confidential business relationships and agreements. | operations obtained access to this confidential commercial information, as this information reflects Optum360 confidential response to assessing risk. | | |
| Quest | Page 3 | Quest's interest in protecting this sensitive, proprietary, and | Quest maintains that publicly disclosing | Quest maintains that no less restrictive | Plaintiffs take no position on sealing |

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| | | | | | |
|---|---|---|---|---|---|
| | <ul><li>Between "engaged" and "to assist"</li><li>Between "and/or" and "There"</li><li>Between "about" and "involvement" in n.4</li><li>From "no" to "completed" in n.6</li></ul>Page 13<ul><li>Between "reflect" and "According"</li><li>Between "Cusano and" and "(*See*"</li><li>Between "exhibits is" and "It states"</li><li>Between "part that" and "(*See*"</li><li>From "provided" to "investigation"</li></ul>Page 15<ul><li>Between "respect to" and "Quest"</li><li>Between "demonstrate that" and "served"</li><li>Between "whether" and "'were intrinsic'"</li><li>Between "engaged" and "primarily"</li></ul> | confidential information far outweighs any public interest in access to that information. This non-public material discloses information pertaining to commercially sensitive information and business strategy that could harm Quest's business if publicly disclosed because it reflects Quest's ongoing confidential business strategy and decision-making processes regarding internal security practices and business relationships with third-party vendors.<br><br>"[I]t is well established that the 'confidentiality of business agreements, trade secrets or commercial information are a legitimate private interest.'" *Bah v. Apple Inc.*, 2021 WL 4272829, at *2 (D.N.J. Sept. 9, 2021) (citation omitted). Quest should be "permitted to seal material that concerns business[] strategies and competitive tactics if those strategies remain relevant today and their release might injure [Quest]." *Royal Mile Co. v. UPMC*, 2014 WL 47775, at *4 | the nature and contents of its commercially sensitive information related to Quest's internal security practices and business relationships with third-party vendors poses a substantial risk of harm to Quest's legitimate proprietary interests and competitive positions. Quest would suffer harm if third parties, including competitors obtained access to this confidential commercial information, as this information reflects Quest's confidential security practices. | alternative to the relief sought is available because the material consists of its confidential commercial information. | these portions of the Order or transcript. |

3

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| | | | | | |
|---|---|---|---|---|---|
| | - Between "had a" and "Second"<br>- From "the addendum" to "locate"<br><br>Page 16<br>- From "on" "incident"<br>- Between "document that" and "was engaged"<br>- Between "revealed that" and "(*See*"<br>- Between "Quest that" and "was engaged"<br>- Between "instructing" and "does"<br>- Between "argues that" and "are also"<br><br>Page 17<br>- From "pursuant" to "for Quest"<br>- From "on May" to "findings"<br>- Between "relate to" and "(*See*"<br>- Between "contain" and "(*See*" | (W.D. Pa. Jan. 6, 2014). Work related to Quest's internal security practices, including incident investigation, and its hiring, and business relationships with third-party vendors is highly relevant to current business practices as Quest is consistently monitoring and responding to the changing landscape of data security, including working with vendors who provide consulting services. | | | |

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| | | | | | |
|---|---|---|---|---|---|
| | Page 18<br>• From "addendum" to "and Quest"<br>• Between "counsel, and" and "must"<br>• Between "Cusano and" and "as well"<br>• Between "as the" and "the Special"<br>• Between "found that" and "was engaged"<br><br>Page 19<br>• From "certain" to "measures"<br>• From "providing" to "investigation"<br>• From "on behalf" to "investigation"<br><br>Transcript 10:21-24<br>• From "in the normal" to "web"<br><br>Transcript 11:5-7; 17-20; 21-24<br>• From "IT" to "years"<br>• From "Its to "web"<br>• From "working" to "postings" | | | | |

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| | | | | |
|---|---|---|---|---|
| | Transcript 12:2-6; 8-9; 23-24; 25<br>• Between "that" and "So"<br>• Between "related to the" and "Quest refused"<br>• From "that" to "false"<br>• From "the sale" to "of"<br><br>Transcript 13:1-2; 15-16; 18-19<br>• From "information" to "breach"<br>• From "they" to "web"<br>• From "over" to "investigation"<br><br>Transcript 14:15; 16; 19-20; 25<br>• Between "after the" and "you know"<br>• Between "disclosed" and "in their"<br>• Between "because" and "That seems"<br>• Between "either" and "Quest"<br><br>Transcript 15:1-2; 3; 8 | | | | |

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

| | | | | |
|---|---|---|---|---|
| | <ul><li>From "patient" to "that"</li><li>Between "documents, or" and "and Quest is"</li><li>Between "these" and "documents"</li></ul>Transcript 16:24<ul><li>Between "Quest's" and "This was not"</li></ul>Transcript 17:11-13<ul><li>Between "asking him" and "At that"</li></ul>Transcript 18:8-14; 17-21<ul><li>From "asked them" to "report"</li><li>From "had already" to "contract"</li></ul>Transcript 21:5-6; 15-17<ul><li>From "So they" to "web"</li><li>From "that the breach" to "time"</li></ul>Transcript 22:22-23<ul><li>Between "face" and "There's a"</li></ul>Transcript 25:6-7; 8-9 | | | |

7

**Index Pursuant to L. Civ. R. 5.3(c)(3)**

|  | |  |  |  |  |
|---|---|---|---|---|---|
|  | <ul><li>From "I am" to "prepared"</li><li>Between "right" and "And then"</li></ul>Transcript 30:3<ul><li>Between "involved and" and "MS. SULTANIAN: Yes"</li></ul> |  |  |  |  |