

| | | |
|---|---|---|
| | **Edward J. Fanning, Jr.**<br>Partner<br>T. 973.639.7927<br>efanning@mccarter.com | McCarter & English, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ  07102<br>www.mccarter.com |

November 3, 2025

**VIA ECF**

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

RE:  *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, No. 19-md-2904(JKS)(MAH) — All Tracks
Defendants' Motion Regarding Plaintiffs' Newly Disclosed Expert Matthew Strebe

Dear Judge Semper and Judge Hammer:

Nearly a year ago, Plaintiffs served their Motions for Class Certification ("Motions"), along with reports from five purported experts.  Consistent with the schedule set by the Court, ECF 776, Defendants served their opposition briefs and expert reports, and Plaintiffs then served an omnibus reply brief on October 22, 2025.  On the same date, Plaintiffs also served a series of "reply" reports from the same experts that supported their opening Motions, plus one: a 78-page report from an entirely new and previously undisclosed expert, Matthew Strebe (the "Strebe Report").  Although styled as a rebuttal, the Strebe Report is a naked attempt to redo the analysis of one of Plaintiffs' original experts, Mary Frantz, whose credibility and methods were severely damaged during the course of class certification proceedings.

The introduction of a never-before-disclosed expert at the time of a reply brief is improper, and Defendants will be filing a letter motion to strike him.  In addition, the timing is particularly prejudicial here.  The current deadline for motions to exclude expert witnesses is November 10, 2025.  ECF 776 (the "Scheduling Order").  By ambushing Defendants, Plaintiffs have provided no meaningful opportunity to evaluate the Strebe Report before the fast-approaching deadline.  Should the Court not strike him, Defendants believe they will need the opportunity to depose this new putative expert and the opportunity to respond appropriately with their own expert.

Defendants therefore respectfully request the following relief from the Court:

1. A stay of the November 10 deadline for motions to exclude experts, but only as to Strebe[1]; and

---

[1] The relief Defendants seek does not impact deadlines with respect to any other experts, and Defendants will serve motions to exclude any other Plaintiffs' experts by the November 10 deadline.  *See* ECF 776.

Page 2

2. A briefing schedule for Defendants' forthcoming letter motion to strike the Strebe Report and any portions of Plaintiffs' reply brief relying on it, or in the alternative, for additional expert discovery, with a proposed due date for Defendants' letter motion of November 12, as further outlined below.

In addition, Defendants intend to seek leave to file a sur-reply to the Motions to address issues improperly raised for the first time on reply, including Plaintiffs' new proposed class definitions and (if not stricken) their new arguments based on the Strebe Report. Defendants believe it will be most efficient to seek such relief after the resolution of their anticipated letter motion to strike, when it will be possible to file a single sur-reply that addresses all remaining issues.

Defendants are prepared to move this case forward as expeditiously as possible and believe that their requested relief represents the most efficient way to fairly adjust the case schedule. If it would assist the Court to hear from the parties on these issues, Defendants would welcome the opportunity to appear for a conference at the Court's convenience.

**BACKGROUND**

In connection with their opening Motions, Plaintiffs served a report from purported expert Mary Frantz to support their central injury theory: that all Plaintiffs' and putative class members' information was exfiltrated from AMCA and "offered for sale" on the dark web. Unless Plaintiffs can prove through common evidence and without need for individualized inquiry that each class member had their data exfiltrated from AMCA and offered for sale on the dark web, class certification is impossible even under Plaintiffs' own theory of potential harm. During deposition, Frantz's testimony revealed significant flaws in her opinions. First, Frantz relied heavily on materials from third parties who reviewed AMCA's systems or purportedly identified data linked to AMCA on the dark web—none of which she prepared, validated, or reviewed applying any discernible methodology. Second, Frantz also relied on her own searches of the dark web for named Plaintiffs' information, which she failed to document (making it impossible to validate her conclusions). She claimed to find information relating to *some* of the named Plaintiffs on the dark web (and the information she claimed to find was merely partial addresses), but she never even attempted to attribute any information she purportedly found to the AMCA Cyberattack. In fact, she testified that to perform such an attribution analysis, she would have used an *entirely different methodology*.

In rebuttal to Frantz, Defendants served an expert report from Matteo Tomasini, who concluded that: (i) Frantz mischaracterized the findings of the third parties she relied on, and (ii) Frantz's own dark web analysis was methodologically unsound and could not have reliably identified information associated with the named Plaintiffs on the dark web, much less attribute any information found on the dark web *to the AMCA Cyberattack*. Tomasini also directed an independent search of the dark web and found no credible evidence that data allegedly exfiltrated from AMCA was ever directly posted to or made available for sale on the dark web. He also identified multiple, independent sources of data exposure unrelated to the AMCA Cyberattack for each of the named Plaintiffs.

Page 3

In support of their reply brief, Plaintiffs served two separate expert reports addressing the same dark web issues: a "reply" report from Frantz and the 78-page Strebe Report. Strebe retreads the same discussion from Frantz's opening report regarding the conclusions of third parties and attempts to bolster the analysis with additional material that Frantz could have analyzed, but did not even reference. But in addition, Strebe purports to apply a brand new "root cause analysis" methodology, which Frantz did not use—and which does not rebut any part of Tomasini's analysis or opinions. In short, Plaintiffs effectively seek to substitute Strebe's new analysis and methodology for Frantz's ill-supported original opinion.

**ARGUMENT**

The Scheduling Order does not allow for Plaintiffs' ambush tactics. It provides for an orderly sequencing of class certification expert discovery, with Plaintiffs permitted to serve only *rebuttal* expert reports in connection with their reply papers. Consistent with that sequencing, the Scheduling Order does not provide for depositions of such rebuttal experts because it presumes that Defendants already had an opportunity to depose those experts. *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, at *3 (N.D. Cal Nov. 15, 2011) (granting motion to strike new rebuttal expert and noting the scheduling order has "no opportunity provided for a deposition of the reply expert for the obvious reason that" any such expert would have already been deposed after the opening report). That is, as in *Oracle*, the Scheduling Order here was "designed to forestall 'sandbagging' by a party with the burden of proof who wishes to save its best points for reply, when it will have the last word, a common litigation tactic." *Id.* The Strebe Report represents just this sort of improper sandbagging.

First, through the Strebe Report, Plaintiffs seek to introduce an *entirely new methodology* (which he terms a "root cause" analysis) applied to the same third-party materials on which Frantz relied. It is improper to introduce a new methodology on rebuttal under any circumstances—and doubly so when done through a new expert. *See, e.g.*, *Byrd v. Aaron's, Inc.*, 2017 WL 1093286, at *5–6 (W.D. Pa. Mar. 22, 2017) (granting motion to strike rebuttal report of original expert that introduced a new methodology); *Bowman v. Int'l Bus. Mach. Corp.*, 2013 WL 1857192, at *19–20 (S.D. Ind. May 2, 2013) (granting motion to strike rebuttal report of original expert and noting that "[a] rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies").

Second, given Frantz's opinion on the same subject matter, the Strebe Report is an improper attempt to bolster her original opinion or, in light of the glaring flaws in her analysis revealed through discovery, replace her with a new substitute expert. *See, e.g.*, *O'Connor v. Ford Motor Co.*, 2025 WL 790240, at *15 (N.D. Ill. Mar. 12, 2025) (excluding rebuttal report of new expert as improper because "rebuttal expert testimony may not be used to simply bolster a previous expert opinion"). Plaintiffs do not explain why Frantz, who also purports to be a cybersecurity expert with incident response experience, was incapable of submitting these opinions herself. Nor could they, as she submitted a reply report that covers the *same ground* as the Strebe Report. Nothing in Rule 26 permits "introduction of a brand-new expert by way of a *reply* to an *opposition* on an issue on which it bears the burden of proof." *Oracle*, 2011 WL 5572835, at *4.

Page 4

Third, the Strebe Report does not offer actual rebuttal to Defendants' expert, Tomasini, who did not purport to use a root cause analysis or analyze the scope of the cyberattackers' intrusion into AMCA's systems. Tomasini merely identified Frantz's failure to employ *any methodology* combined with her unquestioning reliance on (and self-serving interpretations of) investigations and analyses by third parties. Advancing a new and untimely methodology does nothing to *rebut* Tomasini's criticism that Frantz lacked a methodology; if anything, Plaintiffs' attempt to belatedly backfill that glaring absence *confirms* the accuracy and reliability of Tomasini's critique. His criticisms of Frantz do not permit Plaintiffs to introduce an entirely new expert with a new methodology to address their failure to carry their burden. *See Madison Cap. Co., LLC v. S & S Salvage, LLC*, 2011 WL 195639, at *4 (W.D. Ky. Jan. 19, 2011) (granting motion to strike new rebuttal experts and stating "[t]he Court will not allow [plaintiff] to now introduce expert testimony . . . masquerading as rebuttal expert testimony"); *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, 2005 WL 838679, at *11 (N.D. Ill. Apr. 5, 2005) (granting motion to strike new rebuttal report after finding it "goes far beyond rebutting the opinions expressed in [the other party's] expert report").[2]

Defendants face substantial prejudice from Plaintiffs' eleventh-hour introduction of a new expert with a new methodology, which Plaintiffs rely upon heavily in their reply brief. The prejudice associated with introduction of new arguments, theories, and evidence on reply is compounded under the current Scheduling Order, which provides just *19 days* for Defendants to assess the Strebe Report and respond (via a deposition and sur-rebuttal from Defendants' expert) before the deadline for motions to exclude expert witnesses. Defendants are now in a no-win situation, where they either must suffer substantial prejudice from Strebe's untimely opinion or expend even more resources to respond to Strebe's new methodology and arguments—all after spending nearly a year and significant resources responding to Plaintiffs' Motions and original experts. This is not how orderly motion practice in sophisticated, high-stakes multidistrict litigation is supposed to work. *See Gilbane Bldg.*, 2005 WL 838679, at *10 (granting motion to strike new rebuttal expert and noting that "[a]dding a substantive new expert report, which would likely take the opponents' experts several weeks to analyze, and three new potential deponents to an already tight discovery schedule simply is not fair").

Whether or not the Court grants Defendants' motion to strike the Strebe Report, there will unfortunately be unavoidable downstream consequences for the current case schedule. If the Court grants the motion to strike, Plaintiffs will need to re-serve a reply brief that omits the significant portions of that brief that rely on Strebe's opinions and analysis. If the Court does not strike the Strebe Report but, instead, permits additional expert discovery in the form of a deposition of Strebe and a sur-rebuttal expert report, Defendants will need sufficient time to complete that discovery and report. And, after either of those decisions, Defendants will seek leave to file a sur-reply brief in opposition to class certification that, at a minimum, addresses the new class definitions Plaintiffs proposed on reply and may also address other new arguments and theories Plaintiffs raised for the first time.

---

[2] The Strebe Report also includes lengthy discussion of the "dark web supply chain," AMCA's cybersecurity practices, and Strebe's purported review of AMCA's systems, none of which Tomasini ever addressed (and the latter of which Frantz testified she did *not* perform). This is not rebuttal but an improper attempt to use the reply process to meet a burden they failed to meet when they were required to.

Page 5

In short, Plaintiffs have attempted to belatedly interpose a new expert using an entirely new methodology, in an effort to rehabilitate Frantz's ill-supported opinions or, as Defendants suspect, replace her entirely. The Court should reject these improper litigation tactics and grant Defendants appropriate relief, as requested below.

**CONCLUSION**

For these reasons, Defendants respectfully request that the Court (1) stay the deadline for any motion to exclude Strebe; and (2) enter the following schedule:

- **November 12:** Defendants to file letter motion to strike the Strebe Report and any portions of Plaintiffs' reply brief relying on it, or in the alternative, for additional expert discovery to depose Strebe and submit an expert report rebutting his report;
- **November 25:** Plaintiffs to file opposition, if any;
- **December 5:** Defendants to file reply, if any.

The Parties met and conferred via Teams on November 3, 2025, and did not reach an agreement regarding this requested relief.

*/s/ David H. Hoffman*
David H. Hoffman
Daniel C. Craig
Heather Benzmiller Sultanian
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel.: (312) 853-7000
david.hoffman@sidley.com

*Counsel for Defendant Quest Diagnostics Incorporated*

*/s/ Kristine M. Brown*
Kristine M. Brown
Donald M. Houser
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000
kristy.brown@alston.com
donald.houser@alston.com

Thomas P. Scrivo
Young Yu
O'TOOLE SCRIVO, LLC
14 Village Park Road
Cedar Grove, NJ 07009
Tel.: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

*Counsel for Defendant Optum360, LLC*

*/s/ Edward J. Fanning, Jr.*
Edward J. Fanning, Jr., Esq. (055351994)
McCARTER & ENGLISH, LP
Four Gateway Center
100 Mulberry St.

*/s/ Bradley J. Bartolomeo*
Bradley J. Bartolomeo
Jeffrey Y. Spiegel
Ariadne Panagopoulou
Abaigeal D. Franson

| | |
|---|---|
| Newark, NJ 07102<br>Telephone: (973) 622-4444<br>Facsimile: (973) 624-7070<br>Email:  efanning@mccarter.com<br><br>Allison Holt Ryan<br>Adam A. Cooke<br>Alicia J. Paller<br>HOGAN LOVELLS US LLP<br>555 Thirteenth Street, NW<br>Washington, DC 20004<br>Telephone: (202) 637-5600<br>Facsimile: (202) 637-5910<br>Email:  allison.holt-ryan@hoganlovells.com<br>            adam.a.cooke@hoganlovells.com<br>            alicia.paller@hoganlovells.com<br><br>*Counsel for Defendant Laboratory Corporation of America Holdings* | LEWIS BRISBOIS BISGAARD & SMITH LLP<br>One Riverfront Plaza, Suite 800<br>Newark, NJ 07102<br>(973) 577-6260<br>Bradley.Bartolomeo@lewisbrisbois.com<br>Jeffrey.Spiegel@lewisbrisbois.com<br>Ariadne.Panagopoulou@lewisbrisbois.com<br>Abaigeal.Franson@lewisbrisbois.com<br><br>*Attorneys for Defendants Sonic Healthcare USA, Clinical Pathology Laboratories, Inc., Aurora Diagnostics LLC, and Austin Pathology Associates* |