**CARELLA BYRNE
CECCHI BRODY
AGNELLO, P.C.**

| | | | |
|---|---|---|---|
| JAN ALAN BRODY | DONALD F. MICELI | OF COUNSEL | RAYMOND J. LILLIE |
| JOHN M. AGNELLO | MELISSA E. FLAX | PETER G. STEWART | GREGORY G. MAROTTA |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | CARL R. WOODWARD, III | MARYSSA P. GEIST |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | FRANCIS C. HAND | JORDAN M. STEELE |
| | BRIAN H. FENLON | JAMES A. O'BRIEN, III | BRITTNEY M. MASTRANGELO |
| | CAROLINE F. BARTLETT | JOHN G. ESMERADO | GRANT Y. LEE*** |
| CHARLES C. CARELLA | ZACHARY S. BOWER+ | STEVEN G. TYSON | MAYBOL HALL |
| 11/21/33 – 11/4/23 | DONALD A. ECKLUND | MATTHEW J. CERES | WILLIAM J. MANORY |
| | CHRISTOPHER H. WESTRICK* | ZACHARY A. JACOBS*** | NESLIHAN Z. TALU |
| | STEPHEN R. DANEK | JASON H. ALPERSTEIN | |
| | MICHAEL A. INNES | | *CERTIFIED BY THE SUPREME COURT OF |
| | MEGAN A. NATALE | | NEW JERSEY AS A CIVIL TRIAL ATTORNEY |
| | KEVIN G. COOPER | | ***MEMBER IL BAR ONLY |
| | | | +MEMBER FL BAR ONLY |

November 4, 2025

**VIA ECF**

Honorable Jamel K. Semper, U.S.D.J.
Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

RE:    *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904-JKS-MAH—All Tracks
Plaintiffs' Opposition to Defendants' Motion (ECF No. 800)

Your Honors:

Plaintiffs respectfully oppose Defendants' belated request to fundamentally restructure the class certification schedule—one that would transform routine expert discovery into a convoluted process that could extend these proceedings a year or more. Defendants' proposed modification lacks any legitimate justification and would create the type of fragmented, inefficient briefing this Court's scheduling order was designed to prevent.

Plaintiffs ask the Court to deny Defendants' motion for three principal reasons. First, Defendants cannot establish "good cause" under Rule 16(b)(4) to upend the case for a garden-variety expert challenge. Second, their proposed five-step, multi-month process would burden the Court with duplicative briefing, create procedural inefficiencies, and prejudice Plaintiffs by delaying class certification and trial extensively. Third, the requested modification threatens to derail the forthcoming Court-ordered mediations, undermining the parties' opportunity for meaningful settlement discussions.

While Plaintiffs ask the motion be denied in its entirety, there is a modest and reasonable alternative if the Court wishes to permit additional discovery into Mr. Strebe: a short extension of all expert-related deadlines that preserves the integrated structure of the current schedule.

November 4, 2025
Page 2

## I.    Procedural Background

On November 1, 2024, Plaintiffs moved for class certification, supported by five experts. One was Mary Frantz, who addressed four issues: (1) AMCA's cybersecurity; (2) Defendants' information about AMCA's cybersecurity; (3) the Data Breach and Defendants' responses to it; and (4) the availability of Class Member information on the "dark web."

On November 25, 2024, the Court entered a Scheduling Order under which Defendants would oppose class certification on February 20, 2025, Plaintiffs would serve reply briefs in support of class certification "and any rebuttal expert reports in support of class certification" seven weeks later, on April 11, 2025.

On September 2, 2025, Defendants opposed class certification and disclosed three experts, including Matteo Tomasini.[1] Mr. Tomasini opined, in relevant part, that: (A) there is no credible evidence indicating that data from AMCA was ever posted to or made available for sale on the dark web; and (B) third-party evidence does not indicate that Plaintiffs' data was exfiltrated.

On October 22, 2025, Plaintiffs filed an omnibus reply brief in support of class certification and disclosed Mr. Strebe as a rebuttal expert responding to Mr. Tomasini. Mr. Strebe explained: (A) how information is typically sold on the dark web; (B) that third-party findings, when analyzed in the way that incident responders (like Mr. Strebe) analyze such finding, prove that Plaintiffs' information was exfiltrated; (C) that the searches that Mr. Tomasini "directed" do not show that breached AMCA data was never exfiltrated to the dark web; and (D) that Mr. Tomasini's discussion regarding Plaintiffs' Personal Information is irrelevant.

On October 20, 2025, Defendants served Plaintiffs' affirmative experts with subpoenas, to which each responded on November 3, 2025. At no point did Defendants seek to obtain any discovery from Mr. Strebe (via subpoena or deposition), despite Plaintiffs ensuring that Mr. Strebe would be available for deposition prior to the November 10, 2025 *Daubert* motion deadline.

## II.    ARGUMENT

### A.    Defendants did not show good cause to modify the scheduling order.

Defendants' motion proceeds under Federal Rule 16(b), which permits modification of a scheduling order only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4). The moving party must demonstrate that it exercised diligence yet could not reasonably meet the scheduling order's deadlines. *Premier Cop Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also Yerkes v.*

---

[1] It then set a deadline of 17 days later, April 28, 2025, for all parties to serve motions challenging class certification experts. ECF No. 746. On July 21, 2025, the Parties agreed on an Amended Scheduling order keeping the same language, sequencing, and timing for class certification and expert briefing. ECF No. 776.

November 4, 2025
Page 3

*Weiss*, 2019 WL 1205629, at *3 (D.N.J. Oct. 7, 2019). This is so because "[e]xtensions of time without good cause would deprive courts of the ability to effectively manage cases on their overcrowded dockets and severely impair the utility of Scheduling Orders." *Louisiana Counseling & Fam. Servs., Inc. v. Mt. Fugi Japanese Rest.*, 2013 WL 1844269, at *3 (D.N.J. May 1, 2013).

Defendants never claim they can meet this standard, and they do not.

**1.  There is not good cause to modify the scheduling order to address a routine expert dispute, particularly not with a cumbersome five-step process.**

Defendants seek a complete restructuring of the schedule, seeking to convert an efficient *Daubert* briefing schedule into a five-step, multi-month quagmire:

1.  *Step 1*. The instant motion to amend the Scheduling Order.
2.  *Step 2*. Initial briefing on their procedural motion to strike Mr. Strebe's report, with three briefs through December 5. ECF No. 800, at 5.
3.  *Step 3*. When Step 2 is unsuccessful, Defendants propose that they be able to depose Mr. Strebe and file their own sur-rebuttal expert report.
4.  *Step 4*. Briefing on Defendants' expert's sur-rebuttal report.
5.  *Step 5*. Defendants file a sur-reply to Plaintiffs' class certification reply.

Defendants do not propose any timeline after Step 2, but it will inevitably cause months of delay in a case that is already more than 6 years old. (Nor does Defendants' schedule make sense: a sur-reply from Defendants would only be appropriate if Mr. Strebe's report were improper rebuttal; i.e., it would be an alternative to the Court striking improper testimony. *But Defendants propose they be allowed a sur-reply assuming the Court determines that Mr. Strebe's testimony is proper*.)

Good cause does not exist for such a radical departure from the present schedule. Defendants' six-page letter boils down to a simple and routine expert dispute: whether Mr. Strebe provided appropriate rebuttal testimony. Defendants cannot transform this into "good cause" for a new schedule. This is particularly so because the schedule permitted Plaintiffs to serve "rebuttal expert reports in connection with their reply papers." ECF No. 800, at 3. Rebuttal reports, even by new experts, are commonplace. *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 13341004, at *4 (D. Del. Mar. 14, 2012) ("I find that it was not improper for Dr. Riley's first expert report to have been served at the reply stage. The Scheduling Order did not specifically preclude such a filing, and the Court is not aware of (nor have the parties identified) any other local rule or practice that would have prohibited it."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 4451579, at *5 (N.D. Cal. July 20, 2015) ("[T]he undersigned does not find any order requiring advance disclosure of a rebuttal expert witness' identity before service of that expert's rebuttal report. Nor is there binding authority to support defendants' argument in that regard."). Nothing about Mr. Strebe's designation or his opinions justifies the radical restructuring Defendants seek.

Indeed, Defendants' own arguments reveal the routine nature of their challenge. They contend Mr. Strebe's report is procedurally improper; a straightforward legal argument requiring no complex analysis of methodology, statistical models, or technical qualifications. And an

November 4, 2025
Page 4

argument Defendants have already thoroughly researched. ECF No. 800, at 3-4. They cite no complexity or special circumstances that distinguish this situation from any other expert challenge, and Plaintiffs know of none.

Nor does any purported need to challenge the merits of Mr. Strebe's report create good cause. Although Defendants repeatedly characterize the rebuttal report as an ambush (ECF No. 800 at 1, 3), their own conduct demonstrates otherwise. Defendants had ample opportunity to depose Mr. Strebe and explore any concerns about his opinions or qualifications. Plaintiffs specifically reserved dates for Mr. Strebe's deposition, yet Defendants never reached out to schedule his deposition. Instead, they sat on their rights and waited until a week before the expert challenge deadline to request an entirely new schedule.[2]

Defendants' tactical decision to forgo available discovery and then claim prejudice epitomizes the lack of diligence that defeats good cause. Defendants should not be permitted to manufacture a crisis through their own inaction and then demand the Court restructure its schedule to accommodate that strategic choice.

### 2. Mr. Strebe's Report is proper rebuttal testimony under Rule 26(a)(2)(D)(ii).

Defendants' request for wholesale schedule modification is particularly inappropriate because Mr. Strebe's report is proper rebuttal testimony. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). So there is no need for any modification of the schedule at all, much less one as radical as what Defendants propose.

   a. Mr. Strebe responds directly to Mr. Tomasini, and he offers no opinions other than those necessary for that task.

Rebuttal experts have broad latitude to respond to opposing opinions. "While the scope of a rebuttal report is limited to the same subject matter encompassed in the opposing party's expert reports, district courts [are] reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." *Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 3611510, at *2 (W.D. Pa. July 27, 2018).

Contrary to Defendants' argument (ECF No. 800, at 3-4), "nothing about Rule 26 or the nature of rebuttal prohibits offering independent opinions or utilizing other methodologies. In fact, offering a different, purportedly better methodology is a proper way to rebut the methodology of someone else." *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *4 (C.D. Cal. Aug. 17, 2016). That is precisely the case here. While Defendants claim that Mr. Strebe's root cause analysis is a methodology that "does not rebut any part of

---

[2] Defendants rejected Plaintiffs' proposal to avoid this dispute, discussed more fully below, that the deadline for all *Daubert* motions be extended until November 25 to give Defendants even more time to depose Mr. Strebe. (Plaintiffs note that they deposed three experts and submitted five rebuttal reports in the seven weeks between Defendants' opposition and reply expert disclosures.)

November 4, 2025
Page  5

Tomasini's analysis or opinions," ECF No. 800 at 3, that is false. Mr. Strebe's industry standard root cause analysis is a typical practice used in cybersecurity to analyze pieces of evidence (e.g., the third-party findings that Mr. Tomasini claims do not support exfiltration) to tell a coherent story of the threat actors' actions. Mr. Strebe is therefore providing a methodology that Mr. Tomasini should have used before drawing the (incorrect) conclusion that there is no credible evidence that data from AMCA was for sale on the dark web. ECF No. 800 at 2.

Courts consistently recognize that effective rebuttal often requires new analysis. "[T]o the extent [a rebuttal expert's] report offers new analysis and calculations, . . . it is proper for [that expert] to utilize new calculations or methods in an effort to rebut and/or contradict the theories posited by [the opposing party's] experts [and] is properly admissible." *Innovative Designs*, 2018 WL 3611510, at *3. Even Defendants' own cited authority acknowledges that rebuttal reports "'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert[.]'" *Byrd v. Aaron's, Inc.*, 2017 WL 1093286, at *4 (W.D. Pa. Mar. 22, 2017).

### b. Mr. Strebe's report does not improperly "bolster" Ms. Frantz.

Defendants' argument that Plaintiffs are trying to bolster Ms. Frantz's original report or replace her is not correct. They make this argument only by mischaracterizing Ms. Frantz's original opinions: that AMCA had poor cybersecurity, that Defendants failed to oversee AMCA, and that Defendants failed to appropriately respond to the Breach. *That* was her core testimony, and absolutely none of it has been rebutted by Defendants' experts.

Mr. Strebe, by contrast, is providing discrete testimony related wholly to Mr. Tomasini's opinions, which did not even address Ms. Franz's core testimony. Mr. Strebe offers nothing more. (And to the extent that Defendants argue that Plaintiffs cannot put forward two experts on similar topics, that is a question to be decided on motions in limine prior to trial, not during class certification briefing.)

### c. Defendants' cases do not change the above analysis.

Defendants' reliance on *Oracle America, Inc. v. Google Inc.*, 2011 WL 5572835 (N.D. Cal. Nov. 15, 2011), is misplaced. It involved both a scheduling order that "emphasized the limited nature of reply reports" and mandated they be "very brief," *id.* at *2, and a plaintiff who identified the at-issue expert testimony before opening reports, but strategically withheld the report until reply, after the *Daubert* motion deadline. The court deemed clear "sandbagg[ing]" by "sav[ing] its best points for reply." *Id.* Here, by contrast, "the [Strebe] Report was served prior to the expiration of the *Daubert* motion deadline, and in sufficient time for [Mr. Strebe] to have been deposed prior to the close of expert discovery." *Wyeth*, 2012 WL 13341004, at *4. Defendants' strategic decision not to take Mr. Strebe's deposition or accept Plaintiffs' proposal of another 15 days to do so is far different from the circumstances in *Oracle*, even setting aside: (A) the very specific scheduling order at issue in that case; and (B) the fact that Plaintiffs here had no intention of offering Mr. Strebe's testimony until they read Mr. Tomasini's report.

November 4, 2025
Page 6

Likewise, *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, 2005 WL 838679 (N.D. Ill. Apr. 5, 2005), offers no support for Defendants. *Gilbane* mainly addressed the issue of whether a supplemental report under Rule 26(a)(2)(E) could be submitted by a different expert than originally disclosed. The court found no authority for such a practice, noting the movant "cites no case in which the supplemental report was submitted by any witness other than the originally disclosed expert." *Id.* at *9. That concern about supplementation has no bearing on rebuttal reports under Rule 26(a)(2)(D)(ii), which routinely come from new experts.

If anything, the case law counsels against premature rulings on rebuttal testimony. As one court properly recognized, even when portions of a rebuttal report may exceed proper scope, "the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether." *Bowman v. Int'l Bus. Mach. Corp.*, 2013 WL 1857192, at *8 (S.D. Ind. May 2, 2013) (finding it "clearly erroneous and contrary to law to strike the remainder of [the expert's] reply report even though it did not constitute improper rebuttal"). Indeed, "distinguishing between what is new and what is rebuttal is a task best left to trial in the full context of the evidence." *In re CRT*, 2015 WL 4451579, at *4.

## B. Defendants' proposal radically changes the schedule, burdening the Court and undermining mediation

Defendants' proposal does not seek a simple extension. Instead, it fundamentally restructures the entire class certification schedule, shifting substantial burden onto the Court to make unnecessary sequential rulings, substantially delaying the case, and undermining Court-ordered mediation.

Under Defendants' proposal, the Court would be forced into a protracted, multi-step process that fragments what should be unified proceedings. First, the Court would need to adjudicate the instant motion to amend the schedule. Second, the Court would need to determine whether Mr. Strebe's report constitutes proper rebuttal testimony (it does). Third, according to Defendants' submission, Defendants intend to conduct additional expert discovery in the form of a deposition of Mr. Strebe and preparation of a sur-rebuttal expert report, for which Defendants claim they will need "sufficient time." ECF No. 800 at 4. Defendants provide no authority for their argument that they get to file a sur-rebuttal expert report and allowing Defendants to have the last word was plainly not part of the scheduling order (and good cause does not exist to change it now). Finally, following this extended discovery, Defendants say that they will seek leave to file a sur-reply brief in opposition to class certification.

Each of these successive proceedings threatens months of delay. The Court would have to familiarize itself with the expert issues multiple times, issue multiple rulings on related topics, and repeatedly pivot between procedural and substantive matters. This approach would generate overlapping arguments across multiple briefs and disrupt the orderly progression toward class certification. *See Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) ("Indeed, '[d]isregard of the order would undermine the court's ability to control its docket, [and] disrupt the agreed-upon course of litigation[.]" (citations omitted)).

November 4, 2025
Page 7

      At the same time, Defendants' proposal would effectively sabotage the forthcoming November to January Court-ordered mediations. By fragmenting expert proceedings across many months, Defendants' proposal creates a cloud of uncertainty that would hang over mediation. The prospect of months of additional proceedings after mediation destroys any momentum toward resolution and gives Defendants every incentive to delay meaningful negotiations until the procedural dust settles.

**C. Plaintiffs' alternative schedule addresses any legitimate concerns.**

      Rather than the radical restructuring Defendants propose, Plaintiffs offered Defendants a reasonable alternative to avoid this dispute. While Plaintiffs ask the Court to deny Defendants' motion in full, in the alternative, Plaintiffs ask the Court to enter the following schedule that would permit Defendants opportunity to depose Mr. Strebe now (despite Defendants' choice not to depose him sooner) while preserving the integrity of the Court's scheduling order and ensuring that this litigation will proceed in an orderly fashion.

| Event[3] | Proposed Date | Current Date |
|---|---|---|
| All parties serve any motions challenging class certification experts | November 25, 2025 | November 10, 2025 |
| All parties serve briefs in opposition to motions challenging class certification experts | December 30, 2025 | December 3, 2025 |
| All parties serve reply briefs in support of motion challenging class certification experts | January 20, 2026 | December 17, 2025 |
| All parties to file motions challenging class certification experts | January 27, 2026 | December 23, 2025 |
| All parties file briefs in opposition to motions challenging class certification experts | January 28, 2026 | December 29, 2025 |
| All parties file reply briefs in support of motion challenging class certification experts | January 29, 2026 | December 30, 2025 |

**Conclusion**

---

[3] All other dates remain the same.

November 4, 2025
Page 8

     For the above reasons, Plaintiffs ask the Court to deny Defendants' motion to modify the briefing schedule entirely. In the alternative, they ask the Court to deny the motion in part and direct Defendants to file any challenges to Mr. Strebe, along with all other expert challenges, under the above proposed schedule.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

<u>/s/ James E. Cecchi</u>
JAMES E. CECCHI
