# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br><br>This Document Relates To: *Labcorp Track* | Civil Action No. 19-md-2904(JKS)(MAH) |

# DECLARATION OF JAMES E. CECCHI IN SUPPORT OF LABCORP PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

I, James E. Cecchi, declare as follows:

1.     I was appointed by this Court to serve as Interim Lead Counsel for Plaintiffs in the above-captioned MDL on November 5, 2019. (ECF 99). I make this Declaration in support of the Labcorp Plaintiffs' Motion for Preliminary Approval.

2.     I am an attorney duly licensed to practice in the State of New Jersey and member of the law firm Carella, Byrne, Cecchi, Brody & Agnello, P.C. I have personal knowledge of the matters stated herein, and, if called upon, I could and would competently testify thereto.

3.     Plaintiffs and the proposed Settlement Class they seek to represent have reached a nationwide class action settlement with Defendant Laboratory Corporation of America Holdings ("Labcorp" or "Defendant") for a $35,000,000.00 non-reversionary common fund to resolve all claims for individuals for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau Inc., d/b/a American Medical Collection Agency ("AMCA") and whose information was contained in the computer systems implicated by the cybersecurity incident at AMCA that occured between August 1, 2018 and March 30, 2019 (the "Security Incident").

4.     On July 2, 2025, the Court ordered all Parties to engage in mediation. (ECF 768).  Plaintiffs and Labcorp engaged former Magistrate Judge Diane M. Welsh, ret., and scheduled an in-person settlement conference for November 14,

2025. In advance of the settlement conference, Labcorp and Plaintiffs exchanged comprehensive mediation statements.

5.      The settlement conference was conducted in person in Philadelphia before Magistrate Judge Welsh, (ret.), on November 14, 2025, and lasted all day. Ultimately, an agreement was reached on the material terms of a class-wide settlement..

6.      Following further negotiations, the Settlement Agreement was finalized on March 2, 2026. These negotiations were held with each side having full knowledge of the crucial issues in the case, and they involved numerous phone calls and e-mails between counsel in addition to the mediation. As the mediator can attest, these negotiations were difficult, adversarial, and vigorously executed by both sides.

7.      The settlement provides Settlement Class Members with valuable benefits including reimbursement for verifiable, documented Out-of-Pocket Losses up to $5,000, which includes up to 10 total hours of time (at $25 per hour) spent on time remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is verifiable and fairly traceable to the Security Incident. In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for up to $50 (both subject to increases or decreases *pro rata* depending on the number of claims). In addition, all Settlement Class Members are

eligible to enroll free of charge in two years of medical and healthcare information Monitoring Services provided by CyEx.

8. The settlement was the result of intensive, arm's-length negotiations over the course of months between experienced attorneys with vast experience handling data breach class action cases and with the assistance of an experienced mediator. There is no evidence that any collusion or illegality existed during settlement negotiations.

9. Proposed Lead and Co-Lead Settlement Counsel performed substantial work identifying and investigating potential claims, properly supporting the allegations in the Complaints, and prosecuting Plaintiffs' claims in hard-fought, complex litigation for six years. As reflected in their firm resumes, Plaintiffs' proposed Lead and Co-Lead Settlement Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation throughout the United States. *See infra* Exs. 3-5. Moreover, the firms have demonstrated their abilities and commitment to this Litigation, devoting the resources and personnel necessary to get to this point—achieving a beneficial settlement with Labcorp.

10. Attached hereto are true and correct copies of the foregoing exhibits in support of the Labcorp Plaintiffs' Motion for Preliminary Approval:

11.    Attached hereto as **Exhibit 1** is a true and correct copy of the executed Settlement Agreement, including its attachments:  Exhibit A Claim Form, Exhibit B Short Form Notice, Exhibit C Long Form Notice, Exhibit D Settlement Benefits Plan, Exhibit E Description of CyEx Monitoring Services, Exhibit F proposed Preliminary Approval Order.

12.    Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Carla Peak of Kroll Settlement Administration regarding the Notice Plan.

13.    Attached hereto as **Exhibit 3** is a true and correct copy of  the firm resume for Carella, Byrne, Cecchi, Brody & Agnello, P.C.

14.    Attached hereto as **Exhibit 4** is a true and correct copy of the firm resume for the Nussbaum Law Group, P.C.

15.    Attached hereto as **Exhibit 5** is a true and correct copy of the firm resume for Robbins Geller Rudman & Dowd, LLP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of March, 2026, at Roseland, New Jersey.

 _/s/ James E. Cecchi_
                    James E. Cecchi

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>Labcorp Track | No. 19-md-2904 (JKS)(MAH)<br><br>MDL 2904 |

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement Agreement"), dated March 2, 2026, is made and entered into by and among the following Settling Parties: [1] (i) Defendant Laboratory Corporation of America Holdings ("Labcorp" or "Defendant"); and (ii) Plaintiffs Aleksander Nazemnikov, Cameron Spencer, Carol Kaplan, Debra Wrenn, Edith Thrower, George Rothwell, Holly Laufenberg, Justin Nelson-Carter, Khristopher Thomas, Martha Cuvillier, Melanie Vazquez, Rosaria Gadero, Sandra Lassiter, Sheera Harris, Sherrie Palmer, Timothy Judelsohn, Tracy Buhr, Valerie Scott, Tatyana Shulman, David Finch, Gina Allende, and Wendy Wallach, individually and on behalf of the Settlement Class (collectively, "Plaintiffs"), in the litigation *In Re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Labcorp Track)*: Civil Action No. 19-MD-2904 (D.N.J.) (the "Litigation"). Defendant and Plaintiffs are each referred to as a "Party" and are collectively referred to herein as the "Parties." The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (defined below), upon and subject to the terms and conditions thereof.

## I.    RECITAL: THE LITIGATION

Labcorp is a provider of diagnostic testing services for patient care. Labcorp formerly used a company named Retrieval-Masters Creditor's Bureau, Inc. (d/b/a American Medical Collection Agency ("AMCA")) to pursue outstanding amounts owed by individuals to whom it had provided services. On May 14, 2019, AMCA notified Labcorp of potentially unauthorized access to certain computer systems between August 2018 and March 2019 (the "Security Incident," as defined below). Certain information stored in an AMCA computer database was provided by Labcorp to

---

[1]    All capitalized terms shall have the meaning set forth in the Definitions section below.

AMCA. Various lawsuits alleging negligence, breach of contract, and other claims were filed against Labcorp and other parties related to the Security Incident, which were consolidated into this Litigation.

After six years of hard-fought litigation, the Parties engaged in mediation with the Honorable Diane M. Welsh, U.S.M.J. (ret.) and were able to reach an agreement in principle to resolve this Litigation. The Parties have therefore agreed to settle the Litigation on the terms and conditions set forth herein in recognition that the outcome of the Litigation is uncertain and that achieving a final result through a trial and likely appeals would require substantial additional risk, uncertainty, discovery, time, and expense for all of the Parties.

## II.    RECITAL: PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLING

Plaintiffs believe the claims asserted in the Litigation, as set forth in the operative Complaint, have merit. Plaintiffs and Plaintiffs' Counsel (defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Labcorp through continued motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Plaintiffs' Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    RECITAL: DENIAL OF WRONGDOING AND LIABILITY

Labcorp denies the claims and contentions alleged in the Litigation. Labcorp denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Labcorp further denies that Plaintiffs and the classes they purport to represent have suffered any injury or

damage. Labcorp maintains that any alleged injury or damage was not caused by the Security Incident or any act or omission on the part of Labcorp and that the Litigation does not satisfy the requirements to be certified or tried as a class action under Federal Rule of Civil Procedure 23. Nonetheless, while continuing to deny any wrongdoing or liability for the claims asserted in the Litigation and believing it has strong and meritorious defenses thereto, and without any admission of liability, Labcorp has concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Labcorp has considered the uncertainty and risks inherent in any litigation. Labcorp has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    SETTLEMENT TERMS & DEFINITIONS

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and among Plaintiffs, individually and on behalf of the Settlement Class, Plaintiffs' Counsel, and Labcorp that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties and the Settlement Class, except those members of the Settlement Class who timely opt-out of the settlement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1. Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1.    **"Action" or "Litigation"** means *In Re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Labcorp Track):* Civil Action No.

4

19-MD-2904, pending in the United States District Court for the District of New Jersey, which includes all underlying lawsuits filed against Labcorp and consolidated therein and all amendments to the pleadings therein. The Action and this Agreement resolve claims against Labcorp only and do not resolve claims against other defendants in parallel litigation arising out of the Security Incident.

1.2.    **"Agreement" or "Settlement Agreement"** means this agreement, exhibits, and the settlement embodied herein.

1.3.    **"Attorneys' Fees and Expenses"** means the attorneys' fees that Plaintiffs' Counsel request the Court to approve for payment from the Settlement Fund as compensation for Plaintiffs' Counsel's work in prosecuting and settling the Action, and payment of litigation expenses incurred.

1.4.    **"Claim"** means a claim for settlement benefits made under the terms of this Settlement Agreement, pursuant to the Settlement Benefits Plan.

1.5.    **"Claim Form"** means the claim form to be used by Settlement Class Members to submit a Claim, either through the mail or online through the Settlement Website, substantially in the form as shown in Exhibit A attached hereto.

1.6.    **"Claims Deadline"** means the deadline for Claims submitted pursuant to Paragraphs 10.1(b) through (c) and 10.3 of the Agreement.

1.7.    **"Court**" means the United States District Court for the District of New Jersey.

1.8.    **"Days"** means calendar days, unless specified otherwise.

1.9.    **"Defendant's Counsel"** means the counsel of record for the Defendant in the Litigation.

1.10.    "**Effective Date**" means the first date by which all of the events and conditions specified in Paragraph 11.1 herein have occurred and been met.

1.11.    "**Escrow Account**" means the segregated escrow account maintained by the Escrow Agent into which Defendant shall make payments for the establishment of the Settlement Fund.

1.12.    "**Escrow Agent**" means Citibank.

1.13.    "**Final**" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court through entry of the Final Approval Order; (ii) the Court has entered a Judgment (as that term is defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.14.    "**Final Approval Order**" means an order entered by the Court after the Final Fairness Hearing, which finally approves the Settlement Agreement.

1.15.    "**Final Fairness Hearing**" means the hearing the Court will hold to consider the fairness of the settlement as provided by Fed. R. Civ. P. 23(e)(2).

1.16.    "**First Amended Complaint**" or "**FAC**" means the latest iteration of Plaintiffs' Complaint against Labcorp as pending before the Court and filed by Plaintiffs on March 31, 2022 and styled First Amended Consolidated Class Action Complaint: Labcorp.

1.17.    **"Judgment"** means a final judgment rendered by the Court, which dismisses Labcorp with prejudice and fully resolves the Litigation without material change to the terms and conditions set forth in the Agreement herein.

1.18.    **"Labcorp"** means and includes all employees, directors, officers, shareholders, attorneys, consultants, contractors, affiliates, agents, parent companies, predecessors, successors, subsidiaries, and assigns of Laboratory Corporation of America Holdings, whether specifically named in the Action or not.

1.19.    **"Long Form Notice"** means the long form notice of settlement posted on the Settlement Website, attached hereto as Exhibit C.

1.20.    **"Medical Shield Pro"** means those monitoring services provided by CyEx pursuant to its Medical Shield Pro product, consistent with Exhibit E.

1.21.    **"Net Settlement Fund"** means the monies remaining in the Settlement Fund after the payment of Notice and Settlement Administration Costs, Attorneys' Fees and Expenses, Service Awards, Tax Expenses, Taxes, and Tax-Related Expenses, and costs for procurement of Medical Shield Pro.

1.22.    **"Notice and Settlement Administration Costs"** means all costs incurred or charged by the Settlement Administrator in connection with providing notice to Settlement Class Members and administering the settlement, including all settlement benefits.

1.23.    **"Notice Date"** means forty-five (45) days after entry of the Preliminary Approval Order.

1.24.    **"Objection Date"** means the date by which Settlement Class Member objections must be received by the Settlement Administrator, or in the alternative, filed with the Court.

1.25. **"Opt-Out Date"** means the date by which Settlement Class Members must mail or otherwise submit their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. To the extent there is no postmark date, the date of mailing shall be deemed three days prior to receipt of the request for exclusion.

1.26. **"Out-of-Pocket Losses"** means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Security Incident, and that have not already been reimbursed by a third party, as set forth in the Settlement Benefits Plan. Out-of-Pocket Losses may include bank fees, postage, copying, mileage, telephone charges, and notary charges, and costs incurred as a result of purchasing credit monitoring or other identity theft insurance services, between August 1, 2018 and the Claims Deadline.

1.27. **"Person"** means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents, and assignees.

1.28. **"Personal Information"** means names, dates of birth, Social Security numbers, addresses, credit card information, bank information, or medical provider-related information that Plaintiffs contend could potentially have been accessed without authorization as a result of the Security Incident.

1.29. **"Plaintiffs' Counsel"** means: Attorneys James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Lead Class Counsel"); Linda P. Nussbaum of Nussbaum Law Group, P.C.; and Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP.

1.30.   **"Preliminary Approval Order"** means the Court order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class, substantially in the form as shown in Exhibit F attached hereto.

1.31.   **"Related Entities"** means each of Labcorp's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, assigns, directors, officers, shareholders, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.32.   **"Released Claims"** shall collectively mean all claims against Labcorp and its current, former, and future affiliates, parents, subsidiaries, customers, representatives, officers, agents, directors, employees, insurers, successors, assigns, and attorneys. "Released Claims" shall include any and all claims, liabilities, rights, demands, suits, actions, causes of action, obligations, damages, penalties, costs, attorneys' fees, losses, and remedies of every kind or description— whether known or unknown, existing or potential, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that relate to or arise from the Security Incident, the facts alleged in the FAC or any prior complaints, Labcorp's information security policies and practices, or Labcorp's transmission of information to third party vendors, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law.

9

1.33.    **"Released Parties"** means Labcorp, its Related Entities, and each and every one of its respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, owners, members, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as any and all of their predecessors, successors, officers, directors, employees, advisors, vendors, customers, shareholders, partners, servants, agents, attorneys, representatives, insurers, reinsurers, subrogees, and assigns. Each of the Released Parties may be referred to individually as a "Released Party."

1.34.    **"Security Incident"** means the cybersecurity incident reported by AMCA as affecting its computer systems between approximately August 1, 2018 and March 30, 2019.

1.35.    **"Service Awards"** means the awards, if any, awarded by the Court for named Plaintiffs' institution, prosecution, and substantial participation in the Litigation to be paid from the Settlement Fund.

1.36.    **"Settlement Administration"** means the work of disseminating the Long Form and Short Form Notices, processing Claims under the Settlement Benefits Plan, and other administrative work performed by the Settlement Administrator related to this Agreement.

1.37.    **"Settlement Administrator"** means an independent settlement administrator mutually agreed to by the Settling Parties and approved by the Court.

1.38.    **"Settlement Benefits Plan"** means the plan for processing Claims for and distributing settlement benefits to Settlement Class Members, which shall be presented by Plaintiffs' Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order, attached hereto as Exhibit D.

1.39.    **"Settlement Class"** means all individuals for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection

Agency ("AMCA"), and whose information was contained in the computer systems implicated by the cybersecurity incident at AMCA that occurred between approximately August 2018 and March 2019. The Settlement Class specifically excludes: (i) Labcorp and its officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge.

1.40.    **"Settlement Class Data"** means data regarding Settlement Class Members to be provided to the Settlement Administrator containing the full names and current or last known addresses for Settlement Class Members, subject to the Settlement Administrator signing any Business Associate Agreement requested by Labcorp or Plaintiffs.

1.41.    **"Settlement Class Member(s)"** means all Persons meeting the definition of the Settlement Class, or their respective successors or assigns, who do not timely and validly request exclusion from the Settlement Class.

1.42.    **"Settlement Class Notice"** means the Long Form Notice and Short Form Notice, including dissemination via electronic email.

1.43.    **"Settlement Class Representatives"** means and includes each of the following individuals named Plaintiffs in the FAC: Aleksander Nazemnikov, Cameron Spencer, Carol Kaplan, Debra Wrenn, Edith Thrower, George Rothwell, Holly Laufenberg, Justin Nelson-Carter, Khristopher Thomas, Martha Cuvillier, Melanie Vazquez, Rosaria Gadero, Sandra Lassiter, Sheera Harris, Sherrie Palmer, Timothy Judelsohn, Tracy Buhr, Valerie Scott, Tatyana Shulman, David Finch, Gina Allende, and Wendy Wallach.

1.44.    **"Settlement Fund"** means a non-reversionary cash settlement fund for the benefit of Settlement Class Members that Labcorp has agreed to pay or caused to be paid, subject to the terms and conditions set forth herein, in the amount of Thirty-Five Million Dollars and No Cents ($35,000,000.00). The "Settlement Fund" constitutes the total financial obligation of Labcorp related to the Agreement and from which all payments and financial obligations contemplated by the Parties hereunder shall be paid without any further financial obligation of any kind on the part of Labcorp, including but not limited to settlement benefits to Settlement Class Members, Notice and Settlement Administration Costs, Taxes, Tax Expenses, Tax-Related Expenses, any Attorneys' Fees and Expenses, and any Service Awards.

1.45.    **"Settlement Website"** means a website created by the Settlement Administrator, the URL for which is to be mutually selected by the Settling Parties, that will inform the Settlement Class of the terms of this Settlement Agreement, their rights, dates, and deadlines and related information, as well as provide Settlement Class Members with the ability to submit a Claim online.

1.46.    **"Settling Parties"** means, collectively, Labcorp and Plaintiffs, individually and on behalf of the Settlement Class, and all Released Parties.

1.47.    **"Short Form Notice"** means the short form notice of the proposed class action settlement, substantially in the form as shown in Exhibit B attached hereto. The Short Form Notice will inform Settlement Class Members of, among other things, the Settlement Website, the Claims Deadline, the Opt-Out and Objection Dates, and the scheduled date of the Final Fairness Hearing.

1.48.    **"Tax Expenses"** means expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns.

1.49. **"Taxes and Tax-Related Expenses"** means: (a) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendant or its counsel with respect to any income or gains earned by or in respect of the Settlement Fund; (b) any other taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (c) any and all expenses and liabilities incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

1.50. **"Unknown Claims"** means any of the Released Claims that Plaintiffs and Settlement Class Members do not know or suspect to exist in their favor at the time of the release of the Released Parties that, if known by them, might have affected their settlement with, and release of, the Released Parties, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs and Settlement Class Members intend to and expressly shall have waived the provisions, rights, and benefits conferred by California Civil Code § 1542 (or any similar comparable, or equivalent provision of any federal, state or foreign law, or principle of common law which is similar, comparable, or equivalent to California Civil Code § 1542), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs and Settlement Class Members may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs and Settlement Class Members expressly shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims. The Settling Parties acknowledge that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

### 2. The Settlement Fund

2.1     Labcorp will fund or cause to be funded a non-reversionary Settlement Fund in the amount of $35 million to be administered by the Settlement Administrator. The Settlement Fund will be funded in two installments: (i) $1,000,000 thirty (30) days following entry of preliminary approval by the Court; and (ii) the remaining $34,000,000 forty-five (45) days following entry of the Final Approval Order and Judgment. Aside from payment of the Settlement Fund, Labcorp will not have any other financial obligation under the settlement, and under no circumstances will Labcorp be responsible for or have any liability associated with taxes related to the Settlement Fund.

2.2     The Settlement Fund shall be used to fund the following: (i) all Notice and Settlement Administration Costs; (ii) any Court-awarded Attorneys' Fees and Expenses and Service Awards; (iii) any Taxes, Tax Expenses, and Tax-Related Expenses related to the Settlement Fund; and (iv) all other benefits to the Settlement Class. Any amount remaining in the Settlement Fund after payment of all of the above shall be paid as set forth in the Settlement Benefits Plan and as approved by the Court. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

2.3     The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Defendant in or to the Settlement Fund shall be extinguished, except in the event this Settlement

Agreement is terminated or if approval is reversed on appeal, as described in Paragraphs 11.2, 11.3, and 11.4.

2.4    Any eligible Settlement Class Member that does not timely and validly submit a Claim Form or whose claim is not otherwise approved by the Court: (a) shall be deemed to have waived their right to share in the Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Settlement Agreement and the Settlement and all proceedings, determinations, orders, and judgments in the Action relating thereto, including, without limitation, the judgment and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Claims against Defendant, as more fully described in the Settlement Agreement and Notice.

2.5    The Parties agree that the Escrow Account containing the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendant and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund. Further, the Settlement Administrator, within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of

the Settlement Fund and the Escrow Agent shall pay from the Settlement Fund any taxes and tax-related expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

2.6     The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance is returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraphs 11.2, 11.3, and 11.4.

2.7     Taxes, Tax Expenses, and Tax-Related Expenses relating to the Settlement Fund shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties, their counsel, and their insurers and reinsurers for Taxes, Tax Expenses, and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds in connection with his, her or its benefits under this settlement.

### 3.    Notice and Settlement Administration

3.1    All Notice and Settlement Administration Costs, including, without limitation, all fees and expenses of the Settlement Administrator, shall be paid from the Settlement Fund.

3.2    Within five (5) days after entry of the Preliminary Approval Order, the Settlement Administrator will be provided the Settlement Class Data that include(s) the full names and current or last known mailing addresses for each individual in the Settlement Class, to the extent reasonably available. The Parties agree that, to the extent email addresses are available for any Settlement Class Members, email notice is the best notice practicable under the circumstances under Fed. R. Civ. P. 23(c)(2)(B).

3.3    The Settlement Administrator will be responsible for administering all aspects of the Settlement Agreement. At least one of Plaintiffs' counsel and counsel for Labcorp shall be included on all substantive communications with the Settlement Administrator concerning the form and content of Settlement Class Notice whether written or oral. The Settlement Administrator also must consult with Plaintiffs' counsel and counsel for Labcorp on material decisions regarding claims administration.

3.4    The Parties, Plaintiffs' Counsel, Defendant's Counsel, and Defendant's insurers and reinsurers shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes or Tax-Related Expenses from the Settlement Fund.

17

3.5    The Settlement Administrator shall indemnify and hold harmless the Parties, Plaintiffs' Counsel, Defendant's Counsel, and Defendant's insurers and reinsurers for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Settlement Benefits Plan and the administration of the Settlement Agreement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes or Tax- Related Expenses from the Settlement Fund.

## 4.    Opt-Out Procedures

4.1    Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. The written notice must clearly manifest the Person's intent to opt-out of the Settlement Class and must include the name of the proceeding, the individual's full name, current address, telephone number, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the settlement. So-called "mass" or "class" opt-outs shall not be allowed, as set forth in Paragraph 4.4 below. To be effective, written notice must be postmarked no later than sixty (60) days after the Notice Date.

4.2    All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in Paragraph 4.1 above, referred to herein as an "Opt-Out" or Opt-Outs," shall not receive any benefits of or be bound by the terms of this Settlement Agreement. All Settlement Class Members (Persons falling within the definition of the Settlement Class who do not Opt-Out of the Settlement Class in the manner set forth in Paragraph 4.1 above) shall be

bound by the terms of this Settlement Agreement and Final Approval Order and Judgment entered thereon.

4.3     The Notice must clearly state that any Settlement Class Member who does not file a timely Opt-Out request in accordance with this Section will lose the opportunity to exclude himself or herself from the Settlement Agreement and will be bound by the Settlement Agreement.

4.4     No Person shall exercise any exclusion rights of any other person, or (a) Opt-Out individuals as a group, in the aggregate, or as a class involving more than one Person; or (b) Opt-Out more than one Person on a single notice, or as an agent or representative. Any such purported Opt-Out requests shall be void, and the Person(s) who is or are the subject of such purported Opt-Out requests shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Releases contained herein, and Judgment entered thereon, unless he or she submits a valid and timely Opt-Out request.

4.5     Within seven (7) days after the deadline for Opt-Outs as set forth in this Section and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid Opt-Outs. If a Person submits both a Claim and an Opt-Out, the Settlement Administrator will advise such Person via email, unless there is no email address for the Person, in which case the notification shall be via mail, and request that the Person withdraw either the Claim or the Opt-Out. If such Person does not withdraw the Claim or Opt-Out within seven (7) days, the Person will be deemed to have waived and withdrawn the Opt-Out and shall be treated as a Settlement Class Member for all purposes.

4.6     The Parties and their respective counsel agree that they will make no effort to suggest, solicit, facilitate, or otherwise encourage a Person to Opt-Out of the Settlement Class.

### 5.    Objection Procedure

5.1    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the objector's full name, address, telephone number, and email address; (ii) the case name and docket number: *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (JKS) (MAH) (D.N.J.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) the identity of all class action cases in which the objector or his or her counsel has objected; (vii) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (viii) the objector's personal signature. To be timely, written notice of an objection in the appropriate form must be received, no later than sixty (60) days after the Notice Date, by the Settlement Administrator at the Post Office box designated in the Long Form Notice. The objector or his or her counsel may also file their objection with the Court through the Court's ECF system, with service on Plaintiffs' Counsel and Defendant's Counsel, to be made through the ECF system. For all objections mailed to Settlement Administrator, Plaintiffs' Counsel will file them with the Court as an exhibit to Plaintiffs' motion for final approval.

5.2    The Notice must set forth the time and place of the Final Fairness Hearing scheduled by the Court that the objector may choose to attend, and notify any objector that he or she may be required to appear for deposition regarding the grounds for their objection and must provide along with their objection the dates when the objector will be available to be deposed

during the period from when the objection is filed through the date five (5) days before the Final

Fairness Hearing. The Notice will also state that any Settlement Class Member who does not file

a timely and valid objection in accordance with this Section waives the right to object or to be

heard at the Final Fairness Hearing and shall be forever barred from making any objection to the

Settlement.

5.3    Any Settlement Class Member who fails to comply with the requirements for

objecting in Paragraph 5.1 shall waive and forfeit any and all rights he or she may have to appear

separately and to object to the Settlement Agreement and shall be bound by all the terms of the

Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The

exclusive means for any challenge to the Settlement Agreement shall be through the provisions of

Paragraph 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the

Final Approval Order, or the Judgment shall be pursuant to appeal under the Federal Rules of

Appellate Procedure and not through a collateral attack.

**6.    Settlement Class Certification**

6.1    The Settling Parties agree, for purposes of this settlement only, to the certification

of the Settlement Class under Fed. R. Civ. P. 23(b)(3). If the settlement set forth in this Settlement

Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled

pursuant to the terms of this Settlement Agreement or otherwise, this Settlement Agreement, and

the certification of the Settlement Class provided for herein, will be vacated and the Litigation

shall proceed as though the Settlement Class had never been certified, without prejudice to any

Person's or Settling Party's position on the issue of class certification or any other issue. The

Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to

any position asserted by the Settling Parties in any other proceeding, case or action, as to which

all of their rights are specifically preserved. Defendant reserves the right to contest class certification for all other purposes.

6.2     The Parties acknowledge that there has been no stipulation or agreement as to the class or certification for any purpose other than effectuating the settlement, and that if the Effective Date, for whatever reason, fails to occur, any stipulation or agreement as to the class or certification becomes null and void *ab initio*; this Settlement Agreement or any other settlement-related statement shall not be cited in support of an argument for certifying any class for any purpose related to this Action or any other proceeding; and any orders preliminarily or finally approving the certification of any class contemplated by the Settlement Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any Person or entity in support of claims or defenses or in support or in opposition to a class certification motion.

**7.     Releases**

7.1     As of the Effective Date, all Settlement Class Members, including the Settlement Class Representatives, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, successors, representatives, and any other Person purporting to claim on their behalf, hereby expressly, generally, absolutely, and unconditionally release and discharge any and all Released Claims against Released Parties.

7.2     The Released Claims include the release of Unknown Claims. Upon the Effective Date, Plaintiffs and the Settlement Class Members shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

22

7.3     Upon the Effective Date, Plaintiffs and the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding Paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this Section.

7.4     Upon the Effective Date, Labcorp shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiffs, each and all of the Settlement Class Members, and Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation, except for enforcement of the Settlement Agreement. Any other claims or defenses Labcorp may have against such Persons including, without limitation, any claims based upon or arising out of any contractual, employment, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation are specifically preserved and shall not be affected by the preceding sentence.

## 8.     Plaintiffs' Counsel's Attorneys' Fees and Expenses and Service Award Payments to Plaintiffs

8.1     The Parties have agreed that, as part of the settlement, the Court shall determine the amount of any award of Attorneys' Fees and Expenses to be paid from the Settlement Fund.

8.2     Plaintiffs' Counsel shall submit a motion to the Court requesting an award of attorneys' fees not to exceed thirty-four percent (34%) of the Settlement Fund, plus accrued interest thereon, plus payment of Plaintiffs' Counsel's incurred litigation expenses no later than 90

days after issuance of the Preliminary Approval Order (15 days before the Objection and Opt-Out

Dates).

8.3     Any Attorneys' Fees and Expenses awarded by the Court ("Fee Award") shall be

paid from the Settlement Fund to Plaintiffs' Counsel as follows:

(a)     Fifty percent (50%) of the Fee Award will be paid within sixty (60) days

after entry of the Final Approval Order and Judgment.

(b)     If no appeal is timely filed from the Final Approval Order and Judgment or

the Fee Award, then the remaining fifty percent (50%) of the Fee Award will be paid

within sixty (60) days of entry of the Final Approval Order and Judgment and the Fee

Award. If, however, an appeal is timely filed from either the Final Approval Order and

Judgment or the Fee Award, then the remaining fifty percent (50%) of the Fee Award

will be paid within thirty (30) days after the Effective Date.

8.4     To the extent applicable, and unless otherwise ordered by the Court, Plaintiffs'

Lead Class Counsel shall have the sole and absolute discretion to allocate any Attorneys' Fees and

Expenses awarded by the Court amongst Plaintiffs' Counsel and any other attorneys for Plaintiffs.

Labcorp and its insurers and reinsurers shall have no liability or other responsibility for allocation

of any such attorneys' fees and costs.

8.5     Plaintiffs may move the Court for Service Award payments in an amount up to

$5,000.00 to each individual Plaintiff in light of Plaintiffs' institution, prosecution, and substantial

participation in the Litigation to be paid from the Settlement Fund. If the Court awards less than

Plaintiffs' request in service awards or attorneys' fees and expenses, the difference will remain in

the Settlement Fund to be used for the benefit of the Settlement Class Members. Service Awards

ordered by the Court shall be paid within twenty (20) days of the Effective Date of the Settlement.

8.6     In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and costs and expenses and/or the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the attorneys' fees and costs and/or service awards shall constitute grounds for termination of this Agreement or impact the finality or effectiveness of this Agreement.

8.7     Except for any Attorneys' Fees or Expenses paid out of the Settlement Fund as set forth herein and approved by the Court, Plaintiffs and Settlement Class Members shall be responsible for their own attorneys' fees and all expenses and costs associated with the Action. Labcorp and its insurers and reinsurers shall have no liability or responsibility for any such attorneys' fees and costs beyond those paid out of the Settlement Fund.

8.8     In the event the Effective Date does not occur, or the Fee Award is reversed or modified, or the Settlement is canceled or terminated for any other reason, and such reversal, modification, cancellation, or termination becomes final and not subject to review, and in the event the Fee Award has been paid to any extent, then Plaintiffs' counsel who received any part of the Fee Award shall be obligated, within ten (10) days of receiving notice from Labcorp, Defendant's counsel, or a court of appropriate jurisdiction, to refund all fees and expenses paid to them, including interest. As a condition of receiving any of the Fee Award, each Plaintiffs' counsel's law firm, on behalf of itself and each partner and/or shareholder, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for purposes of enforcing this provision, and each are jointly and severally liable and responsible for any required repayment. Plaintiffs' counsel further stipulate, warrant, and represent, that they have both the actual and

25

apparent authority to enter into this provision on behalf of the law firms. In the event Plaintiffs'

counsel and/or their law firms fail to repay any amounts that are owed pursuant to this provision,

the Court may issue orders, including but not limited to judgments and attachment orders, and

make appropriate findings for sanctions for contempt of Court.

### 9. Preliminary Approval Order

9.1     Plaintiffs' Counsel will file a motion for preliminary approval of the settlement with

the Court, attaching as an exhibit this Settlement Agreement and requesting entry of the proposed

Preliminary Approval Order (Exhibit F), including the timeline provided therein, requesting, *inter*

*alia*:

(a)     certification of the Settlement Class for settlement purposes only pursuant

to Paragraph 6.1;

(b)     preliminary approval of the Settlement Agreement, including the Releases,

as set forth herein;

(c)     appointment of Plaintiffs' Counsel to represent the Settlement Class;

(d)     appointment of Plaintiffs as Settlement Class Representatives;

(e)     approval of the Short Form Notice to be mailed to the Settlement Class;

(f)     approval of the Long Form Notice to be posted on the Settlement Website,

which, together with the Short Form Notice, shall include a fair summary of the Parties'

respective positions, statements that the Persons in the Settlement Class are entitled to

benefits under the settlement, the general terms of the settlement set forth in the Settlement

Agreement, instructions for how to object to or opt-out of the settlement, instructions for

making Claims to the extent contemplated herein, and the date, time, and place of the Final

Fairness Hearing;

(g)     approval of the Claim Form to be used by Settlement Class Members to make a Claim;

(h)     preliminary approval of the notice plan and the Settlement Benefits Plan;

(i)     appointment of Kroll Settlement Administration as the Settlement Administrator; and

(j)     appointment of Citibank as Escrow Agent.

**10.     Settlement Administration and Settlement Class Notice**

10.1    Notice shall be provided to the Settlement Class by the Settlement Administrator as follows:

(a)     No later than five (5) days after entry of the Preliminary Approval Order, the Settlement Administrator shall be provided with the Settlement Class Data, as set forth in Paragraph 3.2. The Settlement Class Data shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement or provide data and information in its possession to the Settling Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Settlement Class Data;

(b)     Prior to the dissemination of Notice, the Settlement Administrator shall establish the Settlement Website that will inform the Settlement Class of the terms of this Settlement Agreement, their rights, applicable dates and deadlines, and related information. The Settlement Website shall include, in .pdf format and available for download, at least the following documents: (i) the Short Form Notice; (ii) the Long Form Notice; (iii) the Claim Form; (iv) the Preliminary Approval Order; (v) this Settlement Agreement; (vi) Plaintiffs' Motion for Attorneys' Fees and Expenses and Service Awards and (vii) any

other materials agreed upon by the Parties or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically. The Settlement Website shall not include any advertising and be deactivated thirty (30) days following distribution of all settlement benefits pursuant to the Settlement Benefits Plan;

(c)  Short Form Notice: Within forty-five (45) days after the entry of the Preliminary Approval Order ("Notice Date"), and subject to the requirements of this Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide the Short Form Notice to the Settlement Class via email, or via mail where no email address is reasonably available. Before any emailing or mailing under this Paragraph occurs, the Settlement Administrator shall run the postal addresses from the Settlement Class Data through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

(d)  In the event that a Short Form Notice is returned to the Settlement Administrator, either by bounce back of the email or by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Form Notice to the forwarding address within a reasonable period of time after receiving the returned Short Form Notice;

(e)  In the event that subsequent to the first emailing or mailing of a Short Form Notice, and at least fourteen (14) days prior to the Opt-Out Date and Objection Date, a Short Form Notice is returned to the Settlement Administrator by bounce back of the email or by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement

28

Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Short Form Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing;

(f)　　Publishing, on or before the Notice Date, the Claim Form, Long Form Notice, and this Settlement Agreement on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the period during which Claims can be submitted;

(g)　　A toll-free help line with an IVR system and live agents shall be made available to provide the Settlement Class with additional information about the settlement. The Settlement Administrator also will provide copies of the Long Form Notice and paper Claim Form, as well as this Settlement Agreement, upon request; and

(h)　　Contemporaneously with seeking Final Approval of the Settlement, Plaintiffs' Counsel shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with these provisions regarding notice.

10.2    The Settlement Administrator, on behalf of Labcorp, may timely serve notice of the settlement to the extent required by CAFA, 28 U.S.C. § 1715. Any and all costs and fees related to any notice of the settlement required by CAFA shall be paid by Labcorp.

10.3    The Settlement Administrator shall administer and process the Claims submitted by Settlement Class Members pursuant to the Settlement Benefits Plan. The Settlement Administrator shall provide Plaintiffs' Counsel and Defendant's Counsel with reports as to both

Claims and benefits distribution, and Plaintiffs' Counsel and Defendant's Counsel have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Settlement Administrator's determination of whether a Claim is valid shall be binding, subject to the process set forth in the Settlement Benefits Plan. No decision of the Settlement Administrator shall be deemed to constitute a finding, admission, or waiver by Defendant as to any matter of fact, law, or evidence having any collateral effect on any proceedings in any forum or before any authority.

10.4    All Settlement Class Members who fail to timely submit a Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

10.5    No Person shall have any claim against the Settlement Administrator, Labcorp, Plaintiffs' Counsel, Plaintiffs, Defendant's Counsel, or Labcorp's insurers and/or reinsurers based on distributions of benefits to Settlement Class Members as provided for herein.

**11.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

11.1    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order as set forth by Paragraph 9.1;

(b)    the Court has entered the Final Approval Order and Judgment;

(c)    the Judgment has become Final and no longer subject to appeal, as defined in Paragraph 1.13;

11.2    If all conditions specified in Paragraph 11.1 hereof are not satisfied, the Settlement

Agreement shall be canceled and terminated subject to Paragraph 11.4 unless Plaintiffs' Counsel

and Labcorp's Counsel mutually agree in writing to proceed with the Settlement Agreement.

11.3    In addition, Defendant shall have the right to terminate the Settlement Agreement,

subject to Paragraph 11.4, if more than a certain number of Persons timely submit requests to Opt-

Out of the settlement, which is set forth in the confidential Attachment A hereto.

11.4    In the event that the Settlement Agreement, the Exhibits attached hereto, or the

releases set forth in Paragraphs 7.1 through 7.4 above are not approved or are materially modified

by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance

with its terms: (i) the Settling Parties shall be restored to their respective positions in the Litigation

and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court

so as to avoid prejudice to any Settling Party or Settling Party's counsel, (ii) money remaining in

the Settlement Fund less amounts already billed or incurred for Notice and Settlement

Administration Costs will be returned to Labcorp, and (iii) the terms and provisions of the

Settlement Agreement shall have no further force and effect with respect to the Settling Parties

and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment

or order entered by the Court in accordance with the terms of the Settlement Agreement shall be

treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to

the contrary, no order of the Court or modification or reversal on appeal of any order reducing the

amount of attorneys' fees and expenses or service awards to the Plaintiffs shall constitute grounds

for cancellation or termination of the Settlement Agreement.

**12.    Notices**

12.1    All notices to Plaintiffs' Counsel provided in this Settlement Agreement shall be

sent by e-mail and First Class mail to:

James E. Cecchi, Esq.
Carella Byrne Cecchi Brody Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068

12.2    All notices to Defendant's Counsel provided in this Settlement Agreement shall be

sent by e-mail and First Class mail to:

Allison M. Holt-Ryan, Esq.
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004

### 13.    Miscellaneous Provisions

13.1    The Settling Parties (i) acknowledge that it is their intent to consummate this

Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts

to accomplish the terms and conditions of this Settlement Agreement.

13.2    The Settling Parties intend this settlement to be a final and complete resolution of

all disputes between the Settling Parties with respect to the Litigation. The settlement resolves

claims that are contested and shall not be deemed an admission by any Settling Party as to the merits

of any claim or defense. The Parties agree that the Action is being settled voluntarily by the Parties

after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in

a manner that such Party determines to be appropriate, any contention made in any public forum that

the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that

no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth

herein.

13.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act

performed or document executed pursuant to or in furtherance of the Settlement Agreement or the

settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Any of the Released Parties may file the Settlement Agreement and the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

13.5    This Agreement contains the entire understanding between Defendants and Plaintiffs regarding settlement of the Litigation and supersedes all previous  negotiations, agreements, commitments, understandings,  and  writings between Labcorp and Plaintiffs in connection with settlement of the Litigation. Except as otherwise provided herein, each party shall bear its own costs.

13.6    Plaintiffs, Plaintiffs' Counsel, and Defendant's Counsel shall not, at any time, make disparaging public statements regarding Labcorp, the Settlement or the Action, apart from within filings and arguments to the Court as necessary to obtain preliminary or final approval of the Settlement.

13.7    Any exhibits to this Settlement Agreement and any exhibits thereto are a material part of the settlement and are incorporated and made a part of the Settlement Agreement.

13.8     Plaintiffs' Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any non-material modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

13.9     Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

13.10    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

13.11    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

13.12    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

13.13    As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

13.14    All dollar amounts are in United States dollars (USD).

13.15    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

**SIGNATURES ON FOLLOWING PAGES**

On behalf of the Settlement Class, including Aleksander Nazemnikov, Cameron Spencer, Carol Kaplan, Debra Wrenn, Edith Thrower, George Rothwell, Holly Laufenberg, Justin Nelson-Carter, Khristopher Thomas, Martha Cuvillier, Melanie Vazquez, Rosaria Gadero, Sandra Lassiter, Sheera Harris, Sherrie Palmer, Timothy Judelsohn, Tracy Buhr, Valerie Scott, Tatyana Shulman, David Finch, Gina Allende, and Wendy Wallach:

Dated: 03-02-2026        By:  _____
                         James E. Cecchi
                         Carella, Byrne, Cecchi, Brody & Agnello, P.C.
                         *Lead Counsel for Plaintiffs and the Settlement Class*


Dated: _____      By:  _____
                         Linda P. Nussbaum
                         Nussbaum Law Group, P.C.
                         *Counsel for Plaintiffs and the Settlement Class*


Dated: _____      By:  _____
                         Stuart A. Davidson
                         Robbins Geller Rudman & Dowd LLP
                         *Counsel for Plaintiffs and the Settlement Class*

On behalf of the Settlement Class, including Aleksander Nazemnikov, Cameron Spencer, Carol Kaplan, Debra Wrenn, Edith Thrower, George Rothwell, Holly Laufenberg, Justin Nelson-Carter, Khristopher Thomas, Martha Cuvillier, Melanie Vazquez, Rosaria Gadero, Sandra Lassiter, Sheera Harris, Sherrie Palmer, Timothy Judelsohn, Tracy Buhr, Valerie Scott, Tatyana Shulman, David Finch, Gina Allende, and Wendy Wallach:

Dated: _____            By: _____
                                 James E. Cecchi
                                 Carella, Byrne, Cecchi, Brody & Agnello, P.C.
                                 *Lead Counsel for Plaintiffs and the Settlement Class*

Dated: 3/2/26                    By: _____
                                 Linda P. Nussbaum
                                 Nussbaum Law Group, P.C.
                                 *Counsel for Plaintiffs and the Settlement Class*

Dated: _____            By: _____
                                 Stuart A. Davidson
                                 Robbins Geller Rudman & Dowd LLP
                                 *Counsel for Plaintiffs and the Settlement Class*

On behalf of the Settlement Class, including Aleksander Nazemnikov, Cameron Spencer, Carol Kaplan, Debra Wrenn, Edith Thrower, George Rothwell, Holly Laufenberg, Justin Nelson-Carter, Khristopher Thomas, Martha Cuvillier, Melanie Vazquez, Rosaria Gadero, Sandra Lassiter, Sheera Harris, Sherrie Palmer, Timothy Judelsohn, Tracy Buhr, Valerie Scott, Tatyana Shulman, David Finch, Gina Allende, and Wendy Wallach:

Dated: _____    By:    _____
James E. Cecchi
Carella, Byrne, Cecchi, Brody & Agnello, P.C.
*Lead Counsel for Plaintiffs and the Settlement Class*

Dated: _____    By:    _____
Linda P. Nussbaum
Nussbaum Law Group, P.C.
*Counsel for Plaintiffs and the Settlement Class*

Dated: 3/2/2026    By: _____
Stuart A. Davidson
Robbins Geller Rudman & Dowd LLP
*Counsel for Plaintiffs and the Settlement Class*

On behalf of Laboratory Corporation of America Holdings:


Dated:  3/11/2026            By:  _____

                                 Matthew Mall
                                 Senior Vice President & General Counsel

# EXHIBIT A

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
**[DEADLINE]**

</td><td>

**IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC.**
**CUSTOMER DATA SECURITY BREACH LITIGATION**
**LABCORP SETTLEMENT**

Civil Action No. 19-md-2904 (JKS)(MAH)(MDL 2904)

# CLAIM FORM

</td><td></td></tr>
</table>

## GENERAL INSTRUCTIONS

**To receive a payment from this Settlement via an electronic payment, you must submit the Claim Form electronically at www.            .com by Month XX, 2026. If you submit your claim through the mail using this Claim Form, payment will be mailed to the address provided below.**

Complete this Claim Form if you are a Settlement Class Member and you wish to receive Settlement benefits.

You are a member of the Settlement Class and eligible to submit a Claim Form if:

> You are an individual for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection Agency ("AMCA"), and such information was contained in the computer systems implicated by the cybersecurity incident at AMCA that occurred between approximately August 2018 and March 2019.

The following entities and individuals are excluded from the definitions of "Settlement Class Members" or "Class Members" and are not eligible to receive settlement benefits: Labcorp and its officers and directors; the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge.

Settlement Class Members may submit a claim form either for: (1) Out of Pocket Losses from verifiable unreimbursed costs or expenditures that Settlement Class Member actually incurred and that are fairly and reasonably traceable to the AMCA Security Incident up to $5,000; or (2) Alternative Cash Payment which provides for a $50 per class members payments, both subject to pro rata increases or decreases dependent on the number of claims filed.

Settlement Class Members may also elect to receive up to two (2) years of medical and healthcare information monitoring services by CyEx Medical Shield Pro.

If you intend to make a claim for Out-of-Pocket Losses, you will need to submit supporting documentation. Out-of-Pocket Losses may include, without limitation, the following:

- unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, medical fraud, or other alleged misuse of Settlement Class Members' personal information;

- professional service costs—such as law firms or credit repair services—related to misuse of Settlement Class Members' personal information;

- miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

- credit monitoring costs that were incurred on or after August 1, 2018, through the date of the Settlement Class Member's claim submission;

- up to 10 total hours for verified and documented time spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is fairly traceable to the AMCA Security Incident at $25 per hour.

**IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC.**
**CUSTOMER DATA SECURITY BREACH LITIGATION**
**LABCORP SETTLEMENT**

Civil Action No. 19-md-2904 (JKS)(MAH)(MDL 2904)

# CLAIM FORM

**Your claim must be submitted online or postmarked by:** **[DEADLINE]**

This Claim Form may be submitted electronically *via* the Settlement Website at _____ or completed and mailed, including any supporting documentation, to: *American Medical Collection Agency, Inc. Customer Data Security Breach Litigation Labcorp Settlement, Attn: Claims*, [ADRESS].

## I.  SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Email Address** | **Telephone Number** |

**Notice ID Number, if known**

## II. BENEFIT SELECTION

**Select one (1) of the following options:**

☐  Check this box if you want to receive the Alternative Cash Payment of up to $50. If you select this option, proceed to the next section.

**OR**

☐  Check this box if you want to receive reimbursement for Out-of-Pocket Losses of up to $5,000.*

**\*You must submit supporting documentation demonstrating that the unreimbursed costs or expenditures that you actually incurred are fairly and reasonably traceable to the AMCA Security Incident.**

*Complete the chart below describing the supporting documentation you are submitting.*

| Cost Type (fill in all that apply) | Approximate Date of Loss | Amount of Loss | Description of Documentation Provided |
|---|---|---|---|
| *Example: Credit Repair Service* | *07/17/25 (MM/DD/YY)* | *$100* | *Example: Receipt for credit repair services* |
| | | | |

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

**Your claim must be submitted online or postmarked by:**
**[DEADLINE]**

**IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC.**
**CUSTOMER DATA SECURITY BREACH LITIGATION**
**LABCORP SETTLEMENT**

Civil Action No. 19-md-2904 (JKS)(MAH)(MDL 2904)

**CLAIM FORM**

| Cost Type (fill in all that apply) | Approximate Date of Loss | Amount of Loss | Description of Documentation Provided |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **TOTAL AMOUNT CLAIMED:** |  |

## III. HEALTHCARE INFORMATION MONITORING SERVICES

☐    Check this box if you wish to receive up to two (2) years of medical and healthcare information monitoring services by CyEx Medical Shield Pro.

## IV. ATTESTATION & SIGNATURE

I swear and affirm under penalty of perjury that the information provided in this Claim Form, and any supporting documentation provided is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator or Claims Referee before my claim is considered complete and valid.

_____     _____     _____
Signature                               Printed Name                              Date

# EXHIBIT B



United States District Court, District of New Jersey
*In re AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION (Action Against Laboratory Corporation of America Holdings):* Case No. 19-md-2904

# Class Action Settlement Notice
### Authorized by the United States District Court
### District of New Jersey



Example QR Code.
Replace this with case
specific QR Code.



| Your information may have been impacted in an alleged data breach at a medical collection agency. |  | There is a $35,000,000 settlement of a lawsuit. You may be entitled to money. |  | To be part of this settlement, you can respond by [date]. You can visit [website] to learn more. |

**Key things to know:**

- This is an important legal document.
- If you take no action and are a Settlement Class member, any ruling from the court will apply to you, and you will not be able to sue Laboratory Corporation of America Holdings about the same issues.
- If you have questions or need assistance, please call [phone number].
- You can learn more at [website] or by scanning the QR code.

AMD MED COLLECTION AGENCY INC
CUSTOMER DATA SECURITY BREACH
LITIG.
LABCORP SETTLEMENT
c/o Settlement Administrator
[ADDRESS]

## Court-Approved
## Legal Notice



This is an important notice
about a class action lawsuit.

«ScanString»
Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

**CLAIM FORM**

Claims must be postmarked no later than _____, 2026 or submitted online no later than _____, 2026.

FIRST NAME: _____  LAST NAME: _____

ADDRESS: _____ CITY: _____ STATE: _____ ZIP CODE: _____

**Monetary Compensation**: If you want to submit a claim for Out-of-Pocket Losses, visit **www.website.com** to submit your Claim Form and supporting documentation online or download a Claim Form to complete and return by mail.  If you make a claim for Out-of-Pocket Losses you **cannot** also claim an Alternative Cash Payment.

**Alternative Cash Payment**: Do you want an Alternative Cash Payment estimated at $50 instead of Out-of-Pocket Losses? ☐ YES ☐ NO. This value may be increased or decreased after payments for valid claims, settlement administrative costs, service awards to named plaintiffs, and attorneys' fees and expenses are deducted from the Settlement Fund.

**Medical Monitoring Services**: Would you like to receive two (2) year of Monitoring Services through CyEx Medical Shield Pro? ☐ YES ☐ NO. You can receive Monitoring Services in addition to claiming Out-of-Pocket Losses or an Alternative Cash Payment.  To receive Monitoring Services, you must provide your email address here: _____.

To receive a payment from this Settlement via an electronic payment, you must submit the Claim Form electronically at **www.website.com** by **Month XX, 2026**. If you submit your claim through the mail using this Claim Form, payment will be mailed to the address provided above.

I swear under penalty of perjury that I am eligible to make a claim and that the information provided in this Claim Form is true.

Signature: _____ Date (mm/dd/yyyy): ___/____/_____ Print Name: _____

_____

_____

_____

AMERICAN MEDICAL COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
LABCORP SETTLEMENT
Attn: Claim Forms
[ADDRESS]

# EXHIBIT C



United States District Court, District of New Jersey
*In re AMERICAN MEDICAL COLLECTION AGENCY, INC.*
*CUSTOMER DATA SECURITY BREACH LITIGATION (All*
*Actions Against Laboratory Corporation of America*
*Holdings)*
Case No. 19-md-2904

# Class Action Notice

## *Authorized by the District of New Jersey*

| | | |
|---|---|---|
| **Are you an individual who received diagnostic services from Laboratory Corporation of America Holdings?** | **There is a $35,000,000 settlement of a lawsuit related to an alleged data breach.**<br><br>**You may be entitled to money.** | **To be part of this settlement, you should:**<br><br>**Read this Notice.**<br><br>**Respond by [date].** |

Important things to know:

- If you take no action and are a Settlement Class Member, you will still be bound by the settlement, and your rights will be affected. ***Please read this Notice carefully and completely.***
- You can learn more at: [website].

# Table of Contents

**About This Notice** ................................................................ **4**

    Why did I get this Notice? ..........................................4

    What do I do next? ...................................................4

    What are the most important dates? ..........................5

**Basic Information** ................................................................ **6**

    What is this lawsuit about? ........................................6

    What is a class action? .............................................6

    Why is there a settlement? .......................................6

    How do I weigh my options? ......................................6

    What is the best path for me? ....................................7

**Who is in the settlement?** ................................................ **9**

    Who is included in the settlement? .............................9

    Are there exceptions to being included? ......................9

**The Settlement Benefits** .................................................. **9**

    What does the settlement provide? ............................9

    What claims am I releasing if I stay in the Settlement Class? ...........11

**Submitting a Claim Form for Settlement Benefits** ......... **11**

    How do I submit a claim for a settlement benefit? ..........11

    What is the deadline for submitting a claim? .................12

    When will the settlement benefits be issued? ................12

**The Lawyers Representing You** ........................................ **12**

    Do I have a lawyer in the case? .................................12

    Should I get my own lawyer? ....................................13

    How will Settlement Class Counsel be paid? .................13

**Excluding Yourself from the Settlement** ........................ **13**

    How do I opt out of the settlement? ...........................13

**Commenting on or Objecting to the Settlement** ............. **15**

    How do I tell the Court if I like or do not like the settlement? ...........15

    What is the difference between objecting and excluding? ................16

**The Court's Final Fairness Hearing** ................................ **16**

When is the Court's Final Fairness Hearing? ................................... 16

Do I have to come to the Final Fairness Hearing? ........................... 16

**If I Do Nothing** ............................................................................. **17**

What happens if I do nothing at all? ............................................. 17

**Getting More Information** ............................................................ **17**

How do I get more information? .................................................... 17

# About This Notice

## Why did I get this Notice?

This Notice had been sent to you because you may be a Settlement Class Member in the United States whose Personally Identifiable Information ("PII") and/or Protected Health Information was allegedly impacted in the cybersecurity incident reported by American Medical Collection Agency ("AMCA") as affecting its computer systems between approximately August 1, 2018 through March 30, 2019 ("Security Incident").

The Court in charge of the case is the U.S. District Court for New Jersey, and the lawsuit is known as *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Laboratory Corporation of America Holdings)*: Civil Action No. 19-md-2904.

The Court authorized this Notice because you are entitled to know about your rights under a proposed class action settlement with Laboratory Corporation of America Holdings ("Labcorp" or "Defendant") before the Court decides whether to approve the settlement.  If the Court approves the settlement, and after objections and appeals are resolved, a Settlement Administrator appointed by the Court will make the cash payments and distribute access codes for monitoring services that the Settlement provides.

This Notice package explains the lawsuit, the settlement, your rights, what benefits are available, who is eligible for them, and how to get them.

## What do I do next?

Read this Notice to understand the settlement and to determine if you are a Settlement Class Member. Then, decide if you want to:

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits from this settlement is by submitting a valid and timely Claim Form.<br><br>The fastest way to submit your Claim Form is online at www.[Settlement Website].com. | **_____, 2026** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the settlement and receive no benefits. This is the only option that potentially allows you to ever be part of any other lawsuit against Labcorp or any other Released Parties about the legal claims related to the issues raised in this Litigation, subject to any defenses Labcorp may have to such claims, including the statutes of limitations. You can hire your own legal counsel at your own expense. | **_____, 2026** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the settlement, you may object to it by writing to the Court about why you don't like the settlement. You may also object to Settlement Class Counsel's attorneys' fees and expense request, and ask the Court for permission to speak about your objection at the Final Fairness Hearing. | **_____, 2026** |
| **DO NOTHING** | Unless you opt out of the settlement, you are automatically part of the settlement. If you do nothing, you will not receive benefits from this settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against Labcorp related to the legal claims resolved by this settlement. | No Deadline |

The Court in charge of this case still has to decide whether to approve the settlement.

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important dates?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**
Your deadline to submit a Claim Form: **[date]**

5

# Basic Information

## What is this lawsuit about?

This class action lawsuit concerns the AMCA Security Incident, which may have impacted your personal information. Defendant Labcorp denies all claims alleged against it and denies all charges of wrongdoing or liability. The settlement is not an admission of wrongdoing or an indication that Defendant has violated any laws, but rather the resolution of disputed claims.

## What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out of the settlement.

## Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Plaintiffs and Defendant have agreed to a settlement to avoid the costs and risks of a trial, and to allow the Settlement Class Members to receive benefits from the settlement. Plaintiffs and their attorneys think the settlement is best for all Settlement Class Members.

## How do I weigh my options?

You have four options. You can stay in the settlement and submit a claim, you can opt out of the settlement, you can object to the settlement, or you can do nothing. This chart shows the effects of each option:

|  | Submit a Claim | Opt Out | Object | Do Nothing |
|---|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES | NO |

6

| Am I bound by the terms of the settlement if I . . . | YES | NO | YES | YES |
|---|---|---|---|---|
| **Can I pursue my own case if I . . .** | NO | YES | NO | NO |
| **Will the class lawyers represent me if I . . .** | YES | NO | NO | YES |

## What is the best path for me?

7



*You can object to the settlement AND submit a Claim Form to receive payment, but you must submit a Claim Form to receive payment.*

# Who is in the settlement?

## Who is included in the settlement?

The Settlement Class is defined as: All individuals for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau, Inc., d/b/a American Medical Collection Agency ("AMCA"), and whose information was contained in the computer systems implicated by the cybersecurity incident at AMCA that occurred between approximately August 2018 and March 2019.

## Are there exceptions to being included?

Yes. Excluded from the Settlement Class are: (i) Labcorp and its officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by contacting the Settlement Administrator by mail, email, or by calling toll-free.

*AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION LABCORP SETTLEMENT*
c/o Settlement Administrator
[ADDRESS]
info@[SettlementWebsite].com
1-XXX-XXX-XXXX

You may also view the Settlement Agreement at www.[SettlementWebsite].com.

# The Settlement Benefits

## What does the settlement provide?

The settlement provides for the creation of a $35,000,000.00 Settlement Fund to pay for: (i) Out-of-Pocket Losses, (ii)

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

Monitoring Services, (iii) Alternative Cash Payments, (iv) Notice and Administrative Costs, (v) Taxes, (vi) Service Awards, and (vii) Attorneys' Fees and Expenses. The settlement benefits are summarized below. Visit WEBSITE for a full description of these benefits.

Two types of claims may be made: (1) Out-of-Pocket Losses from verifiable, documented unreimbursed costs or expenditures that Settlement Class Member actually incurred and that are fairly and reasonably traceable to the AMCA Security Incident up to $5,000; or (2) Alternative Cash Payment which provides for a $50 per Settlement Class Member payment, both subject to pro rata increases or decreases dependent on the number of claims filed.

A Settlement Class Member may also elect to receive two (2) years of CyEx Medical Shield Pro medical and healthcare information monitoring services.

**Compensation for Out-of-Pocket Losses.** Participating Settlement Class Members can claim up to a total of $5,000 per person for out-of-pocket losses incurred as a result of the Security Incident, including, without limitation, the following:  (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, medical fraud, or other alleged misuse of Settlement Class Members' personal information; (ii) professional service costs—such as law firms or credit repair services—related to misuse of Settlement Class Members' personal information; (iii) miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (iv) credit monitoring costs that were incurred on or after August 1, 2018, through the date of the Claims Deadline; (v) up to 10 total hours for verified and documented time spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's Personal Information that is fairly traceable to the AMCA Security Incident at $25 per hour. Out-of-Pocket Losses are subject to increases or decreases pro rata depending upon the number of claims filed.

Settlement Class Members submitting claims for Out-of-Pocket Losses must submit documentation and an attestation supporting their claims. This can include receipts or other documentation that document the costs incurred but does not include documentation that is "self-prepared" by the claimant. "Self-prepared" documents such as handwritten receipts are, by

themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation. The attestation must state that the monetary losses are fairly traceable to the Security Incident and were not incurred due to some other event or reason.

**Alternative Cash Payment.** In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for an Alternative Cash Payment estimated to be $50 per valid claimant. After payment of Notice and Administration Expenses, Service Awards, and Attorneys' Fees and Expenses, Out-of-Pocket Losses, and Taxes from the Settlement Fund, the remaining amount of the Net Settlement Fund will be evenly distributed to each Settlement Class Member who submits a timely and Valid Claim for an Alternative Cash Payment.

**Monitoring Services.** During the Claims Period, Settlement Class Members may also claim and enroll in up to two (2) years of medical and healthcare information Monitoring Services provided by CyEx through its Medical Shield Pro product.

## What claims am I releasing if I stay in the Settlement Class?

Unless you opt out of the settlement, you cannot sue, continue to sue, or be part of any other lawsuit against Labcorp arising out of or relating to the AMCA Security Incident. The "Releases" section of the Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement is available for review at www.[SettlementWebsite].com.

# Submitting a Claim Form for Settlement Benefits

## How do I submit a claim for a settlement benefit?

The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download the Claim Form from the website and mail it to the Settlement Administrator at:

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER
DATA SECURITY BREACH LITIGATION LABCORP SETTLEMENT
Attn: Claims
[ADDRESS]

You may also contact the Settlement Administrator to request a Claim Form by calling toll-free 1-XXX-XXX-XXXX, by emailing info@ [SettlementWebsite].com, or by writing to the address above.

## What is the deadline for submitting a claim?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, along with any supporting documentation, must be mailed so it is postmarked no later than [Claims Deadline].

## When will the settlement benefits be issued?

The Court will hold a Final Fairness Hearing on _____, 2026. If the Court approves the settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them.

Settlement benefits will be distributed if the Court grants final approval of the settlement and after any appeals are resolved, or after the period to seek an appeal has expired.

# The Lawyers Representing You

## Do I have a lawyer in the case?

Yes, the Court appointed James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C.; Linda P. Nussbaum of Nussbaum Law Group, P.C.; and Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP to represent you and other Settlement Class Members as Settlement Class Counsel.

James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1225  Franklin Avenue
Suite 325
Garden City, NY 11530

Stuart A. Davidson
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard
Suite 720
Boca Raton, Florida 33432

## Should I get my own lawyer?

You will not be charged for Settlement Class Counsel's services. If you want to be represented by your own lawyer, you may hire one at your own expense.

## How will Settlement Class Counsel be paid?

Settlement Class Counsel will file a Fee Application for an award of attorneys' fees and expenses to be paid from the Settlement Fund of up to one-third of the Settlement Fund. As part of the Fee Application, Settlement Class Counsel will also seek Service Awards of $5,000 for each Class Representative to be paid from the Settlement Fund.

Class Counsel's Fee Application will be available at www.[SettlementWebsite].com after it is filed with the Court.

# Excluding Yourself from the Settlement

## How do I opt out of the settlement?

If you do not want to receive any benefits from the settlement, and you want to keep your right, if any, to separately sue Labcorp about the legal issues in this case (subject to any

defenses Labcorp may have to such a suit, including the statutes of limitations), there are steps that you must take to exclude yourself from the Settlement Class. This is called requesting an exclusion from, or "opting out" of the Settlement Class. The deadline to submit a request for exclusion from the settlement is [Opt-Out Deadline].

To exclude yourself from the settlement, you must submit a written request for exclusion that includes the following information:

(i) the name of the proceedings: *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Laboratory Corporation of America Holdings), Civil Action No. 19-md-2904*, pending in the United States District Court, District of New Jersey;

(ii) Your full name;

(iii) Your current mailing address and telephone number;

(iv) Your personal signature; and

(v) the words "Request for Exclusion" or a comparable statement that You do not wish to participate in the settlement, or some other clear manifestation of the intent to opt out of the settlement.

Your request for exclusion must be mailed to the Settlement Administrator at the address below, **postmarked no later than [Opt-Out Deadline]**.

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION LABCORP SETTLEMENT
ATTN: Exclusion Request
[ADDRESS]

If you exclude yourself, you are telling the Court that you do not want to be part of the settlement. You will not be eligible to receive any settlement benefits if you exclude yourself.

You may only exclude yourself—not any other person. **Any Settlement Class Member who does not file a timely request for exclusion in accordance with this section will lose the opportunity to exclude himself or herself from the settlement and will be bound by the settlement.**

14

# Commenting on or Objecting to the Settlement

## How do I tell the Court if I like or do not like the settlement?

If you are a Settlement Class Member and you do not like the settlement, you can object to it, if you choose. You can give reasons why you think the Court should not approve it. The Court will consider your views.

For an objection to be a valid objection under the settlement, it must include or substantially comply with the following: (i) Your full name, address, telephone number, and email address; (ii) the case name and docket number: *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Laboratory Corporation of America Holdings)*, No. 19-md-2904 (JKS) (MAH) (D.N.J.); (iii) information identifying You as a Settlement Class Member, including proof that You are a member of the Settlement Class, such as the class member identification number on the Short Form or email notice you receive about the settlement; (iv) a written statement of all grounds for the objection, including whether the objection applies only to You, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection You believe applicable; (v) the identity of any and all counsel representing You in connection with the objection; (vi) the identity of all class action cases in which You or Your counsel has objected; (vii) a statement whether You and/or Your counsel will appear at the Final Fairness Hearing; and (viii) Your personal signature on the written objection. The Court, in its discretion, may authorize additional discovery of objectors.

You or Your counsel may also file their objection with the Court through the Court's ECF system, with service on Plaintiffs' Counsel and Defendant's Counsel, to be made through the ECF system.

To be timely, an objection must be mailed to Settlement Administrator, so it is postmarked no later than **[OBJECTION DATE]**.

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER

DATA SECURITY BREACH LITIGATION LABCORP SETTLEMENT
ATTN: Objection
[Address]

## What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement. You can object to the settlement only if you do not exclude yourself from the settlement. Excluding yourself from the settlement is opting out and stating to the Court that you do not want to be part of the settlement. If you opt out of the settlement, you cannot object to it because the settlement no longer affects you.

# The Court's Final Fairness Hearing

## When is the Court's Final Fairness Hearing?

The Court will hold a Final Fairness Hearing on **[DATE] at [TIME]**, before U.S. District Judge Jamel K. Semper of the U.S. District Court for the District of New Jersey, at the Frank R. Lautenberg U.S.P.O. & Courthouse, 2 Federal Square, Newark, NJ 07102, in Courtroom PO 03.

At the Final Fairness Hearing, the Court will consider whether to approve the settlement, Settlement Class Counsel's Fee Application, and application for Service Awards. The Court will also consider any objections to the settlement that were submitted in accordance with the requirements outlined above.

If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost (**see above**).

The date and time of this hearing may change without further notice. Please check www.[SettlementWebsite].com for updates.

## Do I have to come to the Final Fairness Hearing?

No. Settlement Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Fairness Hearing to talk about it. If you file your written

objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary.

# If I Do Nothing

## What happens if I do nothing at all?

If you are a Settlement Class Member and do nothing, you will remain a part of the Settlement Class but will not get any payments or monitoring services from the settlement.  And, unless you exclude yourself, you will not be able to sue Labcorp about claims arising out of or related to the AMCA Security Incident being resolved through this settlement ever again, assuming such claims are not time-barred.

# Getting More Information

## How do I get more information?

This Notice summarizes the proposed settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, www.[SettlementWebsite].com.

If you have additional questions, you may contact the Settlement Administrator by mail, email, or by calling toll-free.

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION LABCORP SETTLEMENT
c/o Settlement Administrator
[ADDRESS]
info@[SettlementWebsite].com
1-XXX-XXX-XXXX

Publicly filed documents can also be obtained by visiting the office of the Clerk of the Court, [Address].

**DO <u>NOT</u> CONTACT THE COURT OR CLERK OF COURT REGARDING QUESTIONS ABOUT THIS SETTLEMENT.**

# EXHIBIT D

**LABCORP PROPOSED CONSUMER SETTLEMENT BENEFITS PLAN**

1. <u>Capitalized Terms</u>: Unless defined herein, the capitalized terms used in this Proposed Settlement Benefits Plan ("Benefits Plan") are defined in the Settlement Agreement.

2. <u>Net Settlement Fund</u>: The Settlement Administrator shall use the Net Settlement Fund to pay valid Claims for Out-of-Pocket Losses and Alternative Cash Payments as set forth below. The Settlement Administrator shall administer and oversee distribution of the Net Settlement Fund pursuant to the Settlement Agreement and the process set forth in this Benefits Plan.

3. <u>Out-of-Pocket Losses</u>: "Out-of-Pocket Losses" are verifiable, documented unreimbursed costs or expenditures that a Settlement Class Member actually incurred and that are fairly and reasonably traceable to the AMCA Security Incident. Settlement Class Members may file a claim for up to $5,000 in Out-of-Pocket Losses, subject to increases or decreases pro rata depending upon the number of claims filed. Out-of-Pocket Losses may include, without limitation, the following:
   a. unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, medical fraud, or other alleged misuse of Settlement Class Members' personal information;
   b. professional service costs—such as law firms or credit repair services—related to misuse of Settlement Class Members' personal information;
   c. miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;
   d. credit monitoring costs that were incurred on or after August 1, 2018, through the date of the Settlement Class Member's claim submission;
   e. up to 10total hours for verified and documented time spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is fairly traceable to the AMCA Security Incident at $25 per hour.

4. <u>Alternative Cash Payment</u>: In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for Alternative Cash Payment, which shall be up to $50 per Settlement Class Member, subject to pro rata increases or decreases, depending on the number of claims filed.

5. <u>Monitoring Services:</u> In addition to Out-of-Pocket Losses or Alternative Cash Payment, Settlement Class Members will be eligible to claim and enroll in up to two (2) years of the CyEx Medical Shield Pro service ("Monitoring Services"), which shall include and shall be delivered consistent with the standards set forth in Exhibit E to the Settlement Agreement. These services will be provided by CyEx, which will be appointed by the Court as the provider of Monitoring Services and be subject to the Court's jurisdiction for enforcement of the terms of this settlement.

6. <u>Claims Period</u>: The "Claims Period" is the period starting from the date the Court enters the Preliminary Approval Order and ending 90 days after the Notice Date. Settlement Class Members must submit claims for Out-of-Pocket Losses or Alternative Cash Payments during

the Claims Period. Settlement Class Members may also submit claims for Monitoring Services during the Claims Period.

    a.    Any eligible Settlement Class Member that does not timely and validly submit a Claim Form or whose claim is not otherwise approved by the Court: (a) shall be deemed to have waived their right to share in the Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Settlement Agreement and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the judgment and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Claims against Defendant, as more fully described in the Settlement Agreement and Notice.

7.  <u>Insufficient or Excess Funds</u>:

    a.    To the extent total valid claims are greater than the Net Settlement Fund, all valid claims (including Alternative Cash Payments) shall be reduced on a proportional, *pro rata* basis.

    b.    To the extent total valid claims are less than the Net Settlement Fund, all valid claims shall be increased on a proportional, *pro rata* basis (including Alternative Cash Payments) until the Net Settlement Fund is exhausted.

    c.    Any remaining funds resulting from the failure of Settlement Class Members to timely negotiate a settlement payment or to timely provide required tax information such that a settlement payment could issue, shall be distributed to Settlement Class Members, or as otherwise ordered by the Court. No funds may revert to Defendant.

8.  <u>Claims Process</u>: Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically or via mail during the Claims Period (e.g., download a Claim Form for mailing from the Settlement Website). The Settlement Administrator shall verify that each individual who submits a Claim Form is a Settlement Class Member and shall be responsible for evaluating claims and deciding whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Security Incident.

    a.    <u>Claims for Out-of-Pocket Losses</u>:

        i.    Settlement Class Members with Out-of-Pocket Losses must submit Reasonable Documentation supporting their claims. "Reasonable Documentation" means documentation supporting a claim, including but not limited to: credit card statements, bank statements, invoices, telephone records, and receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the claimant do not constitute Reasonable Documentation but may be included to provide clarification, context or support for other submitted Reasonable Documentation.

ii.  In assessing what qualifies as "fairly traceable," the Settlement Administrator must consider (1) the timing of the loss, including whether the loss occurred on or after August 1, 2018 through the date of the Settlement Class Member's claim submission; (2) whether the loss involved the possible misuse of the type of personal information accessed in the Security Incident; (3) whether the personal information accessed in the Security Incident that is related to the Settlement Class Member is of the type that was possibly misused; (4) the Class Member's explanation as to how the loss is fairly traceable to the Security Incident; (5) the nature of the loss, including whether the loss was reasonably incurred as a result of the Security Incident; and (6) any other factor that the Settlement Administrator considers to be relevant. The Settlement Administrator shall have the sole discretion and authority to determine whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Security Incident.

iii.  If the person executing the Claim Form is acting in a representative capacity, a certification of his, her or its current authority to act on behalf of the Class Member must be included in the Claim Form to the satisfaction of the Settlement Administrator, subject to input by Plaintiffs' Counsel and Defendant's Counsel.

iv.  The Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

b.  <u>Claims for Medical Shield Pro</u>: Notwithstanding any other claim for benefits, all Settlement Class Members will be able to submit a Claim Form requesting enrollment in Medical Shield Pro. Settlement Class Members who submit a valid Claim for Medical Shield Pro will be provided with an enrollment code by email after the Effective Date of the settlement, which will be active for a specified amount of time.

9.  <u>Payment Method</u>: Settlement Class Members will be able to select a method of payment, including at least one option for electronic payment (e.g., Venmo, Paypal, or Zelle).

10. <u>Disputes and Appeals</u>:

a.  To the extent the Settlement Administrator determines a claim is deficient in whole or part, within 21 days after the Settlement Administrator processes all claims, the Settlement Administrator shall notify the Settlement Class Member in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) of the deficiencies and provide the Settlement Class Member 30 days to cure the deficiencies. The notice shall inform the Settlement Class Member that he or she can either attempt to cure the deficiencies outlined in the notice, or dispute the determination in writing and request an appeal.

b. If the Settlement Class Member attempts to cure the deficiencies but, in the sole discretion and authority of the Settlement Administrator fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within 14 days of the determination. The Settlement Administrator shall have the sole discretion and authority to determine whether a claim is deficient in whole or part but may consult with the Parties in making individual determinations.

c. If a Settlement Class Member disputes a determination in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) and requests an appeal, the Settlement Administrator shall provide Plaintiffs' Counsel and Defendant's Counsel a copy of the Settlement Class Member's dispute and Claim Form along with all documentation or other information submitted by the Settlement Class Member. Plaintiffs' Counsel and Defendant's Counsel will confer regarding the claim submission, and their agreement on approval or denial of the Settlement Class Member's claim, in whole or part, will be final. If Plaintiff's Counsel and Defendant's Counsel cannot agree on approval or denial of the Settlement Class Member's claim, in whole or part, the dispute will be submitted to a mutually agreeable neutral who will serve as the claims referee, which will be paid for out of the Settlement Fund. If the Parties are unable to reach agreement on who will serve as the claims referee, they will submit their proposals to the Court. The Court will have final, non-appealable decision-making authority over designating the claims referee. The claims referee's decision will be final and not subject to appeal or further review.

11. <u>Miscellaneous:</u>

a. No Person shall have any claim against the Settlement Administrator, the Parties' or the Parties' counsel based on distributions of benefits to Settlement Class Members.

b. Information submitted by Settlement Class Members pursuant to the terms of this Settlement Agreement shall be deemed confidential and protected as such by Plaintiff's Counsel, Defendant, and the Settlement Administrator.

12. <u>Modification of Settlement Benefits Plan:</u> Should the Parties agree, after Final Approval of the Settlement Agreement, that the provisions of this Settlement Benefits Plan should be modified in the interests of justice, they shall seek the Court's approval for such modification.

# EXHIBIT E



Product Overview

# Medical Shield Pro



CyEx Medical Shield Pro monitors medical and healthcare data to determine whether consumers' private medical information is at risk or has been subject to medical fraud. Alerts are sent in real-time when suspicious activity is detected so that action can be taken before it's too late. In the event of fraud, a dedicated case manager will assist in trying to recover the information, and a $1,000,000 insurance policy covers eligible losses due to medical identity theft, including the theft of a healthcare insurance plan ID, and health savings accounts, as well as other types of identity theft with no deductible.

Key features of the protections offered by Medical Shield Pro include the following solutions designed to protect against medical fraud:

- **Healthcare Insurance Plan ID Monitoring:** Tracks and alerts when a registered healthcare, dental, vision, and prescription plan ID is identified as exposed on the dark web.

- **Medicare Beneficiary Identifier ID Monitoring:** Warns if an MBI has been disclosed on the dark web, which could potentially expose Medicare coverage.

- **Medical Record Number Monitoring:** Alerts when a Medical Record Number has been detected on the dark web, which could potentially expose permanent medical and health records from providers, hospitals, and urgent care centers.

- **International Classification of Disease Monitoring:** Notifies when an ICD Code has been detected on the dark web, potentially exposing a private medical diagnosis.

- **National Provider Identifier Monitoring:** An exclusive monitoring service for healthcare providers. Tracks NPI and informs if registered licensing credentials are found on the dark web.

- **Health Savings Account Monitoring:** Monitors registered health savings accounts for unusual or unauthorized transactions that could indicate fraud.

- **Dark Web Monitoring:** Tracks and alerts when personal information is listed for sale on the dark web – such as black market websites, secret chat rooms, and underground forums.

- **$1,000,000 Identity Theft Insurance:** No-deductible insurance for covering expenses due to an identity theft incident.

- **Real-Time Authentication Alerts:** Provides notification when a creditor receives a request for certain types of account transactions using the customer's Social Security Number.

- **High-Risk Transaction Monitoring:** Monitors personal information associated with high-risk transactions, such as online password resets, payday loan applications, tax refunds, wire transfers, and account access requests.

- **Security Freeze Assist:** Helps freeze credit files instantly from up to ten consumer reporting agencies, including the three major credit bureaus.

- **Victim Assistance:** Our team of Identity Theft Recovery Specialists offers immediate remediation assistance if identity theft is suspected.

- **Insight & Tips:** Provides up-to-date information and news curated by industry experts to inform individuals about the latest threats and scams.

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION ) AGENCY, INC. CUSTOMER DATA SECURITY ) BREACH LITIGATION ) ) This Document Relates To: ) ) Labcorp Track | No. 19-md-2904 (JKS) (MAH) MDL 2904 [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

WHEREAS, this matter having come before the Court by way of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Preliminary Certification of the Settlement Class (as defined below) ("Motion");

WHEREAS, on March 2, 2026, Plaintiffs, individually and on behalf of the putative Settlement Class, and Laboratory Corporation of America Holdings ("Labcorp" or "Defendant") entered into a Class Action Settlement Agreement and Release ("Settlement Agreement"), which, if finally approved by the Court, will result in the settlement of all claims asserted against the Defendant in the above-captioned action ("Action");

WHEREAS, in full and final settlement of the claims asserted against Defendant, and in exchange for the release of all Released Claims defined in the Settlement Agreement, Defendant agrees to collectively fund or cause to be funded $35,000,000 for a non-reversionary common fund to resolve all claims arising from the cybersecurity incident reported by AMCA as affecting its computer systems between approximately August 1, 2018 and March 30, 2019 (the "Security Incident");

WHEREAS, Plaintiffs have moved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an order preliminarily approving the Settlement Agreement, which sets forth the terms and conditions of the Settlement with Defendant;

1

WHEREAS, Plaintiffs have further moved for this Court's: (a) certification of the Settlement Class for settlement purposes only pursuant to Paragraph 6.1 of the Settlement Agreement; (b) preliminary approval of the Settlement Agreement, including the Releases as set forth herein; (c) appointment of Plaintiffs' Counsel as counsel for the Settlement Class; (d) appointment of Plaintiffs as Settlement Class Representatives; (e) approval of the Short Form Notice to be emailed, or mailed where no email address is available, to Settlement Class Members in a form substantially similar to the one attached as Exhibit B to the Settlement Agreement; (f) approval of the Long Form Notice to be posted on the Settlement Website in a form substantially similar to the one attached as Exhibit C to the Settlement Agreement, which, together with the Short Form Notice, shall include a fair summary of the Parties' respective positions, statements that the Settlement Class Members are entitled to benefits under the Settlement, the general terms of the Settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the Settlement, instructions for making Claims to the extent contemplated herein, and the date, time, and place of the Final Fairness Hearing; (g) approval of the Claim Form to be used by Settlement Class Members to make a Claim in a form substantially similar to the one attached as Exhibit A to the Settlement Agreement; (h) preliminary approval of the notice plan and the Settlement Benefits Plan substantially similar to the one attached as Exhibit D to the Settlement Agreement; (i) appointment of Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator; and (j) appointment of Citibank as Escrow Agent.

WHEREAS, Plaintiffs and Defendant have agreed to the entry of this Preliminary Approval Order (the "Order");

WHEREAS, all terms with initial capitalization used in this Order shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein; and

WHEREAS, the Court has considered the Settlement Agreement and the other documents submitted by the Parties in connection with Plaintiffs' Motion, and good cause appearing therefor: IT IS THIS ____ day of _____, 2026

ORDERED as follows:

## I.     Preliminary Approval of the Settlement

1.     Upon review of the record, the Court finds that the Settlement Agreement resulted from arm's-length negotiations between highly experienced counsel under the auspices of a neutral mediator and that the Court is likely to grant final approval of the Settlement. Therefore, the Settlement Agreement is hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing described below. The Court preliminarily finds that the Settlement set forth in the Settlement Agreement raises no obvious reasons to doubt its fairness and raises a reasonable basis for presuming that it satisfies the requirements under Rule 23 of the Federal Rules of Civil Procedure and due process so that notice of the Settlement should be given as provided in this Order.

2.     At or after the Fairness Hearing, the Court shall determine, among other matters, whether the Settlement warrants final approval.

## II.     Provisional Certification of the Settlement Class for Settlement Purposes Only

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purpose of effectuating the Settlement, this Court provisionally certifies a Settlement Class defined as "all individuals for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection Agency ("AMCA"), and whose information was contained in the computer systems implicated by the cybersecurity incident at AMCA that occurred between approximately August 2018 and March 2019." The following entities and individuals are excluded from the definition of "Settlement Class Members":

3

    a.       Defendant and its respective officers and directors;

    b.       the Judge and/or Magistrate assigned to evaluate the fairness of this settlement;

    c.       any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads nolo contender to any such charge; and

    d.       All Persons who would otherwise be Settlement Class Members but who timely and validly request exclusion from the Settlement Class.

The provisional certification of the Settlement Class for settlement purposes shall be vacated and have no force or effect if the Settlement is terminated or not approved by the Court.

4.      Solely for purposes of effectuating the proposed Settlement, the Court preliminarily finds that the prerequisites for class action certification under Rule 23 of the Federal Rules of Civil Procedure are satisfied as: (a) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiffs are typical of the claims of the Settlement Class; (d) the interests of all Settlement Class Members are adequately represented by Plaintiffs and Plaintiffs' Counsel; (e) the issues common to Settlement Class Members predominate over any individualized issues; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These preliminary findings shall be vacated and have no force or effect if the Settlement is terminated or not approved by the Court.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purposes of effectuating the Settlement, Plaintiffs Aleksander Nazemnikov, Cameron Spencer, Carol Kaplan, Debra Wrenn, Edith Thrower, George Rothwell, Holly Laufenberg, Justin Nelson-Carter, Khristopher Thomas, Martha Cuvillier, Melanie Vazquez, Rosaria Gadero, Sandra Lassiter, Sheera Harris, Sherrie Palmer, Timothy Judelsohn, Tracy Buhr, Valerie Scott, Tatyana Shulman, David Finch, Gina Allende, and Wendy Wallach are appointed as Settlement Class

Representatives for the Settlement Class and Plaintiffs' Counsel are appointed as counsel for the Settlement Class. These designations shall be vacated if the Settlement is terminated or not approved by the Court.

### III.    Notice to the Settlement Class

6.    The Court approves the appointment of Kroll as Settlement Administrator for the Settlement.

7.    The Court finds the proposed form of notice to Settlement Class Members of the proposed Settlement ("Notice"), the proposed summary form of notice ("Short Form Notice"), and the proposed methods of dissemination thereof, as set forth herein, satisfy the requirements under Rule 23 of the Federal Rules of Civil Procedure and due process, and therefore are approved.

8.    Within five (5) days after entry of this Order, the Settlement Administrator will be provided the Settlement Class Data that includes the Settlement Class Members' full names and current or last known mailing addresses, to the extent reasonably available.

9.    The Settlement Administrator shall cause the Short Form Notice, substantially in the form attached as Exhibit B to the Settlement Agreement, to be disseminated no later than forty-five (45) calendar days following the date of the entry of this Order (the "Notice Date") via email, if known, or first class mail, postage prepaid to each potential Settlement Class Member who is readily and reasonably identified.

10.    On or before the Notice Date, the Settlement Administrator shall create a website for the Settlement (the Settlement Website) and establish a settlement-specific toll-free telephone number.

11.    The Settlement Administrator shall cause the Long Form Notice, substantially in the form attached to the Settlement Agreement as Exhibit C, and the Claim Form, substantially in

the form attached to the Settlement Agreement as Exhibit A, to be posted on the Settlement Website as soon as practicable.

12.     On or before the Notice Date, the Settlement Administrator shall establish a post office box where Settlement Class Members can send completed Claim Forms, requests for exclusion, and other correspondence relating to the Settlement.

## IV.     Schedule and Procedure for Requesting Exclusion and Submitting Objections

13.     The deadline for Settlement Class Members to request exclusion from the Settlement Class shall be sixty (60) days after the Notice Date (the Opt-Out Date).

14.     As set forth in the Notice, in order to request exclusion, a Settlement Class Member must mail a written request to the following address:

AMERICAN MEDICAL COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
LABCORP SETTLEMENT
ATTN: Exclusion Request
[ADDRESS]

15.     The written request for exclusion must include the following information: the name of the proceeding ("*In Re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (JKS)(MAH) (D.N.J.)"), the individual's full name, current address, telephone number, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement.

16.     The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above or the request for exclusion is otherwise accepted by the Court. Persons or entities that request exclusion from the Settlement Class shall not be entitled to share in the benefits of the Settlement, nor be bound by the Settlement Agreement and Final Approval Order and Judgment entered thereon.

6

17.     No Person shall exercise any exclusion rights of any other person, or (a) Opt-Out individuals as a group, in the aggregate, or as a class involving more than one Person; or (b) to opt-out more than one Person on a single notice, or as an agent or representative. Any such purported Opt-Out requests shall be void, and the Person(s) who is or are the subject of such purported Opt-Out requests shall be treated as a Settlement Class Member(s) and be bound by the Settlement Agreement, including the Releases contained herein, and Judgment entered thereon, unless he or she submits a valid and timely Opt-Out request.

18.     The Settlement Administrator shall keep track of any and all requests for exclusion.

19.     On or before seven (7) days after the Opt-Out Date, the Settlement Administrator shall provide to counsel for the Parties a complete list of all timely and valid Opt-Outs.

20.     Prior to the Fairness Hearing, the Settlement Administrator shall provide a sworn declaration that: (i) attests to implementation of the Notice plan; and (ii) identifies each Person who timely and properly provided written notification of exclusion from the Settlement Class.

21.     Settlement Class Members who wish to object or otherwise be heard with respect to the Settlement, and to appear in person at the Fairness Hearing, must first mail a written objection to the Settlement Administrator at the Post Office box designated in the Long Form Notice no later than sixty (60) days after the Notice Date. The objector or his or her counsel may also file their objection with the Court through the Court's ECF system, with service on Plaintiffs' Counsel and Defendant's Counsel, to be made through the ECF system. For all objections mailed to Settlement Administrator, Plaintiffs' Counsel will file them with the Court as an exhibit to Plaintiffs' motion for final approval.

22.     The objection must include: (i) the objector's full name, address, telephone number, and email address; (ii) the case name and docket number: *In re American Medical Collection*

*Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (JKS) (MAH) (D.N.J.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) the identity of all class action cases in which the objector or his or her counsel has objected; (vii) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (viii) the objector's personal signature.

23.    Any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Paragraph 5.1 of the Settlement Agreement.

## V.    <u>Schedule and Manner for Submitting Claim Forms</u>

24.    Settlement Class Members who wish to participate in the Settlement and be eligible to receive benefits from the Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be postmarked (if mailed) and received (if submitted online) no later than ninety (90) days after the Notice Date. By submitting a Claim Form, a Person shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its claim and the subject matter of the Settlement.

25.     Each Claim Form submitted must contain the information requested on the Claim Form to satisfy the conditions for claiming Out-of-Pocket Losses or an Alternative Cash Payment, and whether the Settlement Class Member wishes to enroll in Monitoring Services. All Claim Forms: (a) must be properly completed, signed and submitted in a timely manner with Reasonable Documentation, as set forth in the Settlement Benefits Plan attached to the Settlement Agreement as Exhibit D; and (b) if the Person executing the Claim Form is acting in a representative capacity, a certification of his, her or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of the Settlement Administrator, subject to input by the Settling Parties; and (c) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

26.     Any eligible Settlement Class Member that does not timely and validly submit a Claim Form or whose claim is not otherwise approved by the Court: (a) shall be deemed to have waived their right to share in the Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Settlement Agreement and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the judgment and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Claims against Released Parties, as more fully described in the Settlement Agreement and Notice.

## VI.     The Court's Final Approval Schedule and Fairness Hearing Date

27.     As set forth in the timeline below, all briefs and materials in support of final approval of the Settlement, Plaintiffs' Counsel's fee and expense application, and any application for Service Awards to Plaintiffs, shall be filed with the Court no later than fifteen (15) days before

9

the Objection and Opt-Out Date and no later than thirty-five (35) days before the Fairness Hearing.

The applications described in this paragraph shall promptly be posted on the Settlement Website,

and shall be considered as separate and apart from the Court's consideration of the fairness,

reasonableness, and adequacy of the Settlement.

28.    All reply submissions, including any responses to any objections by Settlement

Class Members, shall be filed with the Court no later than seven (7) calendar days prior to the date

of the Fairness Hearing.  The timeline is as follows:

| Event | Date |
|---|---|
| Settlement Class Data shall be provided to the Settlement Administrator. | _____ [5 days after issuance of Preliminary Approval Order] |
| Notice shall be mailed in accordance with the Notice Plan and this Order. | _____ [45 days after issuance of Preliminary Approval Order] |
| Settlement Class Counsel's Application for Attorneys' Fees and Expenses and request for Service Awards for the Plaintiffs-Settlement Class Representatives. | _____ [90 days after issuance of Preliminary Approval Order (15 days before the Objection and Opt-Out Dates) |
| Deadline for Objections to the Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, and/or the request for Settlement Class Representative Service Awards. | _____ [105 days after issuance of Preliminary Order (60 days after the Notice Date)] |
| Deadline for Requests for Exclusion from the Settlement. | _____ [105 days after issuance of Preliminary Order (60 days after the Notice Date)] |
| Plaintiffs to file Motion for Final Approval of the Settlement. | _____ [110 days after issuance of Preliminary Approval Order (65 days after the Notice Date)] |
| Claim Administrator shall submit a declaration to the Court (i) reporting the names of all persons and entities that submitted timely and proper Requests for Exclusion; and (ii) attesting that Notice was disseminated in accordance with the Settlement Agreement and this Preliminary Approval Order. | _____ [110 days after issuance of Preliminary Approval Order (65 days after the Notice Date)] |
| Responses of Any Party to any Objections and/or Requests for Exclusion. | _____ [125 days after issuance of Preliminary Approval Order (80-days after the Notice Date)] |

| Event | Date |
|-------|------|
| Any submissions by Defendant concerning Final Approval of Settlement. | _____ [125 days after issuance of Preliminary Approval Order (80-days after the Notice Date)] |
| Final Fairness Hearing will be held at Martin Luther King Building & U.S. Courthouse, 50 Walnut St., Newark, NJ 07102 or by video conference as determined by the Court. | _____ [140 days after issuance of Preliminary Approval Order] |

29.     A hearing on final approval of the Settlement ("Fairness Hearing") shall be held before this Court on _____, 2026 at _____ _.m. in the Courtroom PO3 before the Honorable Jamel K. Semper, U.S.D.J., at the United States District Court for the District of New Jersey, Frank R Lautenberg U.S. Post Office & Courthouse, 2 Federal Square, Newark, NJ 07102. At the Fairness Hearing, the Court will, among other things, consider:

a.     final certification of the Settlement Class solely for purposes of effectuating the Settlement;

b.     the fairness, reasonableness, and adequacy of the Settlement and whether the Settlement Agreement should be finally approved and consummated according to its terms;

c.     whether the Court should approve the proposed Settlement Benefits Plan for distribution of the Net Settlement Fund (*i.e.*, net of Notice and Settlement Administration Costs, Attorneys' Fees and Expenses, Service Awards, Taxes, Tax Expenses, and Tax-Related Expenses, and costs for procurement of Medical Shield Pro.) to eligible Settlement Class Members;

d.      whether notice of the Settlement constitutes due, adequate, and sufficient notice of the Settlement meeting the requirements of due process and the Federal Rules of Civil Procedure;

e.      whether the Action shall be dismissed with prejudice as to Defendant;

f.      whether the release of any and all Released Claims with respect to the Released Parties shall be deemed effective as of Final Judgment;

g.      whether Persons are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against Released Parties;

h.      whether the Court retains continuing and exclusive jurisdiction over the Settlement for all purposes, including its administration and execution and disputes that may arise; and

i.      whether, under Federal Rule 54(b), there is any just reason for delay and whether an order of dismissal and Judgment shall be final and appealable and entered forthwith.

30.    The Fairness Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice. Plaintiffs' Counsel shall be responsible for communicating any such notice promptly to the Settlement Class by posting conspicuous notice on the Settlement Website.

31.    In the event that the Settlement does not become final, then, subject to approval of the Court, litigation of the Action against Defendant will resume in a reasonable manner to be approved by the Court upon joint application by the Parties.

32.     If the settlement set forth in the Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of the Settlement Agreement or otherwise, the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.

33.     Neither this Order nor the Settlement Agreement, nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Settlement Agreement and the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

34.     All proceedings in the Action as they relate to the Labcorp track, other than those related to approval of the Settlement Agreement, are hereby stayed. For the avoidance of doubt, the Action related to claims brought against Defendants Quest and Optum are not stayed by this Order. Any actions brought by Settlement Class Members concerning the Released Claims are hereby enjoined and stayed pending final approval of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: _____          _____

                                        HON. JAMEL K. SEMPER, U.S.D.J.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 19-md-2904 (JKS)(MAH) |
| | MDL No. 2904 |
| This Document Relates To: | |
| Labcorp Track | |

## DECLARATION OF CARLA A. PEAK OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT

I, Carla A. Peak, declare as follows:

1.      I am a Managing Director of Kroll Notice Media Solutions ("Kroll Media"),[1] a business unit of Kroll Settlement Administration LLC ("Kroll"), the proposed Settlement Administrator to be appointed in the above-captioned case, whose principal office is located at One World Trade Center, 285 Fulton Street, 31st Floor, New York, New York 10007. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working with me and/or under my general supervision. This declaration is being filed in connection with preliminary approval of the Settlement.

2.      I am a nationally recognized expert in the field of legal notice and I have served as an expert in countless federal and state cases involving class action notice plans.

3.      Kroll has extensive experience in all types of class action matters, having managed more than 4,000 settlements, designed over 1,000 multi-media campaigns, processed more than 100 million claims, and distributed over $30 billion in payments over the past 50 years.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Class Action Settlement Agreement and Release (the "Settlement Agreement") entered into in this Action.

4.      Kroll has administered class action notice plans for numerous consumer protection cases, including data breach and data privacy cases. Examples include: *Bianucci v. Rite Aid Corp*., No. 2:24-cv-03356 (E.D. Pa.); *Douglas v. PurFoods LLC*, No. 4:23-cv-00332 (S.D. Iowa); *Hameed-Bolden v. Forever 21 Retail, Inc*., No. 2:18-cv-3019 (C.D. Cal.); *Hightower v. Receivables Performance Management LLC*, No. 2:22-cv-01683 (W.D. Wash.); *In re Apria Data Breach Litig*., No. 1:23-cv-01003 (S.D. Ind.); *In re Arthur J. Gallagher Data Breach Litig*., No. 1:22-cv-00137 (N.D. Ill.); *In re CorrectCare Data Breach Litig*., No. 5:22-cv-00319 (E.D. Ky.); *In re Evolve Bank & Trust Customer Data Security Breach Litig*., No. 2:24-md-03127 (W.D. Tenn.); *In re Fred Hutchinson Cancer Center Data Breach Litig*., No. 2:23-cv-01893 (Wash. Super. Ct., King Cty.); *In re Great Expressions Data Security Incident Litig*., No. 2:23-cv-11185 (E.D. Mich.); *In re HCA Healthcare, Inc. Data Security Litig*., No. 3:23-cv-00684 (M.D. Tenn.); *In re Lansing Community College Data Breach Litig*., No. 1:23-cv-00738 (W.D. Mich.); *In re MCG Health Data Security Issue Litig*., No. 2:22-cv-00849 (W.D. Wash.); *In re Tenet Healthcare Corporation Data Breach Litig*., No. DC-22-07513 (Tex. Dist. Ct., Dallas Cty.); *In re: T-Mobile Customer Data Security Breach Litig*., No. 21-md-03019 (W.D. Mo.); *In re: Yahoo! Inc. Customer Data Security Breach Litig*., No. 5:16-md-02752 (N.D. Cal.); *Orr v. Intercontinental Hotels Group, PLC*, No. 1:17-cv-1622 (N.D. Ga.); *Rodriguez v. University Property & Casualty Insurance, Co*., No. 16-cv-60442 (S.D. Fla.); *Summers v. Sea Mar Community Health Centers*, No. 22-2-00773-7 (Wash. Super. Ct., King Cty.); *Weigand v. Group 1001 Insurance Holdings, LLC*, No. 1:23-cv-01452 (S.D. Ind.); and *Wright v. Crossroads Trading Co., Inc*., No. 25CV479119 (Cal. Super. Ct., Santa Clara Cty.).

5.      I have personally been involved in a variety of data breach cases, such as *Hasson v. Comcast Cable Communications LLC*, No. 2:23-cv-05039 (E.D. Pa.); *In re Anthem, Inc. Data Breach Litig*., No. 5:15-md-02617 (N.D. Cal.); *In re Arby's Restaurant Group, Inc. Data Security Litig*., No. 1:17-mi-55555 (N.D. Ga.); *In re Chrome Holding Co. (23andMe)*, No. 25-40976-357 (Chapter 11) (Bankr. E.D. Mo.); *In re Experian Data Breach Litig*., No. 8:15-cv-01592 (C.D. Cal.); *In re HealthEC LLC Data Breach Litig.*, No. 2:24-cv-00026 (D.N.J.); *In re: The Home Depot, Inc.,*

*Customer Data Security Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.); *In re Orrick, Herrington & Sutcliffe LLP, Data Breach Litig.*, No. 3:23-cv-04089 (N.D. Cal.); *Sonic Corp. Customer Data Security Breach Litig.*, No. 1:17-md-02807 (N.D. Ohio); and *Torres v. Wendy's International, LLC*, No. 6:16-cv-00210 (M.D. Fla.)

6.     In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects of the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center ("FJC").

7.     The anticipated reach of the notice program (the "Notice Plan") is consistent with other effective court-approved notice programs. Additionally, the Notice Plan is intended to comply with the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the "FJC Checklist"), which considers 70-95% reach among class members to be reasonable.

## CAFA Notice

8.     On behalf of the Defendant, Kroll will provide notice of the proposed settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) (the "CAFA Notice"). At Defendant's Counsel's direction, Kroll will send the CAFA Notice, which identifies how to access required documents relating to the settlement, via first-class certified mail to (a) the Attorney General of the United States and (b) the applicable state Attorneys General. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the settlement referenced in the CAFA Notice.

## Notice Plan

9.     According to the Settlement Agreement, the proposed Settlement Class consists of all individuals for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection Agency ("AMCA"), and whose information was

contained in the computer systems implicated by the cybersecurity incident at AMCA that occurred between approximately August 2018 and March 2019. The Settlement Class specifically excludes: (i) Labcorp and its officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge.

10.     It is Kroll's understanding that it will be provided with the Settlement Class Data pursuant to the Settlement Agreement, which will contain the full names and current or last known addresses for Settlement Class Members, to the extent reasonably available.

### Email Notice

11.     Kroll will use the information provided in the Settlement Class Data to perform an email append process. The email append process matches names and postal addresses against third-party data to obtain the corresponding email addresses. Kroll will update the Settlement Class Data with all email addresses obtained through this process.

12.     Kroll will send the Short Form Notice via email (the "Email Notice") to Settlement Class Members for whom an email address is obtained during the email append process and available in the updated Settlement Class Data.

13.     Prior to distributing the Email Notice, all email addresses will be subject to a cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs").

### Postcard Notice

14.     Kroll will send the Short Form Notice via a fold-over postcard notice with a detachable Claim Form inclusive of pre-paid Business Reply Mail postage (the "Postcard Notice") by first-class mail to Settlement Class Members who were not sent an Email Notice and who have a physical mailing address in the Settlement Class Data.

15.    In preparation for the Postcard Notice mailing, Kroll will send the relevant Settlement Class Data through the United States Postal Service's ("USPS") National Change of Address ("NCOA")[2] database. The NCOA process will provide updated addresses for Settlement Class Members and the process will also standardize the addresses for mailing. The Settlement Class Data will be updated accordingly. Kroll will then mail Postcard Notices via first-class mail to Settlement Class Members as described above using the information in the updated Settlement Class Data.

16.    Postcard Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

17.    Postcard Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record. If an updated address is obtained through the advanced search process, Kroll will re-mail the Postcard Notice to the updated address.

18.    The Notice Plan contemplates Settlement Class Data that will allow for Short Form Notice to reach the vast majority of Settlement Class Members through direct mail or email, consistent with due process. Based upon information provided by Lead Class Counsel, Kroll estimates that direct notice will likely reach 90% of the proposed Settlement Class. These assumptions are subject to the accuracy and quality of the data received. Kroll's estimated reach for direct notice is consistent with other court-approved, best-practicable notice programs and FJC guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3]

19.    The results of the mailing efforts will be continuously monitored and analyzed to confirm that the results fall within or exceed expectations.

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[3] Federal Judicial Center, *Judges' Class Action and Claims Process Checklist and Plain Language Guide* (2010).

### *Online Media Campaign*

20.     The direct notice effort will be supplemented by online digital advertisements. Kroll Media will apply a programmatic approach to display advertising placements. Digital banner ads will be purchased "programmatically," using a computer algorithm[4] to show a specific ad to a specific visitor in a specific context. These ads are device agnostic, such that they will appear across desktop, laptop, tablet, or mobile device.

21.     Online display ads will be targeted to reach adults 18 years of age and older nationwide with household incomes in the lower half of households, as well as appear alongside content related to news, health, debt collection and repossession, and/or debt management.

22.     The content of the digital banner ads will include relevant information for users to self-identify whether they are Settlement Class Members. When an ad is clicked, an embedded link will direct the user to the Settlement Website where they can learn more about the Settlement and potentially file a Claim Form online.

### *Settlement Website*

23.     Kroll will work with counsel for the Parties ("Counsel") to create a dedicated Settlement Website. The Settlement Website URL will be determined and approved by Counsel. The Settlement Website will contain a summary of the settlement, will allow Settlement Class Members to contact the Settlement Administrator with any questions, provide notice of important dates such as the Final Fairness Hearing, Claims Deadline, the last day to object to or opt out of the settlement, allow Settlement Class Members to submit opt-out requests online, and will provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, such as Venmo, Zelle, PayPal, or ACH, or payment by check. The Settlement Website will also contain downloadable copies of relevant documents including the Settlement

---

[4] In practice, when a user visits a website, an IP connection between the user's device and the publisher's webserver is established. The website then flags available ad tags so that the ad server can analyze data about the user, such as demographic attributes or location. This information is shared with advertising exchanges (i.e., digital advertising marketplaces for ad space) where ad buyers can bid on the ad unit relevant to the campaign. If the ad unit is user relevant, *i.e.*, it targets a likely settlement class member based on matching user attributes, a bid is offered. Upon winning the bid for the ad unit, the ad is downloaded on a webpage for a user to see and this counts as an impression.

Agreement, Preliminary Approval Order, Short Form Notice, Long Form Notice, Claim Form, and when available, Plaintiffs' Motion for Attorneys' Fees and Expenses and Services Awards, and any other materials agreed upon by the Parties and/or required by the Court.

### *Toll-Free Telephone Number*

24.     Kroll will establish a toll-free telephone number for the settlement. The toll-free telephone number will allow Settlement Class Members to call and obtain information about the settlement through an Interactive Voice Response system.

### *Post Office Box*

25.     Kroll will designate a post office box to receive requests for exclusion, Claim Forms, objections, and correspondence from Settlement Class Members.

### <u>Conclusion</u>

26.     The proposed Notice Plan is expected to reach the vast majority of the Settlement Class by way of the individual direct notice efforts alone, which will be provided primarily via email and U.S. Mail.

27.     In my opinion, the proposed Notice Plan is consistent with other effective settlement notice programs. It is the best notice practicable and meets the "reasonably certain to inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). The Notice Plan is designed and expected to meet or exceed the guidelines set forth in Rule 23, the Manual for Complex Litigation (Fourth), and the FJC Checklist.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on March 12, 2026, in New York, New York.

_____

Carla A. Peak

# EXHIBIT 3

 **CARELLA BYRNE CECCHI BRODY AGNELLO, P.C.**                    **CLASS ACTION RESUME**

Formed in 1976, Carella Byrne is one of the leading law firms in the New Jersey – New York metropolitan area, serving a diverse clientele ranging from small businesses to Fortune 500 corporations. Carella Byrne's class action practice - founded and led by James E. Cecchi - is one of the preeminent consumer class action firms in the State of New Jersey and across the United States. Mr. Cecchi has held leadership positions in many of the nation's most complex and important consumer class actions effecting consumer rights in the last ten years. The most recent examples are: (1) *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*; (2) *In re Takata Airbag Product Defect Litigation*; (3) *In re National Prescription Opiate Litigation;* (4); *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*; (5) *In re Mercedes-Benz Emissions Litigation*; (6) *In re Liquid Aluminum Sulfate Antitrust Litigation;* (7) *In re Volkswagen Timing Chain Product Liability Litigation;* (8) *In re Insulin Pricing Litigation*.

## REPRESENTATIVE MATTERS

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.) (Hon. Charles R. Breyer) (James Cecchi appointed to Steering Committee and as Settlement Class Counsel; settlement in excess of $15,000,000,000 for consumer fraud and warranty claims arising from the use of a defeat device to evade U.S. emissions regulations.)

- *In re: Takata Airbag Products Liability Litigation*, MDL No. 2599 (S.D. Fla.) (Hon. Frederico A. Moreno) (James Cecchi appointed to Steering Committee and as Settlement Class Counsel; settlement in excess of $1,500,000,000 for consumer fraud and warranty claims arising from use of defective and dangerous airbags; the case is ongoing as it pertains to second-wave defendants, including Mercedes Benz USA.)

- *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, MDL No. 2904 (D.N.J.) (Hon. Madeline Cox Arleo) (James Cecchi appointed sole Lead Counsel in national Multi-District data breach litigation.)

- *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) (Hon. Dan A. Polster) (James Cecchi appointed to Plaintiffs' Executive Committee relating to marketing of opioid drugs. Recent settlements include a proposed $26 billion settlement with the nation's largest drug distributors and Johnson & Johnson. Recent trial team victories include Track 3 bellwether of $650.6 million.)

- *In re: Mercedes-Benz Emissions Litigation*, Civil Action No. 16-cv-881 (D.N.J.) (Hon. Kevin McNulty) (James Cecchi appointed as Interim Co-Lead Counsel for Plaintiffs and the Proposed Class in a case arising out of the alleged use of a defeat device to evade U.S. emissions regulations; settlement with value in excess of $700,000,000 granted final approval.)

- *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (D.N.J.) (Hon. Dennis M. Cavanaugh); *In re Schering-Plough/Enhance Securities Litigation*, Civil Action No.: 08-cv-397 (D.N.J.) (Hon. Dennis M. Cavanaugh); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, Civil Action No.: 08-cv-2177 (D.N.J.) (Hon. Dennis M. Cavanaugh) (consumer and securities fraud claims arising from marketing and sale of anti-cholesterol drugs Vytorin and Zetia) (Co-Lead Counsel in Consumer Cases which settled for $41,500,000 and Liaison Counsel in Securities Cases which collectively settled for $688,000,000.)

- *In re: Liquid Aluminum Sulfate Antitrust Litigation,* MDL No. 2687 (D.N.J.) (Hon. Jose L. Linares) (James Cecchi appointed as Lead Counsel and secured a settlement of greater than $100,000,000.)

- *In Re Effexor XR Antitrust Litigation,* Civil Action No. 11-cv-5661 (D.N.J.) (Hon. Joel A. Pisano) (claims on behalf of indirect purchasers of brand-name drug alleging that manufacturer obtained patent by fraud and enforced patent by sham litigation to maintain illegal monopoly of brand-name drug. James Cecchi appointed as Chair of Plaintiffs' Indirect Purchaser Executive Committee.)

- *Davis Landscape v. Hertz Equipment Rental*, Civil Action No. 06-cv-3830 (D.N.J.) (Hon. Dennis M. Cavanaugh) (Co-Lead Counsel in settlement valued at over $50,000,000 on behalf of contested nationwide class asserting claims that HERTZ' loss/damage waiver charges violated the New Jersey Consumer Fraud Act because it provides no benefit to customers.)

- *In Re: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (D.N.J.) (Hon. Stanley R. Chesler) (securities fraud claims arising from Merck's failure to disclose problems with commercial viability of anti-pain drug Vioxx which settled for more than $1,000,000,000.)

- *In re: Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914 (Hon. Dickson R. Debevoise) (Co-Lead Counsel in $40,000,000 settlement of consumer fraud claims arising from Mercedes' failure to notify Tele-Aid customers of mandated change from analog to digital system, and charging customers to replace system Mercedes knew would be obsolete.)

## DATA PRIVACY MATTERS

- *John Doe v. Kaiser Permanente*, No. 3:23-cv-02865-EMC (N.D. Cal.) (Serving as Co-Lead Counsel)

- *In re: TikTok Inc. In-App Privacy Litigation*, No. 1:24-cv-02110-RRP, MDL No. 2948-A (N.D. Ill.) (Serving on Executive Committee)

- *Dhruva, et al. v. CuriosityStream, Inc.*, No. 1:23-cv-02265-SAG (D.M.D.) (Co-Lead Counsel for Plaintiffs)

- *In re: T-Mobile 2022 Customer Data Security Breach Litigation*, No. 4:23-MD-03073-BCW, MDL No. 3073 (W.D. Mo.) (Serving as Co-Lead Counsel)

- *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 2:19-md-02904-MCA-MAH, MDL No. 2904, (D.N.J.) (Sole Lead Counsel for Quest Track)

- *In re: AT&T Inc. Customer Data Security Breach Litigation,* No. 3:24-cv-00757-E, MDL No. 3114, N.D. Tex.) (Serving on the Executive Committee)

- Federal Coordination and Settlement Liaison in *Skurauskis v. NationsBenefits Holdings, LLC*, No. 23-cv-60830, MDL No. 3090 (S.D. Fla.), and as Co-Lead Counsel in the related action, *Rougeau v. Aetna Inc.*, No. 23-cv-00635-RNC (D. Conn.)

- *In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, No. 0:24-md-03108-DWF-DJF, MDL No. 3108 (D.M.N.) (Serving on Steering Committee)

- *In re HealthEC LLC Data Breach Litigation*, No. 2:24-cv-00026-JKS-SDA (D.N.J.) (Providing a $5,482,500.00 Common Fund and Equitable Relief)

- *In re: American Financial Resources, Inc. Data Breach Litigation*, No. 2:22-cv-01757 (D.N.J. Mar 29, 2022) (Providing a $2,500,000.00 Common Fund and Equitable Relief)

- *In re: CentraState Healthcare Data Security Incident Litigation*, No. OCN-L-2002-24 (N.J. Sup.) (Providing a Cash Benefit Payment Fund of approximately $1,610,759.00, along with providing Class Members Equitable Relief)

- *In re: Conduent Business Services Data Breach Litigation*, No. 2:25-cv-16953-MEF-MAH (D.N.J.) (Serving as Co-Lead Counsel)

# EXHIBIT 4



**1225 Franklin Avenue, Suite 325**
**Garden City, New York 11530**
**Telephone: (917) 438-9189**
www.nussbaumlawgroup.com

## FIRM BIOGRAPHY

Nussbaum Law Group, PC ("NLG") is a litigation firm specializing in the prosecution of precedent-setting class litigation with the singular focus of providing the highest level of service and best results. Linda Nussbaum, the firm's founder, has been at the forefront of landmark fair competition and other complex class cases for over 40 years. The firm's experienced litigators have played leading roles in recovering billions of dollars for their clients from the world's largest corporations. The firm has repeatedly successfully represented individuals, public companies, and classes in significant and high-stakes, multifaceted litigation in courts throughout the country. Our main practice areas include antitrust, pharmaceutical, consumer, data breach, employee "no poach" and commodities manipulation class actions, as well as complex business disputes.

**MANAGING DIRECTOR:  LINDA P. NUSSBAUM**

Linda Nussbaum is the founder and managing director of the Nussbaum Law Group, P.C. She is nationally recognized for her representation of plaintiffs in antitrust, data breach, and pharmaceutical litigation. She has served as sole or co-lead counsel in well-over 30 class actions, in jurisdictions throughout the U.S., including many significant class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars.[1] She has

---

[1] Ms. Nussbaum has served as Lead or Co-Lead counsel in 28 antitrust class actions. *In re Sorbates Direct Purchaser Antitrust Litig.*, 3:98-cv-04886-MMC (N.D.Ca.) (USDJ Maxine M. Chesney) (settled for $96 million, Nov. 2002); *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 99-ms-00276-TFH (D.D.C.) (Chief Judge Thomas F. Hogan) (settled for $37 million, Jun. 2003); *In re Methionine Antitrust Litig.*, MDL No. 1311, 3:00-md-01311-CRB (N.D. Ca.) (USDJ Charles R. Breyer) (settled for $107 million, Jun. 2003); *Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Company & American Bioscience*, 1:01-cv-02313-EGS (D.D.C.) (USDJ Emmet G. Sullivan) (settled for $65.8 million, Oct. 2003); *In re Relafen Antitrust Litig.*, 01-cv-12239 (D. Mass.)-*Meijer, Inc. v. SmithKline Beecham*, 01-cv-12239-WGY (D. Mass.) (Chief Judge William G. Young) (settled for $175 million, Apr. 2004); *In re Microcrystalline Cellulose Antitrust Litig.*, MDL No. 1402, 01-cv-00111-TNO (E.D. Pa.) (USDJ Thomas N. O'Neill Jr.) (settled for $50 million, Nov. 2006); *In re Plastics Additives Antitrust Litig.*, MDL No. 1684, 03-cv-02038-LDD (E.D. Pa.) (USDJ Legrome D. Davis) (settled for $46.8 million, Jun. 2008); *In re Remeron Direct Purchaser Antitrust Litig.*, Master Docket 02-2007-FSH (D.N.J.) (settled for $75 million, Nov. 2005)-*Meijer, Inc. v. Organon, Inc.*, 2:03-cv-0085-FSH (D.N.J.) (USDJ Faith S. Hochberg); *In re Foundry Resins Antitrust Litig.*, MDL No. 1638, 04-md-01638-GLF (S.D. Ohio) (USDJ Gregory L. Frost) (settled for $14.1 million, Mar. 2008); *North Shore Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co.*,



successfully managed those cases with collegiality, effectiveness, and efficiency, in accordance with the letter and spirit of Rule 1.

In the data breach class action field, as one of the two co-lead counsel in *In re Morgan Stanley Data Security Litigation* (S.D.N.Y.), Ms. Nussbaum recently led the effort to secure a $60 million non-reversionary cash fund and additional settlement benefits valued at over $8 million for 15 million class members. The settlement was novel, creative and tailored to address the specific facts of that case, including attaining Morgan Stanley's commitment to hire experts to continue an effort to recover missing IT devices involved in the breach. The settlement secured financial account monitoring for the entire class for ten years. In that case, Plaintiffs' counsel served twenty third-party subpoenas; worked with several cyber forensic experts on complex forensic analyses of the evidence; conquered many unique factual features of the case; overcame an aggressive defense that included vigorous attacks for lack of Article III standing; and negotiated with challenging objectors to the settlement, in a relentless effort to hold Morgan Stanley to account for the breach. The result was a ground-breaking settlement, achieved in record time, and which was one of the highest, if not the highest, recovery in a data security class action on a per class member basis. At the final approval hearing, S.D.N.Y. Judge Paul A. Engelmayer remarked that Plaintiffs were represented by "first-rate lawyers."

Ms. Nussbaum has extensive up-to-the-moment experience in the unique factual and legal developments, defenses and issues surrounding the breach personally identifiable healthcare data (PHI) and HIPAA law. In *In re American Medical Collection Agency, Inc., Customer Data Security*

---

1:04-cv-00248-EGS (D.D.C.) (USDJ Emmet G. Sullivan) (settled for $50 million, Nov. 2004); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, 1:04-mc-00535-ESH (D.D.C.)-*Meijer, Inc. v. Perrigo Company and Alpharma Inc.* (D.D.C.) (USDJ Ellen S. Huvelle) (settled for $9.7 million, Apr. 2006); *In re Rubber Chemicals Antitrust Litig.*, 04-md-01648 (N.D. Ca.) (USDJ Maxine M. Chesney) (settled for $319.5 million, Nov. 2006); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 05-cv-02195-CKK (D.D.C.) (USDJ Colleen Kollar-Kotelly) (settled for $22 million, Apr. 2009); *In re DDAVP Direct Purchaser Antitrust Litig.*, 05-cv-02237-CS (S.D.N.Y.) (USDJ Cathy Seibel) (settled for $30.25 million, Nov. 2011); *Meijer, Inc. v. Abbott Laboratories*, 07-cv-05985-CW (N.D. Ca.) (USDJ Claudia Wilkin) (settled for $52 million, Aug. 2011); *Meijer, Inc. v. Braintree Laboratories, Inc.*, 07-cv-00143 (D. Del.) (Special Master B. Wilson Redfearn); *Castro v. Sanofi Pasteur, Inc.*, 2:11-cv-07178-JMV-JBC (D.N.J.) (USDJ Jose L. Linares) (settled for $61.5 million); *Meijer, Inc. v. Warner Chilcott Public Limited Company*, 12-cv-03824-PSD (E.D. Pa.) (USDJ Paul S. Diamond); *In re Aluminum Warehousing Antitrust Litig.*, 1:13-md-02481-PAE (S.D.N.Y.) (USDJ Paul A. Engelmayer); *In re Zinc Antitrust Litig.*, 2:14-cv-03728-PAE (S.D.N.Y.) (USDJ Paul A. Engelmayer); *IV Saline Solutions Antitrust Litig.*, *Washington County Health Care Authority, Inc. v. Baxter International Inc.*, 1:16-cv-10324-JJT (N.D.Ill.) (USDJ John J. Tharp Jr.); *In re Outpatient Medical Center Employee Antitrust Litig.*, 1:21-cv-00305-ARW-SRH (N.D. Ill.); *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 1:19-md-2895-CFC (D. Del); *In re Actos Direct Purchaser Antitrust Litig.*, 1:13-cv-09244-RA-SDA (S.D.N.Y.); and *In re Vascepa Antitrust Litig. Direct Purchaser Plaintiffs*, 3:21-cv-12747-ZNQ-LHG (D.N.J.); *In re Morgan Stanley Data Security Litig.*, 20-cv-5914-PAE (S.D.N.Y.).



*Breach Litigation, MDL 2904* (D.N.J.), Ms. Nussbaum serves as co-lead counsel of the LabCorp Track, coordinating with a structure of counsel for three other defendant tracks, in a case involving the breach of a "Business Associate" of the covered entity LabCorp. This hard-fought healthcare breach litigation on behalf of a putative class of over 10 million LabCorp patients has almost completed fact discovery and, when certain discovery disputes are resolved, will move to expert discovery and class certification. Most recently, Ms. Nussbaum was placed in charge of over 4 million Northwell Health Plaintiffs in *In re Perry Johnson & Assoc. Med. Transcription Data Security Breach Litig.*, 24-md-03096 (E.D.N.Y).

Ms. Nussbaum served as Co-Lead Counsel for the Class in *Nanette Katz, et al. v. Einstein Healthcare Network*, Class Action Case ID No. 21040204, Philadelphia Court of Common Pleas, First Judicial District of Pennsylvania. That data breach case involved the compromised PII and PHI of patients of a number of hospitals in Philadelphia. That case was settled in September 2022. Ms. Nussbaum recently served as Co-Lead Class Counsel for a class of over 20 million Wawa customers victimized by a data breach in *In re Wawa, Inc., Data Security Litig.*, Civil Action No. 2:19-cv-06019-GEKP (E.D. Pa.). Judge Gene E.K. Pratter granted final approval of the settlement in Wawa on April 20, 2022, which settlement is presently under appeal.

Ms. Nussbaum is currently serving as Co-Lead Class Counsel for a certified Rule 23(b)(2) putative class of merchants who accept credit cards in a two-decade-long antitrust litigation challenging supra-competitive merchant fees brought against Visa, Mastercard and the major national banks in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 1:05-md-01720-MKB-VMS (E.D.N.Y.). She is Co-Lead Class Counsel in cutting-edge labor litigation representing a putative class of employees challenging anticompetitive "no poach" agreements in *In re Outpatient Medical Center Employee Antitrust Litig.*, 1:21-cv-00305-ARW-SRH (N.D. Ill.).

Ms. Nussbaum was selected "Litigator of the Week" by the AMLAW LITIGATION DAILY for her lead trial counsel role in *Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals v. Pfizer*, *Inc.* (D. Mass) where, following six years of litigation, after a six-week trial in Boston, a jury returned a RICO verdict for her clients. The jury returned a verdict for her client, Kaiser, for over $47 million, which was statutorily trebled to over $142 million. Following the trial, Judge Patti Saris commented that: "[this was] a fabulous trial[.] [I]t's the kind of thing that you become a judge to sit on." Ms. Nussbaum was also co-lead and trial counsel for a class of antitrust plaintiffs in *Meijer, Inc. v. Abbott Laboratories* (N.D. Cal.). She was named as a finalist for Public Justice Foundation's 2011 Trial Lawyer of the Year award. She has repeatedly been selected by Global Competition Review as being among the world's leading competition lawyers.

Ms. Nussbaum has lectured extensively about various aspects of antitrust and class action law at the American Antitrust Institute Private Enforcement Conference, and the American Bar Association, Section of Antitrust Law Spring Meetings. She has been a member of the American Law Institute (ALI) for over 15 years, and is a long-time advisory board member of the American Antitrust Institute. She is also on the Board of Savvy Ladies, a not-for-profit women's legal and financial resource organization.

Recently, Judge Paul A. Engelmayer in approving the settlement and fee *in In re Zinc Antitrust Litigation*, 14 Civ. 3728 complimented Ms. Nussbaum and her co-lead counsel stating:



> I have been truly impressed by counsel's work in the case. I wish the
> caliber of lawyering in this case was the model for all cases before me.

Ms. Nussbaum is presently serving in the following leadership positions:

- *In re Fragrance Direct Purchaser Antitrust Litigation,* No. 23-2174-WJM (D.N.J.) (Lead).
- *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation, MDL 2904* (D.N.J.) (Lead)
- *In re Wawa, Inc. Data Security Litigation* (E.D. Pa.) (Lead)
- *Nanette Katz, et al. v. Einstein Healthcare Network* (Class Action Case ID No. 21040204, Philadelphia Court of Common Pleas, First Judicial District of Pennsylvania) (Lead)
- *In re Samsung Customer Data Security Breach Litigation* (D.N.J.) (Chair of Discovery)
- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (E.D.N.Y.) (Lead)
- *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litigation* (D. Del) (Lead)
- *In re Actos Direct Purchaser Antitrust Litigation* (S.D.N.Y.) (Lead)
- *In re Generic Drugs Pricing Antitrust Litigation* (E.D. Pa.) (Plaintiff Steering Committee)
- *In re Bank of Nova Scotia Spoofing Litigation* (D.N.J.) (Lead)
- *In re Outpatient Medical Center Employee Antitrust Litigation* (N.D. Ill.) (Lead)
- *In re Vascepa Antitrust Litigation Direct Purchaser Plaintiffs* (D.N.J.) (Lead)
- *In re CentraState Healthcare Data Security Incident Litigation* (Superior Court of New Jersey Law Division: Monmouth County) (Lead)
- *In re Independent Living Systems Data Breach Litigation* (S.D. Florida) (Plaintiffs Executive Committee)
- *In re Perry Johnson & Assoc. Med. Transcription Data Security Breach Litig.*, (E.D.N.Y) (Attorney in charge of over 4 million Northwell Health Plaintiffs).

Ms. Nussbaum received her B.A. *magna cum laude* from Brooklyn College, her Juris Doctor with honors from the National Law Center, George Washington University Law School, and her LLM in Taxation from New York University Law School.

## OF COUNSEL: SUSAN R. SCHWAIGER

Susan Schwaiger practices in the areas of antitrust, commodities manipulation, data breach, and employee "no poach" litigation, with experience in cases involving a wide variety of industries including banking and financial services, pharmaceuticals, healthcare and chemicals. Ms. Schwaiger has worked closely with Linda Nussbaum for over 24 years and played a significant role in many of the cases in which Ms. Nussbaum served as lead counsel including:

- *In re Morgan Stanley Data Security Litigation* (S.D.N.Y.)
- *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation,* MDL 2904 (D.N.J.)
- *In re Outpatient Medical Center Employee Antitrust Litigation* (N.D. Ill.)
- *In re Lorazepam & Clorazepate Antitrust Litigation* (D.D.C.)
- *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.)



- *In re Plastics Additives Antitrust Litigation* (E.D. Pa.)
- *In re Foundry Resins Antitrust Litigation* (S.D. Ohio)
- *In re Rubber Chemicals Antitrust Litigation* (N.D. Cal.)

In addition, Ms. Schwaiger has, with Ms. Nussbaum, represented large companies as individual litigants in *In re Payment Card Interchange Fee and Merchant Antitrust Litigation* (E.D.N.Y.) and *In re Packaged Seafood Products Antitrust Litigation* (S.D. Cal.).

Ms. Schwaiger graduated from the University of Tennessee (Knoxville) with a Bachelor of Science degree from the College of Arts and Sciences in 1971. She received a M.A. degree from the University of Kentucky (Lexington) in 1973. She received her Juris Doctor, *cum laude*, from Brooklyn Law School in 1992, where she was a member of the BROOKLYN LAW REVIEW.

## OF COUNSEL: PETER E. MORAN

Peter Moran is counsel to Nussbaum Law Group. Prior to joining the firm, Mr. Moran was an associate with an international law firm in New York City in its Global Competition and Commercial Litigation groups where he represented commercial clients on a variety of antitrust and complex commercial litigation issues, including violations of the federal and state antitrust and consumer protection laws, antitrust compliance, internal investigations, individual civil and criminal liability and responding to federal and foreign regulators. Mr. Moran focuses his practice on antitrust cases in the financial marketplace and pharmaceutical industry, where he handles all stages of litigation from investigation and inception through trial. Mr. Moran received a B.A. degree in English from the State University of New York at Albany. He graduated *cum laude* from Brooklyn Law School in 2009, where he was a member of the BROOKLYN LAW SCHOOL JOURNAL OF INTERNATIONAL LAW and Moot Court Honor Society and recipient of several academic awards.

## OF COUNSEL: TANYA KORKHOV

Tanya Korkhov is Counsel at Nussbaum Law Group. Ms. Korkhov has extensive experience in class actions and complex litigation matters. Prior to joining the firm, Tanya was associated with several nationally recognized firms, where her practice focused on actions brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), and other complex litigation to enforce the rights of investors, employees, and everyday consumers. Tanya has played a significant role in a number of high-profile recoveries

Tanya earned her J.D. degree at the Benjamin N. Cardozo School of Law, where she was selected for the Securities Arbitration Clinic and represented Cardozo on a four-member team at the 2004 and 2005 annual Willem C. Vis International Commercial Arbitration Moot held in Vienna, Austria. Subsequently, Tanya served as a volunteer team coach and judge for the Vis Moot. Tanya holds a Certificate in Dispute Resolution, awarded by Cardozo's Kukin Program for Conflict Resolution.

## SENIOR ASSOCIATE: MEGHAN TALBOT

Meghan Talbot is a senior associate at Nussbaum Law Group. Ms. Talbot focuses her practice on antitrust matters in the pharmaceutical and financial industries. She has been a key member of trial and appellate teams and has deep experience in litigating complex class



actions. Prior to joining the firm, Ms. Talbot practiced with an international plaintiff-side firm in its Global Competition group. Before that, she was an associate at a prominent class action boutique representing institutional clients in antitrust and securities matters. Ms. Talbot received her B.A. in Economics from Bryn Mawr College, and her J.D. from Villanova Law School.

## ASSOCIATE: LAUREN KOSTMAN

Lauren Kostman is an associate at Nussbaum Law Group. Prior to joining the firm, Ms. Kostman was an associate with an international law firm in New York City in its Antitrust, Litigation, and White Collar Defense groups. Ms. Kostman's practice focuses on antitrust and other complex commercial litigation. She has represented domestic and international clients in federal and state courts, in addition to government-facing investigations. Ms. Kostman received her Bachelor of Arts *summa cum laude* from Baruch College, and her J.D. Order of the Coif, *magna cum laude* from Cardozo School of Law where she was the Managing Editor of the CARDOZO LAW REVIEW.

## ASSOCIATE:  JAMES T. PERELMAN

James Perelman is an associate at Nussbaum Law Group. Prior to joining the firm, Mr. Perelman worked with several prominent plaintiffs' class action firms, working specifically on antitrust matters. Previously, he served as a Judicial Fellow in the Court of Common Pleas of Philadelphia County, Civil Trial Division. Mr. Perelman received his B.A. degree in Politics from Brandeis University in 2010 and received his Juris Doctor in 2014 from Tulane University Law School, where he was the Business Editor of the TULANE JOURNAL OF INTERNATIONAL AND COMPARATIVE LAW.

## CHIEF OPERATING OFFICER: ZACH SHUTRAN

Zach Shutran leads all administrative and operational functions of the firm. He also plays a significant role in the firm's e-discovery and case development efforts. Mr. Shutran received his B.A. degree from Colgate University in 2012, and his Juris Doctor from Brooklyn Law School in 2018.

# EXHIBIT 5

# FIRM RESUME

**Robbins Geller
Rudman & Dowd** LLP

(800) 449-4900 | rgrdlaw.com

# TABLE OF CONTENTS

Introduction

Practice Areas and Services

Securities Fraud............................................................................................ 2
Shareholder Derivative and Corporate Governance Litigation........................ 9
Options Backdating Litigation...................................................................... 12
Corporate Takeover Litigation..................................................................... 12
Antitrust..................................................................................................... 15
Consumer Fraud and Privacy....................................................................... 16
Human Rights, Labor Practices, and Public Policy........................................ 20
Environment and Public Health.................................................................... 21
Pro Bono.................................................................................................... 22

Prominent Cases, Precedent-Setting Decisions, and Judicial Commendations

Prominent Cases.......................................................................................... 24
Precedent-Setting Decisions........................................................................ 33
Additional Judicial Commendations............................................................. 40

Attorney Biographies

Partners...................................................................................................... 48
Of Counsel................................................................................................. 130
Special Counsel.......................................................................................... 154
Forensic Accountants.................................................................................. 155

# INTRODUCTION

Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm") is a 200-lawyer firm with offices in Boca Raton, Chicago, Manhattan, Melville, Nashville, San Diego, San Francisco, Philadelphia, Washington, D.C., and Wilmington (www.rgrdlaw.com). The Firm is actively engaged in complex litigation, emphasizing securities, consumer, antitrust, insurance, healthcare, human rights, and employment discrimination class actions. The Firm's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys, who have successfully prosecuted thousands of class action lawsuits and numerous individual cases, recovering billions of dollars.

This successful track record stems from our experienced attorneys, including many who came to the Firm from federal or state law enforcement agencies. The Firm also includes several dozen former federal and state judicial clerks.

The Firm is committed to practicing law with the highest level of integrity in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to treat others with respect and dignity.

We strive to be good corporate citizens and work with a sense of global responsibility. Contributing to our communities and environment is important to us. We often take cases on a *pro bono* basis and are committed to the rights of workers, and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety, and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights and other social issues.

# PRACTICE AREAS AND SERVICES

## Securities Fraud

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – often with the help of their advisors, such as bankers, lawyers, and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Robbins Geller is the leader in the fight to protect investors from corporate securities fraud. We utilize a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Firm attorneys to lead roles in hundreds of complex class-action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors. Currently, Robbins Geller attorneys are lead or named counsel in hundreds of securities class action or large institutional-investor cases. Some notable current and past cases include:

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of *$7.2 billion* for the benefit of investors. *This is the largest securities class action recovery in history*.

- *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of *$1.575 billion* after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of damages. The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. *The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the eighth-largest settlement ever in a post-PSLRA securities fraud case.* According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

- *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.).  As sole lead counsel, Robbins Geller attorneys obtained a $1.2 billion settlement in the securities case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations."  The settlement resolves claims that defendants made false and misleading statements regarding Valeant's business and financial performance during the class period, attributing Valeant's dramatic growth in revenues and profitability to "innovative new marketing approaches" as part of a business model that was low risk and "durable and sustainable."  *Valeant* is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever.

- *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.).  As sole lead counsel, Robbins Geller attorneys zealously litigated the case arising out of ARCP's manipulative accounting practices and obtained a $1.025 billion settlement.  For five years, the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers.  The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.).  Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances.  The Firm obtained an $895 million recovery on behalf of UnitedHealth shareholders, and former CEO William A. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders, bringing the total recovery for the class to over $925 million, the largest stock option backdating recovery ever, and *a recovery that is more than four times larger than the next largest options backdating recovery*.  Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- *Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.).  Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001.  The Firm's attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.).  Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time.  The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities.  The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis.  As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

- *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-06351 (S.D.N.Y.).  On behalf of investors in bonds and preferred securities issued between 2006 and 2008, Robbins Geller and co-

counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company and Wachovia auditor KPMG LLP. *The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 25 largest securities class action recoveries in history*. The settlement is also one of the biggest securities class action recoveries arising from the credit crisis. The lawsuit focused on Wachovia's exposure to "pick-a-pay" loans, which the bank's offering materials said were of "pristine credit quality," but which were actually allegedly made to subprime borrowers, and which ultimately massively impaired the bank's mortgage portfolio. Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors on behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund. At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.

- *AOL Time Warner Cases I & II*, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cnty.). Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA.

- *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.). Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer common stock during the January 19, 2006 to January 23, 2009 class period. The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme. As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

- *In re Dynegy Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc., and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

- ***In re Qwest Commc'ns Int'l, Inc. Sec. Litig.***, No. 01-cv-1451 (D. Colo.).  In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice.  After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC.  In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- ***Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.***, No. 1:09-cv-03701 (S.D.N.Y.).  Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan.  The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action.  The result was achieved after more than five years of hard-fought litigation and an extensive investigation.

- ***Smilovits v. First Solar, Inc.***, No. 2:12-cv-00555 (D. Ariz.).  As sole lead counsel, Robbins Geller obtained a $350 million settlement in *Smilovits v. First Solar, Inc*.  The settlement, which was reached after a long legal battle and on the day before jury selection, resolves claims that First Solar violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  The settlement is the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

- ***NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.***, No. 1:08-cv-10783 (S.D.N.Y.).  As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders.  The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis.  The remarkable result was achieved following seven years of extensive litigation.  After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors.  Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

- ***Schuh v. HCA Holdings, Inc.***, No. 3:11-cv-01033 (M.D. Tenn.).  As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee.  Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions.  The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action.

- ***In re AT&T Corp. Sec. Litig.***, MDL No. 1399 (D.N.J.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock.  The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, one of the largest IPOs in American history.  After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.

- ***Silverman v. Motorola, Inc.***, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, Inc., ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement.

- ***City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.***, No. 5:12-cv-05162 (W.D. Ark.). Robbins Geller attorneys and lead plaintiff City of Pontiac General Employees' Retirement System achieved a $160 million settlement in a securities class action case arising from allegations published by *The New York Times* in an article released on April 21, 2012 describing an alleged bribery scheme that occurred in Mexico. The case charged that Wal-Mart portrayed itself to investors as a model corporate citizen that had proactively uncovered potential corruption and promptly reported it to law enforcement, when in truth, a former in-house lawyer had blown the whistle on Wal-Mart's corruption years earlier, and Wal-Mart concealed the allegations from law enforcement by refusing its own in-house and outside counsel's calls for an independent investigation. Robbins Geller "achieved an exceptional [s]ettlement with skill, perseverance, and diligent advocacy," said Judge Hickey when granting final approval.

- ***Bennett v. Sprint Nextel Corp.***, No. 2:09-cv-02122 (D. Kan.). As co-lead counsel, Robbins Geller obtained a $131 million recovery for a class of Sprint investors. The settlement, secured after five years of hard-fought litigation, resolved claims that former Sprint executives misled investors concerning the success of Sprint's ill-advised merger with Nextel and the deteriorating credit quality of Sprint's customer base, artificially inflating the value of Sprint's securities.

- ***In re LendingClub Sec. Litig.***, No. 3:16-cv-02627 (N.D. Cal.). Robbins Geller attorneys obtained a $125 million settlement for the court-appointed lead plaintiff Water and Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles and the class. The settlement resolved allegations that LendingClub promised investors an opportunity to get in on the ground floor of a revolutionary lending market fueled by the highest standards of honesty and integrity. The settlement ranked among the top ten largest securities recoveries ever in the Northern District of California.

- ***Knurr v. Orbital ATK, Inc.***, No. 1:16-cv-01031 (E.D. Va.). In the *Orbital* securities class action, Robbins Geller obtained court approval of a $108 million recovery for the class. The Firm succeeded in overcoming two successive motions to dismiss the case, and during discovery were required to file ten motions to compel, all of which were either negotiated to a resolution or granted in large part, which resulted in the production of critical evidence in support of plaintiffs' claims. Believed to be the fourth-largest securities class action settlement in the history of the Eastern District of Virginia, the settlement provides a recovery for investors that is more than ten times larger than the reported median recovery of estimated damages for all securities class action settlements in 2018.

- ***Hsu v. Puma Biotechnology***, No. SACV15-0865 (C.D. Cal.). After a two-week jury trial, Robbins Geller attorneys won a complete plaintiffs' verdict against both defendants on both claims, with the jury finding that Puma Biotechnology, Inc. and its CEO, Alan H. Auerbach, committed securities fraud. The Puma case is only the fifteenth securities class action case tried to a verdict since the Private Securities Litigation Reform Act was enacted in 1995.

- ***Marcus v. J.C. Penney Co., Inc.***, No. 13-cv-00736 (E.D. Tex.). Robbins Geller attorneys obtained a $97.5 million recovery on behalf of J.C. Penney shareholders. The result resolves claims that J.C. Penney and certain officers and directors made misstatements and/or omissions regarding the company's financial position that resulted in artificially inflated stock prices. Specifically, defendants failed to disclose and/or misrepresented adverse facts, including that J.C. Penney

would have insufficient liquidity to get through year-end and would require additional funds to make it through the holiday season, and that the company was concealing its need for liquidity so as not to add to its vendors' concerns.

- ***Monroe County Employees' Retirement System v. The Southern Company***, No. 1:17-cv-00241 (N.D. Ga.). As lead counsel, Robbins Geller obtained an $87.5 million settlement in a securities class action on behalf of plaintiffs Monroe County Employees' Retirement System and Roofers Local No. 149 Pension Fund. The settlement resolves claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant in Kemper County, Mississippi. Plaintiffs alleged that these misstatements caused The Southern Company's stock price to be artificially inflated during the class period. Prior to resolving the case, Robbins Geller uncovered critical documentary evidence and deposition testimony supporting plaintiffs' claims. In granting final approval of the settlement, the court praised Robbins Geller for its "hard-fought litigation in the Eleventh Circuit" and its "experience, reputation, and abilities of [its] attorneys," and highlighted that the firm is "well-regarded in the legal community, especially in litigating class-action securities cases

- ***Chicago Laborers Pension Fund v. Alibaba Grp. Holding Ltd.***, No. CIV535692 (Cal. Super. Ct., San Mateo Cnty.). Robbins Geller attorneys and co-counsel obtained a $75 million settlement in the Alibaba Group Holding Limited securities class action, resolving investors' claims that Alibaba violated the Securities Act of 1933 in connection with its September 2014 initial public offering. Chicago Laborers Pension Fund served as a plaintiff in the action.

- ***Luna v. Marvell Tech. Grp., Ltd.***, No. 3:15-cv-05447 (N.D. Cal.). In the *Marvell* litigation, Robbins Geller attorneys represented the Plumbers and Pipefitters National Pension Fund and obtained a $72.5 million settlement. The case involved claims that Marvell reported revenue and earnings during the class period that were misleading as a result of undisclosed pull-in and concession sales. The settlement represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors who purchased shares during the February 19, 2015 through December 7, 2015 class period.

- ***Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.***, No. 3:09-cv-00882 (M.D. Tenn.). In the *Psychiatric Solutions* case, Robbins Geller represented lead plaintiff and class representative Central States, Southeast and Southwest Areas Pension Fund in litigation spanning more than four years. Psychiatric Solutions and its top executives were accused of insufficiently staffing their in-patient hospitals, downplaying the significance of regulatory investigations and manipulating their malpractice reserves. Just days before trial was set to commence, attorneys from Robbins Geller achieved a $65 million settlement that was the fourth-largest securities recovery ever in the district and one of the largest in a decade.

- ***Plumbers & Pipefitters Nat'l Pension Fund v. Burns***, No. 3:05-cv-07393 (N.D. Ohio). After 11 years of hard-fought litigation, Robbins Geller attorneys secured a $64 million recovery for shareholders in a case that accused the former heads of Dana Corp. of securities fraud for trumpeting the auto parts maker's condition while it actually spiraled toward bankruptcy. The Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.

- ***Villella v. Chemical and Mining Company of Chile Inc.***, No. 1:15-cv-02106 (S.D.N.Y.) Robbins Geller attorneys, serving as lead consel, obtained a $62.5 million settlement against Sociedad

Química y Minera de Chile S.A. ("SQM"), a Chilean mining company. The case alleged that SQM violated the Securities Exchange Act of 1934 by issuing materially false and misleading statements regarding the company's failure to disclose that money from SQM was channeled illegally to electoral campaigns for Chilean politicians and political parties as far back as 2009. SQM had also filed millions of dollars' worth of fictitious tax receipts with Chilean authorities in order to conceal bribery payments from at least 2009 through fiscal 2014. Due to the company being based out of Chile and subject to Chilean law and rules, the Robbins Geller litigation team put together a multilingual litigation team with Chilean expertise. Depositions are considered unlawful in the country of Chile, so Robbins Geller successfully moved the court to compel SQM to bring witnesses to the United States.

- **In re BHP Billiton Ltd. Sec. Litig.**, No. 1:16-cv-01445 (S.D.N.Y.). As lead counsel, Robbins Geller obtained a $50 million class action settlement against BHP, a Australian-based mining company that was accused of failing to disclose significant safety problems at the Fundão iron-ore dam, in Brazil. The Firm achieved this result for lead plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System, on behalf of purchasers of the American Depositary Shares ("ADRs") of defendants BHP Billiton Limited and BHP Billiton Plc (together, "BHP") from September 25, 2014 to November 30, 2015.

- **In re St. Jude Med., Inc. Sec. Litig.**, No. 0:10-cv-00851 (D. Minn.). After four and a half years of litigation and mere weeks before the jury selection, Robbins Geller obtained a $50 million settlement on behalf of investors in medical device company St. Jude Medical. The settlement resolves accusations that St. Jude Medical misled investors by utilizing heavily discounted end-of-quarter bulk sales to meet quarterly expectations, which created a false picture of demand by increasing customer inventory due of St. Jude Medical devices. The complaint alleged that the risk of St. Jude Medical's reliance on such bulk sales manifested when it failed to meet its forecast guidance for the third quarter of 2009, which the company had reaffirmed only weeks earlier.

- **Deka Investment GmbH v. Santander Consumer USA Holdings Inc.**, No. 3:15-cv-02129 (N.D. Tex.). Robbins Geller and co-counsel secured a $47 million settlement in a securities class action against Santander Consumer USA Holdings Inc. ("SCUSA"). The case alleges that SCUSA, 2 of its officers, 10 of its directors, as well as 17 underwriters of its January 23, 2014 multi-billion dollar IPO violated §§11, 12(a)(2), and 15 of the Securities Act of 1933 as a result of their negligence in connection with misrepresentations in the prospectus and registration statement for the IPO ("Offering Documents"). The complaint also alleged that SCUSA and two of its officers violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 as a result of their fraud in issuing misleading statements in the IPO Offering Documents as well as in subsequent statements to investors.

- **Snap Inc. Securities Cases**, JCCP No. 4960 (Cal. Super. Ct., Los Angeles Cnty). Robbins Geller, along with co-counsel, reached a settlement in the Snap, Inc. securities class action, providing for the payment of $32,812,500 to eligible settlement class members. The securities class action sought remedies under §§11, 12(a)(2) and 15 of the Securities Act of 1933. The case alleged that Snap, certain Snap officers and directors, and the underwriters for Snap's Initial Public Offering ("IPO") were liable for materially false and misleading statements and omissions in the Registration Statement for the IPO, related to trends and uncertainties in Snap's growth metrics, a potential patent-infringement action, and stated risk factors.

Robbins Geller's securities practice is also strengthened by the existence of a strong appellate department, whose collective work has established numerous legal precedents. The securities practice also utilizes an

extensive group of in-house economic and damage analysts, investigators, and forensic accountants to aid in the prosecution of complex securities issues.

## Shareholder Derivative and Corporate Governance Litigation

The Firm's shareholder derivative and corporate governance practice is focused on preserving corporate assets and enhancing long-term shareowner value. Shareowner derivative actions are often brought by institutional investors to vindicate the rights of the corporation injured by its executives' misconduct, which can effect violations of the nation's securities, anti-corruption, false claims, cyber-security, labor, environmental, and/or health & safety laws.

Robbins Geller attorneys have aided Firm clients in significantly enhancing shareowner value by obtaining hundreds of millions of dollars in financial clawbacks and successfully negotiating corporate governance enhancements. Robbins Geller has worked with its institutional clients to address corporate misconduct such as options backdating, bribery of foreign officials, pollution, off-label marketing, and insider trading and related self-dealing. Additionally, the Firm works closely with noted corporate governance consultants Robert Monks and Richard Bennett and their firm, ValueEdge Advisors LLC, to shape corporate governance practices that will benefit shareowners.

Robbins Geller's efforts have conferred substantial benefits upon shareowners, and the market effect of these benefits measures in the billions of dollars. The Firm's significant achievements include:

- *City of Westland Police & Fire Ret. Sys. v. Stumpf (Wells Fargo Derivative Litigation)*, No. 3:11-cv-02369 (N.D. Cal.). Prosecuted shareholder derivative action on behalf of Wells Fargo & Co. alleging that Wells Fargo's executives allowed participation in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, *i.e.*, the execution and submission of false legal documents in courts across the country without verification of their truth or accuracy, and failed to disclose Wells Fargo's lack of cooperation in a federal investigation into the bank's mortgage and foreclosure practices. In settlement of the action, Wells Fargo agreed to provide $67 million in homeowner down-payment assistance, credit counseling, and improvements to its mortgage servicing system. The initiatives will be concentrated in cities severely impacted by the bank's foreclosure practices and the ensuing mortgage foreclosure crisis. Additionally, Wells Fargo agreed to change its procedures for reviewing shareholder proposals and a strict ban on stock pledges by Wells Fargo board members.

- *In re Ormat Techs., Inc. Derivative Litig.*, No. CV10-00759 (Nev. Dist. Ct., Washoe Cnty.). Robbins Geller brought derivative claims for breach of fiduciary duty and unjust enrichment against the directors and certain officers of Ormat Technologies, Inc., a leading geothermal and recovered energy power business. During the relevant time period, these Ormat insiders caused the company to engage in accounting manipulations that ultimately required restatement of the company's financial statements. The settlement in this action includes numerous corporate governance reforms designed to, among other things: (i) increase director independence; (ii) provide continuing education to directors; (iii) enhance the company's internal controls; (iv) make the company's board more independent; and (iv) strengthen the company's internal audit function.

- *In re Alphatec Holdings, Inc. Derivative S'holder Litig.*, No. 37-2010-00058586 (Cal. Super. Ct., San Diego Cnty.). Obtained sweeping changes to Alphatec's governance, including separation of the Chairman and CEO positions, enhanced conflict of interest procedures to address related-party transactions, rigorous director independence standards requiring that at least a majority of directors be outside independent directors, and ongoing director education and training.

- *In re Finisar Corp. Derivative Litig.*, No. C-06-07660 (N.D. Cal.).  Prosecuted shareholder derivative action on behalf of Finisar against certain of its current and former directors and officers for engaging in an alleged nearly decade-long stock option backdating scheme that was alleged to have inflicted substantial damage upon Finisar.  After obtaining a reversal of the district court's order dismissing the complaint for failing to adequately allege that a pre-suit demand was futile, Robbins Geller lawyers successfully prosecuted the derivative claims to resolution obtaining over $15 million in financial clawbacks for Finisar.  Robbins Geller attorneys also obtained significant changes to Finisar's stock option granting procedures and corporate governance.  As a part of the settlement, Finisar agreed to ban the repricing of stock options without first obtaining specific shareholder approval, prohibit the retrospective selection of grant dates for stock options and similar awards, limit the number of other boards on which Finisar directors may serve, require directors to own a minimum amount of Finisar shares, annually elect a Lead Independent Director whenever the position of Chairman and CEO are held by the same person, and require the board to appoint a Trading Compliance officer responsible for ensuring compliance with Finisar's insider trading policies.

- *Loizides v. Schramm (Maxwell Technology Derivative Litigation)*, No. 37-2010-00097953 (Cal. Super. Ct., San Diego Cnty.).  Prosecuted shareholder derivative claims arising from the company's alleged violations of the Foreign Corrupt Practices Act of 1977 ("FCPA").  As a result of Robbins Geller's efforts, Maxwell insiders agreed to adopt significant changes in Maxwell's internal controls and systems designed to protect Maxwell against future potential violations of the FCPA.  These corporate governance changes included establishing the following, among other things: a compliance plan to improve board oversight of Maxwell's compliance processes and internal controls; a clear corporate policy prohibiting bribery and subcontracting kickbacks, whereby individuals are accountable; mandatory employee training requirements, including the comprehensive explanation of whistleblower provisions, to provide for confidential reporting of FCPA violations or other corruption; enhanced resources and internal control and compliance procedures for the audit committee to act quickly if an FCPA violation or other corruption is detected; an FCPA and Anti-Corruption Compliance department that has the authority and resources required to assess global operations and detect violations of the FCPA and other instances of corruption; a rigorous ethics and compliance program applicable to all directors, officers, and employees, designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws; an executive-level position of Chief Compliance Officer with direct board-level reporting responsibilities, who shall be responsible for overseeing and managing compliance issues within the company; a rigorous insider trading policy buttressed by enhanced review and supervision mechanisms and a requirement that all trades are timely disclosed; and enhanced provisions requiring that business entities are only acquired after thorough FCPA and anti-corruption due diligence by legal, accounting, and compliance personnel at Maxwell.

- *In re SciClone Pharms., Inc. S'holder Derivative Litig.*, No. CIV 499030 (Cal. Super. Ct., San Mateo Cnty.).  Robbins Geller attorneys successfully prosecuted the derivative claims on behalf of nominal party SciClone Pharmaceuticals, Inc., resulting in the adoption of state-of-the-art corporate governance reforms.  The corporate governance reforms included the establishment of an FCPA compliance coordinator; the adoption of an FCPA compliance program and code; and the adoption of additional internal controls and compliance functions.

- *Policemen & Firemen Ret. Sys. of the City of Detroit v. Cornelison (Halliburton Derivative Litigation)*, No. 2009-29987 (Tex. Dist. Ct., Harris Cnty.).  Prosecuted shareholder derivative claims on behalf of Halliburton Company against certain Halliburton insiders for breaches of fiduciary duty arising from Halliburton's alleged violations of the FCPA.  In the settlement, Halliburton agreed, among other things, to adopt strict intensive controls and systems designed to detect and deter the payment of bribes and other improper payments to foreign officials, to

enhanced executive compensation clawback, director stock ownership requirements, a limitation on the number of other boards that Halliburton directors may serve, a lead director charter, enhanced director independence standards, and the creation of a management compliance committee.

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.).  In the *UnitedHealth* case, our client, CalPERS, obtained sweeping corporate governance improvements, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercises, as well as executive compensation reforms that tie pay to performance.  In addition, the class obtained $925 million, the largest stock option backdating recovery ever and four times the next largest options backdating recovery.

- *In re Fossil, Inc. Derivative Litig.*, No. 3:06-cv-01672 (N.D. Tex.).  The settlement agreement included the following corporate governance changes: declassification of elected board members; retirement of three directors and addition of five new independent directors; two-thirds board independence requirements; corporate governance guidelines providing for "Majority Voting" election of directors; lead independent director requirements; revised accounting measurement dates of options; addition of standing finance committee; compensation clawbacks; director compensation standards; revised stock option plans and grant procedures; limited stock option granting authority, timing, and pricing; enhanced education and training; and audit engagement partner rotation and outside audit firm review.

- *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Sinegal (Costco Derivative Litigation)*, No. 2:08-cv-01450 (W.D. Wash.).  The parties agreed to settlement terms providing for the following corporate governance changes: the amendment of Costco's bylaws to provide "Majority Voting" election of directors; the elimination of overlapping compensation and audit committee membership on common subject matters; enhanced Dodd-Frank requirements; enhanced internal audit standards and controls, and revised information-sharing procedures; revised compensation policies and procedures; revised stock option plans and grant procedures; limited stock option granting authority, timing, and pricing; and enhanced ethics compliance standards and training.

- *In re F5 Networks, Inc. Derivative Litig.*, No. C-06-0794 (W.D. Wash.).  The parties agreed to the following corporate governance changes as part of the settlement: revised stock option plans and grant procedures; limited stock option granting authority, timing, and pricing; "Majority Voting" election of directors; lead independent director requirements; director independence standards; elimination of director perquisites; and revised compensation practices.

- ***In re Community Health Sys., Inc. S'holder Derivative Litig.***, No. 3:11-cv-00489 (M.D. Tenn.). Robbins Geller obtained unprecedented corporate governance reforms on behalf of Community Health Systems, Inc. in a case against the company's directors and officers for breaching their fiduciary duties by causing Community Health to develop and implement admissions criteria that systematically steered patients into unnecessary inpatient admissions, in contravention of Medicare and Medicaid regulations. The governance reforms obtained as part of the settlement include two shareholder-nominated directors, the creation of a Healthcare Law Compliance Coordinator with specified qualifications and duties, a requirement that the board's compensation committee be comprised solely of independent directors, the implementation of a compensation clawback that will automatically recover compensation improperly paid to the company's CEO or CFO in the event of a restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy. In addition to these reforms, $60 million in financial relief was obtained, which is the largest shareholder derivative recovery ever in Tennessee and the Sixth Circuit.

## Options Backdating Litigation

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country in 2006. Robbins Geller was at the forefront of investigating and prosecuting options backdating derivative and securities cases. The Firm has recovered over $1 billion in damages on behalf of injured companies and shareholders.

- ***In re KLA-Tencor Corp. S'holder Derivative Litig.***, No. C-06-03445 (N.D. Cal.). After successfully opposing the special litigation committee of the board of directors' motion to terminate the derivative claims, Robbins Geller recovered $43.6 million in direct financial benefits for KLA-Tencor, including $33.2 million in cash payments by certain former executives and their directors' and officers' insurance carriers.

- ***In re Marvell Tech. Grp. Ltd. Derivative Litig.***, No. C-06-03894 (N.D. Cal.). Robbins Geller recovered $54.9 million in financial benefits, including $14.6 million in cash, for Marvell, in addition to extensive corporate governance reforms related to Marvell's stock option granting practices, board of directors' procedures, and executive compensation.

- ***In re KB Home S'holder Derivative Litig.***, No. 06-CV-05148 (C.D. Cal.). Robbins Geller served as co-lead counsel for the plaintiffs and recovered more than $31 million in financial benefits, including $21.5 million in cash, for KB Home, plus substantial corporate governance enhancements relating to KB Home's stock option granting practices, director elections, and executive compensation practices.

## Corporate Takeover Litigation

Robbins Geller has earned a reputation as the leading law firm in representing shareholders in corporate takeover litigation. Through its aggressive efforts in prosecuting corporate takeovers, the Firm has secured for shareholders billions of dollars of additional consideration as well as beneficial changes for shareholders in the context of mergers and acquisitions.

The Firm regularly prosecutes merger and acquisition cases post-merger, often through trial, to maximize the benefit for its shareholder class. Some of these cases include:

- *In re Tesla Motors, Inc. S'holder Litig.,* No. 12711-VCS (Del. Ch.). Robbins Geller, along with co-counsel, secured a $60 million partial settlement after nearly four years of litigation against Tesla. This partial settlement is one of the largest derivative recoveries in a stockholder action challenging a merger. This partial settlement resolves the claims brought against defendants Kimbal Musk, Antonio J. Gracias, Stephen T. Jurvetson, Brad W. Buss, Ira Ehrenpreis, and Robyn M. Denholm, but not the claims against defendant Elon Musk.

- *In re Kinder Morgan, Inc. S'holders Litig.,* No. 06-C-801 (Kan. Dist. Ct., Shawnee Cnty.). In the largest recovery ever for corporate takeover class action litigation, the Firm negotiated a settlement fund of $200 million in 2010.

- *In re Dole Food Co., Inc. S'holder Litig.,* No. 8703-VCL (Del. Ch.). Robbins Geller and co-counsel went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders. The litigation challenged the 2013 buyout of Dole by its billionaire Chief Executive Officer and Chairman, David H. Murdock. On August 27, 2015, the court issued a post-trial ruling that Murdock and fellow director C. Michael Carter – who also served as Dole's General Counsel, Chief Operating Officer, and Murdock's top lieutenant – had engaged in fraud and other misconduct in connection with the buyout and are liable to Dole's former stockholders for over $148 million, the largest trial verdict ever in a class action challenging a merger transaction.

- *Nieman v. Duke Energy Corp.,* No. 3:12-cv-00456 (W.D.N.C.). Robbins Geller, along with co-counsel, obtained a $146.25 million settlement on behalf of Duke Energy Corporation investors. The settlement resolves accusations that defendants misled investors regarding Duke's future leadership following its merger with Progress Energy, Inc., and specifically, their premeditated coup to oust William D. Johnson (CEO of Progress) and replace him with Duke's then-CEO, John Rogers. This historic settlement represents the largest recovery ever in a North Carolina securities fraud action, and one of the five largest recoveries in the Fourth Circuit.

- *In re Rural Metro Corp. S'holders Litig.,* No. 6350-VCL (Del. Ch.). Robbins Geller and co-counsel were appointed lead counsel in this case after successfully objecting to an inadequate settlement that did not take into account evidence of defendants' conflicts of interest. In a post-trial opinion, Delaware Vice Chancellor J. Travis Laster found defendant RBC Capital Markets, LLC liable for aiding and abetting Rural/Metro's board of directors' fiduciary duty breaches in the $438 million buyout of Rural/Metro, citing "the magnitude of the conflict between RBC's claims and the evidence." RBC was ordered to pay nearly $110 million as a result of its wrongdoing, the largest damage award ever obtained against a bank over its role as a merger adviser. The Delaware Supreme Court issued a landmark opinion affirming the judgment on November 30, 2015, *RBC Cap. Mkts., LLC v. Jervis,* 129 A.3d 816 (Del. 2015).

- *In re Del Monte Foods Co. S'holders Litig.,* No. 6027-VCL (Del. Ch.). Robbins Geller exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. For efforts in achieving these results, the Robbins Geller lawyers prosecuting the case were named Attorneys of the Year by *California Lawyer* magazine in 2012.

- *In re TD Banknorth S'holders Litig.,* No. 2557-VCL (Del. Ch.). After objecting to a modest recovery of just a few cents per share, the Firm took over the litigation and obtained a common fund settlement of $50 million.

- *In re Chaparral Res., Inc. S'holders Litig.*, No. 2633-VCL (Del. Ch.). After a full trial and a subsequent mediation before the Delaware Chancellor, the Firm obtained a common fund settlement of $41 million (or 45% increase above merger price) for both class and appraisal claims.

- *Laborers' Local #231 Pension Fund v. Websense, Inc.*, No. 37-2013-00050879-CU-BT-CTL (Cal. Super. Ct., San Diego Cnty.). Robbins Geller successfully obtained a record-breaking $40 million in *Websense*, which is believed to be the largest post-merger common fund settlement in California state court history. The class action challenged the May 2013 buyout of Websense by Vista Equity Partners (and affiliates) for $24.75 per share and alleged breach of fiduciary duty against the former Websense board of directors, and aiding and abetting against Websense's financial advisor, Merrill Lynch, Pierce, Fenner & Smith, Inc. Claims were pursued by the plaintiff in both California state court and the Delaware Court of Chancery.

- *In re Onyx Pharms., Inc. S'holder Litig.*, No. CIV523789 (Cal. Super. Ct., San Mateo Cnty.). Robbins Geller obtained $30 million in a case against the former Onyx board of directors for breaching its fiduciary duties in connection with the acquisition of Onyx by Amgen Inc. for $125 per share at the expense of shareholders. At the time of the settlement, it was believed to set the record for the largest post-merger common fund settlement in California state court history. Over the case's three years, Robbins Geller defeated defendants' motions to dismiss, obtained class certification, took over 20 depositions, and reviewed over one million pages of documents. Further, the settlement was reached just days before a hearing on defendants' motion for summary judgment was set to take place, and the result is now believed to be the second largest post-merger common fund settlement in California state court history.

- *Harrah's Entertainment*, No. A529183 (Nev. Dist. Ct., Clark Cnty.). The Firm's active prosecution of the case on several fronts, both in federal and state court, assisted Harrah's shareholders in securing an additional $1.65 billion in merger consideration.

- *In re Chiron S'holder Deal Litig.*, No. RG 05-230567 (Cal. Super. Ct., Alameda Cnty.). The Firm's efforts helped to obtain an additional $800 million in increased merger consideration for Chiron shareholders.

- *In re Dollar Gen. Corp. S'holder Litig.*, No. 07MD-1 (Tenn. Cir. Ct., Davidson Cnty.). As lead counsel, the Firm secured a recovery of up to $57 million in cash for former Dollar General shareholders on the eve of trial.

- *In re Prime Hosp., Inc. S'holders Litig.*, No. 652-N (Del. Ch.). The Firm objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm. The litigation yielded a common fund of $25 million for shareholders.

- *In re UnitedGlobalCom, Inc. S'holder Litig.*, No. 1012-VCS (Del. Ch.). The Firm secured a common fund settlement of $25 million just weeks before trial.

- *In re eMachines, Inc. Merger Litig.*, No. 01-CC-00156 (Cal. Super. Ct., Orange Cnty.). After four years of litigation, the Firm secured a common fund settlement of $24 million on the brink of trial.

- *In re PeopleSoft, Inc. S'holder Litig.*, No. RG-03100291 (Cal. Super. Ct., Alameda Cnty.). The Firm successfully objected to a proposed compromise of class claims arising from takeover defenses by PeopleSoft, Inc. to thwart an acquisition by Oracle Corp., resulting in shareholders receiving an increase of over $900 million in merger consideration.

- *ACS S'holder Litig.*, No. CC-09-07377-C (Tex. Cty. Ct., Dallas Cnty.). The Firm forced ACS's acquirer, Xerox, to make significant concessions by which shareholders would not be locked out of receiving more money from another buyer.

## Antitrust

Robbins Geller's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, market allocation, tying, and other anti-competitive conduct. The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization, market allocation, and tying cases throughout the United States.

- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.). Robbins Geller attorneys, serving as co-lead counsel on behalf of merchants, obtained a settlement amount of $5.54 billion. In approving the settlement, the court noted that Robbins Geller and co-counsel "demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required, litigating on behalf of a class of over 12 million for over fourteen years, across a changing legal landscape, significant motion practice, and appeal and remand. Class counsel's pedigree and efforts alone speak to the quality of their representation."

- *Dahl v. Bain Cap. Partners, LLC*, No. 07-cv-12388 (D. Mass). Robbins Geller attorneys served as co-lead counsel on behalf of shareholders in this antitrust action against the nation's largest private equity firms that colluded to restrain competition and suppress prices paid to shareholders of public companies in connection with leveraged buyouts. Robbins Geller attorneys recovered more than $590 million for the class from the private equity firm defendants, including Goldman Sachs Group Inc. and Carlyle Group LP.

- *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.). Robbins Geller attorneys prosecuted antitrust claims against 14 major banks and broker ICAP plc who were alleged to have conspired to manipulate the ISDAfix rate, the key interest rate for a broad range of interest rate derivatives and other financial instruments in contravention of the competition laws. The class action was brought on behalf of investors and market participants who entered into interest rate derivative transactions between 2006 and 2013. Final approval has been granted to settlements collectively yielding $504.5 million from all defendants.

- *In re Currency Conversion Fee Antitrust Litig.*, 01 MDL No. 1409 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel and recovered $336 million for a class of credit and debit cardholders. The court praised the Firm as "indefatigable," noting that the Firm's lawyers "vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

- *In re SSA Bonds Antitrust Litig.*, No. 1:16-cv-03711 (S.D.N.Y.). Robbins Geller attorneys are serving as co-lead counsel in a case against several of the world's largest banks and the traders of certain specialized government bonds. They are alleged to have entered into a wide-ranging price-fixing and bid-rigging scheme costing pension funds and other investors hundreds of millions. To date, three of the more than a dozen corporate defendants have settled for $95.5 million.

- *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 09 MDL No. 2007 (C.D. Cal.). Robbins Geller attorneys served as co-lead counsel in this multi-district litigation in which plaintiffs allege that defendants conspired to fix prices and allocate markets for automotive lighting products. The last defendants settled just before the scheduled trial, resulting in total settlements of more than $50 million. Commenting on the quality of representation, the court commended the Firm for

"expend[ing] substantial and skilled time and efforts in an efficient manner to bring this action to conclusion."

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 02 MDL No. 1486 (N.D. Cal.). Robbins Geller attorneys served on the executive committee in this multi-district class action in which a class of purchasers of dynamic random access memory (or DRAM) chips alleged that the leading manufacturers of semiconductor products fixed the price of DRAM chips from the fall of 2001 through at least the end of June 2002. The case settled for more than $300 million.

- *Microsoft I-V Cases*, JCCP No. 4106 (Cal. Super. Ct., San Francisco Cnty.). Robbins Geller attorneys served on the executive committee in these consolidated cases in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing, and spreadsheet markets. In a settlement approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

## Consumer Fraud and Privacy

In our consumer-based economy, working families who purchase products and services must receive truthful information so they can make meaningful choices about how to spend their hard-earned money. When financial institutions and other corporations deceive consumers or take advantage of unequal bargaining power, class action suits provide, in many instances, the only realistic means for an individual to right a corporate wrong.

Robbins Geller attorneys represent consumers around the country in a variety of important, complex class actions. Our attorneys have taken a leading role in many of the largest federal and state consumer fraud, privacy, environmental, human rights, and public health cases throughout the United States. The Firm is also actively involved in many cases relating to banks and the financial services industry, pursuing claims on behalf of individuals victimized by abusive telemarketing practices, abusive mortgage lending practices, market timing violations in the sale of variable annuities, and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act. Below are a few representative samples of our robust, nationwide consumer and privacy practice.

- *In re Nat'l Prescription Opiate Litig.* Robbins Geller serves on the Plaintiffs' Executive Committee to spearhead more than 2,900 federal lawsuits brought on behalf of governmental entities and other plaintiffs in the sprawling litigation concerning the nationwide prescription opioid epidemic. In reporting on the selection of the lawyers to lead the case, *The National Law Journal* reported that "[t]he team reads like a 'Who's Who' in mass torts."

- *Apple Inc. Device Performance Litigation*. Robbins Geller serves on the Plaintiffs' Executive Committee to advance judicial interests of efficiency and protect the interests of the proposed class in the *Apple* litigation. The case alleges Apple misrepresented its iPhone devices and the nature of updates to its mobile operating system (iOS), which allegedly included code that significantly reduced the performance of older-model iPhones and forced users to incur expenses replacing these devices or their batteries.

- *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.* Robbins Geller served as co-lead class counsel in a case against Mylan Pharmaceuticals and Pfizer alleging anti-competitive behavior that allowed the price of ubiquitous, life-saving EpiPen auto-injector devices to rise over 600%, resulting in inflated prices for American families. Two settlements totaling $609 million were reached after five years of litigation and weeks prior to trial.

- ***Cordova v. Greyhound Lines, Inc.***  Robbins Geller represented California bus passengers *pro bono* in a landmark consumer and civil rights case against Greyhound for subjecting them to discriminatory immigration raids.  Robbins Geller achieved a watershed court ruling that a private company may be held liable under California law for allowing border patrol to harass and racially profile its customers.  The case heralds that Greyhound passengers do not check their rights and dignity at the bus door and has had an immediate impact, not only in California but nationwide. Within weeks of Robbins Geller filing the case, Greyhound added "know your rights" information to passengers to its website and on posters in bus stations around the country, along with adopting other business reforms.

- ***In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.***  As part of the Plaintiffs' Steering Committee, Robbins Geller reached a series of settlements on behalf of purchasers, lessees, and dealers that total well over $17 billion, the largest settlement in history, concerning illegal "defeat devices" that Volkswagen installed on many of its diesel-engine vehicles.  The device tricked regulators into believing the cars were complying with emissions standards, while the cars were actually emitting between 10 and 40 times the allowable limit for harmful pollutants.

- ***In re Facebook Biometric Info. Privacy Litig.***, No. 3:15-cv-03747 (N.D. Cal.).  Robbins Geller served as co-lead class counsel in a cutting-edge certified class action, securing a record-breaking $650 million all-cash settlement, the largest privacy settlement in history.  The case concerned Facebook's alleged privacy violations through its collection of its users' biometric identifiers without informed consent through its "Tag Suggestions" feature, which uses proprietary facial recognition software to extract from user-uploaded photographs the unique biometric identifiers (*i.e.*, graphical representations of facial features, also known as facial geometry) associated with people's faces and identify who they are.  The Honorable James Donato called the settlement "a groundbreaking settlement in a novel area" and praised the unprecedented 22% claims rate as "pretty phenomenal" and "a pretty good day in class settlement history."

- ***Yahoo Data Breach Class Action***.  Robbins Geller helped secure final approval of a $117.5 million settlement in a class action lawsuit against Yahoo, Inc. arising out of Yahoo's reckless disregard for the safety and security of its customers' personal, private information.  In September 2016, Yahoo revealed that personal information associated with at least 500 million user accounts, including names, email addresses, telephone numbers, dates of birth, hashed passwords, and security questions and answers, was stolen from Yahoo's user database in late 2014.  The company made another announcement in December 2016 that personal information associated with more than one billion user accounts was extracted in August 2013.  Ten months later, Yahoo announced that the breach in 2013 actually affected all three billion existing accounts.  This was the largest data breach in history, and caused severe financial and emotional damage to Yahoo account holders. In 2017, Robbins Geller was appointed to the Plaintiffs' Executive Committee charged with overseeing the litigation.

- ***Trump University***.  After six and a half years of tireless litigation and on the eve of trial, Robbins Geller, serving as co-lead counsel, secured a historic recovery on behalf of Trump University students around the country.  The settlement provides $25 million to approximately 7,000 consumers, including senior citizens who accessed retirement accounts and maxed out credit cards to enroll in Trump University.  The extraordinary result means individual class members are eligible for upwards of $35,000 in restitution.  The settlement resolves claims that President Donald J. Trump and Trump University violated federal and state laws by misleadingly marketing "Live Events" seminars and mentorships as teaching Trump's "real-estate techniques" through his "hand-picked" "professors" at his so-called "university."  Robbins Geller represented the class on a *pro bono* basis.

- ***In re Morning Song Bird Food Litig.***  Robbins Geller obtained final approval of a settlement in a civil Racketeer Influenced and Corrupt Organizations Act consumer class action against The Scotts Miracle-Gro Company and its CEO James Hagedorn.  The settlement of up to $85 million provides full refunds to consumers around the country and resolves claims that Scotts Miracle-Gro knowingly sold wild bird food treated with pesticides that are hazardous to birds.  In approving the settlement, Judge Houston commended Robbins Gelller's "skill and quality of work [as] extraordinary" and the case as "aggressively litigated."  The Robbins Geller team battled a series of dismissal motions before achieving class certification for the plaintiffs in March 2017, with the court finding that "Plaintiffs would not have purchased the bird food if they knew it was poison."  Defendants then appealed the class certification to the Ninth Circuit, which was denied, and then tried to have the claims from non-California class members thrown out, which was also denied.

- ***Bank Overdraft Fees Litigation***.  The banking industry charges consumers exorbitant amounts for "overdraft" of their checking accounts, even if the customer did not authorize a charge beyond the available balance and even if the account would not have been overdrawn had the transactions been ordered chronologically as they occurred – that is, banks reorder transactions to maximize such fees.  The Firm brought lawsuits against major banks to stop this practice and recover these false fees.  These cases have recovered over $500 million thus far from a dozen banks and we continue to investigate other banks engaging in this practice.

- ***Visa and MasterCard Fees***.  After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer-protection verdicts ever awarded in the United States.  The Firm's attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from cardholders.  The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- ***Sony Gaming Networks & Customer Data Security Breach Litigation.***  The Firm served as a member of the Plaintiffs' Steering Committee, helping to obtain a precedential opinion denying in part Sony's motion to dismiss plaintiffs' claims involving the breach of Sony's gaming network, leading to a $15 million settlement.

- ***Tobacco Litigation***.  Robbins Geller attorneys have led the fight against Big Tobacco since 1991.  As an example, Robbins Geller attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles, and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states.  In 1992, Robbins Geller attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

- ***Garment Workers Sweatshop Litigation***.  Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target, and J.C. Penney.  In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions, one which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and another which alleged violations of California's Unfair Practices Law by the U.S. retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.***  Robbins Geller serves on the Plaintiffs' Steering Committee in *Intel*, a massive multidistrict litigation pending in the United States District Court for the District of Oregon.  *Intel* concerns serious security vulnerabilities – known as "Spectre" and "Meltdown" – that infect nearly all of Intel's x86 processors manufactured and sold since 1995, the patching of which results in processing speed degradation of the impacted computer, server or mobile device.

- ***West Telemarketing Case***.  Robbins Geller attorneys secured a $39 million settlement for class members caught up in a telemarketing scheme where consumers were charged for an unwanted membership program after purchasing Tae-Bo exercise videos.  Under the settlement, consumers were entitled to claim between one and one-half to three times the amount of all fees they unknowingly paid.

- ***Dannon Activia®***.  Robbins Geller attorneys secured the largest ever settlement for a false advertising case involving a food product.  The case alleged that Dannon's advertising for its Activia® and DanActive® branded products and their benefits from "probiotic" bacteria were overstated.  As part of the nationwide settlement, Dannon agreed to modify its advertising and establish a fund of up to $45 million to compensate consumers for their purchases of Activia® and DanActive®.

- ***Mattel Lead Paint Toys***.  In 2006-2007, toy manufacturing giant Mattel and its subsidiary Fisher-Price announced the recall of over 14 million toys made in China due to hazardous lead and dangerous magnets.  Robbins Geller attorneys filed lawsuits on behalf of millions of parents and other consumers who purchased or received toys for children that were marketed as safe but were later recalled because they were dangerous.  The Firm's attorneys reached a landmark settlement for millions of dollars in refunds and lead testing reimbursements, as well as important testing requirements to ensure that Mattel's toys are safe for consumers in the future.

- ***Tenet Healthcare Cases***.  Robbins Geller attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals.  The Firm's attorneys represented uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," which resulted in price gouging of the uninsured.  The case was settled with Tenet changing its practices and making refunds to patients.

- ***Pet Food Products Liability Litigation***.  Robbins Geller served as co-lead counsel in this massive,

100+ case products liability MDL in the District of New Jersey concerning the death of and injury to thousands of the nation's cats and dogs due to tainted pet food. The case settled for $24 million.

## Human Rights, Labor Practices, and Public Policy

Robbins Geller attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights. These include:

- ***Does I v. The Gap, Inc.***, No. 01 0031 (D. N. Mar. I.). In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target, and J.C. Penney. In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I v. Advance Textile Corp.***, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and ***UNITE v. The Gap, Inc.***, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Liberty Mutual Overtime Cases***, No. JCCP 4234 (Cal. Super. Ct., Los Angeles Cnty.). Robbins Geller attorneys served as co-lead counsel on behalf of 1,600 current and former insurance claims adjusters at Liberty Mutual Insurance Company and several of its subsidiaries. Plaintiffs brought the case to recover unpaid overtime compensation and associated penalties, alleging that Liberty Mutual had misclassified its claims adjusters as exempt from overtime under California law. After 13 years of complex and exhaustive litigation, Robbins Geller secured a settlement in which Liberty Mutual agreed to pay $65 million into a fund to compensate the class of claims adjusters for unpaid overtime. The Liberty Mutual action is one of a few claims adjuster overtime actions brought in California or elsewhere to result in a successful outcome for plaintiffs since 2004.

- ***Veliz v. Cintas Corp.***, No. 5:03-cv-01180 (N.D. Cal.). Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that any misconduct was protected by the First Amendment, finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

Shareholder derivative litigation brought by Robbins Geller attorneys at times also involves stopping anti-union activities, including:

- **Southern Pacific/Overnite**.  A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- **Massey Energy**.  A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million-dollar penalties.

- **Crown Petroleum**.  A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

## Environment and Public Health

Robbins Geller attorneys have also represented plaintiffs in class actions related to environmental law. The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs").  The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds.  Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Robbins Geller have been involved in several other significant environmental cases, including:

- **Public Citizen v. U.S. D.O.T.**  Robbins Geller attorneys represented a coalition of labor, environmental, industry, and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO, and California Trucking Industry in a challenge to a decision by the Bush administration to lift a Congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act.  The suit was dismissed by the United States Supreme Court, the court holding that because the D.O.T. lacked discretion to prevent crossborder trucking, an environmental assessment was not required.

- **Sierra Club v. AK Steel**.  Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, the Resource Conservation Recovery Act, and the Clean Water Act.

- **MTBE Litigation**.  Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- **Exxon Valdez**.  Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- **Avila Beach**.  A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avila Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, and the Resource Conservation and Recovery Act and state laws such as California's Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations.  Companies can be found liable for negligence, trespass, or intentional environmental damage, be forced to pay for reparations, and to come into

compliance with existing laws. Prominent cases litigated by Robbins Geller attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and litigation involving the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

Robbins Geller attorneys have led the fight against Big Tobacco since 1991. As an example, Robbins Geller attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles, and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Robbins Geller attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

## Pro Bono

Robbins Geller provides counsel to those unable to afford legal representation as part of a continuous and longstanding commitment to the communities in which it serves. Over the years the Firm has dedicated a considerable amount of time, energy, and a full range of its resources for many *pro bono* and charitable actions.

Robbins Geller has been honored for its *pro bono* efforts by the California State Bar (including a nomination for the President's Pro Bono Law Firm of the Year award) and the San Diego Volunteer Lawyer's Program, among others.

Some of the Firm's and its attorneys' *pro bono* and charitable actions include:

- Representing public school children and parents in Tennessee challenging the state's private school voucher law, known as the Education Savings Account (ESA) Pilot Program. Robbins Geller helped achieve favorable rulings enjoining implementation of the ESA for violating the Home Rule provision of the Tennessee Constitution, which prohibits the General Assembly from passing laws that target specific counties without local approval.

- Representing California bus passengers *pro bono* in a landmark consumer and civil rights case against Greyhound for subjecting them to discriminatory immigration raids. Robbins Geller achieved a watershed court ruling that a private company may be held liable under California law for allowing border patrol to harass and racially profile its customers. The case heralds that Greyhound passengers do not check their rights and dignity at the bus door and has had an immediate impact, not only in California but nationwide. Within weeks of Robbins Geller filing the case, Greyhound added "know your rights" information to passengers to its website and on posters in bus stations around the country, along with adopting other business reforms.

- Working with the Homeless Action Center (HAC) to provide no-cost, barrier-free, culturally competent legal representation that makes it possible for people who are homeless (or at risk of becoming homeless) to access social safety net programs that help restore dignity and provide sustainable income, healthcare, mental health treatment, and housing. Based in Oakland and Berkeley, the non-profit is the only program in the Bay Area that specializes in legal services to those who are chronically homeless. In 2016, HAC provided assistance to 1,403 men and 936 women, and 1,691 cases were completed. An additional 1,357 cases were still pending when the year ended. The results include 512 completed SSI cases with a success rate of 87%.

- Representing Trump University students in two class actions against President Donald J. Trump. The historic settlement provides $25 million to approximately 7,000 consumers. This means individual class members are eligible for upwards of $35,000 in restitution – an extraordinary result.

- Representing children diagnosed with Autism Spectrum Disorder, as well as children with significant disabilities, in New York to remedy flawed educational policies and practices that cause substantial harm to these and other similar children year after year.

- Representing 19 San Diego County children diagnosed with Autism Spectrum Disorder in their appeal of the San Diego Regional Center's termination of funding for a crucial therapy. The victory resulted in a complete reinstatement of funding and set a precedent that allows other children to obtain the treatments they need.

- Serving as Northern California and Hawaii District Coordinator for the United States Court of Appeals for the Ninth Circuit's Pro Bono program since 1993.

- Representing the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the U.S. Supreme Court.

- Obtaining political asylum, after an initial application had been denied, for an impoverished Somali family whose ethnic minority faced systematic persecution and genocidal violence in Somalia, as well as forced female mutilation.

- Working with the ACLU in a class action filed on behalf of welfare applicants subject to San Diego County's "Project 100%" program. Relief was had when the County admitted that food-stamp eligibility could not hinge upon the Project 100% "home visits," and again when the district court ruled that unconsented "collateral contacts" violated state regulations. The decision was noted by the *Harvard Law Review*, *The New York Times*, and *The Colbert Report*.

- Filing numerous *amicus curiae* briefs on behalf of religious organizations and clergy that support civil rights, oppose government-backed religious-viewpoint discrimination, and uphold the American traditions of religious freedom and church-state separation.

- Serving as *amicus* counsel in a Ninth Circuit appeal from a Board of Immigration Appeals deportation decision. In addition to obtaining a reversal of the BIA's deportation order, the Firm consulted with the Federal Defenders' Office on cases presenting similar fact patterns, which resulted in a precedent-setting *en banc* decision from the Ninth Circuit resolving a question of state and federal law that had been contested and conflicted for decades.

# PROMINENT CASES, PRECEDENT-SETTING DECISIONS, AND JUDICIAL COMMENDATIONS

## Prominent Cases

Over the years, Robbins Geller attorneys have obtained outstanding results in some of the most notorious and well-known cases, frequently earning judicial commendations for the quality of their representation.

- ***In re Enron Corp. Sec. Litig.***, No. H-01-3624 (S.D. Tex.). Investors lost billions of dollars as a result of the massive fraud at Enron. In appointing Robbins Geller lawyers as sole lead counsel to represent the interests of Enron investors, the court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of ***$7.2 billion*** for the benefit of investors. ***This is the largest securities class action recovery in history.***

  The court overseeing this action had utmost praise for Robbins Geller's efforts and stated that "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

  The court further commented: "[I]n the face of extraordinary obstacles, the skills, expertise, commitment, and tenacity of [Robbins Geller] in this litigation cannot be overstated. Not to be overlooked are the unparalleled results, . . . which demonstrate counsel's clearly superlative litigating and negotiating skills." *Id*. at 789.

  The court stated that the Firm's attorneys "are to be commended for their zealousness, their diligence, their perseverance, their creativity, the enormous breadth and depth of their investigations and analysis, and their expertise in all areas of securities law on behalf of the proposed class." *Id*.

  In addition, the court noted, "This Court considers [Robbins Geller] 'a lion' at the securities bar on the national level," noting that the Lead Plaintiff selected Robbins Geller because of the Firm's "outstanding reputation, experience, and success in securities litigation nationwide." *Id*. at 790.

  The court further stated that "Lead Counsel's fearsome reputation and successful track record undoubtedly were substantial factors in . . . obtaining these recoveries." *Id*.

  Finally, Judge Harmon stated: "As this Court has explained [this is] an extraordinary group of attorneys who achieved the largest settlement fund ever despite the great odds against them." *Id*. at 828.

- ***Jaffe v. Household Int'l, Inc.***, No. 02-C-05893 (N.D. Ill). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of ***$1.575 billion*** after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of

damages.  The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. *The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the eighth-largest settlement ever in a post-PSLRA securities fraud case.* According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

In approving the settlement, the Honorable Jorge L. Alonso noted the team's "skill and determination" while recognizing that "Lead Counsel prosecuted the case vigorously and skillfully over 14 years against nine of the country's most prominent law firms" and "achieved an exceptionally significant recovery for the class."  The court added that the team faced "significant hurdles" and "uphill battles" throughout the case and recognized that "[c]lass counsel performed a very high-quality legal work in the context of a thorny case in which the state of the law has been and is in flux."  The court succinctly concluded that the settlement was "a spectacular result for the class."  *Jaffe v. Household Int'l, Inc.*, No. 02-C-5892, 2016 U.S. Dist. LEXIS 156921, at *8 (N.D. Ill. Nov. 10, 2016); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893, Transcript at 56, 65 (N.D. Ill. Oct. 20, 2016).

- *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.).  As sole lead counsel, Robbins Geller attorneys obtained a $1.2 billion settlement in the securities case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations."  The settlement resolves claims that defendants made false and misleading statements regarding Valeant's business and financial performance during the class period, attributing Valeant's dramatic growth in revenues and profitability to "innovative new marketing approaches" as part of a business model that was low risk and "durable and sustainable." *Valeant* is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever.

- *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.).  As sole lead counsel, Robbins Geller attorneys zealously litigated the case arising out of ARCP's manipulative accounting practices and obtained a $1.025 billion settlement.  For five years, the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and Securities Act of 1933, involving seven different stock or debt offerings and two mergers.  The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

In approving the settlement, the Honorable Alvin K. Hellerstein lauded the Robbins Geller litigation team, noting: "My own observation is that plaintiffs' representation is adequate and that the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller].  At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.).  In the *UnitedHealth* case, Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances.  For example, in 2006, the issue of high-level executives backdating stock options made national headlines.  During that time, many law firms, including Robbins Geller, brought shareholder derivative lawsuits against the companies' boards of directors for breaches of their fiduciary duties or for improperly granting backdated options.  Rather than pursuing a shareholder derivative case, the Firm filed a securities fraud class action against the company on behalf of CalPERS.  In doing so, Robbins Geller faced significant and unprecedented legal

obstacles with respect to loss causation, *i.e.*, that defendants' actions were responsible for causing the stock losses. Despite these legal hurdles, Robbins Geller obtained an $895 million recovery on behalf of the UnitedHealth shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders. The total recovery for the class was over $925 million, the largest stock option backdating recovery ever, and *a recovery that is more than four times larger than the next largest options backdating recovery*. Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- *Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico, and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Robbins Geller attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.). Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time. The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities. The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis. As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

  In approving the settlement, Judge Mariana R. Pfaelzer repeatedly complimented plaintiffs' attorneys, noting that it was "beyond serious dispute that Class Counsel has vigorously prosecuted the Settlement Actions on both the state and federal level over the last six years." Judge Pfaelzer also commented that "[w]ithout a settlement, these cases would continue indefinitely, resulting in significant risks to recovery and continued litigation costs. It is difficult to understate the risks to recovery if litigation had continued." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302, 2013 U.S. Dist. LEXIS 179190, at *44, *56 (C.D. Cal. Dec. 5, 2013).

  Judge Pfaelzer further noted that the proposed $500 million settlement represents one of the "largest MBS class action settlements to date. Indeed, this settlement easily surpasses the next largest . . . MBS settlement." *Id.* at *59.

- *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-06351 (S.D.N.Y.). In litigation over bonds and preferred securities, issued by Wachovia between 2006 and 2008, Robbins Geller and co-counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company ($590 million) and Wachovia auditor KPMG LLP ($37 million). *The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 25 largest securities class action recoveries in history*. The settlement is also one of the biggest securities class action recoveries arising from the credit crisis.

As alleged in the complaint, the offering materials for the bonds and preferred securities misstated and failed to disclose the true nature and quality of Wachovia's mortgage loan portfolio, which exposed the bank and misled investors to tens of billions of dollars in losses on mortgage-related assets.  In reality, Wachovia employed high-risk underwriting standards and made loans to subprime borrowers, contrary to the offering materials and their statements of "pristine credit quality."  Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- ***In re Cardinal Health, Inc. Sec. Litig.***, No. C2-04-575 (S.D. Ohio).  As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors.  On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, the Firm aggressively pursued class claims and won numerous courtroom victories, including a favorable decision on defendants' motion to dismiss.  *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006).  At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.  Judge Marbley commented: "[T]his is an extraordinary settlement relative to all the other settlements in cases of this nature and certainly cases of this magnitude. . . .  This was an outstanding settlement. . . .  [I]n most instances, if you've gotten four cents on the dollar, you've done well.  You've gotten twenty cents on the dollar, so that's been extraordinary.  *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-CV-575, Transcript at 16, 32 (S.D. Ohio Oct. 19, 2007).  Judge Marbley further stated:

> The quality of representation in this case was superb.  Lead Counsel, [Robbins Geller], are nationally recognized leaders in complex securities litigation class actions.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.  Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

  *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).

- ***AOL Time Warner Cases I & II***, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cnty.).  Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online.  Robbins Geller attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue.  After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial.  The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- ***Abu Dhabi Commercial Bank v. Morgan Stanley & Co.***, No. 1:08-cv-07508-SAS-DCF (S.D.N.Y.), and ***King County, Washington v. IKB Deutsche Industriebank AG***, No. 1:09-cv-08387-SAS (S.D.N.Y.). The Firm represented multiple institutional investors in successfully pursuing recoveries from two failed structured investment vehicles, each of which had been rated "AAA" by Standard & Poors and Moody's, but which failed fantastically in 2007. The matter settled just prior to trial in 2013. This result was only made possible after Robbins Geller lawyers beat back the rating agencies' longtime argument that ratings were opinions protected by the First Amendment.

- ***In re HealthSouth Corp. Sec. Litig.***, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA. HealthSouth and its financial advisors perpetrated one of the largest and most pervasive frauds in the history of U.S. healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions. In March 2009, Judge Karon Bowdre commented in the *HealthSouth* class certification opinion: "The court has had many opportunities since November 2001 to examine the work of class counsel and the supervision by the Class Representatives. The court finds both to be far more than adequate." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 275 (N.D. Ala. 2009).

- ***In re Facebook Biometric Info. Privacy Litig.***, No. 3:15-cv-03747 (N.D. Cal.). Robbins Geller served as co-lead class counsel in a cutting-edge certified class action, securing a record-breaking $650 million all-cash settlement, the largest privacy settlement in history. The case concerned Facebook's alleged privacy violations through its collection of its users' biometric identifiers without informed consent through its "Tag Suggestions" feature, which uses proprietary facial recognition software to extract from user-uploaded photographs the unique biometric identifiers (*i.e.*, graphical representations of facial features, also known as facial geometry) associated with people's faces and identify who they are. The Honorable James Donato called the settlement "a groundbreaking settlement in a novel area" and praised the unprecedented 22% claims rate as "pretty phenomenal" and "a pretty good day in class settlement history."

- ***In re Dynegy Inc. Sec. Litig.***, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc., and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Robbins Geller attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

- ***Jones v. Pfizer Inc.***, No. 1:10-cv-03864 (S.D.N.Y.). Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer common stock during the January 19, 2006 to January 23, 2009 class period. The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme. As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

In approving the settlement, United States District Judge Alvin K. Hellerstein commended the Firm, noting that "[w]ithout the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems. So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . . You did a really good job. Congratulations."

- *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased Qwest securities. In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan. The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action. The result was achieved after more than five years of hard-fought litigation and an extensive investigation. In granting approval of the settlement, the court stated the following about Robbins Geller attorneys litigating the case: "[T]here is no question in my mind that this is a very good result for the class and that the plaintiffs' counsel fought the case very hard with extensive discovery, a lot of depositions, several rounds of briefing of various legal issues going all the way through class certification."

- *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz.). As sole lead counsel, Robbins Geller obtained a $350 million settlement in *Smilovits v. First Solar, Inc.* The settlement, which was reached after a long legal battle and on the day before jury selection, resolves claims that First Solar violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. The settlement is the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.). As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders. The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis. The remarkable result was achieved following seven years of extensive litigation. After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors. Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

In approving the settlement, the Honorable Loretta A. Preska of the Southern District of New York complimented Robbins Geller attorneys, noting:

> Counsel, thank you for your papers. They were, by the way, extraordinary

PROMINENT CASES, PRECEDENT-SETTING DECISIONS,
AND JUDICIAL COMMENDATIONS

papers in support of the settlement, and I will particularly note Professor Miller's declaration in which he details the procedural aspects of the case and then speaks of plaintiffs' counsel's success in the Second Circuit essentially changing the law.

I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute.

*       *       *

Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job.

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783, Transcript at 10-11 (S.D.N.Y. May 2, 2016).

- *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action. At the hearing on final approval of the settlement, the Honorable Kevin H. Sharp described Robbins Geller attorneys as "gladiators" and commented: "Looking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this." *Schuh v. HCA Holdings, Inc.*, No. 3:11-CV-01033, Transcript at 12-13 (M.D. Tenn. Apr. 11, 2016).

- *Silverman v. Motorola, Inc.*, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement. In May 2012, the Honorable Amy J. St. Eve of the Northern District of Illinois commented: "The representation that [Robbins Geller] provided to the class was significant, both in terms of quality and quantity." *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *11 (N.D. Ill. May 7, 2012), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

In affirming the district court's award of attorneys' fees, the Seventh Circuit noted that "no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, one of the largest IPOs in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the court stated the following about the Robbins Geller attorneys handling the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization.  The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court.  Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

*In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- ***In re Dollar Gen. Corp. Sec. Litig.***, No. 01-CV-00388 (M.D. Tenn.).  Robbins Geller attorneys served as lead counsel in this case in which the Firm recovered $172.5 million for investors.  The *Dollar General* settlement was the largest shareholder class action recovery ever in Tennessee.

- ***Carpenters Health & Welfare Fund v. Coca-Cola Co.***, No. 00-CV-2838 (N.D. Ga.).  As co-lead counsel representing Coca-Cola shareholders, Robbins Geller attorneys obtained a recovery of $137.5 million after nearly eight years of litigation.  Robbins Geller attorneys traveled to three continents to uncover the evidence that ultimately resulted in the settlement of this hard-fought litigation.  The case concerned Coca-Cola's shipping of excess concentrate at the end of financial reporting periods for the sole purpose of meeting analyst earnings expectations, as well as the company's failure to properly account for certain impaired foreign bottling assets.

- ***Schwartz v. TXU Corp.***, No. 02-CV-2243 (N.D. Tex.).  As co-lead counsel, Robbins Geller attorneys obtained a recovery of over $149 million for a class of purchasers of TXU securities.  The recovery compensated class members for damages they incurred as a result of their purchases of TXU securities at inflated prices.  Defendants had inflated the price of these securities by concealing the fact that TXU's operating earnings were declining due to a deteriorating gas pipeline and the failure of the company's European operations.

- ***In re Doral Fin. Corp. Sec. Litig.***, 05 MDL No. 1706 (S.D.N.Y.).  In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement, finding in his order:

  > The services provided by Lead Counsel [Robbins Geller] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation.  Such efficiency and effectiveness supports the requested fee percentage.

  > Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . .  Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.

  > . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . .  The ability of [Robbins Geller] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation . . . .

  *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706, Order at 4-5 (S.D.N.Y. July 17, 2007).

- ***In re Exxon Valdez***, No. A89 095 Civ. (D. Alaska), and ***In re Exxon Valdez Oil Spill Litig.***, No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.).  Robbins Geller attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989.  The jury awarded hundreds of millions in compensatory damages, as well as $5 billion in punitive damages (the latter were later reduced by the U.S. Supreme Court to $507 million).

- ***Mangini v. R.J. Reynolds Tobacco Co.***, No. 939359 (Cal. Super. Ct., San Francisco Cnty.).  In this case, R.J. Reynolds admitted that "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- ***Does I v. The Gap, Inc.***, No. 01 0031 (D. N. Mar. I.).  In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target, and J.C. Penney.  In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: ***Does I v. Advance Textile Corp.***, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and ***UNITE v. The Gap, Inc.***, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts in bringing about the precedent-setting settlement of the actions.

- ***Hall v. NCAA (Restricted Earnings Coach Antitrust Litigation)***, No. 94-2392 (D. Kan.).  Robbins

Geller attorneys were lead counsel and lead trial counsel for one of three classes of coaches in these consolidated price-fixing actions against the National Collegiate Athletic Association.  On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn.).  Robbins Geller attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- *In re Honeywell Int'l, Inc. Sec. Litig.*, No. 00-cv-03605 (D.N.J.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased Honeywell common stock.  The case charged Honeywell and its top officers with violations of the federal securities laws, alleging the defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc. and that defendants falsified Honeywell's financial statements.  After extensive discovery, Robbins Geller attorneys obtained a $100 million settlement for the class.

- *Schwartz v. Visa Int'l*, No. 822404-4 (Cal. Super. Ct., Alameda Cnty.).  After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  Robbins Geller attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- *Thompson v. Metro. Life Ins. Co.*, No. 00-cv-5071 (S.D.N.Y.).  Robbins Geller attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, MDL No. 1061 (D.N.J.).  In one of the first cases of its kind, Robbins Geller attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

## Precedent-Setting Decisions

Robbins Geller attorneys operate at the vanguard of complex class action of litigation.  Our work often changes the legal landscape, resulting in an environment that is more-favorable for obtaining recoveries for our clients.

- *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018), *cert. denied*, 588 U.S. __ (2019).  In July 2018, the Ninth Circuit ruled in plaintiffs' favor in the *Toshiba* securities class action.  Following appellate briefing and oral argument by Robbins Geller attorneys, a three-judge Ninth Circuit panel reversed the district court's prior dismissal in a unanimous, 36-page opinion, holding that Toshiba ADRs are a "security" and the Securities Exchange Act of 1934 could apply to those ADRs that were purchased in a domestic transaction.  *Id*. at 939, 949.  The court adopted the Second and Third Circuits' "irrevocable liability" test for  determining whether the transactions were domestic and held that plaintiffs must be allowed to amend their complaint to allege that the purchase of Toshiba ADRs on the over-the-counter market was a domestic purchase and that the alleged fraud was in connection with the purchase.

- *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, No. 15-1439 (U.S.).  In March 2018, the U.S. Supreme Court ruled in favor of investors represented by Robbins Geller, holding that state courts continue to have jurisdiction over class actions asserting violations of the Securities Act of 1933.  The court's ruling secures investors' ability to bring Securities Act actions when companies fail to make full and

fair disclosure of relevant information in offering documents. The court confirmed that the Securities Litigation Uniform Standards Act of 1998 was designed to preclude securities class actions asserting violations of state law – not to preclude securities actions asserting federal law violations brought in state courts.

- ***Mineworkers' Pension Scheme v. First Solar Inc.***, 881 F.3d 750 (9th Cir. 2018), *cert. denied*, 588 U.S. __ (2019). In January 2018, the Ninth Circuit upheld the district court's denial of defendants' motion for summary judgment, agreeing with plaintiffs that the test for loss causation in the Ninth Circuit is a general "proximate cause test," and rejecting the more stringent revelation of the fraudulent practices standard advocated by the defendants. The opinion is a significant victory for investors, as it forecloses defendants' ability to immunize themselves from liability simply by refusing to publicly acknowledge their fraudulent conduct.

- ***In re Quality Sys., Inc. Sec. Litig.***, No. 15-55173 (9th Cir.). In July 2017, Robbins Geller's Appellate Practice Group scored a significant win in the Ninth Circuit in the *Quality Systems* securities class action. On appeal, a three-judge Ninth Circuit panel unanimously reversed the district court's prior dismissal of the action against Quality Systems and remanded the case to the district court for further proceedings. The decision addressed an issue of first impression concerning "mixed" future and present-tense misstatements. The appellate panel explained that "non-forward-looking portions of mixed statements are not eligible for the safe harbor provisions of the PSLRA . . . . Defendants made a number of mixed statements that included projections of growth in revenue and earnings based on the state of QSI's sales pipeline." The panel then held *both* the non-forward-looking and forward-looking statements false and misleading and made with scienter, deeming them actionable. Later, although defendants sought rehearing by the Ninth Circuit sitting *en banc*, the circuit court denied their petition.

- ***Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.***, No. CV-10-J-2847-S (N.D. Ala.). In the *Regions Financial* securities class action, Robbins Geller represented Local 703, I.B. of T. Grocery and Food Employees Welfare Fund and obtained a $90 million settlement in September 2015 on behalf of purchasers of Regions Financial common stock during the class period. In August 2014, the Eleventh Circuit Court of Appeals affirmed the district court's decision to certify a class action based upon alleged misrepresentations about Regions Financial's financial health before and during the recent economic recession, and in November 2014, the U.S. District Court for the Northern District of Alabama denied defendants' third attempt to avoid plaintiffs' motion for class certification.

- ***Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund***, No. 13-435 (U.S.). In March 2015, the U.S. Supreme Court ruled in favor of investors represented by Robbins Geller that investors asserting a claim under §11 of the Securities Act of 1933 with respect to a misleading statement of opinion do not, as defendant Omnicare had contended, have to prove that the statement was subjectively disbelieved when made. Rather, the court held that a statement of opinion may be actionable either because it was not believed, or because it lacked a reasonable basis in fact. This decision is significant in that it resolved a conflict among the federal circuit courts and expressly overruled the Second Circuit's widely followed, more stringent pleading standard for §11 claims involving statements of opinion. The Supreme Court remanded the case back to the district court for determination under the newly articulated standard. In August of 2016, upon remand, the district court applied the Supreme Court's new test and denied defendants' motion to dismiss in full.

- ***NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.***, 693 F.3d 145 (2d Cir. 2012). In a

securities fraud action involving mortgage-backed securities, the Second Circuit rejected the concept of "tranche" standing and found that a lead plaintiff has class standing to pursue claims on behalf of purchasers of securities that were backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities. The court noted that, given those common lenders, the lead plaintiff's claims as to its purchases implicated "the same set of concerns" that purchasers in several of the other offerings possessed. The court also rejected the notion that the lead plaintiff lacked standing to represent investors in different tranches.

- **In re VeriFone Holdings, Inc. Sec. Litig.**, 704 F.3d 694 (9th Cir. 2012). The panel reversed in part and affirmed in part the dismissal of investors' securities fraud class action alleging violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in connection with a restatement of financial results of the company in which the investors had purchased stock.

  The panel held that the third amended complaint adequately pleaded the §10(b), §20A, and Rule 10b-5 claims. Considering the allegations of scienter holistically, as the U.S. Supreme Court directed in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27, 48-49 (2011), the panel concluded that the inference that the defendant company and its chief executive officer and former chief financial officer were deliberately reckless as to the truth of their financial reports and related public statements following a merger was at least as compelling as any opposing inference.

- **Fox v. JAMDAT Mobile, Inc.**, 185 Cal. App. 4th 1068 (2010). Concluding that Delaware's shareholder ratification doctrine did not bar the claims, the California Court of Appeal reversed dismissal of a shareholder class action alleging breach of fiduciary duty in a corporate merger.

- **In re Constar Int'l Inc. Sec. Litig.**, 585 F.3d 774 (3d Cir. 2009). The Third Circuit flatly rejected defense contentions that where relief is sought under §11 of the Securities Act of 1933, which imposes liability when securities are issued pursuant to an incomplete or misleading registration statement, class certification should depend upon findings concerning market efficiency and loss causation.

- **Matrixx Initiatives, Inc. v. Siracusano**, 563 U.S 27 (2011), *aff'g* 585 F.3d 1167 (9th Cir. 2009). In a securities fraud action involving the defendants' failure to disclose a possible link between the company's popular cold remedy and a life-altering side effect observed in some users, the U.S. Supreme Court unanimously affirmed the Ninth Circuit's (a) rejection of a bright-line "statistical significance" materiality standard, and (b) holding that plaintiffs had successfully pleaded a strong inference of the defendants' scienter.

- **Alaska Elec. Pension Fund v. Flowserve Corp.**, 572 F.3d 221 (5th Cir. 2009). Aided by former U.S. Supreme Court Justice O'Connor's presence on the panel, the Fifth Circuit reversed a district court order denying class certification and also reversed an order granting summary judgment to defendants. The court held that the district court applied an incorrect fact-for-fact standard of loss causation, and that genuine issues of fact on loss causation precluded summary judgment.

- **In re F5 Networks, Inc., Derivative Litig.**, 207 P.3d 433 (Wash. 2009). In a derivative action alleging unlawful stock option backdating, the Supreme Court of Washington ruled that shareholders need not make a pre-suit demand on the board of directors where this step would be futile, agreeing with plaintiffs that favorable Delaware case law should be followed as persuasive authority.

- **Lormand v. US Unwired, Inc.**, 565 F.3d 228 (5th Cir. 2009). In a rare win for investors in the Fifth

Circuit, the court reversed an order of dismissal, holding that safe harbor warnings were not meaningful when the facts alleged established a strong inference that defendants knew their forecasts were false. The court also held that plaintiffs sufficiently alleged loss causation.

- *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009). In a victory for investors in the Third Circuit, the court reversed an order of dismissal, holding that shareholders pled with particularity why the company's repeated denials of price discounts on products were false and misleading when the totality of facts alleged established a strong inference that defendants knew their denials were false.

- *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342 (3d Cir. 2009). The Third Circuit held that claims filed for violation of §10(b) of the Securities Exchange Act of 1934 were timely, adopting investors' argument that because scienter is a critical element of the claims, the time for filing them cannot begin to run until the defendants' fraudulent state of mind should be apparent.

- *Rael v. Page*, 222 P.3d 678 (N.M. Ct. App. 2009). In this shareholder class and derivative action, Robbins Geller attorneys obtained an appellate decision reversing the trial court's dismissal of the complaint alleging serious director misconduct in connection with the merger of SunCal Companies and Westland Development Co., Inc., a New Mexico company with large and historic landholdings and other assets in the Albuquerque area. The appellate court held that plaintiff's claims for breach of fiduciary duty were direct, not derivative, because they constituted an attack on the validity or fairness of the merger and the conduct of the directors. Although New Mexico law had not addressed this question directly, at the urging of the Firm's attorneys, the court relied on Delaware law for guidance, rejecting the "special injury" test for determining the direct versus derivative inquiry and instead applying more recent Delaware case law.

- *Lane v. Page*, No. 06-cv-1071 (D.N.M. 2012). In May 2012, while granting final approval of the settlement in the federal component of the Westland cases, Judge Browning in the District of New Mexico commented:

  > Class Counsel are highly skilled and specialized attorneys who use their substantial experience and expertise to prosecute complex securities class actions. In possibly one of the best known and most prominent recent securities cases, Robbins Geller served as sole lead counsel – *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). *See* Report at 3. The Court has previously noted that the class would "receive high caliber legal representation" from class counsel, and throughout the course of the litigation the Court has been impressed with the quality of representation on each side. *Lane v. Page*, 250 F.R.D. at 647.

  *Lane v. Page*, 862 F. Supp. 2d 1182, 1253-54 (D.N.M. 2012).

  In addition, Judge Browning stated: "'Few plaintiffs' law firms could have devoted the kind of time, skill, and financial resources over a five-year period necessary to achieve the pre- and post-Merger benefits obtained for the class here.' . . . [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class." *Id.* at 1254.

- *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008). In a case of first impression, the Ninth Circuit held that the Securities Act of 1933's specific non-removal features had not been trumped by the general removal provisions of the Class Action Fairness Act of 2005.

- *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008). The Ninth Circuit upheld defrauded investors' loss causation theory as plausible, ruling that a limited temporal gap between the time defendants' misrepresentation was publicly revealed and the subsequent decline in stock value was reasonable where the public had not immediately understood the impact of defendants' fraud.

- *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007). The Second Circuit held that the filing of a class action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district court rulings that *American Pipe* tolling did not apply under these circumstances.

- *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007). In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does not apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use. In April 2007, the Honorable D. Brooks Smith praised Robbins Geller partner Joe Daley's efforts in this litigation:

  > Thank you very much Mr. Daley and a thank you to all counsel. As Judge Cowen mentioned, this was an exquisitely well-briefed case; it was also an extremely well-argued case, and we thank counsel for their respective jobs here in the matter, which we will take under advisement. Thank you.

  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 06-2911, Transcript at 35:37-36:00 (3d Cir. Apr. 12, 2007).

- *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007). The Supreme Court of Delaware held that the Alaska Electrical Pension Fund, for purposes of the "corporate benefit" attorney-fee doctrine, was presumed to have caused a substantial increase in the tender offer price paid in a "going private" buyout transaction. The Court of Chancery originally ruled that Alaska's counsel, Robbins Geller, was not entitled to an award of attorney fees, but Delaware's high court, in its published opinion, reversed and remanded for further proceedings.

- *Crandon Cap. Partners v. Shelk*, 157 P.3d 176 (Or. 2007). Oregon's Supreme Court ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims. The Firm's attorneys convinced Oregon's highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006). In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- *In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571 (Ind. 2006). Answering a certified question from a federal court, the Supreme Court of Indiana unanimously held that a pre-suit demand in a derivative action is excused if the demand would be a futile gesture. The court adopted a "demand futility" standard and rejected defendants' call for a "universal demand" standard that might have immediately ended the case.

- ***Denver Area Meat Cutters v. Clayton***, 209 S.W.3d 584 (Tenn. Ct. App. 2006). The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes. In their effort to secure relief for Clayton Homes stockholders, the Firm's attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts. The temporary halt to Buffet's acquisition received national press attention.

- ***DeJulius v. New Eng. Health Care Emps. Pension Fund***, 429 F.3d 935 (10th Cir. 2005). The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- ***In re Daou Sys.***, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 397 F.3d 249 (5th Cir.), *reh'g denied and opinion modified*, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit upheld investors' accounting-fraud claims, holding that fraud is pled as to both defendants when one knowingly utters a false statement and the other knowingly fails to correct it, even if the complaint does not specify who spoke and who listened.

- ***City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.***, 399 F.3d 651 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Ill. Mun. Ret. Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Sols. Inc.***, 365 F.3d 353 (5th Cir. 2004). The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***Smith v. Am. Family Mut. Ins. Co.***, 289 S.W.3d 675 (Mo. Ct. App. 2009). Capping nearly a decade of hotly contested litigation, the Missouri Court of Appeals reversed the trial court's judgment notwithstanding the verdict for auto insurer American Family and reinstated a unanimous jury verdict for the plaintiff class.

- ***Troyk v. Farmers Grp., Inc.***, 171 Cal. App. 4th 1305 (2009). The California Court of Appeal held that Farmers Insurance's practice of levying a "service charge" on one-month auto insurance policies, without specifying the charge in the policy, violated California's Insurance Code.

- ***Lebrilla v. Farmers Grp., Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest

automobile insurers in California, and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "'computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.'"

- *Dent v. National Football League*, No. 15-15143 (9th Cir.). In September 2018, the United States Court of Appeals for the Ninth Circuit issued an important decision reversing the district court's previous dismissal of the *Dent v. National Football League* litigation, concluding that the complaint brought by NFL Hall of Famer Richard Dent and others should not be dismissed on labor-law preemption grounds. The case was remanded to the district court for further proceedings.

- *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). In a leading decision interpreting the scope of Proposition 64's new standing requirements under California's Unfair Competition Law (UCL), the California Supreme Court held that consumers alleging that a manufacturer has misrepresented its product have "lost money or property" within the meaning of the initiative, and thus have standing to sue under the UCL, if they "can truthfully allege that they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." *Id*. at 317. *Kwikset* involved allegations, proven at trial, that defendants violated California's "Made in the U.S.A." statute by representing on their labels that their products were "Made in U.S.A." or "All-American Made" when, in fact, the products were substantially made with foreign parts and labor.

- *Safeco Ins. Co. of Am. v. Superior Court*, 173 Cal. App. 4th 814 (2009). In a class action against auto insurer Safeco, the California Court of Appeal agreed that the plaintiff should have access to discovery to identify a new class representative after her standing to sue was challenged.

- *Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009). The California Court of Appeal rejected objections to a nationwide class action settlement benefiting Bank of America customers.

- *Koponen v. Pac. Gas & Elec. Co.*, 165 Cal. App. 4th 345 (2008). The Firm's attorneys obtained a published decision reversing the trial court's dismissal of the action, and holding that the plaintiff's claims for damages arising from the utility's unauthorized use of rights-of-way or easements obtained from the plaintiff and other landowners were not barred by a statute limiting the authority of California courts to review or correct decisions of the California Public Utilities Commission.

- *Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007). In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, the Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- *Ritt v. Billy Blanks Enters.*, 870 N.E.2d 212 (Ohio Ct. App. 2007). In the Ohio analog to the *West*

case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- **Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n**, 148 P.3d 1179 (Haw. 2006). The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

- **Branick v. Downey Sav. & Loan Ass'n**, 39 Cal. 4th 235 (2006). Robbins Geller attorneys were part of a team of lawyers that briefed this case before the Supreme Court of California. The court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004. Proposition 64 amended California's Unfair Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- **McKell v. Wash. Mut., Inc.**, 142 Cal. App. 4th 1457 (2006). The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage-related fees were actionable.

- **West Corp. v. Superior Court**, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- **Kruse v. Wells Fargo Home Mortg., Inc.**, 383 F.3d 49 (2d Cir. 2004), and **Santiago v. GMAC Mortg. Grp., Inc.**, 417 F.3d 384 (3d Cir. 2005). In two groundbreaking federal appellate decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

## Additional Judicial Commendations

Robbins Geller attorneys have been praised by countless judges all over the country for the quality of their representation in class-action lawsuits. In addition to the judicial commendations set forth in the Prominent Cases and Precedent-Setting Decisions sections, judges have acknowledged the successful results of the Firm and its attorneys with the following plaudits:

- On October 5, 2022, at the final approval hearing of the settlement, the Honorable Paul A. Fioravanti, Jr. stated: "The settlement achieved here is, in short, impressive. . . . This litigation was hard fought. The issues were complex. . . . Plaintiffs' lead counsel here are among the most highly respected practitioners in this Court with a reputation for exacting substantial awards for the classes that they represent. . . . Again, the benefit was outstanding. . . . Counsel, this was an interesting case. I know you worked really hard on it. Fantastic result. The fee was well deserved." *City of Warren Gen. Emps.' Ret. Sys. v. Roche*, No. 2019-0740-PAF, Transcript at 26-29 (Del. Ch. Oct. 5, 2022).

PROMINENT CASES, PRECEDENT-SETTING DECISIONS,
AND JUDICIAL COMMENDATIONS

- On February 4, 2021, in granting final approval of the settlement, the Honorable Mark H. Cohen of the United States District Court for the Northern District of Georgia stated: "Lead Counsel successfully achieved a greater-than-average settlement 'in the face of significant risks.'" Robbins Geller's "hard-fought litigation in the Eleventh Circuit" and "[i]n considering the experience, reputation, and abilities of the attorneys, the Court recognize[d] that Lead Counsel is well-regarded in the legal community, especially in litigating class-action securities cases." *Monroe County Employees' Retirement System v. The Southern Company*, No. 1:17-cv-00241, Order at 8-9 (N.D. Ga. Feb. 4, 2021).

- On December 18, 2020, at the final approval hearing of the settlement, the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California commended Robbins Geller, stating: "Counsel performed excellent work in not only investigating and analyzing the core of the issues, but in negotiating and demanding the necessary reforms to prevent malfeasance for the benefit of the shareholders and the consumers. The Court complements counsel for its excellence." *In re RH S'holder Derivative Litig.*, No. 4:18-cv-02452-YGR, Order and Final Judgment at 3 (N.D. Cal. Dec. 18, 2020).

- On October 23, 2020, at the final approval hearing of the settlement, the Honorable P. Kevin Castel of the United States District Court for the Southern District of New York praised the firm, "[Robbins Geller] has been sophisticated and experienced." He also noted that: "[ T]he quality of the representation . . . was excellent. The experience of counsel is also a factor. Robbins Geller certainly has the extensive experience and they were litigating against national powerhouses . . . ." *City of Birmingham Ret. & Relief Sys. v. BRF S.A.*, No. 18 Civ. 2213 (PKC), Transcript at 12-13, 18 (S.D.N.Y. Oct. 23, 2020).

- In May 2020, in granting final approval of the settlement, the Honorable Mark L. Wolf praised Robbins Geller: "[T]he class has been represented by excellent honorable counsel . . . . [T]he fund was represented by experienced, energetic, able counsel, the fund was engaged and informed, and the fund followed advice of experienced counsel. Counsel for the class have been excellent, and I would say honorable." Additionally, Judge Wolf noted, "I find that the work that's been done primarily by Robbins Geller has been excellent and honorable and efficient. . . . [T]his has been a challenging case, and they've done an excellent job." *McGee v. Constant Contact, Inc.*, No. 1:15-cv-13114-MLW, Transcript at 21, 31, 61 (D. Mass. May 27, 2020).

- In December 2019, the Honorable Margo K. Brodie noted in granting final approval of the settlement that "[Robbins Geller and co-counsel] have also demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required, litigating on behalf of a class of over 12 million for over fourteen years, across a changing legal landscape, significant motion practice, and appeal and remand. Class counsel's pedigree and efforts alone speak to the quality of their representation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1:05-md-01720-MKB-JO, Memorandum & Order (E.D.N.Y. Dec. 16, 2019).

- In October 2019, the Honorable Claire C. Cecchi noted that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action." The court further commended the Firm and co-counsel for "conduct[ing] the [l]itigation . . . with skill, perseverance, and diligent advocacy." *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 2:08-cv-00235-CCC-JAD, Order at 4 (D.N.J. Oct. 3, 2019); *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's, London Members of Syndicates*, No. 2:08-cv-00235-CCC-JAD, Order Awarding Attorneys' Fees and Expenses/Charges and Service Awards at 3 (D.N.J. Oct. 3, 2019).

- In June 2019, the Honorable T.S. Ellis, III noted that Robbins Geller "achieved the [$108 million] [s]ettlement with skill, perseverance, and diligent advocacy." At the final approval hearing, the court further commended Robbins Geller by stating, "I think the case was fully and appropriately litigated [and] you all did a very good job. . . . [T]hank you for your service in the court. . . . [You're] first-class lawyers . . . ." *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031, Order Awarding Attorneys' Fees and Expenses at 3 (E.D. Va. June 7, 2019); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031, Transcript at 28-29 (E.D. Va. June 7, 2019).

- In June 2019, in granting final approval of the settlement, the Honorable John A. Houston stated: Robbins Geller's "skill and quality of work was extraordinary . . . . I'll note from the top that this has been an aggressively litigated action." *In re Morning Song Bird Food Litig.*, No. 3:12-cv-01592-JAH-AGS, Transcript at 4, 9 (S.D. Cal. June 3, 2019).

- In May 2019, in granting final approval of the settlement, the Honorable Richard H. DuBois stated: Robbins Geller is "highly experienced and skilled" for obtaining a "fair, reasonable, and adequate" settlement in the "interest of the [c]lass [m]embers" after "extensive investigation." *Chicago Laborers Pension Fund v. Alibaba Grp. Holding Ltd.*, No. CIV535692, Judgment and Order Granting Final Approval of Class Action Settlement at 3 (Cal. Super. Ct., San Mateo Cnty. May 17, 2019).

- In April 2019, the Honorable Kathaleen St. J. McCormick noted: "[S]ince the inception of this litigation, plaintiffs and their counsel have vigorously prosecuted the claims brought on behalf of the class. . . . When Vice Chancellor Laster appointed lead counsel, he effectively said: Go get a good result. And counsel took that to heart and did it. . . . The proposed settlement was the product of intense litigation and complex mediation. . . . [Robbins Geller has] only built a considerable track record, never burned it, which gave them the credibility necessary to extract the benefits achieved." *In re Calamos Asset Mgmt., Inc. S'holder Litig.*, No. 2017-0058-JTL, Transcript at 87, 93, 95, 98 (Del. Ch. Apr. 25, 2019).

- In April 2019, the Honorable Susan O. Hickey noted that Robbins Geller "achieved an exceptional [s]ettlement with skill, perseverance, and diligent advocacy." *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162, Order Awarding Attorneys' Fees and Expenses at 3 (W.D. Ark. Apr. 8, 2019).

- In January 2019, the Honorable Margo K. Brodie noted that Robbins Geller "has arduously represented a variety of plaintiffs' groups in this action[,] . . . [has] extensive antitrust class action litigation experience . . . [and] negotiated what [may be] the largest antitrust settlement in history." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 34 (E.D.N.Y. 2019).

- On December 20, 2018, at the final approval hearing for the settlement, the court lauded Robbins Geller's attorneys and their work: "[T]his is a pretty extraordinary settlement, recovery on behalf of the members of the class. . . . I've been very impressed with the level of lawyering in the case . . . and with the level of briefing . . . and I wanted to express my appreciation for that and for the work that everyone has done here." The court concluded, "your clients were all blessed to have you, [and] not just because of the outcome." *Duncan v. Joy Global, Inc.*, No. 16-CV-1229, Transcript at 12, 20-21 (E.D. Wis. Dec. 20, 2018).

- In October 2017, the Honorable William Alsup noted that Robbins Geller and lead plaintiff "vigorously prosecuted this action." *In re LendingClub Sec. Litig.*, No. 3:16-cv-02627-WHA, Order at 13 (N.D. Cal. Oct. 20, 2017).

- On November 9, 2018, in granting final approval of the settlement, the Honorable Jesse M. Furman commented: "[Robbins Geller] did an extraordinary job here. . . . [I]t is fair to say [this was] probably the most complicated case I have had since I have been on the bench. . . . I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable [a] job in briefing it and arguing as you have done. You have in my view done an extraordinary service to the class. . . . I think you have done an extraordinary job and deserve thanks and commendation for that." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 1:14-cv-07126-JMF-OTW, Transcript at 27-28 (S.D.N.Y. Nov. 9, 2018).

- On September 12, 2018, at the final approval hearing of the settlement, the Honorable William H. Orrick of the Northern District of California praised Robbins Geller's "high-quality lawyering" in a case that "involved complicated discovery and complicated and novel legal issues," resulting in an "excellent" settlement for the class. The "lawyering . . . was excellent" and the case was "very well litigated." *In re Lidoderm Antitrust Litig.*, No. 14-MDL-02521-WHO, Transcript at 11, 14, 22 (N.D. Cal. Sep. 12, 2018).

- On March 31, 2017, in granting final approval of the settlement, the Honorable Gonzalo P. Curiel hailed the settlement as "extraordinary" and "all the more exceptional when viewed in light of the risk" of continued litigation. The court further commended Robbins Geller for prosecuting the case on a *pro bono* basis: "Class Counsel's exceptional decision to provide nearly seven years of legal services to Class Members on a *pro bono* basis evidences not only a lack of collusion, but also that Class Counsel are in fact representing the best interests of Plaintiffs and the Class Members in this Settlement. Instead of seeking compensation for fees and costs that they would otherwise be entitled to, Class Counsel have acted to allow maximum recovery to Plaintiffs and Class Members. Indeed, that Eligible Class Members may receive recovery of 90% or greater is a testament to Class Counsel's representation and dedication to act in their clients' best interest." In addition – at the final approval hearing, the court commented that "this is a case that has been litigated – if not fiercely, zealously throughout." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302, 1312 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *Low v. Trump University LLC and Donald J. Trump*, No. 10-cv-0940 GPC-WVG, and *Cohen v. Donald J. Trump*, No. 13-cv-2519-GPC-WVG, Transcript at 7 (S.D. Cal. Mar. 30, 2017).

- In January 2017, at the final approval hearing, the Honorable Kevin H. Sharp of the Middle District of Tennessee commended Robbins Geller attorneys, stating: "It was complicated, it was drawn out, and a lot of work clearly went into this [case] . . . . I think there is some benefit to the shareholders that are above and beyond money, a benefit to the company above and beyond money that changed hands." *In re Community Health Sys., Inc. S'holder Derivative Litig.*, No. 3:11-cv-00489, Transcript at 10 (M.D. Tenn. Jan. 17, 2017).

- In November 2016, at the final approval hearing, the Honorable James G. Carr stated: "I kept throwing the case out, and you kept coming back. . . . And it's both remarkable and noteworthy and a credit to you and your firm that you did so. . . . [Y]ou persuaded the Sixth Circuit. As we know, that's no mean feat at all." Judge Carr further complimented the Firm, noting that it "goes without question or even saying" that Robbins Geller is very well-known nationally and that the settlement is an excellent result for the class. He succinctly concluded that "given the tenacity and the time and the effort that [Robbins Geller] lawyers put into [the case]" makes the class "a lot better off." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 3:05-cv-07393-JGC, Transcript at 4, 10, 14, 17 (N.D. Ohio Nov. 18, 2016).

PROMINENT CASES, PRECEDENT-SETTING DECISIONS,
AND JUDICIAL COMMENDATIONS

- In September 2016, in granting final approval of the settlement, Judge Arleo commended the "vigorous and skilled efforts" of Robbins Geller attorneys for obtaining "an excellent recovery." Judge Arleo added that the settlement was reached after "contentious, hard-fought litigation" that ended with "a very, very good result for the class" in a "risky case." *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 2:12-cv-05275-MCA-LDW, Transcript of Hearing at 18-20 (D.N.J. Sep. 28, 2016).

- In August 2015, at the final approval hearing for the settlement, the Honorable Karen M. Humphreys praised Robbins Geller's "extraordinary efforts" and "excellent lawyering," noting that the settlement "really does signal that the best is yet to come for your clients and for your prodigious labor as professionals. . . .  I wish more citizens in our country could have an appreciation of what this [settlement] truly represents." *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH, Transcript at 8, 25 (D. Kan. Aug. 12, 2015).

- In August 2015, the Honorable Judge Max O. Cogburn, Jr. noted that "plaintiffs' attorneys were able [to] achieve the big success early" in the case and obtained an "excellent result."  The "extraordinary" settlement was because of "good lawyers . . . doing their good work." *Nieman v. Duke Energy Corp.*, No. 3:12-cv-456, Transcript at 21, 23, 30 (W.D.N.C. Aug. 12, 2015).

- In July 2015, in approving the settlement, the Honorable Douglas L. Rayes of the District of Arizona stated: "Settlement of the case during pendency of appeal for more than an insignificant amount is rare.  The settlement here is substantial and provides favorable recovery for the settlement class under these circumstances."  He continued, noting, "[a]s against the objective measures of . . . settlements [in] other similar cases, [the recovery] is on the high end." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, No. 2:06-cv-02674-DLR, Transcript at 8, 11 (D. Ariz. July 28, 2015).

- In June 2015, at the conclusion of the hearing for final approval of the settlement, the Honorable Susan Richard Nelson of the District of Minnesota noted that it was "a pleasure to be able to preside over a case like this," praising Robbins Geller in achieving "an outstanding [result] for [its] clients," as she was "very impressed with the work done on th[e] case." *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851-SRN-TNL, Transcript at 7 (D. Minn. June 12, 2015).

- In May 2015, at the fairness hearing on the settlement, the Honorable William G. Young noted that the case was "very well litigated" by Robbins Geller attorneys, adding that "I don't just say that as a matter of form. . . . I thank you for the vigorous litigation that I've been permitted to be a part of." *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, Transcript at 8-9 (D. Mass. May 12, 2015).

- In January 2015, the Honorable William J. Haynes, Jr. of the Middle District of Tennessee described the settlement as a "highly favorable result achieved for the Class" through Robbins Geller's "diligent prosecution . . . [and] quality of legal services."  The settlement represents the fourth-largest securities recovery ever in the Middle District of Tennessee and one of the largest in more than a decade. *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882, 2015 U.S. Dist. LEXIS 181943, at *6-*7 (M.D. Tenn. Jan. 16, 2015).

- In September 2014, in approving the settlement for shareholders, Vice Chancellor John W. Noble noted "[t]he litigation caused a substantial benefit for the class. It is unusual to see a $29 million recovery." Vice Chancellor Noble characterized the litigation as "novel" and "not easy," but "[t]he lawyers took a case and made something of it." The court commended Robbins Geller's efforts in obtaining this result: "The standing and ability of counsel cannot be questioned" and "the benefits achieved by plaintiffs' counsel in this case cannot be ignored." *In re Gardner Denver, Inc. S'holder Litig.*, No. 8505-VCN, Transcript at 26-28 (Del. Ch. Sep. 3, 2014).

- In May 2014, at the conclusion of the hearing for final approval of the settlement, the Honorable Elihu M. Berle stated: "I would finally like to congratulate counsel on their efforts to resolve this case, on excellent work – it was the best interest of the class – and to the exhibition of professionalism. So I do thank you for all your efforts." *Liberty Mutual Overtime Cases*, No. JCCP 4234, Transcript at 20:1-5 (Cal. Super. Ct., Los Angeles Cnty. May 29, 2014).

- In March 2014, Ninth Circuit Judge J. Clifford Wallace (presiding) expressed the gratitude of the court: "Thank you. I want to especially thank counsel for this argument. This is a very complicated case and I think we were assisted no matter how we come out by competent counsel coming well prepared. . . . It was a model of the type of an exercise that we appreciate. Thank you very much for your work . . . you were of service to the court." *Eclectic Properties East, LLC v. The Marcus & Millichap Co.*, No. 12-16526, Transcript (9th Cir. Mar. 14, 2014).

- In February 2014, in approving a settlement, Judge Edward M. Chen noted the "very substantial risks" in the case and recognized Robbins Geller had performed "extensive work on the case." *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140, 2014 U.S. Dist. LEXIS 20044, at *5, *11-*12 (N.D. Cal. Feb. 18, 2014).

- In August 2013, in granting final approval of the settlement, the Honorable Richard J. Sullivan stated: "Lead Counsel is to be commended for this result: it expended considerable effort and resources over the course of the action researching, investigating, and prosecuting the claims, at significant risk to itself, and in a skillful and efficient manner, to achieve an outstanding recovery for class members. Indeed, the result – and the class's embrace of it – is a testament to the experience and tenacity Lead Counsel brought to bear." *City of Livonia Emps. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329, 2013 U.S. Dist. LEXIS 113658, at *13 (S.D.N.Y. Aug. 7, 2013).

- In July 2013, in granting final approval of the settlement, the Honorable William H. Alsup stated that Robbins Geller did "excellent work in this case," and continued, "I look forward to seeing you on the next case." *Fraser v. Asus Comput. Int'l*, No. C 12-0652, Transcript at 12:2-3 (N.D. Cal. July 11, 2013).

- In June 2013, in certifying the class, U.S. District Judge James G. Carr recognized Robbins Geller's steadfast commitment to the class, noting that "plaintiffs, with the help of Robbins Geller, have twice successfully appealed this court's orders granting defendants' motion to dismiss." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 524 (N.D. Ohio 2013).

- In November 2012, in granting appointment of lead plaintiff, Chief Judge James F. Holderman commended Robbins Geller for its "substantial experience in securities class action litigation" and commented that the Firm "is recognized as 'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.' *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.)." He continued further that, "'Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recovery ever [$*7.2* billion in *Enron*], as well as the largest recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.'" *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 U.S. Dist. LEXIS 161441, at *21 (N.D. Ill. Nov. 9, 2012).

- In June 2012, in granting plaintiffs' motion for class certification, the Honorable Inge Prytz Johnson noted that other courts have referred to Robbins Geller as "'one of the most successful law firms in securities class actions . . . in the country.'" *Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 616 (N.D. Ala. 2012) (quoting *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008)), *aff'd in part and vacated in part on other grounds*, 762 F.3d 1248 (11th Cir. 2014).

- In June 2012, in granting final approval of the settlement, the Honorable Barbara S. Jones commented that "class counsel's representation, from the work that I saw, appeared to me to be of the highest quality." *In re CIT Grp. Inc. Sec. Litig.*, No. 08 Civ. 6613, Transcript at 9:16-18 (S.D.N.Y. June 13, 2012).

- In March 2012, in granting certification for the class, Judge Robert W. Sweet referenced the *Enron* case, agreeing that Robbins Geller's "'clearly superlative litigating and negotiating skills'" give the Firm an "'outstanding reputation, experience, and success in securities litigation nationwide,'" thus, "'[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'" *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012).

- In March 2011, in denying defendants' motion to dismiss, Judge Richard Sullivan commented: "Let me thank you all. . . . [The motion] was well argued . . . and . . . well briefed . . . . I certainly appreciate having good lawyers who put the time in to be prepared . . . ." *Anegada Master Fund Ltd. v. PxRE Grp. Ltd.*, No. 08-cv-10584, Transcript at 83 (S.D.N.Y. Mar. 16, 2011).

- In January 2011, the court praised Robbins Geller attorneys: "They have gotten very good results for stockholders. . . . [Robbins Geller has] such a good track record." *In re Compellent Techs., Inc. S'holder Litig.*, No. 6084-VCL, Transcript at 20-21 (Del. Ch. Jan. 13, 2011).

- In August 2010, in reviewing the settlement papers submitted by the Firm, Judge Carlos Murguia stated that Robbins Geller performed "a commendable job of addressing the relevant issues with great detail and in a comprehensive manner . . . . The court respects the [Firm's] experience in the field of derivative [litigation]." *Alaska Elec. Pension Fund v. Olofson*, No. 08-cv-02344-CM-JPO (D. Kan.) (Aug. 20, 2010 e-mail from court re: settlement papers).

- In June 2009, Judge Ira Warshawsky praised the Firm's efforts in *In re Aeroflex, Inc. S'holder Litig.*: "There is no doubt that the law firms involved in this matter represented in my opinion the cream of the crop of class action business law and mergers and acquisition litigators, and from a judicial point of view it was a pleasure working with them." *In re Aeroflex, Inc. S'holder Litig.*, No. 003943/07, Transcript at 25:14-18 (N.Y. Sup. Ct., Nassau Cnty. June 30, 2009).

- In March 2009, in granting class certification, the Honorable Robert Sweet of the Southern District

of New York commented in *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 74 (S.D.N.Y. 2009): "As to the second prong, the Specialist Firms have not challenged, in this motion, the qualifications, experience, or ability of counsel for Lead Plaintiff, [Robbins Geller], to conduct this litigation. Given [Robbins Geller's] substantial experience in securities class action litigation and the extensive discovery already conducted in this case, this element of adequacy has also been satisfied."

- In June 2008, the court commented, "Plaintiffs' lead counsel in this litigation, [Robbins Geller], has demonstrated its considerable expertise in shareholder litigation, diligently advocating the rights of Home Depot shareholders in this Litigation. [Robbins Geller] has acted with substantial skill and professionalism in representing the plaintiffs and the interests of Home Depot and its shareholders in prosecuting this case." *City of Pontiac Gen. Emps.' Ret. Sys. v. Langone*, No. 2006-122302, Findings of Fact in Support of Order and Final Judgment at 2 (Ga. Super. Ct., Fulton Cnty. June 10, 2008).

- In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel T.K. Hurley said the following:

  > First, I thank counsel. As I said repeatedly on both sides, we have been very, very fortunate. We have had fine lawyers on both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy. Something that is increasingly important today in our society. . . . I want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. . . . I thank the lawyers on both sides for the extraordinary effort that has been brought to bear here . . . .

  *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV, Transcript at 26, 28-29 (S.D. Fla. Dec. 7, 2006).

- In *Stanley v. Safeskin Corp.*, No. 99 CV 454 (S.D. Cal.), where Robbins Geller attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

  > I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

  *Stanley v. Safeskin Corp.*, No. 99 CV 454, Transcript at 13 (S.D. Cal. May 25, 2004).

# ATTORNEY BIOGRAPHIES

## Mario Alba Jr. | Partner

Mario Alba is a partner in the Firm's Melville office. He is a member of the Firm's Institutional Outreach Team, which provides advice to the Firm's institutional clients, including numerous public pension systems and Taft-Hartley funds throughout the United States, and consults with them on issues relating to corporate fraud in the U.S. securities markets, as well as corporate governance issues and shareholder litigation. Some of Alba's institutional clients are currently involved in securities cases involving Avalara, Inc., Clarivate plc, Dentsply Sirona Inc., Generac Holdings Inc., Globe Life Inc., Amgen, Inc., Virtu Financial, Inc., The Walt Disney Company, The Boeing Company, Merck & Co., Inc., Daimler, Novo Nordisk, and National Instruments Corporation.

Alba's institutional clients are/were also involved in other types of class actions, namely, *In re National Prescription Opiate Litigation* (over $50 billion paid to communities across the country), *In re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* ($609 million total recovery), *Forth v. Walgreen Co.* ($100 million recovery), and *In re Humira (Adalimumab) Antitrust Litigation*.

Alba has served as lead counsel in numerous cases and is responsible for initiating, investigating, researching, and filing securities and consumer fraud class actions. He has recovered hundreds of millions of dollars in numerous actions, including cases against Acadia Healthcare Company, Inc. ($179 million recovery); BHP Billiton Limited ($50 million recovery), Equinix, Inc. ($41.5 million recovery), Green Dot Corporation ($40 million recovery), BRF S.A. ($40 million recovery), L3 Technologies, Inc. ($34.5 million recovery), Impax Laboratories Inc. ($33 million recovery), Waste Management, Inc. ($30 million recovery), Reckitt Benckiser Group plc ($19.6 million recovery), Super Micro Computer, Inc. ($18.25 million recovery), and NBTY, Inc. ($16 million recovery).

## Education
B.S., St. John's University, 1999; J.D., Hofstra University School of Law, 2002

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2022-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024; Rising Star, *Super Lawyers Magazine*, 2012-2013, 2016-2017; B.S., Dean's List, St. John's University, 1999; Selected as participant in Hofstra Moot Court Seminar, Hofstra University School of Law

# Michael Albert | Partner

Michael Albert is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation. Albert is a member of the Firm's Lead Plaintiff Advisory Team, which advises institutional investors in connection with lead plaintiff motions, and assists them in securing appointment as lead plaintiff.

Albert has been a member of litigation teams that have successfully recovered hundreds of millions of dollars for investors in securities class actions, including: *In re Alphabet, Inc. Securities Litigation* ($350 million recovery), *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ($272 million recovery), *City of Pontiac General Employees' Retirement Systems v. Wal-Mart Stores, Inc.* ($160 million recovery), and *In re LendingClub Securities Litigation* ($125 million recovery). Albert was also a member of the litigation team that obtained a $85 million cash settlement in a consumer class action against Scotts Miracle-Gro.

## Education

B.A., University of Wisconsin-Madison, 2010; J.D., University of Virginia School of Law, 2014

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2026; Best Lawyer in America, *Best Lawyers®*, 2025-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Impact Case Award: *In re Alphabet, Inc. Securities Litigation*, *Benchmark Litigation*, 2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Rising Star, *Super Lawyers Magazine*, 2020-2024; Managing Board Member, *Virginia Tax Review*, University of Virginia School of Law

# Matthew I. Alpert | Partner

Matthew Alpert is a partner in the Firm's San Diego office and focuses on the prosecution of securities fraud litigation. Most recently, Alpert and a team of Robbins Geller attorneys obtained a $434 million settlement in *In re Under Armour Sec. Litig.* (D. Md.) after nearly seven years of hard-fought litigation and less than a month before a jury trial in Baltimore was scheduled to commence. Alpert was also a member of the litigation team that successfully obtained class certification in a securities fraud class action against Regions Financial, a class certification decision that was substantively affirmed by the United States Court of Appeals for the Eleventh Circuit in *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014). Upon remand, the United States District Court for the Northern District of Alabama granted class certification again, rejecting defendants' post-*Halliburton II* arguments concerning stock price impact. Alpert and the Robbins Geller team litigated the case until it eventually settled for $90 million.

Some of Alpert's previous cases include: the individual opt-out actions of the AOL Time Warner class action – *Regents of the Univ. of Cal. v. Parsons* (Cal. Super. Ct., Los Angeles Cnty.) and *Ohio Pub. Emps. Ret. Sys. v. Parsons* (Ohio. Ct. of Common Pleas, Franklin Cnty.) (total settlement over $600 million); *In re Under Armour Sec. Litig.* (D. Md.); ($434 million settlement); *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.* (N.D. Ala.) ($90 million settlement); *In re MGM Mirage Sec. Litig.* (D. Nev.) ($75 million); *In re CIT Grp. Inc. Sec. Litig.* (S.D.N.Y.) ($75 million settlement); *Luna v. Marvell Tech. Grp., Ltd.* (N.D. Cal.) ($72.5 million settlement); *Deka Inv. GmbH v. Santander Consumer USA Holdings Inc.* (N.D. Tex.) ($47 million settlement); *In re Bridgestone Sec. Litig.* (M.D. Tenn.) ($30 million settlement); *In re Walter Energy, Inc. Sec. Litig.* (N.D. Ala.) ($25 million); *City of Hialeah Emps.' Ret. Sys. & Laborers Pension Tr. Fund for N. Cal. v. Toll Bros., Inc.* (E.D. Pa.) ($25 million settlement); *In re Molycorp, Inc. Sec. Litig.* (D. Colo.) ($20.5 million settlement); *In re Banc of Cal. Sec. Litig.* (C.D. Cal.) ($19.75 million); *Zimmerman v. Diplomat Pharmacy, Inc.* (E.D. Mich.) ($14.1 million); *Batwin v. Occam Networks, Inc.* (C.D. Cal.) ($13.9 million settlement); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech.* (D. Nev.) ($12.5 million settlement); *Kmiec v. Powerwave Techs. Inc.* (C.D. Cal.) ($8.2 million); *In re Sunterra Corp. Sec. Litig.* (D. Nev.) ($8 million settlement); and *Luman v. Anderson* (W.D. Mo.) ($4.25 million settlement).

## Education
B.A., University of Wisconsin at Madison, 2001; J.D., Washington University, St. Louis, 2005

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015-2019

# Darryl J. Alvarado | Partner

Darryl Alvarado is a partner in the Firm's San Diego office. He focuses his practice on securities fraud and other complex civil litigation. Alvarado was a member of the trial team in *Smilovits v. First Solar, Inc.*, which recovered $350 million for aggrieved investors. The *First Solar* settlement, reached on the eve of trial after more than seven years of litigation and an interlocutory appeal to the U.S. Supreme Court, is the fifth-largest PSLRA recovery ever obtained in the Ninth Circuit. Alvarado recently litigated *Monroe County Employees' Retirement System v. The Southern Company*, which recovered $87.5 million for investors after more than three years of litigation. The settlement resolved securities fraud claims stemming from defendants' issuance of misleading statements and omissions regarding the construction of a first-of-its-kind "clean coal" power plant in Kemper County, Mississippi. Alvarado helped secure $388 million for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* That settlement is, on a percentage basis, the largest recovery ever achieved in an RMBS class action. He was also a member of a team of attorneys that secured $95 million for investors in Morgan Stanley-issued RMBS in *In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*.

Alvarado was a member of a team of lawyers that obtained landmark settlements, on the eve of trial, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated* and *King County, Washington v. IKB Deutsche Industriebank AG*. He was integral in obtaining several precedent-setting decisions in those cases, including defeating the rating agencies' historic First Amendment defense and defeating the ratings agencies' motions for summary judgment concerning the actionability of credit ratings. Alvarado was also a member of a team of attorneys responsible for obtaining for aggrieved investors $27 million in *In re Cooper Companies Securities Litigation*, $19.5 million in *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corporation*, and comprehensive corporate governance reforms to address widespread off-label marketing and product safety violations in *In re Johnson & Johnson Derivative Litigation*.

## Education

B.A., University of California, Santa Barbara, 2004; J.D., University of San Diego School of Law, 2007

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers*®, 2023-2025; Future Star, *Benchmark Litigation*, 2024; Rising Star, *Super Lawyers Magazine*, 2015-2022; 40 & Under Hot List, *Benchmark Litigation*, 2018-2021; Top 40 Under 40, *Daily Journal*, 2021; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2011

# Mathew Andrews | Partner

Mathew Andrews is a partner in the Firm's Manhattan office and focuses his practice on complex securities litigation. He has unique experience representing both plaintiffs and defendants in securities fraud cases. Before joining the Firm in January 2026, Andrews served as an Assistant United States Attorney in the U.S. Attorney's Office for the Southern District of New York for over seven years.

As an Assistant U.S. Attorney, Andrews represented the United States in criminal cases of securities fraud, public corruption, money laundering, tax evasion, violations of the Bank Secrecy Act, racketeering, and murder. Andrews headed the prosecution team in *United States v. Gulkarov et al.*, which charged over 70 defendants with participating in one of the largest healthcare fraud, money laundering, and bribery schemes in New York history. He also led prosecutions and investigations of fintech companies, privately held banks, and AI and crypto companies.

Andrews successfully tried seven cases to verdict, including two convictions of high-ranking DEA Special Agents for bribery, three convictions for murder, and multiple convictions for fraud and money laundering. He also successfully litigated over a dozen cases before the U.S. Court of Appeals for the Second Circuit, including the habeus appeal of Dimitry Aronshtein, who co-led one of the largest bribery schemes in New York City history.

Earlier in his career, Andrews defended individuals in securities fraud cases and investigations as an associate at Morvillo Abramowitz Grand Iason & Anello P.C. He completed clerkships with the Honorable Jed Rakoff of the U.S. District Court for the Southern District of New York and the Honorable Robert Katzmann, then-Chief Judge of the U.S. Court of Appeals for the Second Circuit.

## Education
B.A., Yale University, 2011; J.D., Yale Law School, 2014

## Honors / Awards
Federal Law Enforcement Foundation Prosecutor of the Year, 2024; B.A., *Summa Cum Laude*, Yale University, 2011

# Dory P. Antullis | Partner

Dory Antullis is a partner in the Firm's Boca Raton office. Her litigation practice focuses on complex class actions, covering consumer fraud, public nuisance, environmental litigation, privacy litigation, pharmaceuticals, RICO, and antitrust litigation. Antullis also works with the Firm's settlement department, negotiating and documenting intricate, high-stakes settlements.

Antullis is a core member of the Firm's opioids team, leading the effort on behalf of cities, counties, and third-party payors around the country in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio). In addition to serving on several committees in the MDL, she was a member of the winning trial team on behalf of the People of the State of California in San Francisco's bellwether case against Allergan, Teva, Walgreens, and others in the prescription opioid supply chain. Together with a trial win against Walgreens, the case has resulted in settlements valued at over $350 million. Antullis was also part of a small group of lawyers who negotiated and drafted settlement documents for the national opioid settlements with major distributors, manufacturers, and pharmacies – now totaling more than $50 billion.

Antullis has also been an integral part of Robbins Geller's history of successful privacy and data breach class action cases. She is currently serving as Interim Co-Lead Class Counsel in *In re Luxottica of America, Inc. Data Breach Litig.*, No. 1:20-cv-00908 (S.D. Ohio), and Liaison Counsel in *DeSue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275 (S.D. Fla.) ($3 million class settlement). Antullis's heavy lifting at every stage of the litigation in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752 (N.D. Cal.), helped to secure a $117.5 million recovery in the largest data breach in history. Antullis successfully defeated two rounds of dispositive briefing, worked with leadership and computer privacy and damages experts to plan a winning strategy for the case, and drafted an innovative motion for class certification that immediately preceded a successful mediation with defendants in that litigation. Antullis also provided meaningful "nuts-and-bolts" support in other data breach class actions, including *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, No. 2:19-md-02904 (D.N.J.) (representing class of LabCorp customers), and *In re Solara Med. Supplies Customer Data Breach Litig.*, No. 3:19-cv-02284 (S.D. Cal.) ($5.06 million settlement). And she currently represents consumers in state and federal court against North Broward Hospital District for a 2021 data breach.

## Education
B.A., Rice University, 1999; J.D., Columbia Law School, 2003

## Honors / Awards
Leading Lawyer in America, *Lawdragon*, 2026; Leading Litigator in America, *Lawdragon*, 2024-2026; Recommended Lawyer, *The Legal 500*, 2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; National Merit Scholar, Rice University; Golden Key National Honor Society, Rice University; Nominated for *The Rice Undergraduate* academic journal, Rice University; Michael I. Sovern Scholar, Columbia Law School; Hague Appeal for Peace, Committee for a Just and Effective Response to 9/11, Columbia Law School; Columbia Mediation and Political Asylum Clinics, Columbia Law School; Harlem Tutorial Program, Columbia Law School; Journal of Eastern European Law, Columbia Law School; Columbia Law Women's Association, Columbia Law School

# Stephen R. Astley | Partner

Stephen Astley is a partner in the Firm's Boca Raton office. Astley devotes his practice to representing institutional and individual shareholders in their pursuit to recover investment losses caused by fraud. He has been lead counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for his clients and investors.

Most recently, Astley obtained a $434 million settlement in *In re Under Armour Sec. Litig*. The case settled just prior to the commencement of trial in Baltimore, Maryland, and represents the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history. Other notable settlements include: *In re Nutanix Inc. Sec. Litig*. (N.D. Cal.) ($71 million settlement); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc*. (N.D. Ill.) ($60 million settlement); *In re ADT Inc. S'holder Litig*. (Fla. Cir. Ct., 15th Jud. Cir.) ($30 million settlement); *In re Red Hat, Inc. Sec. Litig*. (E.D.N.C.) ($20 million settlement); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc*. (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp*. (N.D. Ga.) ($11.75 million).

Prior to joining the Firm, Astley was with the Miami office of Hunton & Williams, where he concentrated his practice on class action defense, including securities class actions and white collar criminal defense. Additionally, he represented numerous corporate clients accused of engaging in unfair and deceptive practices. Astley was also an active duty member of the United States Navy's Judge Advocate General's Corps where he was the Senior Defense Counsel for the Naval Legal Service Office Pearl Harbor Detachment. In that capacity, Astley oversaw trial operations for the Detachment and gained substantial first-chair trial experience as the lead defense counsel in over 75 courts-martial and administrative proceedings. Additionally, from 2002-2003, Astley clerked for the Honorable Peter T. Fay, U.S. Court of Appeals for the Eleventh Circuit.

## Education
B.S., Florida State University, 1992; M. Acc., University of Hawaii at Manoa, 2001; J.D., University of Miami School of Law, 1997

## Honors / Awards
J.D., *Cum Laude*, University of Miami School of Law, 1997; United States Navy Judge Advocate General's Corps., Lieutenant

# Aelish M. Baig | Partner

Aelish Marie Baig is a partner in the Firm's San Francisco office and specializes in consumer and securities fraud actions. Baig has litigated a number of cases through jury trial, resulting in multi-million and billion dollar awards and settlements for her clients.

Baig was one of the originators of the national opioid litigation, filing among the earliest complaints against the opioid industry defendants and working on all aspects of that litigation. In 2022, Baig served as co-trial counsel in a federal bench trial in San Francisco in a case selected as a bellwether in the national multi-district opioid litigation. The team achieved combined settlements of over $350 million for San Francisco and contributed to securing more than $50 billion for local governments nationwide to be used for abatement of the national opioid epidemic. For her work in co-leading the trial team and securing a historic trial result against Walgreens for the City and County of San Francisco, she was honored by *The National Law Journal* as one of the "Elite Women of the Plaintiffs Bar" and she received "California Lawyer Attorney of the Year" by the *Daily Journal*.

Baig was also appointed to leadership in the *Juul* ($1.7 billion settlement) and *McKinsey* ($230 million settlement) MDL litigations. She was recently appointed to the Plaintiffs' Steering Committee of the national social media litigation MDL against the country's largest social media platforms (Meta, YouTube, Snapchat, and Tiktok) for fueling addiction and other mental health issues among youth. She represents numerous local and state governments and school districts across the country that have filed federal cases against opioids, McKinsey, Juul, and/or social media defendants. Baig has also prosecuted securities fraud and derivative actions obtaining millions of dollars in recoveries against corporations such as Wells Fargo, Celera, Pall, and Prudential.

## Education

B.A., Brown University, 1992; J.D., Washington College of Law at American University, 1998

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2020-2026; Best Lawyer in America, *Best Lawyers*®, 2024-2026; Recommended Lawyer, *The Legal 500*, 2023-2025; Ranked by *Chambers USA*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Leading Commercial Litigator, *Daily Journal*, 2024; Class Action/Mass Tort Litigation Trailblazer, *The National Law Journal*, 2023; Elite Women of the Plaintiffs Bar, Elite Trial Lawyers, *The National Law Journal*, 2023; Plaintiffs' Lawyers Trailblazer, *The National Law Journal*, 2021, 2023; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2023; Best Lawyer in America: One to Watch, *Best Lawyers*®, 2021-2023; Best Lawyer in Northern California: One to Watch, *Best Lawyers*®, 2021; Featured in "Lawyer Limelight" series, *Lawdragon*, 2020; Litigation Trailblazer, *The National Law Journal*, 2019; California Trailblazer, *The Recorder*, 2019; Super Lawyer, *Super Lawyers Magazine*, 2012-2013; J.D., *Cum Laude*, Washington College of Law at American University, 1998; Senior Editor, *Administrative Law Review*, Washington College of Law at American University

# Randall J. Baron  |  Partner

Randy Baron is a partner in the Firm's San Diego office. He specializes in securities litigation, corporate takeover litigation, and breach of fiduciary duty actions. For almost two decades, Baron has headed up a team of lawyers whose accomplishments include obtaining instrumental rulings both at injunction and trial phases, and establishing liability of financial advisors and investment banks. With an in-depth understanding of merger and acquisition and breach of fiduciary duty law, an ability to work under extreme time pressures, and the experience and willingness to take a case through trial, he has been responsible for recovering more than a billion dollars for shareholders.

Notable achievements over the years include: *In re Kinder Morgan, Inc. S'holders Litig.* (Kan. Dist. Ct., Shawnee Cnty.), where Baron obtained an unprecedented $200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history; *In re Dole Food Co., Inc. S'holder Litig.* (Del. Ch.), where he went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders and obtained $148 million, the largest trial verdict ever in a class action challenging a merger transaction; and *In re Rural/Metro Corp. S'holders Litig.* (Del. Ch.), where Baron and co-counsel obtained nearly $110 million total recovery for shareholders against Royal Bank of Canada Capital Markets LLC. In *In re Del Monte Foods Co. S'holders Litig.* (Del. Ch.), he exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. Baron was one of the lead attorneys representing about 75 public and private institutional investors that filed and settled individual actions in *In re WorldCom Sec. Litig.* (S.D.N.Y.), where more than $657 million was recovered, the largest opt-out (non-class) securities action in history. Most recently, Baron successfully obtained a partial settlement of $60 million in *In re Tesla Motors, Inc. S'holder Litig.*, a case that alleged that the members of the Tesla Board of Directors breached their fiduciary duties, unjustly enriched themselves, and wasted corporate assets in connection with their approval of Tesla's acquisition of SolarCity Corp. in 2016.

## Education

B.A., University of Colorado at Boulder, 1987; J.D., University of San Diego School of Law, 1990

## Honors / Awards

Fellow, Advisory Board, Litigation Counsel of America (LCA); Rated Distinguished by Martindale-Hubbell; Litigation Star, *Benchmark Litigation*, 2016-2019, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2019-2020, 2024, 2026; Lawyer of the Year: Litigation – Mergers and Acquisitions, San Diego, *Best Lawyers®*, 2026; Best Lawyer in America, *Best Lawyers®*, 2019-2026; Hall of Fame, *The Legal 500*, 2020-2025; Ranked by *Chambers USA*, 2016-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; California - Litigation Star, *Benchmark Litigation*, 2024; Lawyer of the Year: Derivatives and Futures Law, *Best Lawyers®*, 2023; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2022; Leading Lawyer in America, *Lawdragon*, 2011, 2017-2019, 2021-2022; Southern California Best Lawyer, *Best Lawyers®*, 2019-2021; Super Lawyer, *Super Lawyers Magazine*, 2014-2016, 2018-2020; Local Litigation Star, *Benchmark Litigation*, 2018, 2020; Leading Lawyer, *The Legal 500*, 2014-2019; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Winning Litigator, *The National Law Journal*, 2018; Titan of the Industry, *The American Lawyer*, 2018; Recommended Lawyer, *The Legal 500*, 2017; Mergers & Acquisitions Trailblazer, *The National Law Journal*, 2015-2016; Litigator of the Week, *The American Lawyer*, October 16, 2014; Attorney of the Year, *California Lawyer*, 2012; Litigator of the Week, *The American Lawyer*, October 7, 2011; J.D., *Cum Laude*, University of San Diego School of Law, 1990

# James E. Barz | Partner

Jim Barz is a partner with the Firm and manages the Firm's Chicago office. Barz is an experienced trial lawyer who has been lead counsel in dozens of evidentiary and contested hearings, tried 18 cases to verdict, and argued 9 cases in the Seventh Circuit. Barz is a registered CPA, former federal prosecutor, and an adjunct professor at Northwestern University School of Law from 2008 to 2025, teaching courses on trial advocacy and class action litigation.

Barz has represented investors in securities fraud class actions that have resulted in recoveries of over $2 billion. Barz was the lead counsel in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, and secured a $1.21 billion recovery for investors, a case that *Vanity Fair* reported as "the corporate scandal of its era." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest securities class action settlement ever. Barz was recognized as a Litigator of the Week by *The American Lawyer* for his work in the case.

Barz has also secured substantial recoveries for investors in *HCA* ($215 million, M.D. Tenn.); *Motorola* ($200 million, N.D. Ill.); *Exelon* ($173 million, N.D. Ill.); *Sprint* ($131 million, D. Kan.); *Orbital ATK* ($108 million, E.D. Va.); *Walgreens* ($105 million, N.D. Ill.); *Nutanix* ($71 million, N.D. Cal.); *Psychiatric Solutions* ($65 million, M.D. Tenn.); *Oak Street* ($60 million, N.D. Ill.); *Hospira* ($60 million, N.D. Ill.); and other matters. Barz also handles whistleblower, antitrust, and pro bono matters and was honored by the Judges of the United States District Court for the Northern District of Illinois with an Award for Excellence in Pro Bono Service in 2021.

## Education

B.B.A., Loyola University Chicago, School of Business Administration, 1995; J.D., Northwestern University School of Law, 1998

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2018-2026; Leading Lawyer in America, *Lawdragon*, 2025-2026; Litigation Star, *Benchmark Litigation*, 2025-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Recommended Lawyer, *The Legal 500*, 2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023; Midwest Trailblazer, *The American Lawyer*, 2022; Award for Excellence in Pro Bono Service, United States District Court for the Northern District of Illinois, 2021; Litigator of the Week, *The American Lawyer*, 2021; Leading Lawyer, Law Bulletin Media, 2018; B.B.A., *Summa Cum Laude*, Loyola University Chicago, School of Business Administration, 1995; J.D., *Cum Laude*, Northwestern University School of Law, 1998

# Lea Malani Bays | Partner

Lea Malani Bays is a partner in the Firm's San Diego office. She focuses on e-discovery issues, from preservation through production, and provides counsel to the Firm's multi-disciplinary e-discovery team consisting of attorneys, forensic analysts, and database professionals. Through her role as counsel to the e-discovery team, Bays is very familiar with the various stages of e-discovery, including identification of relevant electronically stored information, data culling, predictive coding protocols, privilege, and responsiveness reviews, as well as having experience in post-production discovery through trial preparation. Through speaking at various events, she is also a leader in shaping the broader dialogue on e-discovery issues.

Bays was recently part of the litigation team that earned the approval of a $131 million settlement in favor of plaintiffs in *Bennett v. Sprint Nextel Corp.* The settlement, which resolved claims arising from Sprint Corporation's ill-fated merger with Nextel Communications in 2005, represents a significant recovery for the plaintiff class, achieved after five years of tireless effort by the Firm. Prior to joining Robbins Geller, Bays was a Litigation Associate at Kaye Scholer LLP's New York office. She has experience in a wide range of litigation, including complex securities litigation, commercial contract disputes, business torts, antitrust, civil fraud, and trust and estate litigation.

## Education

B.A., University of California, Santa Cruz, 1997; J.D., New York Law School, 2007

## Honors / Awards

Law360 Distinguished Legal Writing Award, *The Burton Awards Program*, 2025; Ranked by *Chambers USA*, 2019-2022; J.D., *Magna Cum Laude*, New York Law School, 2007; Executive Editor, *New York Law School Law Review*; Legal Aid Society's Pro Bono Publico Award; NYSBA Empire State Counsel; Professor Stephen J. Ellmann Clinical Legal Education Prize; John Marshall Harlan Scholars Program, Justice Action Center

# Alexandra S. Bernay | Partner

Alexandra Bernay is a partner in the Firm's San Diego office, where she specializes in antitrust and unfair competition class-action litigation. She has also worked on some of the Firm's largest securities fraud class actions, including the *Enron* litigation, which recovered an unprecedented $7.2 billion for investors.

Bernay currently serves as co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, in which a settlement of $5.5 billion was upheld by the Second Circuit Court of Appeals. This case was brought on behalf of millions of U.S. merchants against Visa and MasterCard and various card-issuing banks, challenging the way these companies set and collect tens of billions of dollars annually in merchant fees. The settlement is believed to be the largest antitrust class action settlement of all time.

Additionally, Bernay is litigating *In re American Airlines/JetBlue Antitrust Litig.*, a large antitrust case pending in the Eastern District of New York. That case is brought on behalf of airline passengers who overpaid for tickets because of alleged anticompetitive conduct between American Airlines and JetBlue. She is also part of the litigation team in a nationwide class action against LiveNation on behalf of concert ticket buyers. Other representative cases include *In re Remicade Antitrust Litig.*, a large case that settled for $25 million involving anticompetitive conduct in the biosimilars market, where the Firm was sole lead counsel for the end-payor plaintiffs, and *In re Dealer Mgmt. Sys. Antitrust Litig.*, which involves anticompetitive conduct related to dealer management systems on behalf of auto dealerships across the country. Another representative case is against Lloyd's of London. That action is a massive civil RICO case against the insurance company and its syndicates.

Bernay has also had experience in large consumer class actions, including *In re Checking Account Overdraft Litig.*, which case was brought on behalf of bank customers who were overcharged for debit card transactions and resulted in more than $500 million in settlements with major banks that manipulated customers' debit transactions to maximize overdraft fees. She also helped try to verdict a case against one of the world's largest companies who was sued on behalf of consumers. Her more recent trial experience includes a jury trial related to foreign exchange trading against one of the largest banks in the world, where the jury found that plaintiffs had proved a conspiracy as to a large network of banks. She was responsible for many of the successful trial motions in the case.

## Education

B.A., Humboldt State University, 1997; J.D., University of San Diego School of Law, 2000

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2023; Distinguished Alumni, Forever Humboldt Alumni Association, 2023; Litigator of the Week, *Global Competition Review*, October 1, 2014

## Kenneth J. Black | Partner

Kenneth Black is a partner in the Firm's San Francisco office, where his practice focuses on complex securities litigation and shareholder derivative litigation. Before joining the Firm, Black was a Sanctions Investigator at the Office of Foreign Assets Control, U.S. Treasury Department, where he investigated and assembled the evidentiary cases against targets of U.S. financial sanctions, and tracked the finances and assets of those targets.

## Education

B.A., University of Michigan, 2004; M.A., American University, 2007; J.D., University of Michigan Law School, 2013

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2026; 500 X – The Next Generation, *Lawdragon*, 2023-2025; Comments Editor, *Michigan Journal of Private Equity & Venture Capital Law*, University of Michigan Law School

## Erin W. Boardman | Partner

Erin Boardman is a partner in the Firm's Melville office, where her practice focuses on representing individual and institutional investors in class actions brought pursuant to the federal securities laws. She has been involved in the prosecution of numerous securities class actions that have resulted in millions of dollars in recoveries for defrauded investors, including: *Medoff v. CVS Caremark Corp.* (D.R.I.) ($48 million recovery); *Construction Laborers Pension Tr. of Greater St. Louis v. Autoliv Inc.* (S.D.N.Y.) ($22.5 million recovery); *In re Gildan Activewear Inc. Sec. Litig.* (S.D.N.Y.) (resolved as part of a $22.5 million global settlement); *In re L.G. Phillips LCD Co., Ltd., Sec. Litig.* (S.D.N.Y.) ($18 million recovery); *In re Giant Interactive Grp., Inc. Sec. Litig.* (S.D.N.Y.) ($13 million recovery); *In re Coventry HealthCare, Inc. Sec. Litig.* (D. Md.) ($10 million recovery); *Lenartz v. American Superconductor Corp.* (D. Mass.) ($10 million recovery); *Dudley v. Haub* (D.N.J.) ($9 million recovery); *Hildenbrand v. W Holding Co.* (D.P.R.) ($8.75 million recovery); *In re Doral Fin. Corp. Sec. Litig.* (D.P.R.) ($7 million recovery); and *Van Dongen v. CNinsure Inc.* (S.D.N.Y.) ($6.625 million recovery). During law school, Boardman served as Associate Managing Editor of *the Journal of Corporate, Financial and Commercial Law*, interned in the chambers of the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York, and represented individuals on a *pro bono* basis through the Workers' Rights Clinic.

## Education

B.A., State University of New York at Binghamton, 2003; J.D., Brooklyn Law School, 2007

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2022-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2025; Rising Star, *Super Lawyers Magazine*, 2015-2018; B.A., *Magna Cum Laude*, State University of New York at Binghamton, 2003

# Nicolle B. Brito | Partner

Nicolle Brito is a partner in the Firm's Boca Raton office. Her practice focuses on complex class actions and multi-district litigation, covering consumer fraud, public nuisance, environmental litigation, privacy litigation, pharmaceuticals, and RICO.

Brito was a member of the Firm's opioids team, leading the effort on behalf of cities and counties around the country in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio). She was a member of the winning trial team on behalf of the People of the State of California in San Francisco's bellwether case against Allergan, Teva, Walgreens, and others in the prescription opioid supply chain, ultimately yielding $350 million in settlement funds after a successful liability trial.

Brito is currently a member of the Firm's PFAS litigation team, filing suit on behalf of governmental entities for PFAS contamination related to AFFF products. She is also a member of the Social Media litigation team, seeking to hold the technology industry accountable for social media youth addiction.

Before joining the Firm, Brito worked in complex arbitration, insurance, and personal injury law, where she gained significant litigation experience.

## Education

B.A., Florida International University, 2003; J.D., Nova Southeastern University Shepard Broad College of Law, 2007

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2026; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2025; 500 X - The Next Generation, *Lawdragon*, 2023; J.D., *Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 2007

# Luke O. Brooks | Partner

Luke Brooks is a partner in the Firm's securities litigation practice group in the San Diego office. He focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Brooks served as trial counsel in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Other prominent cases recently prosecuted by Brooks include *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, in which plaintiffs recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities, and a pair of cases – *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* ("Cheyne") and *King County, Washington, et al. v. IKB Deutsche Industriebank AG* ("Rhinebridge") – in which plaintiffs obtained a settlement, on the eve of trial in Cheyne, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles. *Reuters* described the settlement as a "landmark" deal and emphasized that it was the "first time S&P and Moody's have settled accusations that investors were misled by their ratings." An article published in *Rolling Stone* magazine entitled "The Last Mystery of the Financial Crisis" similarly credited Robbins Geller with uncovering "a mountain of evidence" detailing the credit rating agencies' fraud. Most recently, Brooks served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial. The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

## Education

B.A., University of Massachusetts at Amherst, 1997; J.D., University of San Francisco, 2000

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2026; Litigation Star, *Benchmark Litigation*, 2023-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; California - Litigation Star, *Benchmark Litigation*, 2024; Local Litigation Star, *Benchmark Litigation*, 2017-2018, 2020; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Recommended Lawyer, *The Legal 500*, 2017-2018; Member, *University of San Francisco Law Review*, University of San Francisco

# Spencer A. Burkholz | Partner

Spence Burkholz is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He has over 25 years of experience in prosecuting securities class actions and private actions on behalf of large institutional investors. Burkholz was one of the lead trial attorneys in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Burkholz has also recovered billions of dollars for injured shareholders in cases such as *Enron* ($7.2 billion), *WorldCom* ($657 million), *Countrywide* ($500 million), *Qwest* ($445 million), *Wells Fargo* ($300 million), *Envision* ($177.5 million), *McKesson* ($141 million), *Cardinal Health* ($109 million), and *Cisco Systems* ($99.25 million).

## Education

B.A., Clark University, 1985; J.D., University of Virginia School of Law, 1989

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; San Diego Elite Lawyer, *The Legal 500*, 2026; Leading Lawyer in America, *Lawdragon*, 2018-2026; Litigation Star, *Benchmark Litigation*, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2020, 2024-2026; Best Lawyer in America, *Best Lawyers®*, 2018-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Top 20 Trial Lawyer in California, *Benchmark Litigation*, 2019, 2023-2024; Titan of the Plaintiffs Bar, *Law360*, 2024; Top Plaintiff Lawyer, *Daily Journal*, 2017, 2023; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020, 2022; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Southern California Best Lawyer, *Best Lawyers®*, 2018-2021; Super Lawyer, *Super Lawyers Magazine*, 2015-2016, 2020; Top 100 Trial Lawyer, *Benchmark Litigation*, 2018-2020; Local Litigation Star, *Benchmark Litigation*, 2015-2018, 2020; Lawyer of the Year, *Best Lawyers®*, 2020; Recommended Lawyer, *The Legal 500*, 2017-2019; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Plaintiff Attorney of the Year, *Benchmark Litigation*, 2018; B.A., *Cum Laude*, Clark University, 1985; *Phi Beta Kappa*, Clark University, 1985

# Michael G. Capeci | Partner

Michael Capeci is a partner in the Firm's Melville office. His practice focuses on prosecuting complex securities class action lawsuits in federal and state courts. Throughout his tenure with the Firm, Capeci has led the litigation teams prosecuting numerous class action cases in federal and/or state court alleging violations of the Securities Exchange Act of 1934 and/or the Securities Act of 1933, such as: *Strougo v. Mallinckrodt plc* ($46 million recovery); *Gordon v. Vanda Pharmaceuticals, Inc.* ($11.5 million recovery); *Nayani v. LifeStance Health Group, Inc.* ($50 million recovery); and *Chester County Emps.' Ret. Fund v. Alnylam Pharmaceuticals, Inc.* ($7 million recovery). In addition, Capeci has played an integral role in the teams prosecuting securities class action cases such as: *In re BHP Billiton Ltd. Sec. Litig.* ($50 million recovery); *Galestan v. OneMain Holdings, Inc.* ($9 million recovery); and *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.* ($19.5 million recovery).

## Education

B.S., Villanova University, 2007; J.D., Hofstra University School of Law, 2010

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2022-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2025; Rising Star, *Super Lawyers Magazine*, 2014-2021; J.D., *Cum Laude*, Hofstra University School of Law, 2010

# Jennifer N. Caringal | Partner

Jennifer Caringal is a partner in the Firm's San Diego office, where her practice focuses on complex securities litigation. Jennifer is a member of the Firm's Lead Plaintiff Advisory Team, which advises institutional investors in connection with lead plaintiff motions, and assists them in securing appointment as lead plaintiff.

Caringal served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

## Education

B.A., University of Illinois, 2006; J.D., Washington University in St. Louis, School of Law, 2012

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2025-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2024; They've Got Next: The 40 Under 40, *Bloomberg Law*, 2022; Rising Star, *Super Lawyers Magazine*, 2021-2022; Best Lawyer in Southern California: One to Watch, *Best Lawyers®*, 2021

# Rachel A. Cocalis | Partner

Rachel Cocalis is a partner in the Firm's San Diego office. She represents pension funds and class members in securities fraud class actions. Cocalis was on the team of Robbins Geller attorneys who obtained a $97.5 million recovery in *Marcus v. J.C. Penney Company, Inc*.

Most recently, Cocalis was a key member of the Robbins Geller litigation team in *Monroe County Employees' Retirement System v. The Southern Company* in which a $87.5 million settlement was reached after three years of litigation. The settlement resolved claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant that was designed to transform coal into synthetic gas that could then be used to fuel the power plant. Cocalis was also on the litigation team that obtained a settlement of up to $85 million in *In re Morning Song Bird Food Litigation*, resolving claims that Scotts Miracle-Gro knowingly sold wild bird food treated with pesticides that are hazardous to birds.

## Education

B.A., Princeton University, 2010; J.D., University of California, Hastings College of the Law, 2016

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers*®, 2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2025; Rising Star, *Super Lawyers Magazine*, 2025; 500 X - The Next Generation, *Lawdragon*, 2024; J.D., *magna cum laude*, University of California, Hastings College of the Law, 2016; B.A., High Honors, Princeton University, 2010

# Brian E. Cochran | Partner

Brian Cochran is a partner in the Firm's San Diego and Chicago offices. He focuses his practice on complex securities, shareholder, consumer protection, and ERISA litigation. Cochran specializes in case investigation and initiation and lead plaintiff issues arising under the Private Securities Litigation Reform Act of 1995. He has developed dozens of cases under the federal securities laws and recovered billions of dollars for injured investors and consumers. Several of Cochran's cases have pioneered new ground, such as cases on behalf of cryptocurrency investors and in blank check companies (a.k.a "SPACs"), and sparked follow-on governmental investigations into corporate malfeasance.

Cochran was a member of the litigation team that achieved a $1.21 billion settlement in the *Valeant Pharmaceuticals* securities litigation. Cochran also developed the *Dynamic Ledger* securities litigation, one of the first cases to challenge a cryptocurrency issuer's failure to register under the federal securities laws, which settled for $25 million. In addition, Cochran was part of the team that secured a historic $25 million settlement on behalf of Trump University students, which Cochran prosecuted on a *pro bono* basis. Other notable recoveries include: *Rite Aid Merger* ($192.5 million); *Exelon* ($173 million); *Alta Mesa* ($126.3 million); *Micro Focus* ($107.5 million); *Walgreens* ($105 million); *VMWare* ($102.5 million); *Scotts Miracle-Gro* (up to $85 million); *Psychiatric Solutions* ($65 million); *SQM Chemical & Mining Co. of Chile* ($62.5 million); *GE ERISA* ($61 million); *HPE-DXC Merger* ($47.5 million, subject to court approval); *Grubhub* ($42 million); *Sea, Ltd.* ($40 million); *Big Lots* ($38 million); *Credit Suisse* ($32.5 million); *Waste Management* ($30 million, subject to court approval); *GoHealth* ($29.5 million); *Reckitt Benckiser* ($19.6 million); *DouYu* ($15 million); *REV Group* ($14.25 million); *Fifth Street Finance* ($14 million); *Third Avenue Management* ($14 million); *Funko* ($14 million); *LJM* ($12.85 million); *Sealed Air* ($12.5 million); and *Camping World* ($12.5 million).

## Education

A.B., Princeton University, 2006; J.D., University of California at Berkeley School of Law, Boalt Hall, 2012

## Honors / Awards

Future Star, *Benchmark Litigation*, 2026; Leading Litigator in America, *Lawdragon*, 2025-2026; Best Lawyer in America, *Best Lawyers®*, 2025-2026; Leading Lawyer, *The Legal 500*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; 40 & Under List, *Benchmark Litigation*, 2021, 2023-2024; Next Generation Partner, *The Legal 500*, 2020-2023; Rising Star, *Super Lawyers Magazine*, 2020-2022; Rising Star, *The Legal 500*, 2019; A.B., with Honors, Princeton University, 2006; J.D., Order of the Coif, University of California at Berkeley School of Law, Boalt Hall, 2012

# Mark Conover | Partner

Mark Conover is a partner with Robbins Geller, based in the Firm's San Diego office. With over 50 felony jury trials and a distinguished career as a former federal prosecutor, Conover brings a wealth of trial experience to the Firm. He focuses on complex investigations, securities fraud litigation, and high-stakes trials, drawing on his extensive background in handling large-scale financial fraud, public corruption, and corporate misconduct cases.

Conover began his legal career as a litigation associate at Luce, Forward, Hamilton & Scripps LLP, before joining the U.S. Attorney's Office for the Southern District of California. There, he rose through the ranks to serve as second-in-command, overseeing the day-to-day administration of one of the largest U.S. Attorney's offices in the nation. At the U.S. Attorney's Office, Conover also served as Chief of the Major Frauds and Public Corruption Section, where he oversaw the prosecution of complex cases that resulted in groundbreaking convictions and exceptional outcomes. He played a key role in prosecuting high-profile cases, including the conviction of a sitting U.S. Congressman.

Throughout his tenure at the U.S. Attorney's Office, Conover prosecuted and convicted high-level executives at publicly traded companies and led investigations into violations of the Foreign Corrupt Practices Act (FCPA). His strategic collaborations with agencies such as the FBI, IRS, SEC, and DOJ have been instrumental in tackling multi-jurisdictional investigations and holding corporate and government wrongdoers accountable. These experiences gave him invaluable insights into the investigation of securities fraud by the DOJ and the SEC.

In addition to his legal practice, Conover has served as an adjunct professor at California Western School of Law for over a decade, mentoring the next generation of lawyers. He also served for many years as a DOJ mediator, successfully resolving disputes across the country.

## Education

B.S., Utah Valley University, 2001; J.D., University of Southern California School of Law, 2004

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2026

# Sheri M. Coverman | Partner

Sheri Coverman is a partner in the Firm's Boca Raton office. Her practice focuses on complex class actions, including securities, corporate governance, and consumer fraud litigation.

Coverman is a member of the Firm's Institutional Outreach Team, which provides advice to the Firm's institutional clients, including numerous public pension systems and Taft-Hartley funds throughout the United States, on issues related to corporate fraud, shareholder litigation, and corporate governance issues. Coverman frequently addresses trustees regarding their options for seeking redress for losses due to violations of securities laws and assists in ongoing litigation involving many Firm clients. Coverman's institutional clients are also involved in other types of class actions, namely: *In re National Prescription Opiate Litigation*.

## Education
B.A., University of Florida, 2008; J.D., University of Florida Levin College of Law, 2011

## Honors / Awards
Best Lawyer in America: One to Watch, *Best Lawyers*®, 2026

# Joseph D. Daley | Partner

Joseph Daley is a partner in the Firm's San Diego office, serves on the Firm's Securities Hiring Committee, and is a member of the Firm's Appellate Practice Group. Precedents include: *City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17 (2d Cir. 2020); *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36 (2d Cir. 2017); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935 (10th Cir. 2005); *Fikes Wholesale, Inc. v. Visa U.S.A., Inc.*, 62 F.4th 704 (2d Cir. 2023); *Frank v. Dana Corp.* ("*Dana I*"), 547 F.3d 564 (6th Cir. 2008); *Frank v. Dana Corp.* ("*Dana II*"), 646 F.3d 954 (6th Cir. 2011); *Freidus v. Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248 (11th Cir. 2009); *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012); *Rosenbloom v. Pyott* ("*Allergan*"), 765 F.3d 1137 (9th Cir. 2014); *San Diego Cnty. Emps. Ret. Ass'n v. Johnson & Johnson*, 2025 U.S. App. LEXIS 18986 (3d Cir. July 30, 2025); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011); and *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353 (5th Cir. 2004). Daley is admitted to practice before the U.S. Supreme Court, as well as before 12 U.S. Courts of Appeals around the nation.

## Education
B.S., Jacksonville University, 1981; J.D., University of San Diego School of Law, 1996

## Honors / Awards
Best Lawyer in America, *Best Lawyers*®, 2024-2026; Seven-time Super Lawyer, *Super Lawyers Magazine*; Appellate Moot Court Board, Order of the Barristers, University of San Diego School of Law; Best Advocate Award (Traynore Constitutional Law Moot Court Competition), First Place and Best Briefs (Alumni Torts Moot Court Competition and USD Jessup International Law Moot Court Competition)

## Stuart A. Davidson | Partner

Stuart Davidson is a partner in the Firm's Boca Raton office. His practice focuses on complex consumer class actions, including cases involving deceptive and unfair trade practices, privacy and data breach issues, and antitrust violations.

He has served as class counsel in some of the nation's most significant privacy and consumer cases, including: *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747-JD (N.D. Cal.) ($650 million recovery in a cutting-edge class action concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-md-02752-LHK (N.D. Cal.) ($117.5 million recovery in the largest data breach in history); *Kehoe v. Fidelity Federal Bank & Trust*, No. 9:03-cv-80593-DTKH (S.D. Fla.) ($50 million recovery in Driver's Privacy Protection Act case on behalf of half-a-million Florida drivers against a national bank); *In re Independent Living Systems Data Breach Litigation*, No. 1:23-cv-21060-KMW (S.D. Fla.) ($14 million recovery); *In re Fortra File Transfer Software Data Security Breach Litigation*, No. 1:24-md-03090-RAR (S.D. Fla.) ($20 million recovery, representing Aetna patients); *In re American Financial Resources, Inc. Data Breach Litigation*, No. 2:22-cv-01757-MCA-JSA (D.N.J.) ($2.5 million recovery); *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, No. 3:11-md-02258-AJB-MDD (S.D. Cal.) (settlement valued at $15 million concerning the massive data breach of Sony's PlayStation Network); and *In re Solara Medical Supplies Data Breach Litigation*, No. 3:19-cv-02284-H-KSC (S.D. Cal.) ($5 million all-cash settlement for 114,000 victims of healthcare data breach).

Davidson currently serves as Plaintiffs' Co-Lead Counsel in *In re Perry Johnson & Associates Medical Transcription Data Security Breach Litigation*, No. 1:24-md-03096-RPK-LGD (E.D.N.Y.), *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 2:19-md-02904-MCA-MAH (D.N.J.) (representing class of LabCorp customers), and *Garner v. Amazon.com, Inc.*, No. 2:21-cv-00750-RSL (W.D. Wash.) (certified class of 100 million Amazon Alexa registrants alleging Amazon's deceptive advertising for Alexa-enabled devices); on Plaintiffs' Executive Committee in *In re Lakeview Loan Servicing Data Breach Litigation*, No. 1:22-cv-20955-DPG (S.D. Fla.); and on Plaintiffs' Steering Committee in *In re FTX Cryptocurrency Exchange Collapse Litigation*, No. 1:23-md-03076-KMM (S.D. Fla.). Davidson also currently represents the State of Arkansas in a major antitrust enforcement action, *State of Arkansas ex rel. Griffin v. Syngenta Crop Protection AG*, No. 4:22-cv-01287-BSM (E.D. Ark.) and a privacy enforcement action, *State of Arkansas ex rel. Griffin v. General Motors LLC*, No. 54CV-25-77 (Ark. Cir. Ct., Phillips Cnty.).

Davidson also spearheaded several aspects of *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, No. 2:17-md-02785-DDC-TJJ (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen, which allowed the prices of the life-saving EpiPen to rise over 600% in 9 years), served as Co-Lead Class Counsel in three cases brought against Genworth Life Insurance Company on behalf of long-term care insureds, *Skochin v. Genworth Life. Ins. Co.*, No. 3:19-cv-00049-REP (E.D. Va.); *Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-00019-REP (E.D. Va.); and *Haney v. Genworth Life Ins. Co.*, No. 3:22-cv-00055-REP (E.D. Va.), recovering hundreds of millions of dollars in cash damages for policyholders, and served as Plaintiffs' Co-Lead Counsel in *In re NHL Players' Concussion Injury Litigation*, No. 0:14-md-02551-SRN-BRT (D. Minn.) (representing retired National Hockey League players in multidistrict litigation suit against the NHL regarding injuries suffered due to repetitive head trauma and concussions), and in *In re Pet Food Products Liability Litigation*, No. 1:07-cv-02867-NLH-AMD (D.N.J.) ($24 million recovery in multidistrict consumer class action on behalf of thousands of aggrieved pet owners nationwide against some of the nation's largest pet food manufacturers, distributors, and retailers). He also served as Plaintiffs' Co-Lead Counsel in *In re*

*UnitedGlobalCom, Inc. Shareholder Litigation*, C.A. No. 1012-VCS (Del. Ch.) ($25 million recovery weeks before trial); *In re Winn-Dixie Stores, Inc. Shareholder Litigation*, No. 16-2011-CA-010616 (Fla. Cir. Ct.) ($11.5 million recovery for former Winn-Dixie shareholders following the corporate buyout by BI-LO); and *In re AuthenTec, Inc. Shareholder Litigation*, No. 5-2012-CA-57589 (Fla. Cir. Ct.) ($10 million recovery for former AuthenTec shareholders following a merger with Apple). The latter two cases are the two largest merger and acquisition recoveries in Florida history.

Davidson is a former lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, he tried over 30 jury trials and defended individuals charged with major crimes ranging from third-degree felonies to life and capital felonies.

## Education

B.A., State University of New York at Geneseo, 1993; J.D., Nova Southeastern University Shepard Broad College of Law, 1996

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2023-2026; Litigation Star, *Benchmark Litigation*, 2023-2026; Leading Litigator in America, *Lawdragon*, 2024-2026; Best Lawyer in America, *Best Lawyers®*, 2026; Recommended Lawyer, *The Legal 500*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2020-2025; Law360 Distinguished Legal Writing Award, *The Burton Awards Program*, 2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2022; Super Lawyer, *Super Lawyers Magazine*, 2021-2022; One of "Florida's Most Effective Lawyers" in the Privacy category, American Law Media, 2020; J.D., *Summa Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 1996; Associate Editor, *Nova Law Review*, Book Awards in Trial Advocacy, International Law, and Criminal Pretrial Practice

# Jason C. Davis | Partner

Jason Davis is a partner in the Firm's San Francisco office where he practices securities class actions and complex litigation involving equities, fixed-income, synthetic, and structured securities issued in public and private transactions. Davis was on the trial team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Most recently, he was part of the litigation team in *Luna v. Marvell Tech. Grp., Ltd.*, resulting in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors.

Before joining the Firm, Davis focused on cross-border transactions, mergers and acquisitions at Cravath, Swaine and Moore LLP in New York.

## Education

B.A., Syracuse University, 1998; J.D., University of California at Berkeley, Boalt Hall School of Law, 2002

## Honors / Awards

B.A., *Summa Cum Laude*, Syracuse University, 1998; International Relations Scholar of the year, Syracuse University; Teaching fellow, examination awards, Moot court award, University of California at Berkeley, Boalt Hall School of Law

# Mark J. Dearman | Partner

Mark Dearman is a partner in the Firm's Boca Raton office, where his practice focuses on consumer fraud, securities fraud, mass torts, antitrust, and whistleblower litigation.

Dearman, along with other Robbins Geller attorneys, is currently leading the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*, No. 1:17-md-02804 (N.D. Ohio). He was appointed to the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924 (S.D. Fla.), and as Chair of the Plaintiffs' Executive Committee in *In re Apple Inc. Device Performance Litigation*, No. 5:18-md-02827 (N.D. Cal.), Dearman, along with co-counsel, obtained a $310 million settlement. His other recent representative cases include serving as class counsel in *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 3:19-md-02913 (N.D. Cal.); *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, No. 3:21-md-02996 (N.D. Cal.); *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747 (N.D. Cal.) ($650 million recovery in a class action concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent); *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, No. 2:17-md-02785 (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen); *In re FieldTurf Artificial Turf Sales & Marketing Practices Litigation*, No. 3:17-md-02779 (D.N.J.); *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942 (S.D. Cal. 2012); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 2016 U.S. Dist. LEXIS 1357 (N.D. Cal. Jan. 5, 2016); *In re Aluminum Warehousing Antitrust Litigation*, 95 F. Supp. 3d 419 (S.D.N.Y. 2015); *In re Liquid Aluminum Sulfate Antitrust Litigation*, No. 2:16-md-2687 (D.N.J.); *In re Winn-Dixie Stores, Inc. Shareholder Litigation*, No. 16-2011-CA-010616 (Fla. 4th Jud. Cir. Ct., Duval Cnty.); *Gemelas v. Dannon Co. Inc.*, No. 1:08-cv-00236 (N.D. Ohio); and *In re AuthenTec, Inc. Shareholder Litigation*, No. 05-2012-CA-57589 (Fla. 18th Jud. Cir. Ct., Brevard Cnty.).

## Education

B.A., University of Florida, 1990; J.D., Nova Southeastern University, 1993

## Honors / Awards

AV rated by Martindale-Hubbell; Leading Lawyer in America, *Lawdragon*, 2023-2026; Leading Litigator in America, *Lawdragon*, 2024-2026; Best Lawyer in America, *Best Lawyers®*, 2024-2026; Super Lawyer, *Super Lawyers Magazine*, 2014-2020, 2025; Recommended Lawyer, *The Legal 500*, 2023, 2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2020-2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; In top 1.5% of Florida Civil Trial Lawyers in *Florida Trend*'s Florida Legal Elite, 2004, 2006

# Kathleen B. Douglas | Partner

Kathleen Douglas is a partner in the Firm's Boca Raton office. She focuses her practice on securities fraud class actions and consumer fraud. Most recently, Douglas and a team of Robbins Geller attorneys obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever.

Douglas was also a key member of the litigation team in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, in which she and team of Robbins Geller attorneys achieved a substantial $925 million recovery. In addition to the monetary recovery, UnitedHealth also made critical changes to a number of its corporate governance policies, including electing a shareholder-nominated member to the company's Board of Directors. Likewise, in *Nieman v. Duke Energy Corp.*, she and a team of attorneys obtained a $146.25 million recovery, which is the largest recovery in North Carolina for a case involving securities fraud and is one of the five largest recoveries in the Fourth Circuit. In addition, Douglas was a member of the team of attorneys that represented investors in *Knurr v. Orbital ATK, Inc.*, which recovered $108 million for shareholders and is believed to be the fourth-largest securities class action settlement in the history of the Eastern District of Virginia. Douglas has served as class counsel in several class actions brought on behalf of Florida emergency room physicians. These cases were against some of the nation's largest Health Maintenance Organizations and settled for substantial increases in reimbursement rates and millions of dollars in past damages for the class.

## Education

B.S., Georgetown University, 2004; J.D., University of Miami School of Law, 2007

## Honors / Awards

Future Star, *Benchmark Litigation*, 2025-2026; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2023-2025; Best Lawyer in America: One to Watch, *Best Lawyers*®, 2024-2025; 40 & Under List, *Benchmark Litigation*, 2023; 40 & Under Hot List, *Benchmark Litigation*, 2021; Rising Star, *Super Lawyers Magazine*, 2012-2017; B.S., *Cum Laude*, Georgetown University, 2004

# Daniel S. Drosman | Partner

Dan Drosman is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He focuses his practice on securities fraud and other complex civil litigation and has obtained significant recoveries for investors in cases such as *Morgan Stanley*, *Cisco Systems*, *The Coca-Cola Company*, *Petco*, *PMI*, and *America West*. Drosman served as lead trial counsel in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Drosman also helped secure a $388 million recovery for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* On a percentage basis, that settlement is the largest recovery ever achieved in an RMBS class action. Drosman also served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial. The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

Most recently, Drosman led a team of Robbins Geller attorneys to a record-breaking $809.5 million

settlement in *In re Twitter, Inc. Sec. Litig.*, which settled the day before trial was set to commence. The settlement is the largest securities fraud class action recovery in the Ninth Circuit in the last decade and one of the top 20 shareholder class action settlements of all time. Drosman was part of the Robbins Geller litigation team in *Monroe County Employees' Retirement System v. The Southern Company* in which an $87.5 million settlement was reached after three years of litigation. The settlement resolved claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant that was designed to transform coal into synthetic gas that could then be used to fuel the power plant. In another recent case, Drosman and the Robbins Geller litigation team obtained a $62.5 million settlement in *Villella v. Chemical and Mining Company of Chile Inc.*, which alleged that Sociedad Química y Minera de Chile S.A. ("SQM") violated the Securities Exchange Act of 1934 by issuing materially false and misleading statements regarding the Company's failure to disclose that money from SQM was channeled illegally to electoral campaigns for Chilean politicians and political parties as far back as 2009. SQM had also filed millions of dollars' worth of fictitious tax receipts with Chilean authorities in order to conceal bribery payments from at least 2009 through fiscal year 2014.

In a pair of cases – *Abu Dhabi Commercial Bank, et al. v. Morgan Stanley & Co. Inc.* ("*Cheyne*" litigation) and *King County, Washington, et al. v. IKB Deutsche Industriebank AG* ("*Rhinebridge*" litigation) – Drosman led a group of attorneys prosecuting fraud claims against the credit rating agencies, where he is distinguished as one of the few plaintiffs' counsel to defeat the rating agencies' traditional First Amendment defense and their motions for summary judgment based on the mischaracterization of credit ratings as mere opinions not actionable in fraud.

Before joining the Firm, Drosman served as an Assistant District Attorney for the Manhattan District Attorney's Office, and an Assistant United States Attorney in the Southern District of California, where he investigated and prosecuted violations of the federal narcotics, immigration, and official corruption law.

## Education

B.A., Reed College, 1990; J.D., Harvard Law School, 1993

## Honors / Awards

San Diego Elite Lawyer, *The Legal 500*, 2026; Leading Lawyer in America, *Lawdragon*, 2018-2026; Litigation Star, *Benchmark Litigation*, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2026; Leading Litigator in America, *Lawdragon*, 2026; Best Lawyer in America, *Best Lawyers®*, 2019-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Legend, *Lawdragon*, 2025; Recommended Lawyer, *The Legal 500*, 2017-2018, 2023-2024; Lawyer of the Year, *Best Lawyers®*, 2022, 2024; West Trailblazer, *The American Lawyer*, 2022; Top Plaintiff Lawyer, *Daily Journal*, 2022; Plaintiff Litigator of the Year, *Benchmark Litigation*, 2022; Titan of the Plaintiffs Bar, *Law360*, 2022; Southern California Best Lawyers, *The Wall Street Journal*, 2021; Southern California Best Lawyer, *Best Lawyers®*, 2019-2021; Super Lawyer, *Super Lawyers Magazine*, 2017-2020; Top 100 Lawyer, *Daily Journal*, 2017; Department of Justice Special Achievement Award, Sustained Superior Performance of Duty; B.A., Honors, Reed College, 1990; *Phi Beta Kappa*, Reed College, 1990

# Thomas E. Egler | Partner

Thomas Egler is a partner in the Firm's San Diego office and focuses his practice on representing clients in major complex, multidistrict litigations, such as *Lehman Brothers*, *Countrywide Mortgage Backed Securities*, *WorldCom*, *AOL Time Warner*, and *Qwest*. He has represented institutional investors both as plaintiffs in individual actions and as lead plaintiffs in class actions.

Most recently, along with co-counsel and a team of Robbins Geller attorneys, Egler led the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*. In 2022, Egler served on the team of counsel in a federal bench trial in San Francisco in a case that had been selected as a bellwether in the multidistrict litigation. The team achieved combined settlements of nearly $70 million for San Francisco and more than $50 billion nationally from multiple pharmaceutical companies who were defendants in the national litigation. The Honorable Charles R. Breyer of the Northern District of California ruled that Walgreens, the only defendant remaining in the San Francisco case, was liable for its role in the opioid crisis in San Francisco.

Egler also has been a Lawyer Representative to the Ninth Circuit Judicial Conference from the Southern District of California, is a member of the Hon. William B. Enright Inn of Court in San Diego, and in the past has served on the Executive Board of the San Diego chapter of the Association of Business Trial Lawyers. Before joining the Firm, Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

## Education

B.A., Northwestern University, 1989; J.D., The Catholic University of America, Columbus School of Law, 1995

## Honors / Awards

Best Lawyer in America, *Best Lawyers*®, 2024-2026; Leading Lawyer in America, *Lawdragon*, 2024; Super Lawyer, *Super Lawyers Magazine*, 2017-2018; Associate Editor, *Catholic University Law Review*

# Alan I. Ellman | Partner

Alan Ellman is a partner in the Firm's Melville office, where he concentrates his practice on prosecuting complex securities fraud cases on behalf of institutional investors. Most recently, Ellman was on the team of Robbins Geller attorneys who obtained a $34.5 million recovery in *Patel v. L-3 Communications Holdings, Inc.*, which represents a high percentage of damages that plaintiffs could reasonably expect to be recovered at trial and is more than eight times higher than the average settlement of cases with comparable investor losses. He was also on the team of attorneys who recovered in excess of $34 million for investors in *In re OSG Sec. Litig.*, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity.

Ellman was also on the team of Robbins Geller attorneys who achieved final approval in *Curran v. Freshpet, Inc.*, which provides for the payment of $10.1 million for the benefit of eligible settlement class members. Additionally, he was on the team of attorneys who obtained final approval of a $7.5 million recovery in *Plymouth County Retirement Association v. Advisory Board Company*. In 2006, Ellman received a Volunteer and Leadership Award from Housing Conservation Coordinators (HCC) for his *pro bono* service defending a client in Housing Court against a non-payment action, arguing an appeal before the Appellate Term, and staffing HCC's legal clinic. He also successfully appealed a *pro bono* client's criminal sentence before the Appellate Division.

## Education

B.S., B.A., State University of New York at Binghamton, 1999; J.D., Georgetown University Law Center, 2003

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2017-2025; Pro Bono Publico Award, *Casa Cornelia Law Center*, 2021-2022; Rising Star, *Super Lawyers Magazine*, 2014-2015; B.S., B.A., *Cum Laude*, State University of New York at Binghamton, 1999

# William J. Geddish | Partner

William Geddish is a partner with the Firm and is based in the Melville office, where his practice focuses on complex securities litigation. Before joining the Firm, he was an associate in the New York office of a large international law firm, where his practice focused on complex commercial litigation.

Since joining the Firm, Geddish has played a significant role in the following litigations: *In re Barrick Gold Sec. Litig.* ($140 million recovery); *Scheufele v. Tableau Software, Inc.* ($95 million recovery); *Landmen Partners, Inc. v. The Blackstone Grp., L.P.* ($85 million recovery); *In re Jeld-Wen Holding, Inc. Sec. Litig.* ($40 million recovery); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.* ($33 million recovery); *City of Roseville Emps' Ret. Sys. v. EnergySolutions, Inc.* ($26 million recovery); *Beaver Cnty. Emps' Ret. Fund v. Tile Shop Holdings, Inc.* ($9.5 million recovery); and *Barbara Marciano v. Schell & Kampeter, Inc.* ($2 million recovery).

## Education

B.A., Sacred Heart University, 2006, J.D., Hofstra University School of Law, 2009

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2013-2024; 500 X – The Next Generation, *Lawdragon*, 2023; J.D., *Magna Cum Laude*, Hofstra University School of Law, 2009; Gina Maria Escarce Memorial Award, Hofstra University School of Law

# Paul J. Geller | Partner

Paul Geller is a founding partner of Robbins Geller and head of the Firm's Consumer Practice Group. Over the last 30 years, Geller has served as lead counsel in some of the country's most high-profile consumer, antitrust, and securities class actions and has recovered billions for communities, consumers, and investors harmed by corporate abuse.

Before devoting his practice to the representation of consumers and investors, Geller defended companies in high-stakes class action and multi-district litigation, providing him with an invaluable perspective from "both sides of the 'v.'" An experienced trial lawyer, he has tried bench and jury trials on behalf of plaintiffs and defendants and has argued before numerous state, federal, and appellate courts throughout the United States.

Geller's ability to earn respect and trust from all sides in difficult negotiations has been recognized by the bar and legal publications. *Chambers* notes that "Paul is a consummate professional who has the ability to work seamlessly and collaboratively to address daunting challenges that arise in complex mass tort litigation."

He serves as a key leader of the nationwide litigation against the companies responsible for the U.S. opioid addiction crisis. He played a key role in negotiating and architecting the complex settlements that resulted in over $50 billion being paid to communities across the country struggling with the fallout of the opioid crisis.

He has also successfully litigated and negotiated precedent-setting class recoveries in multiple practice areas, including data privacy, antitrust, products liability, and securities cases.

- **Facebook Data Privacy Case – $650 Million**: He secured the then-largest privacy class action

settlement in history – a $650 million recovery in a cutting-edge class action against Facebook. The case concerned Facebook's use of biometric identifiers through its "tag" feature, which Geller's team challenged under a new biometric privacy law that had never before been applied in a class action. The federal judge that presided over the case called it a "landmark result" and a "major win for consumers." In addition to the monetary recovery, Facebook disabled the tag feature altogether, deleting 1 billion facial profiles and discontinuing the related facial recognition program.

- **Volkswagen "Clean Diesel" Case – $17 Billion**: Geller was a member of the leadership team representing consumers in the massive Volkswagen "Clean Diesel" emissions case. The San Francisco legal newspaper *The Recorder* labeled the group that was appointed in that case, which settled for more than $17 billion, a "class action dream team."

- **"EpiPen" Antitrust Case – $609 Million**: As co-lead counsel, Geller secured a recovery of $609 million for overcharged purchasers of the "EpiPen" device in a nationwide class action alleging that the manufacturer and marketer of the EpiPen engaged in anti-competitive and unfair business conduct in their sale and marketing of the auto-injector device. The American Antitrust Institute honored Geller and the litigation team for Outstanding Antitrust Litigation Achievement in Private Law Practice for this result.

## Education

B.S., University of Florida, 1990; J.D., Emory University School of Law, 1993

## Honors / Awards

Senior Fellow, Litigation Counsel of America (LCA) Proven Trial Lawyers; Rated AV by Martindale-Hubbell; Leading Lawyer in America, *Lawdragon*, 2006-2007, 2009-2026; Leading Litigator in America, *Lawdragon*, 2024-2026; Best Lawyer in America, *Best Lawyers®*, 2017-2026; Leading Global Litigator, *Lawdragon*, 2025; Super Lawyer, *Super Lawyers Magazine*, 2007-2025; Recommended Lawyer, *The Legal 500*, 2016, 2019, 2023-2025; Ranked by *Chambers USA*, 2021-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2022; South Trailblazer, *The American Lawyer*, 2022; Class Action MVP, *Law360*, 2022; Florida Best Lawyer in America, *Best Lawyers®*, 2017-2021; One of "Florida's Most Effective Lawyers" in the Privacy category, American Law Media, 2020; Legend, *Lawdragon*, 2020; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Lawyer of the Year, *Best Lawyers®*, 2018; Attorney of the Month, *Attorney At Law*, 2017; Featured in "Lawyer Limelight" series, *Lawdragon*, 2017; Top Rated Lawyer, South Florida's Legal Leaders, *Miami Herald*, 2015; Litigation Star, *Benchmark Litigation*, 2013; "Legal Elite," *Florida Trend Magazine*; One of "Florida's Most Effective Lawyers," American Law Media; One of Florida's top lawyers in *South Florida Business* Journal; One of the Nation's Top "40 Under 40," *The National Law Journal*; One of Florida's Top Lawyers, *Law & Politics*; Editor, *Emory Law Journal*; Order of the Coif, Emory University School of Law

# Robert D. Gerson | Partner

Robert Gerson is a partner in the Firm's Melville office, where he practices securities fraud litigation and other complex matters.

Since joining the Firm, Gerson has played a significant role in prosecuting numerous high-stakes investor litigations. Most recently, Gerson and a team of Robbins Geller attorneys obtained a $27.5 million settlement in *Luna v. Carbonite, Inc.*, following a precedent-setting decision by the U.S. Court of Appeals for the First Circuit. Gerson was also a member of the team in *In re Dell Technologies Inc. Class V Stockholders Litigation*, which settled in 2023 for $1 billion in cash – a record in the Delaware Chancery Court and the largest settlement in U.S. state court history. Other notable cases Gerson has played a critical role in at the Firm include: *UA Local 13 & Employers Group Insurance Fund v. Sealed Air Corp.* ($12.5 million recovery); *In re PPDAI Group Sec. Litig.* ($9 million recovery); and *Sponn v. Emergent BioSolutions Inc.* ($6.5 million recovery).

## Education

B.A., University of Maryland, 2006; J.D., New York Law School, 2009

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2021-2025; Best Lawyer in America: One to Watch, *Best Lawyers*®, 2024-2025; 500 X – The Next Generation, *Lawdragon*, 2023; Rising Star, *Super Lawyers Magazine*, 2015-2020

# Elise J. Grace | Partner

Elise Grace is a partner in the San Diego office and counsels the Firm's institutional clients on options to secure premium recoveries in securities litigation both within the United States and internationally. Grace is a frequent lecturer and author on securities and accounting fraud, and develops annual MCLE and CPE accredited educational programs designed to train public fund representatives on practices to protect and maximize portfolio assets, create long-term portfolio value, and best fulfill fiduciary duties. Grace has routinely been named a Recommended Lawyer by *The Legal 500* and named a Leading Plaintiff Financial Lawyer by *Lawdragon*. Grace has prosecuted various significant securities fraud class actions, as well as the AOL Time Warner state and federal securities opt-out litigations, which resulted in a combined settlement of over $629 million for defrauded investors. Before joining the Firm, Grace practiced at Clifford Chance, where she defended numerous Fortune 500 companies in securities class actions and complex business litigation.

## Education

B.A., University of California, Los Angeles, 1993; J.D., Pepperdine School of Law, 1999

## Honors / Awards

Securities Litigation Lawyer of the Year, *Lawyer Monthly*, 2023, 2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Recommended Lawyer, *The Legal 500*, 2016-2017; J.D., *Magna Cum Laude*, Pepperdine School of Law, 1999; American Jurisprudence Bancroft-Whitney Award – Civil Procedure, Evidence, and Dalsimer Moot Court Oral Argument; Dean's Academic Scholarship Recipient, Pepperdine School of Law; B.A., *Summa Cum Laude*, University of California, Los Angeles, 1993; B.A., *Phi Beta Kappa*, University of California, Los Angeles, 1993

# Tor Gronborg | Partner

Tor Gronborg is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He often lectures on topics such as the Federal Rules of Civil Procedure and electronic discovery. Gronborg has served as lead or co-lead counsel in numerous securities fraud cases that have collectively recovered more than $4.4 billion for investors. Most recently, Gronborg and a team of Robbins Geller attorneys obtained an $809 million settlement in *In re Twitter, Inc. Sec. Litig.*, a case that did not settle until the day before trial was set to commence.

In addition to *Twitter*, Gronborg's work has included significant recoveries against corporations such as Valeant Pharmaceuticals ($1.21 billion), Cardinal Health ($600 million), Motorola ($200 million), Duke Energy ($146.25 million), Sprint Nextel Corp. ($131 million), and Prison Realty ($104 million), to name a few. Gronborg was also a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, No. SACV15-0865 (C.D. Cal.), a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial and ultimately settled for 100% of the claimed damages plus prejudgment interest.

On three separate occasions, Gronborg's pleadings have been upheld by the federal Courts of Appeals (*Broudo v. Dura Pharms., Inc.*, 339 F.3d 933 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 336 (2005); *In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008)).

## Education

B.A., University of California, Santa Barbara, 1991; Rotary International Scholar, University of Lancaster, U.K., 1992; J.D., University of California, Berkeley, 1995

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2022-2026; Litigation Star, *Benchmark Litigation*, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2025-2026; Best Lawyer in America, *Best Lawyers®*, 2022-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Recommended Lawyer, *The Legal 500*, 2023-2024; West Trailblazer, *The American Lawyer*, 2022; Super Lawyer, *Super Lawyers Magazine*, 2013-2022; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2019; Moot Court Board Member, University of California, Berkeley; AFL-CIO history scholarship, University of California, Santa Barbara

## Ellen Gusikoff Stewart | Partner

Ellen Stewart is a partner in the Firm's San Diego office, and is a member of the Firm's Summer Associate Hiring Committee. She currently practices in the Firm's settlement department, negotiating and documenting complex securities, merger, ERISA, and derivative action settlements. Notable recent settlements include: *Evanston Police Pension Fund v. McKesson Corp.* (N.D. Cal. 2023) ($141 million); *In re Twitter Inc. Sec. Litig.* (N.D. Cal. 2022) ($809.5 million); *In re Facebook Biometric Info. Privacy Litig.* (N.D. Cal. 2021) ($650 million); *In re Am. Realty Cap. Props., Inc. Litig.* (S.D.N.Y. 2020) ($1.025 billion); *Klein v. Altria Group, Inc.* (E.D. Va. 2022) ($90 million); *KBC Asset Management v. 3D Systems Corp.* (D.S.C. 2018) ($50 million); and *Luna v. Marvell Tech. Grp.* (N.D. Cal. 2018) ($72.5 million).

Stewart has served on the Federal Bar Association Ad Hoc Committee for the revisions to the Settlement Guidelines for the Northern District of California, was a contributor to the Guidelines and Best Practices – Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions manual of the Bolch Judicial Institute at the Duke University School of Law, and speaks at conferences around country on current settlement and notice issues.

## Education
B.A., Muhlenberg College, 1986; J.D., Case Western Reserve University, 1989

## Honors / Awards
Rated Distinguished by Martindale-Hubbell

# Robert Henssler | Partner

Bobby Henssler is a partner in the Firm's San Diego office, where he focuses his practice on securities fraud and other complex civil litigation. He has obtained significant recoveries for investors in cases such as *Under Armour*, *Blackstone*, and *J.C. Penney*.

Most recently, Henssler led a team of Robbins Geller attorneys in obtaining a $434 million settlement in *In re Under Armour Sec. Litig.* The case was previously dismissed with prejudice in 2019, but then resurrected through a highly unusual procedural maneuver, a successful motion for an indicative ruling: asking the federal judge who had dismissed the case to issue an indicative opinion informing the Fourth Circuit that he would revive the original case if it were remanded to him. Over the next five years, the Robbins Geller team defeated defendants' motions for summary judgment and to exclude plaintiffs' expert witnesses. The case settled just weeks before a jury trial was set to begin in Baltimore, Maryland. The $434 million recovery is the second largest securities-fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

Henssler was also lead counsel in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action. Henssler has had many other successful results, including in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* ($1.21 billion), *Marcus v. J.C. Penney Company, Inc.* ($97.5 million recovery), *Landmen Partners Inc. v. The Blackstone Group L.P.* ($85 million recovery), *In re Novatel Wireless Sec. Litig.* ($16 million recovery), *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC* ($14 million settlement), and *Kmiec v. Powerwave Technologies, Inc.* ($8.2 million settlement), to name a few.

## Education

B.A., University of New Hampshire, 1997; J.D., University of San Diego School of Law, 2001

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2025-2026; Leading Litigator in America, *Lawdragon*, 2024-2026; Best Lawyer in America, *Best Lawyers®*, 2025-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2020-2021, 2023-2025; Top 100 Lawyer, *Daily Journal*, 2024; California Lawyer of the Year, *Daily Journal*, 2022; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020; Recommended Lawyer, *The Legal 500*, 2018-2019

# Steven F. Hubachek | Partner

Steve Hubachek is a partner in the Firm's San Diego office. He is a member of the Firm's appellate group, where his practice concentrates on federal appeals. He has more than 25 years of appellate experience, has argued over 100 federal appeals, including 3 cases before the United States Supreme Court and 7 cases before en banc panels of the Ninth Circuit Court of Appeals. Prior to his work with the Firm, Hubachek joined Perkins Coie in Seattle, Washington, as an associate. He was admitted to the Washington State Bar in 1987 and was admitted to the California State Bar in 1990, practicing for many years with Federal Defenders of San Diego, Inc. He also had an active trial practice, including over 30 jury trials, and was Chief Appellate Attorney for Federal Defenders.

## Education

B.A., University of California, Berkeley, 1983; J.D., University of California College of the Law, San Francisco, 1987

## Honors / Awards

AV rated by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2014-2022; Super Lawyer, *Super Lawyers Magazine*, 2007-2009, 2019-2021; Assistant Federal Public Defender of the Year, National Federal Public Defenders Association, 2011; Appellate Attorney of the Year, San Diego Criminal Defense Bar Association, 2011 (co-recipient); President's Award for Outstanding Volunteer Service, Mid City Little League, San Diego, 2011; E. Stanley Conant Award for exceptional and unselfish devotion to protecting the rights of the indigent accused, 2009 (joint recipient); *The Daily Transcript* Top Attorneys, 2007; J.D., *Cum Laude*, Order of the Coif, Thurston Honor Society, University of California College of the Law, San Francisco, 1987

# Andrew W. Hutton | Partner

Drew Hutton is a partner in the Firm's San Diego office. Hutton has prosecuted a variety of securities actions, achieving high-profile recoveries and results. Representative cases against corporations and their auditors include *AOL Time Warner* ($2.5 billion) and *Williams Cos.* ($311 million). Representative cases against corporations and their executives include *Broadcom* ($150 million), *Bank OZK* ($45 million), and *Clarent* (class plaintiff's 10b-5 jury verdict against former CEO). Hutton is also active in shareholder derivative litigation, achieving monetary recoveries and governance changes, including *Premier* ($71 million), *Affiliated Computer Servs.* ($30 million), *KB Home* ($30 million), and *KeyCorp* (modified CEO stock options and governance). Hutton has also litigated securities cases in bankruptcy court (*WorldCom* – $15 million for individual claimant), and a complex options case before FINRA (eight-figure settlement for structured products investor).

Hutton is also experienced in complex, multi-district consumer litigation. Representative nationwide insurance cases include *Prudential* ($4 billion), *Metro. Life Ins. Co.* ($2 billion), and *Conseco Life Ins. Co.* ($200 million). Representative nationwide consumer lending cases include a $30 million class settlement of Truth-in-Lending claims against American Express, and a $24 million class settlement of RICO and RESPA claims against Community Bank of Northern Virginia (now PNC Bank).

Before joining Robbins Geller, Hutton was a public company accountant, Certified Public Accountant, and broker of stocks, options, and insurance products. Hutton has also served as an expert litigation consultant in both financial and corporate governance capacities. Hutton is often responsible for working with experts retained by the Firm in litigation and has conducted dozens of depositions of financial professionals, including audit partners, CFOs, directors, bankers, actuaries, and opposing experts.

## Education

B.A., University of California, Santa Barbara, 1983; J.D., Loyola Law School, 1994

# James I. Jaconette | Partner

James Jaconette is one of the founding partners of the Firm and is located in its San Diego office.  He manages cases in the Firm's  securities class action and shareholder derivative litigation practices.  He has served as one of the lead counsel in securities cases with recoveries to individual and institutional investors totaling over $8 billion.  He also advises institutional investors, including hedge funds, pension funds, and financial institutions.  Landmark securities actions in which he contributed in a primary litigating role include *In re Informix Corp. Sec. Litig.*, and *In re Dynegy Inc. Sec. Litig.* and *In re Enron Corp. Sec. Litig.*, where he represented lead plaintiff The Regents of the University of California.  Most recently, Jaconette was part of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee.  The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action.

## Education

B.A., San Diego State University, 1989; M.B.A., San Diego State University, 1992; J.D., University of California Hastings College of the Law, 1995

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; J.D., *Cum Laude*, University of California Hastings College of the Law, 1995; Associate Articles Editor, *Hastings Law Journal*, University of California Hastings College of the Law; B.A., with Honors and Distinction, San Diego State University, 1989

## J. Marco Janoski Gray | Partner

Marco Janoski is a partner in the Firm's San Diego office. His practice focuses on complex securities litigation and class actions. An experienced litigator, Janoski has secured record-setting recoveries for investors, including trial verdicts and large recoveries secured on the eve of trial.

Janoski recently served on the litigation team in *In re Alphabet, Inc. Securities Litigation* representing plaintiffs in a securities fraud case where Robbins Geller achieved a $350 million recovery. The recovery is the largest ever privacy or cybersecurity-related securities class action recovery and the Ninth Circuit's largest ever securities class action recovery following a complete dismissal. Janoski also served on the litigation teams in two securities fraud cases that are among the top ten securities recoveries of 2023: *In re Envision Healthcare Corporation Securities Litigation* ($177.5 million recovery) and *Louisiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.* ($109 million recovery). He served on the Firm's trial team in *In re Twitter, Inc. Securities Litigation* and helped secure an $809.5 million recovery for investors. The *Twitter* case settled the day before trial was set to commence in 2021 and is the largest securities fraud class action recovery in the Ninth Circuit in the last decade. Likewise, he and a team of Firm lawyers secured a $350 million settlement on the eve of trial in 2020 in *Smilovits v. First Solar, Inc.*, the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit at the time. Janoski also served on the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial in federal court.

## Education

Universidad Complutense de Madrid, 2010-2011; B.A., University of California, Santa Barbara, 2011; J.D., University of California College of the Law, San Francisco (formerly UC Hastings), 2015

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2026; 40 & Under List, *Benchmark Litigation*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2025; Rising Star, *Super Lawyers Magazine*, 2024-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; 500 X – The Next Generation, *Lawdragon*, 2023; J.D., *Magna Cum Laude*, University of California College of the Law, San Francisco (formerly UC Hastings), 2015

## Patton L. Johnson | Partner

Patton Johnson is a partner in the Firm's San Diego office, where he focuses on securities class actions on behalf of investors seeking redress for financial fraud.

In addition to his experience litigating securities cases, Johnson has substantial experience in financial markets and transactions.  He previously represented institutional clients in connection with cross-border financings, and before practicing law he worked at an global bank in New York and as an expat in Hong Kong.

## Education

B.S., University of Colorado, Boulder, 2005; J.D., University of California College of the Law, 2017

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2026; J.D., *Magna Cum Laude*, University of California, Hastings College of the Law, 2017

# Evan J. Kaufman | Partner

Evan Kaufman is a partner in the Firm's Melville office. He has recovered hundreds of millions of dollars for class members in securities, ERISA, and complex class actions.

Kaufman served as lead counsel in the *SandRidge Energy* securities litigation and obtained a $35.75 million global settlement, including $21.8 million for SandRidge common stock purchasers. As lead counsel in the *TD Banknorth* litigation, Kaufman and the Firm achieved a $50 million recovery after successfully objecting to a $3 million settlement submitted to the court on behalf of the class. The court in the *TD Banknorth* litigation stated: "This is one of the cases – there's probably been a half a dozen since I've been a judge that I handled which have – really through the sheer diligence and effort of plaintiffs' counsel – resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers . . . it appears plainly from the papers that you and your co-counsel have diligently, and at great personal expense and through the devotion of many thousands of hours of your time, prosecuted this case to a successful conclusion."

Kaufman served as co-lead class counsel on behalf of 212,000 participants in General Electric's 401(k) plan and obtained $61 million for the class, which was the largest recovery ever in an ERISA case alleging a retirement plan improperly offered proprietary funds. During the *GE ERISA* final settlement approval hearing, the court described the case as "hard-fought" with "interesting and difficult issues." Kaufman served as lead counsel or as an integral part of the team in other ERISA actions, including on behalf of participants in the retirement plans of Invesco, JP Morgan, and Wakemed.

Kaufman achieved notable results in numerous other securities class actions, including recovering $26 million in the *EnergySolutions* litigation, and in cases against Lockheed Martin, State Street, Fidelity, Warner Chilcott, Talkspace, Third Avenue Management, and Giant Interactive, among others.

In the *Third Avenue Management* litigation, when approving the $14.25 million settlement obtained by Kaufman and the Firm, the court commended the parties for their "wisdom" and "diligence" and concluded that "lead counsel diligently and with quality represented the interests of the class." In the *Giant Interactive* litigation, the court acknowledged the efforts of Kaufman and the Firm in achieving the favorable settlement for the class: "The Court also recognizes the diligence and hard work of plaintiffs' counsel in achieving such a settlement, particularly in light of the fact that this case (unlike many other securities class actions) was independently developed by plaintiffs' counsel, as opposed to following, or piggybacking on, a regulatory investigation or settlement."

## Education

B.A., University of Michigan, 1992; J.D., Fordham University School of Law, 1995

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine,* 2013-2015, 2017-2020, 2023-2025; Member, *Fordham International Law Journal,* Fordham University School of Law

## Ashley M. Kelly | Partner

Ashley Kelly is a partner in the Firm's San Diego office, where she represents large institutional and individual investors as a member of the Firm's antitrust and securities fraud practices. Her work is primarily federal and state class actions involving the federal antitrust and securities laws, common law fraud, breach of contract, and accounting violations. Kelly's case work has been in the financial services, oil & gas, e-commerce, and technology industries. In addition to being an attorney, she is a Certified Public Accountant. Kelly was an important member of the litigation team that obtained a $500 million settlement on behalf of investors in *Luther v. Countrywide Fin. Corp.*, which was the largest residential mortgage-backed securities purchaser class action recovery in history.

## Education

B.S., Pennsylvania State University, 2005; J.D., Rutgers University-Camden, 2011

## Honors / Awards

500 X – The Next Generation, *Lawdragon*, 2023-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2016, 2018-2021

# Christopher R. Kinnon | Partner

Christopher Kinnon is a partner in the Firm's San Diego office, where his practice focuses on securities fraud litigation. Kinnon and a team of Robbins Geller attorneys obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* (D.N.J.), a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever. In addition, Kinnon and a team of Robbins Geller attorneys obtained an $809 million settlement in *In re Twitter, Inc. Sec. Litig.*, a case that did not settle until the day before trial was set to commence.

Most recently, Kinnon was a key member of a team of Robbins Geller attorneys who obtained a $434 million settlement in *In re Under Armour Sec. Litig.* The case was previously dismissed with prejudice in 2019, but then resurrected through a highly unusual procedural maneuver, a successful motion for an indicative ruling: asking the federal judge who had dismissed the case to issue an indicative opinion informing the Fourth Circuit that he would revive the original case if it were remanded to him. Over the next five years, the Robbins Geller team defeated defendants' motions for summary judgment and to exclude plaintiffs' expert witnesses. The case settled just weeks before a jury trial was set to begin in Baltimore, Maryland. The $434 million recovery is the second largest securities-fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

Kinnon is currently representing investors in securities fraud actions against Green Dot Corporation (C.D. Cal.) and PricewaterhouseCoopers LLP (D.N.J.).

Before law school, Kinnon was a municipal sanitation worker and an elected executive board member with the Canadian Union of Public Employees, Local 1004 (CUPE 1004). Before that, he was a recording artist signed to prominent record labels in Canada and the United States.

## Education

B.A., University of British Columbia, 2008; J.D., University of Michigan Law School, 2017

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2026; Rising Star, *Super Lawyers Magazine*, 2024-2025; California Lawyer of the Year, *Daily Journal*, 2022

# David A. Knotts | Partner

David Knotts is a partner in the Firm's San Diego office. He focuses his practice on shareholder class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. Knotts is also part of the Firm's Delaware Practice Group and has taken multiple cases to trial in the Delaware Court of Chancery. Knotts has significant trial experience in high-stakes corporate litigation.

Knotts has been counsel of record for shareholders on a number of significant recoveries in courts throughout the country, including serving as the lead litigator on *Chabot v. Walgreens Boots Alliance, Inc.*, which culminated in a $192.5 million recovery for a class of Rite Aid investors. The *Walgreens* settlement was approved by the Middle District of Pennsylvania in February 2024 and resulted in the second largest securities recovery in Pennsylvania federal court history. That recovery represents a rarity in securities fraud litigation, whereby target-company investors obtained a significant cash recovery from an unaffiliated acquirer based on allegations that the acquirer issued misleading statements during the pendency of a merger.

Knotts also served as the lead litigator in *Murray v. EarthLink Holdings Corp.*, which, after six years of litigation, resulted in an $85 million settlement for former EarthLink stockholders in connection with the Windstream/EarthLink merger. The *EarthLink* settlement was approved by the Eastern District of Arkansas in February 2025 and, at the time, resulted in the largest securities class action recovery in the Eighth Circuit over the past five years.

In addition, Knotts served among lead counsel in *In re Rural/Metro Corp. S'holders Litig.*, which resulted in a groundbreaking $110 million post-trial recovery affirmed by the Delaware Supreme Court, as well as *In re Del Monte Foods Co. S'holders Litig.* ($89.4 million), *Websense* ($40 million), *In re Onyx S'holders Litig.* ($30 million), and *Harman* ($28 million). *Websense* and *Onyx* are both believed to be the largest post-merger class settlements in California state court history. When Knotts presented the settlement as lead counsel for the stockholders in *Joy Global*, the United States District Court for the Eastern District of Wisconsin noted that "this is a pretty extraordinary settlement, recovery on behalf of the members of the class. . . . [I]t's always a pleasure to work with people who are experienced and who know what they are doing."

## Education

B.S., University of Pittsburgh, 2001; J.D., Cornell Law School, 2004

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2026; Litigation Star, *Benchmark Litigation*, 2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; 40 & Under List, *Benchmark Litigation*, 2023; 40 & Under Hot List, *Benchmark Litigation*, 2018, 2020-2021; Next Generation Partner, *The Legal 500*, 2019-2021; Recommended Lawyer, *The Legal 500*, 2017-2019; Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California; Casa Cornelia Inns of Court; J.D., *Cum Laude*, Cornell Law School, 2004

# Peter Ko | Partner

Peter Ko is a partner in the Firm's San Diego office focused on complex investigation, litigation, trial, and appeals.

Before joining the Firm, Ko served 27 years as a federal prosecutor in Nevada and the Southern District of California, handling cases involving fraud, corruption, racketeering, and other crimes. He tried dozens of cases and litigated scores of appeals in federal courts and was assigned to handle numerous high-profile prosecutions of national or international significance. Since 2010, Ko also served at points as First Assistant United States Attorney, Chief of Criminal, Chief of Appeals, Chief of National Security and Cybercrimes, and Senior Litigation Counsel. While at the U.S. Department of Justice (DOJ), Ko received the Attorney General's Claudia J. Flynn Award for Professional Responsibility as well as the Director's Award for Superior Performance. He has taught trial advocacy, evidence, discovery, and other litigation subjects for the DOJ and other agencies.

## Education

B.A., University of California, San Diego, 1992; J.D., UCLA School of Law, 1997

## Honors / Awards

Attorney General's Claudia J. Flynn Award for Professional Responsibility; Director's Award for Superior Performance, United States Attorney's Office

# Kevin A. Lavelle | Partner

Kevin Lavelle is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation.

Lavelle has served on numerous litigation teams and helped obtain over $500 million for investors. His work includes several significant recoveries against corporations, including HCA Holdings, Inc. ($215 million); Altria Group and JUUL Labs ($90 million); Endo Pharmaceuticals ($63 million); and Intercept Pharmaceuticals ($55 million), among others.

## Education

B.A., College of the Holy Cross, 2008; J.D., Brooklyn Law School, 2013

## Honors / Awards

500 X – The Next Generation, *Lawdragon*, 2023-2025; J.D., *Cum Laude*, Brooklyn Law School, 2013; B.A., *Cum Laude*, College of the Holy Cross, 2008

# Nathan R. Lindell | Partner

Nate Lindell is a partner in the Firm's San Diego office, where his practice focuses on representing aggrieved investors in complex civil litigation. He has helped achieve numerous significant recoveries for investors, including: *In re Enron Corp. Sec. Litig.* ($7.2 billion recovery); *In re HealthSouth Corp. Sec. Litig.* ($671 million recovery); *Luther v. Countrywide Fin. Corp.* ($500 million recovery); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.* ($388 million recovery); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ($272 million recovery); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.* ($95 million recovery); *Massachusetts Bricklayers & Masons Tr. Funds v. Deutsche Alt-A Sec., Inc.* ($32.5 million recovery); *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.* ($24.9 million recovery); *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.* ($21.2 million recovery); and *Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg., Inc.* ($11.25 million recovery). In October 2016, Lindell successfully argued in front of the New York Supreme Court, Appellate Division, First Judicial Department, for the reversal of an earlier order granting defendants' motion to dismiss in *Phoenix Light SF Limited v. Morgan Stanley.*

Lindell was also a member of the litigation team responsible for securing a landmark victory from the Second Circuit Court of Appeals in its precedent-setting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* decision, which dramatically expanded the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of mortgage-backed securities investors, and ultimately resulted in a $272 million recovery for investors.

## Education
B.S., Princeton University, 2003; J.D., University of San Diego School of Law, 2006

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015-2017; Charles W. Caldwell Alumni Scholarship, University of San Diego School of Law; CALI/AmJur Award in Sports and the Law

# Ting H. Liu | Partner

Ting Liu is a partner in the Firm's San Diego office, where she represents large institutional and individual investors. Her practice focuses on complex securities litigation. Liu was a member of the trial team that obtained a $350 million settlement on the eve of trial in *Smilovits v. First Solar, Inc.*, the fifth-largest PSLRA settlement recovered in the Ninth Circuit at the time. She was also a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

## Education
B.A., University of Washington, 2012; J.D., University of San Diego School of Law, 2015

## Honors / Awards
Best Lawyer in America: One to Watch, *Best Lawyers®*, 2026; 40 & Under List, *Benchmark Litigation*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2023-2025; Rising Star, *Law360*, 2024

# Ryan Llorens | Partner

Ryan Llorens is a partner in the Firm's San Diego office. Llorens' practice focuses on litigating complex securities fraud cases. He has worked on a number of securities cases that have resulted in significant recoveries for investors, including: *In re HealthSouth Corp. Sec. Litig.* ($670 million); *AOL Time Warner* ($629 million); *In re AT&T Corp. Sec. Litig.* ($100 million); *In re Fleming Cos. Sec. Litig.* ($95 million); and *In re Cooper Cos., Inc. Sec Litig.* ($27 million).

## Education

B.A., Pitzer College, 1997; J.D., University of San Diego School of Law, 2002

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2015

# Andrew S. Love | Partner

Andrew Love is a partner in the Firm's San Francisco office and a member of the Firm's Appellate Practice Group. His practice focuses primarily on appeals of securities fraud class actions. Love has successfully briefed and argued cases on behalf of defrauded investors and consumers in several U.S. Courts of Appeal, as well as in the California appellate courts. Recent published cases include *Sherman v. Abengoa, S.A.*, __ F.4th __ , 2025 WL 2825369 (2d Cir. Oct. 6, 2025), *New England Carpenters Guaranteed Annuity Pension Funds v. DeCarlo*, 122 F.4th 28 (2d Cir. 2023), *Stafford v. Rite Aid Corp.*, 998 F.3d 862 (9th Cir. 2021), *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021), and *Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017). He was also co-counsel in *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061 (2018).

Before joining the Firm and for more than two decades, Love represented inmates on California's death row in appellate and habeas corpus proceedings, successfully arguing capital cases in both the California Supreme Court and the Ninth Circuit. He co-chaired the Capital Case Defense Seminar (2004-2013), recognized as the largest conference for death penalty practitioners in the country. Additionally, he was on the faculty of the National Institute for Trial Advocacy's Post-Conviction Skills Seminar. Love is a member of the California Academy of Appellate Lawyers.

## Education

University of Vermont, 1981; J.D., University of San Francisco School of Law, 1985

## Honors / Awards

J.D., *Cum Laude*, University of San Francisco School of Law, 1985; McAuliffe Honor Society, University of San Francisco School of Law, 1982-1985

# Erik W. Luedeke | Partner

Erik Luedeke is a partner in the Firm's San Diego office, where he represents individual and institutional investors in breach of fiduciary duty and securities fraud litigation in state and federal courts nationwide. Luedeke is a member of the Firm's Delaware Practice Group. As corporate fiduciaries, directors and officers are duty-bound to act in the best interest of the corporation and its shareholders. When they fail to do so they breach their fiduciary duty and may be held liable for harm caused to the corporation. Luedeke's shareholder derivative practice focuses on litigating breach of fiduciary duty and related claims on behalf of corporations and shareholders injured by wayward corporate fiduciaries. Notable shareholder derivative actions in which he recently participated and the recoveries he helped to achieve include *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms), *In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.* ($26 million in financial relief plus substantial governance), and *In re Google Inc. S'holder Derivative Litig.* ($250 million in financial relief to fund substantial governance).

Luedeke's practice also includes the prosecution of complex securities class action cases on behalf of aggrieved investors. Luedeke was a member of the litigation team in *Jaffe v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), that resulted in a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial ending in a plaintiffs' verdict. He was also a member of the litigation teams in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.) ($925 million recovery), and *In re Questcor Pharms., Inc. Sec. Litig.*, No. 8:12-cv-01623 (C.D. Cal.) ($38 million recovery).

## Education

B.S./B.A., University of California Santa Barbara, 2001; J.D., University of San Diego School of Law, 2006

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2015-2017; Student Comment Editor, *San Diego International Law Journal*, University of San Diego School of Law

# Christopher H. Lyons | Partner

Christopher Lyons is a partner in the Firm's Nashville and Wilmington offices, and manages the Wilmington office. He focuses his practice on representing institutional and individual investors in merger-related class action litigation and in complex securities litigation. Lyons has been a significant part of litigation teams that have achieved substantial recoveries for investors. Notable Delaware cases that Lyons has co-led include *Bioverativ* (*Goldstein v. Denner*) ($124 million recovery), *Good Technology* ($52 million – about 1.5 times the consideration paid to common stockholders in the challenged private-company merger), *Blackhawk Network Holdings* ($29.5 million), and *The Fresh Market* (*Morrison v. Berry*) ($27.5 million recovered). Lyons has also been part of teams litigating federal securities cases that led to substantial recoveries, including *Envision* ($177.5 million), *CoreCivic* (*Grae v. Corrections Corporation of America*) ($56 million recovered), and *Nissan* ($36 million). His *pro bono* work includes representing individuals who are appealing denial of necessary medical benefits by TennCare (Tennessee's Medicaid program), through the Tennessee Justice Center.

Both during and before his time at Robbins Geller, Lyons has litigated extensively in Delaware courts, having tried cases on behalf of both plaintiffs and defendants in the Delaware Court of Chancery. Before joining Robbins Geller, Lyons practiced at a prominent Delaware law firm, where he mostly represented corporate officers and directors defending against breach of fiduciary duty claims in the Delaware Court of Chancery and in the Delaware Supreme Court. Before that, he clerked for Vice Chancellor J. Travis Laster of the Delaware Court of Chancery. Lyons now applies the expertise he gained from those experiences to help investors uncover wrongful conduct and recover the money and other remedies to which they are rightfully entitled.

## Education

B.A., Colorado College, 2006; J.D., Vanderbilt University Law School, 2010

## Honors / Awards

40 & Under List, *Benchmark Litigation*, 2023-2025; Recommended Lawyer, *The Legal 500*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2018-2020, 2022-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2022-2024; 500 X – The Next Generation, *Lawdragon*, 2023; 40 & Under Hot List, *Benchmark Litigation*, 2021; B.A., Distinction in International Political Economy, Colorado College, 2006; J.D., Law & Business Certificate, Vanderbilt University Law School, 2010

## Mark T. Millkey | Partner

Mark Millkey is a partner in the Firm's Melville office. He has significant experience in the areas of securities and consumer litigation, as well as in federal and state court appeals.

During his career, Millkey has worked on a major consumer litigation against MetLife that resulted in a benefit to the class of approximately $1.7 billion, as well as a securities class action against Royal Dutch/Shell that settled for a minimum cash benefit to the class of $130 million and a contingent value of more than $180 million. Since joining Robbins Geller, he has worked on securities class actions that have resulted in more than $1.5 billion in settlements.

## Education

B.A., Yale University, 1981; M.A., University of Virginia, 1983; J.D., University of Virginia, 1987

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2013-2025

## David W. Mitchell | Partner

David Mitchell is a partner in the Firm's San Diego office and focuses his practice on antitrust and securities fraud litigation. He is a former federal prosecutor who has tried nearly 20 jury trials. As head of the Firm's Antitrust and Competition Law Practice Group, he has served as lead or co-lead counsel in numerous cases and has helped achieve substantial settlements for shareholders. His most notable antitrust cases include *Dahl v. Bain Cap. Partners, LLC*, obtaining more than $590 million for shareholders, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, in which a settlement of $5.5 billion was approved in the Eastern District of New York. This case was brought on behalf of millions of U.S. merchants against Visa and MasterCard and various card-issuing banks, challenging the way these companies set and collect tens of billions of dollars annually in merchant fees. The settlement is believed to be the largest antitrust class action settlement of all time.

Additionally, Mitchell served as co-lead counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining $504.5 million for plaintiffs. Currently, Mitchell serves as court-appointed lead counsel in *In re Aluminum Warehousing Antitrust Litig.*, *City of Providence, Rhode Island v. BATS Global Markets Inc.*, *In re SSA Bonds Antitrust Litig.*, *In re Remicade Antitrust Litig.*, and *In re 1-800 Contacts Antitrust Litig.*

## Education

B.A., University of Richmond, 1995; J.D., University of San Diego School of Law, 1998

## Honors / Awards

Member, Enright Inn of Court; Best Lawyer in America, *Best Lawyers®*, 2018-2026; Super Lawyer, *Super Lawyers Magazine*, 2016-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Leading Lawyer in America, *Lawdragon*, 2020-2024; Top 50 Lawyers in San Diego, *Super Lawyers Magazine*, 2021; Southern California Best Lawyer, *Best Lawyers®*, 2018-2021; Honoree, Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2018; Antitrust Trailblazer, *The National Law Journal*, 2015; "Best of the Bar," *San Diego Business Journal*, 2014

# Danielle S. Myers | Partner

Danielle Myers is a partner in the Firm's San Diego office and focuses her practice on complex securities litigation. Myers oversees the Portfolio Monitoring Program® and provides legal recommendations to the Firm's institutional investor clients on their options to maximize recoveries in securities litigation, both within the United States and internationally, from inception to settlement.

Myers advises the Firm's clients in connection with lead plaintiff applications and has helped secure appointment of the Firm's clients as lead plaintiff and the Firm's appointment as lead counsel in hundreds of securities class actions, which cases have yielded more than $4 billion for investors, including 2018-2024 recoveries in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) ($1.2 billion); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) ($1.025 billion); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314 (N.D. Cal.) ($809.5 million); *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033 (N.D. Cal.) ($490 million); *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388 (D. Md.) ($434 million); *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz.) ($350 million); *Dicker v. TuSimple Holdings, Inc.*, No. 3:22-cv-01300 (S.D. Cal.) ($189 million); *Flynn v. Exelon Corp.*, No. 1:19-cv-08209 (N.D. Ill.) ($173 million); *City of Pontiac Gen. Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162 (W.D. Ark.) ($160 million); *Evellard v. LendingClub Corp.*, No. 3:16-cv-02627 (N.D. Cal.) ($125 million); *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, No. 2:19-cv-03347 (S.D. Ohio) ($109 million); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031 (E.D. Va.) ($108 million); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209 (D.N.J.) ($100 million); *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828 (C.D. Cal.) ($100 million); and *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-00736 (E.D. Tex.) ($97.5 million). Myers is also a frequent presenter on securities fraud and corporate governance reform at conferences and events around the world.

## Education

B.A., University of California at San Diego, 1997; J.D., University of San Diego, 2008

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2022-2026; Future Star, *Benchmark Litigation,* 2019-2020, 2023-2026; Leading Litigator in America, *Lawdragon*, 2026; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2026; Leading Lawyer, *The Legal 500*, 2020-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2025; Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2023; Top 100 Leaders in Law Honoree, *San Diego Business Journal*, 2022; Best Lawyer in Southern California: One to Watch, *Best Lawyers®*, 2021; Next Generation Lawyer, *The Legal 500*, 2017-2019; Recommended Lawyer, *The Legal 500*, 2019; Rising Star, *Super Lawyers Magazine*, 2015-2018; One of the "Five Associates to Watch in 2012," *Daily Journal*; Member, *San Diego Law Review*; CALI Excellence Award in Statutory Interpretation

## Eric I. Niehaus | Partner

Eric Niehaus is a partner in the Firm's San Diego office, where his practice focuses on complex securities and derivative litigation. His efforts have resulted in numerous multi-million dollar recoveries to shareholders and extensive corporate governance changes. Notable examples include: *In re NYSE Specialists Sec. Litig.* (S.D.N.Y.); *In re Novatel Wireless Sec. Litig.* (S.D. Cal.); *Batwin v. Occam Networks, Inc.* (C.D. Cal.); *Commc'ns Workers of Am. Plan for Employees' Pensions and Death Benefits v. CSK Auto Corp.* (D. Ariz.); *Marie Raymond Revocable Trust v. Mat Five* (Del. Ch.); and *Kelleher v. ADVO, Inc.* (D. Conn.). He most recently prosecuted a case against Stamps.com in the Central District of California that resulted in a $100 million settlement for shareholders of the company's stock. Before joining the Firm, Niehaus worked as a Market Maker on the American Stock Exchange in New York and the Pacific Stock Exchange in San Francisco.

### Education

B.S., University of Southern California, 1999; J.D., California Western School of Law, 2005

### Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2015-2016; J.D., *Cum Laude*, California Western School of Law, 2005; Member, *California Western Law Review*

## Erika Oliver | Partner

Erika Oliver is a partner in the Firm's San Diego office. Before joining the Firm, Erika served as a judicial law clerk to the Honorable Anthony J. Battaglia of the Southern District of California. At the Firm, her practice focuses on complex securities litigation. Most recently, Erika and Luke Brooks defeated defendants' motion to dismiss securities fraud claims arising from purchases on Israel's Tel Aviv Stock Exchange in *In re Teva Sec. Litig.* (D. Conn.). Erika was also a member of the litigation teams of Robbins Geller attorneys that successfully recovered hundreds of millions of dollars for investors in securities class actions, including *Purple Mountain Trust v. Wells Fargo & Co.* (N.D. Cal.) ($300 million recovery), *Evanston Police Pension Fund v. McKesson Corp.* (N.D. Cal.) ($141 million recovery), *In re Novo Nordisk Sec. Litig.* (D.N.J.) ($100 million recovery), *Fleming v. Impax Labs. Inc.* (N.D. Cal.) ($33 million recovery), and *In re Banc of California Sec. Litig.* (C.D. Cal.) ($19.75 million recovery).

### Education

B.S., San Diego State University, 2009; J.D., University of San Diego School of Law, 2015

### Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2026; 40 & Under List, *Benchmark Litigation*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2025; Rising Star, *Super Lawyers Magazine*, 2024-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2024; Top 40 Under 40, *Daily Journal*, 2023; 500 X – The Next Generation, *Lawdragon*, 2023; Rising Star, *Law360*, 2023; Best Lawyer in Southern California: One to Watch, *Best Lawyers®*, 2021; J.D., *Magna Cum Laude*, University of San Diego School of Law, 2015; B.S., *Cum Laude*, San Diego State University, 2009

# Lucas F. Olts | Partner

Luke Olts is a partner in the Firm's San Diego office, where his practice focuses on securities litigation on behalf of individual and institutional investors. Olts recently served as lead counsel in *In re Facebook Biometric Info. Privacy Litig.*, a cutting-edge class action concerning Facebook's alleged privacy violations through its collection of users' biometric identifiers without informed consent that resulted in a $650 million settlement. Olts has focused on litigation related to residential mortgage-backed securities, and has served as lead counsel or co-lead counsel in some of the largest recoveries arising from the collapse of the mortgage market. For example, he was a member of the team that recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, and a member of the litigation team responsible for securing a $272 million settlement on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* Olts also served as co-lead counsel in *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, which recovered $627 million under the Securities Act of 1933. He also served as lead counsel in *Siracusano v. Matrixx Initiatives, Inc.*, in which the U.S. Supreme Court unanimously affirmed the decision of the Ninth Circuit that plaintiffs stated a claim for securities fraud under §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Olts also served on the litigation team in *In re Deutsche Bank AG Sec. Litig.*, in which the Firm obtained *a* $18.5 million settlement in a case against Deutsche Bank and certain of its officers alleging violations of the Securities Act of 1933. Before joining the Firm, Olts served as a Deputy District Attorney for the County of Sacramento, where he tried numerous cases to verdict, including crimes of domestic violence, child abuse, and sexual assault.

## Education

B.A., University of California, Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004

## Honors / Awards

Future Star, *Benchmark Litigation*, 2018-2020, 2023-2026; Global Plaintiff Lawyer, *Lawdragon*, 2024; Next Generation Lawyer, *The Legal 500*, 2017; Top Litigator Under 40, *Benchmark Litigation*, 2017; Under 40 Hotlist, *Benchmark Litigation*, 2016

# Steven W. Pepich | Partner

Steve Pepich is a partner in the Firm's San Diego office. His practice has focused primarily on securities class action litigation, but has also included a wide variety of complex civil cases, including representing plaintiffs in mass tort, royalty, civil rights, human rights, ERISA, and employment law actions. Pepich has participated in the successful prosecution of numerous securities class actions, including: *Carpenters Health & Welfare Fund v. Coca-Cola Co.* ($137.5 million recovery); *In re Fleming Cos. Inc. Sec. & Derivative Litig.* ($95 million recovered); *In re Boeing Sec. Litig.* ($92 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.* ($65 million recovery); *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp.* ($43 million recovery); *In re Advanced Micro Devices Sec. Litig.* ($34 million recovery); and *Gohler v. Wood*, ($17.2 million recovery). Pepich was a member of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million.

## Education

B.S., Utah State University, 1980; J.D., DePaul University, 1983

# Daniel J. Pfefferbaum | Partner

Daniel Pfefferbaum is a partner in the Firm's San Francisco office, where his practice focuses on complex securities litigation. He has been a member of litigation teams that have recovered more than $750 million for investors, including: *In re Apple Inc. Sec. Litig.* ($490 million recovery); *City of Westland Police & Fire Ret. Sys. v. Metlife Inc.* ($84 million recovery); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.* ($65 million recovery); *In re Prudential Fin., Inc. Sec. Litig.* ($35 million recovery); *In re PMI Grp., Inc. Sec. Litig.* ($31.25 million recovery); *Hessefort v. Super Micro Computer, Inc.* ($18.25 million recovery); and *Xiang v. Inovalon Holdings, Inc.* ($17 million recovery). Pfefferbaum was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members are eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis.

## Education

B.A., Pomona College, 2002; J.D., University of San Francisco School of Law, 2006; LL.M. in Taxation, New York University School of Law, 2007

## Honors / Awards

Future Star, *Benchmark Litigation*, 2018-2020, 2023-2026; 40 & Under Hot List, *Benchmark Litigation*, 2016-2020; Top 40 Under 40, *Daily Journal*, 2017; Rising Star, *Super Lawyers Magazine*, 2013-2017

# Theodore J. Pintar | Partner

Ted Pintar is a partner in the Firm's San Diego office. Pintar has over 20 years of experience prosecuting securities fraud actions and derivative actions and over 15 years of experience prosecuting insurance-related consumer class actions, with recoveries in excess of $1 billion. He was part of the litigation team in the AOL Time Warner state and federal court securities opt-out actions, which arose from the 2001 merger of America Online and Time Warner. These cases resulted in a global settlement of $618 million. Pintar was also on the trial team in *Knapp v. Gomez*, which resulted in a plaintiff's verdict. Pintar has successfully prosecuted several RICO cases involving the deceptive sale of deferred annuities, including cases against Allianz Life Insurance Company of North America ($250 million), American Equity Investment Life Insurance Company ($129 million), Midland National Life Insurance Company ($80 million), and Fidelity & Guarantee Life Insurance Company ($53 million). He has participated in the successful prosecution of numerous other insurance and consumer class actions, including: (i) actions against major life insurance companies such as Manufacturer's Life ($555 million initial estimated settlement value) and Principal Mutual Life Insurance Company ($380+ million), involving the deceptive sale of life insurance; (ii) actions against major homeowners insurance companies such as Allstate ($50 million) and Prudential Property and Casualty Co. ($7 million); (iii) actions against automobile insurance companies such as the Auto Club and GEICO; and (iv) actions against Columbia House ($55 million) and BMG Direct, direct marketers of CDs and cassettes. Pintar and co-counsel recently settled a securities class action for $32.8 million against Snap, Inc. in *Snap Inc. Securities Cases,* a case alleging violations of the Securities Act of 1933. Additionally, Pintar has served as a panelist for numerous Continuing Legal Education seminars on federal and state court practice and procedure.

## Education

B.A., University of California, Berkeley, 1984; J.D., University of Utah College of Law, 1987

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Super Lawyer, *Super Lawyers Magazine*, 2014-2017; CAOC Consumer Attorney of the Year Award Finalist, 2015; Note and Comment Editor, *Journal of Contemporary Law,* University of Utah College of Law; Note and Comment Editor, *Journal of Energy Law and Policy*, University of Utah College of Law

# Ashley M. Price | Partner

Ashley Price is a partner in the Firm's San Diego office. Her practice focuses on complex securities litigation. Price is currently serving as lead counsel in *Bucks Cnty. Emps. Ret. Sys. v. Norfolk Southern Corp.* (N.D. Ga.), a case brought on behalf of Norfolk Southern's investors following the catastrophic derailment of one of Norfolk Southern's freight trains outside of East Palestine, Ohio. Having prevailed against defendants' attempt to dismiss the case, the team is now pressing forward to obtain evidence for proving at a jury trial investors' claims that defendants fraudulently misrepresented the safety of their railroad operations.

Price also served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.* (S.D.N.Y.), a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

Price was likewise a key member of many other successful Robbins Geller litigation teams, including *Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.* (N.D. Ga.) ($87.5 million recovery), *Strathclyde Pension Fund v. Bank OZK* (E.D. Ark.) ($45 million recovery), *Micholle v. Ophthotech Corp.* (S.D.N.Y.) ($29 million recovery), and *Mart v. Tactile Sys. Tech., Inc.* (D. Minn.) ($5 million recovery).

## Education

B.A., Duke University, 2006; J.D., Washington University in St. Louis, School of Law, 2011

## Honors / Awards

40 & Under List, *Benchmark Litigation*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; 40 & Under Hot List, *Benchmark Litigation*, 2021; Rising Star, *Super Lawyers Magazine*, 2016-2021

# Willow E. Radcliffe  |  Partner

Willow Radcliffe is a partner in the Firm's San Francisco office, where she concentrates her practice in securities class action litigation in federal court.  She has been significantly involved in the prosecution of numerous securities fraud claims, including actions filed against Pfizer, Inc. ($400 million recovery), CoreCivic (*Grae v. Corrections Corporation of America*) ($56 million recovery), Flowserve Corp. ($55 million recovery), Santander Consumer USA Holdings Inc. ($47 million), NorthWestern Corp. ($40 million recovery), Ashworth, Inc. ($15.25 million recovery), and Allscripts Healthcare Solutions, Inc. ($9.75 million recovery).  Additionally, Radcliffe has represented plaintiffs in other complex actions, including a class action against a major bank regarding the adequacy of disclosures made to consumers in California related to access checks.  Before joining the Firm, she clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California.

## Education

B.A., University of California, Los Angeles 1994; J.D., Seton Hall University School of Law, 1998

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Best Lawyer in America: One to Watch, *Best Lawyers*®, 2021-2025; Best Lawyer in Northern California: One to Watch, *Best Lawyers*®, 2021; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020; J.D., *Cum Laude*, Seton Hall University School of Law, 1998; Most Outstanding Clinician Award; Constitutional Law Scholar Award

ATTORNEY BIOGRAPHIES

# Frank A. Richter | Partner

Frank Richter is a partner in the Firm's Chicago office, where he focuses on shareholder, antitrust, and class action litigation.

Richter was an integral member of the Robbins Geller team that secured a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* (D.N.J.), which is the ninth-largest securities class action settlement in history and the largest ever against a pharmaceutical manufacturer. More recently, Richter's representative matters include *Exelon* (N.D. Ill., $173 million settlement), which resolved securities claims stemming from the alleged concealment of an eight-year scheme to bribe a public official, as well as *Nutanix* (N.D. Cal., $71 million settlement), *Oak Street Health* (N.D. Ill., $60 million settlement), and *Grubhub* (N.D. Ill., $42 million settlement). In addition, Richter was a member of litigation teams that secured significant settlements in *HCA* (E.D. Tenn., $215 million), *Sprint* (D. Kan., $131 million), *Orbital ATK* (E.D. Va., $108 million), *Dana Corp.* (N.D. Ohio, $64 million), *Diplomat* (N.D. Ill., $15.5 million), *LJM Funds* (N.D. Ill., $12.85 million), and *Camping World* (N.D. Ill., $12.5 million).

Richter also works on antitrust matters, including serving on the Plaintiffs' Steering Committee in *In re Dealer Mgmt. Sys. Antitrust Litig.* (N.D. Ill.), and he represents plaintiffs as local counsel in class action and derivative shareholder litigation in Illinois state and federal courts.

## Education

B.A., Truman State University, 2007; M.M., DePaul University School of Music, 2009; J.D., DePaul University College of Law, 2012

## Honors / Awards

40 & Under List, *Benchmark Litigation*, 2023-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2025; Rising Star, *Super Lawyers Magazine*, 2017-2022; 40 & Under Hot List, *Benchmark Litigation*, 2021; J.D., S*umma Cum Laude*, Order of the Coif, CALI Award for highest grade in seven courses, DePaul University College of Law, 2012

# Darren J. Robbins | Partner

Darren Robbins is a founding partner of Robbins Geller Rudman & Dowd LLP. Over the last two decades, Robbins has served as lead counsel in more than 100 securities class actions and has recovered billions of dollars for investors. Robbins served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a securities class action arising out of improper accounting practices, recovering more than $1 billion for class members. The *American Realty* settlement represents the largest recovery as a percentage of damages of any major class action brought pursuant to the Private Securities Litigation Reform Act of 1995 and resolved prior to trial. The $1+ billion settlement included the largest personal contributions ($237.5 million) ever made by individual defendants to a securities class action settlement.

Robbins also led Robbins Geller's prosecution of wrongdoing related to the sale of residential mortgage-backed securities (RMBS) prior to the global financial crisis, including an RMBS securities class action against Goldman Sachs that yielded a $272 million recovery for investors. Robbins served as co-lead counsel in connection with a $627 million recovery for investors in *In re Wachovia Preferred Securities & Bond/Notes Litig.*, one of the largest securities class action settlements ever involving claims brought solely under the Securities Act of 1933.

One of the hallmarks of Robbins' practice has been his focus on corporate governance reform.

In *UnitedHealth*, a securities fraud class action arising out of an options backdating scandal, Robbins represented lead plaintiff CalPERS and obtained the cancellation of more than 3.6 million stock options held by the company's former CEO and secured a record $925 million cash recovery for shareholders.  He also negotiated sweeping corporate governance reforms, including the election of a shareholder-nominated director to the company's board of directors, a mandatory holding period for shares acquired via option exercise, and compensation reforms that tied executive pay to performance. Recently, Robbins led a shareholder derivative action brought by several pension funds on behalf of Community Health Systems, Inc. that yielded a $60 million payment to Community Health as well as corporate governance reforms that included two shareholder-nominated directors, the creation and appointment of a Healthcare Law Compliance Coordinator, the implementation of an executive compensation clawback in the event of a restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy.

## Education

B.S., University of Southern California, 1990; M.A., University of Southern California, 1990; J.D., Vanderbilt Law School, 1993

## Honors / Awards

Litigation Star, *Benchmark Litigation*, 2023-2026; Best Lawyer in America, *Best Lawyers®*, 2010-2026; Hall of Fame, *The Legal 500*, 2023-2025; Ranked by *Chambers USA*, 2014-2025; California - Litigation Star, *Benchmark Litigation*, 2024-2025; Lawyer of the Year: Litigation – Securities, *Best Lawyers®*, 2023, 2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2022, 2024; Top 10 Lawyers in San Diego, *Super Lawyers Magazine*, 2024; Leading Lawyer, *The Legal 500*, 2020-2022; Top 50 Lawyers in San Diego, *Super Lawyers Magazine*, 2015, 2021; Litigator of the Week, *The American Lawyer*, 2021; Southern California Best Lawyer, *Best Lawyers®*, 2012-2021; Local Litigation Star, *Benchmark Litigation*, 2013-2018, 2020; Recommended Lawyer, *The Legal 500*, 2011, 2017, 2019; Benchmark California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Lawyer of the Year, *Best Lawyers®*, 2017; Influential Business Leader, *San Diego Business Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; One of the Top 100 Lawyers Shaping the Future, *Daily Journal*; One of the "Young Litigators 45 and Under," *The American Lawyer*; Attorney of the Year, *California Lawyer*; Managing Editor, *Vanderbilt Journal of Transnational Law*, Vanderbilt Law School

# Robert J. Robbins | Partner

Robert Robbins is a partner in the Firm's Boca Raton office. He focuses his practice on investigating securities fraud, initiating securities class actions, and helping institutional and individual shareholders litigate their claims to recover investment losses caused by fraud. Representing shareholders in all aspects of class actions brought pursuant to the federal securities laws, Robbins provides counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for investors.

Recently, Robbins was a key member of the Robbins Geller litigation team that secured a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the ninth largest securities class action settlement ever and the largest against a pharmaceutical manufacturer. Robbins has also been a member of Robbins Geller litigation teams responsible for securing hundreds of millions of dollars in securities class action settlements, including: *Hospira* ($60 million recovery); *3D Systems* ($50 million); *CVS Caremark* ($48 million recovery); *Baxter International* ($42.5 million recovery); *Grubhub* ($42 million); *R.H. Donnelley* ($25 million recovery); *Spiegel* ($17.5 million recovery); *TECO Energy* ($17.35 million recovery); *AFC Enterprises* ($17.2 million recovery); *Accretive Health* ($14 million recovery); *Lender Processing Services* ($14 million recovery); *Lexmark Int'l* ($12 million); *Imperial Holdings* ($12 million recovery); *Mannatech* ($11.5 million recovery); *Newpark Resources* ($9.24 million recovery); *CURO Group* ($8.98 million); *Gilead Sciences* ($8.25 million recovery); *TCP International* ($7.175 million recovery); *Cryo Cell International* ($7 million recovery); *Gainsco* ($4 million recovery); and *Body Central* ($3.425 million recovery).

## Education

B.S., University of Florida, 1999; J.D., University of Florida College of Law, 2002

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024; Rising Star, *Super Lawyers Magazine*, 2015-2017; J.D., High Honors, University of Florida College of Law, 2002; Member, *Journal of Law and Public Policy*, University of Florida College of Law; Member, *Phi Delta Phi*, University of Florida College of Law; *Pro bono* certificate, Circuit Court of the Eighth Judicial Circuit of Florida; Order of the Coif

# David A. Rosenfeld | Partner

David Rosenfeld, a partner in the Firm's Melville office, has focused his legal practice for more than 20 years in the area of securities litigation. He has argued in courts throughout the country, has been appointed lead counsel in dozens of securities fraud lawsuits, and has successfully recovered hundreds of millions of dollars for defrauded shareholders.

Rosenfeld works on all stages of litigation, including drafting pleadings, arguing motions, and negotiating settlements. Most recently, he led the teams of Robbins Geller attorneys in recovering $95 million for shareholders of Tableau Software, Inc., $90 million for shareholders of Altria Group, Inc., $40 million for shareholders of BRF S.A, $20 million for shareholders of Grana y Montero (where shareholders recovered more than 90% of their losses), and $34.5 million for shareholders of L-3 Communications Holdings, Inc.

Rosenfeld also led the Robbins Geller team in recovering in excess of $34 million for investors in Overseas Shipholding Group, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity. Rosenfeld also led the effort that resulted in the recovery of nearly 90% of losses for investors in Austin Capital, a sub-feeder fund of Bernard Madoff. In connection with this lawsuit, Rosenfeld met with and interviewed Madoff in federal prison in Butner, North Carolina.

Rosenfeld has also achieved remarkable recoveries against companies in the financial industry. In addition to being appointed lead counsel in the securities fraud lawsuit against First BanCorp ($74.25 million recovery), he recovered $70 million for investors in Credit Suisse Group and $14 million for Barclays investors.

## Education

B.S., Yeshiva University, 1996; J.D., Benjamin N. Cardozo School of Law, 1999

## Honors / Awards

Future Star, *Benchmark Litigation*, 2016-2020, 2023-2026; Super Lawyer, *Super Lawyers Magazine*, 2014-2025; Recommended Lawyer, *The Legal 500*, 2018; Rising Star, *Super Lawyers Magazine*, 2011-2013

# Robert M. Rothman | Partner

Robert Rothman is a partner in the Firm's New York office and a member of the Firm's Management Committee. He has recovered well in excess of $1 billion on behalf of victims of investment fraud, consumer fraud, and antitrust violations.

Recently, Rothman served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.* where he obtained a $1.025 billion cash recovery on behalf of investors. Rothman and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages ever obtained in a major PSLRA case before trial and includes the largest personal contributions by individual defendants in history. Additionally, Rothman has recovered hundreds of millions of dollars for investors in cases against First Bancorp, Doral Financial, Popular, iStar, Autoliv, CVS Caremark, Fresh Pet, The Great Atlantic & Pacific Tea Company (A&P), NBTY, Spiegel, American Superconductor, Iconix Brand Group, Black Box, OSI Pharmaceuticals, Gravity, Caminus, Central European Distribution Corp., OneMain Holdings, The Children's Place, CNinsure, Covisint, FleetBoston Financial, Interstate Bakeries, Hibernia Foods, Jakks Pacific, Jarden, Portal Software, Ply Gem Holdings, Orion Energy, Tommy Hilfiger, TD Banknorth, Teletech, Unitek, Vicuron, Xerium, W Holding, and dozens of others.

Rothman also has achieved significant monetary recoveries for shareholders in connection with going-private transactions and tender offers. In addition, he also actively litigates consumer fraud cases, including a case alleging false advertising where the defendant agreed to a settlement valued in excess of $67 million.

## Education

B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2025-2026; Super Lawyer, *Super Lawyers Magazine*, 2011, 2013-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2025; Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Northeast Trailblazer, *The American Lawyer*, 2022; New York Trailblazer, *New York Law Journal*, 2020; Dean's Academic Scholarship Award, Hofstra University School of Law; J.D., with Distinction, Hofstra University School of Law, 1993; Member, *Hofstra Law Review*, Hofstra University School of Law

## Samuel H. Rudman | Partner

Sam Rudman is a founding member of the Firm, a member of the Firm's Management Committee, and manages the Firm's New York offices. His 26-year securities practice focuses on recognizing and investigating securities fraud, and initiating securities and shareholder class actions to vindicate shareholder rights and recover shareholder losses. Rudman is also part of the Firm's SPAC Task Force, which is dedicated to rooting out and prosecuting fraud on behalf of injured investors in special purpose acquisition companies. A former attorney with the SEC, Rudman has recovered hundreds of millions of dollars for shareholders, including a $200 million recovery in *Motorola*, a $129 million recovery in *Doral Financial*, an $85 million recovery in *Blackstone*, a $74 million recovery in *First BanCorp*, a $65 million recovery in *Forest Labs*, a $62.5 million recovery in *SQM*, a $50 million recovery in *TD Banknorth*, a $48 million recovery in *CVS Caremark*, a $34.5 million recovery in *L-3 Communications Holdings*, a $32.8 million recovery in *Snap, Inc.*, and a $18.5 million recovery in *Deutsche Bank*.

## Education

B.A., Binghamton University, 1989; J.D., Brooklyn Law School, 1992

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2016-2022, 2025-2026; Litigation Star, *Benchmark Litigation*, 2013, 2017-2019, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2019-2020, 2024-2026; Leading Litigator in America, *Lawdragon*, 2026; Super Lawyer, *Super Lawyers Magazine*, 2007-2025; Recommended Lawyer, *The Legal 500*, 2018-2019, 2023-2025; Ranked by *Chambers USA*, 2014-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Global Plaintiff Lawyer, *Lawdragon*, 2025; Top 10 Most Influential Securities Litigation Attorney in New York, *Business Today*, 2023; New York Trailblazer, *New York Law Journal*, 2020; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020; Local Litigation Star, *Benchmark Litigation*, 2013-2020; Dean's Merit Scholar, Brooklyn Law School; Moot Court Honor Society, Brooklyn Law School; Member, *Brooklyn Journal of International Law*, Brooklyn Law School

# Joseph Russello | Partner

Joseph Russello is a partner in the Firm's Melville office. He began his career as a defense lawyer and now represents investors in securities class actions at the trial and appellate levels.

Rusello spearheaded the team that recovered $85 million in litigation against The Blackstone Group, LLC, a case that yielded a landmark decision from the Second Circuit Court of Appeals on "materiality" in securities actions. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706 (2d Cir. 2011). He also led the team responsible for partially defeating dismissal and achieving a $50 million settlement in litigation against BHP Billiton, an Australia-based mining company accused of concealing safety issues at a Brazilian iron-ore dam. *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65 (S.D.N.Y. 2017).

Recently, Rusello was co-counsel in a lawsuit against Allied Nevada Gold Corporation, recovering $14.5 million for investors after the Ninth Circuit Court of Appeals reversed two dismissal decisions. *In re Allied Nev. Gold Corp. Sec. Litig.*, 743 F. App'x 887 (9th Cir. 2018). He was also instrumental in obtaining a settlement and favorable appellate decision in litigation against SAIC, Inc., a defense contractor embroiled in a decade-long overbilling fraud against the City of New York. *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016). Other notable recent decisions include: *In re Qudian Sec. Litig.*, 189 A.D. 3d 449 (N.Y. App. Div., 1st Dep't 2020); *Kazi v. XP Inc.*, 2020 WL 4581569 (N.Y. Sup. Ct. Aug. 5, 2020); *In re Dentsply Sirona, Inc. S'holders Litig.*, 2019 WL 3526142 (N.Y. Sup. Ct. Aug. 2, 2019); and *Matter of PPDAI Grp. Sec. Litig.*, 64 Misc. 3d 1208(A), 2019 WL 2751278 (N.Y. Sup. Ct. 2019). Other notable settlements include: *NBTY, Inc.* ($16 million); *LaBranche & Co., Inc.* ($13 million); *The Children's Place Retail Stores, Inc.* ($12 million); and *Prestige Brands Holdings, Inc.* ($11 million).

## Education

B.A., Gettysburg College, 1998; J.D., Hofstra University School of Law, 2001

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2014-2020, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; *Law360* Securities Editorial Advisory Board, 2017-2022

# Scott H. Saham | Partner

Scott Saham is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation. He is licensed to practice law in both California and Michigan. Most recently, Saham was a member of the litigation team that obtained a $125 million settlement in *In re LendingClub Sec. Litig.*, a settlement that ranked among the top ten largest securities recoveries ever in the Northern District of California. He was also part of the litigation teams in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee, and *Luna v. Marvell Tech. Grp., Ltd.*, which resulted in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors. He also served as lead counsel prosecuting the *Pharmacia* securities litigation in the District of New Jersey, which resulted in a $164 million recovery. Additionally, Saham was lead counsel in the *In re Coca-Cola Sec. Litig.* in the Northern District of Georgia, which resulted in a $137.5 million recovery after nearly eight years of litigation. He also obtained reversal from the California Court of Appeal of the trial court's initial dismissal of the landmark *Countrywide* mortgage-backed securities action. This decision is reported as *Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789 (2011), and following this ruling that revived the action the case settled for $500 million.

## Education

B.A., University of Michigan, 1992; J.D., University of Michigan Law School, 1995

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Distinguished Pro Bono Attorney of the Year, *Casa Cornelia Law Center*, 2022

# Juan Carlos Sanchez | Partner

Juan Carlos "J.C." Sanchez is a partner in the Firm's San Diego office. He specializes in complex securities litigation and has extensive experience advising investors on their exposure to securities fraud and advising them on their litigation options for recovering losses. He has advised institutional and retail investors in more than 70 securities class actions that yielded more than $1.5 billion in class-wide recoveries.

Sanchez was a key member of the litigation team that secured the largest shareholder derivative recovery ever in Tennessee and the Sixth Circuit and unprecedented corporate governance reforms in *In re Community Health Sys., Inc. S'holder Derivative Litig*. More recently, Sanchez was a member of the Robbins Geller litigation team that ultimately obtained a $434 million settlement in *In re Under Armour Sec. Litig.*, a case that was previously dismissed with prejudice in 2019 but then resurrected through a highly unusual procedural maneuver – a successful motion asking the federal judge who had dismissed the case to issue an indicative opinion informing the Fourth Circuit that he would revive the original case if it were remanded to him. The $434 million recovery is the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history. Beyond securities litigation, Sanchez's representation of California passengers in a landmark consumer and civil rights case against Greyhound Lines, Inc. led to a ruling recognizing that transit passengers do not check their rights and dignity at the bus door. *Law360* honored Sanchez and the *Greyhound* litigation team as a Consumer Protection Group of the Year in 2019.

Before joining Robbins Geller, Sanchez served as a judicial law clerk to the Honorable Nelva Gonzales Ramos of the U.S. District Court for the Southern District of Texas.

## Education

B.S., University of California, Davis, 2005; J.D., University of California, Berkeley School of Law (Boalt Hall), 2014

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2026; 500 X - The Next Generation, *Lawdragon*, 2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2025

# Vincent M. Serra | Partner

Vincent Serra is a partner in the Firm's Melville office. His practice focuses primarily on complex securities and consumer actions, but has also included antitrust, employment, insurance, and environmental litigation. His efforts have contributed to the recovery of billions of dollars on behalf of aggrieved plaintiffs and class members and significant injunctive relief for individuals and municipalities throughout the country. Notably, Serra has contributed to several noteworthy recoveries, including *Dahl v. Bain Cap. Partners, LLC* ($590.5 million recovery), an antitrust action against the world's largest private equity firms alleging collusive practices in multi-billion dollar leveraged buyouts, and *Samit v. CBS Corp.* ($14.75 million recovery), a securities action alleging that defendants made false and misleading statements about their knowledge of former CEO Leslie Moonves's exposure to the #MeToo movement.

Additionally, Serra was a member of the litigation team that obtained a $22.75 million settlement fund on behalf of route drivers in *Veliz v. Cintas Corp.*, an action asserting violations of federal and state overtime laws. He was also part of the successful trial team in *Lebrilla v. Farmers Grp., Inc.*, which involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles. Other notable cases include *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* ($5.5 billion recovery), *In re DouYu Int'l Holdings Ltd. Sec. Litig.* ($15 million state court securities recovery) and *Kail v. Wolf Appliance, Inc.* (confidential settlement in breach of warranty actions involving faulty blue porcelain oven cavities).

Serra has litigated several actions against manufacturers and retailers alleging the improper marketing and sale of purportedly "flushable" wipes products, including consumer fraud, nuisance, and strict product liability claims. For example, in *Commissioners of Public Works of the City of Charleston (d.b.a. Charleston Water System) v. Costco Wholesale Corp.*, Serra led the prosecution of seven defendants resulting in industrywide settlements that secured commitments from the leading flushable wipes manufacturers and retailers to meet the national municipal wastewater standard for flushability and enhance "do not flush" labeling for non-flushable wipes, helping to meaningfully reduce wipes-related sewer impacts for municipalities and wastewater utilities nationwide. Serra also recently helped secure additional nationwide relief on behalf of the Charleston Water System in an analogous settlement with Dude Products Inc.

## Education
B.A., University of Delaware, 2001; J.D., California Western School of Law, 2005

## Honors / Awards
Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California

# Taeva C. Shefler | Partner

Taeva Shefler is a partner in the Firm's San Francisco office and focuses her practice on consumer and securities fraud litigation. Along with other Robbins Geller attorneys, Shefler worked on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*. In 2022, Shefler participated on the trial team in a federal bench trial in San Francisco in a case that had been selected as a bellwether in the multi-district litigation. The trial has resulted in combined settlements of over $350 million for San Francisco, including a nearly $230 million settlement with Walgreens, and more than $50 billion nationally from multiple pharmaceutical companies who were defendants in the national litigation.

Shefler also worked to address the opioid crisis on behalf of cities and counties across the country in another multi-district litigation, *In re McKinsey Prescription Opiate Consultant Litigation*, seeking to hold McKinsey & Co., Inc., one of the world's leading business consultants, accountable for playing a "central role in the unfolding, propagation, and exploitation of the opioid crisis by advising multiple opioid manufacturers and other industry participants how to sell as many opioids as conceivably possible," according to the complaint. On February 2, 2024, the court granted final approval over a $230 million settlement between McKinsey, government subdivisions, and school districts to resolve claims about its role in facilitating the U.S. opioid crisis.

Shefler was also part of the team on the national *Juul* litigation, *In re Juul Labs, Inc., Marketing, Sales Practices, and Product Liability Litigation*. On September 19, 2023, the plaintiffs, for which Robbins Geller serves on the steering committee, secured final approval of a $255 million class action settlement with JUUL Labs, Inc. in the e-cigarette youth vaping predatory advertising, fraud, addiction, and injury multi-district litigation. The settlement with JUUL is part of a series of settlements on behalf of class, personal injury, and subdivision plaintiffs with cases in the multi-district litigation. Separately, a $235 million settlement with Altria received final approval in March 2024. The settlement was reached shortly after the plaintiffs' case was presented in a bellwether trial in San Francisco.

Before joining Robbins Geller, Shefler spent years representing whistleblowers in cases alleging fraud against federal and state governments in the areas of environmental cleanup, government contracting, and healthcare. She has also represented public and private water suppliers in mass tort cases alleging contamination of drinking water due to the use of toxic chemicals in agricultural areas across California.

## Education

B.A., University of Oregon Clark Honors College, 2007; J.D., New York University School of Law, 2013

## Honors / Awards

500 X - The Next Generation, *Lawdragon*, 2023-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2022-2023; J.D., *Cum Laude*, New York University School of Law, 2013; B.A., *Magna Cum Laude*, University of Oregon Clark Honors College, 2007

# Sam S. Sheldon | Partner

Sam Sheldon is a partner in the Firm's San Diego office, where he focuses on securities fraud and other complex civil litigation. Before joining the Firm in January 2024, Sheldon served more than five years as a United States Magistrate Judge in the Southern District of Texas, primarily in Houston. He wrote opinions in almost every area of the law, including securities fraud, intellectual property, class actions, labor and employment, False Claims Act, and criminal law.

Most recently, Sheldon was a part of a team of Robbins Geller attorneys that successfully obtained a $434 million settlement in *In re Under Armour Sec. Litig*. The case settled just weeks before a jury trial was set to begin in Baltimore, Maryland. The $434 million recovery is the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

Before taking the federal bench, Sheldon was a partner with Quinn Emanuel in the Washington, D.C. office and headed the firm's Health Care Practice Group. He represented plaintiffs in landmark cases brought under the federal False Claims Act.

Sheldon previously served as Chief of the Health Care Fraud Unit in the DOJ Criminal Division in Washington, D.C., where he oversaw the prosecution of federal health care fraud throughout the United States. He also was an Assistant United States Attorney in Texas. Earlier in his career, Sheldon was a partner with Cozen O'Connor in the San Diego office. Sheldon has tried 25 cases as a federal prosecutor and civil litigator. He received numerous awards for his successful federal prosecutions from the DOJ and other federal agencies including the Special Achievement Award presented by the United States Attorney General.

## Education

B.A., University of Southern California, 1992; M.A., University of Southern California, 1994; J.D., University of Houston Law Center, 1997

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2026; Leading Litigator in America, *Lawdragon*, 2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Prosecutor Leadership Award presented by the Inspector General for the United States Department of Health and Human Services, 2013; Special Award from the Director of the FBI for excellent work with the Medicare Fraud Taskforce, 2013; Exceptional Service Award presented by the United States Assistant Attorney General, 2011; Special Achievement Award presented by the United States Attorney General for Sustained Superior Performance of Duty, 2010; International Achievement Award from the Assistant Director of the Department of Homeland Security for prosecuting the first illegal exportation of goods case in the Southern District of Texas (under 18 U.S.C. §554), 2010; Special Award from the Director of the FBI for prosecuting the first agricultural fraud case in the United States (under 7 U.S.C. §7711), 2009

# Arthur L. Shingler III | Partner

Arthur Shingler is a partner in the Firm's San Diego office. Shingler has successfully represented both public and private sector clients in hundreds of complex, multi-party actions with billions of dollars in dispute. Throughout his career, he has obtained outstanding results for those he has represented in cases generally encompassing shareholder derivative and securities litigation, unfair business practices and antitrust litigation, publicity rights and advertising litigation, ERISA litigation, and other insurance, health care, employment, and commercial disputes.

Representative matters in which Shingler has served as a core member of the litigation team or settlement counsel include, among others: *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litig.*, No. 2:17-md-02785 (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen, which allowed the prices of the life-saving EpiPen to rise over 600% in 9 years); *In re Remicade Antitrust Litig.*, No. 2:17-cv-04326 (E.D. Pa.) ($25 million recovery for indirect purchasers in antitrust action); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687 (D.N.J.) (direct purchaser class settled in excess of $100 million); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.) ($272 million recovery); *In re Royal Dutch/Shell ERISA Litig.*, No. 3:04-cv-00374 (D.N.J.) ($90 million settlement); *In re Priceline.com Sec. Litig.*, No. 3:00-cv-01884 (D. Conn.) ($80 million settlement); *In re General Motors ERISA Litig.*, No. 05-71085 (E.D. Mich.) ($37.5 million settlement, in addition to significant revision of retirement plan administration); *Wood v. Ionatron, Inc.*, No. 4:06-cv-00354 (D. Ariz.) ($6.5 million settlement); *In re Lattice Semiconductor Corp. Derivative Litig.*, No. C 043327CV (Or. Cir. Ct., Wash. Cnty.) (corporate governance settlement, including substantial revision of board policies and executive management); *In re 360networks Class Action Sec. Litig.*, No. 1:02-cv-04837 (S.D.N.Y.) ($7 million settlement); and *Rothschild v. Tyco Int'l (US), Inc.*, 83 Cal. App. 4th 488 (2000) (shaped scope of California's Unfair Practices Act as related to limits of State's False Claims Act).

In addition, Shingler is currently working on behalf of plaintiffs in several class actions, including, for example, *In re National Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio), and *In re American Airlines/JetBlue Antitrust Litig.*, No. 1:22-cv-07374 (E.D.N.Y.).

## Education

B.A., Point Loma Nazarene College, 1989; J.D., Boston University School of Law, 1995

## Honors / Awards

B.A., *Cum Laude*, Point Loma Nazarene College, 1989

# Jessica T. Shinnefield | Partner

Jessica Shinnefield is a partner in the Firm's San Diego office.  Currently, her practice focuses on initiating, investigating, and prosecuting securities fraud class actions.  Shinnefield served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery.  For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers.  The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.  Shinnefield also served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial.  The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

Shinnefield was also a member of the litigation team prosecuting actions against investment banks and leading national credit rating agencies for their roles in structuring and rating structured investment vehicles backed by toxic assets in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated* and *King County, Washington v. IKB Deutsche Industriebank AG*.  These cases were among the first to successfully allege fraud against the rating agencies, whose ratings have traditionally been protected by the First Amendment.  Shinnefield also litigated individual opt-out actions against AOL Time Warner – *Regents of the Univ. of Cal. v. Parsons* and *Ohio Pub. Emps. Ret. Sys. v. Parsons* (recovery more than $600 million).  Additionally, she litigated an action against Omnicare, in which she helped obtain a favorable ruling for plaintiffs from the United States Supreme Court.  Shinnefield has also successfully appealed lower court decisions in the Second, Seventh, and Ninth Circuit Courts of Appeals.

## Education

B.A., University of California at Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2026; Future Star, *Benchmark Litigation*, 2023-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Top Woman Lawyer, *Daily Journal*, 2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023; Plaintiffs' Lawyers Trailblazer, *The National Law Journal*, 2021; Litigator of the Week, *The American Lawyer*, 2020; Rising Star, *Super Lawyers Magazine*, 2015-2019; 40 & Under Hot List, *Benchmark Litigation*, 2018-2019; B.A., *Phi Beta Kappa*, University of California at Santa Barbara, 2001

# Elizabeth A. Shonson | Partner

Elizabeth Shonson is a partner in the Firm's Boca Raton office. She concentrates her practice on representing investors in class actions brought pursuant to the federal securities laws. Shonson has litigated numerous securities fraud class actions nationwide, helping achieve significant recoveries for aggrieved investors. She was a member of the litigation teams responsible for recouping millions of dollars for defrauded investors, including: *In re Massey Energy Co. Sec. Litig.* (S.D. W.Va.) ($265 million); *Nieman v. Duke Energy Corp.* (W.D.N.C.) ($146.25 million recovery); *In re ADT Inc. S'holder Litig.* (Fla. Cir. Ct., 15th Jud. Cir.) ($30 million settlement); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

## Education

B.A., Syracuse University, 2001; J.D., University of Florida Levin College of Law, 2005

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2016-2019; J.D., *Cum Laude*, University of Florida Levin College of Law, 2005; Editor-in-Chief, *Journal of Technology Law & Policy*; Phi Delta Phi; B.A., with Honors, *Summa Cum Laude*, Syracuse University, 2001; Phi Beta Kappa

# Trig Smith | Partner

Trig Smith is a partner in the Firm's San Diego office where he focuses his practice on complex securities litigation. He has been involved in the prosecution of numerous securities class actions that have resulted in over a billion dollars in recoveries for investors. His cases have included: *In re Cardinal Health, Inc. Sec. Litig.* ($600 million recovery); *Jones v. Pfizer Inc.* ($400 million recovery); *Silverman v. Motorola, Inc.* ($200 million recovery); and *City of Livonia Emps.' Ret. Sys. v. Wyeth* ($67.5 million). Most recently, he was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

## Education

B.S., University of Colorado, Denver, 1995; M.S., University of Colorado, Denver, 1997; J.D., Brooklyn Law School, 2000

## Honors / Awards

Best Lawyer in America, *Best Lawyers®*, 2024-2026; Member, *Brooklyn Journal of International Law*, Brooklyn Law School; CALI Excellence Award in Legal Writing, Brooklyn Law School

# Mark Solomon | Partner

Mark Solomon is a founding and managing partner of the Firm and leads its international litigation practice. Over the last 32 years, he has regularly represented United States and United Kingdom-based pension funds and asset managers in class and non-class securities litigation in federal and state courts throughout the United States. He was first admitted to the Bar of England and Wales as a Barrister (he is non-active) and is an active member of the Bars of Ohio, California, and various United States federal district and appellate courts.

Since joining the practice in 1993, Solomon has spearheaded the prosecution of many significant securities fraud cases, recovering billions of dollars for defrauded investors. The recoveries are the product of multi-million and multi-hundred million dollar pre-trial settlements his teams and his clients have been able to achieve, enhanced by a track record of taking such cases successfully through jury trial where necessary. An additional feature of his practice is the significant corporate governance reforms designed to limit recidivism and promote appropriate standards that he has introduced in the resolution of major cases.

Solomon currently is counsel to a number of U.K. pension funds that are serving or have served as lead plaintiffs in cases throughout the United States in the last ten years. He represented Norfolk Pension Fund in the securities fraud class action against Apple Inc. and Apple executives in *In re Apple Inc. Sec. Litig.* in the federal district court for the Northern District of California, which resulted in a settlement shortly before trial of $490 million payable by the defendants to the investor class – the third-largest ever securities fraud recovery in the Northern District and the fifth-largest in the Ninth Circuit. He represented North East Scotland Pension Fund in the securities fraud class action against Under Armour and Under Armour executives *In re Under Armour Sec. Litig.* in the federal district court for the District of Maryland, which resulted in a settlement shortly before trial of $434 million payable by the defendants to the investor class – the second-largest ever securities fraud recovery in the Fourth Circuit. In addition, the monetary recovery was accompanied by important governance reforms, including the separation of the CEO and BOD Chair and restraints on restricted stock awards to senior executives. He represented the British Coal Staff Superannuation Scheme and the Mineworkers' Pension Scheme in *Smilovits v. First Solar, Inc.* in the federal district court for the District of Arizona in which the class recovered $350 million on the eve of trial. That settlement resulted in the largest-ever securities fraud recovery in the District of Arizona and the seventh-largest in the Ninth Circuit. He represented the U.K.'s Norfolk Pension Fund in *Hsu v. Puma Biotechnology, Inc.* where, in the federal district court for the Central District of California, after three weeks of trial, the Fund obtained a jury verdict valued at over $54 million in favor of the class against the company and its CEO. He represented Strathclyde Pension Fund in *Strathclyde Pension Fund v. Bank OZK*, a class action against Bank OZK and its CEO, in the federal district court for the Eastern District of Arkansas in which the class recovered $45 million. He represented Strathclyde Pension Fund in *In re Ply Gem Holdings, Inc. Sec. Litig.* where the class recovered $26 million. Before all of those cases, in a case in 2000 against Helionetics, Inc. and its senior executives, Solomon had presented to a jury, and won, one of the very few securities fraud class actions ever taken to trial.

In ongoing litigation, Solomon represents Los Angeles County Employees Retirement Association and the class in a securities fraud class action pending against FirstEnergy Corp. and FirstEnergy executives in the federal district court for the Southern District of Ohio and he represents Norfolk Pension Fund and the putative class in the securities fraud class action *In re Anadarko Petroleum Corp. Sec. Litig.* against Anadarko Petroleum Corporation and former Anadarko executives, pending in the federal district court for the Southern District of Texas.

# Education

B.A., Trinity College, Cambridge University, England, 1985; L.L.M., Harvard Law School, 1986; Inns of Court School of Law, Degree of Utter Barrister, England, 1987

## Honors / Awards

Best Lawyer in America, *Best Lawyers*®, 2025-2026; Outstanding Individual Contribution - Service Provider, LGC Investment Awards, *Local Government Chronicle*, 2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Litigator of the Week, *The AmLaw Litigation Daily*, 2024; Super Lawyer, *Super Lawyers Magazine*, 2017-2018; Recommended Lawyer, *The Legal 500*, 2016-2017; Lizette Bentwich Law Prize, Trinity College, 1983 and 1984; Hollond Travelling Studentship, 1985; Harvard Law School Fellowship, 1985-1986; Member and Hardwicke Scholar of the Honourable Society of Lincoln's Inn

## Hillary B. Stakem | Partner

Hillary Stakem is a partner in the Firm's San Diego office, where her practice focuses on complex securities litigation. Stakem was a member of the litigation team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. She was also a member of the litigation teams that secured a $388 million recovery for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, and that obtained a $350 million settlement on the eve of trial in *Smilovits v. First Solar, Inc.*, the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit. Stakem also helped secure a $131 million recovery in favor of plaintiffs in *Bennett v. Sprint Nextel Corp*, a $100 million settlement for shareholders in *Karinski v. Stamps.com*, a $97.5 million recovery in *Marcus v. J.C. Penney Company, Inc.*, and an $87.5 million settlement in *Monroe County Employees' Retirement System v. The Southern Company*.

## Education

B.A., College of William and Mary, 2009; J.D., UCLA School of Law, 2012

## Honors / Awards

40 & Under List, *Benchmark Litigation*, 2023-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Rising Star, *Super Lawyers Magazine*, 2021-2022; 40 & Under Hot List, *Benchmark Litigation*, 2021; B.A., *Magna Cum Laude*, College of William and Mary, 2009

# Jeffrey J. Stein | Partner

Jeffrey Stein is a partner in the Firm's San Diego office, where he practices securities fraud litigation and other complex matters. He was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members are eligible for upwards of $35,000 in restitution. Stein represented the class on a *pro bono* basis.

Before joining the Firm, Stein focused on civil rights litigation, with special emphasis on the First, Fourth, and Eighth Amendments. In this capacity, he helped his clients secure successful outcomes before the United States Supreme Court and the Ninth Circuit Court of Appeals.

## Education

B.S., University of Washington, 2005; J.D., University of San Diego School of Law, 2009

# Christopher D. Stewart | Partner

Christopher Stewart is a partner in the Firm's San Diego office. His practice focuses on complex securities and shareholder derivative litigation. Stewart served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, he and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history. Most recently, Stewart served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial. The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

He was also part of the litigation team that obtained a $67 million settlement in *City of Westland Police & Fire Ret. Sys. v. Stumpf*, a shareholder derivative action alleging that Wells Fargo participated in the mass-processing of home foreclosure documents by engaging in widespread robo-signing. Stewart also served on the litigation team in *In re Deutsche Bank AG Sec. Litig.*, in which the Firm obtained a $18.5 million settlement in a case against Deutsche Bank and certain of its officers alleging violations of the Securities Act of 1933.

## Education

B.S., Santa Clara University, 2004; M.B.A., University of San Diego School of Business Administration, 2009; J.D., University of San Diego School of Law, 2009

## Honors / Awards

California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Rising Star, *Super Lawyers Magazine*, 2015-2020; J.D., *Magna Cum Laude*, Order of the Coif, University of San Diego School of Law, 2009; Member, *San Diego Law Review*

# Sabrina E. Tirabassi | Partner

Sabrina Tirabassi is a partner in the Firm's Boca Raton office, where her practice focuses on complex securities litigation, including the Firm's lead plaintiff motion practice. In this role, Tirabassi remains at the forefront of litigation trends and issues arising under the Private Securities Litigation Reform Act of 1995. Further, Tirabassi has been an integral member of the litigation teams responsible for securing significant monetary recoveries on behalf of shareholders, including: *Villella v. Chemical and Mining Company of Chile Inc.*, No. 1:15-cv-02106 (S.D.N.Y.); *In re ADT Inc. S'holder Litig.*, No. 502018CA003494XXXXMB-AG (Fla. Cir. Ct., 15th Jud. Cir.); *KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.*, No. 1:14-cv-10105-MLW (D. Mass.); *Sohal v. Yan*, No. 1:15-cv-00393-DAP (N.D. Ohio); *McGee v. Constant Contact, Inc.*, No. 1:15-cv-13114-MLW (D. Mass.); and *Schwartz v. Urban Outfitters, Inc.*, No. 2:13-cv-05978-MAK (E.D. Pa.).

## Education

B.A., University of Florida, 2000; J.D., Nova Southeastern University Shepard Broad College of Law, 2006, *Magna Cum Laude*

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2010, 2015-2018; J.D., *Magna Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 2006

# Michael A. Troncoso | Partner

Michael Troncoso is a partner with the Firm. His practice focuses on securities fraud class action litigation and advising institutional investors in the United States and European Union on corporate governance and global policy issues. Prior to joining the Firm, Troncoso served as a prosecutor, senior in-house counsel, and legal and policy advisor across numerous sectors. He served as chief counsel and chief of public policy to then-California Attorney General Kamala D. Harris, overseeing the office's priority litigation, enforcement, and legislative matters. In this role, he served as lead counsel for the State of California in securing the National Mortgage Settlement, the largest consumer financial protection settlement in state history that brought $20 billion in loan relief and direct payments to California homeowners. He led the state's Mortgage Fraud Task Force and its investigations of securities law violations arising from the issuance of residential mortgage-backed securities. His team recovered nearly $1 billion in RMBS-related losses for California public pension funds.

Earlier in his career, Troncoso served for nearly six years as a trial attorney and assistant chief attorney for policy in the San Francisco District Attorney's office, where he tried multiple criminal cases to jury verdict and led the office's mortgage and investment fraud team, where he was responsible for investigating and prosecuting complex financial crimes from initial report through charging and trial.

Troncoso most recently served as Vice President at the Chan Zuckerberg Initiative, a philanthropic organization, where he led bipartisan policy and advocacy efforts nationwide. He also served in the University of California's Office of General Counsel as managing counsel for health affairs and technology law and chief campus counsel, where he oversaw various litigation, regulatory, and data protection matters.

## Education

B.A., University of California at Berkeley, 1999; J.D., Georgetown University Law Center, 2002

## Honors / Awards

Top 20 Under 40, *Daily Journal*, 2012

# Douglas Wilens | Partner

Douglas Wilens is a partner in the Firm's Boca Raton office.  Wilens is a member of the Firm's Appellate Practice Group, participating in numerous appeals in federal and state courts across the country.  Most notably, Wilens handled successful and precedent-setting appeals in *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016) (addressing duty to disclose under SEC Regulation Item 303 in §10(b) case), *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229 (1st Cir. 2013) (addressing pleading of loss causation in §10(b) case), and *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (addressing pleading of falsity, scienter, and loss causation in §10(b) case).

Before joining the Firm, Wilens was an associate at a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including the National Basketball Association, the National Hockey League, and Major League Soccer.  He has also served as an adjunct professor at Florida Atlantic University and Nova Southeastern University, where he taught undergraduate and graduate-level business law classes.

## Education

B.S., University of Florida, 1992; J.D., University of Florida College of Law, 1995

## Honors / Awards

Book Award for Legal Drafting, University of Florida College of Law; J.D., with Honors, University of Florida College of Law, 1995

# Shawn A. Williams | Partner

Shawn Williams, a founding partner of the Firm, is the managing partner of the Firm's San Francisco office and a member of the Firm's Management Committee. Williams specializes in complex commercial litigation focusing on securities litigation and has served as lead counsel in a range of precedent-setting actions that recovered billions of dollars for investors and consumers. Williams recently served as lead counsel in a globally watched securities class action case against Apple, *In re Apple Inc. Sec. Litig.* He and the trial team secured a $490 million recovery for injured investors. Williams was among lead counsel in *In re Facebook Biometric Info. Privacy Litig.*, charging Facebook with violations of the Illinois Biometric Information Privacy Act, resulting in a $650 million recovery for injured Facebook users, which was then the largest ever biometric class action.

Williams also led the team of Robbins Geller attorneys in the investigation and drafting of comprehensive securities fraud claims in *Hefler v. Wells Fargo & Co.*, alleging widespread opening of unauthorized and undisclosed customer accounts. The *Hefler* action resulted in the recovery of $480 million for Wells Fargo investors. In *City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*, Williams led the Firm's team of lawyers alleging MetLife's failure to disclose and account for the scope of its use and non-use of the Social Security Administration Death Master File and its impact on MetLife's financial statements. The *Metlife* action resulted in a recovery of $84 million. Williams also served as lead counsel in the following actions resulting in significant recoveries: *Chicago Laborers Pension Fund v. Alibaba Grp. Holding Ltd.* ($75 million recovery); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.* ($75 million recovery); *In re Medtronic, Inc. Sec. Litig.* ($43 million recovery); *In re Cadence Design Sys., Inc. Sec. Litig.* ($38 million recovery); and *City of Sterling Heights Gen. Emps'. Ret. Sys. v. Prudential Fin., Inc.* ($33 million recovery).

Williams is also a member of the Firm's Shareholder Derivative Practice Group, which has secured tens of millions of dollars in cash recoveries and comprehensive corporate governance reforms in a number of high-profile cases including: *In re McAfee, Inc. Derivative Litig.*; *In re Marvell Tech. Grp. Ltd. Derivative Litig.*; *In re KLA-Tencor Corp. S'holder Derivative Litig.*; *The Home Depot, Inc. Derivative Litig.*; and *City of Westland Police & Fire Ret. Sys. v. Stumpf (Wells Fargo & Co.)*.

Before joining the Firm in 2000, Williams served for 5 years as an Assistant District Attorney in the Manhattan District Attorney's Office, where he tried over 20 cases to New York City juries.

## Education

B.A., The State of University of New York at Albany, 1991; J.D., University of Illinois, 1995

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2018-2026; Litigation Star, *Benchmark Litigation*, 2025-2026; Best Lawyer in America, *Best Lawyers®*, 2022-2026; Super Lawyer, *Super Lawyers Magazine*, 2014-2017, 2020-2021, 2023-2025; Recommended Lawyer, *The Legal 500*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Leading Commercial Litigator, *Daily Journal*, 2025; Litigator of the Week, *The AmLaw Litigation Daily*, 2024; Top Plaintiff Lawyer, *Daily Journal*, 2022; Most Influential Black Lawyers, *Savoy*, 2022; Legend, *Lawdragon*, 2022; Top 100 Lawyer, *Daily Journal*, 2019, 2021; California Trailblazer, *The Recorder*, 2019; Titan of the Plaintiffs Bar, *Law360*, 2019; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2019; Board Member, California Bar Foundation, 2012-2014

# Christopher M. Wood | Partner

Christopher Wood is the partner in charge of Robbins Geller Rudman & Dowd LLP's Nashville office, where his practice focuses on complex securities litigation. He has been a member of litigation teams responsible for recoveries totaling hundreds of millions of dollars for investors, including some of the largest securities class action recoveries in Tennessee history. His cases include: *In re Massey Energy Co. Sec. Litig.* ($265 million recovery); *In re Envision Healthcare Co. Sec. Litig.* ($177.5 million recovery); *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery); *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.* ($65 million recovery); *Grae v. Corrections Corporation of America* ($56 million recovery); *In re Micron Tech., Inc. Sec. Litig.* ($42 million recovery); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn* ($36 million recovery); and *Winslow v. BancorpSouth, Inc.* ($29.5 million recovery).

Working together with the ACLU of Tennessee and Public Funds Public Schools (a national campaign founded by the Southern Poverty Law Center and Education Law Center), Wood is litigating an action challenging Tennessee's school voucher program, which diverts critically needed funds from public school students in Nashville and Memphis. Wood has also provided *pro bono* legal services through Tennessee Justice for Our Neighbors, Volunteer Lawyers & Professionals for the Arts, the Ninth Circuit's Pro Bono Program, and the San Francisco Bar Association's Volunteer Legal Services Program.

## Education

B.A., Vanderbilt University, 2003; J.D., University of San Francisco School of Law, 2006

## Honors / Awards

Future Star, *Benchmark Litigation*, 2023-2026; Best Lawyer in America, *Best Lawyers®*, 2025-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023-2024; 40 & Under Hot List, *Benchmark Litigation*, 2021; Rising Star, *Super Lawyers Magazine*, 2011-2013, 2015-2020

# Debra J. Wyman | Partner

Debra Wyman is a partner in the Firm's San Diego office. She specializes in securities litigation and has litigated numerous cases against public companies in state and federal courts that have resulted in over $2 billion in securities fraud recoveries. Wyman served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history. Most recently, Wyman was part of the litigation team in *Monroe County Employees' Retirement System v. The Southern Company* in which an $87.5 settlement was reached after three years of litigation. The settlement resolved claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant that was designed to transform coal into synthetic gas that could then be used to fuel the power plant.

Wyman was also a member of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action. Wyman prosecuted the complex securities and accounting fraud case *In re HealthSouth Corp. Sec. Litig.*, one of the largest and longest-running corporate frauds in history, in which $671 million was recovered for defrauded HealthSouth investors. She was also part of the trial team that litigated *In re AT&T Corp. Sec. Litig.*, which was tried in the United States District Court, District of New Jersey, and settled after only two weeks of trial for $100 million. Wyman was also part of the litigation team that secured a $64 million recovery for Dana Corp. shareholders in *Plumbers & Pipefitters National Pension Fund v. Burns*, in which the Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.

## Education

B.A., University of California Irvine, 1990; J.D., University of San Diego School of Law, 1997

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2020-2026; Litigation Star, *Benchmark Litigation*, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2024-2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; California - Litigation Star, *Benchmark Litigation*, 2024-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Top 250 Women in Litigation, *Benchmark Litigation*, 2021, 2023-2024; San Diego Litigator of the Year, *Benchmark Litigation*, 2021; Plaintiff Litigator of the Year, *Benchmark Litigation*, 2021; Top Woman Lawyer, *Daily Journal*, 2017, 2020; MVP, *Law360*, 2020; Litigator of the Week, *The American Lawyer*, 2020; Litigator of the Year, *Our City San Diego*, 2017; Super Lawyer, *Super Lawyers Magazine*, 2016-2017

# Susan K. Alexander | Of Counsel

Susan Alexander is Of Counsel to the Firm and is based in the San Francisco office. Alexander's practice specializes in federal appeals of securities fraud class actions on behalf of investors. With nearly 30 years of federal appellate experience, she has argued on behalf of defrauded investors in circuit courts throughout the United States. Among her most notable cases are *Mineworkers' Pension Scheme v. First Solar Inc.* ($350 million recovery), *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery), and the successful appellate ruling in *Alaska Elec. Pension Fund v. Flowserve Corp.* ($55 million recovery). Other representative results include: *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018) (reversing dismissal of securities fraud action and holding that the Exchange Act applies to unsponsored American Depositary Shares); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384 (8th Cir. 2016) (reversing summary judgment of securities fraud action on statute of limitations grounds); *In re Ubiquiti Networks, Inc. Sec. Litig.*, 669 F. App'x 878 (9th Cir. 2016) (reversing dismissal of §11 claim); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) (reversing dismissal of securities fraud complaint, focused on loss causation); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114 (2d Cir. 2012) (reversing dismissal of §11 claim); *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) (reversing dismissal of securities fraud complaint, focused on statute of limitations); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (reversing dismissal of securities fraud complaint, focused on loss causation); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir.) (reversing dismissal of securities fraud complaint, focused on scienter), *reh'g denied and op. modified*, 409 F.3d 653 (5th Cir. 2005); and *Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) (reversing dismissal of securities fraud complaint, focused on scienter). Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death. At CAP, and subsequently in private practice, she litigated and consulted on death penalty direct and collateral appeals for ten years.

## Education

B.A., Stanford University, 1983; J.D., University of California, Los Angeles, 1986

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2026; Super Lawyer, *Super Lawyers Magazine*, 2015-2021; American Academy of Appellate Lawyers; California Academy of Appellate Lawyers; Ninth Circuit Advisory Rules Committee; Appellate Delegate, Ninth Circuit Judicial Conference; ABA Council of Appellate Lawyers

# Laura M. Andracchio | Of Counsel

Laura Andracchio is Of Counsel in the Firm's San Diego office. Having joined the Firm in 1997, she was a Robbins Geller partner before her role as Of Counsel. As a partner with the Firm, Andracchio led dozens of securities fraud cases against public companies throughout the country, recovering hundreds of millions of dollars for injured investors. Her current focus remains securities fraud litigation under the federal securities laws.

Most recently, Andracchio was a member of the litigation team that obtained a $350 million recovery for the class in 2024 in *In re Alphabet, Inc. Sec. Litig.* (N.D. Cal.). Andracchio was also part of the litigation teams in *In re American Realty Cap. Props., Inc. Litig.* (S.D.N.Y.), in which a $1.025 billion recovery was obtained; *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.* (W.D. Ark.), recovering $160 million for Wal-Mart investors; and *In re Cardinal Health, Inc. Sec. Litig.* (S.D. Ohio) ($109 million).

Andracchio was also a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, recovering $100 million for the class after two weeks of trial in district court in New Jersey. Before trial, she managed and litigated the case for four years. She also led the trial team in *Brody v. Hellman*, a case against Qwest and former directors of U.S. West seeking an unpaid dividend, recovering $50 million for the class, which was largely comprised of U.S. West retirees. Some of Andracchio's other cases include *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.* (S.D.N.Y.) ($388 million on behalf of investors in residential mortgage-backed securities); *City of Hialeah Emps.' Ret. Sys. v. Toll Bros., Inc.*; *Ross v. Abercrombie & Fitch Co.*; *In re GMH Cmtys. Tr. Sec. Litig.*; *In re Vicuron Pharms., Inc. Sec. Litig.*; and *In re Navarre Corp. Sec. Litig.*

## Education
B.A., Bucknell University, 1986; J.D., Duquesne University School of Law, 1989

## Honors / Awards
Order of the Barristers, J.D., with honors, Duquesne University School of Law, 1989

# Jason M. Avellino | Of Counsel

Jason Avellino is Of Counsel in the Firm's Wilmington office. He focuses his practice on corporate governance, shareholder rights, and complex securities litigation.

Before joining Robbins Geller, Avellino practiced at a prominent Delaware law firm, where he was a significant part of litigation teams that achieved substantial recoveries and meaningful governance reforms for investors. He also spent more than a decade representing major product manufacturers, contractors, marine terminal operators, retail establishments, and sports venues (including several Fortune 500 companies) in the evaluation and defense of commercial matters and civil lawsuits. During that time, Avellino was a member of the International Association of Defense Counsel (IADC), a group of approximately 2,500 invitation-only, peer-reviewed members comprised of the world's leading corporate and insurance lawyers and insurance executives.

## Education

B.S., Bloomsburg University, 2007; J.D., Villanova University School of Law, 2010

## Honors / Awards

B.S., *Magna Cum Laude*, Bloomsburg University, 2007

# Matthew J. Balotta | Of Counsel

Matt Balotta is Of Counsel in the Firm's San Diego office, where his practice focuses on securities fraud litigation. Balotta earned his Bachelor of Arts degree in History, *summa cum laude*, from the University of Pittsburgh and his Juris Doctor degree from Harvard Law School. During law school, Balotta was a summer associate with the Firm and interned at the National Consumer Law Center. He also participated in the Employment Law and Delivery of Legal Services Clinics and served on the General Board of the Harvard Civil Rights-Civil Liberties Law Review.

## Education

B.A., University of Pittsburgh, 2005; J.D., Harvard Law School, 2015

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers*®, 2026; B.A., *Summa Cum Laude*, University of Pittsburgh, 2005

# Randi D. Bandman | Of Counsel

Randi Bandman is Of Counsel in the Firm's San Diego office. Throughout her career, she has represented and advised hundreds of clients, including pension funds, managers, banks, and hedge funds, such as the Directors Guild of America, Screen Actors Guild, Writers Guild of America, and Teamster funds. Bandman's cases have yielded billions of dollars of recoveries. Notable cases include the AOL Time Warner, Inc. merger ($629 million), *In re Enron Corp. Sec. Litig.* ($7.2 billion), Private Equity litigation (*Dahl v. Bain Cap. Partners, LLC*) ($590.5 million), *In re WorldCom Sec. Litig.* ($657 million), and *In re Facebook Biometric Info. Privacy Litig.* ($650 million).

Bandman is currently representing plaintiffs in the Foreign Exchange Litigation pending in the Southern District of New York which alleges collusive conduct by the world's largest banks to fix prices in the $5.3 trillion a day foreign exchange market and in which billions of dollars have been recovered to date for injured plaintiffs. Bandman is part of the Robbins Geller Co-Lead Counsel team representing the class in the "High Frequency Trading" case, which accuses stock exchanges of giving unfair advantages to high-speed traders versus all other investors, resulting in billions of dollars being diverted. Bandman was instrumental in the landmark state settlement with the tobacco companies for $12.5 billion. Bandman also led an investigation with congressional representatives on behalf of artists into allegations of "pay for play" tactics, represented Emmy winning writers with respect to their claims involving a long-running television series, represented a Hall of Fame sports figure, and negotiated agreements in connection with a major motion picture. Recently, Bandman was chosen to serve on the Law Firm Advisory Board of the Association of Media & Entertainment Counsel, an organization made up of thousands of attorneys from studios, networks, guilds, talent agencies, and top media companies, dealing with protecting content distributed through a variety of formats worldwide.

## Education

B.A., University of California, Los Angeles; J.D., University of Southern California

# Mary K. Blasy | Of Counsel

Mary Blasy is Of Counsel to the Firm and is based in the Firm's Melville and Washington, D.C. offices. Her practice focuses on the investigation, commencement, and prosecution of securities fraud class actions and shareholder derivative suits. Blasy has recovered hundreds of millions of dollars for investors in securities fraud class actions against Reliance Acceptance Corp. ($66 million); Sprint Corp. ($50 million); Titan Corporation ($15+ million); Martha Stewart Omni-Media, Inc. ($30 million); and Coca-Cola Co. ($137.5 million). Blasy has also been responsible for prosecuting numerous complex shareholder derivative actions against corporate malefactors to address violations of the nation's securities, environmental, and labor laws, obtaining corporate governance enhancements valued by the market in the billions of dollars.

In 2014, the Presiding Justice of the Appellate Division of the Second Department of the Supreme Court of the State of New York appointed Blasy to serve as a member of the Independent Judicial Election Qualification Commission, which until December 2018 reviewed the qualifications of candidates seeking public election to New York State Supreme Courts in the 10th Judicial District. She also served on the *Law360* Securities Editorial Advisory Board from 2015 to 2016.

## Education

B.A., California State University, Sacramento, 1996; J.D., UCLA School of Law, 2000

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2016-2020, 2023-2025; *Law360* Securities Editorial Advisory Board, 2015-2016; Member, Independent Judicial Election Qualification Commission, 2014-2018

# M. Lamontt Bowens | Of Counsel

Lamontt Bowens is Of Counsel to Robbins Geller in the Firm's Washington, D.C. office. He is a member of the Firm's client outreach team where his focus is working with the Firm's institutional investor clients.

Bowens began his career with Robbins Geller working in the fax and mailroom while attending college and law school at night. After his first year of law school, he worked as a summer associate with the Firm. Following his second year of law school, Bowens worked as a summer intern in the office of the San Diego County Public Defender, where he worked at the direction of his supervising attorneys representing indigent clients. After graduating from law school and passing the bar exam, Bowens was a Staff Attorney where he worked on securities, antitrust, and consumer cases in Robbins Geller's San Diego office.

Bowens has written and regularly speaks about his challenging experiences as a youth in the inner city and his unorthodox journey to becoming a lawyer. He has been a mentor to at-risk youth and is an advocate for programs designed to promote second chances for the formerly incarcerated.

Bowens is a dedicated member of the National Association of Securities Professionals (NASP) and the National Bar Association (NBA).

## Education

B.S., University of Phoenix, 2004; J.D., Golden Gate University School of Law, 2010

# William K. Cavanagh, Jr. | Of Counsel

Bill Cavanagh is Of Counsel in the Firm's Washington, D.C. office. Cavanagh concentrates his practice in employee benefits law and works with the Firm's Institutional Outreach Team. Prior to joining Robbins Geller, Cavanagh was employed by Ullico for the past nine years, most recently as President of Ullico Casualty Group. The Ullico Casualty Group is the leading provider of fiduciary liability insurance for trustees in both the private as well as the public sector. Prior to that he was President of the Ullico Investment Company.

Preceding Cavanagh's time at Ullico, he was a partner at the labor and employee benefits firm Cavanagh and O'Hara in Springfield, Illinois for 28 years. In that capacity, Cavanagh represented public pension funds, jointly trusteed Taft-Hartley, health, welfare, pension, and joint apprenticeship funds advising on fiduciary and compliance issues both at the Board level as well as in administrative hearings, federal district courts, and the United States Courts of Appeals. During the course of his practice, Cavanagh had extensive trial experience in state and the relevant federal district courts. Additionally, Cavanagh served as co-counsel on a number of cases representing trustees seeking to recover plan assets lost as a result of fraud in the marketplace.

## Education

B.A., Georgetown University, 1974; J.D., John Marshall Law School, 1978

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell

# Christopher Collins | Of Counsel

Christopher Collins is Of Counsel in the Firm's San Diego office and his practice focuses on antitrust and consumer protection. Collins served as co-lead counsel in *Wholesale Elec. Antitrust Cases I & II*, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market wherein plaintiffs secured a global settlement for California consumers, businesses, and local governments valued at more than $1.1 billion. He was also involved in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Collins is currently counsel on the California Energy Manipulation antitrust litigation, the Memberworks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations. He formerly served as a Deputy District Attorney for Imperial County where he was in charge of the Domestic Violence Unit.

## Education

B.A., Sonoma State University, 1988; J.D., Thomas Jefferson School of Law, 1995

## Vicki Multer Diamond | Of Counsel

Vicki Multer Diamond is Of Counsel to the Firm and is based in the Firm's Melville office.  She has over 25 years of experience as an investigator and attorney.  Her practice at the Firm focuses on the initiation, investigation, and prosecution of securities fraud class actions.  Diamond played a significant role in the factual investigations and successful oppositions to the defendants' motions to dismiss in a number of cases, including *Tableau*, *One Main*, *Valeant*, and *Orbital ATK*.

Diamond has served as an investigative consultant to several prominent law firms, corporations, and investment firms.  Before joining the Firm, she was an Assistant District Attorney in Brooklyn, New York, where she served as a senior Trial Attorney in the Felony Trial Bureau, and was special counsel to the Special Commissioner of Investigations for the New York City schools, where she investigated and prosecuted crime and corruption within the New York City school system.

## Education

B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

## Honors / Awards

Member, *Hofstra Property Law Journal*, Hofstra University School of Law

# Michael J. Dowd | Of Counsel

Mike Dowd was a founding partner of the Firm. He has practiced in the area of securities litigation for 20 years, prosecuting dozens of complex securities cases and obtaining significant recoveries for investors in cases such as *American Realty* ($1.025 billion), *UnitedHealth* ($925 million), *WorldCom* ($657 million), *AOL Time Warner* ($629 million), *Qwest* ($445 million), *Under Armour* ($434 million), and *Pfizer* ($400 million).

Dowd served as lead trial counsel in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Dowd also served as the lead trial lawyer in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after only two weeks of trial for $100 million. Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991, and again from 1994-1998, where he handled dozens of jury trials and was awarded the Director's Award for Superior Performance.

## Education

B.A., Fordham University, 1981; J.D., University of Michigan Law School, 1984

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Director's Award for Superior Performance, United States Attorney's Office; Best Lawyer in America, *Best Lawyers®*, 2015-2026; Recommended Lawyer, *The Legal 500*, 2016-2019, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Hon. David H. Bartick Award for Civility and Professionalism, U.S. District Court for the Southern District of California, 2024; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Southern California Best Lawyer, *Best Lawyers®*, 2015-2021; Super Lawyer, *Super Lawyers Magazine*, 2010-2020; Lawyer of the Year, *Best Lawyers®*, 2020; Hall of Fame, *Lawdragon*, 2018; Litigator of the Year, *Our City San Diego,* 2017; Leading Lawyer in America, *Lawdragon*, 2014-2016; Litigator of the Week, *The American* Lawyer, 2015; Litigation Star, *Benchmark Litigation* 2013; Directorship 100, NACD Directorship, 2012; Attorney of the Year, *California Lawyer*, 2010; Top 100 Lawyers, *Daily Journal*, 2009; B.A., *Magna Cum Laude*, Fordham University, 1981

## Travis E. Downs III | Of Counsel

Travis Downs is Of Counsel to the Firm in the Firm's San Diego office. His areas of expertise include prosecution of shareholder and securities litigation, including complex shareholder derivative actions. Downs is a member of the Firm's Delaware Practice Group. Downs led a team of lawyers who successfully prosecuted over 65 stock option backdating derivative actions in federal and state courts across the country, resulting in hundreds of millions in financial givebacks for the plaintiffs and extensive corporate governance enhancements, including annual directors elections, majority voting for directors, and shareholder nomination of directors. Notable cases include: *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms); *In re Marvell Tech. Grp. Ltd. Derivative Litig.* ($54 million in financial relief and extensive corporate governance enhancements); *In re McAfee, Inc. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Affiliated Computer Servs. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re KB Home S'holder Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Juniper Networks Derivative Litig.* ($22.7 million in financial relief and extensive corporate governance enhancements); *In re Nvidia Corp. Derivative Litig.* ($15 million in financial relief and extensive corporate governance enhancements); and *City of Pontiac Gen. Emps.' Ret. Sys. v. Langone* (achieving landmark corporate governance reforms for investors).

Downs was also part of the litigation team that obtained a $67 million settlement in *City of Westland Police & Fire Ret. Sys. v. Stumpf*, a shareholder derivative action alleging that Wells Fargo participated in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, and a $250 million settlement in *In re Google, Inc. Derivative Litig.*, an action alleging that Google facilitated in the improper advertising of prescription drugs. Downs is a frequent speaker at conferences and seminars and has lectured on a variety of topics related to shareholder derivative and class action litigation.

## Education

B.A., Whitworth University, 1985; J.D., University of Washington School of Law, 1990

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Best Lawyer in America, *Best Lawyers®*, 2018-2026; Recommended Lawyer, *The Legal 500*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Top 100 Leaders in Law Honoree, *San Diego Business Journal*, 2022; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Southern California Best Lawyer, *Best Lawyers®*, 2018-2021; Super Lawyer, *Super Lawyers Magazine*, 2008; B.A., Honors, Whitworth University, 1985

## Jason A. Forge | Of Counsel

Jason Forge is Of Counsel in the Firm's San Diego office. He specializes in complex investigations, litigation, and trials. As a federal prosecutor and private practitioner, Forge has conducted and supervised scores of jury and bench trials in federal and state courts, including the month-long trial of a defense contractor who conspired with Congressman Randy "Duke" Cunningham in the largest bribery scheme in congressional history. He recently obtained a $350 million settlement with Alphabet, Inc., which was made possible only by first winning a unanimous published appellate decision, reversing a district court order that had dismissed the entire case. This is the largest ever post-reversal securities fraud recovery in the Ninth Circuit.

In addition to Alphabet, Forge has secured nine-figure payouts from other corporate goliaths, including Wal-Mart ($160 million) and Pfizer ($400 million). *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.* was the first successful securities fraud case against Wal-Mart. And in the case against Pfizer, Forge led an investigation that uncovered key documents that Pfizer had not produced in discovery. Although fact discovery in the case had already closed, the district judge ruled that the documents had been improperly withheld and ordered that discovery be reopened, including reopening the depositions of Pfizer's former CEO, CFO, and General Counsel. Less than six months after completing these depositions, Pfizer settled the case for $400 million.

Forge also was a key member of the Firm's winning trial team in *Hsu v. Puma Biotechnology, Inc.* – one of only 13 securities fraud class action verdicts for investors in nearly 30 years. After that trial victory, Forge joined a Robbins Geller litigation team that had defeated 12 motions for summary judgment against 40 defendants and was about to depose 17 experts in the home stretch to trial. Forge led the effort to use these depositions to disprove a truth-on-the-market argument that nine defense experts had embraced. After the last of these expert depositions, the defendants dropped their lead truth-on-the-market expert and the Robbins Geller team secured a $1.025 billion settlement from American Realty Capital Properties and other defendants that included a record $237 million contribution from individual defendants and represented more than twice the recovery rate obtained by several funds that had opted out of the class.

Forge was a key member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions, including a federal RICO charge, against President Donald J. Trump. The settlement returned over 90% of the money thousands of students paid to "enroll" in Trump University. He represented the class on a *pro bono* basis. Forge successfully prosecuted another federal RICO case against Scotts Miracle-Gro, resulting in full refunds (totaling over $40 million) for customers who purchased bird feed that Scotts had illegally treated with a pesticide known to be hazardous to birds. He was also a member of the litigation team that obtained a $125 million settlement in *In re LendingClub Securities Litigation*, a settlement that ranked among the top ten largest securities recoveries ever in the Northern District of California.

## Education

B.B.A., The University of Michigan Ross School of Business, 1990; J.D., The University of Michigan Law School, 1993

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2022-2026; Litigation Star, *Benchmark Litigation*, 2023-2026; National Practice Area Star, *Benchmark Litigation*, 2026; Leading Litigator in America, *Lawdragon*, 2026; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2025; Plaintiff Litigator of the Year, *Benchmark Litigation*, 2025; Impact Case Award: *In re Alphabet, Inc. Securities Litigation*, *Benchmark Litigation*, 2025; Recommended Lawyer, *The Legal 500*, 2023-2024; Best Lawyer in America, *Best Lawyers®*, 2019-2023; Southern California Best Lawyer, *Best Lawyers®*, 2019-2021; Local Litigation Star, *Benchmark Litigation*, 2020; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Top 100 Lawyer, *Daily Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; Two-time recipient of Department of Justice's Director's Award for Superior Performance by Litigation Team; numerous commendations from Federal Bureau of Investigation (including commendation from FBI Director Robert Mueller III), Internal Revenue Service, and Defense Criminal Investigative Service; J.D., *Magna Cum Laude*, Order of the Coif, The University of Michigan Law School, 1993; B.B.A., High Distinction, The University of Michigan Ross School of Business, 1990

# Christopher T. Gilroy | Of Counsel

Christopher Gilroy is Of Counsel in the Firm's Manhattan office. His practice focuses on complex securities litigation. Since joining the Firm, Gilroy has played a significant role in the following litigations: *Landmen Partners, Inc. v. The Blackstone Grp., L.P* ($85 million recovery on the eve of trial); *In re OSG Sec. Litig.* ($34 million recovery, representing 87% of the maximum Section 11 damages); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.* ($33 million recovery); *Citiline Holdings, Inc. v. iStar Fin. Inc.* ($29 million recovery); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.* ($19.5 million recovery); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC* ($14 million recovery); *Beaver Cnty. Emps' Ret. Fund v. Tile Shop Holdings, Inc.* ($9.5 million recovery); *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG* (confidential settlement); *In re Ply Gem Holdings, Inc., Sec. Litig.* ($25.9 million recovery); *In re BRF S.A. Sec. Litig.* ($40 million recovery pending final approval); and *In re SandRidge Energy, Inc. Sec. Litig.* (successfully obtaining class certification in an ongoing litigation). Gilroy also performed an exhaustive factual investigation in *In re Satcon Tech. Corp.*, on behalf of Satcon's Chapter 7 Bankruptcy Trustee, resulting in a seven-figure settlement in an action alleging breaches of fiduciary duties against former Satcon directors and officers.

## Education

B.A., City University of New York at Queens College, 2005; J.D., Brooklyn Law School, 2010

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2019-2021; B.A., *Cum Laude*, City University of New York at Queens College, 2005

# Jonah H. Goldstein | Of Counsel

Jonah Goldstein is Of Counsel in the Firm's San Diego office and is responsible for prosecuting complex securities cases and obtaining recoveries for investors. He also represents corporate whistleblowers who report violations of the securities laws. Goldstein has achieved significant settlements on behalf of investors including in *In re HealthSouth Sec. Litig.* (over $670 million recovered against HealthSouth, UBS and Ernst & Young), *In re Cisco Sec. Litig.* (approximately $100 million), and *Marcus v. J.C. Penney Company, Inc.* ($97.5 million recovery). Goldstein also served on the Firm's trial team in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), which settled after two weeks of trial for $100 million, and aided in the $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the fourth-largest securities recovery ever in the Middle District of Tennessee and one of the largest in more than a decade. Most recently, he was part of the litigation team in *Luna v. Marvell Tech. Grp., Ltd.*, resulting in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors. Before joining the Firm, Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court and as an Assistant United States Attorney for the Southern District of California, where he tried numerous cases and briefed and argued appeals before the Ninth Circuit Court of Appeals.

## Education

B.A., Duke University, 1991; J.D., University of Denver College of Law, 1995

## Honors / Awards

Recommended Lawyer, *The Legal 500*, 2018-2019; Comments Editor, *University of Denver Law Review*, University of Denver College of Law

# Richard W. Gonnello | Of Counsel

Richard Gonnello is Of Counsel in the Firm's Manhattan office. He has two decades of experience litigating complex securities actions.

Gonnello has successfully represented institutional and individual investors. He has obtained substantial recoveries in numerous securities class actions, including *In re Royal Ahold Sec. Litig.* (D. Md.) ($1.1 billion) and *In re Tremont Sec. Law, State Law & Ins. Litig.* (S.D.N.Y.) ($100 million). Gonnello has also obtained favorable recoveries for institutional investors pursuing direct opt-out claims, including cases against Qwest Communications International, Inc. ($175 million) and Tyco International Ltd ($21 million).

Gonnello has co-authored the following articles appearing in the *New York Law Journal*: "*Staehr* Hikes Burden of Proof to Place Investor on Inquiry Notice" and "Potential Securities Fraud: 'Storm Warnings' Clarified."

## Education

B.A., Rutgers University, 1995; J.D., UCLA School of Law, 1998

## Honors / Awards

B.A., *Summa Cum Laude*, Rutgers University, 1995

# Mitchell D. Gravo | Of Counsel

Mitchell Gravo is Of Counsel to the Firm and is a member of the Firm's institutional investor client services group.  With more than 30 years of experience as a practicing attorney, he serves as liaison to the Firm's institutional investor clients throughout the United States and Canada, advising them on securities litigation matters.

Gravo's clients include Anchorage Economic Development Corporation, Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association.  Prior to joining the Firm, he served as an intern with the Municipality of Anchorage, and then served as a law clerk to Superior Court Judge J. Justin Ripley.

## Education

B.A., Ohio State University; J.D., University of San Diego School of Law

# Bailie L. Heikkinen | Of Counsel

Bailie Heikkinen is Of Counsel in the Firm's Boca Raton office. Her practice focuses on complex class actions, including securities, corporate governance, and consumer fraud litigation.

Heikkinen has been an integral member of the litigation teams responsible for securing monetary recoveries on behalf of shareholders that collectively exceed $100 million. Notable cases include: *Medoff v. CVS Caremark Corp.*, No. 1:09-cv-00554 (D.R.I.); *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, No. 1:10-cv-06016 (N.D. Ill.); *Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102 (N.D. Ill.); and *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, No. 1:09-cv-00799 (D. Del.).

## Education

B.A., University of Florida, 2004; J.D., South Texas College of Law, 2007

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023-2025; Rising Star, *Super Lawyers Magazine*, 2014, 2018

# Dennis J. Herman | Of Counsel

Dennis Herman is Of Counsel in the Firm's San Francisco office where he focuses his practice on securities class actions. He has led or been significantly involved in the prosecution of numerous securities fraud claims that have resulted in substantial recoveries for investors, including settled actions against Massey Energy ($265 million), Coca-Cola ($137 million), VeriSign ($78 million), Psychiatric Solutions, Inc. ($65 million), St. Jude Medical, Inc. ($50 million), NorthWestern ($40 million), BancorpSouth ($29.5 million), America Service Group ($15 million), Specialty Laboratories ($12 million), Stellent ($12 million), and Threshold Pharmaceuticals ($10 million).

## Education

B.S., Syracuse University, 1982; J.D., Stanford Law School, 1992

## Honors / Awards

Best Lawyer in America, *Best Lawyers®*, 2018-2026; Northern Californa Best Lawyer, *Best Lawyers®*, 2018-2021; Super Lawyer, *Super Lawyers Magazine*, 2017-2018; Order of the Coif, Stanford Law School; Urban A. Sontheimer Award (graduating second in his class), Stanford Law School; Award-winning Investigative Newspaper Reporter and Editor in California and Connecticut

# Helen J. Hodges | Of Counsel

Helen Hodges is Of Counsel in the Firm's San Diego office. She specializes in securities fraud litigation. Hodges has been involved in numerous securities class actions, including: *Dynegy*, which was settled for $474 million; *Thurber v. Mattel*, which was settled for $122 million; *Nat'l Health Labs*, which was settled for $64 million; and *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action. Additionally, beginning in 2001, Hodges focused on the prosecution of *Enron*, where a record $7.2 billion recovery was obtained for investors.

## Education

B.S., Oklahoma State University, 1979; J.D., University of Oklahoma, 1983

## Honors / Awards

Rated AV by Martindale-Hubbell; Hall of Fame, Oklahoma State University, 2022; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; served on the Oklahoma State University Foundation Board of Trustees, 2013-2021; Philanthropist of the Year, Women for OSU at Oklahoma State University, 2020; Super Lawyer, *Super Lawyers Magazine*, 2007

# David J. Hoffa | Of Counsel

David Hoffa is Of Counsel in the Firm's Washington D.C. office. He has served as a liaison to over 110 institutional investors in portfolio monitoring, securities litigation, and claims filing matters. His practice focuses on providing a variety of legal and consulting services to U.S. state and municipal employee retirement systems and single and multi-employer U.S. Taft-Hartley benefit funds. In addition to serving as a leader on the Firm's Israel Institutional Investor Outreach Team, Hoffa also serves as a member of the Firm's lead plaintiff advisory team, and advises public and multi-employer pension funds around the country on issues related to fiduciary responsibility, legislative and regulatory updates, and "best practices" in the corporate governance of publicly traded companies.

Early in his legal career, Hoffa worked for a law firm based in Birmingham, Michigan, where he appeared regularly in Michigan state court in litigation pertaining to business, construction, and employment related matters. Hoffa has also appeared before the Michigan Court of Appeals on several occasions.

## Education

B.A., Michigan State University, 1993; J.D., Michigan State University College of Law, 2000

# Nancy M. Juda | Of Counsel

Nancy Juda is Of Counsel to the Firm and is based in the Firm's Washington, D.C. office. Her practice focuses on advising Taft-Hartley pension and welfare funds on issues related to corporate fraud in the United States securities markets. Juda's experience as an ERISA attorney provides her with unique insight into the challenges faced by pension fund trustees as they endeavor to protect and preserve their funds' assets.

Prior to joining Robbins Geller, Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. She was also associated with a union-side labor law firm in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary, and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing employee benefit funds, Juda advises trustees regarding their options for seeking redress for losses due to securities fraud. She currently advises trustees of funds providing benefits for members of unions affiliated with North America's Building Trades of the AFL-CIO. Juda also represents funds in ERISA class actions involving breach of fiduciary claims.

## Education

B.A., St. Lawrence University, 1988; J.D., American University, 1992

# Francis P. Karam | Of Counsel

Frank Karam is Of Counsel to the Firm and is based in the Firm's Melville office. Karam is a trial lawyer with 30 years of experience. His practice focuses on complex class action litigation involving shareholders' rights and securities fraud. He also represents a number of landowners and royalty owners in litigation against large energy companies. He has tried complex cases involving investment fraud and commercial fraud, both on the plaintiff and defense side, and has argued numerous appeals in state and federal courts. Throughout his career, Karam has tried more than 100 cases to verdict.

Karam has served as a partner at several prominent plaintiffs' securities firms. From 1984 to 1990, Karam was an Assistant District Attorney in the Bronx, New York, where he served as a senior Trial Attorney in the Homicide Bureau. He entered private practice in 1990, concentrating on trial and appellate work in state and federal courts.

## Education

A.B., College of the Holy Cross; J.D., Tulane University School of Law

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2019-2025; "Who's Who" for Securities Lawyers, *Corporate Governance Magazine*, 2015

# Arthur C. Leahy | Of Counsel

Art Leahy is a founding partner in the Firm's San Diego office and a member of the Firm's Management Committee. He has over 20 years of experience successfully litigating securities actions and derivative cases. Leahy has recovered well over two billion dollars for the Firm's clients and has negotiated comprehensive pro-investor corporate governance reforms at several large public companies. Most recently, Leahy helped secure a $272 million recovery on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* In the *Goldman Sachs* case, he helped achieve favorable decisions in the Second Circuit Court of Appeals on behalf of investors of Goldman Sachs mortgage-backed securities and again in the Supreme Court, which denied Goldman Sachs' petition for certiorari, or review, of the Second Circuit's reinstatement of the plaintiff's case. He was also part of the Firm's trial team in the AT&T securities litigation, which AT&T and its former officers paid $100 million to settle after two weeks of trial. Prior to joining the Firm, he served as a judicial extern for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, and served as a judicial law clerk for the Honorable Alan C. Kay of the United States District Court for the District of Hawaii.

## Education

B.A., Point Loma Nazarene University, 1987; J.D., University of San Diego School of Law, 1990

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Best Lawyer in America, *Best Lawyers*®, 2024-2026; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2021; Super Lawyer, *Super Lawyers Magazine,* 2016-2017; J.D., *Cum Laude*, University of San Diego School of Law, 1990; Managing Editor, *San Diego Law Review*, University of San Diego School of Law

# Avital O. Malina | Of Counsel

Avital Malina is Of Counsel in the Firm's Melville office, where her practice focuses on complex securities litigation.

Malina has been recognized as a Rising Star by *Super Lawyers Magazine* for the New York Metro area numerous times. Before joining the Firm, she was an associate in the New York office of a large international law firm, where her practice focused on complex commercial litigations.

## Education
B.A., Barnard College, 2005, J.D., Fordman University School of Law, 2009

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015-2021; B.A., *Magna Cum Laude*, Barnard College, 2005

# Jerry E. Martin | Of Counsel

Jerry Martin is Of Counsel in the Firm's Nashville office. He specializes in representing individuals who wish to blow the whistle to expose fraud and abuse committed by federal contractors, health care providers, tax cheats, or those who violate the securities laws. Martin was a member of the litigation team that obtained a $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the fourth-largest securities recovery ever in the Middle District of Tennessee and one of the largest in more than a decade.

Before joining the Firm, Martin served as the presidentially appointed United States Attorney for the Middle District of Tennessee from May 2010 to April 2013. As U.S. Attorney, he made prosecuting financial, tax, and health care fraud a top priority. During his tenure, Martin co-chaired the Attorney General's Advisory Committee's Health Care Fraud Working Group. Martin has been recognized as a national leader in combating fraud and has addressed numerous groups and associations, such as Taxpayers Against Fraud and the National Association of Attorneys General, and was a keynote speaker at the American Bar Association's Annual Health Care Fraud Conference.

## Education
B.A., Dartmouth College, 1996; J.D., Stanford University, 1999

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2016-2019

## Ruby Menon  |  Of Counsel

Ruby Menon is Of Counsel to the Firm and is a member of the Firm's legal, advisory, and business development group.  She also serves as the liaison to the Firm's many institutional investor clients in the United States and abroad.

Menon began her legal career as an Assistant Prosecuting Attorney, gaining extensive training in trials and litigation.  Later, for over 12 years, she served as the Chief Legal Counsel to two large multi-employer retirement plans, developing her expertise in many areas of employee benefits and pension administration, including legislative initiatives and regulatory affairs, investments, tax, fiduciary compliance, and plan administration.  During her career as Chief Legal Counsel, Menon was a frequent instructor for several certificate and training programs and seminars for pension fund trustees, administrators, and other key decision makers of pension and employee benefits plans.  She is a member of various legal and professional organizations in the United States and abroad.

Menon currently serves as a co-chair on the National Association of Public Pension Attorneys Membership Committee and as a board member on the Corporate Advisory Committee of the National Council on Teacher Retirement (NCTR).  She has previously served as an advisory board member for the Sovereign Wealth Fund Institute and as a committee member on the International Pension Employee & Benefits Lawyers Association.  Menon also organized and participated in the ACAP Shareholder sessions in Singapore and Hong Kong.

### Education
B.A., Indiana University, 1985; J.D., Indiana University School of Law, 1988

### Honors / Awards
Global Plaintiff Lawyer, *Lawdragon*, 2024-2025

## Sara B. Polychron  |  Of Counsel

Sara Polychron is Of Counsel in the Firm's San Diego office, where her practice focuses on complex securities litigation.  She is part of the litigation team prosecuting actions against investment banks and the leading credit rating agencies for their role in the structuring and rating of residential mortgage-backed securities and their subsequent collapse.

Sara earned her Bachelor of Arts degree with honors from the University of Minnesota, where she studied Sociology with an emphasis in Criminology and Law.  As an undergraduate she interned with the Hennepin County Attorney's Office, where she advocated for victims of domestic violence and assisted in sentencing negotiations in Juvenile Court.  Sara received her Juris Doctor degree from the University of San Diego School of Law, where she was the recipient of two academic scholarships.  While in law school, she interned with the Center for Public Interest Law and was a contributing author and assistant editor to the California Regulatory Law Reporter. She also worked as a legal research assistant at the law school and clerked for two San Diego law firms.

### Education
B.A., University of Minnesota, 1999; J.D., University of San Diego School of Law, 2005

# Svenna Prado | Of Counsel

Svenna Prado is Of Counsel in the Firm's San Diego office, where she focuses on various aspects of international securities and consumer litigation. She was part of the litigation teams that secured settlements against German defendant IKB, as well as Deutsche Bank and Deutsche Bank/West LB for their role in structuring residential mortgage-backed securities and their subsequent collapse. Before joining the Firm, Prado was Head of the Legal Department for a leading international staffing agency in Germany where she focused on all aspects of employment litigation and corporate governance. After she moved to the United States, Prado worked with an internationally oriented German law firm as Counsel to corporate clients establishing subsidiaries in the United States and Germany. As a law student, Prado worked directly for several years for one of the appointed Trustees winding up Eastern German operations under receivership in the aftermath of the German reunification. Utilizing her experience in this area of law, Prado later helped many clients secure successful outcomes in U.S. Bankruptcy Court.

## Education

J.D., University of Erlangen-Nuremberg, Germany, 1996; Qualification for Judicial Office, Upper Regional Court Nuremberg, Germany, 1998; New York University, "U.S. Law and Methodologies," 2001

# Harini P. Raghupathi | Of Counsel

Harini Raghupathi is Of Counsel in the Firm's San Diego office. She is a member of the Firm's Appellate Practice Group.

Before joining the Firm, Harini represented victims of serious injury in federal and state appellate courts. Her practice areas included mass torts, consumer protection, and civil rights. Additionally, for over a decade, Harini served as a federal public defender specializing in appeals. In that role, she obtained multiple published reversals on behalf of her clients.

In 2012, *The Recorder* named Harini an "Attorney of the Year" for her successful appeal in *United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012). Harini serves as the Chair of the Ninth Circuit Advisory Committee on Rules of Practice. She is also a member of the San Diego Appellate Inn of Court and a volunteer-mentor with The Appellate Project.

## Education

B.S., Stanford University, 2004; J.D., University of California, Berkeley School of Law, 2007

## Honors / Awards

Attorney of the Year, *The Recorder*, 2012

## Andrew T. Rees | Of Counsel

Andrew Rees is Of Counsel in the Firm's Boca Raton office. His practice focuses on complex class actions, including securities, corporate governance and consumer fraud litigation. He was on the litigation team that successfully obtained a $146.25 million recovery in *Nieman v. Duke Energy Corp.*, which is the largest recovery in North Carolina for a case involving securities fraud and one of the five largest recoveries in the Fourth Circuit.

Before joining the Firm, Rees worked as an associate in the Washington, D.C. office of Hogan & Hartson LLP, where he practiced in the area of commercial transactions, including financings, stock purchases, asset acquisitions and mergers.

## Education

B.A., Pennsylvania State University, 1997; J.D., William and Mary School of Law, 2002

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025

## Jack Reise | Of Counsel

Jack Reise is Of Counsel in the Firm's Boca Raton office. Devoted to protecting the rights of those who have been harmed by corporate misconduct, his practice focuses on class action litigation (including securities fraud, shareholder derivative actions, consumer protection, antitrust, and unfair and deceptive insurance practices). Reise also dedicates a substantial portion of his practice to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide. Most recently, Reise and a team of Robbins Geller attorneys obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* (D.N.J.), a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever. As lead counsel, Reise has also represented investors in a series of cases involving mutual funds charged with improperly valuating their net assets, which settled for a total of more than $50 million. Other notable actions include: *In re NewPower Holdings, Inc. Sec. Litig.* (S.D.N.Y.) ($41 million settlement); *In re ADT Inc. S'holder Litig.* (Fla. Cir. Ct., 15th Jud. Cir.) ($30 million settlement); *In re Red Hat, Inc. Sec. Litig.* (E.D.N.C.) ($20 million settlement); and *In re AFC Enters., Inc. Sec. Litig.* (N.D. Ga.) ($17.2 million settlement).

## Education

B.A., Binghamton University, 1992; J.D., University of Miami School of Law, 1995

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2022; American Jurisprudence Book Award in Contracts; J.D., *Cum Laude*, University of Miami School of Law, 1995; *University of Miami Inter-American Law Review*, University of Miami School of Law

# Kevin S. Sciarani | Of Counsel

Kevin Sciarani is Of Counsel to the Firm and his practice focuses on complex securities litigation.

Kevin was a member of the litigation team that obtained a $300 million recovery in *Purple Mountain Trust v. Wells Fargo & Company*, which was reached while the parties were preparing for trial. He was also part of the litigation team in *Karinski v. Stamps.com, Inc.*, which secured a $100 million recovery for investors.

Kevin earned Bachelor of Science and Bachelor of Arts degrees from the University of California, San Diego. He graduated *magna cum laude* from the University of California, Hastings College of the Law with a Juris Doctor degree. During law school, Kevin interned for the U.S. Securities and Exchange Commission and the Antitrust Section of the California Department of Justice. In his final semester, he served as an extern to the Honorable Susan Illston of the United States District Court for the Northern District of California. Kevin also received recognition for his *pro bono* assistance to tenants living in bank-owned foreclosed residential properties due to the subprime mortgage crisis.

## Education

B.S., B.A., University of California, San Diego, 2005; J.D., University of California, Hastings College of the Law, 2014

## Honors / Awards

J.D., *Magna Cum Laude*, Order of the Coif, University of California, Hastings College of the Law, 2014; CALI Excellence Award, Senior Articles Editor, Hastings Law Journal, University of California, Hastings College of the Law

# Leonard B. Simon | Of Counsel

Leonard Simon is Of Counsel in the Firm's San Diego office. His practice has been devoted to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields. Simon has also handled a substantial number of complex appellate matters, arguing cases in the United States Supreme Court, several federal Courts of Appeals, and several California appellate courts. He has also represented large, publicly traded corporations. Simon served as plaintiffs' co-lead counsel in *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than $1 billion). He was also in a leadership role in several of the state court antitrust cases against Microsoft, and the state court antitrust cases challenging electric prices in California. He was centrally involved in the prosecution of *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He has lectured extensively on securities, antitrust, and complex litigation in programs sponsored by the American Bar Association Section of Litigation, the Practicing Law Institute, and ALI-ABA, and at the UCLA Law School, the University of San Diego Law School, and the Stanford Business School. He is an Editor of *California Federal Court Practice* and has authored a law review article on the PSLRA.

## Education
B.A., Union College, 1970; J.D., Duke University School of Law, 1973

## Honors / Awards
Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2016-2022; Super Lawyer, *Super Lawyers Magazine*, 2008-2016; J.D., Order of the Coif and with Distinction, Duke University School of Law, 1973

# Megan M. Sonney | Of Counsel

Megan Sonney is Of Counsel to the Firm and is based in the San Diego office, where her practice focuses on securities fraud litigation.

Most recently, Sonney was a member of the litigation team that obtained a $434 million settlement in *In re Under Armour Sec. Litig*. The case settled just prior to the commencement of trial in Baltimore, Maryland, and represents the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

## Education
B.A., Point Loma Nazarene University, 2007; J.D., University of San Diego School of Law, 2011

## Honors / Awards
B.A., *cum laude*, Point Loma Nazarene University, 2007

# Laura S. Stein | Of Counsel

Laura Stein is Of Counsel in the Firm's Philadelphia office.  Since 1995, she has practiced in the areas of securities class action litigation, complex litigation, and legislative law.  Stein has served as one of the Firm's and the nation's top asset recovery experts with a focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty.  She also seeks to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. Stein works with over 500 institutional investors across the nation and abroad, and her clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as: Alphabet, Apple, AOL Time Warner, TYCO, Cardinal Health, AT&T, Hanover Compressor, 1st Bancorp, Enron, Dynegy, Inc., Honeywell International, Bridgestone, LendingClub, Orbital ATK, Under Armour, and Walmart, to name a few.  Many of the cases led by Stein's clients have accomplished groundbreaking corporate governance achievements, including obtaining shareholder-nominated directors.  She is a frequent presenter and educator on securities fraud monitoring, litigation, and corporate governance.

## Education
B.A., University of Pennsylvania, 1992; J.D., University of Pennsylvania Law School, 1995

## Honors / Awards
Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024-2025

# John J. Stoia, Jr. | Of Counsel

John Stoia is Of Counsel to the Firm and is based in the Firm's San Diego office. He is one of the founding partners and former managing partner of the Firm. He focuses his practice on insurance fraud, consumer fraud, and securities fraud class actions. Stoia has been responsible for over $10 billion in recoveries on behalf of victims of insurance fraud due to deceptive sales practices such as "vanishing premiums" and "churning." He has worked on dozens of nationwide complex securities class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a member of the plaintiffs' trial team that obtained verdicts against Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

He also represented numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of major financial scandals, including AOL Time Warner and WorldCom. Currently, Stoia is lead counsel in numerous cases against online discount voucher companies for violations of both federal and state laws including violation of state gift card statutes.

## Education

B.S., University of Tulsa, 1983; J.D., University of Tulsa, 1986; LL.M., Georgetown University Law Center, 1987

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Super Lawyer, *Super Lawyers Magazine*, 2007-2017; Litigator of the Month, *The National Law Journal*, July 2000; LL.M. Top of Class, Georgetown University Law Center

# David C. Walton | Of Counsel

David Walton was a founding partner of the Firm. For over 25 years, he has prosecuted class actions and private actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of highly complex accounting scandals within some of America's largest corporations, including Enron ($7.2 billion), HealthSouth ($671 million), WorldCom ($657 million), AOL Time Warner ($629 million), Countrywide ($500 million), and Dynegy ($474 million), as well as numerous companies implicated in stock option backdating.

Walton is a member of the Bar of California, a Certified Public Accountant (California 1992), and is fluent in Spanish. In 2003-2004, he served as a member of the California Board of Accountancy, which is responsible for regulating the accounting profession in California.

## Education

B.A., University of Utah, 1988; J.D., University of Southern California Law Center, 1993

## Honors / Awards

Recommended Lawyer, *The Legal 500*, 2019; Super Lawyer, *Super Lawyers Magazine*, 2015-2016; California Board of Accountancy, Member, 2003-2004; *Southern California Law Review*, Member, University of Southern California Law Center; Hale Moot Court Honors Program, University of Southern California Law Center

# Bruce Gamble | Special Counsel

Bruce Gamble is Special Counsel to the Firm in the Firm's Washington D.C. office and is a member of the Firm's institutional investor client services group. He serves as liaison with the Firm's institutional investor clients in the United States and abroad, advising them on securities litigation matters. Gamble formerly served as Of Counsel to the Firm, providing a broad array of highly specialized legal and consulting services to public retirement plans. Before working with Robbins Geller, Gamble was General Counsel and Chief Compliance Officer for the District of Columbia Retirement Board, where he served as chief legal advisor to the Board of Trustees and staff. Gamble's experience also includes serving as Chief Executive Officer of two national trade associations and several senior level staff positions on Capitol Hill.

## Education

B.S., University of Louisville, 1979; J.D., Georgetown University Law Center, 1989

## Honors / Awards

Executive Board Member, National Association of Public Pension Attorneys, 2000-2006; American Banker selection as one of the most promising U.S. bank executives under 40 years of age, 1992

# R. Steven Aronica | Forensic Accountant

Steven Aronica is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors, and the Association of Certified Fraud Examiners. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies that include Lucent Technologies, Tyco, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Vivendi, AOL Time Warner, Ikon, Doral Financial, First BanCorp, Acclaim Entertainment, Pall Corporation, iStar Financial, Hibernia Foods, NBTY, Tommy Hilfiger, Lockheed Martin, the Blackstone Group, and Motorola. In addition, he assisted in the prosecution of numerous civil claims against the major United States public accounting firms.

Aronica has been employed in the practice of financial accounting for more than 30 years, including public accounting, where he was responsible for providing clients with a wide range of accounting and auditing services; the investment bank Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities; and at the SEC, where he held various positions in the divisions of Corporation Finance and Enforcement and participated in the prosecution of both criminal and civil fraud claims.

## Education
B.B.A., University of Georgia, 1979

# Andrew J. Rudolph | Forensic Accountant

Andrew Rudolph is the Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. He has directed hundreds of financial statement fraud investigations, which were instrumental in recovering billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix*, *Platinum Software*, *AOL Time Warner*, and *UnitedHealth*.

Rudolph is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting, and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations, and taxation.

## Education
B.A., Central Connecticut State University, 1985

## Christopher Yurcek | Forensic Accountant

Christopher Yurcek is the Assistant Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation.  He has directed the Firm's forensic accounting efforts on numerous high-profile cases, including *In re Enron Corp. Sec. Litig.* and *Jaffe v. Household Int'l, Inc.*, which obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs.  Other prominent cases include *HealthSouth*, *UnitedHealth*, *Vesta*, *Informix*, *Mattel*, *Coca-Cola*, and *Media Vision*.

Yurcek has over 20 years of accounting, auditing, and consulting experience in areas including financial statement audit, forensic accounting and fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation.  He is a Certified Public Accountant licensed in California, holds a Certified in Financial Forensics (CFF) Credential from the American Institute of Certified Public Accountants, and is a member of the California Society of CPAs and the Association of Certified Fraud Examiners.

## Education

B.A., University of California, Santa Barbara, 1985