**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | No. 2:19-md-2904 |
| | **JAMEL K. SEMPER, USDJ** |
| | **MICHAEL A. HAMMER, USMJ** |
| This Document Relates To: All Cases | |

**PLAINTIFFS' MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION
TO EXCLUDE THE REPORT AND TESTIMONY OF MATTEO TOMASINI**

James E. Cecchi
Caroline Fabend Bartlett
**CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Interim Lead Counsel for Plaintiffs*

*(Additional co-lead counsel listed on signature page)*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

I.     Ms. Frantz's Opening Report.................................................................................. 2

II.    Mr. Tomasini's Report ........................................................................................... 4

III.   Mr. Matthew Strebe's and Ms. Frantz's Rebuttal Reports to Mr. Tomasini ...................... 6

LEGAL STANDARD....................................................................................................... 8

ARGUMENT ................................................................................................................... 9

I.     Mr. Tomasini is unqualified to evaluate the opinions of a legitimate expert in fields he knows nothing about. ................................................................................ 9

II.    Mr. Tomasini's methodology is unreliable. ......................................................... 12

     A.     The Dark Web does not work the way Mr. Tomasini says it does. ..................... 13

          1.     Prescient's ███████ searches cannot ███████████ ██████████████████. ..................................................... 13

          2.     Prescient ran inadequate search strings................................................... 16

          3.     Whether other sources exposed Plaintiffs' personal information is irrelevant because data breach harms are cumulative. ............................ 18

     B.     Mr. Tomasini cannot reliably draw conclusions from Prescient's analysis of searches Plaintiffs can neither review nor replicate. ...................................... 18

III.   Opinion 2 is unreliable because a ███████████████ is the gold standard methodology for cybersecurity analysis, but Mr. Tomasini did not perform one. .......... 20

          1.     Mr. Tomasini inappropriately minimized strong third-party evidence of exfiltration. .......................................................................... 20

     B.     Mr. Tomasini failed to consider sufficient information to form his Opinion 2................................................................................................................... 23

CONCLUSION............................................................................................................... 26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Crowley v. Chait*,
322 F. Supp. 2d 530 (D.N.J. 2004) .......................................................................................... 23

*D & D Assos., Inc. v. Bd. of Educ. of N. Plainfield*,
2006 WL 755984 (D.N.J. Mar. 20, 2006) ............................................................................. 9, 12

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993) ................................................................................................................... 8

*E.E.O.C. v. Bloomberg L.P.*,
2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) .......................................................................... 24

*Ely v. Cabot Oil & Gas Corp.*,
2016 WL 4169220 (M.D. Pa. Feb. 17, 2016) ........................................................................... 18

*Faulkner v. Arista Records LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014) ........................................................................................ 24

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
82 F.3d 69 (3d Cir. 1996) .......................................................................................................... 13

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ................................................................................................................... 13

*Gonzalez-Lopez v. Perfect Trading, Inc.*,
2024 WL 1406563 (D.N.J. Apr. 2, 2024) ............................................................................... 8, 9

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999) ...................................................................................................... 13

*Hoefling v. U.S. Smokeless Tobacco Co.*, LLC,
576 F. Supp. 3d 262 (E.D. Pa. 2021) ........................................................................................ 23

*In re Human Tissue Prods. Liab. Litig.*,
582 F. Supp. 2d 644 (D.N.J. 2008) ...................................................................................... 12, 13

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
166 F. Supp. 3d 654 (E.D. La. 2016) ........................................................................................ 19

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
2025 WL 1024048 (D.N.J. Apr. 7, 2025) ................................................................................... 8

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
26 F. Supp. 3d 449 (E.D. Pa. 2014) .......................................................................................... 26

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ..................................................................................................................... 9

*Leese v. Lockheed Martin Corp.*,
6 F. Supp. 3d 546 (D.N.J. 2014) ............................................................................................... 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Masforce Europe, BVBA v. Mastry Marine & Indus. Design, Inc.*,
   2013 WL 8148666 (M.D. Fla. Aug. 27, 2013) ........................................................... 16

*Rosssano v. Maxon*,
   659 F. Supp. 3d 559 (E.D. Pa. 2023) ...................................................................... 19

*Young v. Chipotle Mexican Grill of Col., LLC*,
   2025 WL 1788269 (D.N.J. June 26, 2025).................................................... 12, 13

**Rules**

Fed. R. Evid. 702(b)............................................................................................ 18

## INTRODUCTION

Plaintiffs respectfully request that the Court exclude the testimony of Matteo Tomasini, a purported "deep and Dark Web" expert retained by Defendants to critique the opinions of Plaintiffs' expert Mary Frantz and opine that ██████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████ Ex. 1 (Tomasini Rep.) ¶ 9.

*First*, Mr. Tomasini is unqualified to offer several of his opinions. For example, Ms. Frantz offers opinions about: ██████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████ *Id.* ¶ 4 (citing Frantz Rep. ¶ 9). But when asked directly ████████ ██████████████ to respond to these opinions, Mr. Tomasini admitted that he was not. *See, e.g.*, Ex. 2 (Tomasini Dep.). at 191:9-16 ████████████████████████████████ ████████████████████████████ *id.* at 236:8-15 ████████████████████████ ██████████████. The Court should take Mr. Tomasini at his word and exclude him from testifying on these topics to which he ████████████████████ as well as his attempt to testify about injuries to the Class from the AMCA Breach, about which he also has no expertise.

*Second*, the Court should exclude Mr. Tomasini's unreliable and speculative methodology of searching ████████████████████████████████████████. As Plaintiffs' experts demonstrate, the flaws in Mr. Tomasini's methodology are foundational. He posits, incorrectly, that it is possible to confirm that information is ████████████████████████ ██████████ Moreover, Mr. Tomasini ████████████████████████████████ ██████████████████████████████████████. Instead, at defense counsel's direction, Mr. Tomasini instructed his team to run searches ████████████████████████

▉▉▉▉▉ And because he did not produce the search results, Plaintiffs are unable to test his findings.

*Third*, and in part as a result of the above, the Court should exclude Mr. Tomasini's "Opinion 2" that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉ This opinion suffers from the same lack of expertise and unreliable methodology as the rest of his opinions. Further, Mr. Tomasini failed to consider key pieces of evidence and failed to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ or to consider the robust and overwhelming third-party evidence that threat actors exfiltrated the AMCA data.

Plaintiffs respectfully request that Mr. Tomasini be excluded under Rule 702 and *Daubert*.

## BACKGROUND

### I.    Ms. Frantz's Opening Report

Ms. Frantz's opening report in support of class certification provided opinions on four topics: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Ex. 3 (Frantz Rep.) ¶ 9. In providing her opinions, Ms. Frantz applied her three decades of professional experience in cybersecurity, information technology, and compliance, the prevailing authorities in the data security field, and her education and training to her extensive review of documents and information relevant to the case. *Id.* ¶¶ 1-5, 11.

Ms. Frantz extensively analyzed ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ *Id.* ¶¶ 66-132. For example, she explained that, in violation of basic cybersecurity principles, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉ *id.* ¶¶ 73, 78-79, 109-25; ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ *id.* ¶¶ 72-76, and ▉▉▉▉▉▉▉▉▉▉

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████ *id.* ¶¶ 77-78. She further described AMCA's failure to ███████

███████ a basic cybersecurity failure, which ensured that cybersecurity attacks could proceed

undetected. *Id.* ¶¶ 96, 128-32. Accordingly, she concluded that ████████████████████████████

████████████████████████████████████████████████████ *Id.* ¶¶ 12-13.

Second, Ms. Frantz comprehensively analyzed Defendants' oversight of AMCA, opining

that ████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.* ¶¶ 139-40. She

went through each Defendants' oversight and analyzed ████████████████████████████

███████████████████████████. *Id.* ¶¶ 139-328.

Third, Ms. Frantz analyzed ████████████████████████████████████, with a particular

focus on what the evidence showed about ████████████████████████████████████████████

███████████████. *Id.* ¶¶ 46-65. None of Defendants' experts, including Mr. Tomasini, rebutted Ms.

Frantz's opinions on these topics.

Fourth, Ms. Frantz opined that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶¶ 18-19, 329-63. She

explained that Gemini, a Dark Web signal intelligence firm, ████████████████████████████

████████████████████████████████████. *Id.* ¶¶ 329(a), 330-34. She then described

how Conformance, a fraud monitoring firm, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶¶ 49-52, 56,

-3-

329(b), 335-39. She also demonstrated that the findings of Charles River Associates ("CRA"), a third-party forensic analyst AMCA hired to investigate the breach, ███████████████ ███████████. *Id.* ¶¶ 64(a)-(j), 102, 329(c), 340-43.

In addition to examining these three third-party signals, Ms. Frantz provided a fourth signal to bolster her assessment. Her firm, EKP, conducted a ████████████████████████ █████████████████████████. *Id.* ¶¶ 329(d), 344-63. Despite the limited nature of this search, EKP found ███████████████████████████████████████ ████████████████████████ *Id.* ¶ 360. Based on these four signals, Ms. Frantz drew the overall conclusion that ████████████████████████████████████ ████████████████████████ *Id.* ¶ 329.

## II.    Mr. Tomasini's Report

In support of their opposition to class certification, Defendants retained purported "[d]eep and dark web" expert Matteo Tomasini to critique Ms. Frantz's fourth opinion and to search for ████████████████████████████████████ on the Dark Web. *See* Ex. 1 (Tomasini Rep.) ¶ 11; Ex. 2 (Tomasini Dep.) 123:2-10, 236:8-238:11. Of note, Mr. Tomasini claims to only provide opinions on the ███████████████████████ ██████████████ Ms. Frantz's fourth opinion. *Id.* at 190:11-191:8. Moreover, he did not ████████████████████████████████████. *Id.* at 191:9-16 ███████ ████████████████████████████████████) Further, Mr. Tomasini admitted ███████████████████████████████. *Id.* at 236:8-15 (█ ████████████████████).

Mr. Tomasini's Report is a strange creature. *First*, he wrongly asserted that the third-party findings of Conformance, Gemini, and CRA ████████████████████████ ███████████. *Id.* ¶¶ 24-65. This is despite his own admission that ██████████████████████

-4-

██████████████████████████████████. Ex. 2 (Tomasini Dep.) at 191:9-16, 236:8-15. He opined that ███████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████ Ex. 1 (Tomasini Rep.) ¶¶ 28-29, 47, 60-61. He likewise opined that

███████████████████████████████████████████████████████

███████████████████████████ none of which pass muster. *Id.* ¶¶ 66-146. For example, Mr. Tomasini's complaint that Ms. Frantz did not produce the results of her searches falls flat given that Mr. Tomasini ████████████████████████████████.

*Second*, he disputes that █████████████████████████████████

██████████████████ Ex. 1 (Tomasini Rep.) ¶¶ 147-56. But unlike Ms. Frantz, he did not search

███████████████████████████. *Id.* ¶ 148. He also █████████████████████

███████████████████████████████████ Ex. 2 (Tomasini Dep.) 95:11-13, 101:24-106:7, 211:9-16 █████████████████████████████ 326:11-328:4, 332:3-333:14, 335:5-337:9. Instead, a team at Mr. Tomasini's former employer, Prescient, ███████████████████████████████████

███████████████████ *Id.*; Ex. 1 (Tomasini Rep.) ¶¶ 148-49. Those searches consisted of ██████████████████████████████████████████████

███████████████████████████████. *See* Ex. 5 (Tomasini Dep. Ex. 7). Only a single search contained ██████████████████████████████████

████████████████████████ *See id.*, Search 5. Mr. Tomasini estimated that ███████████████████████████████████████████

██████████████████ Ex. 2 (Tomasini Dep.) at 394:3-22.

Mr. Tomasini then bizarrely concluded that ███████████████

███████████████████████████ Ex. 1 (Tomasini Rep.) ¶¶ 149-

56, despite later acknowledging that ████████████████████████

████████ *See* Ex. 2 (Tomasini Dep.) 30:2-32:18 ████████████████

████████ ).

Mr. Tomasini's third and fourth opinions are again the products of his inexpert musings. In a half-hearted attempt to downplay the consequences of the AMCA Breach, Mr. Tomasini explains that Prescient found evidence that ████████████████████████

████████████████████████████ Ex. 1 (Tomasini Rep.) ¶¶

157-202. He also contends that ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*

¶¶ 203-11.

### III.    Mr. Matthew Strebe's and Ms. Frantz's Rebuttal Reports to Mr. Tomasini

Plaintiffs retained cybersecurity expert Matthew Strebe to respond to Mr. Tomasini's opinions. Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 37, 39. Mr. Strebe has ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ *See id.* ¶¶ 1-34, 40. He thereby acquired ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ *Id.* ¶¶ 9, 28.

Mr. Strebe refuted Mr. Tomasini's analysis of the third parties' evidence of exfiltration, and explained that the evidence shows that ███████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶¶ 82-186. Moreover, Mr. Strebe demonstrated that

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████ *Id.* ¶¶ 187-286. Indeed, Mr. Tomasini agreed that █████████████████████

████████████████████████████████████████████████████████████████ *Id.*

¶¶ 243-44. Mr. Strebe also explained that Prescient's searches do not account for the fact that

████████████████████████████████████████████████████████████████████

██████████████████████. *Id.* ¶¶ 191-92. Accordingly, even setting aside that ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████ *Id.* ¶ 243; *see also* ¶¶ 187-286.

Mr. Strebe also explains that Mr. Tomasini failed to consider three other critical and contemporaneous third-party signals that refute his opinion, *id.* ¶ 163, despite opining that ████████

████████████████████████████████████████████████████████████████████

█████████████ Ex. 1 (Tomasini Rep.) ¶ 9. Specifically, Mr. Tomasini was ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 164-70. Similarly, Mr. Tomasini was █████████

████████████████████████████████████████████████████████████████████

-7-



███████████████████████ (*id.* ¶ 186 (citing Ex. 2 (Tomasini Dep.) 35:24-35:13, 369:3-16)) ███████████████████████████████████████████████

Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 171-86. Mr. Tomasini was similarly ███████████████

███████████████████████████████████████████████

Ex. 2 (Tomasini Dep.) at 351:8-20 █████████████████████████████████████

███

Finally, Ms. Frantz briefly rebutted Mr. Tomasini's criticism of her work, explaining that

███████████████████████████████████████████████

███████████████████████████████████ *See* Ex. 6 (Frantz Reply

Rep.) ¶ 1. Therein, she opined that Mr. Tomasini ███████████████████████

███████████████████████████████████████████████

███████████████ She opined that Mr. Tomasini ███████████████████

███████████████████████████████████████████████

███████████████████████████████; that Mr. Tomasini

improperly ██████  ██████  ██████  ██████  ████  ██████  ██████████

███████████████████████████████████████████████

and that Mr. Tomasini's assessment reflected a ██████████████████████████

████. *Id.* ¶¶ 11-39.

## LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), "[t]he Court must act as a 'gatekeeper' to prevent expert testimony running afoul of Rule 702 from ever reaching the jury." *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2025 WL 1024048, at *9 (D.N.J. Apr. 7, 2025) (citing *Daubert*, 509 U.S. at 596-97). As such, "expert testimony will be admissible only if it is both relevant and reliable." *Gonzalez-Lopez v. Perfect Trading, Inc.*, 2024 WL

1406563, at *2 (D.N.J. Apr. 2, 2024). "To satisfy these elements," "Rule 702 requires that: (1) the expert must be qualified to render his or her opinion; (2) the scientific process or methodology employed by the expert . . . must be reliable; and (3) the expert's testimony must assist the trier of fact." *Id.* The proponent of expert evidence bears the burden of establishing its admissibility. *Id.*

## ARGUMENT

### I.    Mr. Tomasini is unqualified to evaluate the opinions of a legitimate expert in fields he knows nothing about.

"An expert must have specialized knowledge and be qualified to speak with authority on a particular matter." *D & D Assos., Inc. v. Bd. of Educ. of N. Plainfield*, 2006 WL 755984, at *3 (D.N.J. Mar. 20, 2006). This "inquiry is not merely a formality," and "[t]here is a floor with respect to minimum qualifications for expert witnesses." *Id.* The expert must "possess[] the 'level of intellectual rigor that characterizes the practice of an expert in the relevant field[.]'" *Id. (*citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Mr. Tomasini does not clear this bar with respect to: (1) his opinions about ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

*Mr. Tomasini is not qualified to opine on* ██████ ███████████ ████████

████████████████████████████ Mr. Tomasini's self-described expertise is

██████████████████████ *See* Ex. 2 (Tomasini Dep.) at 123:2-10, 236:8-238:11; Ex. 1 (Tomasini Rep.) ¶ 12. He admitted that ██████████████████████

██████████████████████ when asked if he intended to provide testimony on these three subjects. Ex. 2 (Tomasini Dep.), at 190:11-191:16. Accordingly, the Court should take Mr. Tomasini at his word and not permit him to testify about any of these opinions.

*Mr. Tomasini is not qualified to opine on* ████████████████ ████████████████████ Mr. Tomasini does not have experience ████████████ ████████████████████████████████ ████████████ *See* Ex. 2 (Tomasini Dep.) at 236:8-15. Curiously, he did not let that stop him from opining on the very subjects he knows nothing about. Specifically, Mr. Tomasini drew conclusions from CRA's ████████████████████████████. Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 143-44. For example, Mr. Tomasini waves away the evidence CRA found ██ ████████████████████████████ ████████████ Ex. 6 (Frantz. Reply Rep.) ¶ 21. But ████████████████████ ████████████████████████████ *Id.*

Likewise, AMCA received ████████████████████ ████████████ Conformance, indicating that ████████████████ ████████████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 105-23. When asked what he would recommend to AMCA if presented with Conformance's findings, Mr. Tomasini testified that he ████████████████████████████ ████████████████████████████ ████ Ex. 2 (Tomasini Dep.) 182:18-183:7, 298:5-21.

Further, Gemini, a reputable Dark Web monitoring company, ████████████████ ████████████████████████████ Gemini verified ████████████████████████████ ████████████████████████████ ████████████████████. Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 124-40. ████████████ ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* ¶¶ 139-40. This argument again betrays his

ignorance, because actual cybersecurity experts (and ███████████████ with this very evidence)

routinely ████████████████████████████████████████████████████████

███████████████████████ as here. *Id.*

Further, Mr. Tomasini's failure to perform a ███████████████████████████ confirms that

he is unqualified to opine that ████████████████████████████████████████████

████████████████████████████████████████████████ *See id.* ¶ 44. ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████ *Id.* ¶¶ 44-47. Mr. Strebe regularly employs ███████████

████████████████████████████████████████████████ *Id.* ¶ 44. In contrast, Mr.

Tomasini █████████████████████████████████████████████████████████ *Id.* ¶¶

103-04. By basis his opinion that ███████████████████████ solely on Prescient's searches,

Mr. Tomasini violated ███████████████████████████████████████████████

████████████████████████████████████████████████ *Id.*

*Mr. Tomasini is not qualified to opine that* ███████████████████████████████████

Moreover, Mr. Tomasini agreed that he is ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ *See* Ex. 1 (Tomasini Rep.) ¶¶ 157-202; Ex. 2 (Tomasini

Dep.) at 123:2-10, 236:8-238:11 (Tomasini is not an expert in ███████████████). Mr. Tomasini's

lack of qualifications is borne out by his testimony that █████████████████████████

████████████████████████████████████████████████

███████████████████████. *Id.* at 176:7-178:15.[1] Dissimilarly, Plaintiffs' expert Amy Worley, who has over two decades of experience in IT security and data breach incident response,

███████████████████████████████████████████████████████

*See* Ex. 7 (Worley Rep.) ¶¶ 5-26. Whereas Mr. Tomasini's proposal would needlessly turn data breach victims into sitting ducks, Ms. Worley explained that ██████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████. *See id.* ¶¶ 161-65, 172-92. Mr. Tomasini ███████████████████████████

Because Mr. Tomasini's "area of expertise is," at most, "adjacent to, but not actually encompassing, the subject matter of his testimony," his testimony should be excluded. *See D & D Assocs.*, 2006 WL 755984, at *3-5 (attorney practicing administrative, school, real estate, and zoning law failed to show necessary particularized knowledge to testify about public bidding and construction law) (collecting cases); *see also Young v. Chipotle Mexican Grill of Col., LLC*, 2025 WL 1788269, at *4 (D.N.J. June 26, 2025) (witness with food science expertise not qualified to testify about the medical cause of plaintiff's food poisoning) (cleaned up).

## II.     Mr. Tomasini's methodology is unreliable.

Expert testimony is only reliable where "the principles and methods employed by the expert are applied reliably to the facts of the case." *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 656 (D.N.J. 2008). "Although the Court's inquiry into reliability is focused primarily

---

[1] Mr. Tomasini's opinion that ████████████████████████ is belied by his own practices. Despite acknowledging that █████████████████████ Ex. 2 (Tomasini Dep.) at 11:24-12:12, Mr. Tomasini █████████████████████████████████ ████████████████████████████████ *Id.* at 9:8-11.

'on principles and methodology, not on the conclusions that they generate,'" the Supreme Court recognizes "that 'conclusions and methodology are not entirely distinct from one another.'" *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). As such, the Court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999). Expert testimony is inadmissible "'if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts." *See Young*, 2025 WL 1788269, at *3 (quoting *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996)). If testimony "'is based on speculation or conjecture, it may be stricken.'" *Id.*

### A.      The Dark Web does not work the way Mr. Tomasini says it does.

Based on Prescient's searches ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Mr. Tomasini opined that ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 (Tomasini Rep.) ¶¶ 9; *see also id.* ¶¶ 147-56. To reach these (meritless) conclusions, Mr. Tomasini relied on an unreliable methodology that misrepresents how the Dark Web works. Accordingly, exclusion is warranted. *See In re Human Tissue*, 582 F. Supp. 2d at 656 (quoting *Joiner*, 522 U.S. at 136) ("'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'").



**1.      Prescient's ▮▮▮▮▮▮ searches cannot ▮▮▮▮_▮_▮▮▮▮▮_▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:**

▮▮ Ex. 4 (Strebe Rebuttal Rep.) ¶ 200. ▮▮▮▮▮▮▮▮▮▮

that is ██████████████████████████████████████████████ *Id.* ¶ 51.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*Id.* ¶ 52. For example, ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ Ex. 2 (Tomasini Dep.) 58:3-59:13. This is a feature common to Dark

Web marketplaces writ large, as sites ████████████████████████

████████████████████████████████████████████████████████

███████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶ 61. But eventually, most markets are

████████████████████████████████████████████████████████

██████████*Id.*

Further, the marketplaces ██████████████████████ are just the tip of the iceberg: ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████ *Id.* ¶ 63. These forums are largely impermeable to legitimate actors like Mr. Strebe,

Ms. Frantz, Mr. Tomasini, and ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ *Id.* ¶ 64. Moreover, secrecy is key to criminals' success.

Unsurprisingly, criminal transactions ██████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* ¶ 213. These transactions

typically ████████████████████████████████████████████████

████████████████████████████████████████ *Id.*; *see also id.* ¶ 214.

As such, ████████████████████████████████████████████

████████████████ *Id.* ¶ 188. When asked if he could quantify what percentage of stolen information on the Dark Web resides on ██████████, Mr. Tomasini (correctly) explained that ████████████████████████████████" Ex. 2 (Tomasini Dep.) at 169:22-171:9. ████████

████████████████████████████████████████████████

████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶ 196. Its data ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████. *Id.* Its data is not even ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *Id.* For example, discussed,

below, ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████ *Id.* ¶ 202.

Instead, as Mr. Tomasini well knows, ████████████████████████

████████████████████████████████████████████████

████████ *Id.* ¶ 199. Its ████████████████████████████████

████████████████████ *Id.* Mr. Tomasini therefore made a ████████████ by concluding

that ████████████████████████████████████████████

████████████████████. *Id.* ¶ 189. Put simply, ████████████████████

████████████████████████████████████████████████

-15-

██████████████████████████████████████████ *Id.* ¶ 204 (emphasis added). *See Masforce Europe, BVBA v. Mastry Marine & Indus. Design, Inc.*, 2013 WL 8148666, at \*5 (M.D. Fla. Aug. 27, 2013) (holding that expert did not use reliable methodology because "there is an important difference between identifying a potential cause of an occurrence and categorically excluding another potential cause").

### 2.    Prescient ran inadequate search strings.

Moreover, Prescient's search strings appear designed to come up empty. Prescient ran only

████████████████████████████████████████████████████████

████████████████████ Ex. 2 (Tomasini Dep.) 394:12-22. ███████████████

██████████████████████████████████████████████████████ Ex.

5 (Tomasini Dep. Ex. 7) at Search 5. And fundamentally, the limited search strings that Prescient

ran are only appropriate ██████████████████████████████████

████████████████████████████████████████████████████████

████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 60, 192.

Here, the third party evidence demonstrates that the threat actors involved in AMCA

Breach ███████████████████. Rather, as Plaintiffs' experts explain and as Gemini, the FBI,

and Flashpoint found, ████████████████████████████████████. *See*

Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 124-40 (Gemini), 171-78 (FBI), 179-86 (Flashpoint), 191-92

(ransomware). In those instances, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 221, 223. In contrast, █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* ¶ 222.

Prescient's search for the keyword ███████ was also sure to be fruitless. ████████

████████████████████████████████████████████████████████

██████ *Id.* ¶ 219. Before the Breach, ███████████████████████████

██████████████████████████████ *Id.*

The long search strings with ████████████████ were likewise doomed to be ineffective. *See* Ex. 5 (Tomasini Dep. Ex. 7), Searches 6-8. ████████████████████████

██████████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶ 68. Those who execute the data breaches are known as "breachers," and those who purchase the stolen data to commit credit card fraud are called "carders." *Id.* Carders ████████████

████████████████████████████████████████████████████████

██████████████████████████ *Id.* ¶ 75. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶ 76. So breachers ████████████████████████████████████████████ *Id.* ¶ 77. But ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶¶ 191, 226 (citing Ex. 5 (Tomasini Dep. Ex. 7) (search strings 6 & 7); Ex. 8 (Tomasini Dep. Ex. 22)).

3.      **Whether other sources exposed Plaintiffs' personal information is irrelevant because data breach harms are cumulative.**

Finally, Mr. Tomasini suggests that ██████████████████████████████████████████████ ██████████████████████████████████████████████████████ Ex. 1 (Tomasini Rep.) ¶¶ 157-59. But a vast body of empirical evidence makes clear that the latter does not mitigate the former—it exacerbates it. As Ms. Worley demonstrated, █████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████ *See* Ex. 7 (Worley Rep.) ¶¶ 124-31. As such, Mr. Tomasini's analysis is unreliable.

B.      **Mr. Tomasini cannot reliably draw conclusions from Prescient's analysis of searches Plaintiffs can neither review nor replicate.**

Under Federal Rule of Evidence 702, testimony must be based on "sufficient facts or data." Fed. R. Evid. 702(b). Experts may not simply "parrot" the ideas of other experts, but that is precisely what Mr. Tomasini does. *Ely v. Cabot Oil & Gas Corp.*, 2016 WL 4169220, at *6-7 (M.D. Pa. Feb. 17, 2016). ██████████████████████████████████████ ████████████████████████ Ex. 2 (Tomasini Dep.) 211:9-16 ████████████████████ ██████████████). Instead, a team working for his former employer, Prescient, ████████████ ██████████████████████████████████████████████████████ █████████████████ *Id.* at 95:11-13, 101:24-103:21, 332:3-333:3, 399:21-24. Mr. Tomasini did not ██████████████████████████████████████████ Instead, he contended that ██████████████████████████████████████████████████████ ██████████████████████ *Id.* at 102:21-106:7, 326:11-328:4, 333:4-14, 335:5-337:9. Small comfort, particularly where Mr. Tomasini did not ██████████████████████████ ███████████████████████████████████

To make matters worse, despite extensive protestations about Ms. Frantz's search results, Ex. 1 (Tomasini Rep.) ¶¶ 79-80, 90, 93,[2] Mr. Tomasini did not ███████████████ ████████████████████████████████████████████████████████████ to his report. Ex. 2 (Tomasini Dep.) 88:19-97:25. And replicating Prescient's searches would require ████████████████████████████████. *Id.* at 94:18–95:13. Therefore, Plaintiffs cannot test Prescient's searches or assess the basis for its conclusions. And it would not matter even if they could. Because Defendants did not disclose the actual Prescient employee who reviewed the results as their testifying expert, Mr. Tomasini cannot ████████████████████████ ████████████████████████████ This "renders [Mr. Tomasini's] opinion unreliable." *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (expert testimony inadmissible where it relied on conclusions of non-testifying expert who failed to explain basis for opinions); *see also In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 676 (E.D. La. 2016) ("Dr. Rausser does not provide any evidence of his calculations or any description of his results. Without this, the Court is unable to evaluate Dr. Rausser's methodology. . . The Court cannot accept Dr. Rausser's bare assertion that the test results 'support[ ] that prices are spatially integrated across the regions of the United States.'"); *Rosssano v. Maxon*, 659 F. Supp. 3d 559, 570 (E.D. Pa. 2023) (expert did "not provide sufficient facts concerning his methodology" where he "has not provided any mathematical calculations to support his conclusions").

---

[2] Further, Ms. Frantz did produce ███████████████████████████████ ████████████, including sufficient information that would have allowed Mr. Tomasini to search for ████████████████████████████████ she included in her report. Mr. Tomasini acknowledged that ████████████████████████████████████ ██████████████. Ex. 2 (Tomasini Dep.) at 376:22-384:24. Mr. Tomasini claimed that ████████████████████████████████████████████ but never explained why ████████████████████████████████████████████ *Id.*

**III.   Opinion 2 is unreliable because a** ▮▮▮▮▮▮▮▮▮▮▮▮ **is the gold standard methodology for cybersecurity analysis, but Mr. Tomasini did not perform one.**

Above and beyond opining that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Mr. Tomasini affirmatively concluded that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 (Tomasini Rep.) ¶ 9 (Opinion

2) (emphasis added).

Mr. Tomasini was required to ▮▮▮▮▮▮▮▮▮▮▮ to reach this conclusion, but

he did not. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 44-47, 103-04. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 46, 103. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 46-47. Mr. Tomasini failed to employ

this (or any other) appropriate methodology.

> **1.   Mr. Tomasini inappropriately minimized strong third-party evidence of exfiltration.**

Under the appropriate ▮▮▮▮▮▮▮ Conformance, Gemini, and CRA's findings are

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 103-04. Mr. Tomasini reached a different (and wrong)

conclusion because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ *Id.* ¶ 104.

For example, Conformance, ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████ *Id.* ¶¶ 105, 110. In one instance, ████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ *Id.* ¶

107 (emphasis added). The probability that a ██████████████████████████

███████████████████████████████████ *Id.* ¶ 115 & n.52.

But Mr. Tomasini ignored that ████████████████████████████████████ (*id.*

¶¶ 117, 121). In response, he contends that ████████████████████████████

██████████████████████████████████████████████████████████████

████████ Ex. 1 (Tomasini Rep. ¶¶ 58-64). His critique misses the mark, because ███████████

██████████████████████████████████████████████████████████████

Ex. 4 (Strebe Rebuttal Rep.) ¶ 108. ████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 109. Mr. Tomasini did not provide any evidence to support

██████████████████████████████████████████████████████████████

██████████████████████████ *Id.* ¶ 110.

Additionally, Gemini, a signal intelligence company █████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ *Id.* ¶¶ 130-

33. ███████████████████████████████████████████████████████████

████████████ *Id.* Mr. Tomasini inexplicably ignored this evidence, and instead casts aspersions

on its credibility. *Id.* ¶ 139. As above, his critique is baseless. Not only did ████████████████ rely

on those ██████████████████████████████████, underscoring their legitimacy, but Mr. Tomasini testified that ███████████████████ *Id.* ¶¶ 125, 139; Ex. 2 (Tomasini Dep.), 250:2-3.

Moreover, in March 2019 CRA analyzed AMCA's systems and concluded that ████████████████████████████████████████████████████████████████ ████████████████████████████████████." *See* Ex. 3 (Frantz Rep.) ¶ 65(g). This analysis confirmed that ████████████████████████████████████████████████ ███████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶ 109. Again, though Mr. Tomasini ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* ¶ 144. For example, Mr. Tomasini inaccurately contended that █████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ Ex. 1 (Tomasini Rep.) ¶¶ 29, 37. If there was any doubt that Mr. Tomasini is unqualified to levy this critique, there cannot be now, because searching for those files ████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶ 162. Even if there were a comprehensive, statistically representative database of Dark Web information similar to Google, there is not, ██ ████████████████████████████████████████████████████████████ ████████████████████████████ *Id.* Mr. Tomasini also wrongly claimed that ████████████ ████████████████████████████████████████████████████████████ Ex. 1 (Tomasini Rep.) ¶ 32 (citing Ex. 3 (Frantz Rep.) ¶ 64(g)). But CRA's corporate representative, who was deposed after Ms. Frantz's initial report and who led the forensic

-22-

examination, testified that ███████████████████████████████████████████████

███████████████████████████████████████████████. Ex. 4 (Strebe Rebuttal Rep.) ¶

146. Moreover, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████ *Id.* ¶ 147.

Each third-party finding is damning in isolation, notwithstanding Mr. Tomasini's misguided attempts to undermine their validity. Taken together, ████████████████

████████, these findings constitute overwhelming evidence of exfiltration. Mr. Tomasini should not be permitted to apply an amateur methodology to ████████████████████.

**B.     Mr. Tomasini failed to consider sufficient information to form his Opinion 2.**

Despite opining that █████████████████████████████████████████████████

███████████████████████████████████ Ex. 1 (Tomasini Rep.) ¶ 9, Mr. Tomasini admitted

that ██████████████████████████████████████████████████████████ Ex. 2

(Tomasini Dep.) 217:12-218:17. With respect to one example described below, Mr. Tomasini

explained that ████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 2 (Tomasini Dep.) 369:17-370:2. But Mr.

Tomasini did draw a conclusion about ████████████████████████████████████████

████████████ This is fatal to his admissibility. "Relying on a selected subset of evidence without

sufficient analysis of contrary evidence is a significant methodological weakness." *Hoefling v.*

*U.S. Smokeless Tobacco Co., LLC*, 576 F. Supp. 3d 262, 276-77 (E.D. Pa. 2021).  Relatedly, "[t]he

selective furnishing of information by counsel . . . runs afoul of Fed. R. Evid. 703, which, in

addition to Rule 702, must be considered by a court for *Daubert* purposes[.]" *Crowley v. Chait*,

322 F. Supp. 2d 530, 542 (D.N.J. 2004) (exclusion proper where expert "conducted little

independent investigation" beyond what counsel provided and relied on limited evidence). Here,

Mr. Tomasini's Opinion 2 must be excluded because he ignores key pieces of evidence that directly contravene his testimony.

To give three specific examples. First, Mandiant, a leading forensic investigator ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 3 (Frantz Rep.) ¶ 62; *see also id.* ¶¶ 70, n.91, 76, 99. According to Mr. Strebe and Ms. Frantz, that Mandiant drew these conclusions using ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 4 (Strebe Rebuttal Rep.) ¶ 168; *see also* Ex. 3 (Frantz Rep.) ¶ 99. But even though Ms. Frantz's report ▮▮▮▮▮▮▮▮▮▮ Ex. 3 (Frantz Rep.) ¶¶ 62, 75, 99, 139, Mr. Tomasini testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 (Tomasini Dep.) 338:17-339:2, 345:4-11. This calls into question whether he reviewed Ms. Frantz's report in its entirety and whether defense counsel made sufficient evidence available to Mr. Tomasini. Given the damning nature of Mandiant's findings, this suggests "that his methodology was aimed at achieving one result" and is disqualifying. *See Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) (testimony unreliable where expert "did not review all of the relevant records" and relied on "counsel to choose the specific documents from [the] production for his review"); *see also E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010) (excluding testimony where expert "made no effort to ensure that the materials that he reviewed were representative").

Second, Flashpoint, a company that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, found information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 4 (Strebe Rebuttal Rep.) ¶¶ 179-86. In fact, on multiple occasions Flashpoint found ██████████

██████████████████████████████ (*id.*), ██████████████████████████

██████████████████████ *Id.* ¶ 182. This is entirely consistent with ███████████████

███████████████████████████████████████████ *Id.* ¶ 183.

Likewise, Flashpoint saw █████████████████████████████████

████████████████████████████████████████████

█████████ *Id.* ¶ 182. As Mr. Strebe explained (and as Gemini also found), █████████████

███████████████████████████████████████ *Id.* ¶¶ 75-78, 226,

242. Specifically, ███████████████████████████

████████████████████████████████████████████

███████████████████████████ *Id.* ¶¶ 75-77. This evidence dismantles

Mr. Tomasini's Opinion 2 and demonstrates his failure to consider sufficient facts. *See* Ex. 2

(Tomasini Dep.) 369:17-370:2 (██████████████████████████████████████),

385:4-14 ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ ).

Third, Mr. Tomasini was similarly ignorant of yet another highly credible source of

evidence ███████████████████████████████████ *Id.* at 349:13-

22 (███████████████████████████████ ). Specifically, notes from a █████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ Ex. 4 (Strebe Rebuttal Rep.) ¶ 172. In other words, ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████. *Id.* ¶¶ 171-78.

Mr. Tomasini's failure to analyze these documents demonstrates an unreliable methodology, a failure to consider sufficient facts, and epitomizes his lack of expertise. Accordingly, the Court should exclude his Opinion 2. *See In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 26 F. Supp. 3d 449, 461–62 (E.D. Pa. 2014) (methodology unreliable where expert "relie[d] upon a selected subset of evidence without sufficient analysis of contrary evidence").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant their motion to exclude the report and testimony of Matteo Tomasini.

DATED: November 11, 2025

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: */s/ James E. Cecchi*

James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
(973) 994.1700
jcecchi@carellabyrne.com

*Interim Lead Counsel for Plaintiffs*

Jason L. Lichtman
Sean A. Petterson
Sarah D. Zandi
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson St., 8th Floor

New York, NY 11013
(212) 355-9500

Norman E. Siegel
J. Austin Moore
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
(816) 714-7100

Christopher A. Seeger
Christopher Ayers
**SEEGER WEISS, LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100

*Quest Track Co-Lead Counsel*

Stuart A. Davidson
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
(561) 750-300

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas
31st Floor
New York, NY 10036
(917) 438-9189

*LabCorp Track Co-Lead Counsel*

Joseph J. DePalma
Catherine B. Derenze
**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
(973) 623-3000

Justin J. Hawal
Amy E. Keller

-27-

**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900

*Other Labs Track Co-Lead Counsel*