**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | No. 2:19-md-2904 |
| | **JAMEL K. SEMPER, USDJ** |
| | **MICHAEL A. HAMMER, USMJ** |
| This Document Relates To: All Cases | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS MARY FRANTZ, AMY WORLEY, SCOTT WITT, AND SHARON ANOLIK**

James E. Cecchi
**CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Interim Lead Counsel for Plaintiffs*

*(Additional co-lead counsel listed on signature page)*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. LEGAL STANDARD ............................................................................................... 3

III. ARGUMENT ............................................................................................................ 3

    A. Frantz's opinions are admissible because she is qualified, uses reliable methods, and will help the jury assess AMCA's cybersecurity, Defendants' failure to oversee AMCA, and the overwhelming evidence of total exfiltration. ........................................................................................ 3

        1. Frantz's opinions are admissible under Rule 702. .................................. 4

            a. Frantz is qualified, and her testimony will assist the jury ............. 4

            b. Frantz's testimony is based upon sufficient facts and data ........... 6

            c. Frantz reaches her opinions using the same methodology she employs in her industry ............................................................... 9

            d. Frantz reliably applies her methodology to the facts. ................. 10

        2. None of Defendants' criticisms render Frantz's ▮▮▮▮▮▮ opinion inadmissible. .......................................................................... 10

            a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

            b. Frantz's analysis of third-party findings requires specialized knowledge and support her opinions ........................ 16

            c. Defendants' incorrect arguments about the third-party findings go at most to weight. ........................................... 19

            d. Frantz's reply declaration is appropriate rebuttal testimony and consistent with her original opinions. ............................ 20

    B. Worley's opinions are admissible because she is qualified, she uses reliable methods, and they will help the jury assess the harm suffered by Class members. ................................................................................................. 22

        1. Worley's opinions are admissible under Rule 702. ............................... 22

            a. Worley is indisputably qualified, and her testimony will assist the jury ........................................................................... 22

            b. Worley's testimony is based upon sufficient facts and data ....... 23

            c. Worley reaches her opinions using the same methodology she uses in the industry and that is prescribed by the U.S. government. .............................................................................. 25

# TABLE OF CONTENTS
## (continued)

Page

d.      Worley reliably applies her methodology to the facts. ............... 27

2.      None of Defendants' criticisms render Worley's opinions
inadmissible. ...................................................................................... 28

a.      Defendants misapply a "scientific" standard to Worley's
"nonscientific" opinions................................................................ 28

b.      Worley's opinions are reliable. .................................................... 30

c.      Defendants are wrong to claim that Worley did not
consider certain "facts." ............................................................... 33

d.      Worley's opinions "fit" the facts of this case and will assist
the jury. ........................................................................................ 35

C.      Witt is a qualified and reliable damages expert. ..................................... 37

1.      Reliance on Ms. Worley's inputs is proper under Rule 703. ................. 39

2.      Witt's actuarial assumptions are reasonable and scientifically
grounded. ............................................................................................. 40

3.      The 10-Year scenario was included only at Counsel's request to
demonstrate the flexibility of Witt's model, not as a substantive
damages claim...................................................................................... 43

4.      Witt's testimony will assist the jury and involves specialized
knowledge beyond a layperson's capacity........................................... 43

D.      Anolik's opinions are admissible because she is qualified, uses reliable
methods, and will help the jury understand the industry standards
applicable to Defendants' oversight of AMCA and whether they met those
standards. ................................................................................................. 44

1.      Anolik's opinions are admissible under Rule 702. ............................... 45

a.      Anolik is indisputably qualified.................................................. 45

b.      Anolik's testimony is based upon sufficient facts and data......... 46

c.      Anolik reaches her opinions using the same methodology
she employs as an industry practitioner. ..................................... 48

d.      Anolik reliably applies her methodology to the facts. ................ 50

2.      None of Defendants' specific attacks on Anolik's opinions render
them inadmissible. ............................................................................... 50

a.      Anolik does not offer legal opinions........................................... 50

b.      Defendants' "methodology" argument on the quality of
Anolik's sources goes to weight, not to admissibility. ............... 55

**TABLE OF CONTENTS**
(continued)

Page

c.    Anolik's industry practices opinions are supported by sufficient facts and data. ................................................................ 56

d.     ████████████████████████████████

IV.    CONCLUSION .......................................................................................... 58

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ..............................................................11, 13, 20

*Affiliati Network, Inc. v. Wanamaker*,
2017 WL 7361048 (S.D. Fla. Aug. 14, 2017)..................................................................57

*Alberts v. Bumgardner*,
2017 WL 3705799 (D.N.J. Aug. 25, 2017) ......................................................................29

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021)........................................................................36

*Bally v. State Farm Life Ins. Co.*,
335 F.R.D. 288 (N.D. Cal. 2020)..............................................................38, 40, 41, 43

*Beckwith v. Interstate Mgmt. Co., LLC*,
82 F. Supp. 3d 255 (D.D.C. 2015).................................................................................56

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006).........................................................................................51

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
2019 WL 4751883 (E.D. Pa. Sept. 30, 2019) ................................................................52

*Buccheri v. Nogan*,
2019 WL 3712188 (D.N.J. Aug. 6, 2019) ...................................................................30, 36

*Callas v. Callas*,
2020 WL 3468084 (D.N.J. June 25, 2020)......................................................................39

*Chopourian v. Catholic Healthcare W.*,
2011 WL 6396500 (E.D. Cal. Dec. 20, 2011) ................................................................49

*Christoforetti v. Bally's Park Place, Inc.*,
2021 WL 3879074 (D.N.J. Aug. 31, 2021) ...............................................................23, 28

*Citizens Bank, N.A. v. Nostrum Lab'ys, Inc.*,
2024 WL 3199951 (D.N.J. June 27, 2024)........................................................................23

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) .......................................................................................11, 36

*Cotromano v. United Techs. Corp.*,
2018 WL 2047468 (S.D. Fla. May 2, 2018).....................................................................28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Cricut, Inc. v. Enough for Everyone,*
   *Inc.*, 2025 WL 593178 (D. Utah Feb. 24, 2025).................................................................4, 22

*Crowley v. Chait,*
   322 F. Supp. 2d 530 (D.N.J. 2004) ................................................................. *passim*

*Dalgic v. Misericordia Univ.,*
   2019 WL 2867236 (M.D. Pa. July 3, 2019)...........................................................17

*Daubert v. Merrell Dow Pharms.,*
   509 U.S. 579 (1993)................................................................................ *passim*

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.,*
   2024 WL 1115944 (S.D.N.Y. Mar. 14, 2024) ............................................................8

*Duling v. Domino's Pizza, LLC,*
   2015 WL 3407602 (N.D. Ga. Jan. 14, 2015)..............................................................49

*Dzielak v. Whirlpool Corp.,*
   2017 WL 1034197 (D.N.J. Mar. 17, 2017).........................................................13, 20

*E.E.O.C. v. FAPS, Inc.,*
   2014 WL 4798802 (D.N.J. Sept. 26, 2014) ...............................................................29

*Elcock v. Kmart Corp.,*
   233 F.3d 734 (3d Cir. 2000).............................................................................9

*Ellison v. United States,*
   753 F. Supp. 2d 468 (E.D. Pa. 2010) ...............................................................57, 58

*Equinox Props., LLC v. Hartford Mut. Ins. Co.,*
   2023 WL 5447279 (D.N.J. Aug. 24, 2023) .........................................................3, 48

*Fed. Trade Comm'n v. Innovative Designs, Inc.,*
   2018 WL 3611510 (W.D. Pa. July 27, 2018) ............................................................20

*Feit v. Great-W. Life & Annuity Ins. Co.,*
   460 F. Supp. 2d 632 (D.N.J. 2006) .....................................................................29

*Figueroa v. Boston Sci. Corp.,*
   254 F. Supp. 2d 361 (S.D.N.Y. 2003).................................................................29, 32

## TABLE OF AUTHORITIES
### (continued)

**Page**

*First National State Bank v. Reliance Elec. Co.*,
  668 F.2d 725 (3d Cir. 1981) ..............................................................................7, 51

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
  2013 WL 1558690 (D.N.J. Apr. 10, 2013) ........................................................46, 52

*Gonzalez-Lopez v. Perfect Trading, Inc.*,
  2024 WL 1406563 (D.N.J. Apr. 2, 2024) ...................................................................3

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999) ...................................................................................34

*Integra Lifesciences Corp. v. HyberBranch Med. Tech., Inc.*,
  2018 WL 1785033 (D. Del. Apr. 4, 2018) ...............................................................29

*Jaunich v. State Farm Life Ins. Co.*,
  2021 WL 5054461 (D. Minn. Nov. 1, 2021) .......................................................38, 42

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Prac. & Prods. Litig.*,
  509 F. Supp. 3d 116 (D.N.J. 2020) ...............................................10, 13, 50, 55

*Johnson v. Comodo Grp., Inc.*,
  2024 WL 2933195 (D.N.J. Jun. 10, 2024) ...........................................................9, 25, 28

*K.G. v. Owl City*,
  2023 WL 3735891 (D.N.J. May 31, 2023), *aff'd*, 2025 WL 1577565 (3d Cir. June 4, 2025) ....................................................................................................56

*Kia v. Imaging Sciences Int'l, Inc.*,
  2010 WL 3431745 (E.D. Pa. Aug. 30, 2010) ...........................................................18

*Krantz v. Steiler*,
  2024 WL 1494182 (M.D. Pa. Apr. 5, 2024). ...........................................................57

*Kremsky v. Kremsky*,
  2017 WL 4466467 (E.D. Pa. Mar. 6, 2017) ...........................................................17

*Krys v. Aaron*,
  112 F. Supp. 3d 181 (D.N.J. 2015) .......................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Kuhar v. Petzl Co.*,
2018 WL 7571319 (D.N.J. Nov. 27, 2018) ...............................................................29

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999).................................................................................................31

*Larson v. John Hancock Life Ins. Co.*,
2017 WL 4284163 (Cal. Super. Ct. Mar. 23, 2017) ................................................38

*Lee-Bolton v. Koppers, Inc.*,
319 F.R.D. 346 (N.D. Fla. 2017) .............................................................................29

*In re Lincoln Nat'l 2017 COI Rate Litig.*,
620 F. Supp. 3d 268 (E.D. Pa. 2022) .......................................................................17

*Littlejohn v. Solar*,
2020 WL 2520418 (D.N.J. May 18, 2020) ...............................................................56

*Luciotti v. Borough of Haddonfield, New Jersey*,
2023 WL 6366091 (D.N.J. Sept. 29, 2023) ..............................................................55

*MacGlashan v. ABS Lincs KY, Inc.*,
2015 WL 403067 (W.D. Ky. Jan. 28, 2015)..............................................................49

*Martinez v. Cont'l Tire the Ams., LLC*,
2021 WL 3169227 (D.N.M. July 27, 2021)...............................................................18

*Maude v. City of Philadelphia*,
507 F. Supp. 3d 593 (E.D. Pa. 2020) .................................................................49, 52

*McClure v. State Farm Life Ins. Co.*,
341 F.R.D. 242 (D. Ariz. 2022)..........................................................................37, 44

*McHugh v. Jackson*,
2010 WL 1875578 (D.N.J. May 7, 2010) .................................................................29

*Montgomery Cnty. v. Microvote Corp.*,
320 F.3d 440 (3d Cir. 2003)....................................................................6, 14, 23, 46

*Multiple Energy Techs., LLC v. Under Armour, Inc.*,
2025 WL 82328 (W.D. Pa. Jan. 13, 2025)..................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*N.J. Primary Care Ass'n, Inc. v. Dep't of Human Servs.*,
2018 WL 4357194 (D.N.J. Sept. 12, 2018) ...............................................................5

*Nat'l Fire & Marine Ins. Co.*, 2024 WL 1683609 .......................................................23

*Nichols v. Morrisey*,
2024 WL 871322 (E.D. Pa. Feb. 29, 2024) .............................................................33

*Novelli v. Breslin*,
2025 WL 2642509 (D.N.J. Sept. 15, 2025) ...............................................................6

*Opris v. Sincera Reproductive Med.*,
2022 WL 1639417 (E.D. Pa. May 24, 2022)............................................................35

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994).......................................................................... *passim*

*United States ex rel. Penelow v. Janssen Prods., LP*,
2022 WL 94535 (D.N.J. Jan. 10, 2022) ....................................................13, 29, 53

*Player v. Motiva Enters. LLC*,
2006 WL 166452 (D.N.J. Jan. 20, 2006)................................................................29

*Prime Energy and Chem., LLC v. Tucker Arensberg, P.C.*,
625 F. Supp. 3d 443 (W.D. Pa. 2022)..........................................................10, 27, 50

*Reilly v. Home Depot U.S.A., Inc.*,
2024 WL 4025041 (D.N.J. June 11, 2024)...............................................................48

*Rullo v. Univ. of Pittsburgh–of Commonwealth Sys. of Higher Educ.*,
520 F. Supp. 3d 685 (W.D. Pa. 2021)..........................................................8, 25, 48

*Russell v. City of Wildwood*,
428 F.2d 1176 (3d Cir. 1970)..................................................................................40

*Silipena v. Am. Pulverizer Co.*,
2024 WL 3219226 (D.N.J. June 28, 2024).........................................................29, 30

*United States ex rel. Silver v. Omnicare, Inc.*,
2023 WL 2808098 (D.N.J. Mar. 31, 2023)..............................................................17

**TABLE OF AUTHORITIES**
(continued)

Page

*Slatowski v. Sig Sauer, Inc.*,
    148 F.4th 132 (3d Cir. 2025) ............................................................................................28

*Spegele v. USAA Life Ins. Co.*,
    336 F.R.D. 537 (W.D. Tex. 2020) .............................................................................38, 43

*States v. Fernwood Hotel & Resorts*,
    2014 WL 198568 (M.D. Pa. Jan. 15, 2014) ...............................................................33, 48

*Swainson v. City of Philadelphia*,
    2025 WL 1830972 (E.D. Pa. July 2, 2025) .......................................................................39

*Swartzendruber v. Sentara RMH Med. Ctr.*,
    2025 WL 2655986 (W.D. Va. Sept. 16, 2025) ..................................................................52

*Taha v. Bucks County, Pa.*,
    408 F. Supp. 3d 628 (E.D. Pa. 2019) ...............................................................................14

*TAKTL, LLC v. IWR, N. Am., LLC*,
    2024 WL 4415194 (W.D. Pa. Oct. 4, 2024) .....................................................................55

*Taylor v. SEPTA*,
    2024 WL 3205209 (E.D. Pa. June 27, 2024). ...................................................................53

*In re TMI Litigation*,
    193 F.3d 613 (3d Cir. 1999)..............................................................................................14

*In re: Tylenol (Acetaminophen) Mkt'g, Sales Pracs., & Prods. Liab. Litig.*,
    2016 WL 807377 (E.D. Pa. Mar. 2, 2016)........................................................................17

*In re: Tylenol (Acetaminophen) Mkt'g, Sales Practices, & Prods. Liab. Litig.*,
    2016 WL 4039324 (E.D. Pa. July 27, 2016).................................................................52, 54

*United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or*
    *Less, in Madison Cnty., Alabama*,
    140 F. Supp. 3d 1218 (N.D. Ala. 2015). ..........................................................................57

*United States v. Barnes*,
    481 F. App'x 505 (11th Cir. 2012) ...................................................................................57

*United States v. Delgado*,
    677 Fed. App'x 84 (3d Cir. 2017).....................................................................................16

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Ford*,
    481 F.3d 215 (3d Cir. 2007).................................................................................35

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ............................................................................57

*United States v. Leo*,
    942 F.2d 181 (3d Cir. 1991)..................................................................................52

*United States v. Marilao*,
    1991 WL 193451 (E.D. Pa. Sept. 24, 1991) .........................................................37

*United States v. Paracha*,
    2006 WL 12768 (S.D.N.Y. Jan. 3, 2006) ..............................................................19

*United States v. Rodriguez-Felix*,
    450 F.3d 1117 (10th Cir. 2006) ............................................................................55

*United States v. Schiff*,
    602 F.3d 152 (3d Cir. 2010)........................................................................5, 23, 36

*United States v. Univ. Rehab. Servs., Inc.*,
    1996 WL 297575 (E.D. Pa. May 31, 1996)...........................................................53

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
    2025 WL 1024048 (D.N.J. Apr. 7, 2025) ...........................................................3, 28

*Vitamin Energy, Inc. v. Evanston Ins. Co.*,
    2023 WL 5608394 (E.D. Pa. Aug. 29, 2023) ........................................................52

*Vogt v. State Farm Life Ins. Co.*,
    2018 WL 4937330 (W.D. Mo. Oct. 11, 2018), *aff'd*, 963 F.3d 753 (8th Cir.
    2020) .....................................................................................................................38

*Voilas v. Gen. Motors Corp.*,
    73 F. Supp. 2d 452 (D.N.J. 1999).....................................................................33, 36

*W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*,
    2008 WL 5244232 (D.N.J. Dec. 15, 2008)..................................................... *passim*

*Walden v. Bank of New York Mellon Corp.*,
    2024 WL 343087 (W.D. Pa. Jan. 30, 2024)............................................................5

-x-

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Wellbutrin SR Antitrust Litig.*,
   2010 WL 8425189 (E.D. Pa. Mar. 31, 2010)...........................................................52

*Whitman v. State Farm Life Ins. Co.*,
   2021 WL 4264271 (W.D. Wash. Sept. 20, 2021)....................................................37

*Wolfe v. McNeil-PPC, Inc.*,
   881 F. Supp. 2d 650 (E.D. Pa. 2012). ....................................................................51

*Young v. Jabil, Inc.*,
   2025 WL 1435625 (E.D. Pa. May 19, 2025) ...........................................................9

*Young v. John Crane, Inc.*,
   2024 WL 5453789 (E.D. Pa. June 10, 2024)....................................................10, 27

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012)...................................................................................19

**Federal Rules**

Fed. R. Evid. 702 ....................................................................................3, 19, 24, 29

Fed. R. Evid. 703 ................................................................................................11, 39

Fed. R. Evid. 902 ........................................................................................................40

## I.     **INTRODUCTION**

The evidence in this case shows that Plaintiffs were harmed uniformly by Defendants' failure to conduct any meaningful oversight of AMCA, their fly-by-night debt collector who lacked basic cybersecurity measures. Defendants barely muster a substantive defense. Instead, they resort to non sequiturs about an expert Plaintiffs withdrew (they do not challenge his replacement), an amended materials considered list (if Defendants wanted to ask questions about it, they had nearly a year to do so), and argue that there is something problematic about the fact that Plaintiffs retained an expert for rebuttal only (exactly what is wrong here is something Defendants never explain, this was specifically contemplated by the Scheduling Order). But none of this changes the fact that each of their four challenged experts provides admissible testimony.

The first expert, Mary Frantz, analyzes



Defendants could not find a single expert to defend AMCA's cybersecurity or their oversight over AMCA, nor do they dispute Frantz's credentials as one of the country's leading cybersecurity experts. They dispute only her opinion on

. Defendants use this non-cybersecurity expert to accuse Frantz of failing to adhere to standards not applicable to her field and make the absurd argument that her analysis of dense, highly technical forensic investigation documents can be left to the jury. These arguments are not even persuasive as an attack on the weight of her testimony, they certainly do not bar its admissibility.

Second, Amy Worley,

███████████████████████████████████████████████████████. Each opinion uses the same reliable methodology that she deploys in her work in the industry. Defendants could not find a data privacy practitioner to opine otherwise. Instead, Defendants seek to apply the "scientific" *Daubert* standard to Worley's nonscientific opinions, ████████████████████████ ████████████████████████████████████████████ ██████████████████████. Again, there is no serious argument that these quibbles go to admissibility.

Third, Scott Witt, an actuarial and damages expert, whose opinions have been accepted in numerous class actions, calculated the present-value cost of credit monitoring and identity-protection services over time. He did so by taking the value of █████████████ █████████, applied mortality probabilities to Class members, and applied a discount rate. This damages analysis is precisely how actuaries calculate this information and Defendants' challenges to his inputs and duration (as well as the absurd idea that a jury could simply become actuaries themselves) are meritless, not supported by any experts, and (again) have nothing to do with admissibility.

Finally, Sharon A. Anolik, an expert in the healthcare privacy field, ████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ Defendants' arguments that she is providing a legal opinion are contrary to law, which regularly permits industry experts like Anolik to describe how an industry generally reacts to a tangled web of regulation and practice. This is not merely true as a general matter: courts have permitted such testimony specifically in the context of

HIPAA. And Defendants' disputes about the conclusions Anolik draws from her experience and the record go only to the weight a jury will ultimately give that testimony.

Plaintiffs' experts are far from the "exceptional" situation where expert testimony should be kept from the jury. Plaintiffs respectfully submit that Defendants' motion be denied in full.

## II.    <u>LEGAL STANDARD</u>

Under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), "[t]he Court must act as a 'gatekeeper' to prevent expert testimony running afoul of Rule 702 from ever reaching the jury." *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2025 WL 1024048, at *9 (D.N.J. Apr. 7, 2025) (citing *Daubert*, 509 U.S. at 596-97). As such, "expert testimony will be admissible only if it is both relevant and reliable." *Gonzalez-Lopez v. Perfect Trading, Inc.*, 2024 WL 1406563, at *2 (D.N.J. Apr. 2, 2024). "To satisfy these elements," "Rule 702 requires that: (1) the expert must be qualified to render his or her opinion; (2) the scientific process or methodology employed by the expert . . . must be reliable; and (3) the expert's testimony must assist the trier of fact." *Id.* This said, "[a] court's rejection of expert testimony should be the exception rather than the rule." *Equinox Props., LLC v. Hartford Mut. Ins. Co.*, 2023 WL 5447279, at *2 (D.N.J. Aug. 24, 2023) (citing Fed. R. Evid. 702 Advisory Committee Note).

## III.    <u>ARGUMENT</u>

### A.    <u>Frantz's opinions are admissible because she is qualified, uses reliable methods, and will help the jury assess AMCA's cybersecurity, Defendants' failure to oversee AMCA, and the overwhelming evidence of total exfiltration.</u>

Plaintiffs' common injuries, Defendants' breaches of duty, and the scope of the AMCA breach are premised on AMCA's wholly deficient cybersecurity and Defendants' abject failure to oversee AMCA despite providing it with the PII and PHI of millions of Americans. In support, Plaintiffs offer testimony from Mary T. Frantz, ██████████████████████████



Ex. 1 (Declaration of Mary Frantz) ("Frantz Decl."), ¶¶ 9-19.[1] Each of Frantz's opinions readily meet Rule 702's requirements and are admissible.

Tellingly, Defendants could not find an expert to dispute any of Frantz's first three opinions. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. That opinion is admissible as well.

### 1.    Frantz's opinions are admissible under Rule 702.

### a.    Frantz is qualified, and her testimony will assist the jury.

Frantz is highly qualified, (*see* Frantz Decl. ¶¶ 1-5, Ex. A (CV)), and Defendants do not argue otherwise. This "cuts in favor" of admitting her testimony. *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, 2008 WL 5244232, at *7 (D.N.J. Dec. 15, 2008); *see also Cricut, Inc. v. Enough for Everyone, Inc.*, 2025 WL 593178, at *2 (D. Utah Feb. 24, 2025) (where expert's qualifications unchallenged, "the Court need only determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology") (internal quotations omitted).

---

[1] "Ex." refers to the exhibits submitted herewith to the Declaration of James E. Cecchi.



Frantz Decl. ¶ 3.

*Id.* ¶ 1.

. *Id.* ¶ 3.

*Id.* ¶¶ 4-5.

Frantz's specialized knowledge will help the jury understand

See United States v. Schiff, 602 F.3d 152, 173 (3d Cir. 2010) (whether testimony will assist the jury "is a question of relevance"); *Walden v. Bank of New York Mellon Corp.*, 2024 WL 343087, at *3 (W.D. Pa. Jan. 30, 2024) (admitting testimony of expert with relevant background experience).[2] In short, Frantz has significant expertise assessing

. *See N.J. Primary Care Ass'n, Inc. v. Dep't of Human Servs.*, 2018 WL 4357194, at *2 (D.N.J. Sept. 12, 2018) (expert qualified based on his "extensive experience").

---

[2] Defendants ostensibly "reserve the right to move to exclude additional merits-based opinions at a later stage . . . ." Mot. at 6, n.2. But they are not entitled to a second bite at the apple, particularly because there is not a meaningful distinction between "merits" and "class" opinions in this case.

### b.   Frantz's testimony is based upon sufficient facts and data.

An expert relies on sufficient facts or data when "there are good grounds to rely on th[e] data to draw the conclusion reached[.]" *Montgomery Cnty. v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003); *see also Novelli v. Breslin*, 2025 WL 2642509, at *8 (D.N.J. Sept. 15, 2025) (expert's testimony reliable where based on his "own observations during his personal inspection of the Property, supplemented by the alleged defects noted in the buyers' inspection reports"). "The grounds for the expert's opinion merely have to be good, they do not have to be perfect." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). It is only when the facts and data are "so unreliable that no reasonable expert could base an opinion on them," that the opinion should be excluded. *Montgomery Cnty.*, 320 F.3d at 448; *see also Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2025 WL 82328, at *2 (W.D. Pa. Jan. 13, 2025).

There should be little doubt that Frantz's testimony is far above *Paoli's* bar.



. Frantz Decl. ¶¶ 27-45.

*Id.* ¶ 46; *see also id.* ¶¶ 46-65.

, *id.* ¶¶ 49-52, 56;   , *id.* ¶¶ 53, 60;

*id.* ¶ 57;

, *id.* ¶¶ 58, 64;

, *id.* ¶ 62.

. *Id.* ¶¶ 66-138.

posture and to gain an understanding of how threat actors could have exfiltrated information from AMCA's systems. In particular, Frantz explained that AMCA's failure to "log" activity on its systems meant that the earliest known date of intrusion, August 2018, is not the definitive first date that threat actors accessed AMCA's systems. *Id.* ¶¶ 128-32.

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████ *Id.* ¶¶ 111-12.

███████████████████████████████████████████████████ *Id.* ¶¶ 139-328. ██

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 139. ████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 253 (emphasis in original).

█████████████████████████████████████████ . *Id.*

███████████████████████████████████████████████████████████████

█████████████████████████ . *Id.* ¶¶ 329-63. ███████████

███████████████████████████████ *Id.* ¶¶ 330-34. ██

-7-



*Id.* ¶ 339; *see also id.* ¶¶ 335-39.

*Id.* ¶¶ 340-43.

*Id.* ¶¶ 344-63.

*See* Ex. 2 (Frantz Reply Report), ¶ 60.

In sum, Frantz's opinions are grounded in an extensive factual foundation and there is a rational connection between the facts and her opinions, which is all that is required. *See In re Paoli*, 35 F.3d at 744. Defendants' challenges to Frantz's factual basis go to weight, not admissibility. *See, e.g.*, *Rullo v. Univ. of Pittsburgh–of Commonwealth Sys. of Higher Educ.*, 520 F. Supp. 3d 685, 692 (W.D. Pa. 2021); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 2024 WL 1115944, at *6 (S.D.N.Y. Mar. 14, 2024).

### c. Frantz reaches her opinions using the same methodology she employs in her industry.

While courts consider the *Daubert* factors in evaluating the reliability of scientific methodologies, these same factors may not be instructive for "nonscientific" testimony, like Frantz's. *Johnson v. Comodo Grp., Inc.*, 2024 WL 2933195, at *5 n.7 (D.N.J. Jun. 10, 2024). When an expert's testimony is nonscientific, "the relevant reliability concerns will focus upon personal knowledge and experience of the witness and the methodology used will be applying the experience to the facts of the case." *Id.* (collecting cases). Frantz reliably applies her experience to the facts of the case and explains how that experience reasonably leads to the conclusions reached.



*See, e.g.*, Frantz Decl. ¶¶ 3-5, 27-45, 80, 90, 102, 109.

*Id.* ¶¶ 4, 345

). 

. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000); *Young v. Jabil, Inc.*, 2025 WL 1435625, at *4-5 (E.D. Pa. May 19, 2025) (admitting assessment based on review of record evidence). Her opinions are, therefore, reliable.

**d.    Frantz reliably applies her methodology to the facts.**

The "fit" requirement asks whether the expert reliably applied her experience to the facts, ensuring opinions are well-reasoned, grounded in experience, and not speculative. *Prime Energy and Chem., LLC v. Tucker Arensberg, P.C.*, 625 F. Supp. 3d 443, 450 (W.D. Pa. 2022); *Young v. John Crane, Inc.*, 2024 WL 5453789, at *1 (E.D. Pa. June 10, 2024). There must be "a reasonable link between the information and procedures they use and the conclusions reached." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Prac. & Prods. Litig.*, 509 F. Supp. 3d 116, 187 (D.N.J. 2020). Frantz's opinions "fit" the facts of this case.

Frantz appropriately applied her methodology to the evidence. She extensively analyzed the discovery and conducted her own analyses to reach her conclusions that AMCA had poor cybersecurity, Defendants failed to oversee AMCA, the AMCA breach was caused by preventable and detectable cybersecurity failures, and Class members' information was exfiltrated from AMCA's systems. Accordingly, Frantz's opinions are tailored to identify the harms suffered by Class members, Defendants' failed oversight of AMCA, and based on common evidence.

**2.    None of Defendants' criticisms render Frantz's ▮▮▮▮▮▮ opinion inadmissible.**

At the outset, Defendants' criticisms of Frantz's ▮▮▮▮▮ opinion seek to impose a standard for establishing Article III standing that is not found in the law. As detailed in Plaintiffs' reply in support of class certification, Plaintiffs need only show that all Class members' personal information was *accessed*. Reply at 8-9. Frantz's opinions demonstrate this. *See, e.g.*, Frantz Decl. ¶ 64 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), ¶ 62 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), ¶ 79 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Defendants' insistence that Plaintiffs must show that every Class member's information was *for sale* is inconsistent with Third Circuit precedent,

see *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154 (3d Cir. 2022) ("misuse is not necessarily required" to demonstrate standing), or basic logic, as the dark web is ephemeral and "hackers have [the stolen] information and could use it at any time." *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *8 (N.D. Cal. Sept. 30, 2025); *see also* Class Cert Reply at 8-9.

**a.**

.[3] Indeed, Defendants do not meaningfully dispute that Frantz's opinions are based on the type of data that is reasonably relied on by experts in her field, *see* Fed. R. Evid. 703: they did not put forward a single expert who would even be qualified to dispute it. *Cf.* Ex. 3 (Tomasini Dep.), at 190:11-191:16 ("  ), 236:8-15 ( ), 182:18-183:7, 298:5-21 ( ). Defendants do, however, argue that Frantz's limited scope dark web searches (one part of her exfiltration opinions) are not based on sufficient data or a reliable

---

[3] ⬛ Frantz Decl. ¶¶ 128-32; *see also id.* ¶¶ 96-103 ( ). ⬛ *Id.* ¶ 251(e).



Mot. at 8-17.

In any event, Defendants are wrong.

Frantz Decl. ¶ 345.

Id.

Id. ¶¶ 346-48.

Id. ¶ 348 (emphasis added).

id. ¶ 357

Id. ¶¶ 360-61.[4]

Id. ¶ 361.

---

[4]

Mot. at 8, n.4.

-12-

Defendants' criticisms do not approach the level for exclusion; they go solely to weight. *See, e.g.*, *United States ex rel. Penelow v. Janssen Prods., LP*, 2022 WL 94535, at *16 (D.N.J. Jan. 10, 2022) (citing *Daubert*, 509 U.S. at 596).

1. ████████████████████████████████████████████████

████████ Mot. at 8, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Mot. at

10-11, but "attacks on expert's conclusions…cannot be refashioned into *Daubert* attacks by the facile method of saying that such unlikely results could only have been the product of unscientific methods." *Dzielak v. Whirlpool Corp.*, 2017 WL 1034197, at *10 (D.N.J. Mar. 17, 2017); *cf. Accellion*, 2025 WL 2799102, at *11 ("absurd" to argue that causation was impossible to prove because of prior data breaches).

2. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Frantz Reply, ¶ 52,

n.57. In other words, this is not an error, but "a factual dispute among experts regarding the value and source of an input that is fully disclosed and can be disputed factually." *Dzielak*, 2017 WL 1034197, at *27. And even if it were an error, that goes to "the weight of [Frantz's] opinion and the credibility of [her] testimony." *In re Johnson & Johnson*, 509 F. Supp. 3d at 146 (collecting cases admitting experts who made errors). Neither of Defendants' cases support them. In *Montgomery County*, the expert made a "guesstimate" and "could not identify the source or basis

of some of" the documents shown in his deposition. 320 F.3d at 449. Frantz does not suffer from the same lack of knowledge or inability to understand the sources she relied on.[5]

3. Defendants' third argument, that Frantz did not deploy a reliable or reproducible methodology, is a strawman. ███████████████████

████████████████████████████████████████████

████████████████████████████████████████. Mot. at 12.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████. *See* Ex. 4 (Frantz Dep.), at 58:20-23.

4. ████████████████████████████████████████

████████████████████████████████ Mot. at 14-15. ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[5] Similarly, in *In re TMI Litigation*, 193 F.3d 613, 698 (3d Cir. 1999), the expert relied on "medical summaries prepared from interviews conducted by nonprofessionals" who were aligned with plaintiffs. And in *Taha v. Bucks County, Pa.*, 408 F. Supp. 3d 628, 645 (E.D. Pa. 2019), there was no evidence that experts in the field "use anonymous conversations as the basis for their expert opinions." █████████████████████████████████████████████

██████████



Tomasini Dep. at 376:16-384:24.

Mot. at 14.

*See* Ex. 5 (Tomasini Decl.), ¶ 84 ), ¶ 85 ), ¶ 86 ), ¶ 87 ).[6]

5.

Frantz Decl. ¶ 360, Ex. C.

Tomasini Dep. at 376:16-384:24.

Frantz Dep. 78:12-20.

Mot. at 15.

[7]

6.

Mot. at 16.

---

[6] *Id.* ¶ 90.

[7] Hypocritically, Defendants did not produce

*See* Tomasini Daubert at 18-19.

████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ███████

████████████████████████████████████████████████████

█████████████████████████ Frantz Decl. ¶ 360, Ex. C. And Defendants plainly dispute

this fact as their motion and Tomasini indicate. Thus, Frantz's █████████████ easily meet the

standard for helpfulness. *See United States v. Delgado*, 677 Fed. App'x 84, 86 (3d Cir. 2017) ("The

standard is not that high, but is higher than bare relevance.") (cleaned up).

> **b.**        **Frantz's analysis of third-party findings requires specialized knowledge and support her opinions.**

Overwhelming third-party evidence demonstrates the breadth of the threat actors' access

and exfiltration of information from AMCA. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████ *See, e.g.*, Frantz Decl. ¶¶ 47-65, 72-74, 76, 99, 139, 329-43. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶

72 (emphasis in original). █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. Frantz Reply Decl. ¶¶ 16(k), 32, 59-60.

This evidence is incredibly damning to Defendants' █████████ argument and demonstrates that

Plaintiffs have Article III standing and common injury. *See* Class Cert Reply at 10-19.

Unable to respond to the substance of these third-party findings or to find an expert to explain why they are not damning, Defendants resort to claiming that Frantz's analysis of these third-party findings is somehow both "one-sided" and does not require "specialized knowledge." Mot. at 17. Neither is true.

Frantz's analysis and summaries of these third-party findings is not merely "regurgitating" the factual record. She takes complicated and dense pieces of forensic evidence and third-party findings and draws conclusions from them based on her uncontested expertise. ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

██████████████████ Frantz Decl. ¶ 64(a). This is just a snippet of the dense, highly technical, and complicated forensic evidence that Frantz synthesized. The notion that the jury could review the CRA forensic report without the assistance of expert testimony is not credible. Incredibly, despite arguing that the jury could simply analyze and understand these documents, ███████

███████████████████████████████████████████████

█████████████████████. *See* Tomasini Dep. at 182:18-183:7, 298:5-21 (██████████

████████████████████████████████).[8]

---

[8] Defendants' cases are inapposite. *See In re Lincoln Nat'l 2017 COI Rate Litig.*, 620 F. Supp. 3d 268, 284 (E.D. Pa. 2022) (expert simply interpreting provisions of an insurance contract to conclude that "the same terms in multiple contracts must be given the same meaning."); *United States ex rel. Silver v. Omnicare, Inc.*, 2023 WL 2808098, at *15 (D.N.J. Mar. 31, 2023) (expert summarized "email exchanges" and "depositions," which "he did not rely on"); *Kremsky v. Kremsky*, 2017 WL 4466467, at * (E.D. Pa. Mar. 6, 2017) (court could not determine if expert was parroting work of co-worker until examining the underlying document); *Dalgic v. Misericordia Univ.*, 2019 WL 2867236, at *11 (M.D. Pa. July 3, 2019) (email at issue could be "easily read and comprehended without expert assistance") (cleaned up); *In re: Tylenol (Acetaminophen) Mkt'g, Sales Pracs., & Prods. Liab. Litig.*, 2016 WL 807377, at *9 (E.D. Pa. Mar. 2, 2016) (permitting expert to testify because "a narrative may be admissible if it involves complicated facts which the

Further, Defendants' argument that Frantz did not conduct an analysis of the third-parties' conclusions is incorrect. ██████████████████████████████████████████ ██████████████████████████████████████. *See, e.g.*, Frantz Decl. ¶ 339 (████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████). This is far different from simply reciting record evidence, particularly given the complicated technical subject matter.

The notion that Frantz was required to "verify or replicate their findings" or "possess their underlying data" is completely inconsistent with how the cybersecurity field works. Mot. at 18. In Frantz's field, experts take pieces of forensic evidence, evaluate the source of the information, contextualize it, and use it as a signal to conduct their analysis of what happened.[9] ████████

██████████████████████████████████████████████

█████████████████████████████████████████ The Secret Service would have also failed Defendants' invented test, as it used this very information as its basis to inform AMCA about the breach. ████████████████████

██████████████████████████████████████████████

████████████████████████████ *See, e.g., Martinez v. Cont'l Tire the Ams., LLC*, 2021 WL 3169227, at *5 (D.N.M. July 27, 2021) (methodology reliable where it "is consistent

---

expert can help extrapolate for the jury"); *Kia v. Imaging Sciences Int'l, Inc.*, 2010 WL 3431745, at *4 (E.D. Pa. Aug. 30, 2010) ("factual issues presented by Kia's claim for breach of oral contract are well within the understanding of a jury").

[9] Critically, Defendants' attempts to isolate each piece of third-party evidence is yet another instance of them seeking to impose standards inconsistent with how actual cybersecurity experts analyze data breaches.

with the methodology used by other experts in his field"); *United States v. Paracha*, 2006 WL 12768, at *20 (S.D.N.Y. Jan. 3, 2006) ("Whatever the general pitfalls of the 'vetting process' that is employed by [expert] and others in his field, it is a sufficiently reliable methodology to meet the requirements of Fed. R. Evid. 702."). Defendants' citation to *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012) is not to the contrary. There, the excluded expert relied wholly on "one page of financial projections for a nascent company, the assumptions underlying which were relatively unknown." Here, Frantz relied on reputable firms, including firms *retained by Defendants*, analyzed the factual record in detail, and drew her conclusions about the various pieces of evidence in total.

### c. Defendants' incorrect arguments about the third-party findings go at most to weight.

Defendants' counsel (again: Defendants did not proffer a cybersecurity expert) next attempt to characterize the import of the third-party findings. Unsurprisingly, they disagree with Frantz's opinions and attempt to minimize the evidence. Defendants are incorrect and, among other places, Plaintiffs' reply in support of class certification extensively details the import of the third-party findings and is incorporated herein. *See* Class Cert Reply at 10-19. In short, Defendants' argument is essentially that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This is illogical and contrary to both the evidence and how threat actors act. But a jury will ultimately decide the import of this evidence. For present purposes, Defendants' "challenges to the underlying bases for [Frantz's opinions] go to weight, not admissibility" and "the factual narrative that underpins her conclusions is based on evidence that is disputed but provable at trial," and therefore "[w]hether such evidence is adopted by the jury is not determined in this *Daubert* motion." *Krys v. Aaron*, 112 F. Supp. 3d 181, 199 (D.N.J.

2015). The sole case Defendants cite, *Dzielak*, involved an expert relying substantially on a single document to support his opinion "without any independent investigation into the *data* depicted in the document." 2017 WL 1034197, at \*24. Frantz's reliance on the third-party findings are based on extensive documentary evidence, including depositions, to form her conclusions.

**d.** **Frantz's reply declaration is appropriate rebuttal testimony and consistent with her original opinions.**

Frantz's reply report responds to Tomasini's specific and incorrect second opinion that



Tomasini Decl. ¶ 8. Defendants incorrectly argue that

Mot. at 26.

Thus, it was proper rebuttal for Frantz to point out and is not a "do over." The additional evidence that Frantz points to—

—

and is thus proper rebuttal. *See Crowley, v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (rebuttal must (1) address the same subject matter as the opposing expert's report and (2) "explain, repel, counteract or disprove the evidence of the adverse party"); *Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 3611510, at \*2 (W.D. Pa. July 27, 2018) (collecting cases and stating that "district courts [are] reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language").[10]

---

[10] _____ *See* Frantz Decl. ¶¶ 62(a)-(d), 72, 74, 76, 99, 139.



*See, e.g.*, Frantz Decl. ¶¶ 329-63. . *See, e.g. id.* ¶¶ 79 ), 100 ). Frantz Reply Decl. at 3, *id.* ¶ 39.

Accordingly, Frantz's reply report is likewise not inconsistent with her original report. As set forth above, her opening report . She maintains that opinion in her reply report. Defendants' argument that she "disclaimed" this opinion in her deposition is a red herring. The answer Defendants cite referred to the fact that . Mot. at 24-25. That is true. However, it does not mean that the evidence that does exist (limited as it is by AMCA and Defendants' negligence) is not sufficient to show complete exfiltration. Moreover, this is yet another egregious example of Defendants attempting to capitalize on AMCA's negligent failure to maintain logs. In any event, Defendants' attempts to rewrite Frantz's reply report fail.

**B.**    **Worley's opinions are admissible because she is qualified, she uses reliable methods, and they will help the jury assess the harm suffered by Class members.**

Plaintiffs' damages are premised on Defendants' duty to mitigate the increased risk of harm to Class members caused by the AMCA breach. In support, Plaintiffs offer expert testimony from Amy Worley, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████    *See* Ex. 6 Declaration of Amy R. Worley ("Worley Decl."), ¶¶ 1-4. Each of Worley's opinions readily meet the requirements of Rule 702 and, therefore, are admissible.

**1.**    **Worley's opinions are admissible under Rule 702.**

**a.**    **Worley is indisputably qualified, and her testimony will assist the jury.**

Worley is well-qualified to offer her opinions, (*see* Worley Decl. ¶¶ 5-26), and Defendants do not contend otherwise. This "cuts in favor" of admitting her testimony. *W. Am. Ins. Co.*, 2008 WL 5244232, at *7; *Cricut, Inc.*, 2025 WL 593178, at *2 (same).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Worley Decl. ¶¶ 6-10. ████████████████████████████████████████████

████████████████████████████████████. *Id.* ¶¶ 13-16. ████████████

████████████████████████████████████████████████████████████████

██████. *Id.* ¶¶ 7-9, 19. ████████████████████████████████████████

████████████████████████████████████████████. *Id.* ¶ 18. ████████

████████████████████████████████████████████████████████████████

-22-

███████████████████████████████████████████████████. *Id.* ¶¶

17-19; Ex. 7 Rebuttal Declaration of Amy R. Worley ("Worley Reply Decl."), ¶ 32.

Worley's specialized knowledge in these areas will help the jury understand ███

███████████████████████████████████████████████████████

█████████████████████████████████████████████████ *See*

*Schiff*, 602 F.3d at 173 (whether testimony will assist the jury "is a question of relevance"). In

short, ███████████████████████████████████████

████████████████████████████████████████████.

*See Christoforetti v. Bally's Park Place, Inc.*, 2021 WL 3879074, at *5-6 (D.N.J. Aug. 31, 2021)

(expert qualified based on practical experience and training); *Nat'l Fire & Marine Ins. Co.,* 2024

WL 1683609, at *2-3 (same). She is well-qualified to offer her opinions, and they will assist the

trier of fact.

**b.      Worley's testimony is based upon sufficient facts and data.**

The facts or data relied upon by an expert are sufficient to support the expert's opinions

when "there are good grounds to rely on th[e] data to draw the conclusion reached[.]" *Montgomery*

*Cnty.*, 320 F.3d at 448. "The grounds for the expert's opinion merely have to be good, they do not

have to be perfect." *Citizens Bank, N.A. v. Nostrum Lab'ys, Inc.*, 2024 WL 3199951, at *8 (D.N.J.

June 27, 2024) (quoting *In re Paoli*, 35 F.3d at 744). It is only when the facts and data are "so

unreliable that no reasonable expert could base an opinion on them," that the opinion should be

excluded. *Montgomery Cnty.*, 320 F.3d at 448. Worley's opinions are grounded in reliable

evidence.

███████████████████████████████████████████████

███████████████████████████████████████████



Worley Decl. ¶¶ 63-65. [REDACTED] *Id.* ¶¶ 32-62. [REDACTED]

[REDACTED] *Id.* ¶¶ 35-40. [REDACTED]

[REDACTED] *Id.* ¶¶ 41-54. [REDACTED]

[REDACTED] *Id.* ¶¶ 54-55.[11]

[REDACTED]

[REDACTED]

[REDACTED] Ex. 8 Supplemental Declaration of Amy R. Worley ("Worley Suppl. Decl."), ¶¶ 1-15.[12] [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Worley Decl. ¶¶ 87-159.

Worley's opinions are thus grounded in a sufficient factual foundation and there is a rational connection between the facts and her opinions, which is all that is required. *See In re Paoli,*

---

[11] Experts may rely on "the reliable opinions of other experts." Fed. R. Evid. 702, Advisory Committee Notes (2000).

[12] Defendants do not contend that any aspect of Dr. Lee's analysis is inadmissible.

35 F.3d at 744. Any challenges to Worley's factual basis, go to weight of her opinions rather than admissibility. *See Rullo*, 520 F. Supp. 3d at 692.

> ### c.    Worley reaches her opinions using the same methodology she uses in the industry and that is prescribed by the U.S. government.

Because Worley's testimony is "nonscientific," a court's analysis of "reliability" focuses on "personal knowledge and experience of the witness and the methodology used will be applying the experience to the facts of the case." *Johnson*, 2024 WL 2933195, at *5 n.7 (collecting cases).



████████████████████████████████████████████████████

████████████████████████████ *See* Worley Decl. ¶¶ 68-76, 93-146; *see also* Worley Reply Decl. ¶¶ 4-6, 14-17; Ex. 9 Deposition of Amy R. Worley ("Worley Dep.") 131:3-132:12. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Worley Decl. ¶¶ 132-33, 147-60; Worley Reply Decl. ¶¶ 13, 28-33.

Based on the information provided by Dr. Lee and her research and experience, Worley

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ Worley Decl. ¶¶ 101-05, 119-23, 134-46; Worley Reply Decl. ¶ 28. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Worley Suppl. Decl. ¶¶ 5-7; Worley Decl.

¶¶ 166-71; Worley Reply Decl. ¶¶ 29-31. ███████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█. Worley Decl. ¶ 167; Worley Reply Decl. ¶ 29. ████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. Worley Decl. ¶

169; Worley Reply Decl. ¶ 31.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Worley Decl. ¶¶ 161-90; Worley Reply Decl. ¶¶ 32-33. ███████████████████

███████████████████████████████████████████████████████████. Worley

Decl. ¶¶ 172, 175-82, 187. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████ *Id.* ¶¶ 172, 183-84, 188-89.

Finally, █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* ¶¶ 93-100, 104-18, 124-31, 191-92; Worley Reply Decl. ¶¶ 41-

45. ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████ Worley Decl. ¶¶ 114, 167 n.202; Worley Reply Decl. ¶ 20.

In sum, Worley's opinions are based properly upon her considerable practical experience, OMB guidelines, and an extensive body of research and academic literature. Her opinions are, therefore, reliable.

### d.    Worley reliably applies her methodology to the facts.

The "fit" requirement examines whether the expert applied her experience reliably to the facts, ensuring opinions are well-reasoned, grounded in experience, and not speculative. *Prime Energy and Chem., LLC*, 625 F. Supp. 3d at 450; *Young* 2024 WL 5453789, at *1. Worley's opinions "fit" the facts of this case because she applied her methodology to the evidence appropriately. ████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████. Worley Decl. ¶¶ 63-65. ████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ *Id.* ¶¶ 167-69; Worley Reply Decl. ¶¶ 29-31. ████

███████████████████████████████████████████████████████████████

█████████████████████████████ Worley Decl. ¶¶ 172-90; Worley Reply Decl. ¶¶ 28-33.[13] Worley appropriately considered the evidence, and her opinions are tailored to identify and address the harm posed to Class members in this case.

---

[13] Additionally, she determined that the harm to Class members is ████████████████ ███████████████████████████████████████████████████████████████

2.      **None of Defendants' criticisms render Worley's opinions inadmissible.**

        a.      **Defendants misapply a "scientific" standard to Worley's "nonscientific" opinions.**

Defendants assert that each of Worley's opinions are unreliable because she did not offer testable hypotheses, does not point to scientific or peer-reviewed studies, does not perform statistical analysis, and does not apply scientific methods and procedures to reach her opinions. *See* Mot. at 31-37. But when examining expert testimony that is based on practical experience, rather than academic theories, "the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable because the reliability of testimony from a practical experience expert depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Christoforetti*, 2021 WL 3879074, at *6 (internal quotations omitted). For that reason, "[t]he methodology of proffered nonscientific testimony need not be subjected to rigorous testing for scientific foundation or peer review." *Crowley*, 322 F. Supp. 2d at 539; *Johnson*, 2024 WL 2933195, at *5 n.7 (collecting cases).

Defendants' cases, however, apply *Daubert* analyses that assess scientific, mathematical, or other academic testimony, rather than practical experience testimony. And the expert testimony in Defendants' cited cases suffered from serious methodological flaws not applicable to Worley's methodology. *See, e.g.*, *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2025 WL 1024048, at *18-19 (D.N.J. Apr. 7, 2025) (excluding expert economist who did not cite *any* academic literature supporting her opinion so that there was a "stark lack" of *any* basis for her methodology).[14]

---

█████████████████████████████████████████████████████████████████████. Worley Decl. ¶¶ 93-100, 104-18, 124-31; Worley Reply Decl. ¶¶ 41-45.

[14] *See also, e.g.*, *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025) (excluding ergonomics expert that did not test his theory on the product at issue); *Cotromano v. United Techs.*

An expert testifying based on practical experience, like Worley, offers reliable testimony when she can "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Penelow*, 2022 WL 94535, at *7 (quoting Fed. R. Evid. 702, Advisory Committee Notes (2000)); *see also Silipena v. Am. Pulverizer Co.*, 2024 WL 3219226, at *13 (D.N.J. June 28, 2024). It is thus sufficient that Worley ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████. *See W. Am. Ins. Co.*, 2008 WL 5244232, at *8 (admitting expert testimony based on practical experience, knowledge, and supported by scholarly articles); *see also Figueroa v. Boston Sci. Corp.*, 254 F. Supp. 2d 361, 368-69 (S.D.N.Y. 2003) (same); *Integra Lifesciences Corp. v. HyberBranch Med. Tech., Inc.*, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018) (same). None of Defendants' criticisms of Worley's methodology have merit.

---

*Corp.*, 2018 WL 2047468, at *18 (S.D. Fla. May 2, 2018) (excluding expert's damage calculation because it was "fundamentally flawed" and expert admitted his methodology was not rigorous or reliable); *Kuhar v. Petzl Co.*, 2018 WL 7571319, at *4-9 (D.N.J. Nov. 27, 2018) (excluding engineering expert's testimony because there was no support for his conclusions, no facts or data to support his opinions, and they were unsupported by engineering standards); *Lee-Bolton v. Koppers, Inc.*, 319 F.R.D. 346, 376 (N.D. Fla. 2017) (excluding statistical risk calculation because it ignored actual studies done in the area); *Alberts v. Bumgardner*, 2017 WL 3705799, at *5 (D.N.J. Aug. 25, 2017) (excluding expert medical testimony where expert failed to support opinion with "any underlying support or reasoning"); *E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802, at *11 (D.N.J. Sept. 26, 2014) (accounting expert was unqualified and relied upon no data of any type to support his conclusion); *McHugh v. Jackson*, 2010 WL 1875578, at *3 (D.N.J. May 7, 2010) (medical expert failed to conduct differential diagnosis to rule out alternative causes); *Feit v. Great-W. Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 640-41 (D.N.J. 2006) (medical expert failed to provide any rationale or describe any methodology for his net opinion); *Player v. Motiva Enters. LLC*, 2006 WL 166452, at *7-8 (D.N.J. Jan. 20, 2006) (excluding expert appraiser's diminution of value opinion because he was unqualified and conducted evaluation without any real standards).

**b.**    <u>**Worley's opinions are reliable.**</u>

**i.**

Defendants argue incorrectly that Worley's ███████████████████████

███████████████████████████████████████████

█████████. *See* Mot. at 28. Not so. ████████████████████

███████████████████████████████████████████

███████ Worley Reply Decl. ¶¶ 8-20. ████████████████

████████████████████████████ *Id.* ¶¶ 14-15. █████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████. *Id.* ¶ 15. ████████████

███████████████████████████████████████████

████████████████████████████████[15] *Id.*

¶ 13; Worley Dep. 118:16-120:17.

Worley's opinions are thus not impermissible "net opinions" because they are supported by research and literature, government guidelines, and her expertise and experience in the field. *See W. Am. Ins. Co.*, 2008 WL 5244232, at *8 (rejecting "net opinion" argument where expert's qualifications were not challenged and expert's opinions were supported by scholarly articles and experience); *see also Buccheri v. Nogan*, 2019 WL 3712188, at *9 (D.N.J. Aug. 6, 2019); *Silipena*, 2024 WL 3219226, at *13-14 (same). And Worley's methodology for assessing the increased risk

---

[15] Defendants claim that Worley "shifted positions" by testifying that Class members' risk of harm increased by the same amount and stating in her reply that the precise amount by which each Class members' risk increased does not matter. Mot. at 28 n.16. But both are true. Class members' baseline risk increased by the same amount and, even assuming it increased by different amounts, it does not alter her opinion. *See* Worley Reply Decl. ¶ 13.

of harm to Class members is not based upon mere "say so." *See* Mot. at 30-31. ███████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Worley Decl. ¶¶ 132-33, 147-

60; Worley Reply Decl. ¶¶ 5-6, 14-15. Her methodology is thus reliable. *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 152 (1999) ("same level of intellectual rigor that characterizes the

practice of an expert in the relevant field").

      **ii.**    ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████ Worley Reply Decl. ¶¶ 41-45; Worley Decl. ¶¶ 106-18, 124-31;

Worley Dep. 265:15-25, 266:4-268:16. ████████████████████████████████████

████████████████████████████████████████████████████████████████. *See*

Mot. at 32. █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████ Worley Dep. 131:3-132:12. █████████████████████████████

████████████████████████████████████████████████████████████████████████

██████ Worley Reply Decl. ¶ 44; Worley Decl. ¶¶ 124-31. Contrary to Defendants' contentions,

no more is required. *See* Mot. at 32.

      Defendants nonetheless assert that Worley's methodology is unreliable because she did not

perform a statistical analysis of ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ . Worley Dep. 221:22-223:2, 260:19-265:25. ███



*Id.* 251:12-252:16.

Worley Reply Decl. ¶¶ 16-17.

That Worley's methodology is not based upon scientifically-tested data or statistical evidence does not render her opinion inadmissible. *See Crowley*, 322 F. Supp. 2d at 539. At most, it goes to the weight of her testimony and is an issue for cross examination. *Figueroa*, 254 F. Supp. 2d at 368-69.

### iii.



Defendants misstate and oversimplify Worley's methodology to

. *See* Mot. at 35-37. Worley did not simply perform a Google search

*Id.* at 36-37. Worley used her

substantial experience—

Worley Reply Decl. ¶ 32.

. *Id.* ¶¶ 29-31;

Worley Decl. ¶¶ 172-90.

. Worley Decl. ¶ 165, n.201.

███████████████████████████████████████████████████████████. Worley Decl. ¶ 172; Worley Reply Decl. ¶ 32.

Worley's nonscientific methodology does not need to be based upon a testable hypothesis to be reliable. *States v. Fernwood Hotel & Resorts*, 2014 WL 198568, at *3 (M.D. Pa. Jan. 15, 2014) (permitting expert to testify based on his "extensive experience"); *see also Crowley*, 322 F. Supp. 2d at 539. But, even so, Worley's methodology *is* testable. Any expert with Worley's level of experience and expertise can analyze ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████. Defendants' choice not to undertake this analysis with their own experts and propose ███████████████ does not render Worley's opinion subjective or unreliable.

### c. Defendants are wrong to claim that Worley did not consider certain "facts."

Defendants repeatedly assert that Worley's testimony should also be excluded because she purportedly failed to consider "facts" that Defendants' expert, Professor Lorin Hitt ████████

███████████████████████████████████████████████████████████

*See* Worley Reply Decl. ¶ 2 ██████████████████████). If this were true, it would go only to "the weight of [her] testimony." *Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452, 462 (D.N.J. 1999); *see also Nichols v. Morrisey*, 2024 WL 871322, at *2 (E.D. Pa. Feb. 29, 2024) (what a party's expert believes about another party's expert is "not the relevant inquiry"). But Defendants are incorrect in any event.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. *See* Mot. at 29-30. █████████████████████████████████████████

-33-

███████████████████████████████████████████████████████████
████████████████████████████████████████████. Worley Decl. ¶¶ 129-31; Worley

Reply Decl. ¶ 42; Worley Dep. 118:16-127:4; *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146,

156-57 (3d Cir. 1999) (explaining "suggested alternative causes (once adequately addressed by

plaintiff's expert)" affect the weight and not the admissibility expert testimony). ████████

███████████████████████████████████████████████████████████

████████████████████████████. *See, e.g.*, Worley Reply Decl. ¶ 33 (██████████

███████████████████████████████████████████████████████████

████████████████████████); *Id.* ¶¶ 34-40 (██████████████████████

████████████████████████████████████████████████); *Id.* ¶

38 & Worley Dep. 60:4-61:16 (█████████████████████████████

████████████████████).

████████████████████████████████████████████████████

█████████████████████████████████████████████████████ Mot. at

32-33 (quoting Hitt Decl. ¶ 172). ████████████████████████████

████████████████████████████████ (Worley Decl. ¶ 141), ██████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████. *Id.* ¶¶ 43,

167, n.202; Worley Reply Decl. ¶ 20.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



██████. *See Opris v. Sincera Reproductive Med.*, 2022 WL 1639417, at \*7 (E.D. Pa. May 24, 2022) (collecting cases). ████████████████

██████ Worley Reply Decl. ¶ 27.[16]

### d. Worley's opinions "fit" the facts of this case and will assist the jury.

The "fit" requirement requires the expert's testimony to be relevant for the purposes of the case and to assist the trier of fact. *W. Am. Ins. Co.*, 2008 WL 5244232, at \*7. The standard for "fit" is "not that high." *In re Paoli*, 35 F.3d at 745. It "requires that expert opinions . . . apply principles or methods to the facts of the case and produce conclusions that have a debatable connection to the question in issue." *United States v. Ford*, 481 F.3d 215, 220 n.6 (3d Cir. 2007). Worley's opinions "fit" the facts of this case, and Defendants are wrong to assert otherwise. Mot. at 31-32 & 39-40.

1.

Defendants first assert that Worley's ██████ opinion does not "fit" this case because the Court has previously held that the risk of future harm does not confer standing. Mot. at 31-32. As explained in detail in Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Class

---

[16] ████████████████████. Worley Reply Decl. ¶¶ 21-27.

Certification (*see* Reply Br. at 7-19), Defendants misconstrue the Court's standing analysis. All Class members have standing to sue based upon the increased risk of harm caused by the AMCA breach. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *6-9 (D.N.J. Dec. 16, 2021); *see also Clemens*, 48 F.4th at 154. Actual misuse is not required and, in any event, Defendants' claim that the risk has "never materialized" and is unlikely to materialize prior to trial is a disputed issue of fact. As Worley explains, ███████████

███████████████████████████████████████████████████

███████████████████████████████ Worley Decl. ¶¶ 41-55, 106-18. Defendants' inappropriate attempt to relitigate standing does not warrant exclusion.

### 2. Worley's purported failure to consider Defendants' criticisms does not render her opinions a bad "fit" for this case.

Defendants also assert that Worley's purported (but not actual) failure to consider the various criticisms levied by Defendants above render her opinions a poor "fit" for this case. For the reasons set forth above, however, each of Defendants' criticisms (which Worley addresses and explains do not alter her conclusions), at most, go toward the weight to be assigned to Worley's opinions and do not undermine their admissibility. *See Buccheri*, 2019 WL 3712188, at *9; *see also Voilas*, 73 F. Supp. 2d at 462. ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ *See Schiff*, 602 F.3d at 173.

### 3. ████████████████████████████████████

Defendants' final argument is that Worley's ████████████ opinion will not assist the

trier of fact because

Mot. at 38. Defendants are incorrect.

. *See United States v. Marilao*, 1991 WL 193451, at \*7 (E.D. Pa. Sept. 24, 1991) (allowing expert testimony where subject matter was "not obvious to a layperson"). Worley's ▮▮▮▮▮▮▮ opinion is thus appropriate to assist the trier of fact.

## C.    Witt is a qualified and reliable damages expert.

Scott Witt is exceptionally well-qualified to offer an actuarial damages analysis in this case. He is a Fellow of the Society of Actuaries and a Member of the American Academy of Actuaries, with degrees in mathematics, computer science, and statistics. Over a 30-year career, he has worked on life insurance pricing, risk modeling, and present-value calculations of future benefits. He has served as an expert in numerous insurance and class-wide actions—including testifying in at least four class action trials—and has repeatedly presented class-wide damages methodologies accepted by courts. *See* Ex. 10 (Witt Report), ¶¶ 6-10; Ex. A (CV). In fact, courts across the country have repeatedly declined efforts to have Witt's testimony excluded, rejecting many of the same arguments Defendants raise here. *See, e.g.*, *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 256 (D. Ariz. 2022); *Whitman v. State Farm Life Ins. Co.*, 2021 WL 4264271, at \*10 (W.D. Wash.

Sept. 20, 2021); *Jaunich v. State Farm Life Ins. Co.*, 2021 WL 5054461, at *4 (D. Minn. Nov. 1, 2021).[17]

In this case, Plaintiffs retained Witt as an actuarial and damages expert to calculate the present-value cost of credit monitoring and identity-protection services over time. To perform that task, Witt followed a straightforward actuarial approach. He first took costs ($8.99 per month for Tranche 1, $12.27 per month for Tranche 2) provided by Ms. Worley. Witt expressly noted that he is relying on Worley's recommendation as an input, and that he can "easily and mechanistically" recalculate damages if a different cost per individual were assumed. Witt Report, ¶¶ 15, 16. Witt then calculated damages under four alternative durations provided by counsel: 3, 5, 7, and 10 years.

Witt then used his expertise to apply mortality probabilities to ensure that damages are paid only for as long as Class members are likely to be alive (since a deceased person would not need ongoing credit monitoring). Specifically, Witt used the U.S. Life Tables (2021), a national mortality database published by the National Vital Statistics Reports. Because the sex of most class members was unknown (62% unspecified), Witt applied male mortality rates to everyone—a deliberately conservative choice that shortens life expectancy and therefore lowers damages. He next applied a 5% annual discount rate—conservatively above contemporaneous Treasury yields—explaining that this rate is conservative because a higher discount rate lowers present-value damages.

---

[17] *See also, e.g.*, *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 544-47 (W.D. Tex. 2020); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 299 (N.D. Cal. 2020); *Larson v. John Hancock Life Ins. Co.*, 2017 WL 4284163 (Cal. Super. Ct. Mar. 23, 2017); *see also Vogt v. State Farm Life Ins. Co.*, 2018 WL 4937330, at *3-6 (W.D. Mo. Oct. 11, 2018) (rejecting post-trial challenges to Witt's damages model), *aff'd*, 963 F.3d 753 (8th Cir. 2020).

Witt then applied these factors to each age cohort (using age-distribution data provided by Dr. Lee) to calculate total Class damages for each Defendant, tranche, and duration. In essence, he computed the present-value cost per person by age and multiplied it by the number of Class members in that age group. His results appear in the tables and exhibits to his report.

Witt's testimony fits the issues in this case exactly. The central damages question for the proposed Classes is the cost of credit monitoring and identity protection over time, and Witt provides a reliable, actuarially grounded method to quantify those costs if liability is found. His methodology rests on core actuarial techniques that he is eminently qualified to perform.

### 1.    <u>Reliance on Ms. Worley's inputs is proper under Rule 703.</u>

Defendants argue that Witt's damages opinion must be excluded because it "hinges on" Worley's allegedly inadmissible opinions regarding ███████████████████. But this misstates both Witt's role and the governing law. Witt was retained to perform a present-value damages calculation—not to assess cybersecurity risk or determine the necessity or duration of mitigation products. Rule 703 permits experts to rely on facts or data supplied by others, including fellow experts, so long as such reliance is typical in the expert's field. That is precisely what occurred here: Witt, a credentialed actuary, applied standard actuarial techniques to inputs provided by a subject-matter expert, just as courts routinely permit. *See Callas v. Callas*, 2020 WL 3468084, at *7 (D.N.J. June 25, 2020) ("while experts may not simply 'parrot' the ideas of other experts, they are permitted to rely on materials used by other experts in developing their own opinions") (cleaned up); *see also Swainson v. City of Philadelphia*, 2025 WL 1830972, at *5 (E.D. Pa. July 2, 2025).

Witt does not "parrot" or adopt Worley's opinions as his own; he treats them as inputs— no different than a life-care planner relying on physician diagnoses or a statistician relying on a survey expert's data collection. Even if Worley's ██████ opinions were somehow deemed

inadmissible, the proper remedy would not be to exclude Witt, but simply to have him apply his model to whatever alternative inputs the evidence supports. *See, e.g.*, *Bally*, 335 F.R.D. at 299 (N.D. Cal. 2020) ("These arguments largely turn on factual disputes over which inputs Witt should use in his model, rather than flaws in the model itself, and thus do little to undermine the reliability of the model."). Witt's calculations are mechanical and flexible, and he can recompute damages using any cost, product, or duration requested. Witt Report, ¶¶ 15, 16; Ex. 11 Witt Dep. 143:3-10. Excluding him for accepting inputs from a qualified expert would impermissibly convert a disagreement over assumptions into a methodological challenge, contrary to *Daubert* and Rule 702. Because Witt's methodology is reliable and reproducible regardless of the inputs supplied, Defendants' challenge provides no basis to exclude his testimony.

### 2. Witt's actuarial assumptions are reasonable and scientifically grounded.

Defendants next attack the specific assumptions Witt used—primarily his mortality table and discount rate—calling them "arbitrary" or "untethered to the facts." Mot. at 42, 45. But Witt's choices were well within the mainstream of actuarial science, and any disputes over their exactitude go to the weight of his opinion, not its admissibility.

First, Defendants' claim that Witt "gave no justification" for using the U.S. Life Table ignores both the record and the nature of actuarial practice. *Id.* at 42. Life tables are foundational tools in the actuarial field—developed by government experts, peer-reviewed, and universally accepted for modeling life expectancy. The U.S. Life Table, in particular, is an official federal publication that is self-authenticating and admissible in federal court. *See* Fed. R. Evid. 902; *Russell v. City of Wildwood*, 428 F.2d 1176, 1182 (3d Cir. 1970) ("in New Jersey[,] life expectancy and mortality tables are admissible, when relevant and material, for the purposes of showing the average expectancy of life and the present value of the alleged loss of income based on that

expectancy"). Witt's reliance on the 2021 U.S. Life Table is entirely consistent with standard actuarial methodology. That "data-breach damages" may be a newer application of actuarial math is irrelevant. Witt Dep. 213:5-24. *Daubert* does not require a published article for every novel fact pattern; it requires that the underlying method be reliable. *See Bally*, 335 F.R.D. at 297 ("The subject of Witt's testimony is technical, not scientific, and is highly specific to the insurance policy here. This calls for a more particularized analysis of reliability than rote application of the *Daubert* factors."). Using life expectancy to value a future stream of costs is among the most established and uncontroversial principles in the actuarial field.

Defendants' secondary complaint—that Witt should have used a "tailored" mortality table for these proposed Classes—fares no better. The 2021 U.S. Life Table is a standard, authoritative, and recent mortality source covering all ages. There is no recognized "subpopulation" table for "individuals with medical debt in collections," nor any actuarially valid way to fabricate one. Defendants' suggestion that Witt should have generated a custom mortality model from the CHAMP database is not credible. CHAMP does not contain the longitudinal clinical data that mortality modeling requires (*e.g.*, comorbidities, severity, progression, treatment history, functional status). Attempting to derive life expectancy from a limited set of diagnosis codes, test identifiers, or billing categories would be highly speculative and methodologically indefensible.

In fact, Witt testified that he selected the general life table in part because it was a more conservative option than available alternatives (such as insured populations). Witt Dep. 90:18-22; 220:15-221:1.

Second, the 5% discount rate Witt used is well within the range of standard actuarial assumptions, roughly matching prevailing Treasury yields. In support, his report cites the then-current U.S. Treasury constant maturity yields for 1-10 year bonds (ranging from 4.0-4.3% in

March 2025). Thus, 5% is a reasonable approximation of the time value of money over the claim period, conservatively above risk-free rates. Witt even testified that he rounded up to 5% "for the sake of simplicity and a little bit of conservatism," meaning he erred on the side of a higher rate that reduces the present-value damages. Witt Dep. 181:25-183:6. This choice reflects professional judgment and a deliberate effort to avoid inflating damages. Defendants offer no authoritative source suggesting that a higher rate would be more appropriate, nor do they present their own expert to support an alternative. At most, Defendants' disagreement with Witt's selected methodology or discount rate affects the weight of Witt's opinion, not its admissibility under Rule 702. *See Jaunich*, 2021 WL 5054461, at *4 (no court had found Witt's damages methodology lacking and finding that defendant's arguments were "better suited for cross examination").

Next, Defendants wrongly contend that Witt's damages model is unreliable because it does not incorporate hypothetical bulk-purchasing discounts or adjust for Class members who may already have credit monitoring. This critique misunderstands the governing measure of damages. Witt was asked to quantify the loss to *individuals*—the market value of the monitoring services each Class member would need to purchase to protect themselves—not the cost to Defendants of procuring those services in bulk. Retail price is the correct measure of individual harm because Class members cannot negotiate enterprise-level discounts on their own. Whether Defendants might secure a lower rate says nothing about what Plaintiffs lost.

In any event, Witt's model is fully capable of incorporating alternative cost figures. If Defendants believe a bulk rate—or any other price—is the appropriate input, they are free to present evidence of that figure, and Witt can rerun the calculation. Similarly, Defendants' argument that "many putative class members…already have appropriate mitigation products" is entirely speculative. Mot. at 44. While Defendants may attempt to support that claim with evidence

-42-

if appropriate, it does nothing to undermine the reliability or applicability of Witt's methodology. *See, e.g.*, *Bally*, 335 F.R.D. at 299.

>3. **The 10-Year scenario was included only at Counsel's request to demonstrate the flexibility of Witt's model, not as a substantive damages claim.**

Defendants' argument that Witt's inclusion of a 10-year damages scenario renders his opinion unreliable misrepresents the purpose of that calculation. Mot. at 44-45. Witt was asked by Counsel to model damages across multiple durations—3, 5, 7, and 10 years—not to assert that any specific timeframe was factually required. Witt Dep. 97:16-98:13. The 10-year scenario serves only to demonstrate that the model can accommodate different durations, not to expand the scope of the damages claim. Nor is there any "analytical gap." Mot. at 44. The methodology—multiplying a monthly cost by an annuity factor and discounting to present value—is identical across all scenarios; the only variable is duration. Running the same calculation for a longer period does not alter the method or call its reliability into question. It simply produces a different output using the same formula. *See Spegele*, 336 F.R.D. at 544-47 (rejecting argument that Witt's model was unreliable and finding the defendant's argument was not "what *Comcast* and the Fifth Circuit mean by requiring a 'fit' between the proposed damages model and the theory of liability").

Importantly, Witt's report does not suggest that an additional 10 years of monitoring, instead of 15, will be presented to the jury or adopted by Plaintiffs. Only the duration the Court finds supported by the evidence will be submitted at trial. Because the 10-year figure will not be presented to the jury as a standalone damages measure, it cannot create any "fit" problem under Rule 702.

>4. **Witt's testimony will assist the jury and involves specialized knowledge beyond a layperson's capacity.**

Defendants contend that Witt's calculations are so "mechanical" they do not constitute

expert testimony. Mot. at 46. That argument mischaracterizes both the complexity and value of his work. Witt's task was far from simple arithmetic—it was a Class-wide actuarial analysis involving age-specific survival probabilities, discounting future monthly costs, and aggregating damages across millions of individuals. This is not something a lay jury could perform unaided. The fact that Witt can execute these calculations "mechanistically" is a reflection of his expertise, not evidence that no expertise is required. Indeed, Witt's model accounts for differences in age, survival probabilities, cost variations across tranches, and demographic distributions across defendants—yielding multiple outcome figures in the billions. Asking a jury to derive those figures from scratch would be impractical and prone to error. *See McClure*, 341 F.R.D. at 256 ("A normal juror would not understand the calculations necessary to quantify the [alleged insurance overcharge], and [Witt's] testimony would be helpful to the trier of fact").

Moreover, Witt's testimony provides transparency and accountability. Without him, the jury would be left with a chart of numbers in closing argument, without any opportunity to hear how those numbers were derived or to evaluate their reliability. Witt's presence allows Defendants to cross-examine the methodology and assumptions, which is precisely what expert testimony is for. Defendants' motion undercuts their claim that Witt's work is trivial: they devote multiple pages to disputing his mortality assumptions, discount rate, and input sources. Mot. at 40-46. If Witt were merely performing simple arithmetic, there would be no assumptions to dispute. His actuarial modeling provides the jury with a rigorous, reliable framework for understanding aggregate damages—something they cannot reasonably construct on their own.

**D.** **<u>Anolik's opinions are admissible because she is qualified, uses reliable methods, and will help the jury understand the industry standards applicable to Defendants' oversight of AMCA and whether they met those standards.</u>**

Plaintiffs' negligence per se claims for violating HIPAA are premised on Defendants' failure to oversee AMCA, their "Business Associate," and thus breaching the duty that they owed

uniformly to Class members. In support, Plaintiffs offer expert testimony from Sharon Anolik,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ *See generally* Ex.

12 Declaration of Sharon Anolik ("Anolik Decl."). Anolik's opinions readily meet the

requirements of Rule 702 and, therefore, are admissible.

### 1.  Anolik's opinions are admissible under Rule 702.

#### a.  Anolik is indisputably qualified.

Anolik is extensively qualified to offer her opinions, (*see* Anolik Decl. ¶¶ 1-8, Ex. A (CV)),

a fact that Defendants do not dispute. Accordingly, her uncontested qualifications "cut[] in favor"

of admitting her testimony. *W. Am. Ins. Co.*, 2008 WL 5244232, at *7.

Anolik has over two decades of experience in the healthcare privacy field, serving as the

Chief Privacy Officer for Blue Shield of California (a large health insurance provider), the Vice

President of Global Privacy Risk and Strategy at McKesson (a large healthcare company), and as

chair and vice-chair of the Compliance, Audit, and Privacy Committee of the Board of Directors

for El Camino Hospital. *Id.* ¶¶ 4-5. Additionally, since founding her own privacy consulting firm,

Privacy Panacea LLC, in 2014, she has advised clients like Alto Pharmacy, Tandem Diabetes, the

AARP, Lyra Health, and Mobella Health (among many others) on privacy programs, and privacy

and healthcare industry standards. *Id.* ¶ 1. She also conducts due diligence from a privacy

perspective "on target companies for potential mergers and acquisitions, providing her the

opportunity to review hundreds of company privacy programs (including their materials and

safeguards)." *Id.* She was appointed as a special government employee who provided advice to the

Secretary of the Department of Homeland Security on "programmatic, policy, operational,

administrative, and technological issues within the DHS relating to personally identifiable information." *Id.* ¶ 2. Anolik also been a sought-after speaker and presenter at health care industry and privacy industry conferences for almost 25 years. *Id.* Ex. A (CV).

Anolik's specialized knowledge regarding healthcare industry standards in overseeing vendors like AMCA who hold PHI will help the jury understand whether Defendants' actions met the standard of care. *See, e.g., In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 2013 WL 1558690, at *10 (D.N.J. Apr. 10, 2013) (admitting testimony of expert who "discussed the specific regulatory procedures and regulations pharmaceutical manufacturers have to comply with, including procedures and regulations related to FDA approval, labeling, postmarketing surveillance, and reporting requirements"). Put simply, Anolik is an experienced healthcare privacy practitioner with expertise in assessing whether a company properly oversaw its vendors after providing them with PHI. She is well-qualified to offer her opinions, and they will assist the trier of fact.

### b.    Anolik's testimony is based upon sufficient facts and data.

The facts or data relied upon by an expert are sufficient to support the expert's opinions when "there are good grounds to rely on th[e] data to draw the conclusion reached[.]" *Montgomery Cnty.*, 320 F.3d at 448. Anolik's testimony is grounded in reliable evidence.

First, Anolik explains ███████████████████████████████

████████████████████████████████████████████████

███████████████████████████████. *Id.* ¶ 11.[18] ████████

_____

[18] ████████████████████████████████████████████



*Id.* ¶¶ 17, 164-66, nn.24, 26.

*Id.* ¶ 161; Ex. 13 Reply Expert Report of Sharon Anolik ("Anolik Reply"), ¶ 35.

Anolik Decl. ¶¶ 32-41.[19]

*Id.* ¶¶ 61-62.

*Id.* ¶ 79.

*Id.* ¶ 111.

*Id.* ¶ 206; *see generally id.* ¶¶ 205-50.

*Id.* ¶ 17.

[19]

█████████████████████████████████████████████████████████████

████████████ *Id.* ¶ 252.

Anolik's opinions are thus grounded in her extensive review of the discovery record and the applicable industry standards, which easily satisfies the requirement that there be a rational connection between her facts and opinions. *See In re Paoli*, 35 F.3d at 744. Thus, challenges to Anolik's factual bases, go to weight, not admissibility. *See Rullo*, 520 F. Supp. 3d at 692; *Reilly v. Home Depot U.S.A., Inc.*, 2024 WL 4025041, at *2 (D.N.J. June 11, 2024).[20]

c.    <u>Anolik reaches her opinions using the same methodology she employs as an industry practitioner.</u>

When considering the admissibility of expert testimony based on practical experience, "the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable." *Fernwood Hotel and Resort*, 2014 WL 198568, at *3. Instead, the reliability of the testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* "Cases where courts have allowed testimony based on the experience of the expert often involve testimony as to custom and practice that has been acquired via such experience." *Equinox Props., LLC*, 2023 WL 5447279, at *4. Other courts have permitted experts on HIPAA, holding that "it is not uncommon for courts to allow expert testimony on the subject

---

[20] Defendants' introduction incorrectly argues that Anolik submitted an updated list of Materials Considered because her opinions were "lacking in support." Mot. at 1. This is patently untrue. Counsel made an administrative error in compiling Anolik's Materials Considered exhibit, which they promptly corrected to contain all of the materials that Anolik relied upon (and explained as much to Defendants' counsel). This error was Counsel's, not Anolik's, and Anolik's Amended Materials Considered List is 18 pages long (the original, incorrect version was 8 pages long). There is no serious argument that Anolik failed to rely on sufficient materials.

-48-

matter at issue here." *Maude v. City of Philadelphia*, 507 F. Supp. 3d 593, 602-03 (E.D. Pa. 2020).[21]



Anolik Decl. ¶¶ 1-4.

*Id.* ¶ 165 (citing Anolik CMS & NIST Presentation).

*Id.* ¶ 17.

---

[21] *See also MacGlashan v. ABS Lincs KY, Inc.*, 2015 WL 403067, at *2 (W.D. Ky. Jan. 28, 2015) (permitting expert to "testify to factual issues such as whether certain conduct violates HIPAA"); *Duling v. Domino's Pizza, LLC*, 2015 WL 3407602, at *11 (N.D. Ga. Jan. 14, 2015) (experts permitted to opine on relationship between HIPAA and applicable standard of care); *Chopourian v. Catholic Healthcare W.*, 2011 WL 6396500, at *2 (E.D. Cal. Dec. 20, 2011) (expert on how defendant handles HIPAA issues could testify on "defendant's policies regarding patient confidentiality and information" and it "forays into HIPAA regulations" will not confuse jury).



*Id.*

#### d.    Anolik reliably applies her methodology to the facts.

The "fit" requirement asks whether the expert reliably applied her experience to the facts, ensuring opinions are well-reasoned, grounded in experience, and not speculative. *Prime Energy*, 625 F. Supp. 3d at 450. There must be "a reasonable link between the information and procedures they use and the conclusions reached." *In re Johnson & Johnson*, 509 F. Supp. 3d at 187. Anolik's opinions "fit" the facts of the case.

Anolik appropriately applied her methodology to the evidence. She reviewed Anolik Decl. ¶ 252.

. Accordingly, Anolik appropriately and extensively considered the evidence, and her opinions are tailored to identify the relevant industry standards applicable to Defendants and to analyze whether Defendants met those industry standards.

Anolik's opinion is thus the kind of industry analysis that courts regularly admit to assist juries in assessing whether Defendants acted negligently.

#### 2.    None of Defendants' specific attacks on Anolik's opinions render them inadmissible.

#### a.    Anolik does not offer legal opinions.

The parties agree that experts may opine on "customs and business practices" in a particular industry, Mot. at 47, and that is precisely what Anolik does. Contrary to Defendants' argument,

she does not usurp the Court's role as the sole expert on the law. Rather, her testimony explains

███████████████████████████████████████████████████████████████████

██████ .[22] ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Anolik Decl. ¶¶ 18-41, Anolik Reply ¶¶ 8-51. ████████████████████████

████████████████████████   Anolik Decl. ¶¶ 52-253, Anolik Reply ¶¶ 86-93.

### i.   **Courts permit testimony like Anolik's routinely.**

This is precisely the sort of helpful testimony that courts regularly permit from experts on industry standards such as Anolik. For example, in *Wolfe v. McNeil-PPC, Inc.*, the court permitted experts to testify about "regulation-related documents" which "are complicated and confusing to a person lacking a background in science or medicine" because it would "help the jury comprehend those documents and will highlight the important aspects of the data, such as what [defendant] was obligated to report to the FDA." 881 F. Supp. 2d 650, 660 (E.D. Pa. 2012). (There, the court did not permit the experts to state "such things as 'defendants' conduct was negligent'" or that a warning label was "'unreasonably dangerous.'" *Id.* at 662. Anolik likewise does not cross such lines.)

Numerous other courts permit testimony from industry experts.[23] For example, in *First National State Bank v. Reliance Elec. Co.*, the Third Circuit upheld an expert's ability to testify on

---

[22] In a footnote, Defendants argue that any testimony Anolik gives about actual industry practices is itself irrelevant because the jury is tasked with determining whether Defendants "failed to exercise reasonable care," not whether Defendants failed to adhere to industry standards. Mot. at 49 n.21. But Anolik's opinion regarding the common practice in the industry will assist the jury in determining whether Defendants exercised reasonable care.

[23] The Third Circuit has provided guidance, acknowledging that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006).

the established custom in the banking industry. 668 F.2d 725, 731 (3d Cir. 1981) (per curiam). And likewise, in *United States v. Leo*, an expert was permitted to testify on "how firms such as [defendant] operated when performing contracts governed by the [Armed Services Procurement] Act." 942 F.2d 181, 197 (3d Cir. 1991). Put simply, courts regularly allow industry practice experts to discuss the impact of governing regulations on an industry. *See, e.g.*, *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 2019 WL 4751883, at *5 (E.D. Pa. Sept. 30, 2019) (former FDA commissioner was "permitted to testify about FDA regulations generally and how [regulatory] violations occur on a spectrum, including how violations range in severity and provide examples of how cGMP violations fall on that spectrum"); *In re Fosamax*, 2013 WL 1558690, at *10 (admitting testimony of expert who "discussed the specific regulatory procedures and regulations pharmaceutical manufacturers have to comply with, including procedures and regulations related to FDA approval, labeling, postmarketing surveillance, and reporting requirements").[24]

---

The two sides of the line are epitomized in this case between Defendants' expert, ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[24] *See also, e.g.*, *Swartzendruber v. Sentara RMH Med. Ctr.*, 2025 WL 2655986 (W.D. Va. Sept. 16, 2025) (admitting expert testimony of nurse regarding HIPAA's requirements for industry billing practices); *Vitamin Energy, Inc. v. Evanston Ins. Co.*, 2023 WL 5608394, at *4 (E.D. Pa. Aug. 29, 2023) (permitting expert to testify about "insurance industry customs, practices, and accepted standards," but noting he cannot "frame his opinions as legal conclusions"); *Maude*, 507 F. Supp. 3d at 602-03 (permitting expert to testify about "Defendant's confidentiality polices, including adopted HIPAA provisions"); *In re: Tylenol (Acetaminophen) Mkt'g, Sales Practices, & Prods. Liab. Litig.*, 2016 WL 4039324, at *5 (E.D. Pa. July 27, 2016) (permitting testimony on "statutory framework, explaining the history of the monograph system and acetaminophen's place within that framework").

The general rule permitting industry testimony like Anolik's applies with force on these facts. This is so because a jury would otherwise struggle to understand the complicated set of requirements, customs, practices, and expectations governing HIPAA-regulated entities at issue here. *See, e.g.*, *In re Wellbutrin SR Antitrust Litig.*, 2010 WL 8425189, at *3 (E.D. Pa. Mar. 31, 2010) ("[C]ourts recognize that where expert testimony concerns the interpretation or explanation of complex areas of law difficult for a layperson to understand, expert testimony may be proper.") (collecting cases);

The cases Defendants cite are not to the contrary. In *Taylor v. SEPTA*, the court barred the report of an expert who confined his opinions "solely" to what governing regulations "required" as offering an impermissible "legal conclusion about the scope of discretion that those regulations afford[ed]" the defendant, but *did* allow the admission of the same expert's deposition testimony "about how employers in the real world exercise their discretion under the Regulations." 2024 WL 3205209, at *7 (E.D. Pa. June 27, 2024). And in *Penelow*, the court admitted the testimony of multiple compliance experts who "determine[d] whether [defendant] maintained an effective compliance program by reviewing its compliance policies," and "walk[ed] through [the defendant's] regulatory procedure, applie[d] the PhRMA Code and OIG recommendations, [and] compare[d] [defendant's] policies to the industry standard," while only striking narrow testimony that the defendants acted "unlawfully" or in "violation" of governing regulations. 2022 WL 94535, at *14-19. Like the experts above, Anolik's testimony is admissible.

### ii.    Defendants mischaracterize two of Anolik's opinions, including by truncating a key quote.

Defendants' motion does not meaningfully engage with the substance of Anolik's opinions, instead describing materially different opinions that might well be inadmissible.

**Opinion 1 The relevant requirements and industry standards**: To attack her first opinions, Defendants cite a fragment of one answer she gave in her deposition, Ex. 14 (Anolik Dep.) 25:4-5, to argue that Anolik ███████████████████████████ Mot. at 47. But in that very answer, █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

*United States v. Univ. Rehab. Servs., Inc.*, 1996 WL 297575, at *10 (E.D. Pa. May 31, 1996) (same).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Id.* at 21:2-22. Defendants point to no other portions of Anolik's first opinion that they contend is somehow a legal conclusion, simply their clipped deposition answer.

**Opinion 2 Whether Defendants met the requirements and industry standards**: ██

███████████████████████████████████████████████████

██████████████████████ Mot. at 48. ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████.[25] ██████████████

███████████████████████████████████████████████████

██████████████████, Anolik Decl. ¶¶ 54-73 (Quest), ¶¶ 74-76 (Optum), ████████████ *id.* ¶¶ 77-84 (Quest), ¶¶ 85-90 (Optum), █████████████████, *id.* ¶¶ 91-97 (Quest), ¶¶ 98-101 (Optum), ██████████████████████, *id.* ¶¶ 102-09 (Quest), ¶¶ 110-22 (Optum), ███████████████████████, *id.* ¶¶ 123-26 (Quest), ¶¶ 127-28 (Optum), █████████ ████████████████, *id.* ¶¶ 129-31 (Quest/Optum), ████████████████, *id.* ¶¶ 132-37 (Quest/Optum), ████████████████████████, *id.* ¶¶ 140-48 (Optum). █████████

███████████████████████████████████████████████████

████████████████████████████████████

---

[25] To the extent the Court believes that any portion of Anolik's report crosses the "blurred line," the remedy is to trim those paragraphs of her report, not to exclude it entirely. *See, e.g.*, *In re Tylenol*, 2016 WL 4039324, at *5 (permitting expert to testify in part).

### b. Defendants' "methodology" argument on the quality of Anolik's sources goes to weight, not to admissibility.

Defendants spend a grueling seven pages rehashing the arguments from their expert's report and why Anolik's methodology is purportedly unreliable. Mot. at 49-55. Defendants' qualms with Anolik's sources, Mot. at 50, are a theoretical subject for cross examination and Defendants barely muster an argument that this goes to admissibility. *See, e.g., In re Johnson & Johnson*, 509 F. Supp. 3d at 167 ("In the end, Defendants may disagree with the experts' interpretations of those studies and their usefulness, but such issues go to the weight of the experts' testimony, and not their reliability."); *Luciotti v. Borough of Haddonfield, New Jersey*, 2023 WL 6366091, at *7 (D.N.J. Sept. 29, 2023) ("All the questions raised by Plaintiffs regarding the sources underlying [expert's] data…can be probed on cross-examination and certainly go to the weight of [expert's] opinions but are not grounds for exclusion."); *TAKTL, LLC v. IWR, N. Am., LLC*, 2024 WL 4415194, at *5 (W.D. Pa. Oct. 4, 2024) (the consideration of "variables and facts beyond those provided…is an issue that goes to the weight, rather than the admissibility" and plaintiff "remains free to explore any limitations or deficiencies in [the expert's] evaluation through effective cross-examination").[26]

Defendants' cases are not to the contrary. All but one involved scientific experts, who are governed by a different methodology standard. *See, e.g., United States v. Rodriguez-Felix*, 450 F.3d 1117, 1126 (10th Cir. 2006) (excluding testimony of a scientific expert who failed to "sufficiently reference specific and recognized scientific research."). The sole case in which an

---

[26] The specific bases as to why Defendants are incorrect to argue that ███████████ ███████ *See, e.g.*, Anolik Reply Rep. ¶¶ 7-93 (responding to Miller's report). Should "Jeffrey Miller, J.D." be permitted to share his statutory interpretation with the jury over Plaintiffs' objections (Mr. Miller did not so much as glance at the record evidence), this will be a dispute for the jury to resolve.

industry practices expert's testimony was excluded involved an expert who flatly admitted that he based his report solely off of his own personal opinion, which he *later* tried to cure by broadly alluding to the "many articles" corroborating his testimony without actually citing even one. *Beckwith v. Interstate Mgmt. Co., LLC*, 82 F. Supp. 3d 255, 262 (D.D.C. 2015); *but see Crowley*, 322 F. Supp. 2d at 542 ("The Court rejects [defendant's] contentions that this methodology was unsound simply because it relied on no reported or published methodology" where expert has "extensive experience in the field"). That is not like Anolik, who explained the norms of an industry based on her own experience, and backstopped those opinions with examples from industry press, relevant governing regulations, and voluntary industry standards that mirror her own opinions. This "render[s] [her] capable of opining on the issues of general privacy background and standards relating to acceptable, industry-standard practices for privacy policy implementation and execution." *Littlejohn v. Solar*, 2020 WL 2520418 (D.N.J. May 18, 2020); *see also K.G. v. Owl City*, 2023 WL 3735891, at *4 (D.N.J. May 31, 2023) ("And any argument that the expert's education, experience, or training does not provide a viable industry standard goes to the weight of his testimony, not its admissibility.") (cleaned up), *aff'd*, 2025 WL 1577565 (3d Cir. June 4, 2025).

        **c.**        **Anolik's industry practices opinions are supported by sufficient facts and data.**

As detailed above, Anolik's opinions are supported by sufficient facts and data. Defendants claim that Anolik ████████████████████████████████████████████ ████████████████████████████████████████████ *See, e.g.*, Anolik Decl. ¶¶ 17, n.24 (citing eight industry sources); n.26 (citing seven industry sources); *see also* Ex. 15 (Amended Materials Considered List) (relying on 56 publicly available sources).

Defendants cite to one unreported, out-of-circuit case in which a court excluded an expert's opinion about industry practices after finding that his "years of experience in the industry" were not a sufficient basis for his opinion. *Affiliati Network, Inc. v. Wanamaker*, 2017 WL 7361048 (S.D. Fla. Aug. 14, 2017). That court, in turn, relied on *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004), which the Eleventh Circuit subsequently clarified applies ***only to probabilistic experts***, and "does not require all experts to provide a quantitative basis for their opinions." *United States v. Barnes*, 481 F. App'x 505, 513 (11th Cir. 2012).[27] So setting aside that this is not the law in the District of New Jersey, *see Crowley*, 322 F. Supp. 2d at 542, Defendants would be incorrect even within the Eleventh Circuit.

In Defendants' other cases, courts allowed experts to testify about industry practices based on their experience, and only excluded opinions lacking statistical evidence to support more specific, probabilistic claims, which are not at issue with Anolik's opinions. In *United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cnty., Alabama*, the court admitted the expert testimony of a realtor who opined that power lines generally lower property values, and only excluded unsupported testimony that the power lines lowered the property at issue by a specific amount. 140 F. Supp. 3d 1218, 1262-63 (N.D. Ala. 2015). Similarly, in *Krantz v. Steiler*, the court admitted the testimony of a building inspector who provided an analysis of the building's safety based on his review of record evidence. 2024 WL 1494182, at *6 (M.D. Pa. Apr. 5, 2024). It only excluded his speculative testimony in which he guessed at what kind of inspection an earlier inspector had likely performed. *Id.*

---

[27] Courts in the Third Circuit, when they have considered *Frazier*, have similarly limited its holding. *See Ellison v. United States*, 753 F. Supp. 2d 468, 482 (E.D. Pa. 2010) ("the [*Frazier*] court did not hold that experience alone could not be a sufficient basis on which to find the expert's testimony reliable").

Defendants similarly argue that, because Anolik "did not conduct a survey of industry practice," her testimony is "based on nothing more than [her] own personal experience," and is therefore inadmissible. Mot. at 55-58. The Third Circuit has rejected this false dichotomy: while an expert must provide some basis for opinion regarding industry practices, their own experience can provide a reliable basis for that testimony. *Ellison*, 753 F. Supp. 2d at 481 (citing *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 409 (3d Cir. 2003)). There is simply no requirement that an expert giving this kind of testimony provide statistical evidence to support what they know from experience. Anolik appropriately "formulated an opinion as to the general" ▮▮▮▮ ▮▮▮▮ "based on all [her] years of training, experience and teaching and reading and [her] experience as a practi[tioner]." *Ellison*, 753 F. Supp. 2d at 480. This is a sufficient basis for her to testify about industry practices; Defendants' invented requirements have no basis in law and are certainly not grounds for exclusion.



    **d.**    **Anolik's opinion that** ▮▮▮▮ **is supported by the preceding 250 paragraphs of her report.**

In the final paragraph of their motion, Defendants argue that Anolik's opinion that ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ is unsupported. Mot. at 58. This is baffling: it is supported fully by the preceding 250 paragraphs. Anolik spends the bulk of her report ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ .

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Defendants' motion to exclude Plaintiffs' experts Mary Frantz, Amy Worley, Scott Witt, and Sharon Anolik.

DATED: December 3, 2025

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: */s/ James E. Cecchi*

James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
(973) 994.1700
jcecchi@carellabyrne.com
*Interim Lead Counsel for Plaintiffs*

Jason L. Lichtman
Sean A. Petterson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson St., 8th Floor
New York, NY 11013
(212) 355-9500

Norman E. Siegel
J. Austin Moore
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
(816) 714-7100

Christopher A. Seeger
Frazar W. Thomas
**SEEGER WEISS, LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100
*Quest Track Co-Lead Counsel*

Joseph J. DePalma
Catherine B. Derenze
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
(973) 623-3000

Justin J. Hawal
Amy E. Keller

-59-

**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
*Other Labs Track Co-Lead Counsel*