**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(Newark Vicinage)**

IN RE: AMERICAN MEDICAL
COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY
BREACH LITIGATION

Civil No. 2:19-md-02904-JKS-MAH

Judge Jamel K. Semper

This Document Relates To:
All Tracks

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS**
**MARY FRANTZ, AMY WORLEY, SCOTT WITT, AND SHARON ANOLIK**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

LEGAL STANDARD ...........................................................................................4

ARGUMENT ........................................................................................................7

I.   FRANTZ'S EXFILTRATION AND DARK WEB OPINION SHOULD
     BE EXCLUDED. ........................................................................................7

     A.   Frantz's Dark Web Searches Are Not Based on Sufficient Data or
          a Reliable Methodology. ..................................................................8

          1.   Frantz's Opinion Is Not Based on Sufficient Data ████
               ████████████████████████████████████████████
               ██████ .............................................................................9

          2.   Frantz's Testimony Is Not Based on a Reliable or
               Reproduceable Methodology. ................................................12

          3.   Frantz's Opinion Is Not Helpful to Determining Any Disputed
               Fact ████████████████████████████████. ....16

     B.   Frantz's (Skewed) Regurgitation of the Findings of Third Parties
          Does Not Provide "Good Grounds" for Her Opinion. .....................17

          1.   Frantz's Factual Narrative Fails to Apply Any Specialized
               Knowledge or Reliable Principles. ........................................17

          2.   The Third-Party Documents Frantz Cites Do Not Provide
               Sufficient Facts to Support Her Opinions. ...........................19

     C.   Frantz Improperly Offers New Opinions and Relies on
          Additional Third-Party Evidence in Her Reply Declaration. ..........23

II.  WORLEY'S ████████████████████████████████
     ████████████████████████████████████ SHOULD
     BE EXCLUDED. ........................................................................................27

     A.   ████████████████████████ Lacks a Reliable Methodology
          and Is Not Related to a Permissible Theory of Liability in This
          Case. ..................................................................................................28

          1.   ████████████████████████ Is Not Based on Any Reliable
               Methodology. ........................................................................28

          2.   ████████████████████████ Is Based on a Theory of Injury
               the Court Rejected and Does Not "Fit" the Case. ................31

     B.   ████████████████████████████ Is Not Grounded in Reliable
          Methodology or Data. .......................................................................32

     C.   ████████████████████████████ Is Not Grounded in a
          Reliable Methodology and Is Not Helpful. .......................................34

          1.   Worley Failed to Use a Reliable Methodology ████████
               ████████████████████████████. ................................35

i

2.    Worley's ███████████████████ Is Not Based on Specialized Expertise Helpful to a Jury. ........................38

D.    Worley's Opinions Do Not "Fit" the Facts of the Case and Are Not Helpful................................................................39

III.    WITT'S DAMAGES OPINION SHOULD BE EXCLUDED. ......................40

A.    Witt's Calculations Rely on Worley's Inadmissible Opinions.................41

B.    Witt Fails to Apply a Reliable Methodology That "Fits" the Facts of the Case. ................................................................41

1.    Witt Uses Arbitrary Mortality Values and Discount Rates as Inputs to His Damages Calculations.................................42

2.    Witt's Opinion Assuming Mitigation Products Will Be Needed for up to 15 Years Does Not "Fit" the Facts.................................44

C.    Witt's Calculations Do Not Require Specialized Expertise Because He Is Merely Calculating Values Based on Inputs from Others.............45

IV.    ANOLIK'S OPINIONS SHOULD BE EXCLUDED.................................46

A.    Anolik ████████████████████████████
    ████████████████████████ ............47

B.    Anolik's Opinion ████████████████ Lacks Any Reliable Methodology and Is Based on Unreliable Evidence.................49

C.    Anolik's Opinion ████████████████ Is Not Supported by Sufficient Facts or Data.................................................55

D.    Anolik's Unsupported Opinion ████████████████
    ████████████████████████ Should Be Excluded...........58

CONCLUSION ................................................................59

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Affiliati Network, Inc. v. Wanamaker,*
2017 WL 7361048 (S.D. Fla. Aug. 14, 2017) ..................................................56

*Alberts v. Bumgardner,*
2017 WL 3705799 (D.N.J. Aug. 25, 2017) .....................................................30

*Allscripts Healthcare, LLC v. Andor Health, LLC,*
2022 WL 3021560 (D. Del. July 29, 2022) .....................................................45

*Beckwith v. Interstate Mgmt. Co.,*
82 F. Supp. 3d 255 (D.D.C. 2015) ..................................................................53

*Berckeley Inv. Grp., Ltd. v. Colkitt,*
455 F.3d 195 (3d Cir. 2006) ............................................................................47

*In re Blood Reagents Antitrust Litig.,*
783 F.3d 183 (3d Cir. 2015) ..............................................................................6

*Branch v. Temple Univ.,*
2021 WL 2823071 (E.D. Pa. July 7, 2021) .....................................................45

*Byrd v. Aaron's, Inc.,*
2017 WL 1093286 (W.D. Pa. Mar 22, 2017) ..................................................26

*Calhoun v. Yamaha Motor Corp., U.S.A.,*
350 F.3d 316 (3d Cir. 2003) ...............................................................5, 24, 49

*Center City Periodontists, P.C. v. Dentsply Int'l, Inc.,*
321 F.R.D. 193 (E.D. Pa. 2017) ......................................................................44

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ..........................................................................................32

*Cotromano v. United Techs. Corp.,*
2018 WL 2047468 (S.D. Fla. May 2, 2018) ....................................................30

*Crowley v. Chait,*
322 F. Supp. 2d 530 (D.N.J. 2004) .................................................................26

*Dalgic v. Misericordia Univ.*,
2019 WL 2867236 (M.D. Pa. July 3, 2019) ...................................................................19

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ...............................................................................................*passim*

*De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*,
2014 WL 4413608 (N.D. Tex. Sept. 5, 2014) ...............................................................38

*Dzielak v. Whirlpool Corp.*,
2017 WL 1034197 (D.N.J. Mar. 17, 2017) ...................................................................22

*E.E.O.C. v. FAPS, Inc.*,
2014 WL 4798802 (D.N.J. Sept. 26, 2014) ...................................................................37

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) .....................................................................................6

*Edison Wetlands Ass'n v. Akzo Nobel Chems., Inc.*,
2009 WL 5206280 (D.N.J. Dec. 22, 2009) ...................................................................40

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) ................................................................................... 6, 14

*Feit v. Great-W. Life & Annuity Ins. Co.*,
460 F. Supp. 2d 632 (D.N.J. 2006) ..............................................................................37

*Furlan v. Schindler Elevator Corp.*,
516 F. App'x 201 (3d Cir. 2013) .....................................................................................4

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................................................................19

*Gonzalez-Lopez v. Perfect Trading, Inc.*,
2024 WL 1406563 (D.N.J. Apr. 2, 2024) .....................................................................38

*Holman Enter. v. Fid. & Guar. Ins.*,
563 F. Supp. 2d 467 (D.N.J. 2008) ..............................................................................31

*In re Human Tissue Prods. Liab. Litig.*,
582 F. Supp. 2d 644 (D.N.J. 2008) ......................................................................... 5, 12

*Kia v. Imaging Sciences Int'l, Inc.*,
2010 WL 3431745 (E.D. Pa. Aug. 30, 2010) ...............................................................19

iv

Case 2:19-md-02904-JKS-MAH    Document 883    Filed 04/23/26    Page 6 of 71 PageID: 41690

*Kolokowski v. Crown Equip. Corp.*,
  2009 WL 2857957 (D.N.J. Aug. 27, 2009) ......................................................36, 42, 45

*Krantz v. Steiler*,
  2024 WL 1494182 (M.D. Pa. Apr. 5, 2024)...................................................................56

*Kremsky v. Kremsky*,
  2017 WL 4466467 (E.D. Pa. Mar. 6, 2017) ..................................................................19

*Krys v. Aaron*,
  112 F. Supp. 3d 181 (D.N.J. 2015) ....................................................................... 5, 49

*Kuhar v. Petzl Co.*,
  2018 WL 6331682 (D.N.J. Dec. 4, 2018)......................................................................58

*Kuhar v. Petzl Co.*,
  2018 WL 7571319 (D.N.J. Nov. 27, 2018)............................................................ 33, 34

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................ 13, 16

*Lavell v. Camden Cty. Coll.*,
  2023 WL 4074077 (D.N.J. June 20, 2023)............................................................ 24, 25

*Lee-Bolton v. Koppers, Inc.*,
  319 F.R.D. 346 (N.D. Fla. 2017).................................................................................30

*In re Lincoln Nat'l 2017 COI Rate Litig.*,
  620 F. Supp. 3d 268 (E.D. Pa. 2022) ................................................................... 19, 43

*Madison Cap. Co. v. S. & S Salvage, LLC*,
  2011 WL 195639 (W.D. Ky. Jan. 19, 2011)..................................................................26

*Mallet and Co. Inc. v. Lacayo*,
  2025 WL 896585 (W.D. Pa. Mar. 24, 2025) .................................................................49

*McHugh v. Jackson*,
  2010 WL 1875578 (D.N.J. May 7, 2010) .....................................................................29

*Mendler v. Aztec Motel Corp.*,
  2011 WL 6132188 (D.N.J. Dec. 7, 2011)......................................................................57

*Miller v. Coty, Inc.*,
  2018 WL 1440608 (W.D. Ky. Mar. 22, 2018) ...............................................................36

*Montgomery Cty. v. Microvote Corp.*,
  320 F.3d 440 (3d Cir. 2003) ......................................................................11

*Murray v. Marina Dist. Dev. Co.*,
  311 F. App'x 521 (3d Cir. 2008).................................................................50

*Nobles v. DePuy Synthes Sales, Inc.*,
  2020 WL 6710810 (D.S.C. Aug. 3, 2020)..................................................36

*Oddi v. Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000) .......................................................................49

*Ortiz v. Yale Materials Handling Corp.*,
  2005 WL 2044923 (D.N.J. Aug. 24, 2005) ................................................40

*Patrick v. FirstEnergy Gen. Corp.*,
  2014 WL 992805 (W.D. Pa. Mar. 13, 2014) ..............................................13

*United States ex rel. Penelow v. Janseen Products, LP*,
  2022 WL 94535 (D.N.J. Jan. 10, 2022) .....................................................48

*Player v. Motiva Enters. LLC*,
  2006 WL 166452 (D.N.J. Jan. 20, 2006) ...................................................37

*Rheault v. Halma Holdings Inc.*,
  2025 WL 1866842 (D. Del. June 30, 2025) ...............................................17

*Rossano v. Maxon*,
  659 F. Supp. 3d 559 (E.D. Pa. 2023) .........................................................59

*Ryanair DAC v. Booking Holdings Inc.*,
  2024 WL 3732498 (D. Del. June 17, 2024) ...............................................46

*In re Sandridge Energy Inc. Sec. Litig.*,
  2019 WL 2476742 (W.D. Okla. June 13, 2019) .................................... 24, 26

*Senese v. Liberty Mut. Ins. Co.*,
  661 F. App'x 771 (3d Cir. 2016).................................................................38

*United States ex rel. Silver v. Omnicare, Inc.*,
  2023 WL 2808098 (D.N.J. Mar. 31, 2023)........................................... 19, 56

*Slatowski v. Sig Sauer, Inc.*,
  148 F.4th 132 (3d Cir. 2025) ..............................................................*passim*

*State v. Moore,*
    585 A.2d 864 (1991) ...................................................................................25

*Taha v. Bucks Cty. Pa.,*
    408 F. Supp. 3d 628 (E.D. Pa. 2019) ........................................................11

*Taylor v. S.E. Penn. Trans. Auth.,*
    2024 WL 3205209 (E.D. Pa. June 27, 2024) ............................................47

*In re TMI Litig.,*
    193 F.3d 613 (3d Cir. 1999) ..................................................6, 11, 41, 42

*In re Tylenol Acetaminophen Mktg. Sales Pracs. & Prods. Liab. Litig.,*
    2016 WL 807377 (E.D. Pa. Mar. 2, 2016) ...............................................19

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres,*
    949 F.3d 825 (3d Cir. 2020) ............................................................ 13, 15

*United States v. An Easement and Right-of-way Over 6.09 Acres of Land, More or Less, in Madison County, Ala.*
    140 F. Supp. 3d 1218 (N.D. Ala. 2015)......................................................56

*United States v. Delgado,*
    677 F. App'x 84 (3d Cir. 2017)....................................................... 6, 16

*United States v. Leo,*
    941 F.2d 181 (3d Cir. 1991) ......................................................................48

*United States v. Mitchell,*
    365 F.3d 215 (3d Cir. 2004) ......................................................................16

*United States v. Rodriguez-Felix,*
    450 F.3d 1117 (10th Cir. 2006).................................................................53

*United States v. Walker,*
    657 F.3d 160 (3d Cir. 2011) ........................................................................5

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.,*
    2025 WL 1024048 (D.N.J. Apr. 7, 2025)...................................5, 28, 30, 31

*vonRosenberg v. Lawrence,*
    413 F. Supp. 3d 437 (D.S.C. 2019) ...........................................................39

*Withrow v. Spears*,
967 F. Supp. 2d 982 (D. Del. 2013) .................................................................25

*Yazujian v. PetSmart*,
729 F. App'x 213 (3d Cir. 2018) ......................................................................49

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ............................................................................18

**Rules and Regulations**

Fed. R. Civ. P. 23 ....................................................................................... 6, 58

Fed. R. Civ. P. 26 .............................................................................................23

Fed. R. Evid. 702 ......................................................................................*passim*

Fed. R. Evid. 703 .............................................................................................53

78 Fed. Reg. 5566 ............................................................................................51

78 Fed. Reg. 5600 ............................................................................................51

90 Fed. Reg. 898 ..............................................................................................51

90 Fed. Reg. 956 ..............................................................................................51

**Other Authorities**

New Jersey AG 2018 Consent Judgment
https://nj.gov/oag/newsreleases18/Virtua-Medical-Group-Consent-
Judgment.pdf.................................................................................................53

*Implementing the HIPAA Security Rule: A Cybersecurity Resource Guide*
https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800
-66r2.pdf.......................................................................................................54

*Fast Facts on U.S. Hospitals, 2025*, Am. Hospital Assoc.
https://www.aha.org/statistics/fast-facts-us-hospitals.............................57

2002 OCR Guidance
https://www.hhs.gov/hipaa/for-professionals/faq/236/covered-
entity-liable-for-action/index.html .............................................................51

OCR Security Rule Guidance Material
https://www.hhs.gov/hipaa/for-
professionals/security/guidance/index.html................................................................54

**INTRODUCTION**

For years, Plaintiffs have sustained their claims on the premise that every single one of the millions of people whose information was held in AMCA's CHAMP database was harmed because Defendants somehow failed to prevent criminals from stealing their information during a cyberattack (the "AMCA Cyberattack"). Plaintiffs did not produce any evidence of that during fact discovery. Instead, they claimed that, when the time came for expert disclosures, they would be able to prove both standing and the elements of their claims with common evidence. That time has finally come. But the common proof is nowhere to be seen, and Plaintiffs' purported "experts" who were supposed to furnish it have put forth opinions that are so unreliable and unmoored from the facts that they would be far more likely to confuse than to help a jury.

In the year since Plaintiffs initially served expert declarations, their experts have fallen apart one after the other. The original expert supporting one of Plaintiffs' core damages theories, Gary Olsen, plagiarized his declaration and then performed so poorly at his deposition that Plaintiffs were forced to withdraw him. Another expert, Sharon Anolik, put forth opinions that were so lacking in support that, after her deposition, she served an "errata" in which she suddenly claimed to have relied on *hundreds* of additional documents that made no appearance in her declaration. Yet another, Mary Frantz, used an analysis that was so flawed and lacking in any methodology that Plaintiffs attempted to bolster or (more likely) replace her with a new expert on reply.

1

2

At the end of this shake-up, Plaintiffs are left with five experts—barring the improperly disclosed new expert[1]—on whom they rely for class certification. All but one (Jonathan Lee, ███████████████████████████████████ ████████) should be excluded for failing to offer reliable opinions that would help the jury to decide any disputed issue.

**Mary Frantz.** ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[1] Defendants will separately move to strike this new, improperly disclosed expert, Matthew Strebe. *See* ECF 804.

████████████████████████████████████████████████████

████ That opinion is not supported by sufficient facts or data and not the product of a reliable methodology; ███████████████████████████████

███████████████████████████████████████████████

**Amy Worley and Scott Witt.** Amy Worley and Scott Witt work in tandem ██████████████████████████████████ to support Plaintiffs' claim to be entitled to up to *$20 billion* in damages. ███████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████ And Witt falls with Worley, since he relies on her for inputs to his calculations—and then baselessly extends the duration of risk for another five years into the future.

**Sharon Anolik.** ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

3

██████████ (though *what* more is not entirely clear), ████████████████████

██████████ Setting the ambiguity aside (and the fact that the text of HIPAA and

authoritative guidance from the regulatory agency charged with enforcing it ██████████

██████████, this is nothing more than a legal opinion about what HIPAA requires—

a subject matter that is solely within the province of the Court.

Plaintiffs' request for class certification rests on a mirage: they attempt to disguise

baseless speculation and unreliable, results-driven analysis with a patina of "expert"

credibility. But each of Plaintiffs' purported expert opinions fails to satisfy the basic

requirements for admissibility under Rule 702, and they should be excluded.

## LEGAL STANDARD

Federal Rule of Evidence 702 permits an expert witness "qualified by knowledge,

skill, experience, training, or education" to offer opinion testimony if four prerequisites

are met: (1) the expert's "specialized knowledge will help the trier of fact to understand

the evidence or to determine a fact in issue"; (2) the expert's "testimony is based on

sufficient facts or data"; (3) the expert's "testimony is the product of reliable principles

and methods"; and (4) "the expert has reliably applied the principles and methods to

the facts of the case." It thus "embodies a trilogy of restrictions on expert testimony:

qualification, reliability and fit." *Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 205

(3d Cir. 2013); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (Rule

702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests

on a reliable foundation and is relevant to the task at hand").

4

To assess the "reliability" restriction, the court must determine whether "the expert ha[s] 'good grounds' for his or her belief." *Krys v. Aaron*, 112 F. Supp. 3d 181, 189 (D.N.J. 2015) (internal quotation marks omitted). The "hallmark" of reliability is a "scientific method," which subjects an expert's opinions "to the real-world crucible of experimentation, falsification/validation, and replication," *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025), as appropriate to "the nature of the issue, the expert's particular expertise, and the subject of his testimony," *United States v. Walker*, 657 F.3d 160, 175-76 (3d Cir. 2011). "While reliability does not require 'correctness,' it does prohibit 'too great a gap between the data and the [expert's] opinion proffered.'" *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2025 WL 1024048, at *10 (D.N.J. Apr. 7, 2025).

"All aspects of [an expert's] testimony" must be reliable and supported by "good grounds": "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 657 (D.N.J. 2008). "Speculation does not cut it." *Slatowski*, 148 F.4th at 138; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (internal quotation marks omitted).

The final "fit" restriction ensures that expert testimony is actually "relevant for the purposes of the case" and that it "assist[s] the trier of fact." *Id.* at 321 (citation modified). Therefore, to be admissible, expert testimony must be "sufficiently tied to

the facts of the case." *United States v. Delgado*, 677 F. App'x 84, 86 (3d Cir. 2017); *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999) (admissibility of expert testimony "depends, in part, on a connection between the expert opinion offered and the particular disputed factual issues in the case").

Under Rule 702 and *Daubert*, district courts must perform a "rigorous gatekeeping function" to ensure that expert testimony meets this trio of restrictions. *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000). As confirmed by recent amendments to Rule 702, the proponent of expert testimony bears the burden of establishing that its requirements are met. *Daubert*, 509 U.S. at 592 n.10; *see also EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1339 (Fed. Cir. 2025) (amendments "emphasize that an expert's opinion must stay within the bounds of a reliable application of the expert's basis and methodology"), *cert. denied*, -- S. Ct. --, 2025 WL 2949599 (U.S. Oct. 20, 2025). And, for class certification, "a plaintiff cannot rely on challenged expert testimony … to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates … that the expert testimony satisfies th[is] standard."[2] *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015).

---

[2] Each of Plaintiffs' experts presented opinions relevant only to merits issues, in addition to class certification issues. Defendants reserve the right to move to exclude additional merits-based opinions at a later stage of the case, if necessary.

**ARGUMENT**

I.    **FRANTZ'S** ██████████████████████████ **OPINION SHOULD BE EXCLUDED.**

Frantz offers only one opinion potentially relevant to class certification: █

██████████████████████████████████████████████████████████████

██████████ Ex. 1, Frantz Decl. ¶ 329.[3] In other words, ██████████████████

██████████████████████████████████████████████████████████████

Frantz bases this opinion on two sources. First, she claims that her firm ██████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████ *Id.* ¶ 360. Second, she relies ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████ *See id.* ¶¶ 329-43; Ex. 2, Frantz Reply ¶¶ 10, 16, 19. Frantz's opinion should be

excluded because it is not based on data or methodology ████████████████████

---

[3] This opinion at least touches on Plaintiffs' contention that each member of the class sustained injury. However, even if admitted, it does not eliminate the need for individualized inquiry, ██████████████████ ██████████████████████ Frantz has no explanation for how that individualized analysis could be leveraged to determine ██████████████████ for the entire putative class in one fell swoop. Frantz's other opinions— ██████████████████████ —are not relevant to class certification issues, and therefore are not addressed here.

███████████████████████████████████████████████████████

███████████████

**A.** **Frantz's** ████████████████ **Are Not Based on Sufficient Data or a Reliable Methodology.**

Frantz bases her opinion ██████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████. *See* Ex. 1, Frantz

Decl. ¶¶ 350, 360.[4]  Although Plaintiffs' counsel ██████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████ *id.* ¶ 353; Ex. 3, Frantz Dep.

80:6-81:21—her declaration ████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████. *See, e.g.,* Ex. 3, Frantz Dep.

118:16-119:22; Ex. 1, Frantz Decl. ¶ 160. █████████████████

███████████████████████████████████████████████████████

because address information is *publicly available*, including from telephone directories.

███████████████████████████████████████████████████████

---

[4] Frantz's declaration contains critical inconsistencies ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ *Compare*
Ex. 1, Frantz Decl., Ex. C ¶¶ 1, 10 *with id.* ¶ 360. ████████████████
████████████████████████ Ex. 3, Frantz Dep. 73:2-23.

8



. *See* Ex. 14, Tomasini App'x 3.

Frantz also failed

Ex. 3, Frantz

Dep. 149:24-151:10. And she

### 1.    Frantz's Opinion Is Not Based on Sufficient Data

Frantz's opinion

is not supported by "sufficient facts or data," Fed. R. Evid. 702(b),

for the simple reason

First, as discussed,

. *See* Ex. 3,

Frantz Dep. 71:11-18; *id.* 118:15-23; Ex. 1, Frantz Decl., Ex. C ¶ 5. But for

*See* Ex. 13, Tomasini Decl. ¶¶ 115-

9



For example,

See *id.* ¶ 115. The analytical error is obvious:

Moreover, Plaintiffs' own experts acknowledged

—

, *id.* ¶¶ 164-74; Ex. 15, Tomasini App'x 4—

. *See* Ex. 7, Worley Dep. 61:10-16 (

).

Fed. R. Evid. 702(b).

Second,



There is no factual evidence to support such a speculative leap.[6] Because the data Frantz used was "so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *Montgomery Cty. v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (citation modified); *see also In re TMI Litig.*, 193 F.3d at 698 (affirming exclusion of expert opinion based on "an unreliable source of information") (citation modified); *Taha v. Bucks Cty. Pa.*, 408 F. Supp. 3d 628, 645 (E.D. Pa. 2019) (same).

---

[5] To the extent █████ ████████ *Compare* Ex. 1, Frantz Decl., Ex. C ¶ 5 (████ ████) *with* Ex. 3, Frantz Dep. 120:13-17

[6] ████ , *see supra* n.4, ████

████ *See* Ex. 3, Frantz Dep. 72:8-21.

## 2. Frantz's Testimony Is Not Based on a Reliable or Reproduceable Methodology.

Frantz's ███████████ fails to apply any "reliable principles and methods," Fed. R. Evid. 702(c), and thus also does not provide "good grounds" for her opinion, *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d at 657. Indeed, the glaring flaws at every step of her process mean she has no chance of reliably supporting her conclusion.

First,

See Ex. 3, Frantz Dep. 55:6-18

), *id.* 58:16-60:13

).

. See *id.* 58:18-19

, *id.* 129:25-130:7

). This violates a cardinal principle of Rule 702: "to make certain that an expert, whether basing testimony upon professional studies or

---

[7] As Tomasini explained,

Ex. 13, Tomasini Decl. ¶ 71.

12

personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).



*See* Ex. 13, Tomasini Decl. ¶ 96 (

; *cf.* Ex. 3, Frantz Dep. 105:14-16 (admitting it

"generally accepted" method for                                        used by experts in the field. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834  (3d Cir. 2020) (citation modified); *see also Patrick v. FirstEnergy Gen. Corp.*, 2014 WL 992805, at *2 (W.D. Pa. Mar. 13, 2014) ("[E]xperts are not permitted to engage in a 'haphazard, intuitive inquiry.'") (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000)). *See also* Ex. 13, Tomasini Decl. ¶¶ 124-32 (

Second, the "method [Frantz] describes" 

is "unreliable on its face" 

13



*Elcock v. Kmart Corp.*, 233 F.3d 734, 749 (3d Cir. 2000).

. *See* Ex. 13, Tomasini Decl. ¶¶ 81-90. For example:

- *See* Ex. 1, Frantz Decl., Ex. C ¶ 5.

- *Id.*

Moreover,

, Ex. 1, Frantz Decl. ¶ 360,

, *see* Ex. 13, Tomasini Decl. ¶ 97; *id.* ¶ 142 & n.21.

14

███████████████████████████████████████ *See UGI Sunbury*, 949 F.3d at 834

(failing to analyze the "known or potential rate of error" renders opinion unreliable).

Third, ████████████████████ should be excluded because they cannot be validated in the "real-world crucible of experimentation, falsification/validation, and replication." *Slatowski*, 148 F.4th at 138 (citation modified). ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Ex. 3, Frantz Dep. 152:20-153:14; *see id.* 148:17-149:1 ████████████████

██████████████████████████). But "it is impossible to test a hypothesis generated by a subjective methodology because the only person capable of testing or falsifying the hypothesis is the creator of the methodology." *UGI Sunbury*, 949 F.3d at 834 (citation modified). This is precisely the sort of untestable opinion that should be excluded. *See id.* at 835 (excluding expert opinion based on what "was common sense reasonable").

Finally, ████████████████████████████████████████, making it impossible to replicate or validate her results. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████. *See* Ex. 3, Frantz Dep. 74:18-77:8, 88:21-89:24. ████

████████████████████████████████████████████ *Id.*

79:6-16; *contra Kumho Tire*, 526 U.S. at 152. And it prevents any "falsification/validation" or "replication" of her analysis, including any testing ███████████████████ ██████████████████████████████████████. *Slatowski*, 148 F.4th at 138; *see also United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004) ("Testability ensures the basic possibility of meaningful cross-examination.").

### 3. Frantz's Opinion Is Not Helpful to Determining Any Disputed Fact ████████████████████████████ ████████



████████████████████████████████ also should be excluded because it does not "fit" the case and would not "help the trier of fact ... to determine a fact in issue." *Delgado*, 677 F. App'x at 86 (citation modified). ███████████ ████████████████████████████████████████████ ██████████████████ which means her opinion has no relevance to the critical "fact in issue," Fed. R. Evid. 702: ████████████████████ ████████████ ████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *See* Ex. 13, Tomasini Decl. ¶¶ 165-75. But ████████████ ████████████████████████████████████████████ ████████████████ Ex. 3, Frantz Dep. 129:19-20 ████████████████ ████████. Therefore, her analysis does not bear on any disputed fact; ████████ ████████████████████████████████████████████

16

███████████████████████████████████████████████████████ that is rank

speculation, which "does not cut it." *Slatowski*, 148 F.4th at 138.

> **B.      Frantz's (Skewed) Regurgitation of the Findings of Third Parties Does Not Provide "Good Grounds" for Her Opinion.**

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████

> **1.      Frantz's Factual Narrative Fails to Apply Any Specialized Knowledge or Reliable Principles.**

███████████████████████████████████████████████

that fails to apply any "specialized knowledge" or principled methodology. Fed. R. Evid. 702(a), (c). It is well-settled that expert testimony that merely regurgitates the factual record is improper—it invades the province of the jury and, in fact, is not real expert testimony at all. *See, e.g.*, *Rheault v. Halma Holdings Inc.*, 2025 WL 1866842, at *13 (D. Del. June 30, 2025) (excluding expert testimony that "merely summarizes documents and

paraphrases or quotes from declarations without offering any analysis of those materials").



*See* Ex. 1, Frantz Decl. ¶¶ 330-43.

*See* Ex. 3, Frantz Dep. 16:1-20:23; *id.* at 23:12-14

; *id.* at 41:3-45:13

*id.* at 51:24-52:9

As the Third Circuit has explained, this "lack of familiarity with the methods and the reasons underlying someone else's projections," adopted as the expert's own, is inconsistent with the *Daubert* standard. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012).

*See* Ex. 4, Worley Decl. ¶¶ 32-55.)

is an impermissible incursion into the jury's role that courts

routinely forbid. *See, e.g.*, *United States ex rel. Silver v. Omnicare, Inc.*, 2023 WL 2808098, at *15 (D.N.J. Mar. 31, 2023) ("Experts are not permitted to simply summarize the facts and the depositions of others.") (citation modified); *In re Lincoln Nat'l 2017 COI Rate Litig.*, 620 F. Supp. 3d 268, 284 (E.D. Pa. 2022) ("An expert may not simply regurgitate evidence the jury can interpret for themselves."); *Kremsky v. Kremsky*, 2017 WL 4466467, at *4 (E.D. Pa. Mar. 6, 2017) (expert cannot "simply 'parrot' the ideas of other experts or individuals" and "independent verification" is required) (citation modified).[8] Frantz's testimony should be excluded on this basis alone.

### 2. The Third-Party Documents Frantz Cites Do Not Provide Sufficient Facts to Support Her Opinions.



also do not provide a sufficient basis for her conclusion *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

---

[8] *See also, e.g.*, *Dalgic v. Misericordia Univ.*, 2019 WL 2867236, at *11 (M.D. Pa. July 3, 2019) ("[A]n expert may not offer testimony that simply 'regurgitates what a party has told him' or constructs 'a factual narrative based on record evidence'"); *In re Tylenol Acetaminophen Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2016 WL 807377, at *9 (E.D. Pa. Mar. 2, 2016) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.") (citation modified); *Kia v. Imaging Sciences Int'l, Inc.*, 2010 WL 3431745, at *5 (E.D. Pa. Aug. 30, 2010) ("[A] party may not 'filter fact evidence and testimony through [hi]s expert merely to lend credence to the same' nor may expert testimony 'be used merely to repeat or summarize what the jury independently has the ability to understand.'").

evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

First, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* Ex. 18, Gemini Dep.

107:2-5, 115:24-116:23, 131:18-132:17; Ex. 3, Frantz Dep. 26:4-27:8. ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* 134:13-16 (emphasis added).

Second, ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████



████████████████████████████ .[9] *See* Ex. 22, RMCB-AG-00000085; Ex. 23,

Conformance000024. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Ex. 3, Frantz Dep. 36:7-12. ████

████████████████████████████████████████████████

█████████████████████████ Ex. 21, RMCB-AG-00000002.

Finally, ███████████████████████████████████████

████████████████████████████████████████████████

█████████████████████ *See* Ex. 19, CRA Dep. 51:11-20. ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████ *Id.* 105:13-106:12. ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ *See* Ex. 24, RMCB-AG-00000195 ("█████████") at 3. But

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████ Ex. 19, CRA Dep. 58:2-10, 84:19-85:15, 122:11-123:25, and it could

---

[9] ████████████████████████████████████████████

████████████████████ *See* Ex. 13, Tomasini Decl. ¶ 63.

███████████████████████████████████████████████

████████████████████ *id.* 119:20-22.[10] █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████ *Id.* 75:6-11.

In sum, at *most,* ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *See Dzielak v. Whirlpool Corp.,* 2017 WL 1034197, at

*24 (D.N.J. Mar. 17, 2017) (excluding testimony that made a "logical leap" to expert's

---

[10] ███████████

████████████ *See* Ex. 3, Frantz Dep. 51:21-22 ████████████

██████████ . Ex. 13, Tomasini Decl. ¶ 40.

conclusion "without any independent investigation into the *data* depicted in the document" on which he relied) (emphasis original).

### C.    Frantz Improperly Offers New Opinions and Relies on Additional Third-Party Evidence in Her Reply Declaration.

Finally, Frantz's reply declaration should be excluded because, rather than rebut Defendants' expert Tomasini, it improperly offers new opinions ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In particular, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮[11] ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2, Frantz Reply ¶¶ 16(j)-(k),

27, 32. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮[12] To the extent Frantz's reply declaration offers new opinions ▮▮▮▮

---

[11] End Point produced additional documents after service of Frantz's original declaration, but well before Plaintiffs served amended or supplemental declarations from multiple experts in June 2025. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, any opinions based on those documents should be excluded for failing to adequately disclose the "facts or data considered" in forming them, pursuant to Rule 26(2)(B)(ii).

[12] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it should be excluded because it does not "fit" the

███████████████ to bolster her original declaration—that Defendants have no opportunity to rebut—it should be excluded. *See In re Sandridge Energy Inc. Sec. Litig.,* 2019 WL 2476742, at *2 (W.D. Okla. June 13, 2019) (striking reply report that "present[ed] 'additional opinions or rationales' that should have been presented as part of th[e] initial [r]eport").

First, ████████████████████████████████

████████████████████. *Lavell v. Camden Cty. Coll.*, 2023 WL 4074077, at *3 (D.N.J. June 20, 2023) ("A rebuttal report 'is improper if it contains new opinions or information which is contradictory to that set forth in the expert report.'"). ████████████

████████████████████████████████████████

████████████████████████████████ *See* Ex. 2, Frantz Reply at 3 (emphases added); *id.* ¶ 39 (███████████████████████████

█████████████████████████████████████).

████████████████████████████████████████

████████████████████████████████████████

---

"purposes of the case." *Calhoun*, 350 F.3d at 321. Plaintiffs do not claim to represent putative class members who had data stored anywhere on AMCA's systems; they purport to represent classes of certain individuals who received notice of the AMCA Cyberattack, which was limited to *only* individuals who had personal information in the CHAMP database. *See* Ex. 20, Rule 30(b)(1) Myers Dep. 35:3-36:21 (██████████████████████████ .

██████████████ Ex. 3, Frantz Dep. 311:5-6.[13] This new and "contradictory" opinion should be excluded.[14] *Lavell*, 2023 WL 4074077, at *3, *5.

Second, Frantz's reply should be excluded ███████████████████████

███████████████████████████████████████████████

██████████████████████████████.[15] A reply expert report may only "cite new evidence and data so long as the new evidence and data is offered to *directly contradict or rebut* the opposing party's expert." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del.

---

[13] ██████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████ Ex. 2, Frantz Reply ¶¶ 12-14.
*Id.* ¶¶ 83-84. As discussed above, ████████████
████████████████████████████████
████████████████ Ex. 19, CRA Dep. 105:13-106:12.

[14] █████████████████████████████████████████
██████████████████████████████████ Ex. 2, Frantz Reply ¶ 7 (emphasis original). ██████████ "explain, repel, counteract or disprove" any material in Tomasini's declaration, *Lavell*, 2023 WL 4074077, at *4 (citation modified)—████████████
████████████████████████████ █ ████████████
██████████████████████████ This opinion, too, should be excluded. *See State v. Moore*, 585 A.2d 864, 904 (1991) ("If the expert's opinion goes beyond the foundation and limits of the underlying expertise, then that opinion cannot be credited.").

[15] In addition, ████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

2013) (citation modified). ███████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████    *See Madison Cap. Co. v. S. & S Salvage,*

*LLC*, 2011 WL 195639, at *4 (W.D. Ky. Jan. 19, 2011) (party cannot "use the opportunity for rebuttal to introduce evidence it failed to account for in its case-in-chief"); *Sandridge*, 2019 WL 2476742, at *2 ("[T]he Rule does not permit parties to 'create a new and improved expert report in order to gain tactical advantage.'") (citation modified). Since this testimony does not "contradict or rebut the actual contents" of Tomasini's declaration, and instead represents "a 'do-over' of an original report," it should be excluded. *Byrd v. Aaron's, Inc.*, 2017 WL 1093286, at*4-5 (W.D. Pa. Mar 22, 2017) (citation modified); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (reply reports are "not an opportunity for the correction of any oversights in the plaintiff's case in chief") (citation modified).

26

## II.    WORLEY'S ███████████████████████████ SHOULD BE EXCLUDED.

Worley offers ███ opinions in support of Plaintiffs' request for class certification.

First, ███████████████████████████████████ ███████████████████████████████ Ex. 4, Worley Decl. ¶¶ 1-2. ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ Ex. 5, Worley Supp. ¶¶ 6-7.

Second, ██████████████████████████████████

████████████████████████████████████████

██████████████████ Ex. 4, Worley Decl. ¶¶ 4, 192.

Finally, █████████████████████████████████

████████████████████████████████████████

███████████████████ *Id.* ¶¶ 172-90. To form this opinion, ███

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ *Id.* ¶¶ 165 & n.201, 192; Ex. 7, Worley Dep. 164:7-8.

27

**A.** ███████████████████████ **Lacks a Reliable Methodology and Is Not Related to a Permissible Theory of Liability in This Case.**

███████████████████████████████████████████

████████████████████████████████████████ Ex. 6,

Worley Reply ¶ 9 (emphasis original); Ex. 4, Worley Decl. ¶¶ 1-2.[16] ██████████

████████████████████████████████████ and it does not

"fit" the case in any event because this Court previously held that a risk of future harm

is not a cognizable injury. On either of those grounds, this opinion should be excluded.

**1.** ████████████████████ **Is Not Based on Any Reliable Methodology.**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ *See*

Ex. 16, Hitt Decl. ¶ 37; *see also id.* ¶¶ 110, 114. On that basis alone, her ███████████

█████████ should be excluded. *See In re Valsartan*, 2025 WL 1024048, at *19 (excluding

---

[16] Further undermining her reliability, ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ *See* Ex. 6, Worley
Reply ¶ 13 n.11; Ex. 7, Worley Dep. 118:16-119:15; *see also id.* 94:4-7, 110:8-16, 121:23-123:8.

"opinion [that] is largely argument and advocacy based on [expert's] own *ipse dixit*, rather than a reliable application of" any analysis to the facts of the case).

For example, ███████████████████████████████████████

████████████████████████████████████████████████████

There is zero basis for this assumption ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ Ex. 13, Tomasini Decl. ¶¶ 159-65 (██████████████

██████████████████████████████████████ ); Ex. 15, Tomasini

App'x 4 (████████████████████████████████████████████

██████████ ); Ex. 16, Hitt Decl. ¶ 96. ██████████████

████████████████████████████████████████████████████

████████████████████.[17] *See McHugh v. Jackson*, 2010 WL 1875578, at *3 (D.N.J. May 7, 2010) (excluding expert who failed to consider alternative causes and holding the opinion "amount[ed] to little more than speculation about one possible cause").

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[17] ██████████████████████████████████████████████████

████████████████████████████████████ Ex. 4, Worley Decl. ¶ 153.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Ex. 16, Hitt Decl. ¶¶ 70-73, 100. ████████████████████████████████

████████████████████████ it is unhelpful and cannot reliably support a showing of "harm" as to all members of each putative class. *See, e.g.*, *Lee-Bolton v. Koppers, Inc.*, 319 F.R.D. 346, 376 (N.D. Fla. 2017) (statistical risk assessment excluded as unhelpful where "the record shows that actual or clinical risk would vary from person to person"); *Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *18 (S.D. Fla. May 2, 2018) (excluding expert opinion as unhelpful because it made "no accommodation for consideration of important individual variables").

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ Ex. 6, Worley Reply ¶ 6. Courts in this District flatly reject ██████████ ████████—that an opinion is based on "101"-level knowledge in a field—as "too simplistic and too doctrinaire" because it fails to apply a "reliable, accepted, or appropriate" methodology. *In re Valsartan*, 2025 WL 1024048, at *18; *see also Alberts v. Bumgardner*, 2017 WL 3705799, at *3 (D.N.J. Aug. 25, 2017) ("net opinion" rule requires expert opinions to stem from "a proper factual foundation" and requires exclusion of opinions that cannot be "distinguished from a mere guess or conjecture").

30

In short, Worley offers no testable hypothesis or any other methodology underlying ████████████████████████████████████████████ ███████████████████████████████████ *See Slatowski*, 148 F.4th at 138 (affirming exclusion of expert testimony that "never bridges the gap between theory and reality"). ████████████████████████████████████████ is the precise kind of "trust me" conclusion that Rule 702 is designed to prevent. *See In re Valsartan*, 2025 WL 1024048, at *19 (excluding expert from testifying "based on her own *ipse dixit*" where the expert "simply asserted" a conclusion with a "stark lack of scientific or economic basis for her methodology"); *Holman Enter. v. Fid. & Guar. Ins.*, 563 F. Supp. 2d 467, 472 n.12 (D.N.J. 2008) ("an expert's bare conclusions are not admissible"). ██████████████████ ██████████████████████████████████████████████ and her opinion should therefore be excluded.

### 2. ██████████████████████████████ **Is Based on a Theory of Injury the Court Rejected and Does Not "Fit" the Case.**

Worley's ████████████████ also should be excluded ██████████████ ██████████████████████████████████████████████████, *see* Quest Opp. to Class Cert. at 34-36; Optum360 Opp. to Class Cert. § III.B.1.d(iii); Labcorp Opp. to Class Cert. at 23-25, and therefore does not "fit" any live dispute in this case. Under the Court's rulings, neither Plaintiffs nor other putative class members have standing to recover damages for a risk that has never materialized in the more than *six years* since the AMCA Cyberattack. *See* ECF 283 ("2021 MTD Order") at 17. Therefore, ██████

31

███████████████████████████████████ "measur[ing] only those damages attributable to" permissible theories of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). And, by the time this case reaches trial, ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ *See* Ex. 16, Hitt Decl. ¶ 158.

**B.**    ███████████████████████████████    **Is Not Grounded in Reliable Methodology or Data.**

Worley's ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████ Ex. 4, Worley Decl. ¶ 4. *See Slatowski*, 148 F.4th at 132 (explaining that the reliability prong requires a testable hypothesis).

First, █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████ *See* Ex. 16, Hitt Decl. ¶¶ 162-70; Ex. 6, Worley Reply ¶ 44(c) (██████████████████████████

██████████████████████████████). ████████████████

████████████████████████████████████████████████



Ex. 16, Hitt Decl. ¶ 172; *see also* Ex. 7, Worley Dep. 254:18-255:2. In fact,

Ex. 7, Worley Dep. 164:7-8.

Ex. 4, Worley Decl. ¶¶ 126-30; Ex. 7, Worley Dep. 212:18-24.

Ex. 16, Hitt Decl. ¶¶ 177-80.

Rule 702 prohibits this results-oriented analysis. *Kuhar v. Petzl Co.*, 2018 WL 7571319, at *4 (D.N.J. Nov. 27, 2018) (excluding expert testimony that leaves "too large a gap between the data presented and the conclusions rendered").

33

Second, █████████████████████████████████████████

████████████████████████████████████████████ Fed. R. Evid.

702(b); *see* Ex. 16, Hitt Decl. ¶¶ 162-73. ██████████████████

█████████████████████████████████████████████████

█████████████████████████ *See* Ex. 16, Hitt Decl. ¶¶ 162-70. ███

█████████████████████████████████████████████████

██████████████████████████████████.[18] Ex. 7, Worley Dep. 249:25-250:8

█████████████████████████████████████████████████

There simply is no reliable methodology or data to support Worley's conclusion

█████████████████████████████████████████████████

██████████████████████ Worley's analysis does not pass muster under *Daubert*, and her

████████████████████ should be excluded. *See Kuhar*, 2018 WL 7571319, at *9

(excluding expert's opinions because they lack "a basis in sound principles, evidence,

and methodology" and therefore "amount to speculation or an educated guess").

**C.**   ████████████████████████████████ **Is Not Grounded in a Reliable Methodology and Is Not Helpful.**

Finally, ██████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████ Ex. 4, Worley Decl. ¶ 165 n.201. Worley again fails

---

[18] ██████████████████████████████████████████████████████
█████████████████████████████████████████████████

████████████████████████████ *See, e.g.*, Ex. 7, Worley Dep. 230:9-11, 246:17-248:2.

to support her conclusion with a reliable methodology, and also fails to apply any specialized knowledge or expertise that is helpful to the trier of fact.

      **1.**     **Worley Failed to Use a Reliable Methodology** ███████ ████████████████████████████

Worley's ███████████████████ should be excluded because she did not use any methodology or reliable technique ████████████████████████

████████████████████████████████████████████████

First, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Ex. 7, Worley

Dep. 175:19-176:5 (emphasis added). ██████████████████████

████████████████████████████████████████████████

███████*Id.* 174:16-25. The evidence shows that many do. *See, e.g.*, Ex. 16, Hitt Decl.

¶ 60(b) ████████████████████████████████████████

████████████████████████████████████████████████

███████.

In addition, ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *See, e.g., id.* ¶ 58 (

35



); *id.* ¶¶ 59-61 (

).[19] Worley's methodology,

, is inherently unreliable.

Second,

Ex. 7, Worley Dep. 154:22-155:2. This is not a reliable methodology for expert testimony: "Google searches by an expert to support an opinion are not an encouraging and confidence building method of research for a purported expert in a field." *Nobles v. DePuy Synthes Sales, Inc.*, 2020 WL 6710810, at *2 (D.S.C. Aug. 3, 2020) (denying reconsideration of court's exclusion of expert testimony); *see also Miller v. Coty, Inc.*, 2018 WL 1440608, at *5 (W.D. Ky. Mar. 22, 2018) (excluding expert opinions "because they

---

[19]

Ex. 6, Worley Reply ¶¶ 21-27. That is precisely the point: her opinion does not "fit[] within the facts of the case" *Kolokowski v. Crown Equip. Corp.*, 2009 WL 2857957, at *5 (D.N.J. Aug. 27, 2009) (citation modified).

either rely on personal opinions or informal internet searches, neither of which are reliable sources of opinions under Rule 702 or *Daubert*").

Indeed, ███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████ Ex. 7, Worley Dep. 156:12-25. This is not a valid methodology. It is well-settled that "[c]onclusions based only on the expert's experience and testimony founded on methods that are not generally accepted or lack testable hypotheses" are insufficient to meet the *Daubert* standard. *Player v. Motiva Enters. LLC*, 2006 WL 166452, at *7-8 (D.N.J. Jan. 20, 2006) (internal citation omitted) (excluding expert because "[h]is method is untestable and arbitrary, without a generally accepted, established, or peer reviewed methodology, and his evaluation was conducted without any real standards"); *see also Feit v. Great-W. Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 640-41 (D.N.J. 2006) (expert opinion that lacked "any analytical framework" inadmissible).

Rule 702 requires "more than the haphazard, intuitive inquiry that [Worley] engaged in." *E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802, at *11 (D.N.J. Sept. 26, 2014). Because Worley falls far short of establishing that her ██████████████████████████ is the product of reliable scientific methods and procedures, it must be excluded.

37

**2. Worley's** ███████████████████████ **Is Not Based on Specialized Expertise Helpful to a Jury.**

Worley's ████████████████████ also should be excluded because it does not require the application of any specialized knowledge or experience, and the jury can ███████████████████████████████████████████ without the aid of expert testimony. "Expert testimony is not helpful when the untrained layman would be qualified to determine the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Senese v. Liberty Mut. Ins. Co.*, 661 F. App'x 771, 775 (3d Cir. 2016) (citation modified); *see also Gonzalez-Lopez v. Perfect Trading, Inc.*, 2024 WL 1406563, at *3 (D.N.J. Apr. 2, 2024) (same).

Here, ████████████████████████████████████████████ ████████ is wholly within the capability of a layperson. ████████████ ███████████████████████████████████████████████  ████████████████████████████████████ Ex. 4, Worley Decl. ¶ 165 n.201. She then █████████████████████████████████████████████ ████████ *Id.* ¶ 165. "[A]ny untrained layman" can ███████████████ ███████████████████████████████████████—just like shopping for car insurance. *Senese*, 661 F. App'x at 775; *see also Gonzalez-Lopez*, 2024 WL 1406563, at *3. Indeed, courts routinely exclude opinions where experts rely on little more than internet searches because they offer no special expertise to aid the jury. *See, e.g.*, *De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, 2014 WL 4413608, at *4 (N.D. Tex.

Sept. 5, 2014) (excluding opinion based in part on "the results of basic Google searches" because such evidence does not "require[] any special knowledge, skill, or experience to interpret") (citation modified); *vonRosenberg v. Lawrence*, 413 F. Supp. 3d 437, 451 (D.S.C. 2019) (same).

### D. Worley's Opinions Do Not "Fit" the Facts of the Case and Are Not Helpful.

For the reasons discussed above, Worley's opinions also should be excluded because they do not account for the facts in this case and will not assist the trier of fact. Among other critical facts, ███████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████ *See* Ex. 13, Tomasini Decl. ¶ 165; Ex. 16, Hitt Decl. ¶ 96. In the same vein, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ *See* Ex. 4, Worley Decl. ¶¶ 4, 192. Finally, ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████ Ex. 7, Worley Dep. 175:19-23; *see, e.g.*, Ex. 16, Hitt Decl. ¶ 60(b).

Worley's ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ are all unmoored from the facts and "cannot be said to assist the trier of fact, as Rule 702 requires." *Edison Wetlands Ass'n v. Akzo Nobel Chems., Inc.*, 2009 WL 5206280, at *2 (D.N.J. Dec. 22, 2009) (citation modified); *Ortiz v. Yale Materials Handling Corp.*, 2005 WL 2044923, at *10 (D.N.J. Aug. 24, 2005) (expert's generalized testimony inadmissible because it did not "fit" with the facts of the case where expert performed no analysis relating to the actual product involved in plaintiff's accident). They should be excluded.

## III.  WITT'S DAMAGES OPINION SHOULD BE EXCLUDED.

Scott Witt was engaged as an "actuarial and damages expert" to calculate alleged damages putative class members suffered as a result of the AMCA Cyberattack. Ex. 8, Witt Am. Decl. ¶¶ 1-2. To calculate damages, Witt multiplies (i) an "assumed monthly damage" ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒; (ii) an "annuity factor" drawn from mortality tables; (iii) a "discount rate" to approximate the present value of the cost to purchase these products in the future; and (iv) a 3-, 5-, 7-, or 10-year duration. *Id.* ¶¶ 13, 17-19.

Witt's opinion should be excluded because his calculations are entirely dependent upon Worley's inadmissible opinions, his methodology (mechanical though it is) relies on several critically flawed assumptions that render it unreliable, and his multiplication exercise does not even fall into the realm of expert testimony.

40

**A.    Witt's Calculations Rely on Worley's Inadmissible Opinions.**

At the outset, Witt's opinion should be excluded because it hinges on Worley's impermissible opinions. *See supra* § II. Witt does not independently evaluate ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████. Instead, he relies entirely on Worley's analysis and counsel's instruction as to products, cost, and duration periods ██████

████████████████████████████. Ex. 9, Witt Dep. 97:20-98:6 (applying "cutoff points of three, five, seven, and ten years based on instructions from counsel"); *id.* 86:23-88:10 (confirming Witt had no "independent opinion" regarding the █████████

█████████████████████); *see also* Ex. 8, Witt Am. Decl. ¶ 15 (analysis "rel[ies] on the advertised cost of ████████████████████████████████████████

████████). Because Worley's opinions should be excluded, Witt *ipso facto* also should be excluded since he lacks any independent basis for the mitigation product costs and claim durations used in his calculations. *See In re TMI Litig.*, 193 F.3d at 705-06.

**B.    Witt Fails to Apply a Reliable Methodology That "Fits" the Facts of the Case.**

In addition to the unreliable inputs from Worley, Witt's calculations also are unreliable because the remaining data he used were arbitrary and not tethered to the facts of this case, and he assumed a duration of risk ██████████████████████████

███████        Accordingly, Witt's opinion is based on neither sufficient data nor a reliable methodology and should be excluded.

### 1.  Witt Uses Arbitrary Mortality Values and Discount Rates as Inputs to His Damages Calculations.

Where experts make assumptions in formulating their opinions, "the supporting assumption must be sufficiently grounded in sound methodology … and reasoning to allow the conclusion it supports to clear the reliability hurdle." *Id.* at 663. Here, in addition to the ████████████████████████████████████, Witt relies on at least three other data inputs that do not fit the facts of the case, and therefore produce an unreliable conclusion.

First, Witt's calculations incorporate an annuity value meant to represent the probability that a certain putative class member will remain alive during the entire length of time for which a mitigation product is purportedly necessary. To calculate the appropriate annuity value, Witt "used general population mortality from the U.S. Life Table, 2021." Ex. 8, Witt Am. Decl. ¶ 16. He gave no justification for using mortality rates from this general-population table, despite acknowledging that there are other mortality tables available. Ex. 9, Witt Dep. 221:3-7, 223:13-224:8. He also does not refer to any literature that suggests the U.S. Life Table is an appropriate source of data for calculating damages. *See Kolokowski*, 2009 WL 2857957, at *10 ("the dearth of peer reviewed literature counsels against the admission of … an expert"). Indeed, he fails to cite a single article, study, or publication supporting his use of actuarial tables to

42

calculate damages for those affected by a data breach at all. *See In re Lincoln Nat'l*, 620 F. Supp. 3d at 282-84 (actuary's opinions not admissible for class certification).

The use of a general-population actuarial table is particularly problematic here, where the putative class members are not representative of the general population, but rather the subset of the population who required medical treatment and could not afford to pay for it. As Witt conceded, health status and wealth are among the factors that impact mortality risks. Ex. 9, Witt Dep. 25:2-27:3; 30:24-31:6 (noting correlation between health status and mortality rating); *see also id.* 30:3-8 ("wealthier individuals have better mortality"). But Witt's use of the general mortality table did not account for the obvious fact that the population here is not representative of the broader U.S. population. *Id.* 92:12-24. This is not due to lack of available data; Plaintiffs had access to the CHAMP database, which contained detailed information on putative class members—including, for some, health information. *Id.* 119:5-12. Yet, Witt chose not to account for that data or use a mortality table suited to this population.

Second, to calculate the present value of the cost for Plaintiffs to purchase mitigation products in the future, Witt claims that he "conservatively used a discount rate of 5% for all claim durations." Ex. 8, Witt Am. Decl. ¶ 18. However, he did not reference any sources (let alone peer-reviewed sources) to support his assumption that a 5% discount rate is appropriate, did not evaluate alternative rates (including, for example, higher interest rates offered through private borrowing), and could not

adequately defend his use of that rate. Ex. 9, Witt Dep. 175:19-177:2, 181:19-183:6, 184:4-185:7.

Third, Witt calculates damages based on the cost for each putative class member to individually purchase ███████████████████████████████, rather than what it would actually cost Defendants to bulk-purchase such products—███████████████████████████████████. Ex. 7, Worley Dep. 166:8-12; Ex. 9, Witt Dep. 184:10-22, 187:6-15 (no opinion as to whether mitigation products could be purchased in bulk). He also makes no adjustment for the many putative class members who already have appropriate mitigation products or could obtain them for free—which he concedes would result in *zero* damages for those individuals. Ex. 9, Witt Dep. 209:5-15. Accordingly, Witt's calculation of damages based on the retail price for every putative class member to individually purchase ████████████████████████ has no relationship to the actual cost to Defendants to provide those products and is unreliable and unhelpful to the trier of fact. *See Center City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 204 (E.D. Pa. 2017) (excluding expert opinion that failed to account for factors that suggested damages "should be discounted")

### 2. Witt's Opinion Assuming Mitigation Products Will Be Needed for up to 15 Years Does Not "Fit" the Facts.

Witt's damages calculation also is fundamentally unreliable and unmoored from the facts in this case because he calculates the cost for putative class members to obtain mitigation products for up to ten years from the date of his original declaration in

44

November 2024, rather than from the AMCA Cyberattack. Ex. 9, Witt Dep. 225:15-22. As discussed *supra* § II.B, ██████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████; but Witt's damages calculations, at the outside edge, extend all the way to November 2034, encompassing ███████████████ ███████████████████████████████████. Witt was unable to explain why he calculated the cost to purchase mitigation products beginning in 2024, or why he calculated damages for the cost to purchase products extending more than 15 years after the Cyberattack. Ex. 9, Witt Dep. 232:4-233:13 (conceding that, ██████████ █████████████████████████████████████████). His choice is untethered to the facts of the case or to the Worley opinions on which he purports to rely, and it therefore does not "fit" and cannot assist the jury. *See Branch v. Temple Univ.*, 2021 WL 2823071, at *4 (E.D. Pa. July 7, 2021) (excluding expert's damages calculation that had "too great an analytical gap" to the facts of the case).

### C.     Witt's Calculations Do Not Require Specialized Expertise Because He Is Merely Calculating Values Based on Inputs from Others.

Expert testimony must provide specialized knowledge that assists the trier of fact, rather than merely performing basic calculations that are within the competence of laypersons. *See e.g., Kolokowski*, 2009 WL 2857957, at *10 (excluding expert whose methodology "relies on inferences and simple arithmetic alone"); *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 3021560, at *5 (D. Del. July 29, 2022) (excluding

expert who acted as a "human calculator" by adding or subtracting expenses, which "offers no specialized expertise"); *Ryanair DAC v. Booking Holdings Inc.*, 2024 WL 3732498, at *45 (D. Del. June 17, 2024) (excluding expert testimony that "adds nothing … other than an exercise in arithmetic"). Here, Witt simply uses values provided to him by Plaintiffs' other experts and performs simple multiplication against publicly available actuarial tables. In Witt's own words: "I can easily and *mechanistically* recalculate the calculations in this report." Ex. 8, Witt Am. Decl. ¶ 15 (emphasis added). Thus, Witt does not utilize any specialized expertise, and his opinion should be excluded.

## IV.    ANOLIK'S OPINIONS SHOULD BE EXCLUDED.



Ex. 10, Anolik Decl. ¶ 11. Specifically,

*Id.* ¶ 17.

*Id.* ¶ 13.

Ex. 10, Anolik Decl. ¶ 12.

███████████████████████████████████████████████████████ *Id.* ¶¶ 52-250.

Anolik's ███████████████████████████ should be excluded in its entirety because there is only one expert on the law—the Court. None of her remaining "opinions"—███████████████████████████ ███████████████████████—are admissible, either, ███████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ For all these reasons, the Court should exclude Anolik's testimony.

A.    **Anolik** ███████████████████████████████████ ████████████████████████████████████████████████████

In the Third Circuit, it is well-settled that an expert may not opine on "the governing law of the case" or whether a defendant "complied with legal duties that arose" under that law. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217-18 (3d Cir. 2006). "Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." *Id.* at 217. Therefore, while an expert is permitted to testify as to "customs and business practices" in a particular industry—*i.e.*, what industry participants actually do—she is not permitted to go any further and testify as to what industry participants are *legally required* to do. *Id.* at 218; *see also Taylor v. S.E. Penn. Trans. Auth.*, 2024 WL 3205209, at *6 (E.D. Pa. June 27, 2024) (collecting cases).

████████████████████████████████████████████████

47



Ex. 10, Anolik Decl. ¶ 11.a.

Ex. 12, Anolik Dep. 25:4-5 (emphasis added). Accordingly,

and should be excluded because "it is not permissible for a witness to testify as to the governing law." *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991); *see also United States ex rel. Penelow v. Janseen Products, LP*, 2022 WL 94535, at *5 (D.N.J. Jan. 10, 2022) (quoting *Berckeley*, 455 F.3d at 218).

*See* Ex. 10, Anolik Decl. ¶ 52 (

); *id.* ¶ 149 ( ); *id.* ¶ 206 (

).

Ex. 12, Anolik Dep. 20:10-13. The terms "satisfactory assurances" and "business associates" are defined terms used in the HIPAA regulations, further confirming

. An expert

48

 "unquestionably invades the Court's province by rendering a *legal opinion.*" *Krys*, 112 F. Supp. 3d at 192.

Ex. 12, Anolik Dep. 71:24-72:3. In other words, ███████████████, which again is nothing more than an impermissible legal opinion on what HIPAA requires.[21]

**B.    Anolik's Opinion** ███████████████ **Lacks Any Reliable Methodology and Is Based on Unreliable Evidence.**

An expert's opinion fails *Daubert's* reliability requirement if it is based on "subjective belief or unsupported speculation," *Calhoun*, 350 F.3d at 321, or if there is "simply too great a gap between the data and the opinion proffered," *Oddi*, 234 F.3d at

---

[21] ███████████████ *See* Ex. 10, Anolik Decl. ¶¶ 11.a., 11.b. (opining on ███████████) (emphasis added). Because Plaintiffs' negligence claims require proof that Defendants failed to "exercise reasonable care" to protect their data, 2021 MTD Order at 26—and reasonable care does not equate to best practices—███████████ is irrelevant. *See, e.g., Mallet and Co. Inc. v. Lacayo*, 2025 WL 896585, at *5 (W.D. Pa. Mar. 24, 2025) (excluding expert on industry "best practices"); *Yazujian v. PetSmart*, 729 F. App'x 213, 215-16 (3d Cir. 2018) (same).

49

146 (quoting *Gen. Elec.*, 522 U.S. at 146). ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

First, ██████████████████████████████████████████████

██████████████████████████████████████████████████████. An expert report that "fail[s] to demonstrate any methodology, let alone peer-reviewed or generally accepted methodology" is no more than the "subjective belief or unsupported speculation" of the expert and is properly excluded. *See Murray v. Marina Dist. Dev. Co.*, 311 F. App'x 521, 524 (3d Cir. 2008) (excluding expert report that "identifie[d] purported security deficiencies" but "fail[ed] to identify the source of any industry standards … or provide the methodology [the expert] used to arrive at his opinions").

Second, ████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████ *See, e.g.* Ex. 10, Anolik Decl. ¶ 53. █████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ *See* Ex. 17, Miller Decl. ¶ 30. Consistent with that text, the U.S. Department of Health and Human Services Office for Civil Rights ("OCR"), the agency charged with enforcing and interpreting the HIPAA

Privacy and Security Rules, has repeatedly stated that covered entities are *not* required to monitor their business associates:

- In 2002, OCR published guidance stating that "covered entities are not required to monitor or oversee the means by which their business associates carry out privacy safeguards" and are not "responsible or liable for the actions of [their] business associates."[22] This guidance remains on HHS's website and states that it was last reviewed on January 9, 2023, confirming its continued validity.[23]

- In 2013, during a rulemaking process, commenters asked OCR whether Covered Entities were expected "to ensure that business associates (including subcontractors) have appropriate controls in place" besides obtaining contractual agreements to implement such controls. 78 Fed. Reg. 5566, 5600. In response, OCR stated that a covered entity obtains the required satisfactory assurances "through a written contract or other agreement," *id.* at 5601, thus confirming that further monitoring is not required.

- In January 2025, OCR expressly confirmed in a notice of proposed rulemaking that "the Security Rule does not require a regulated entity [*e.g.*, a covered entity] to verify that entities that create, receive, maintain, or transmit ePHI on its behalf are in fact taking the necessary steps to protect such ePHI." 90 Fed. Reg. 898, 956. In fact, OCR's proposed rule would—for the first time—impose an obligation on covered entities to "verify" that business associates have deployed technical safeguards, *id.*, which confirms that HIPAA has never previously imposed such obligations.

Third, rather than rely on authoritative sources of regulatory interpretation,

████████████████████████████████ many of which she misreads. ████████

---

[22] *Available at* https://www.hhs.gov/hipaa/for-professionals/faq/236/covered-entity-liable-for-action/index.html.

[23] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. 11, Anolik Reply ¶¶ 61-69. ████████████████████

████████████████████████████████

*See* Ex. 17, Miller Decl. ¶ 39.

███████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 10, Anolik Decl. ¶¶ 19, 167. ████

███████████████████████████████████████████████████████

██████ *See* Ex. 17, Miller Decl. ¶¶ 42-44. ████████████████████████████

████████████ Ex. 10, Anolik Decl. ¶¶ 30-31, 160-61. However, ████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████ Ex. 17,

Miller Decl. ¶¶ 45-46. In addition, ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████ Ex. 10, Anolik Decl. ¶¶ 20-22; *see also* Ex. 17, Miller

Decl. ¶ 47.

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ *See* Ex. 17, Miller Decl. ¶¶ 48-54. ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████ . *Id.* ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Ex. 12, Anolik Dep. 143:5-25, 147:6-148:6.

In short, ████████████████████████████████████████████ "would reasonably rely on [these] facts or data in forming an opinion" █████████████ ███████████████████████. F.R.E. 703; *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1126 (10th Cir. 2006) (excluding expert that made a "casual mention of a few scientific studies" but failed to demonstrate that the expert's conclusions were generally accepted in the field); *Beckwith v. Interstate Mgmt. Co.*, 82 F. Supp. 3d 255, 263 (D.D.C. 2015) (excluding expert that made "vague, passing references to best practices, articles by security experts, and certain minimum standards").

In an impermissible attempt to buttress her opinion, ███████████████ ████████████████████, but neither reliably supports her opinion. First, ████ ███████████████████████████████████████████████████████ ██████.[24] Ex. 11, Anolik Reply ¶ 35. ███████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

---

[24] *Available at* https://nj.gov/oag/newsreleases18/Virtua-Medical-Group-Consent-Judgment.pdf.



███████████████████████████████████. NJ AG Action ¶ 67. Second,

████████████████████████████████████████████████████████

██████████ Ex. 11, Anolik Reply ¶¶ 13-19. ████████████████████

████████████████████████████████████████,[25] ████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 12, Anolik Dep.

222:5-223:3.

Nonetheless, ███████████████████████████████████████

████████████████████████████████████████████[26] Ex. 11, Anolik

Reply ¶¶ 15-17. ███████████████████████████████████████

██████████████████████████████████████:

- ████████████████████████████████████████████████████████████ NIST SP 800-66r2 at i (emphasis added).

- ████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at ii.

- ████████████████████████████████████████████ *see* Ex. 11, Anolik Reply ¶¶ 16-17—

---

[25] ████████████████████████████████████████████████████████████████ *See* https://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (cited in Anolik Reply ¶ 13 n.7).

[26] *Available at* https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-66r2.pdf.

[REDACTED]

NIST SP 800-66r2 at 54.

- A chart in Section 5.1.9 [REDACTED]
  [REDACTED] *Id.* at 28.

[REDACTED]

[REDACTED] shows that her opinion is not the

product of a reliable methodology.

### C.    Anolik's Opinion [REDACTED] Is Not Supported by Sufficient Facts or Data.

[REDACTED]

[REDACTED] .27

[REDACTED]



27 [REDACTED]
[REDACTED] Ex. 10, Anolik Decl.
¶ 62, [REDACTED] , *id.* ¶ 194.
[REDACTED]

Ex. 10, Anolik Decl. ¶ 160 (emphasis added).[28] ██████████████████

████████████████████████████████████████████████

████████████████████████████████

Freestanding references to ████████████ based on nothing more than the expert's own personal experience, do not provide "sufficient" facts or data. *See Krantz v. Steiler*, 2024 WL 1494182, at *4 (M.D. Pa. Apr. 5, 2024) (excluding testimony on industry practice from expert who spoke only to the expert's own practices); *Affiliati Network, Inc. v. Wanamaker*, 2017 WL 7361048, at *10 (S.D. Fla. Aug. 14, 2017) (excluding expert testimony regarding industry practice based "solely on [the expert's] experience without explaining … why that experience is a sufficient basis for the opinion"); *United States v. An Easement and Right-of-way Over 6.09 Acres of Land, More or Less, in Madison County, Ala.* 140 F. Supp. 3d 1218, 1262-63 (N.D. Ala. 2015) ("while a witness may be *qualified* to testify as an expert based on 'experience,' when such is baldly offered as the *basis* for an opinion, that is nothing but *ipse dixit*").

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[28] To the extent ██████████████████████████████████████ —this is an improper subject of expert testimony. *See, e.g., Silver*, 2023 WL 2808098, at *12 ("expert opinion as to a defendant's state of mind or knowledge is improper").

████████ Ex. 12, Anolik Dep. 55:4-56:7. ████████████████

██████████████████████████████████████ *Id.* 54:8-55:3. Indeed,

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ *See Mendler v. Aztec Motel Corp.*, 2011 WL 6132188, at *3-4 (D.N.J. Dec. 7, 2011) (excluding expert report on industry standards that was "devoid of any mention of an actual [business] which abides by the" requirements the expert claimed were standard).

████████████████████████████████████████████████

█████████████████████████ (the "Manatt Survey"), Ex. 10, Anolik Decl. ¶ 29.b—██████████████████████████████████████

████████████████████████████████████████████████

██████ [29] Ex. 25, Manatt Survey at 1. And, even this limited sample—which did not include a single diagnostic testing lab like Defendants—████████████████ ██████ because the survey concluded that "most of the Covered Entities interviewed *performed little to no due diligence* on prospective Business Associates." *Id.* at 5 (emphasis added); *see also* Ex. 17, Miller Decl. ¶¶ 51-52 (█████████████████

████████████████████████████████████████████████

---

[29] *See Fast Facts on U.S. Hospitals, 2025*, Am. Hospital Assoc., *available at* https://www.aha.org/statistics/fast-facts-us-hospitals (identifying more than 6,000 hospitals in the United States, which is only one type of covered entity).

██████████████████████████████████████████████████████

████████████████████████████████████████, Ex. 11,

Anolik Reply ¶ 40, ████████████████████████████████████

██████████████████████████████████████████████████████

███ .

**D.    Anolik's Unsupported Opinion** ██████████████████
█████████████████████████ **Should Be Excluded.**

Finally, ███████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 10, Anolik

Decl. ¶ 253. This ████████████████████ is the *sole* evidence on which Plaintiffs rely

for their request to certify a Rule 23(b)(2) class. *See* Labcorp Mot. Class Cert. at 45;

Quest/Optum360 Mot. Class Cert. at 31. █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ . Accordingly, ████████████████ "opinion"

should be excluded. *See Kuhar v. Petzl Co.*, 2018 WL 6331682, at *4 (D.N.J. Dec. 4, 2018)

("Because expert testimony aids the jury in making factual determinations … testimony

58

must be predicated upon evidence and not mere speculation and conclusory statements."); *Rossano v. Maxon*, 659 F. Supp. 3d 559, 570-71 (E.D. Pa. 2023).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude Plaintiffs' experts Mary Frantz, Amy Worley, Scott Witt, and Sharon Anolik.


Dated:  November 11, 2025                              Respectfully submitted,


By: */s/ David H. Hoffman*

David H. Hoffman
Daniel C. Craig
Heather Benzmiller Sultanian
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Tel.: (312) 853-7000
david.hoffman@sidley.com
dcraig@sidley.com
hsultanian@sidley.com

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
Tel.: (212) 839-8555
ejoyce@sidley.com

Ricardo Solano, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102
Tel.: (973) 596-4500
rsolano@gibbonslaw.com

*Attorneys for Defendant Quest Diagnostics Incorporated*


By: */s/ Reade W. Seligmann*

Reade W. Seligmann
ALSTON & BIRD LLP

59

90 Park Avenue, 12th Floor
New York, NY  10016
Tel.: (212) 210-9453
reade.seligmann@alston.com

Kristine M. Brown
Donald M. Houser
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
Tel.: (404) 881-7000
kristy.brown@alston.com
donald.houser@alston.com

Thomas P. Scrivo
Young Yu
O'TOOLE SCRIVO, LLC
14 Village Park Road
Cedar Grove, NJ  07009
Tel.: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

*Attorneys for Defendant Optum360, LLC*

By: */s/ Edward J. Fanning, Jr.*

Edward J. Fanning, Jr.
McCARTER & ENGLISH, LP
Four Gateway Center
100 Mulberry St.
Newark, NJ  07102
Tel.: (973) 622-4444
efanning@mccarter.com

Allison Holt Ryan
Adam A. Cooke
Alicia J. Paller
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC  20004
Tel.: (202) 637-5600
allison.holt-ryan@hoganlovells.com
adam.a.cooke@hoganlovells.com
alicia.paller@hoganlovells.com

*Attorneys for Defendant Laboratory
Corporation of America Holdings*

By: */s/ Bradley J. Bartolomeo*

Bradley J. Bartolomeo

60

Jeffrey Y. Spiegel
Ariadne Panagopoulou
Abaigeal D. Franson
LEWIS BRISBOIS BISGAARD &
SMITH LLP
One Riverfront Plaza, Suite 800
Newark, NJ  07102
Tel.: (973) 577-6260
bradley.bartolomeo@lewisbrisbois.com
jeffrey.spiegel@lewisbrisbois.com
ariadne.panagopoulou@lewisbrisbois.com
Abaigeal.franson@lewisbrisbois.com

*Attorneys for Defendants Sonic Healthcare
USA, Clinical Pathology Laboratories, Inc.,
Aurora Diagnostics LLC, and Austin
Pathology Associates*