**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(Newark Vicinage)**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br><br>This Document Relates To:<br>All Tracks | Civil No. 2:19-md-02904-JKS-MAH<br><br>Judge Jamel K. Semper |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF MATTEO TOMASINI

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND................................................................................................................2

      A.    Tomasini Is a Well-Qualified Expert on Cybersecurity and Dark Web Investigations. .......................................................................................2

      B.    Tomasini Offers Four Opinions Regarding Exfiltration and Dark Web Posting of AMCA-Related Information. ...............................................3

LEGAL STANDARD .......................................................................................................9

ARGUMENT ..................................................................................................................10

I.     THERE IS NO BASIS TO EXCLUDE OPINIONS THAT TOMASINI NEVER OFFERED. ...................................................................................10

II.    TOMASINI'S REBUTTAL OF FRANTZ'S EXFILTRATION AND DARK WEB OPINION IS ADMISSIBLE (OPINION 1). ..............................13

      A.    Tomasini's Rebuttal of Frantz Is Reliable Even Without a ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Which Is Unnecessary to Tomasini's Opinions and Which Frantz Did Not Use. ..........................................................14

      B.    Tomasini Properly Considered All of the Evidence Frantz Cited to Support His Rebuttal. ....................................................................18

III.   TOMASINI'S OPINION THAT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ IS RELIABLE AND HELPFUL (OPINION 2)................................................................21

      A.    Plaintiffs Mischaracterize Tomasini's Opinion as Attempting to ▮▮▮▮▮▮▮▮▮▮ ......................................................................22

      B.    Tomasini's Methodology for Searching the Dark Web Is Reliable and Based on Sufficient Evidence....................................................24

           1.    Tomasini Ran Dozens of Search Strings Designed to Reliably Identify ▮▮▮▮▮▮▮▮▮▮▮▮ ..................................24

           2.    Tomasini's Use of a Team of Highly-Trained Analysts Is Industry-Standard and Reliable................................28

C.      Tomasini's Documentation of His Search Methodology and Results Allows for Validation. ...................................................................31

IV.    PLAINTIFFS DO NOT PROVIDE ANY BASIS FOR EXCLUDING TOMASINI'S OPINIONS 3 AND 4.......................................................................33

CONCLUSION ...................................................................................................................36

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
829 F. Supp. 2d 802 (D. Minn. 2011)................................................................16

*In re BlackRock Mut. Funds Advisory Fee Litig.*,
2019 WL 1387450 (D.N.J. Feb. 8, 2019) .........................................................9

*Betterbox Comm'ns, Ltd. v. BB Techs., Inc.*,
300 F.3d 325 (3d Cir. 2002) ...........................................................................9

*Bledsoe v. FCA US LLC*,
2022 WL 4596156 (E.D. Mich. Sept. 30, 2022)...............................................29

*City of Almaty v. Ablyazov*,
2021 WL 5154110 (S.D.N.Y. Nov. 5, 2021) ....................................................10

*E.E.O.C. v. Bloomberg L.P.*,
2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010)...................................................19

*Ely v. Cabot Oil & Gas Corp.*,
2016 WL 4169220 (M.D. Pa. Feb. 17, 2016)....................................................30

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
2021 WL 2577490 (D. Kan. June 23, 2021) .....................................................17

*Faulkner v. Arista Recs. LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014)................................................................19

*Fitchburg Mut. Ins. Co. v. Burlington Landscaping, Inc.*,
2017 WL 238479 (D.N.J. Jan. 19, 2017) .........................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)............................................................................23

*Johnson v. Big Lots Stores, Inc.*,
2008 WL 1930681 (E.D. La. Apr. 29, 2008) ...................................................18

*Kannankeril v. Terminix Int'l, Inc.*,
128 F.3d 802 (3d Cir. 1997) ...........................................................................9

*Lab'y Corp. of Am. Holdings v. Natera, Inc.*,
  2025 WL 1769837 (D. Del. June 26, 2025) ....................................................35

*Leese v. Lockheed Martin Corp.*,
  6 F. Supp. 3d 546 (D.N. J. 2014).....................................................................30

*McReynolds v. Sodexho Marriott Servs., Inc.*,
  349 F. Supp. 2d 30 (D.D.C. 2004) ..................................................................30

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)................................................................................9

*United States ex rel. Penelow v. Janssen Prods., LP*
  2022 WL 94535 (D.N.J. Jan. 10, 2022) ..........................................................35

*In re Pool Prods. Distrib. Mktg. Antitrust Litig.*,
  166 F. Supp. 3d 654 (E.D. La. 2016)..............................................................30

*Rossano v. Maxon*,
  659 F. Supp. 3d 559 (E.D. Pa. 2023)..............................................................30

*Seneca Ins. Co. v. Beal*,
  820 F. App'x 106 (3d Cir. 2020)......................................................................13

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
  670 F. Supp. 2d 768 (N.D. Ill. 2009) ..............................................................18

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
  26 F. Supp. 3d 449 (E.D. Pa. 2014) ................................................................19

**Rules and Regulations**

Fed. R. Evid 702...................................................................................................9

**Other Authorities**

EasyRCA, *Enhancing Cybersecurity with Root Cause Analysis*,
  https://easyrca.com/blog/enhancing-cybersecurity-with-root-cause-
  analysis/ ...........................................................................................................15

IBM, *What is a root cause analysis?*,
  https://www.ibm.com/think/topics/root-cause-analysis........................................15

Splunk, *What Is Root Cause Analysis? The Complete RCA Guide*, https://www.splunk.com/en_us/blog/learn/root-cause-analysis.html ...........................................................................................................15

## **INTRODUCTION**

Plaintiffs' Motion to Exclude the Report and Testimony of Matteo Tomasini (the "Motion" or "Mot.") is an exercise in misdirection. Rather than address the opinions Tomasini actually offered and the extensive dark web investigations he conducted to support those opinions, Plaintiffs address invented opinions he never offered, conflate his opinions, misapply the methodologies supporting one opinion to another, and ignore significant portions of his declaration and investigation—all to craft an inaccurate narrative to support their attempt to exclude him.

First, Plaintiffs spend a great deal of time attempting to refute Tomasini's qualifications to offer opinions on topics that they concede he did not opine on. Second, they artificially combine two distinct opinions——and then attempt to criticize that artificial construct. But their critique is not of Tomasini's actual work because they confuse the factual basis and methodology underlying each of these distinct opinions. Third, Plaintiffs claim that the dark web investigation Tomasini directed was "inadequate" because the search strings were purportedly too limited; but they completely ignore Tomasini's ████████████ ████████████████████████████████████████. And finally, Plaintiffs invalidly criticize Tomasini for not using a specific methodology designed to ████

████████ of how a data breach occurred, even though ████████████ has (and would have) no bearing on Tomasini's opinions.

These efforts to obfuscate and confuse reveal that Plaintiffs have no legitimate basis to attack Tomasini's qualifications or opinions. Tomasini showed that the foundation of Plaintiffs' injury theory—that AMCA's entire CHAMP database containing sensitive personal information pertaining to millions of individuals was exfiltrated and posted to the dark web—is faulty. That theory is built on the speculative assumption that if *anything* was exfiltrated from any part of AMCA's systems, then *everything* must have been. ████████████████████████

████████ And Tomasini's opinions further confirm that ████████████

████████████████████████████████████████

████████████████████████. Tomasini's opinions are reliable and would be helpful to the jury, and they should be admitted.

## BACKGROUND

### A.    Tomasini Is a Well-Qualified Expert on Cybersecurity and Dark Web Investigations.

Matteo Tomasini is a cybersecurity professional with more than a decade of experience conducting and leading hundreds of dark web investigations and dark web monitoring engagements. Ex. 1, Tomasini Decl. ¶¶ 12, 14-15. During that time, he led cyber investigation teams at several prominent cybersecurity firms, including Prescient, BlueVoyant, and K2 Intelligence. *Id.* ¶¶ 14-16.

2

Most recently, Tomasini founded his own dark web data company, District 4 Labs, which licenses access to its flagship product, Darkside. *Id.* ¶ 13. Darkside is a "repository of thousands of databases containing tens of billions of compromised records" from hacked or breached company databases and other compromised personal data found on the dark web, which Tomasini personally collected and indexed over the course of his career. *Id.* Darkside is a trusted data tool that law enforcement, national intelligence, corporate investigators, and cybersecurity professionals from around the world rely on to investigate cyberattacks. *Id.*

Given the depth and breadth of his experience, Tomasini is a sought-after expert in the cybersecurity community. He frequently speaks at industry conferences for cybersecurity experts and commercial clients and regularly consults and teaches on the development and usage of dark web investigative tools and techniques. *Id.* ¶ 17. In addition to Darkside, Tomasini also has developed additional "open-source tools" used widely by the cybersecurity community in dark web investigations. *Id.*

### B.    Tomasini Offers Four Opinions Regarding Exfiltration and Dark Web Posting of AMCA-Related Information.

Although Plaintiffs attempt to create confusion by conflating and mischaracterizing Tomasini's opinions, his declaration clearly identifies four distinct issues on which he opines.

**Opinion 1.** Tomasini rebuts Frantz's opinion that ███████████

███████████

3

███████████████ Ex. 1, Tomasini Decl. ¶ 8; *see also* Ex. 3, Frantz Decl. § VIII. In this opinion, Tomasini offers a two-pronged critique of Frantz's analysis.

First, he identifies glaring methodological flaws in the dark web searches Frantz's firm ran. Those searches ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. *See* Ex. 1, Tomasini Decl. ¶¶ 66-104. Tomasini also critiques Frantz for not even attempting to ████████████████████████████████████████████████ █████████████████████████ *Id.* ¶¶ 105-23. Compounding these problems, Frantz conducted her searches █████████████████████ ████████████████████████████████████████████████ ████████████████████ Ex. 5, Frantz Dep. 52:18-53:1, 55:3-22, 71:2-10. While she conceded that ████████████████████████████ █████████████████████████████████████ *Id.* 58:16-60:23. And incredibly, despite acknowledging that ███████████████████████ ████████████████████████████████████████████████ █████████████████ Ex. 1, Tomasini Decl. ¶¶ 124-46.

Second, Tomasini explains █████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

purported to find ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. Relying on Frantz's repeated concessions in her

deposition that ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ Ex. 5, Frantz Dep. 16:1-20:23, 23:12-14, 41:3-45:13, 51:24-

52:16, Tomasini explains that ████████████████████████████████████

█████████████████, Ex. 1, Tomasini Decl. ¶¶ 25-65. Tomasini also explains in detail

why these third-party documents do not support Frantz's conclusion that ████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████. *Id.*

    **Opinion 2.** Tomasini offers an affirmative opinion based on his own dark web

investigation: he concludes that █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 9. To support this opinion, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. *Id.* ¶ 148. This

repository is far more comprehensive and reliable than Frantz's live searches, in part

5

because ███████████████████████████████████████████████████████

███ . *Id.*

In the first set of searches, ██████████████████████████████████

█████████████████████████████████████████████ . *See id.* ¶ 149. The searches

were documented in a █████████████████████████████ that was disclosed with

Tomasini's declaration (██████████████████████████████). Ex. 13. From those

searches, Tomasini found ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Ex. 1, Tomasini Decl. ¶¶ 150-51; *see also* Ex. 13, AMCA Cyberattack Analysis Report.

In the second set of searches, Tomasini searched ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ . Ex. 1, Tomasini Decl. ¶ 152. This set of search strings included ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ Ex. 3, Frantz Decl. ¶ 349). Additionally, the searches

looked for ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ . Ex. 1, Tomasini Decl. ¶¶ 153-

6

55. These searches were documented in detail in ███████████████

██████████, which was also disclosed with Tomasini's declaration (█████

████████████████████████████████████████████████████████████

███████████████████). Ex. 14 (████████████████████████████

████████████████). Based on these searches, Tomasini was █████████████

████████████████████████████████████████████████████████████

████████. Ex. 1, Tomasini Decl. ¶ 155. Notably, Plaintiffs ignore this second set of

searches entirely.

**Opinion 3.** Tomasini opines that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████. Ex. 1,

Tomasini Decl. ¶ 10; *id.* ¶¶ 157-202.

To support this opinion, Tomasini ran a comprehensive set of ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████. *Id.* ¶¶ 160-62. He also

ran those ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████. *Id.* ¶¶ 177-

78. Tomasini also ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶¶ 189-92.

Based on all of these analyses, Tomasini determines that ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ Tomasini explains

that this means, ███████████████████████████████████████

██████████████████████████████████

**Opinion 4.** Finally, Tomasini opines on ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Tomasini explains that since both Frantz's search process and his own methodology

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ . *Id.* ¶ 11, 203-07.

Tomasini does *not* purport to rebut ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ . *See* Ex. 2, Tomasini

Dep. 190:5-192:9; Ex. 1, Tomasini Decl. ¶ 4. Nor does he offer any opinions regarding

██████████████████████████████████████████████████████████

███████████████████.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, expert opinion testimony is admissible so long as the expert is qualified and the opinion is both reliable and relevant. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). Courts construe the "qualification" requirement liberally: "a broad range of knowledge, skills, and training qualify an expert" to offer opinion testimony. *Id.*; *see also Fitchburg Mut. Ins. Co. v. Burlington Landscaping, Inc.*, 2017 WL 238479, at *2 (D.N.J. Jan. 19, 2017) ("[T]he basis for a proposed expert's expertise can be practical experience as well as academic training and credentials." (citation modified) (quoting *Betterbox Comm'ns, Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327 (3d Cir. 2002)). As to reliability, the identification of "flaws" in or disagreements with an expert's interpretation of evidence does not warrant exclusion. *N.J. Dep't of Env't Prot.*, 2019 WL 4052431, at *6 (D.N.J. Aug. 28, 2019). Instead, such issues "affect the weight of the testimony, not its admissibility." *In re BlackRock Mut. Funds Advisory Fee Litig.*, 2019 WL 1387450, at *24 (D.N.J. Feb. 8, 2019), *aff'd*, 816 F. App'x 637 (3d Cir. 2020). Though the district court must ensure the requirements of Rule 702 have been met, the Third Circuit "has a liberal policy of admissibility" for expert testimony. *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

## ARGUMENT

### I. THERE IS NO BASIS TO EXCLUDE OPINIONS THAT TOMASINI NEVER OFFERED.

Plaintiffs' lead argument for exclusion is a lengthy discussion of why Tomasini is not qualified to opine on a number of issues. *See* Mot. 9-12. But Tomasini *never offered the opinions* Plaintiffs seek to exclude. Plaintiffs' puzzling foray into matters outside the scope of Tomasini's opinions should be disregarded.

First, Plaintiffs claim that Tomasini is not qualified to opine on ███████ ████████████████████████████████████████████████████████████ ███████████████████████████████ Mot. 9. But as Plaintiffs concede only two sentences later, Tomasini testified ██████████████████████████████████████ ██████" *Id.* And he plainly did not: the four opinions set forth in his declaration pertain exclusively to ███████████████████████████████████████████ ████████████████████████████████████████████████.[1] Ex. 1, Tomasini Decl. ¶¶ 8-11.

Second, Plaintiffs assert that Tomasini is not qualified to opine on ████ ██████████████████████████████████████████████████. Mot.

---

[1] To the extent Plaintiffs argue that Tomasini's declaration and the opinions he offers ████████████████████████████████████████ should be excluded because he does not also offer opinions on every other part of Frantz's declaration, *see* Mot. 3, that argument should be rejected. *See City of Almaty v. Ablyazov*, 2021 WL 5154110, at *12 (S.D.N.Y. Nov. 5, 2021) ("A rebuttal witness has no obligation to address all portions of an expert's opinion so long as the rebuttal testimony is relevant.").

10

10-11. Again, Tomasini never purported to do so: ███████████████████

████████████████████████████████████████████████████████

██████████ *Id.* 10. Plaintiffs use this misdirected argument about ████████████

qualifications to claim that Tomasini cannot validly critique Frantz' analysis of third-

party documents. But this is a red herring. Even without ████████████ expertise,

Tomasini's extensive experience with investigations relating to cybersecurity incidents,

Ex. 1, Tomasini Decl. ¶ 12, gives him a strong and reliable basis to opine that third-

party documents purportedly showing ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

*See infra* § II.

In addition, the third-party documents Frantz evaluated were not even ████████

████████████████████████████████████████████████████████

█████████████████████████████:

- ████████████████ sent to AMCA ████████████████████████

  ████████████████████ *See* Mot. 10. Frantz conceded that
  ████████████ Ex. 5, Frantz Dep. 36:7-12,
  ████████████████████████████

- ████████████████████████████████████████████████████

  ████████████ (which is squarely within Tomasini's expertise), not ████
  ████████████. *See* Mot. 10-11.

11

- ███████████████████████████████████████ Tomasini discusses that even touched on ███████████████████████. *See id.* 10. But Tomasini addressed the aspects of that report that relate directly to ███████████████ ██████████████████████████). *See* Ex. 1, Tomasini Decl. ¶¶ 25-42. Moreover, ████████████ is not even the sort of █████████ that requires specialized expertise to interpret; rather, it contained a plain English narrative ██████████ ███████████████████████████. *See* ECF 585 at 20; *see also* Ex. 8, CRA Dep. 127:18-133:25 (███████████████████████████████████████).

Third, Plaintiffs contend that Tomasini is not qualified to opine on whether ██████████████████████████████████. *See* Mot. 11-12. Once again, Tomasini does not offer that opinion. At his deposition, Plaintiffs asked Tomasini ████████████████████████████████████ ███████████████████████████. *See* Ex. 2, Tomasini Dep. 176:7-178:15. However, Tomasini never offered an opinion about █████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████. Indeed, Plaintiffs concede that Tomasini █████████████████ in his declaration. Mot. 12 (emphasis added). Plaintiffs cannot manufacture a critique of Tomasini's qualifications based on an opinion he does not offer.

Critically, nowhere in Plaintiffs' attacks on Tomasini's qualifications do they challenge his ability to opine on the specific subject matter that his opinions actually address: █████████████████████████████████████████

██████████████████████████████ *See* Ex. 1, Tomasini Decl. ¶ 1. Nor could

they. Tomasini is one of the foremost experts on the dark web, having spent more than

a decade leading dark web investigations in response to cybersecurity incidents and

developing dark web tools used by law enforcement, national intelligence, and

corporate investigators. *Id.* ¶¶ 12-17. This is precisely the sort of practical experience

that qualifies an expert witness. *See Seneca Ins. Co. v. Beal*, 820 F. App'x 106, 108-09 (3d

Cir. 2020) (affirming expert was qualified to testify based on his practical experience

conducting fire investigations). The Court should disregard Plaintiffs' perplexing

request to exclude Tomasini as unqualified to give opinions that he never purported to

offer.

## II.     TOMASINI'S REBUTTAL OF FRANTZ'S EXFILTRATION AND DARK WEB OPINION IS ADMISSIBLE (OPINION 1).

Plaintiffs offer no cogent response to Tomasini's Opinion 1, which is a rebuttal

of Frantz's *ipse dixit* opinion that ████████████████████████████████

████████████████████████████████. Tomasini explains why both parts

of Frantz's analysis—██ ██ ██ ██ ██ ██ ██ ██

██████████████████████████████—are methodologically

unsound and fail to support her opinion. *See* Ex. 1, Tomasini Decl. ¶¶ 24-146.

Plaintiffs do not even attempt to argue that Tomasini's opinion rebutting part (i)

of Frantz's analysis is unreliable. They do not (and cannot) dispute that Tomasini is

qualified to opine on Frantz's search methodology. Nor do they have anything to say

13

about Tomasini's discussion of the multitude of reasons why Frantz's dark web searches and analysis are methodologically infirm and do not support her opinion. *See id.* ¶¶ 66-146.

Instead, Plaintiffs focus exclusively on Tomasini's rebuttal of part (ii) of Frantz's analysis—█████████████████████████████████, which fail to support her conclusion that ████████████████████████████████████████████████ ███████████ *See* Mot. 20-26. Plaintiffs argue that this portion of Tomasini's opinion is "unreliable" because Tomasini fails to apply a ███████████████ (that Frantz did not apply) and does not discuss additional third-party documents (that Frantz did not reference). Oddly, Plaintiffs discuss these arguments under a heading asserting that "Opinion 2 is unreliable." Mot. 20. This confuses and conflates Tomasini's Opinions 1 and 2, since Opinion 2 speaks only to ██████████████████████████ ████████████████████████ and does not relate to an analysis of third-party documents at all. In any event, neither argument calls into question the reliability or helpfulness of this portion of Tomasini's rebuttal reflected in Opinion 1.[2]

A. **Tomasini's Rebuttal of Frantz Is Reliable Even Without a ████ ████████████ Which Is Unnecessary to Tomasini's Opinions and Which Frantz Did Not Use.**

Plaintiffs first claim that Tomasini's opinion is unreliable because he did not perform a ██████████████████████████████████████████████.

---

[2] If Plaintiffs did intend these criticisms to apply to Opinion 2, then their Motion does not present *any* argument for exclusion of Opinion 1.

Mot. 20-23. But such an analysis was neither appropriate for the opinions Tomasini offers nor necessary to rebut Frantz's exfiltration and dark web opinion.

First, a ███████████ has no application to the opinions Tomasini offers. According to Plaintiffs' own purported expert, Matthew Strebe, a ███████████

████████████████████████████████████████

██████████████████████████████[3] Mot. 20 (quoting Strebe Decl. ¶¶ 44-47, 103-04). In other words, it attempts to determine ██████

████████████████████████████████████████

██████████████████████████.[4] Nothing about the way Strebe describes a ███████████ (or the sources he cites) suggests it is designed to determine ████████████████████████████

██████████████████████████████████████████.



―――――――――――

[3] As discussed in Defendants' letter motion, the Strebe Report should be stricken as improper "bolstering" of opinions required to carry Plaintiffs' burden of proof, which should have been disclosed more than a year ago in connection with Plaintiffs' Motions for Class Certification. *See* ECF 806 at 5. Indeed, Plaintiffs' heavy reliance on the Strebe Report in this motion to exclude Tomasini further illustrates the unfairness of Plaintiffs' sandbagging, as Defendants have had no opportunity to cross-examine Strebe to test either ███████████████████████████, which were disclosed for the first time with Plaintiffs' class certification reply brief.

[4] *See, e.g.,* ████████████████████████████████████ (cited in Ex. 6, Strebe Decl. ¶ 104 n.32); ████████████████; IBM, ████ (cited in Ex. 6, Strebe Decl. ¶ 104 n.36); Splunk, █████████████ (cited in Ex. 6, Strebe Decl. ¶ 104 n.35).

15

Therefore, a ████████████ would not be an appropriate methodology to support Tomasini's opinions ████████████████████████████████████████ ████████████████████████

Second, if Plaintiffs are correct that ████████████████████████████ then the Court should exclude Frantz on the same basis. There is no question that, although Frantz (unlike Tomasini) opined on ██████████████████████████████ ████████████████████ *See* Frantz Decl. § VII.A-D. Nor did Frantz use ████████ ████████████████████████████████████████ in connection with her exfiltration and dark web opinion. *See id.* § VIII. Therefore, Tomasini had no reason to use such a methodology to rebut Frantz's opinions, and he instead "sufficiently applied [his own] expertise to the facts and methodologies used by [Frantz] in forming [her] conclusions." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 835 (D. Minn. 2011) (denying motion to exclude experts).

Finally, Plaintiffs' discussion of the third-party documents they claim should have been assessed ████████████████████████ confirms the reliability of Tomasini's critiques. Tomasini opines that the ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

16



████████ . *See* Ex. 1, Tomasini Decl. ¶¶ 25-65.

Plaintiffs' own descriptions of these documents confirm that Tomasini is correct about how they should be interpreted. For example:

- ████████████████████████████████████ Mot. 20-21.

- ████████████████ *see* Ex. 7, Gemini Dep. 134:23-135:9) ████████ Mot. 21-22.

- The only evidence ████████████████████ *Id.* 22-23. Plaintiffs concede tha ████████████ , Ex. 9, CRA Report.

Tomasini neither "ignored" the third-party documents Frantz cited nor dismissed them as not "credible," as Plaintiffs contend. *Id.* 21-22. Instead, he critiques Frantz for badly misstating the conclusions reached by those third parties: ████

████████████████████

████████████████████

████████████████████ .

Ex. 1, Tomasini Decl. ¶¶ 25-65. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales*

*Practices & Antitrust Litig.*, 2021 WL 2577490, at *9-10 (D. Kan. June 23, 2021) (declining to exclude defendant's rebuttal expert opinion, which was not "unreliable simply because it differs from the way [plaintiff's expert] analyzed the data").

### B. Tomasini Properly Considered All of the Evidence Frantz Cited to Support His Rebuttal.

Plaintiffs next argue that Tomasini failed to consider "sufficient information" to support his opinion because he does not address several categories of third-party documents that Frantz herself never cited. Mot. 23-26. This criticism betrays a basic misunderstanding of Tomasini's Opinion 1, which *rebuts* Frantz by opining on "intrinsic weaknesses" in her analysis rather than undertaking an independent investigation of third-party evidence. *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 776-77 (N.D. Ill. 2009) (defendant's rebuttal expert was "not required to undertake an independent investigation" because "[r]eviewing the allegedly flawed reports was enough").

In offering a rebuttal opinion that Frantz did not adequately support her opinion, Tomasini simply had no reason to go beyond the materials Frantz herself relied upon. *See, e.g.*, *id.* (rejecting exclusion of rebuttal expert who opined that plaintiff's expert relied on evidence that failed to support his opinion, where he "consult[ed] the same data that [plaintiff's expert] relied on in reaching his opinions"); *Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, at *11 (E.D. La. Apr. 29, 2008) (criticism of a defendant's rebuttal expert for failing to rely on additional evidence beyond the plaintiff's expert "overlook[ed] the

18

purposes for which [the defendant] seeks to introduce him as an expert witness," which was to "critique [the plaintiff's expert's] methodology and interpretation of the data"); *see also Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 386 (S.D.N.Y. 2014) (cited in Mot. 24; admitting rebuttal expert opinion as reliable where the rebuttal expert "review[ed] each of the categories" of data on which the initial expert relied).[5]

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████, and thus considered all of the necessary evidence to rebut Frantz's opinion. Plaintiffs' claim that Tomasini did not have a "sufficient" basis for his rebuttal opinion because he did not reference documents that Frantz herself did not rely on makes no sense—unless it is another reason to exclude Frantz for failing to address these supposedly crucial documents. In any event, none of the additional third-party documents that Plaintiffs point to undermine Tomasini's conclusion that Frantz's opinion is unreliable and unsupported.

---

[5] Plaintiffs' other case citations are misplaced. An expert's opinion was excluded in *E.E.O.C. v. Bloomberg L.P.* because he relied solely on information provided by counsel without validating it or ensuring it was complete and representative. 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010). And in *In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, an expert was excluded for cherry-picking scientific studies and results, without discussing her own studies to the contrary. 26 F. Supp. 3d 449, 460-62 (E.D. Pa. 2014). Here, by contrast, Tomasini considered *all* of the evidence Frantz relied on to support the sole opinion he rebuts, and it was *Frantz* who uncritically relied on a cherry-picked selection of third-party documents without verifying their validity.

First, Plaintiffs point to documents relating to ███████████████████

█████████████████████████████████████████████. *See* Mot. 24.

These documents are not relevant to Tomasini's opinion because, while they may shed

light on ████████████████████, they do not show █████████████

███████. Indeed, Frantz apparently did not believe █████████████

███████████████████████████████████████████████

█████████████████████. *See* Ex. 3, Frantz Decl. ¶ 329 (█████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████). Frantz instead █████████████████████████

███████████████████████. *Id.* ¶¶ 62, 72 n.90, 74 n.91, 76, 99, 139.

Tomasini's failure to scour other parts of Frantz's declaration (which he was not

rebutting) for documents not relevant to Frantz's exfiltration and dark web opinion

does not call into question the reliability of his analysis.

Second, Plaintiffs describe documents that Frantz did not review showing that

two other third-parties ████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ *see* Mot. 24-25, █████████

███████████████████████████████████████████████



████████████████████████████████████████████████████ [6] *see id.*

25-26. But these documents are entirely consistent with Tomasini's observation that ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. *See* Ex. 1, Tomasini Decl. ¶¶ 53-54, 62-64. These

documents do not provide any support for Frantz's speculative leap that ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████.

## III.  TOMASINI'S OPINION THAT ████████████████████ ████████████████████████ **IS RELIABLE AND** HELPFUL (OPINION 2).

In Opinion 2, Tomasini opines that ██████████████████████

████████████████████████████████████████████ This

opinion is based on ██████████████████████████████████

██████████████████████████, ████████████████, an industry-leading

_____

[6] Plaintiffs' spin on ████████████████████████████████. Mot. 26. ████████ Ex. 10, LC0158580, ████████████████████████████████ Mot. 25-26. Moreover, ████████████████████████████████████████████████████████████████████████████ *See* Ex. 11, Mahon Dep. 163:21-164:12, 165:17-166:9.

commercial tool that allows searches across a repository of billions of archived dark web records. Plaintiffs attempt to recast Tomasini's opinion, shortchange the scope of the comprehensive searches he performed, and misrepresent the validity and replicability of his search methodology. None of these criticisms undermine the reliability of Tomasini's opinion.

### A. Plaintiffs Mischaracterize Tomasini's Opinion as Attempting to ██████████████

Plaintiffs begin their attack by misstating what Tomasini's Opinion 2 actually says. Tomasini opines that, ████████████████████████████████████████████████████████████████████████ *see* Mot. 14-15—he found ███████████████████████████████████████████████████████████████████ Ex. 1, Tomasini Decl. ¶¶ 9, 210. To put it in Plaintiffs' words, Tomasini opines that ███████████████████ Mot. 15-16 (emphasis omitted).

Lacking any response to Tomasini's actual opinion, Plaintiffs instead mischaracterize him as having taken a far more absolute position that he ████████ ██████████████████████████████. *Id.* 13. But Tomasini never purported to ███████████ *Id.* As Tomasini testified, ███████████ ███████████████████████████████

22



██████████████████████ Ex. 2, Tomasini Dep. 169:22-171:9 (██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████). Rather, Tomasini used ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████. *Id.* 355:3-14, 359:25-360:10, 404:21-405:9 (██████

██████████████████████████). ██████████.

There is another good reason that Tomasini does not overextend in the way Plaintiffs claim: Defendants do not need to ████████████ because it is Plaintiffs' burden to prove with common evidence that there was exfiltration as to all putative class members (*i.e.*, exfiltration of the entire CHAMP database, which held personal information pertaining to all of Defendants' customers who received notice of the AMCA Cyberattack). *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12, 316 n.14, 320-21 (3d Cir. 2008). Plaintiffs' arguments to exclude Tomasini rely on speculation that this information was ██████████████████████████████

████████████████████████████████████████████████. *See, e.g.*, Mot. 14 (claiming that ████████████████████████████████

████████████████████████████). Nor did Plaintiffs (or Frantz) have access to ████████████████████████████████████

████████████████████████████, meaning that Plaintiffs have

23

no evidence of ███████████████████████████████████████████

███████████████████████████████████████████). *See, e.g.,* Ex. 5,

Frantz Dep. 44:16-45:9. This speculation falls far short of Plaintiffs' evidentiary burden.

And Tomasini's opinion confirms that he found ████████████████████████

██████████████████████████████████████.[7]

**B.    Tomasini's Methodology for Searching the Dark Web Is Reliable and Based on Sufficient Evidence.**

Plaintiffs next argue that Tomasini's opinion is unreliable because he ████

████████████████████████████████████████████████████████

████████████████████████████ Mot. 16-19. Neither criticism has merit.

**1.    Tomasini Ran Dozens of Search Strings Designed to Reliably Identify ████████████████████.**

Plaintiffs falsely claim that Tomasini ████████████████████████████

████████████████████████████████████████████ Mot.

16 (emphasis in original and citation modified). This description distorts beyond

---

[7] To the extent Plaintiffs argue that Tomasini failed to consider "sufficient information" to support Opinion 2 ████████████████████████████, Mot. 23-25, they again mischaracterize Tomasini's opinion. Tomasini does not claim that ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See* Ex. 1, Tomasini Decl. ¶¶ 49-52 (████████████████████████

████); *see also* Ex. 12, Nelms Dep. 114:16-117:18 (██████████████

████████████████████).

recognition Tomasini's search process, which attempted to identify ███████████ ██████████████████████████████████████████████████████████ ████████████████████████.

First, Plaintiffs' arguments focus solely on ███████████████ described in the first of two reports that Tomasini relies upon in support of Opinion 2—█████████ ██████████████████████ *See* Mot. 16-17. However, Plaintiffs completely ignore the second report Tomasini relies on for this opinion—███████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ *See* Ex. 1, Tomasini Decl. ¶ 153; *see also* Ex. 14, ██████████████████████████. The search strings in this second report █████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████ Mot. 16-17. Instead, the second report describes ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████. Ex. 14, ████████████████████████████. ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████. *Compare* Ex. 14, ██████████████████████████ *with* Mot. 17 (incorrectly criticizing Tomasini's ██████████████████████████████████████████████████████████

25

██████████████████████████████████████████). Instead, these search strings ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████, *see* Ex. 3, Frantz Decl. ¶ 349), ██████████████████████████████████████████████████████ ███████.[8] *See* Ex. 1, Tomasini Decl. ¶ 153. Thus, Plaintiffs' argument that the search strings in the first report were insufficient falls flat, since it ignores the extensive search strings in the second report.

Second, Plaintiffs' attempt to diminish the ██████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████ is absurd. As Tomasini explained during his deposition, █████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████. Ex. 2, Tomasini Dep. 100:9-24. For example, ██████████████████████ contained the following single search string:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

As noted, for his dark web searches, Tomasini used █████████████████████ ████████████████████████████████████████████████████████ Ex. 1, Tomasini Decl. ¶ 153. By contrast, when Frantz looked for ████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████ *Id.* ¶¶ 115-16.

26



Ex. 13, ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Therefore, the number of search strings used is pure happenstance. ████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Ex. 2, Tomasini Dep. 394:12-22; *id.* 76:24-77:8.

Third, Plaintiffs criticize Tomasini for ██████████████████████

███████████████████████████████████████

█████████████████████████████████████. Mot. 19

n.2. As discussed *infra* at § III.C, ██████████████████████████

███████████████████████████████████████

████████████████████████████. In any event, Tomasini did far better than

████████████████████████████ that Frantz attempted; ███████

███████████████████████████████████████

███████████████████████████████████████

27



████████████████████████.[9] Ex. 1, Tomasini Decl. ¶¶ 149, 152. In fact, Tomasini ████████████████████████████████████ Ex. 2, Tomasini Dep. 378:12-379:4, ██████████████████████████████ ██████████████████████████████████████, Mot. 19 n.2.[10] As Tomasini explained, █████████████████████████ ████████████████████████████████████████ ████████████████ Ex. 2, Tomasini Dep. 380:5-382:20.

### 2. Tomasini's Use of a Team of Highly-Trained Analysts Is Industry-Standard and Reliable.

Plaintiffs also attempt to undermine the reliability of Tomasini's conclusion by mischaracterizing his use of a team of analysts—whom Tomasini personally trained to

---

[9] Using an industry-standard tool like ████████████ ██████ improves the accuracy and reliability of a dark web investigation for multiple reasons. First, these tools allow searches across ██████████████████████████████████████ ████████████████████████████ *See* Ex. 3, Frantz Decl. ¶ 346; Ex. 1, Tomasini Decl. ¶¶ 71, 72, 125, 129. Second, ████████████ ████████████████████████████████ commercial tools have ████████████. Ex. 1, Tomasini Decl. ¶ 96. For these reasons, ████████████████████████████████████████ ████████████████████████████████ *See* Ex. 5, Frantz Dep. 58:16-60:23.

[10] As Frantz herself shows in her reply declaration, ████████ ████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 4, Frantz Reply ¶¶ 69-71.

use his industry-leading search methodology—as purportedly "parrot[ing] the ideas of other experts." Mot. 18. This is nonsense.

As Tomasini explained during his deposition, ███████████████ ████████████████████████████████████████████ ████████████. Ex. 2, Tomasini Dep. 328:15-329:19. ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████—just as they have done in dozens of other matters outside of the litigation context. *Id.* 95:14-96:14; *see id.* 81:8-21. ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████. *Id.* 88:19-89:15; *see also* Ex. 13, ████████████████████████████; Ex. 14, ████████████████████████. Contrary to Plaintiffs' assertion, ████████████████ provide the precise basis for concluding ████████████████████████████████████████ ████ Mot. 18. Tomasini asked appropriate questions to confirm ████████████ had been prepared consistent with his training and methodology, and ensured that he understood and agreed with the analysis. Ex. 2, Tomasini Dep. 86:13-88:5.

Expert witnesses commonly use support teams in precisely this manner for the nuts-and-bolts manual analysis required for their opinions. *See, e.g., Bledsoe v. FCA US LLC*, 2022 WL 4596156, at *16 (E.D. Mich. Sept. 30, 2022) (admitting testimony of

29

expert whose staff, at his direction, "complete[d] tasks and gather[ed] data relevant to the expert analysis"). And it was necessary to do so here, given ███████████ ███████████ to support Tomasini's opinions and ███████████████, which then required significant time for manual review and analysis. It simply is not feasible for one person, much less an expert at the top of his field and in high demand, to conduct all of that work on his own. Even Frantz used an analyst to assist her, ████ ██████████████████████████████████ ██████████████████████████████████. Ex. 5, Frantz Dep. 70:19-71:18. A testifying expert is not required to have personally punched the buttons and reviewed every hit to reliably opine about the results of an investigation and how those results allowed him to reach his opinions.[11] *See McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 30, 36-37 (D.D.C. 2004) (experts may "rely[] on [their] assistants to carry out analyses that the expert designed").

---

[11] None of the cases Plaintiffs rely on addressed similar facts as here, ████████ ██████████ prepared by his own team of analysts whom he personally trained and oversaw, ██████████████████. *See Ely v. Cabot Oil & Gas Corp.*, 2016 WL 4169220, at *6-7 (M.D. Pa. Feb. 17, 2016) (expert repeated opinions from unaffiliated medical professionals concerning a subject in which he "admittedly holds no expertise"); *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (expert relied on a letter prepared by a separate company); *see also In re Pool Prods. Distrib. Mktg. Antitrust Litig.*, 166 F. Supp. 3d 654, 676 (E.D. La. 2016) (expert failed to "provide any evidence of his calculations or any description of his results); *Rossano v. Maxon*, 659 F. Supp. 3d 559, 570 (E.D. Pa. 2023) (similar). In fact, these cases underscore the impropriety of Frantz's uncritical reliance on the conclusions of third parties.

### C.    Tomasini's Documentation of His Search Methodology and Results Allows for Validation.

Finally, Plaintiffs claim that they "can neither review nor replicate" Tomasini's dark web search results because ████████████████████████████████ ████████████████████████████. Mot. 18-19. To the contrary, Tomasini provided all of the information necessary for Plaintiffs to replicate each of his searches and return the same results, which they could have reviewed to validate his work.

████████████████████████████████, he identifies the specific search strings and parameters he used and the specific platform ████████ across which he searched those terms. Exs. 13 & 14, ██████████. Plaintiffs thus had all the information they needed to run the exact same searches Tomasini did and then validate the exact same results. As Tomasini explained, ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ Ex. 2, Tomasini Dep. 89:16-90:22; *id.* 92:12-93:10 (████████████████████ ████████████████████████████); *id.* 334:8-335:4.

Plaintiffs complain that they could not test Tomasini's searches because ████ ████████████████████████. Mot. 19. But Plaintiffs' own expert, Frantz, ████████████████████████████████████████ ██. Ex. 5, Frantz Dep. 55:12-22; *see also* Ex. 4, Frantz Reply ¶¶ 69-71 (████████



██████████████████████████████████████████████). Thus, Plaintiffs were able to test Tomasini's searches and conclusions; their choice not to do so is not a failure on Tomasini's part.

Perhaps recognizing that their replicability argument lacks merit, Plaintiffs preemptively try to bolster Frantz by building a false equivalency between Tomasini's and Frantz's documentation of their dark web searches. They claim that Frantz

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Mot. 19 n.2. Frantz's testimony proves both of these claims are false.

First, Frantz testified that, incredibly, ██████████████████████████ ████████████████████████████████████ Ex. 5, Frantz Dep. 155:18-156:19. She explained that ███████████████████████████████████████████████ ████████████████████████████████████████████. *Id.* 76:14-77:12 (emphasis added). Instead, the only evidence of her searches she produced were

████████████████████████████████████████████████████

██████████████████████ *Id.* 120:23-121:14; *id.* 153:24-155:17 (████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████ ). Thus, Frantz failed to produce a *single document* showing any searches she actually ran or the results those searches actually returned.

Second, even had Frantz preserved evidence of her searches, Tomasini could not have repeated them because ████████████████████████████████████████ ████████████████████████████. *See* Ex. 3, Frantz Decl. ¶ 360 n.458. As Frantz explained, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████. Ex. 5, Frantz Dep. 104:24-105:16 (emphasis added). Accordingly, unlike with Tomasini's careful documentation, Frantz's slipshod process makes it impossible to replicate or validate her work. *See* Defs.' Omnibus Mot. to Excl. 15-16.

\*  \*  \*

In searching the dark web for ████████████████████████████████ ███████████████, Tomasini applied a consistent and reliable methodology used by dark web investigators, used appropriate data ████████████████████████ ████████ to construct search strings, and clearly documented all information necessary for another analyst to replicate and validate his results. His Opinion 2 is both reliable and helpful to a jury, and should be admitted.

## IV.  PLAINTIFFS DO NOT PROVIDE ANY BASIS FOR EXCLUDING TOMASINI'S OPINIONS 3 AND 4.

Plaintiffs' request to exclude Tomasini's Opinions 3 and 4 should be rejected because they fail to raise any arguments for exclusion of those opinions.

In Opinion 3, Tomasini opines that ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 1, Tomasini Decl. ¶ 10. Plaintiffs do not attack

Tomasini's qualifications to offer that opinion or the rigorous methodology he

applied—which involved ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ . *Id.* ¶¶ 159-63, 176-81, 188-92. Unsurprisingly,

Plaintiff do not even attempt to dispute Tomasini's substantive findings that ███████

████████████████████████████████████████████████████████████

██████

Instead, Plaintiffs' sole argument as to Opinion 3 is a single paragraph asserting

that the opinion is "irrelevant" because ██████████████████████████████

████████████████████████████████████████████████████████████

██████ Mot. 18. That misconstrues the purpose of Tomasini's opinion. Tomasini never

suggested anything in Opinion 3 about ████████████████████████████████

████████████████████ rather, his opinion that ██████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. The point of

Tomasini's opinion is that ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Tomasini's opinion is thus directly relevant to show that Plaintiffs

are unable to prove a core element of their negligence claim. *See United States ex rel.*

*Penelow v. Janssen Prods., LP*, 2022 WL 94535, at *22 (D.N.J. Jan. 10, 2022) (denying a

motion to exclude where the expert's testimony "would help the jury understand [the

defendant's] causation defense").

In Opinion 4, Tomasini opines that ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████. Ex. 1, Tomasini Decl. ¶¶ 11,

203-07. Frantz's and Tomasini's method for conducting their dark-web searches

confirm this point. Plaintiffs' Motion says *nothing* about this opinion, and therefore

Plaintiffs have waived any argument for its exclusion. *See Lab'y Corp. of Am. Holdings v.*

*Natera, Inc.*, 2025 WL 1769837, at *1 n.3 (D. Del. June 26, 2025) ("Parties that fail to

35

adequately identify the expert testimony that they seek to exclude do so at their own peril.").

Accordingly, Plaintiffs have not offered any reason to exclude Tomasini's Opinions 3 and 4, and their Motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion.

Dated:  December 3, 2025

Respectfully submitted,

By: */s/ David H. Hoffman*

David H. Hoffman
Daniel C. Craig
Heather Benzmiller Sultanian
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Tel.: (312) 853-7000
david.hoffman@sidley.com
dcraig@sidley.com
hsultanian@sidley.com

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
Tel.: (212) 839-8555
ejoyce@sidley.com

Ricardo Solano, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102
Tel.: (973) 596-4500
rsolano@gibbonslaw.com

*Attorneys for Defendant Quest Diagnostics Incorporated*

36

By: /s/ *Reade W. Seligmann*

Reade W. Seligmann
ALSTON & BIRD LLP
90 Park Avenue, 12th Floor
New York, NY 10016
Tel.: (212) 210-9453
reade.seligmann@alston.com

Kristine M. Brown
Donald M. Houser
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000
kristy.brown@alston.com
donald.houser@alston.com

Thomas P. Scrivo
Young Yu
O'TOOLE SCRIVO, LLC
14 Village Park Road
Cedar Grove, NJ 07009
Tel.: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

*Attorneys for Defendant Optum360, LLC*

By: /s/ *Bradley J. Bartolomeo*

Bradley J. Bartolomeo
Jeffrey Y. Spiegel
Ariadne Panagopoulou
Abaigeal D. Franson
LEWIS BRISBOIS BISGAARD &
SMITH LLP
One Riverfront Plaza, Suite 800
Newark, NJ 07102
Tel.: (973) 577-6260
bradley.bartolomeo@lewisbrisbois.com
jeffrey.spiegel@lewisbrisbois.com
ariadne.panagopoulou@lewisbrisbois.com
Abaigeal.franson@lewisbrisbois.com

*Attorneys for Defendants Sonic Healthcare
USA, Clinical Pathology Laboratories, Inc.,
Aurora Diagnostics LLC, and Austin
Pathology Associates*

37