

**Edward J. Fanning, Jr.**
Partner

T. 973.639.7927

efanning@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
www.mccarter.com

November 12, 2025

**<u>VIA ECF</u>**

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

RE:   *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, No. 19-md-2904(JKS)(MAH) — All Tracks
Defendants' Letter Motion to Strike Plaintiffs' Newly Disclosed Expert Matthew Strebe

Dear Judge Semper and Judge Hammer:

Defendants respectfully seek relief from Plaintiffs' eleventh-hour ambush with a new expert witness, who attempts to bolster the opinions offered by one of Plaintiffs' original experts using a new methodology, new analysis, and new evidence. Although styled as a rebuttal, the 78-page new expert report from Matthew Strebe (the "Strebe Report"), served almost a full year after the deadline for expert disclosures, is a blatant attempt to redo the flawed opinion of Plaintiffs' prior expert, Mary Frantz, regarding the alleged exfiltration of data from AMCA and supposed posting to the dark web, which she failed to establish.

Plaintiffs should not be permitted to reap a tactical advantage—and impose significant additional burdens and prejudice on Defendants—from their untimely and improper attempt to use a new expert with a new methodology to shore up their original expert on this exact same subject matter. Defendants respectfully request that the Court strike the Strebe Report and all portions of Plaintiffs' reply brief in support of their Motions for Class Certification that rely upon the Strebe Report.

**BACKGROUND**

For years, this litigation has been governed by a scheduling order that provides an orderly sequence for class certification proceedings:

- First, Plaintiffs were to serve their class certification motions and "any expert reports in support of class certification," and then make their experts available for deposition within 30 days;
- Second, Defendants were to serve their opposition briefs and "any expert reports in opposition to class certification," and then make their experts available for deposition within 30 days; and

- Finally, Plaintiffs were to serve their reply briefs "and any *rebuttal* expert reports in support of class certification."

ECF 776 (the "Scheduling Order") (emphasis added); ECF 345. Though there have been extensions and changes to the timing of *Daubert* motions over time, the Court's scheduling orders have never deviated from this logical sequencing of briefing and expert reports, which permitted only "rebuttal expert reports" in connection with Plaintiffs' reply briefs in support of class certification. *See, e.g.*, ECF 345, 403, 430, 736, 746.

Consistent with the Court's prior scheduling order, on November 1, 2024, Plaintiffs served their opening Motions for Class Certification and reports from five purported experts: Gary Olsen, Mary Frantz, Amy Worley, Sharon Anolik, and Scott Witt.

Mary Frantz's report (the "Frantz Report") purported to support Plaintiffs' central theory for how the named Plaintiffs and proposed class members may sustain injury: that all putative class members' information was exfiltrated from AMCA and offered "for sale" on the dark web.[1] Ex. A, Frantz Rpt. ¶ 19. In her report, Frantz offered opinions on four topics:

*Id.* ¶ 9.

*Id.* ¶ 329. When she was deposed, Frantz was unable to defend her methodology, data, or conclusions. She admitted that she had never validated and did not even understand the third-party analyses on which she so heavily relied. *See, e.g.*, Ex. B, Frantz Dep. 23:12-19; *id.* 41:3-45:13; *id.* 51:24-52:9. And she was shown to have overstated those third parties' conclusions. *See, e.g.*, *id.* 36:7-12                . In addition, her testimony on the dark web searches run by her firm confirmed their unreliability: Frantz conceded that she failed to preserve any evidence of her own dark web searches, *see id.* 74:18-77:8, 88:21-89:25;

*see id.* at 71:11-18; 118:15-23; and never even attempted to attribute any personal information she claimed to have found on the dark web to AMCA, *see id.* 129:17-20.

Due to delay caused by Plaintiffs' substitution of another of their experts when he was shown to have plagiarized his opinion,[2] the parties negotiated and the Court entered an extension for the remainder of the class certification schedule. ECF 776.

---

[1] Based on those opinions, Plaintiffs offer other experts who opine that the risks posed by the supposed posting of information to the dark web necessitates that they purchase—in the future—products to protect against identity fraud or other criminal activity, despite having not purchased such products in the six-plus years since the AMCA Cyberattack.

[2] Following his deposition, Plaintiffs requested to withdraw Gary Olsen (who had offered opinions on certain damages theories) because "certain matters came to light making it inappropriate for

On June 4, 2025, Plaintiffs served revised Motions for Class Certification (reflecting the substitution) and Lee's substitute expert report (the "Lee Report"). ███████████████████ ███████████████████████████████████████████████████████████ Ex. C, Lee Rpt. ¶¶ 16-17; Ex. D, Apr. 4, 2025 Strebe Ltr.

On September 2, 2025, Defendants served their opposition briefs to class certification, and reports from three experts: Lorin Hitt, Matteo Tomasini, and Jeffrey Miller.

Tomasini's report (the "Tomasini Report") responded to only one of the opinions in the Frantz Report: ██████████████████████████████████████ Ex. A, Frantz Rpt. ¶ 329. First, Tomasini opined that Frantz's analysis lacked a reliable methodology and did not support her conclusions regarding ██████████████. Ex. E, Tomasini Rpt. ¶ 8. ███████████████████████████ *id.* ¶¶ 24-65, ████████████████████████████████████████████ , *id.* ¶¶ 66-146. Second, Tomasini opined that ██████████ ███████████████████████████████████████████████ *Id.* ¶¶ 147-56. Third, he opined, ████████████████████████████████████████ ███████████████████████████████████████ *Id.* ¶¶ 157-202. Finally, he opined that ████████████████████████████████████████ ████████████ *Id.* ¶¶ 203-07. ██████████████████████████████████ ████████████████████████████████

On October 22, 2025, Plaintiffs served an omnibus reply brief in support of their Motions for Class Certification, along with a series of purported "rebuttal" expert reports. Two of those reports covered the same topic, ████████████████████ The first was a "reply" report from Frantz, and the second was a 78-page report from Matthew Strebe, who was never previously disclosed as a purported expert for Plaintiffs, despite having been retained by Plaintiffs *since 2022*. Ex. D, Apr. 4, 2025 Strebe Ltr.

---

Plaintiffs to continue to rely on Mr. Olsen" or his damages models. ECF 769. The parties then negotiated an agreement for Plaintiffs to replace Olsen with Jonathan Lee, whose report would be limited to ████████████████████████████████████████ ████████████████████████████████████████

*Id.*

The Strebe Report retreads the same discussion from the original Frantz Report regarding ███████████████████████████████ and attempts to bolster Frantz's deficient opinions in two ways. First, Strebe purports to apply ████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Second, Strebe draws on documents from additional third-parties ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See id.* ¶¶ 103-86.[3]

## LEGAL STANDARD

Parties must disclose testifying experts, including "a complete statement of all opinions the witness will express and the basis and reasons for them," "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(D). Expert testimony that is not timely disclosed cannot be used for any purpose, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To assess whether striking an improperly disclosed expert is warranted, the Court must consider: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the Court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 133 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

## ARGUMENT

I.     **Plaintiffs Failed to Timely Disclose Strebe, Who Is Not a Proper "Rebuttal" Expert.**

Under the Scheduling Order and Rule 26, Plaintiffs were required to disclose Strebe, along with his opinions and all bases for them, by no later than November 1, 2024—nearly a *full year* before they served the Strebe Report. As discussed, the Scheduling Order provides for an orderly sequencing of class certification and expert discovery, under which each side is to serve expert reports containing *all opinions* they intend to rely upon for class certification with the opening

---

[3] Strebe also sets up a straw man by misconstruing Tomasini's opinions concerning ██████
████████████████████████████████████████████████████████████ Ex. F, Strebe Rpt. at ¶¶ 187-226. Finally, Strebe's opinion that Tomasini's ████████████████████████████████████ Ex. F, Strebe Rpt. at 73, is not the proper subject of expert testimony. The materiality or relevance of an opinion is a legal question that is solely within the province of the Court. *See Toledo Mack Sales & Serv. v. Mack Trucks, Inc.*, 386 F. App'x. 214, 218 (3d Cir. 2010) ("Assessing the probative value of the proffered evidence, and weighing any factors counseling against admissibility, is a matter first for the district court's sound judgment under Rules 401 and 403 and ultimately, if the evidence is admitted, for the trier of fact." (citation modified)).

motions and opposition briefs, respectively. The only expert reports that were permitted with Plaintiffs' reply briefs were rebuttal reports—*i.e.*, reports that "explain, repel, counteract or disprove the evidence of the adverse party." *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004). Nothing permitted Plaintiffs to offer new opinions or rely on new methodologies, facts, or data in rebuttal reports.

Consistent with that sequencing, the Scheduling Order provides an opportunity for the opposing party to depose each side's expert witnesses before the deadline for responsive briefing (*i.e.*, Defendants could depose Plaintiffs' experts before serving opposition briefs, and Plaintiffs could depose Defendants' experts before serving reply briefs). But it does not provide for depositions of any experts after rebuttal reports. The reason for this sequencing is "obvious": it presumes that Defendants already had an opportunity to depose those experts on any opinions they were offering in support of class certification. *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, at *3 (N.D. Cal Nov. 15, 2011) (granting motion to strike new rebuttal expert and noting the scheduling order provided "no opportunity" for "a deposition of the reply expert" because any such expert would have already been deposed). That is, the Scheduling Order here was "designed to forestall 'sandbagging' by a party with the burden of proof who wishes to save its best points for reply, when it will have the last word, a common litigation tactic." *Id.* The Strebe Report represents just this sort of improper sandbagging, and should be stricken.

Plaintiffs try to excuse their failure to comply with the Federal Rules and this Court's Scheduling Order by framing the Strebe Report as a "rebuttal" report. But even a cursory review of the Strebe Report shows that he is not rebutting Tomasini; rather, he is improperly bolstering opinions Plaintiffs originally offered through Frantz in an attempt to carry their burden of proof on class certification.

*First*, the bulk of the Strebe Report covers the same ground as Frantz's original opinions disclosed in November 2024. Both the Frantz Report and the Strebe Report describe ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Both Frantz and Strebe also ignore that ████████████████████████████████████████████████████████████████████████████ Ex. G, Gemini Dep. 134:11-16—and Strebe even adds the unsupported statement, directly contrary to the evidence, that ██████████████████████████████████████████████████████████████ Ex. F, Strebe Rpt. ¶ 138. The Strebe Report is simply a "do-over" of an opinion on which Plaintiffs bear the burden of proof, which expands three pages of discussion in the Frantz Report into more than 22 pages in the Strebe Report.[4] *Compare* Ex. A, Frantz Rpt.

---

[4] Plaintiffs also do not explain why Frantz, who purports to be a cybersecurity expert with incident response experience, was incapable of submitting these purported "rebuttal" opinions herself. Nor could they, as she submitted a reply report that repackages the *same* points and evidence as the Strebe Report. *See* Ex. H, Frantz Reply ¶¶ 15-17 ████████████████████████████████ ; *id.* ¶¶ 52-82 (████████████████████████████████ . Defendants' motion to exclude Frantz

¶¶ 330-43 *with* Ex. F, Strebe Rpt. ¶¶ 105-62. *See Wise v. C.R. Bard, Inc.*, 2015 WL 461484, at *2 (S.D.W. Va. Feb. 3, 2015) ("[A] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief."). Rule 26 does not "bless … [Plaintiffs'] introduction of a brand-new expert by way of a *reply* to an *opposition* on an issue on which it bears the burden of proof." *Oracle*, 2011 WL 5572835, at *4.

*Second*, through the Strebe Report, Plaintiffs improperly attempt to bolster Frantz's original opinion with new methodologies and new evidence. *See, e.g.*, *O'Connor v. Ford Motor Co.*, 2025 WL 790240, at *15 (N.D. Ill. Mar. 12, 2025) (excluding report of new expert as improper rebuttal because "rebuttal expert testimony may not be used to simply bolster a previous expert opinion"). In light of Defendants' criticisms that Frantz's opinions are completely unfounded and unsupported, *see, e.g.*, Ex. E, Tomasini Rpt. ¶¶ 24-65; Optum360 Opp. Class Cert. at 10-18 (to be filed in December 2025), the Strebe Report purports to use an *entirely new methodology* ████████████████ Ex. F, Strebe Rpt. ¶ 104. But it is improper to introduce a new methodology on reply: "A rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies." *Bowman ex. rel. J.B. v. Int'l Bus. Mach. Corp.*, 2013 WL 1857192, at *19-20 (S.D. Ind. May 2, 2013) (granting motion to strike rebuttal report); *see also Byrd v. Aaron's, Inc.*, 2017 WL 1093286, at *5-6 (W.D. Pa. Mar. 22, 2017) (granting motion to strike rebuttal report of original expert that introduced a new methodology). Nor is there any explanation for why, ████████████████████ Ex. F, Strebe Rpt. ¶ 44. Going even further, Strebe then applied that ████████████████████████ Ex. F, Strebe Rpt. ¶¶ 164-86. ████████████████████ Strebe's effort to bolster Frantz's original exfiltration opinion with additional evidence is improper as well. *See Crowley*, 322 F. Supp. 2d at 551 ("Rebuttal evidence … is not an opportunity for the correction of any oversights in the plaintiff's case in chief." (citation omitted)).

*Third*, the Strebe Report also attempts to bolster Frantz's other opinions, under the guise of providing "background." Ex. F, Strebe Rpt. ¶¶ 48-102. For example, Frantz opined ████ ██████████ Ex. A, Frantz Rpt. ¶¶ 66- ██████, *see id.* ¶ 7. Although none of Defendants' class certification experts opined about AMCA's cybersecurity posture,[5] ████████████████████ Ex. F, Strebe Rpt. ¶ 86 & n.17. Similarly, Frantz made passing references in her report to ████████████

and other experts, which was served on November 11, 2025 and will be filed in December 2025, explains why Frantz's opinions on these points should be excluded.

---

[5] Plaintiffs acknowledge as much in their class certification reply brief, which will be filed in December 2025. *See* Reply at 10, 15.

███████████, *see* Ex. A, Frantz Rpt. ¶¶ 361-62, but Strebe offers a new taxonomy of ████████████████████████████████████████████████████████████ *see* Ex. F, Strebe Rpt. ¶¶ 58-59, 68-77. Once again, this "background" in the Strebe Report is a belated attempt to backfill gaps in the Frantz Report. *See In re Sandridge Energy, Inc. Sec. Litig.*, 2019 WL 2476742, at *2 (W.D. Okla. June 13, 2019) ("Rebuttal experts may not properly present new arguments or put forth their own theories.") (internal quotation marks omitted).

*Finally*, nothing in the Strebe Report is proper rebuttal expert testimony to any opinions or analysis put forth in the Tomasini Report. Tomasini never offered opinions about ████████████████████████████████████████████████████████████████████████████████████ Nor does he offer any opinions about ████████████████████████████████████████████████████████████████████████████████████

Accordingly, Strebe's lengthy discussion of those issues improperly "goes far beyond rebutting the opinions expressed in [the other party's] expert report." *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, 2005 WL 838679, at *11 (N.D. Ill. Apr. 5, 2005) (granting motion to strike rebuttal report); *see also Madison Cap. Co., LLC v. S & S Salvage, LLC*, 2011 WL 195639, at *4 (W.D. Ky. Jan. 19, 2011) (striking "rebuttal" reports from new experts because "[t]he Court will not allow [plaintiff] to now introduce expert testimony belonging in its case-in-chief masquerading as rebuttal expert testimony").

Instead, Tomasini's opinions were far narrower. He first offered the rebuttal opinion that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *E.g.*, Ex. E, Tomasini Rpt. ¶ 209. Strebe's new and untimely methodology does nothing to *rebut* Tomasini's critique of Frantz's methodology; if anything, Plaintiffs' attempt to belatedly backfill those glaring flaws confirms Tomasini's criticisms. ████████████████████████████████████████████████████████████████████████████████████ Ex. E, Tomasini Rpt. ¶ 210—not, as Strebe reframes it, that Tomasini ████████████████████████████████████████████████████████████████████████████████████ Ex. F, Strebe Rpt. at 61 & ¶ 190 (capitalization altered). And for good reason: Defendants do not need to prove the negative, as it is Plaintiffs' burden of proof to show common evidence of exfiltration for all the putative classes. Accordingly, though certain of Strebe's opinions touch upon the same subject matter addressed in the Tomasini Report, none rebut Tomasini's actual opinions. *See In re Sandridge Energy, Inc. Sec. Litig.*, 2019 WL 2476742, at *2 ("[E]xpert reports that address the same subject matter as a prior report but do not directly contradict or rebut the actual contents of that prior report are not proper rebuttal reports.") (internal quotation marks omitted).

In short, the Strebe Report is an improper attempt, under the guise of "rebuttal," to introduce a new expert with a new methodology to bolster (or perhaps replace) a core opinion already offered by another of Plaintiffs' experts. Plaintiffs should not be permitted to use the Strebe Report as a year-too-late "do-over" for an issue on which they bear the burden of proof.

## II.    Plaintiffs' Failure to Timely Serve the Strebe Report Was Not Justified and Has Prejudiced Defendants.

Plaintiffs' failure to disclose Strebe in connection with Plaintiffs' opening briefs in support of class certification was neither "substantially justified" nor "harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs have not offered any justification or excuse for their year-late disclosure. Plaintiffs knew it was their burden to prove, with common evidence, that all putative class members suffered harm from the AMCA Cyberattack. They chose to do so with an expert opinion from Mary Frantz that ███████████████████████████████████████████████████ Had Plaintiffs wished to offer an opinion from Strebe on the same topic, they could have done so with their initial round of expert reports in November 2024. Indeed, Plaintiffs have been working with Strebe since as early as 2022, and thus had every opportunity to serve a report from him. *See* Ex. D, Apr. 4, 2025 Stebe Ltr. But they chose not to do so. Plaintiffs may now regret that strategic decision, in light of the many glaring deficiencies in Frantz's opinions that Defendants have uncovered. That does not provide any "reasonable basis" or "justification" for their failure to comply with the Federal Rules and the Scheduling Order requiring disclosure of all experts last year. *See Everest Nat'l Ins. Co. v. Am. Claims Mgmt.*, 2025 WL 2300758, at *5 (D.N.J. Aug. 8, 2025) (concluding that a party lacked "substantial justification" when it knew for years before a late disclosure that it would rely on the material and it "offer[ed] no explanation for it failure to produce" on time).

Moreover, Plaintiffs' flouting of the Scheduling Order is far from "harmless," Fed. R. Civ. P. 37(c)(1), as Defendants face substantial prejudice from Plaintiffs' eleventh-hour introduction of a new expert who features heavily in Plaintiffs' reply brief. Indeed, each of the *Pennypack* factors applied by the Third Circuit counsels in favor of striking the improperly disclosed Strebe Report. 559 F.2d at 904-05.

*First*, Defendants have suffered significant prejudice from Plaintiffs' ambush introduction of a new expert witness on the same day that class certification proceedings were supposed to conclude. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2025 WL 1385222, at *6 (D.N.J. May 13, 2025) (striking rebuttal report because plaintiffs' untimely disclosure of their rebuttal expert was "highly prejudicial and is not harmless"); *Forrestal Guarani S.A. v. Daros Int'l, Inc.*, 2012 WL 13187472, at *7 (D.N.J. Apr. 2, 2012) (defendant was "severely prejudiced" by the plaintiff's introduction of untimely expert reports which deprived it "of the ability to meaningfully challenge that expert"). The parties have been litigating class certification for more than a year now. In particular, since Plaintiffs served the Frantz Report on November 1, 2024, Defendants collectively have already spent many months and hundreds if not thousands of hours reviewing the Frantz Report, preparing for and taking Frantz's deposition, working with Tomasini to prepare his report rebutting Frantz's opinions, and drafting class certification opposition briefs that respond to Frantz's opinions.

If the Strebe Report is not stricken, Defendants will now be forced to expend hundreds of additional hours and substantial resources to respond to Strebe's new theories, methodology and evidence—all because Plaintiffs chose to substitute in a new expert at the close of class certification proceedings in an effort to shore up the Frantz Declaration. This is precisely the sort of unfair surprise and prejudice that Rule 26 was designed to prevent. *See, e.g.*, *Gilbane Bldg.*, 2005 WL 838679, at *10 (striking new rebuttal expert because "[a]dding a substantive new expert report, which would likely take the opponents' experts several weeks to analyze, and [add] new potential deponents to an already tight discovery schedule simply is not fair"); *E.M. Sergeant Pulp*

& *Chem. Co. v. Travelers Indem. Co.*, 2015 WL 9413094, at *6 (D.N.J. Dec. 22, 2015) (late disclosure of an expert report prejudiced the opposing party "in the sense of delay, inconvenience, and increased expense," along with "delayed resolution" of the case and "the need for additional motion practice").

*Second*, Defendants cannot cure this prejudice. Defendants have already expended significant resources responding to Plaintiffs' exfiltration and dark web theories, and an opportunity to spend yet more money and time responding to a new expert opining on the same topics only compounds—not cures—that prejudice. *In re Johnson & Johnson Talcum Powder*, 2025 WL 1385222, at *6 (holding that allowing defendants to depose plaintiffs' previously undisclosed rebuttal expert would not cure the undue prejudice to defendants); *Crown Bay Marina, L.P. v. Reef Transp., LLC*, 2020 WL 5166031, *5 (D.V.I. Aug. 31, 2020) (holding that "the prejudice to [defendants] cannot be cured in a timely and cost-efficient manner" because reopening discovery to allow for a deposition would "inevitably impose a substantial burden … as well as additional costs" (citations omitted)). On top of this, by waiting until after Defendants filed their class certification opposition briefs and expert reports, Plaintiffs gained a tactical advantage by re-working their opening Motions to address the deficiencies that Defendants identified. Not only would granting additional time fail to cure the prejudice to Defendants, it would also bless Plaintiffs' prejudicial tactics.

*Third*, if the Court allows the Strebe Report to stand—even in part—it will disrupt the case schedules and delay resolution of class certification by at least several months. As discussed below, *see infra* § III, expert discovery would need to be reopened to allow Defendants a fair opportunity to test and respond to Strebe's new opinions. In addition, following additional expert discovery, Defendants would need the opportunity to move to exclude Strebe's testimony pursuant to Federal Rule of Evidence 702, and then to file a sur-reply brief in opposition to Plaintiffs' Motions for Class Certification that addresses the untimely Strebe opinions on which Plaintiffs' reply brief heavily relies. Those disruptions would be minimized if the Court strikes the Strebe Report. Though a sur-reply brief would still be necessary, Defendants could promptly move for leave to file a sur-reply brief that addresses a more limited set of issues, including Plaintiffs' new class definitions, as soon as Plaintiffs serve a revised reply brief and without weeks of additional discovery. *See Forrestal Guarani S.A. v. Daros Int'l, Inc.*, 2012 WL 13187472, at *8 (D.N.J. Apr. 2, 2012) (reopening discovery to mitigate the prejudice to the defendant would be too disruptive to the court's docket in a case already pending for eight years); *In re Johnson & Johnson Talcum Powder*, 2025 WL 1385222, at *6 (holding that "permitting such a late disclosure would significantly disrupt the orderly and efficient progression of this MDL").

*Fourth*, Plaintiffs' conduct demonstrates "willfulness" in failing to comply with the Scheduling Order, since there is no legitimate explanation for the late-served Strebe Report other than to try to sandbag Defendants to gain a tactical advantage. As noted above, Plaintiffs knew they bear the burden of proof and they have been working with Strebe ██████████████ ████████████████████████████████████████████████████████ Ex. F, Strebe Rpt. ¶ 104—since at least 2022, several years before Plaintiffs served their class certification Motions and expert reports. Yet, Plaintiffs chose to serve the Frantz Report analyzing ████████████ ██████████████████████████████████████████████████████████ Plaintiffs' pivot to Strebe only after the fatal flaws in Frantz's analysis became evident is a bid for unfair tactical advantage. *See Crown Bay Marina*, 2020 WL 5166031, *5 (plaintiff who knew from the

outset it needed to prove damages acted with flagrant disregard when it deliberately delayed disclosure to gain an advantage); *see also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 299 (3d Cir. 2012) (courts "may also consider [a party's] justifications for failing" to make required disclosures when assessing willfulness or bad faith).

*Fifth*, the final factor concerning the "importance of the testimony sought to be excluded" cuts strongly in favor of striking the Strebe Report. As addressed above, Plaintiffs already have an expert witness (whom they disclosed at the appropriate time) to opine on the *exact same subject matter* as Strebe, ███████████████████████████████████████████ ████████████ Plaintiffs served both opening and reply expert reports from Frantz on precisely those issues. Indeed, most of Plaintiffs' citations to the Strebe Report in their class certification briefs also cite to one of Frantz's reports in support of the same proposition. Though Plaintiffs may wish to buttress Frantz's opinions with the Strebe Report, his testimony is not necessary and should be stricken. *See Crown Bay Marina*, 2020 WL 5166031, *5 (excluding expert testimony "will not impede plaintiff's ability to prove its losses through other experts and evidence").

\*     \*     \*

In sum, the Strebe Report represents an improper attempted do-over of an opinion on which Plaintiffs bear the burden of proof, and Plaintiffs' untimely disclosure of a new expert on reply has substantially prejudiced Defendants. The Court should strike the Strebe Report in its entirety and direct Plaintiffs to re-serve a reply brief in support of their Motions for Class Certification that omits any reference to the Strebe Report or the opinions it contains.

### III.   In the Alternative, Defendants Should Be Granted the Opportunity to Depose Strebe, Serve a Sur-Rebuttal Report, and Move for Exclusion of His Testimony.

In the alternative, if the Court does not strike the Strebe Report, fairness requires that Defendants be given a full opportunity to respond to Strebe's opinions consistent with the procedures that applied to all of Plaintiffs' other experts. Where a party's conduct does not warrant complete exclusion of an expert report, courts in this Circuit frequently grant parties additional time to depose and respond to the untimely or improper expert opinions. *See Lavell v. Camden Cnty. Coll.*, 2023 WL 4074077, at *8-9 (D.N.J. June 20, 2023) (denying motion to strike a rebuttal report that was served four days late but granting defendants leave to file a second expert report and re-depose the plaintiffs' expert); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 692 (D. Del. 2010) (permitting plaintiff to prepare and serve an additional rebuttal expert to respond to defendant's newly disclosed theory). Moreover, the Third Circuit has emphasized that "it is important that each side have an opportunity to depose the other side's experts in order to develop strong critiques and defenses of their expert's methodologies." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 739 (3d Cir. 1994). Plaintiffs should not be permitted to advance Strebe's new methodology and analysis without a meaningful substantive challenge simply because Plaintiffs ran out the clock on expert discovery before disclosing their reliance on Strebe.

10

Therefore, as an alternative form of relief, Defendants request that they be given 60 days from the Court's resolution of this letter motion to (i) depose Strebe, (ii) serve a sur-rebuttal report from their own expert in response to the Strebe Report, and (iii) if appropriate, move to exclude the opinions offered in the Strebe Report pursuant to Federal Rule of Evidence 702.

**CONCLUSION**

For these reasons, Defendants respectfully request that the Court strike the Strebe Report and all portions of Plaintiffs' reply brief in support of their Motions for Class Certification that rely upon the Strebe Report or, in the alternative, grant 60 days for Defendants to depose Strebe, serve a sur-rebuttal expert report, and move to exclude Strebe's testimony.[6]

| | |
|---|---|
| By: */s/ Reade W. Seligmann* | By: */s/ David H. Hoffman* |
| | |
| Reade W. Seligmann | David H. Hoffman |
| ALSTON & BIRD LLP | Daniel C. Craig |
| 90 Park Avenue, 12th Floor | Heather Benzmiller Sultanian |
| New York, NY  10016 | SIDLEY AUSTIN LLP |
| Tel.: (212) 210-9453 | One South Dearborn |
| reade.seligmann@alston.com | Chicago, IL  60603 |
| | Tel.: (312) 853-7000 |
| Kristine M. Brown | david.hoffman@sidley.com |
| Donald M. Houser | dcraig@sidley.com |
| ALSTON & BIRD LLP | hsultanian@sidley.com |
| 1201 West Peachtree Street | |
| Atlanta, GA  30309 | Eamon P. Joyce |
| Tel.: (404) 881-7000 | SIDLEY AUSTIN LLP |
| kristy.brown@alston.com | 787 Seventh Avenue |
| donald.houser@alston.com | New York, NY  10019 |
| | Tel.: (212) 839-8555 |
| Thomas P. Scrivo | ejoyce@sidley.com |
| Young Yu | |
| O'TOOLE SCRIVO, LLC | Ricardo Solano |
| 14 Village Park Road | GIBBONS P.C. |
| Cedar Grove, NJ 07009 | One Gateway Center |
| Tel.: (973) 239-5700 | Newark, NJ  07102 |
| tscrivo@oslaw.com | Tel.: (973) 596-4500 |
| yyu@oslaw.com | rsolano@gibbonslaw.com |
| | |
| *Attorneys for Defendant Optum360, LLC* | *Attorneys for Defendant Quest Diagnostics Incorporated* |

---

[6] In addition to the relief requested in the instant motion, Defendants intend to seek leave to file a sur-reply brief in opposition to class certification that, at a minimum, addresses the new class definitions Plaintiffs proposed on reply and may also address other new arguments and theories Plaintiffs raised for the first time.

By: */s/ Edward J. Fanning, Jr.*

Edward J. Fanning, Jr., Esq. (055351994)
McCARTER & ENGLISH, LP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
Email:  efanning@mccarter.com

Allison Holt Ryan
Adam A. Cooke
Alicia J. Paller
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Email:  allison.holt-ryan@hoganlovells.com
          adam.a.cooke@hoganlovells.com
alicia.paller@hoganlovells.com

*Counsel for Defendant Laboratory Corporation of America Holdings*

By: */s/ Bradley J. Bartolomeo*

Bradley J. Bartolomeo
Jeffrey Y. Speigel
Ariadne Panagopoulou
Abaigael D. Franson
LEWIS BRISBOIS BISGAARD & SMITH LLP
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 577-6260
Bradley.Bartolomeo@lewisbrisbois.com
Jeffrey.Speigel@lewisbrisbois.com
Ariadne.Panagopoulou@lewisbrisbois.com
Abaigael.Franson@lewisbrisbois.com

*Attorneys for Defendants Sonic Healthcare USA, Clinical Pathology Laboratories, Inc., Aurora Diagnostics LLC, and Austin Pathology Associates*