

Ricardo Solano Jr.
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Direct: 973-596-4471 Fax: 973-639-6223
rsolano@gibbonslaw.com

December 5, 2025

**VIA ECF**

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

RE:    *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, No. 19-md-2904(JKS)(MAH) — All Tracks
Reply in Support of Defendants' Letter Motion to Strike Plaintiffs' Newly Disclosed Expert Matthew Strebe

Dear Judge Semper and Judge Hammer:

Plaintiffs' letter in opposition to Defendants' letter motion to strike the Strebe Report, ECF 809 ("Opp. Ltr."), confirms that the Strebe Report is not permissible "rebuttal" to Tomasini's opinions, but rather an improper effort to bolster the affirmative exfiltration and dark web opinion their original cybersecurity expert, Mary Frantz, offered but failed to support. This exfiltration and dark web opinion is a critical building block in Plaintiffs' Motions for Class Certification, as it is their sole evidence that all putative class members are purportedly at a risk of future harm. And, in an attempt to carry their burden of proof on that issue, Plaintiffs chose to rely solely on Frantz. It was only after Defendants pointed out the myriad flaws in Frantz's analysis and conclusions that Plaintiffs attempted to salvage their case and gain an unfair tactical advantage with a new expert offering the same opinion, but based on an entirely new methodology. This is textbook bolstering.

The Court should reject Plaintiffs' attempt to reimagine Strebe as a rebuttal expert. Both Frantz and Strebe purport to be experts on the same subjects, opine on ████████████ ████████████████████████████ and reach the same conclusion. Plaintiffs' claim that they interjected the Strebe Report only because they needed to "rebut" Tomasini is entirely implausible. Instead, after Frantz was discredited, Plaintiffs scrambled to save her affirmative opinion. Plaintiffs' attempt at this critical juncture in the case to salvage their class certification motions with a year-too-late expert opinion should be rejected. For this reason and all the reasons below, the Court should grant Defendants' motion to strike.

## I.    Plaintiffs Failed to Timely Serve the Strebe Report, Which Bolsters Frantz Rather Than Rebut Tomasini.

There is no dispute that Plaintiffs were permitted to serve only "rebuttal expert reports" with their class certification reply brief. ECF 776. Plaintiffs make no effort to argue that new

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 2

affirmative expert reports and opinions were permitted at that stage. Instead, they attempt to recast Strebe's affirmative opinion that ████████████████████████████████ ████████████████████████ into the garb of permissible "rebuttal." Ex. F, Strebe Rpt. (ECF 806-7) at 31. Those efforts fail.

**A.    The Strebe Report Is Improper Because It Bolsters Frantz Rather Than Rebutting Tomasini.**

Plaintiffs begin by misconstruing Defendants' motion as arguing that the Strebe Report is improper solely because he is a "new expert." Opp. Ltr. at 3-4. Not so. There may be circumstances where a new expert on rebuttal is appropriate, such as when different subject matter expertise is required to respond to an opposing expert—but Plaintiffs have not identified any such circumstances here. *See infra* § I.C (discussing Plaintiffs' cases addressing this situation). Instead, both Frantz and Strebe purport to be experts on the same subjects, so Plaintiffs' injection of Strebe at the last minute is an obvious attempt to save Frantz's faulty opinions.

As Defendants showed, the Strebe Report addresses the same three core categories of third-party evidence as the Frantz Report. *See* Ltr. Mot. to Strike (ECF 806) at 5-7. █████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████ Ex. F, Strebe Rpt. (ECF 806-7) ¶¶ 105-62. This is not mere "expansion" or "elaboration" of the Frantz Report, Opp. Ltr. at 9, but rather a wholesale "do-over" after Frantz was badly damaged during deposition.[1] *See Lavell v. Camden Cty. Coll.*, 2023 WL 4074077, at *5 (D.N.J. June 20, 2023) (holding that a report is not proper rebuttal when it "contradicts the initial report," including by "employ[ing] a significantly different method to arrive at" the opinion); *Bowman v. Int'l Bus. Machine Corp.*, 2012 WL 6596933, at *6-7 (S.D. Ind. Dec. 18, 2012) (finding a change in methodology was improper for a rebuttal report), *objections overruled*, 2013 WL 1857192 (S.D. Ind. May 2, 2013); *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, 2005 WL 838679, at *8 (N.D. Ill. Apr. 5, 2005) (striking purported "rebuttal" report that more than doubled the length of the narrative from the original report as improper bolstering).[2]

---

[1] Defendants explained in detail all of the fatal methodological deficiencies revealed during Frantz's deposition in their Omnibus Motion to Exclude Plaintiffs' Experts, which was served on November 11, 2025 and will be filed later this month.

[2] Plaintiffs' cases are off-base, as they addressed proper rebuttal where an expert identified additional examples or alternative techniques in direct response to an opposing expert's criticism—not a repetition of the *same* points from the original report with a brand-new methodology. *See Vrakas v. U.S. Steel Corp.*, 2019 WL 7372041, at *12 (W.D. Pa. Dec. 31, 2019) (cited in Opp. Ltr. at 9; permitting rebuttal report that did not replace the methodology used in the

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 3

As a result, the answer to Plaintiffs' supposedly rhetorical question of why they would "hold their best points," Opp. Ltr. at 4, is obvious: they believed Frantz would be sufficient to meet their burden until Defendants demonstrated the myriad methodological flaws that render her exfiltration and dark web opinion so unreliable that it should be excluded. Plaintiffs' attempt at a do-over to salvage an opinion that is a necessary building block (albeit insufficient, *see* Quest Opp. Class Cert. at 24-44; Optum360 Opp. Class Cert. at 28-37) to meet their burden to show classwide injury and causation should not be permitted. *See Wise v. C. R. Bard, Inc.*, 2015 WL 461484, at *2 (S.D.W. Va. Feb. 3, 2015) ("[A] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief.").

**B.      Plaintiffs Conflate Tomasini's Distinct Opinions to Recast the Strebe Report as "Rebuttal" to Opinions That Tomasini Never Offered.**

Plaintiffs next contend that the Strebe Report is "rebuttal" because his opinions are "framed" as responding to Tomasini's opinions. *See* Opp. Ltr. at 4-5. Plaintiffs' labels do not control. Appending the phrase "contrary to" at the beginning of an affirmative opinion does not transform that opinion into rebuttal. *See* Ex. F, Strebe Rpt. (ECF 806-7) at 31. *See, e.g.*, *Wang v. Injective Labs Inc.*, 2025 WL 775530, at *1-2 (D. Del. Mar. 11, 2025) (excluding affirmative opinion that should have been included in an opening report despite being "labeled" as a "rebuttal report"); *Yoe v. Crescent Sock Co.*, 2017 WL 11218929, at *10 (E.D. Tenn. Aug. 31, 2017) ("[S]ubstance triumphs over form: The Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion."). The pertinent question is whether the substance of that "contrary" opinion directly attacks the opinions and theories offered by the opposing expert, or simply offers an alternative affirmative opinion. The Strebe Report does the latter.

Plaintiffs' attempt to recast Strebe's affirmative opinions as a rebuttal relies on a fundamental mischaracterization of Tomasini's report and a conflation of distinct opinions he offered. As Defendants explained, ███████████████████████████████ ███████████████████████████████ ███████████████████. *See* Ltr. Mot. to Strike at 3. ███████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████

---

opening report, but rather responded to the opposing expert's criticisms by identifying alternative techniques); *Marine Travelift, Inc. v. ASCOM Spa*, 2015 WL 9008254, at *2 (E.D. Wis. Dec. 15, 2015) (cited in Opp. Ltr. at 9; permitting response to a criticism that original opinion of "obvious[ness]" was speculation by pointing to new examples of prior art); *Piercy v. Warkins*, 2017 WL 1477959, at *10 (N.D. Ill. Apr, 25, 2017) (cited in Opp. Ltr. at 8; permitting rebuttal to conclusion of a specific medical cause with evidence of other potential causes, which was consistent with original opinion that medical cause could not be determined).

GIBBONS P.C.



*Id.*

Plaintiffs conflate Tomasini's rebuttal Opinion 1 and affirmative Opinion 2 to create a new Frankenstein "opinion" of their own. They assert that Tomasini "concluded that ██████████████ ██████████." Opp. Ltr. at 5. ████████████████████████████████ ████████████████████████████████ But, as discussed *infra*, that is not an opinion Tomasini offered, and any response to it is not a "rebuttal" at all. ████████████████████████████████████████ Opp. Ltr. at 8. ████████████████████████████████████████ ████████████████████████████.[3]

The three "fundamental errors" Plaintiffs claim Tomasini made highlight their efforts to obfuscate and confuse.



Ex. F, Strebe Rpt. (ECF 806-7) ¶ 45, ████████████████████████████████ ████████████████████████████████ Strebe's purported "rebuttal" of Tomasini's rebuttal is nothing more than a re-do of Frantz's analysis of third-party documents.

---

[3] For a fuller discussion of Plaintiff's conflation of Tomasini's distinct opinions, each with their own supporting methodology, *see* Defendants' Opposition to Plaintiffs' Motion to Exclude the Report and Testimony of Matteo Tomasini, which was served on December 3, 2025 and will be filed later this month.

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 5

      The cases Plaintiffs rely on to support Strebe's new ██████████████ methodology in rebuttal are off base. In those cases, the court permitted rebuttal experts to present new methodologies in response to *affirmative opinions* offered by an opposing expert, since an alternative methodology that produces a different result is one way to attack the opposing expert's conclusion. *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016) (cited in Opp. Ltr. at 6); *see also, e.g.*, *FTC v. Innovative Designs, Inc.*, 2018 WL 3611510, at *2-3 (W.D. Pa. July 27, 2018) (cited in Opp. Ltr. at 4; allowing rebuttal expert report that refuted affirmative statistical opinions and permitting sur-rebuttal report); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (cited in Opp. Ltr. at 3 n.3; allowing rebuttal expert report that refuted opposing expert's affirmative analysis of employment data). The critical distinction here is that Tomasini did not offer an affirmative opinion ███████████████████████████████; he addressed those documents only as a rebuttal to Frantz. Ultimately, Strebe's purported "rebuttal" undermines Frantz's own analysis of these documents given ████████████████████████████████████████████ It does not rebut Tomasini's critiques of Frantz's analysis.

      The remaining cases Plaintiffs cite in their discussion of supposed third-party signals also are distinguishable as addressing rebuttals to affirmative opinions, rather than Strebe's "rebuttal" of a rebuttal. In *Avco Corp. v. Turn & Bank Holdings, Inc.*, the defendant served an opening expert report containing an affirmative opinion that certain of the plaintiffs' claims lacked any evidentiary basis. 2017 WL 2224915, at *19-20 (M.D. Pa. May 22, 2017) (cited in Opp. Ltr. at 5). The court held that the plaintiffs' rebuttal expert report was proper because it purported to identify evidence that the defendants' expert opined did not exist. *Id.* The same is true of *Haskins v. First American Title Insurance Co.*, where the court reached the unremarkable conclusion that an expert could properly rebut an affirmative opinion. 2013 WL 5410531, at *3 (D.N.J. Sept. 26, 2013) (cited in Opp. Ltr. at 5). That is nothing like the fact pattern here, where Strebe purports to respond to Tomasini's *rebuttal* Opinion 1—████████████████████████████████—in an attempt to re-do and rehabilitate Frantz's affirmative opinion. This is improper.



████████████████████████████████████████████████ *See* Ltr. Mot. to Strike at 3 (citing Ex. E, Tomasini Rpt. (ECF 806-6) ¶¶ 147-56). Plaintiffs argue that Strebe ████████████████ ████████████████████████████████████████████████████ ████████████ Opp. Ltr. at 5. Neither of those points rebuts the opinion Tomasini offered. First, Strebe's assertion that ███████████████████████████████████████████ ████████████████████████████████████████████████████

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 6



████████████████████████████████████████████ [4] Second, Strebe's assertion that ███████████████████████████████ also is not rebuttal because it responds to a manufactured opinion Tomasini never offered. As noted above, Tomasini did not attempt to prove a negative. ████████████████████████████████████ Ex. E, Tomasini Rpt. (ECF 806-6) ¶¶ 147-48 (████████████████████████████████████████ █████████████████████████████). *Cf. Avco*, 2017 WL 2224915, at *20 (cited in Opp. Ltr. at 5; addressing rebuttal to broader opinion that there was no evidence at all in the record to support a contested fact).

Ex. F, Strebe Rpt. (ECF 806-7) ¶¶ 227-39—which is a legal relevance question not within the scope of proper expert testimony—and did not address Opinion 4 at all. Yet, Plaintiffs now claim a different portion of the Strebe Report "rebuts" those opinions, even though that discussion expressly addressed Plaintiff's reimagining of Tomasini's Opinion 2—█████████████████████████████████████████ █████████████████████████████████████. Opp. Ltr. at 5 (citing Ex. F, Strebe Rpt. (ECF 806-7) ¶¶ 191-226). Again, that is not an opinion Tomasini actually offered. Plaintiffs can characterize the Strebe Report as a "rebuttal" only by rewriting the opinions that Strebe is supposedly rebutting and playing fast and loose with the scope of Strebe's own report. This effort should be rejected.[5]

---

[4] For that reason, Plaintiffs' argument regarding the new evidence Strebe relies on misses the mark. *See* Opp. Ltr. at 7. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

[5] Plaintiffs' suggestion that the Court should defer a resolution of these issues until trial is a non-starter. *See* Opp. Ltr. at 9. They have no explanation for what other "evidence" at trial would provide greater context to determine whether Strebe's opinions are improper rebuttal. *Cf. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 4451579, at *4 (N.D. Cal. July 20, 2015) (cited in Opp. Ltr. at 9; noting that a *pre-trial* motion to strike could be deferred to the impending trial). And Plaintiffs should not be permitted to slip past this critical class certification phase without satisfying their burden to prove all requirements of Rule 23 with expert testimony that satisfies the *Daubert* standard. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) ("[A] plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 7

> **C.     Frantz Had the Same Cybersecurity Expertise as Strebe, and She Submitted a Rebuttal Report Covering Many of the Same Points.**

Plaintiffs also have no response to why a "rebuttal" from a new cybersecurity expert was necessary when they already had Frantz, a self-proclaimed cybersecurity expert with incident response experience, to offer opinions on the same topic. Ex. A, Frantz Rpt. (ECF 806-2) ¶ 4. *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) (striking new "rebuttal" economist expert in part because it was not evident why the economist who submitted the opening report "would have been unqualified" to render the same opinions). Indeed, in many of the cases Plaintiffs cite, a rebuttal report was permitted only because the new expert had different expertise than the original expert, and that different subject matter expertise was needed to respond to the opposing expert. *See, e.g.*, *Wyeth Holdings Corp. v. Sandoz Inc.*, 2012 WL 13341004, at *4 (D. Del. Mar. 14, 2012) (cited in Opp. Ltr. at 3; permitting new rebuttal expert because opposition report was "best rebutted by a microbiologist" rather than the chemist who submitted the opening expert report); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, 2021 WL 1405185, at *5 (S.D.N.Y. Apr. 14, 2021) (cited in Opp. Ltr. at 3 n.3; permitting new expert to submit a rebuttal to the opposing party's radiologist because no radiologist had submitted an initial report); *In re CRT Antitrust Litig.*, 2015 WL 4451579, at *5 (cited in Opp. Ltr. at 3 n.3; permitting rebuttal report because "defendants' experts raised issues requiring [the new expert's] finance and accounting expertise" that the original expert lacked).

Here, Frantz submitted her own rebuttal report drawing on the same subject matter expertise as Strebe to repackage the same points and evidence Strebe included in his report. *See* Ex. H, Frantz Reply (ECF 806-9) ¶¶ 15-17 (████████████████████████ ████████████████████████); *id.* ¶¶ 52-82 (████████████ ████████████████). Strebe's overlapping purported "rebuttal" was unnecessary, and a transparent attempt to bolster Frantz's original opinions needed to meet Plaintiffs' burden of proof after Defendants showed her analysis and conclusions to be methodologically unsound and unreliable.

> **D.     The Weight of Authority Addressing Similar Efforts to Bolster Supports Striking the Strebe Report.**

Finally, Plaintiffs' attempt to wave away Defendants' on-point cases as presenting "unique circumstances" that are not present here. Opp. Ltr. at 3. Their efforts to distinguish fall flat, as each

---

finds, that the expert testimony satisfies the standard set out in *Daubert*."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307, 311-12, 316 n.14, 320-21 (3d Cir. 2008) ("[T]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action.").

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 8

of those cases illustrates why the Strebe Report contains improper bolstering and should be stricken. For example:

- Plaintiffs' claim that *Oracle* is distinguishable because the new expert who served a report for the first time with a reply brief had been previously disclosed as a potential expert but then did not serve an opening report. Opp. Ltr. at 3-4. This is a distinction without a difference and ignores the crux of the *Oracle* court's analysis. The court's predominant reason for excluding the new expert's report was that it duplicated a rebuttal report from one of the original experts with the same subject matter expertise. 2011 WL 5572835, at *3.

- Plaintiffs also mischaracterize *Gilbane* as solely addressing whether a supplemental report may be submitted by a different expert. Opp. Ltr. at 4. To the contrary, the *Gilbane* court determined that an expert report framed as "supplemental" in fact offered new opinions to "bolster the original Expert Report" and should be stricken because those opinions should have been offered in the case-in-chief—regardless of the identity of the expert who offered them. 2005 WL 838679, at *8.

- Plaintiffs' attempt to distinguish *Byrd* because there had been a several-year delay before the impermissible rebuttal report was submitted. Opp. Ltr. at 7. But that delay was not the reason the court struck the rebuttal report. Rather, the rebuttal report was impermissible because it "attempt[ed] to create a new theory or methodology" to support a class certification argument, *Byrd v. Aaron's, Inc.*, 2017 WL 1093286, at *5-6 (W.D. Pa. Mar. 22, 2017)—just as Strebe created a new ███████████ methodology to support Plaintiffs' attempt to show classwide future risk of injury.

- Plaintiffs' effort to distinguish *Madison Capital* appears to have been spun from whole cloth. That court never stated that the improper rebuttal experts "failed even to acknowledge the matters raised by the opposing expert." Opp. Ltr. at 6. To the contrary, the court evaluated an identical situation in which new rebuttal experts were employed shortly after the original expert "demonstrated shaky testimony" on a critical issue at deposition, and were designated as rebuttal experts only "because the deadline for disclosing experts for [the plaintiff's] case-in-chief had already passed." *Madison Cap. Co. v. S & S Salvage, LLC*, 2011 WL 195639, at *4 (W.D. Ky. Jan. 19, 2011). The court struck the improper rebuttal reports because, as here, the plaintiff "had ample time to identify any weakness" in the original expert before the disclosure deadline. *Id.*

- Similarly, Plaintiffs' description of *Bowman* demonstrates why it is directly on-point and supports striking the Strebe Report: Strebe "introduce[d] a completely new" methodology, which was "a wholesale revision belonging in the initial report." Opp. Ltr. at 7 (citing *Bowman*, 2013 WL 1857192, at *8).

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 9

Here, consistent with the cases Defendants cited, the Strebe Report bolsters the opening Frantz Report and/or duplicates the same subject matter covered in the Frantz Reply. As Plaintiffs aptly describe the situation, the Strebe Report "masqueraded as rebuttal but was case-in-chief evidence." Opp. Ltr. at 6. It should be stricken.

## II.     The Incurable Prejudice Caused by Plaintiffs' Year-Late Disclosure Warrants Striking the Strebe Report.

Plaintiffs next argue that their late disclosure should not result in the "draconian measure" of striking the Strebe Report. Opp. Ltr. at 9-10. To the contrary, under Rule 37 and each of the *Pennypack* factors, striking is precisely the remedy called for to redress the prejudice to Defendants from Plaintiffs' ambush tactics.

To start, Plaintiffs have not offered any justification for their untimely disclosure of the Strebe Report. They concede that their motions for class certification needed to prove "access and exfiltration," which are prerequisites to their theories of standing and purported (albeit non-existent) state-law injury and causation "for all Class members." Opp. Ltr. at 10. And Strebe's opinion that ███████████████████████████████ ████████████—which he supports with a new methodology and new evidence—is offered to support those critical points on which Plaintiffs bear the burden. Ex. F, Strebe Rpt. (ECF 806-7) at 31 (capitalization altered). Yet, they have no explanation, much less anything approaching "substantial[] justif[ication]," for why they did not serve the Strebe Report at that appropriate time. Fed. R. Civ. P. 37(c)(1).

Nor have Plaintiffs shown that their year-late disclosure is harmless under the *Pennypack* factors.

**Prejudice and Ability to Cure.** As to the first and second *Pennypack* factors, prejudice and the ability to cure, Plaintiffs have no response to Defendants' showing that they will suffer significant prejudice from (i) being forced to expend additional resources to respond to Plaintiffs' eleventh hour introduction of a new expert, theories, methodologies, and evidence on the very day that class certification proceedings were supposed to conclude, and (ii) being deprived of the opportunity in their class certification opposition briefs to respond to Plaintiffs' new-on-reply theories relevant to the key issues of injury, causation, and standing. Instead, Plaintiffs attempt to dodge the point by claiming Defendants could have somehow cured the prejudice by expending even more resources to depose an untimely disclosed expert.

The supposed "opportunity" to digest a new 78-page report, evaluate whether it was appropriate rebuttal (it was not), prepare for and take a deposition, and draft a *Daubert* motion, in the same window during which Defendants were preparing *Daubert* motions against Plaintiffs' other experts—all without warning and in less than three weeks—did not provide Defendants a fair chance to respond. Moreover, "the opportunity to depose [Strebe] does not cure the undue prejudice," no matter how much time was offered. *In re Johnson & Johnson Talcum Powder Prods.*

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 10

*Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2025 WL 1385222, at *6 (D.N.J. May 13, 2025). Reopening discovery to allow for a deposition would "inevitably impose a substantial burden … as well as additional costs" on Defendants, and thus compound rather than cure the prejudice. *Crown Bay Marina, L.P. v. Reef Transp., LLC*, 2020 WL 5166031, *5 (D.V.I. Aug. 31, 2020), *aff'd*, 2022 WL 2816798 (D.V.I. July 19, 2022). Moreover, no amount of additional discovery can turn back the clock to allow Defendants to respond to these new opinions in their class certification opposition briefs. Plaintiffs' tactical decision to ambush Defendants with a new affirmative expert report during the critical race to the finish line for class certification proceedings is fundamentally unfair. That is why the Scheduling Order *did* "limit[] reply reports," Opp. Ltr. at 4, to only "rebuttal expert reports," ECF 776, for which a deposition and responsive expert report would not be necessary.

Moreover, Plaintiffs' half-hearted effort to distinguish the cases Defendants cited should be rejected. The supposed differences Plaintiffs identify are irrelevant. Those cases recognized that prejudice to Defendants from an untimely disclosure of a new expert, "in the sense of delay, inconvenience, and increased expense, is obvious." *E.M. Sergeant Pulp & Chem. Co. v. Travelers Indem. Co.*, 2015 WL 9413094, at *6 (D.N.J. Dec. 22, 2015); *see also Gilbane*, 2005 WL 838679, at *10 (concluding it would be "unduly burdensome and prejudicial (if not impossible) for [Defendants] to analyze a thirty-seven page report with substantial exhibits," which would "likely take the opponents' experts several weeks to analyze," within a few weeks). That prejudice does not change whether the untimely disclosure is during summary judgment briefing or at the end of class certification briefing. In both situations, the late disclosure of an expert report requires additional motion practice and results in wasted effort and fees to prepare opposition briefing "based on the legitimate expectation" that Defendants knew the full scope of the affirmative expert opinions Plaintiffs intended to offer in support of class certification. *E.M. Segeant*, 2015 WL 9413094, at *6. Nor does the substantive prejudice from losing a full opportunity to respond in opposition briefs somehow change based on the stage of the case. Plaintiffs gained a tactical advantage by re-working their class certification motions in the reply brief based on late-disclosed opinions, at a time when Defendants no longer have any opportunity to respond to Plaintiffs' theories in the current schedule.

**Disruption of Case Schedule.** Plaintiffs next attempt to excuse their late disclosure as harmless because no trial date has been set. Although motions to strike often arise when trial is imminent, the cases Defendants cited showed that upending of a trial date is not the only species of scheduling disruption that warrants striking an untimely expert report. *See, e.g., Forrestal Guarani S.A. v. Daros Int'l, Inc.*, 2012 WL 13187472, at *8 (D.N.J. Apr. 2, 2012) (reopening discovery would be too disruptive to the court's docket in a case pending for eight years that had "already received an extraordinary amount of time and attention" from the court); *Atkinson v. Ethicon, Inc.*, 2019 WL 3037304, at *3-4 (W.D. Pa. July 11, 2019) (striking a late-submitted expert report because of "[t]he cost to Defendant, the delay in proceedings, and the weakness of Plaintiffs' proffered justification," even where trial was not imminent). Rather, in long-running cases that have reached a critical juncture, courts should consider whether the "late disclosure would

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 11

significantly disrupt the orderly and efficient progression of this MDL." *In re Johnson & Johnson Talcum Powder*, 2025 WL 1385222, at *6. Here, the parties have finally reached the conclusion of class certification proceedings and are ready for the Court to resolve this case-dispositive issue. Indeed, had Plaintiffs not completely reworked their class certification motions and introduced a new affirmative expert report a year late, necessitating a sur-reply from Defendants, class certification briefing would be complete. The disruption caused by the improper Strebe Report is obvious.

Plaintiffs pretend that the disruption created by their tactics is harmless because Defendants were forced to respond with the present motion to strike, resulting in some amount of disruption to the schedule. This argument fails. Defendants' motion to strike has not "interrupted class certification proceedings." Opp. Ltr. at 11. Defendants proposed a schedule that ensured briefing on the motion to strike would be completed *before* class certification briefing was even filed with the Court. If the Court grants the present motion, all that remains will be for Plaintiffs to serve a revised reply brief striking any references to Strebe's report or opinions and for Defendants to promptly request leave to file a sur-reply brief addressing the new class definitions and theories Plaintiffs interjected into the case in their reply brief. By contrast, if the late-disclosed Strebe Report is not stricken, it would impose at least a several-month delay to allow for responsive expert discovery and motion practice. This significant disruption to the case schedule at a critical juncture in this six-year-old case cannot be ignored.[6]

**Willfulness.** In claiming that their late disclosure resulted from a mistaken interpretation of the Federal Rules and the Scheduling Order, rather than a willful violation, Plaintiffs primarily rely on a self-serving declaration from their own counsel that he "did not contemplate" submitting a report from Strebe until after he reviewed Tomasini's report. Opp. Ltr. at 11. That misses the point. By the time Plaintiffs submitted expert reports supporting their motions for class certification, they knew that their own theory of risk of future injury to all putative class members required them to carry the burden of proving exfiltration and dark web posting of the entire CHAMP database, they had been working with Strebe for years on analyzing AMCA's systems and data, and they chose *not* to submit a report from Strebe about ███████████████ *Id.* Instead, they relied on Frantz to ████████████████████
████████████████████████████████████████
Ex. F, Strebe Rpt. (ECF 806-7) ¶ 104.

Plaintiffs made the strategic choice to rely on Frantz's opinions and methodology alone to support a building block critical to their own theory of class certification. *See Crown Bay Marina*, 2020 WL 5166031, at *5 (plaintiff who knew from the outset it needed to prove damages acted with flagrant disregard when it delayed disclosure). Unlike in the cases Plaintiffs cite, no third

---

[6] Plaintiffs' citation to *Dzielak v. Whirlpool Corp.*, is off-base. There, the parties had not even reached the class-certification stage and no imminent case-dispositive deadlines would be disrupted. 2017 WL 1034197, at *33 (D.N.J. Mar. 17, 2017).

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 12

party interfered with Plaintiffs' preparation of their reports or caused Plaintiffs to miss the deadline. *See TQ Delta, LLC v. 2Wire, Inc.*, 2019 WL 1529952, at *2 (D. Del. Apr. 9, 2019) (cited in Opp. Ltr. at 11; finding no bad faith where a third-party vendor refused to allow access to the late-disclosed expert to review critical source code); *Dzielak*, 2017 WL 1034197, at *34 (cited in Opp. Ltr. at 11; no bad faith where late reports were provided within a few weeks after a third party produced new discovery). Instead, when they disclosed the affirmative opinions they would rely upon for class certification—including to support their claim of classwide risk of future injury—they chose only Frantz. Their "incorrect belief" that they would be able to bolster Frantz's affirmative opinions with a new expert on reply, contrary to the Scheduling Order directing disclosure with their class certification motions, is not an excuse. *Everest Nat'l Ins. Co. v. Am. Claims Mgmt. Inc.*, 2025 WL 2300758, at *5 (D.N.J. Aug. 8, 2025). In any event, where the other *Pennypack* factors have been met, willfulness is not dispositive. *See In re Johnson & Johnson Talcum Powder*, 2025 WL 1385222, at *6.

**Importance.** Finally, Plaintiffs have no response to Defendants' argument that the Strebe Report lacks importance because Frantz also submitted a reply expert report at the same time that covered the same subject matter. Indeed, Plaintiffs' own cases suggest that where, as here, there is another expert available to present rebuttal on the same issues, the untimely disclosed expert report is of less importance. *Cf. Sikkelee v. Pecision Airmotive Corp.*, 2021 WL 392101, at *9 (M.D. Pa. Feb. 4, 2021) (cited in Opp. Ltr. at 10; finding late expert opinion "of some importance" only because it was "the only expert opinion that rebuts" a new opinion offered by the opposing party's recently substituted expert). Frantz is perfectly capable of submitting a rebuttal report on ███████████████████████ (and, in fact, she did so). Strebe therefore is not "necessary to counter Tomasini's opinion[s]." *Id.*; *cf. Withrow v. Spears*, 967 F. Supp. 2d 982, 1007 (D. Del. 2013) (cited in Opp. Ltr. at 11; discussing "importance" of testimony only because other expert testimony on the issue already had been excluded).[7]

## III. Plaintiffs' Opposition to a Sur-Rebuttal Report Leaves Defendants Without Any Opportunity to Respond to a New "Expert" Methodology.

In response to Defendants' alternative request for relief, Plaintiffs concede that Defendants should be permitted an opportunity to depose Strebe and move for exclusion of his report under Rule 702. Opp. Ltr. at 12. However, they oppose Defendants' request to file a sur-rebuttal report, as supposedly creating an "endless loop[] of expert testimony." *Id.* This hyperbolic concern is easily addressed: the Court can limit additional expert discovery to a sur-rebuttal report from Defendants that responds directly to the new methodology and evidence presented in the Strebe Report. If the Strebe Report is allowed to remain in the case, Defendants must have a fair

---

[7] If Frantz's opinions are excluded (as they should be), then Tomasini's Opinion 1 in rebuttal to Frantz—███████████████████████—will no longer be necessary. In turn, Strebe's purported "rebuttal" of the way Tomasini addressed that evidence also would become moot.

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 13

opportunity, with the aid of their own expert, to address Strebe's highly-technical ███████ █████████████████ and explain why it neither fits the opinions Tomasini offered nor provides a reliable basis for rebutting him.[8] To deny a sur-rebuttal report would reward Plaintiffs' gamesmanship.

Plaintiffs also have no cogent response to the on-point authority Defendants cited in support of their request. They attempt to distinguish these cases because they "involved reports that should have been submitted as affirmative testimony." Opp. Ltr. at 12. But that is precisely the case here: Plaintiffs should have submitted the Strebe Report and his ███████████ ██████—which is relevant to issues on which Plaintiffs bear the burden of proof—with their class certification motions more than a year ago. *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 692 (D. Del. 2010) (noting that the "factors favoring" relief included that the proponent of the new expert report "has the burden of proof" on the issue). Thus, if the Strebe Report is not stricken, Defendants should in fairness be permitted a full opportunity to rebut his 78-page report, based a new methodology and several new data sources, with their own expert analysis. *See Lavell*, 2023 WL 4074077, at *6 (finding sufficient prejudice to warrant a sur-rebuttal report even though the improper "rebuttal" report was "only four pages long" and relied on "one new data source").

**Conclusion**

For these reasons, Defendants respectfully request that the Court grant their letter motion to strike the Strebe Report and all portions of Plaintiffs' reply brief in support of their Motions for Class Certification that rely upon the Strebe Report or, in the alternative, provide 60 days for Defendants to depose Strebe, serve a sur-rebuttal expert report, and move to exclude Strebe's testimony.

---

[8] Defendants' Opposition to Plaintiffs' Motion to Exclude the Report and Testimony of Matteo Tomasini, which was served on December 3, 2025 and will be filed later this month, explains why ███████████████████████████████████████████████████████ ███████████████████████████████████████████████.

GIBBONS P.C.

The Honorable Jamel K. Semper, U.S.D.J.
The Honorable Michael A. Hammer, U.S.M.J
December 5, 2025
Page 14

Sincerely,

/s/ Ricardo Solano, Jr.    .
Ricardo Solano, Jr.
Genna A. Conti
**GIBBONS P.C.**

David H. Hoffman
Daniel C. Craig
Heather Benzmiller Sultanian
**SIDLEY AUSTIN LLP**

*Counsel for Defendant Quest Diagnostics Incorporated*

/s/ Kristine M. Brown                    .
Kristine M. Brown
Donald M. Houser
Reade W. Seligmann
**ALSTON & BIRD LLP**

Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**

*Counsel for Defendant Optum360, LLC*

/s/ Bradley J. Bartolomeo                    .
Bradley J. Bartolomeo
Jeffrey Y. Spiegel
Ariadne Panagopoulou
**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*Counsel for Defendants Sonic Healthcare USA, Clinical Pathology Laboratories, Inc., Aurora Diagnostics LLC, and Austin Pathology Associate*