## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:  Other Labs Track | Case No. 2:19-md-2904 (JKS)(MAH) |

## MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

James E. Cecchi
**CARELLA, BYRNE, CECCHI,  BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
*Lead Counsel for Plaintiffs*

Joseph J. DePalma
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street
Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000

Justin J. Hawal
**DiCELLO LEVITT LLP**
8160 Norton Parkway
Third Floor
Mentor, Ohio 44060
Telephone: (440) 953-8888
*Other Labs Track Co-Lead Counsel*

# TABLE OF CONTENTS

**TITLE**                                                                                      **PAGE**

TABLE OF AUTHORITIES ................................................................................... iii

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ........................................................................................ 2

       A. Nature of the Litigation............................................................................ 2

       B. Summary of Settlement Terms.................................................................. 4

       C. Scope of the Release ................................................................................ 6

       D. The Notice and Administration Plans....................................................... 6

       E. Attorneys' Fees and Expenses.................................................................. 6

III.   LEGAL STANDARD................................................................................. 7

IV.    ARGUMENT............................................................................................10

       A. Preliminary Approval of the Settlement Is Appropriate .........................10

           1. Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the
              Settlement Class................................................................................11

           2. The Proposed Settlement Was Negotiated at Arm's Length ..............12

           3. Taking into Account the Costs, Risks, and Delay of Trial
              and Appeal........................................................................................14

           4. The Other Rule 23(e)(2)(C) Factors Are Met ...................................17

               a. The Proposed Method for Distributing Relief Is Effective ..........17

               b. Attorneys' Fees and Expenses....................................................18

i

c.  The Parties Have No Other Substantive Agreements ................... 18

5.  Settlement Class Members Are Treated Equitably ............................ 19

B.  The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved ................................................................................ 19

C.  Certification of the Settlement Class For Settlement Purposes Is Appropriate ............................................................................................... 21

1.  Numerosity ......................................................................................... 22

2.  Commonality ...................................................................................... 23

3.  Typicality ............................................................................................ 24

4.  Adequacy of Representation .............................................................. 25

5.  Certification Under Rule 23(b)(3) Is Appropriate ............................. 26

    a.  Common Questions of Law and Fact Predominate .................... 26

    b.  Settlement Class Treatment Is Superior .................................... 27

6.  The Settlement Class Members Are Ascertainable ........................... 29

    a.  The Settlement Class Is Defined with Reference to Objective Criteria .................................................................................... 30

    b.  There Is a Reliable and Administratively Feasible Mechanism for Determining Settlement Class Membership ............................. 31

D.  Proposed Co-Lead Counsel Satisfy Rule 23(g) ...................................... 32

E.  The Court Should Approve a Schedule Leading Up to the Final Approval Hearing ..................................................................................... 34

IV.    CONCLUSION ................................................................................................ 34

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Agnone v. Camden Cnty., Ga.*,
   No. 2:14-cv-00024, 2019 WL 1368634 (S.D. Ga. Mar. 26, 2019)........................21

*Allen v. Ollie's Bargain Outlet, Inc.*,
   37 F.4th 890 (3d Cir. 2022)...............................................................................23

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................22, 26, 28

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).........................................................................................26

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d 336 (E.D. Pa. 2007)................................................................16

*Beneli v. BCA Fin. Servs., Inc.*,
   324 F.R.D. 89 (D.N.J. 2018) ...........................................................................16

*Bredbenner v. Liberty Travel, Inc.*,
   Nos. 09-905, 09-1248, 90-4587, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...........13

*Burrows v. DC Portfolio Servs., LLC*,
   No. 2:22-cv-260, 2025 WL 2304797 (D.N.J. Aug. 11, 2025)...........................10

*Byrd v. Aaron's Inc.*,
   784 F.3d 154 (3d Cir. 2015)......................................................................29, 30

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013)......................................................................30, 31

*C.P. v. N.J. Dep't of Educ.*,
   No. 1:19-cv-12807, 2022 WL 3572815 (D.N.J. Aug. 19, 2022) .......................24

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).....................................................................12, 16

*Chiang v. Veneman*,
   385 F.3d 256 (3d Cir. 2004).....................................................................24, 30

*In re CIGNA Corp.*,
   No. 2:02-cv-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) .........................8

*City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*,
   867 F.3d 434 (3d Cir. 2017) ................................................................................29

*Curiale v. Lenox Grp., Inc.*,
   No. 2:07-cv-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008).............................8

*Desue v. 20/20 Eye Care Network, Inc.*,
   No. 0:21-cv-61275, 2022 WL 17477004 (S.D. Fla. Dec. 5, 2022) ...................26

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)................................................................................7

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).............................................................................................20

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)....................................................................*passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*
   ("*GMC Truck*"), 55 F.3d 768 (3d Cir. 1995) .............................................12, 16

*Gregory v. McCabe, Weisberg & Conway, P.C.*,
   No. 1:13-cv-6962, 2014 WL 2615534 (D.N.J. June 12, 2014) .........................32

*Hacker v. Elec. Last Mile Sols. Inc.*,
   No. 2:22-cv-00545, 2024 WL 5102696 (D.N.J. Nov. 6, 2024).........................11

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012) .............................................................................11

*Jones v. Com. Bancorp, Inc.*,
   No. 1:05-cv-5600, 2007 WL 2085357 (D.N.J. July 16, 2007).............................9

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012)..........................................................................29, 30

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   341 F.R.D. 128 (D. Md. 2022)...........................................................................28

iv

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)....................................................................................20

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016)........................................................................25

*Pollak v. Portfolio Recovery Assocs., LLC*,
    285 F. Supp. 3d 812 (D.N.J. 2018)..............................................................31

*Pro v. Hertz Equip. Rental Corp.*,
    No. 2:06-cv-3830, 2013 WL 3167736 (D.N.J. June 20, 2013) ....................16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..................................................................16, 27

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013).........................................................................24

*Rowe v. E.I. Dupont De Nemours & Co.*,
    262 F.R.D. 451, 455 (D.N.J. 2009) .............................................................31

*Sanders v. CJS Sols. Grp., LLC*,
    No. 1:17-cv-3809, 2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ...............13

*In re Schering-Plough/Merck Merger Litig.*,
    No. 2:09-cv-1099, 2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...................10

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001).........................................................................23

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust
    Litig.*,
    967 F.3d 264 (3d Cir. 2020).........................................................................25

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011).........................................................................26

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    No. 1:19-cv-2875, 2023 WL 1818922 (D.N.J. Feb. 8, 2023).......................24

*In re Vivopharma Inc. Sec. Litig.*,
    No. 2:12-cv-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...................12

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992)........................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................23

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)..............................................................................8

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002).........................................................................16

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
  899 F. Supp. 1297 (D.N.J. 1995).....................................................................16

*Woodward v. NOR-AM Chem. Co.*,
  No. 94-cv-0780, 1996 WL 1063670 (S.D. Ala. May 23, 1996).......................15

**Federal Rules**

Fed. R. Civ. P. 23(a) ..................................................................................22, 23

Fed. R. Civ. P. 23(a)(1).....................................................................................23

Fed. R. Civ. P. 23(a)(2).....................................................................................23

Fed. R. Civ. P. 23(a)(3).....................................................................................24

Fed. R. Civ. P. 23(a)(4).................................................................................25, 33

Fed. R. Civ. P. 23(b)..........................................................................................22

Fed. R. Civ. P. 23(b)(3)...............................................................................*passim*

Fed. R. Civ. P. 23(c)(2)(A) ...............................................................................21

Fed. R. Civ. P. 23(c)(2)(B)...........................................................................19, 21

Fed. R. Civ. P. 23(e) ..................................................................................7, 8, 19

Fed. R. Civ. P. 23(e)(1)(B)...............................................................................9, 19

Fed. R. Civ. P. 23(e)(2)...............................................................................*passim*

Fed. R. Civ. P. 23(e)(2)(A) ...............................................................................11

Fed. R. Civ. P. 23(e)(2)(B)................................................................................11, 12

Fed. R. Civ. P. 23(e)(2)(C).....................................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...............................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(iii)...............................................................................18

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...............................................................................19

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................19

Fed. R. Civ. P. 23(e)(3)............................................................................................9

Fed. R. Civ. P. 23(g) .........................................................................................32, 33

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................33

Fed. R. Civ. P. 23(h)(1)...........................................................................................20

## Other Authorities

5 James W. Moore, et al., *Moore's Federal Practice* (3d ed. 1997) ......................29

*Manual for Complex Litigation, Fourth* (4th ed. 2004) ....................................8, 31

Plaintiffs Gwendolyn Anderson and Tonda Tate, individually and on behalf of the proposed Settlement Class ("Settlement Class Members" or "Settlement Class"), respectfully move under Rule 23 of the Federal Rules of Civil Procedure for preliminary approval of class action settlement and preliminary certification of the Settlement Class for settlement purposes ("Motion"). The Declaration of James E. Cecchi ("Cecchi Decl.") is filed herewith, and includes the Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA") as Exhibit 1. The Declaration of Carla Peak Regarding Notice Program ("Peak Decl."),[1] submitted on behalf of Kroll, the proposed Settlement Administrator, is submitted herewith as well.[2]

## I.      **<u>INTRODUCTION</u>**

Plaintiffs and the proposed Settlement Class they seek to represent have reached a nationwide class action settlement with Defendants Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively, "Sonic" or "Defendants") for a $6,438,578.20 common fund to resolve all claims for individuals to whom CPL, or Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection Agency ("AMCA") on behalf of CPL, sent notice that their information

---

[1] The Peak Declaration is attached to the Cecchi Declaration at Exhibit 2.
[2] Unless otherwise stated, all definitions and capitalizations are the same as in the Settlement Agreement.

was involved or may have been involved in the cybersecurity incident at AMCA that occurred between August 1, 2018 and March 30, 2019 (the "Security Incident") and those individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA. *See* Cecchi Decl. ¶ 3.

The settlement provides significant benefits to Settlement Class Members in the form of reimbursements up to $5,000 for out-of-pocket expenses associated with the Security Incident, an alternative cash payment of up to $50, and two years of valuable medical information monitoring services provided by CyEx, Cecchi Decl. Ex.1, SA Exs. D (Settlement Benefit Plan), E (description of CyEx services), and satisfies each of the factors under Rule 23(e)(2), *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), and the other applicable requirements. Accordingly, the Court should preliminarily approve the settlement, direct notice to all Settlement Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' motion for final approval and application for an award of attorneys' fees and expenses, and set a date for the Final Fairness Hearing.

## II.    BACKGROUND

### A.    Nature of the Litigation

Sonic is the third largest medical diagnostic laboratory company in the United States. The members of the Settlement Class include patients and former patients,

who provided Sonic with information as a necessary part of their business relationship.

From August 2018 to March 2019, the computer systems of AMCA, a company Sonic retained to collect delinquent accounts, were subject to a cyberattack. In response, AMCA launched an investigation which revealed that unauthorized actors may have accessed certain information within its computer systems and network in connection with the Security Incident. AMCA notified Sonic of the incursion in May 2019. AMCA soon collapsed and filed for bankruptcy protection in June 2019. Sonic started sending out notices to potentially affected individuals in or about July 2019.

Following the Security Incident, class action complaints were filed against Sonic and other defendants all over the country, which in turn, led to a petition to coordinate all of the actions in a single venue before the Judicial Panel for Multidistrict Litigation ("JPML"). By way of Order dated August 9, 2019, the JPML transferred all of these actions to the District of New Jersey. After the transfer, the Court organized the litigation and divided the cases into three tracks: a Quest/Optum track, a Labcorp track, and an Other Labs track (which included CareCentrix and Sonic Healthcare USA as well as its subsidiaries). (MDL Case Mgmt. Order #2, ECF No. 99.) Master consolidated complaints were filed against each set of Defendants on November 15, 2019, including against Sonic. (Am. Consolidated Compl., ECF

3

No. 107.) Since that time, the Parties have engaged in active litigation including motions to dismiss, document and paper discovery, fact depositions, corporate 30(b)(6) depositions, expert discovery and expert depositions, and briefing motions for class certification. The Parties have also sought the Court's and the Court-appointed Special Master's intervention on numerous disputed issues regarding the scope of discovery.

On July 2, 2025, the Court ordered all Parties to engage in mediation. (MDL Text Order, ECF No. 768.) Plaintiffs and Sonic engaged former Magistrate Judge Diane M. Welsh (ret.) and scheduled an in-person settlement conference. In advance of the settlement conference, Plaintiffs and Sonic exchanged comprehensive mediation statements.

The settlement conference was conducted in-person in Philadelphia before Magistrate Judge Welsh (ret.) on January 15, 2026, and lasted all day. Ultimately, Plaintiffs and Sonic reached an agreement on the material terms of a class-wide settlement. Cecchi Decl. ¶¶ 4-5.

### B.    Summary of Settlement Terms

The Settlement Class is defined as "[t]hose individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA," and "[t]hose individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice

that their information was involved or may have been involved in the Security Incident affecting AMCA." Cecchi Decl. Ex. 1, SA ¶ 1.38.

The Settlement Class specifically excludes: (i) Defendants and their officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge. *Id*.

Sonic has agreed to create a Settlement Fund in the amount of $6,438,578.20. *Id*. at ¶ 1.43. The Settlement Fund will be used to pay for settlement benefits to Settlement Class Members, Notice and Settlement Administration Costs, Taxes, Tax Expenses, Tax-Related Expenses, any Attorneys' Fees and Expenses, any Service Awards, and any costs and fees related to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, notice. *Id*. Following the Effective Date of the Agreement, the Settlement Fund becomes non-reversionary.

The settlement provides Settlement Class Members with valuable benefits including reimbursement for verifiable, documented Out-of-Pocket Losses up to $5,000, which includes up to 10 total hours of time (at $25 per hour) spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is verifiable and fairly traceable to the Security Incident. In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for

5

up to $50 (both subject to increases or decreases *pro rata* depending on the number of claims). In addition, all Settlement Class Members are eligible to enroll free of charge in two years of medical and healthcare information Monitoring Services provided by CyEx. Cecchi Decl. ¶ 7; *see also* Cecchi Decl. Ex. 1, SA Ex. D (Settlement Benefits Plan).

### C.    Scope of the Release

Plaintiffs and Settlement Class Members who do not opt-out of the settlement agree to release Defendants and the Released Parties from all Released Claims. Cecchi Decl. Ex. 1, SA ¶¶ 1.31, 1.32.

### D.    The Notice and Administration Plans

Notification to Settlement Class Members will be in the forms attached to the Settlement Agreement as Exhibits B (Short Form Notice) and C (Long Form Notice). Dissemination of the settlement notice shall be the responsibility of the Settlement Administrator, Kroll, which shall provide notice both directly to Settlement Class Members and online at the dedicated Settlement Website where Settlement Class Members can obtain important information about the settlement. *Id.* at ¶¶ 1.35, 1.44; § 3. The Notice and Settlement Administration Costs shall be paid by the Settlement Fund. *Id.* at ¶¶ 2.2, 3.1.

### E.    Attorneys' Fees and Expenses

Plaintiffs will request an award of attorneys' fees, costs, and expenses of up to

thirty-four percent (34%) of the $6,438,578.20 Settlement Fund. *Id.* at ¶ 1.3; § 8. Plaintiffs will also request that the Court approve Service Awards not to exceed $5,000 for each of the Settlement Class Representatives in recognition of their contributions to the Settlement Class. *Id.* at ¶ 1.34; § 8. Any attorneys' fees, expenses, and service awards will be paid from the Settlement Fund. *Id.* at ¶¶ 1.3, 1.34; § 8. Plaintiffs' Counsel will file a separate application for an award of attorneys' fees and expenses ahead of the Final Fairness Hearing. *Id.* at § 8. Settlement Class Members will have an opportunity to review that application and submit any objections they have before the hearing.

## III.    **<u>LEGAL STANDARD</u>**

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation."); [3] *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, No. 2:07-cv-1432, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re CIGNA Corp. Sec. Litig.*, No. 2:02-cv-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").

The *Manual for Complex Litigation, Fourth* describes a three-step process for approving a class action settlement: preliminary approval of the proposed settlement; dissemination of notice of the settlement to settlement class members; and a final approval hearing. *See id.* at § 21.63 (4th ed. 2004). At this juncture, Plaintiffs request that the Court take the first and second steps in the settlement approval process by entering the proposed Preliminary Approval Order and ordering the dissemination of notice to the Settlement Class.

Under Rule 23(e), preliminary approval should be granted if the Court "will

---

[3] Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Com. Bancorp, Inc.*, No. 1:05-cv-5600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class.").

Rule 23(e)(2) provides:

(2)     Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative

to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, courts in this circuit look to the traditional factors utilized in the

Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class

action settlement (certain of which overlap with Rule 23(e)(2)):

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Burrows v. DC Portfolio Servs., LLC*, No. 2:22-cv-260, 2025 WL 2304797, at *9

(D.N.J. Aug. 11, 2025) (citing *Girsh*, 521 F.2d at 157). The *Girsh* factors "are a

guide and the absence of one or more does not automatically render the settlement

unfair." *In re Schering-Plough/Merck Merger Litig.*, No. 2:09-cv-1099, 2010 WL

1257722, at *5 (D.N.J. Mar. 26, 2010).

## IV.   **ARGUMENT**

### A.   **Preliminary Approval of the Settlement Is Appropriate**

The proposed settlement with Sonic is fair, reasonable, and adequate. For the

reasons set forth below, preliminary approval of the proposed settlement should be

granted.

### 1. Plaintiffs and Plaintiffs' Counsel[4] Have Adequately Represented the Settlement Class

The first two factors under Rule 23(e)(2) are the adequacy of representation for the Settlement Class and the arm's-length nature of the settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (Courts have held that "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

"Representative plaintiffs provide adequate representation of a class where the 'named plaintiffs' interests are sufficiently aligned with' absent class members." *Hacker v. Elec. Last Mile Sols. Inc.*, No. 2:22-cv-00545, 2024 WL 5102696, at *7 (D.N.J. Nov. 6, 2024) (citation omitted). Here, the named Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiffs are all individuals who utilized the laboratory services of Sonic and who allege that Sonic

---

[4] On November 7, 2019, this Court appointed James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C. as Interim Lead Class Counsel. (*See* MDL Case Mgmt. Order, ECF No. 99.) Joseph J. DePalma of Lite Depalma Greenberg & Afanador, LLC and Amy E. Keller of DiCello Levitt LLP were appointed Interim Co-Lead Class Counsel in the Other Labs Track. *Id.*

was negligent.

Plaintiffs' Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Litigation on behalf of the proposed Settlement Class, including, *inter alia*, by drafting detailed complaints, engaging in over six years of hard-fought litigation, motion practice, offensive and defensive discovery, expert discovery, and settlement negotiations, including thorough pre-mediation briefing. *See In re Vivopharma Inc. Sec. Litig.*, No. 2:12-cv-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (approving settlement after arm's-length negotiation overseen by Phillips ADR Enterprises after the parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery").

Further, Plaintiffs' Counsel have successfully prosecuted a number of class actions in the Third Circuit and in the cybersecurity space.[5] The collective tenacity of Plaintiffs and Plaintiffs' Counsel resulted in a strong settlement with substantial benefits to the Settlement Class.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "negotiations occurred at arms length." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*

---

[5] *See* Cecchi Decl., Exs. 3-5 (firm resumes and cases lead counsel have been appointed and successfully litigated).

("*GMC Truck*"), 55 F.3d 768, 785 (3d Cir. 1995)). As discussed above in § II.A, the mediation took place in January 2026, where a settlement was reached in principle. Following further negotiations, the settlement was finalized on April 30, 2026. *See* Cecchi Decl. ¶ 6. These negotiations were held with each side having full knowledge of the crucial issues in the case, and they involved numerous phone calls and e-mails between counsel in addition to the mediation. As the mediator can attest, these negotiations were difficult, adversarial, and vigorously executed by both sides, and Defendants are represented by highly sophisticated counsel. *Id*.

In addition, the direct participation of an experienced mediator further ensures that the negotiations were non-collusive and conducted properly. *See Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, 09-1248, 90-4587, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Sanders v. CJS Sols. Grp., LLC*, No. 1:17-cv-3809, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. In this case, the settlement was the result of intensive, arm's-length negotiations over the course of months between experienced

13

attorneys with vast experience handling data breach class action cases and with the assistance of an experienced mediator. There is no evidence that any collusion or illegality existed during settlement negotiations. Cecchi Decl. ¶ 8.

### 3. Taking into Account the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could inevitably impose.[6] *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on risks). These factors weigh in favor of approval of the settlement.

Although Plaintiffs believe that the claims asserted in the Litigation are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. The settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Litigation. Without any of the risks involved with further litigation, the Settlement Agreement

---

[6] The second factor, the reaction of the settlement class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Settlement Class Members have been given notice of the settlement and have had an opportunity to be heard.

provides Settlement Class Members with the opportunity to claim significant settlement benefits. Cecchi Decl. Ex. 1, SA Ex. D (Settlement Benefit Plan).

Moreover, there are no grounds to doubt the fairness of the settlement or find obvious deficiencies, such as unduly preferential treatment of Plaintiffs or excessive attorney compensation. Plaintiffs, like all Settlement Class Members, will receive benefits consistent with the Settlement Agreement. As disclosed in the Short Form and Long Form Notices, Plaintiffs will seek payment of service awards for their work in representing the Settlement Class. The benefits of settlement clearly outweigh the risks of continued litigation, including trial and appeals, given the substantial benefits that Settlement Class Members will be afforded.

Further, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. A settlement is beneficial to all parties, including the Court. See *Woodward v. NOR-AM Chem. Co.*, No. 94-cv-0780, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)).

The fourth *Girsh* factor examines "the risks of establishing liability." *Girsh*, 521 F.2d at 157. Under this factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation

15

might have been had class counsel elected to litigate the claims rather than settle them." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018) (quoting *GMC Truck.*, 55 F.3d at 814). In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risk[s]." *Pro v. Hertz Equip. Rental Corp.*, No. 2:06-cv-3830, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) (citing *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995)). And "no matter how confident one may be of the outcome of [the] litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007).

Although Plaintiffs' Counsel believe the claims presented in the Litigation are meritorious, they are experienced counsel who understand "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. The settlement provides certainty to the Settlement Class and substantial relief now.

Similarly, the fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d at 238 (quoting *GMC Truck*, 55 F.3d at 816). The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998). In *Warfarin Sodium Antitrust Litigation*, the trial court found that the risk of establishing damages strongly favored

16

settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd*, 391 F.3d 516, 537 (3d Cir. 2004). Here, in a complex data breach action like this one, there is no doubt such a battle of experts would occur.

In sum, taking into account the risks and uncertainties of continued litigation, and the significant amount of the recovery, the settlement here is certainly reasonable and should be preliminarily approved. *See Girsh*, 521 F.2d at 157. Indeed, given the complexity of the case, the sophistication of Sonic and its counsel, and the uncertain risks and delay inherent in continuing the Litigation, the recovery here is outstanding.

Accordingly, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

### 4. The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also lists three additional factors that a court considers in approving a settlement: the effectiveness of the proposed method for distributing relief; the terms of the proposed attorneys' fees; and the existence of any other "agreement[s]." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors are readily met.

### a. The Proposed Method for Distributing Relief Is Effective

As demonstrated below and in the Peak Declaration, the method and

17

effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are more than sufficient. The notice includes email and direct mail notice to all those who can be identified with reasonable effort. *See* Cecchi Decl. Ex. 2, Peak Decl. ¶¶ 9-19. In addition, a toll-free hotline and a settlement-specific website will be created (the "Settlement Website"). *See id.* at ¶¶ 20-21. Key documents will be posted on the Settlement Website, including the Settlement Agreement, Long Form Notice, Claim Form, and Preliminary Approval Order. *See id.* at ¶ 20.

The claims process is also effective and includes a standard Claim Form, which requests the information necessary to determine whether a claim is valid. Cecchi Decl. Ex. 1, SA Ex. A (Claim Form).

### b. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Settlement Agreement provides that Plaintiffs' Counsel will apply for an award of attorneys' fees and expenses fifteen (15) days prior to the Objection Deadline. Cecchi Decl. Ex. 1, SA ¶ 8.2. As set forth in the proposed Long Form and Short Form Notices, Plaintiffs' Counsel will request attorneys' fees, costs, and expenses not to exceed thirty-four percent (34%) of the Settlement Fund.

### c. The Parties Have No Other Substantive Agreements

18

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. There are no other agreements concerning the Settlement Agreement or the claims of the Settlement Class.

### 5.    Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats settlement class members equitably relative to one another. Here, the Settlement Agreement is fair, reasonable, and adequate because it treats all Settlement Class Members equitably and does not treat Plaintiffs or any other Settlement Class Member preferentially. Pursuant to the proposed Settlement Benefits Plan, to the extent Settlement Class Members are able to document and support entitlement to such relief and submit a valid claim form, each Settlement Class Member is provided with the opportunity to obtain the benefits listed therein, including Out-of-Pocket Losses, medical information monitoring and/or Alternative Cash payments. Cecchi Decl. Ex. 1, SA Ex. D (Settlement Benefits Plan).

### B.    The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved

Under Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement must be the "best notice . . . practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all

19

members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The notice program here provides the best notice practicable under the circumstances. The Short Form and Long Form Notices were negotiated by Plaintiffs and Defendants and will be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort, and through databases tracking nationwide addresses and address changes. Cecchi Decl. Ex. 2, Peak Decl. ¶¶ 14-19. In addition, Kroll will administer the Settlement Website containing relevant information about the settlement. *Id.* at ¶ 20.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed notice program satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees, costs, and expenses of no more than thirty-four percent (34%) of the $6,438,578.20 Settlement Fund  and Service Awards not to exceed $5,000 for each

20

of the Settlement Class Representatives in recognition of their contributions to the Settlement Class. The notice plan complies with Federal Rule of Civil Procedure 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for submitting objections and exclusions, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding Plaintiffs' Counsel's request for awards of fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the notice program and Short Form and Long Form Notices are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the settlement. *See Agnone v. Camden Cnty., Ga.*, No. 2:14-cv-00024, 2019 WL 1368634, at *8-9 (S.D. Ga. Mar. 26, 2019) (class notice mailed directly to settlement class members was the best practicable and satisfied due process). Thus, the notice plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

## C. Certification of the Settlement Class For Settlement Purposes Is Appropriate

Plaintiffs request that the Court certify a Settlement Class for settlement

21

purposes only. The Settlement Class is defined as:

> (a)    Those individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

> (b)    Those individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

Cecchi Decl. Ex.1, SA ¶ 1.38.[7]

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  To certify a settlement class, Plaintiffs must satisfy the requirements of Rule 23(a) and one of the requirements of Rule 23(b).  The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy.  Fed R. Civ. P. 23(a).  Plaintiffs seek certification for settlement purposes under Rule 23(b)(3), which requires a showing that common questions of law or fact predominate over any individual issues and a showing that the class treatment is the superior method for efficiently handling the case.  Fed. R. Civ. P. 23(b)(3).  These requirements are met for settlement purposes.

### 1. Numerosity

---

[7] The following entities and individuals are excluded from the Settlement Class: (i) Defendants and their officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge. Cecchi Decl. Ex. 1, SA ¶ 1.38.

Numerosity requires "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Third Circuit holds that class sizes exceeding forty (40) are typically sufficient to satisfy this requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Under Third Circuit precedent, Plaintiffs "must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding. Only then may the Court rely on 'common sense' to forgo precise calculations and exact numbers." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022). Here, the Settlement Class definition encompasses millions of Settlement Class Members, the joinder of whom in one action would certainly be impracticable. Thus, the numerosity element is satisfied.

### 2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is met where "the claims at issue . . . implicate[d] a 'uniform course of

23

conduct common to all class members subject to common proof in a single trial.'"

*C.P. v. N.J. Dep't of Educ.*, No. 1:19-cv-12807, 2022 WL 3572815, at \*6 (D.N.J. Aug.

19, 2022) (quoting *Chiang v. Veneman*, 385 F.3d 256, 266 (3d Cir. 2004)). "That

burden is not onerous." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir.

2013).

Here, the claims turn on whether AMCA's security environment was adequate

to protect Settlement Class Members' information and whether Sonic acted

reasonably to ensure that Settlement Class Members' information transmitted from

Sonic to AMCA was adequately protected. These inquiries can be fairly resolved—

at least for purposes of settlement—for all Settlement Class Members at once.

### 3.  Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses

of the representative parties must be typical of the claims or defenses of the class.

This analysis focuses on "whether the interests of the named plaintiffs align with

those of the unnamed members . . . and, explicitly, whether the claims and facts of

class representatives are sufficiently like those of unnamed class members." *In re*

*Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 1:19-cv-2875, 2023 WL

1818922, at \*9 (D.N.J. Feb. 8, 2023). However, a class representative's claims need

not be identical to those of the absent class members as "fact differences alone

between the named and unnamed plaintiffs do not render a claim atypical so long as

the named plaintiffs' claim arises from the same events, practices, or course of conduct of the defendants as for all class members, and is based upon the same legal theory." *Id.*

Here, there is a nexus between the Plaintiffs' claims and other Settlement Class Members' claims in that they each include information that was impacted in the Security Incident. All Settlement Class Members' claims involve Defendants' alleged failure to protect their information.

### 4.    Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (quoting *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 431 (3d Cir. 2016)). "For a class representative to be adequate, it must have a minimal degree of knowledge about the case, . . . and have no conflict of interest with class counsel, . . . and members of the class." *Id.* "Only 'fundamental' conflicts will defeat the adequacy requirement." *Id.*

Here, Plaintiffs have no conflicts with the Settlement Class and have actively participated in this case. Plaintiffs have also adequately prosecuted this action

25

through Plaintiffs' Counsel, which is comprised of attorneys with significant experience litigating class and other complex cases, especially in the data privacy context. *See* Cecchi Decl. Exs. 3-5.

### 5. Certification Under Rule 23(b)(3) Is Appropriate

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Put another way, "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). When assessing predominance and superiority for settlement purposes, a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### a. Common Questions of Law and Fact Predominate

In this case, the common factual and legal questions all cut to the issues at the heart of the Litigation. As the court in *Desue v. 20/20 Eye Care Network, Inc.*,

explained in finding predominance satisfied in the settlement context:

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

No. 0:21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022). Common factual and legal questions predominate based on Defendant's alleged failure to safeguard all Settlement Class Members' information from unauthorized access during the Security Incident, which is an issue that cuts across the Settlement Class. The predominance requirement is therefore readily satisfied for purposes of this settlement.

### b.  Settlement Class Treatment Is Superior

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3); *see also Prudential*, 148 F.3d at 316. To determine superiority, the Court considers:

> (A) the class members' interests in individually controlling the

27

prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in [a] particular forum; and, (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated." *Amchem*, 521 U.S. at 615.

Here, Settlement Class Members do not have a strong interest in controlling the prosecution of this case. After all, it would cost them substantially more to litigate an individual case than they could recover in damages. As other data breach courts have recognized, this case "is the classic negative value case; if class certification is denied, class members will likely be precluded from bringing their claims individually because the cost to bring the claim outweighs the potential payout." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 165 (D. Md. 2022), *rev'd on other grounds*, *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023). "For most class members the only realistic alternative to a class action is no action at all. In such a case, the adjudication of the matter through a class action is superior to no adjudication of the matter at all." *Id.* Further, there are no other pending cases outside this Court for the conduct alleged. Finally, manageability concerns are not implicated in settlement class certification. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district

28

court need not inquire whether the case, if tried, would present intractable management problems[.]"). Superiority is met. Thus, the Court may certify the Settlement Class for settlement purposes under Rule 23(b)(3).

### 6.  The Settlement Class Members Are Ascertainable

Although not explicitly set forth in the Federal Rules, courts have read into Rule 23 an implicit requirement that a class be "definite" or "ascertainable." "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." 5 James W. Moore et al., *Moore's Federal Practice* ¶ 23.21[3] (3d ed. 1997); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 163, 170 (3d Cir. 2015). The Third Circuit has explained that ascertainability requires: (1) that the class members be identifiable by objective criteria; and (2) that "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012)). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must . . . identify all class members at class certification . . . ." *Id.* Nor must plaintiffs "demonstrate that a single record, or set of records, conclusively establishes class membership." *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Rather, at this stage of the litigation, a

29

plaintiff need only show that "class members ***can*** be identified." *Byrd*, 784 F.3d at 163 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)) (emphasis in original). The Settlement Class proposed here meets relevant ascertainability criteria.

### a. The Settlement Class Is Defined with Reference to Objective Criteria

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 592-93 (citing *Chiang*, 385 F.3d at 271 (holding that "defining a class by reference to those who 'believe' they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation")). Such is the case here.

The Settlement Class includes:

a.   Those individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

b.   Those individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

Cecchi Decl. Ex. 1, SA ¶ 1.38. None of these components requires the Court to rely on impermissible subjective standards, potential Settlement Class Members' beliefs,

30

or a resolution of the merits of the claims. *Cf. Manual for Complex Litigation* § 21.222 (indicating in its discussion of ascertainability that "order defining the class should avoid subjective standards (*e.g.*, a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.*, persons who were discriminated against)"). Instead, these criteria provide a straightforward way to identify "a particular group that was harmed during a particular time frame, in a particular location, in a particular way," in accordance with law from this Circuit. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 841 (D.N.J. 2018) (quoting *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009)). Indeed, data regarding Settlement Class members has already been identified. Thus, the first criterion of the Third Circuit's ascertainability analysis is met.

### b. There Is a Reliable and Administratively Feasible Mechanism for Determining Settlement Class Membership

Second, the Court must be satisfied that there is a "reliable, administratively feasible" method to identify the Settlement Class Members. The Third Circuit addressed this requirement in *Byrd*, where it stated: "We were careful to specify in *Carrera* that '[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members **can be identified**.'" *Byrd*, 784 F.3d at 164 (quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in original). In other words, there must be evidence that it can be done. *See id.*

31

Plaintiffs have submitted as evidence the Peak Declaration, in support of Kroll's appointment as the Settlement Administrator should the Court approve the settlement. It is incumbent on a settlement administrator to determine if a claimant is a Settlement Class Member; otherwise, they are not entitled to any benefits. *See* Cecchi Decl. Ex. 1, SA ¶¶ 3.3, 10.3-10.4. To do so, the Settlement Administrator will use data providing Settlement Class Members' names and postal addresses. *Id.* at ¶ 3.2. The Claim Form is designed to help the Settlement Administrator determine eligibility, Cecchi Decl. Ex. 1, SA Ex. D, ¶¶ 8(a)(i)-(iv), and if a claimant is unable to prove membership in the Settlement Class or is excluded from the Settlement Class, their claim will be rejected.

A strong indicator of the reliability and feasibility of this methodology is the fact that the exercise is performed all the time in the settlement context. *See Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 1:13-cv-6962, 2014 WL 2615534, at *3-4 (D.N.J. June 12, 2014) (approving settlement and finding ascertainability satisfied); *see also* Cecchi Decl. Ex. 2, Peak Decl. ¶ 4. The requirement is satisfied here as well.

Accordingly, the Settlement Class should be certified for settlement purposes.

**D.      Proposed Co-Lead Counsel Satisfy Rule 23(g)**

Pursuant to Rule 23(g), Plaintiffs also move to appoint James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C., as lead settlement counsel and

Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC, and Justin J. Hawal of DiCello Levitt LLP, as co-lead settlement counsel for the Sonic settlement in the Other Labs track. Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23. Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interests of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Here, each of these considerations weighs strongly in favor of the adequacy of proposed lead and co-lead settlement counsel. Proposed lead and co-lead settlement counsel performed substantial work identifying and investigating potential claims, supporting the allegations in the Complaints, and prosecuting Plaintiffs' claims in hard-fought, complex litigation for six years. As reflected in their firm resumes, Plaintiffs' proposed lead and co-lead settlement counsel have substantial experience,

33

individually and collectively, successfully prosecuting class actions and other complex litigation throughout the United States. Moreover, the firms have demonstrated their abilities and commitment to this Litigation, devoting the resources and personnel necessary to get to this point – achieving a strong settlement with Sonic. Cecchi Decl. ¶ 9, Exs. 3-5 (firm resumes). They far exceed the requirements of Rule 23(g).

> **E.     The Court Should Approve a Schedule Leading Up
> to the Final Approval Hearing**

Plaintiffs request that the Court set a schedule, leading up to the Final Fairness Hearing, that would include, *inter alia*, deadlines for notice to Settlement Class Members, for Settlement Class Members to object to the Settlement, to opt out of the settlement, and to make claims under the settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. Cecchi Decl. Ex. 1, SA Ex. F (Proposed Schedule appended to Proposed Preliminary Approval Order).  At the Final Fairness Hearing, the Court should hear all evidence and argument necessary to make its final evaluation of the settlement.  *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval.  Additionally, Settlement Class Members who properly object to the settlement may be heard at this hearing.  The Court should determine through the Final Fairness Hearing whether the settlement will be approved.

## IV.     <u>CONCLUSION</u>

34

For these reasons, Plaintiffs respectfully request that the Court enter an Order

Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.


Dated: June 9, 2026                          **CARELLA, BYRNE, CECCHI,**
                                             **BRODY & AGNELLO, P.C.**


                                             By:_____/s/ James E. Cecchi_____
                                                      JAMES E. CECCHI

                                             James E. Cecchi
                                             5 Becker Farm Road
                                             Roseland, New Jersey 07068
                                             Telephone: (973) 994-1700
                                             Facsimile: (973) 994-1744
                                             jcecchi@carellabyrne.com

                                             *Lead Counsel for Plaintiffs*

                                             Joseph J. DePalma
                                             **LITE DEPALMA GREENBERG**
                                             **& AFANADOR, LLC**
                                             570 Broad Street
                                             Suite 1201
                                             Newark, NJ 07102
                                             Telephone: (973) 623-3000

                                             Justin J. Hawal
                                             **DiCELLO LEVITT LLP**
                                             8160 Norton Parkway
                                             Third Floor
                                             Mentor, Ohio 44060
                                             Telephone: (440) 953-8888

                                             *Other Labs Track Co-Lead Counsel*


35