# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To: *Other Labs Track* | Civil Action No. 19-md-2904(JKS)(MAH) |

**DECLARATION OF JAMES E. CECCHI IN SUPPORT OF OTHER LABS TRACK PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL AS TO DEFENDANTS SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES**

I, James E. Cecchi, declare as follows:

1.      I was appointed by this Court to serve as Interim Lead Counsel for Plaintiffs in the above-captioned MDL on November 5, 2019. (ECF 99). I make this Declaration in support of the Other Labs Track Plaintiffs' Motion for Preliminary Approval.

2.      I am an attorney duly licensed to practice in the State of New Jersey and member of the law firm Carella, Byrne, Cecchi, Brody & Agnello, P.C. I have personal knowledge of the matters stated herein, and, if called upon, I could and would competently testify thereto.

3.      Plaintiffs and the proposed Settlement Class they seek to represent have reached a nationwide class action settlement with Defendants Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively, "Sonic" or "Defendants") for a $6,438,578.20 common fund to resolve all claims for individuals to whom CPL, or Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection Agency ("AMCA") on behalf of CPL, sent notice that their information was involved or may have been involved in the cybersecurity incident at AMCA that occurred between August 1, 2018 and March 30, 2019 (the "Security Incident") and those individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent

2

notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

4.     On July 2, 2025, the Court ordered all Parties to engage in mediation. (ECF 768).  Plaintiffs and Sonic engaged former Magistrate Judge Diane M. Welsh, ret., and scheduled an in-person settlement conference. In advance of the settlement conference, Sonic and Plaintiffs exchanged comprehensive mediation statements.

5.     The settlement conference was conducted in person in Philadelphia before Magistrate Judge Welsh, (ret.), on January 15, 2026, and lasted all day. Ultimately, an agreement was reached on the material terms of a class-wide settlement.

6.     Following further negotiations, the Settlement Agreement was finalized on April 30, 2026. These negotiations were held with each side having full knowledge of the crucial issues in the case, and they involved numerous phone calls and e-mails between counsel in addition to the mediation.  As the mediator can attest, these negotiations were difficult, adversarial, and vigorously executed by both sides.

7.     The settlement provides Settlement Class Members with valuable benefits including reimbursement for verifiable, documented Out-of-Pocket Losses up to $5,000, which includes up to 10 total hours of time (at $25 per hour) spent on time remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is verifiable and fairly traceable to the Security

3

Incident.  In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for up to $50 (both subject to increases or decreases *pro rata* depending on the number of claims). In addition, all Settlement Class Members are eligible to enroll free of charge in two years of medical and healthcare information Monitoring Services provided by CyEx.

8.    The settlement was the result of intensive, arm's-length negotiations over the course of months between experienced attorneys with vast experience handling data breach class action cases and with the assistance of an experienced mediator. There is no evidence that any collusion or illegality existed during settlement negotiations.

9.    Proposed Lead and Co-Lead Settlement Counsel performed substantial work identifying and investigating potential claims, properly supporting the allegations in the Complaints, and prosecuting Plaintiffs' claims in hard-fought, complex litigation for six years. As reflected in their firm resumes, Plaintiffs' proposed Lead and Co-Lead Settlement Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation throughout the United States. *See infra* Exs. 3-5. Moreover, the firms have demonstrated their abilities and commitment to this Litigation, devoting the resources and personnel necessary to get to this point—achieving a beneficial settlement with Sonic.

10.    Attached hereto are true and correct copies of the foregoing exhibits in support of the Sonic Plaintiffs' Motion for Preliminary Approval:

11.    Attached hereto as **Exhibit 1** is a true and correct copy of the executed Settlement Agreement, including its attachments: Exhibit A Claim Form, Exhibit B Short Form Notice, Exhibit C Long Form Notice, Exhibit D Settlement Benefits Plan, Exhibit E Description of CyEx Monitoring Services, Exhibit F proposed Preliminary Approval Order.

12.    Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Carla Peak of Kroll Settlement Administration regarding the Notice Plan.

13.    Attached hereto as **Exhibit 3** is a true and correct copy of the firm resume for Carella, Byrne, Cecchi, Brody & Agnello, P.C.

14.    Attached hereto as **Exhibit 4** is a true and correct copy of the firm resume for Lite DePalma Greenberg & Afanador, LLC.

15.    Attached hereto as **Exhibit 5** is a true and correct copy of the firm resume for DiCello Levitt LLP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 9th day of June, 2026, at Roseland, New Jersey.

_/s/ James E. Cecchi_
James E. Cecchi

5

# **EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>The Other Labs Track | No. 19-md-2904 (JKS)(MAH)<br><br>MDL 2904 |

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement Agreement"), dated April 30, 2026, is made and entered into by and among the following Parties:[1] (i) Defendants Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively, "Sonic" or "Defendants"); and (ii) Plaintiffs Gwendolyn Anderson and Tonda Tate, individually and on behalf of the Settlement Class (collectively, "Plaintiffs"), in the litigation *In Re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Other Labs Track)*: Civil Action No. 19-MD-2904 (D.N.J.) (the "Litigation"). Defendants and Plaintiffs are each referred to as a "Party" and are collectively referred to herein as the "Parties." The Settlement Agreement is subject to Court approval and is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (defined below), upon and subject to the terms and conditions thereof.

## I.    RECITAL: THE LITIGATION

Defendants, either by themselves or by virtue of their affiliate entities, are providers of diagnostic testing services for patient care. Defendants, by themselves or through their affiliate entities or business associates, formerly used a company named Retrieval-Masters Creditor's Bureau, Inc. (d/b/a American Medical Collection Agency ("AMCA")) to pursue outstanding amounts owed by individuals to whom they had provided services. On May 14, 2019, AMCA notified Defendants of potentially unauthorized access to certain of its computer systems between August 2018 and March 2019 (the "Security Incident," as defined below). Certain information stored in an AMCA computer database, which was accessed in the Security Incident, was provided

---

[1]    All capitalized terms shall have the meaning set forth in the Definitions section below.

2

by CPL and Austin Path, or on their behalf, to AMCA. Various lawsuits alleging negligence, breach of contract, and other claims were filed against Defendants, their affiliates, and other parties related to the Security Incident, which were consolidated into this Litigation.

After six years of hard-fought litigation, the Parties engaged in mediation with the Honorable Diane M. Welsh, U.S.M.J. (ret.) and reached an agreement in principle to resolve this Litigation. The Parties have therefore agreed to settle the Litigation on the terms and conditions set forth herein in recognition that the outcome of the Litigation is uncertain and that achieving a final result through a trial and likely appeals would require substantial additional risk, uncertainty, discovery, time, and expense for all Parties.

## II.     RECITAL: PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLING

Plaintiffs believe the claims asserted in the Litigation, as set forth in the operative Complaint, have merit. Plaintiffs and Plaintiffs' Counsel (defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through continued motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Plaintiffs' Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and particularly in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    RECITAL: DENIAL OF WRONGDOING AND LIABILITY

Defendants deny the claims and contentions alleged in the Litigation. Defendants deny all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Defendants further deny that Plaintiffs and the classes they purport to represent have suffered any

3

injury or damage. Defendants maintain that any alleged injury or damage was not caused by the Security Incident or any act or omission on the part of Defendants and that the Litigation does not satisfy the requirements to be certified or tried as a class action under Federal Rule of Civil Procedure Rule 23. Nonetheless, while continuing to deny any wrongdoing or liability for the claims asserted in the Litigation and believing it has strong and meritorious defenses thereto, and without any admission of liability, Defendants have concluded that further litigation would be protracted and expensive. Defendants have, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    SETTLEMENT TERMS & DEFINITIONS

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and among Plaintiffs, individually and on behalf of the Settlement Class, Plaintiffs' Counsel, and Defendants that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Parties and the  Settlement Class, except those members of the Settlement Class who timely opt-out of the settlement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.  Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    **"Action" or "Litigation"** means *In Re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Other Labs Track)*: Civil Action No. 19-MD-2904, pending in the United States District Court for the District of New Jersey, which includes all underlying lawsuits filed against Defendants and consolidated therein and all

4

amendments to the pleadings therein.  The Action and this Agreement resolve claims against Defendants Sonic Healthcare U.S.A., Aurora Diagnostics LLC, CPL, and Austin Path only and do not resolve claims against other defendants in parallel litigation arising out of the Security Incident.

1.2 **"Agreement" or "Settlement Agreement"** means this agreement, exhibits, and the settlement embodied herein.

1.3 **"Attorneys' Fees and Expenses"** means the attorneys' fees that Plaintiffs' Counsel request the Court to approve for payment from the Settlement Fund as compensation for Plaintiffs' Counsel's work in prosecuting and settling the Action, and payment of litigation expenses incurred.

1.4 **"Claim"** means a claim for settlement benefits made under the terms of this Settlement Agreement, pursuant to the Settlement Benefits Plan.

1.5 **"Claim Form"** means the claim form to be used by Settlement Class Members to submit a Claim, either through the mail or online through the Settlement Website, substantially in the form as shown in Exhibit A attached hereto.

1.6 **"Claims Deadline"** means the deadline for Claims submitted pursuant to Paragraphs 10.1(b) through (c) and 10.3 of the Agreement.

1.7 "**Court**" means the United States District Court for the District of New Jersey.

1.8 **"Days"** means calendar days, unless specified otherwise.

1.9 **"Defendants' Counsel"** means the counsel of record for the Defendants in the Litigation.

1.10 "**Effective Date**" means the first date by which all of the events and conditions specified in Paragraph 11.1 herein have occurred and been met.

1.11    "**Escrow Account**" means the segregated escrow account maintained by the Escrow Agent into which Defendants shall make payments for the establishment of the Settlement Fund.

1.12    "**Escrow Agent**" means Citibank.

1.13    "**Final**" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court through entry of the Final Approval Order; (ii) the Court has entered a Judgment (as that term is defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.14    "**Final Approval Order**" means an order entered by the Court after the Final Fairness Hearing, which finally approves the Settlement Agreement.

1.15    "**Final Fairness Hearing**" means the hearing the Court will hold to consider the fairness of the settlement as provided by Fed. R. Civ. P. 23(e)(2).

1.16    "**First Amended Complaint**" or "**FAC**" means the latest iteration of Plaintiffs' Complaint against Defendants pending before the Court and filed by Plaintiffs on March 31, 2022, and styled as "First Amended Consolidated Class Action Complaint: Sonic Healthcare USA and Related Subsidiaries and Laboratories."

1.17    **"Judgment"** means a final judgment rendered by the Court, which dismisses Defendants with prejudice and fully resolves the Litigation without material change to the terms and conditions set forth in the Agreement herein.

1.18    **"Long Form Notice"** means the long form notice of settlement posted on the Settlement Website, attached hereto as Exhibit C.

1.19    **"Medical Shield Pro"** means those monitoring services provided by CyEx pursuant to its Medical Shield Pro product, consistent with Exhibit E.

1.20    **"Net Settlement Fund"** means the monies remaining in the Settlement Fund after the payment of Notice and Settlement Administration Costs, Attorneys' Fees and Expenses, Service Awards, Tax Expenses, Taxes, and Tax-Related Expenses, and costs for procurement of Medical Shield Pro.

1.21    **"Notice and Settlement Administration Costs"** means all costs incurred or charged by the Settlement Administrator in connection with providing notice to Settlement Class Members and administering the settlement, including all settlement benefits.

1.22    **"Notice Date"** means forty-five (45) days after entry of the Preliminary Approval Order.

1.23    **"Objection Date"** means the date by which Settlement Class Member objections must be received by the Settlement Administrator, or in the alternative, filed with the Court.

1.24    **"Opt-Out Date"** means the date by which Settlement Class Members must mail or otherwise submit their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. To the extent there is no postmark date, the date of mailing shall be deemed three days prior to receipt of the request for exclusion.

1.25    **"Out-of-Pocket Losses"** means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Security Incident, and that have not already been reimbursed by a third party, as set forth in the Settlement Benefits Plan.  Out-of-Pocket Losses may include bank fees, postage, copying, mileage, telephone charges, and notary charges, and costs incurred as a result of purchasing credit monitoring or other identity theft insurance services, between August 1, 2018, and the Claims Deadline.

1.26    **"Person"** means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents, and assignees.

1.27    **"Personal Information"** means names, dates of birth, Social Security numbers, addresses, credit card information, bank information, or medical provider-related information that Plaintiffs contend could potentially have been accessed without authorization as a result of the Security Incident.

1.28    **"Plaintiffs' Counsel"** means: Attorneys James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Lead Class Counsel"); Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC; and Justin J. Hawal of DiCello Levitt LLP.

1.29    **"Preliminary Approval Order"** means the Court order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class, substantially in the form as shown in Exhibit F attached hereto.

1.30    **"Related Entities"** means each of Defendants' past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors,

8

assigns, directors, officers, their current and former affiliates (including, but not limited to, American Esoteric Laboratories, CBLPath, Inc., Sunrise Medical Laboratories, Inc., Laboratory Medicine Consultants, Ltd., South Texas Dermatology Lab, PLLC, Pathology Solutions, LLC, Seacoast Pathology, Inc., Arizona Dermatopathology, Western Pathology Consultants, Ltd., and Laboratory of Dermatology ADX, LLC), divisions, parents, subsidiaries, customers, representatives, officers, directors, shareholders, employees, principals, agents, attorneys, insurers, and reinsurers, successors and assigns, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.31    **"Released Claims"** shall collectively mean all claims against Defendants and the Related Entities, as defined above. "Released Claims" shall include any and all claims, liabilities, rights, demands, suits, actions, causes of action, obligations, damages, penalties, costs, attorneys' fees, losses, and remedies of every kind or description—whether known or unknown, existing or potential, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that relate to or arise from the Security Incident, the facts alleged in the FAC or any prior complaints, Defendants' information security policies and practices, or Defendants' transmission of information to third party vendors, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law.

1.32    **"Released Parties"** means Defendants, Related Entities, and each and every one of its respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments,

9

owners, members, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as any and all of their predecessors, successors, officers, directors, employees, advisors, vendors, customers, shareholders, partners, servants, agents, attorneys, representatives, insurers, reinsurers, subrogees, and assigns. Each of the Released Parties may be referred to individually as a "Released Party."

1.33    **"Security Incident"** means the cybersecurity incident reported by AMCA as affecting its computer systems between approximately August 1, 2018 and March 30, 2019.

1.34    **"Service Awards"** means the awards, if any, granted by the Court for named Plaintiffs' institution, prosecution, and substantial participation in the Litigation to be paid from the Settlement Fund.

1.35    **"Settlement Administration"** means the work of disseminating the Long Form and Short Form Notices, processing Claims under the Settlement Benefits Plan, and other administrative work performed by the Settlement Administrator related to this Agreement.

1.36    **"Settlement Administrator"** means Kroll Settlement Administration, LLC, an independent settlement administrator mutually agreed to by the Parties and approved by the Court.

1.37    **"Settlement Benefits Plan"** means the plan for processing Claims for, and distributing settlement benefits to, Settlement Class Members, which shall be presented by Plaintiffs' Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order, attached hereto as Exhibit D.

1.38    **"Settlement Class"** means:

(a)    Those individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

10

(b)    Those individuals to whom Austin Path, or AMCA on behalf of Austin Path,
sent notice that their information was involved or may have been involved in the
Security Incident affecting AMCA.

The Settlement Class specifically excludes: (i) Defendants and their officers and directors; (ii) the
Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other
Person found by a court of competent jurisdiction to be guilty under criminal law of initiating,
causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such
charge.

1.39    **"Settlement Class Data"** means data regarding Settlement Class Members to be
provided to the Settlement Administrator containing the full names and current or last known
addresses for Settlement Class Members, subject to the Settlement Administrator signing any
Business Associate Agreement requested by the Parties.

1.40    **"Settlement Class Member(s)"** means all Persons meeting the definition of the
Settlement Class, or their respective successors or assigns, who do not timely and validly request
exclusion from the Settlement Class.

1.41    **"Settlement Class Notice"** means the Long Form Notice and Short Form Notice,
including dissemination via electronic email.

1.42    **"Settlement Class Representatives"** means and includes each of the following
individuals named Plaintiffs in the FAC: Gwendolyn Anderson and Tonda Tate.

1.43    **"Settlement Fund"** means a cash settlement fund for the benefit of Settlement
Class Members that Defendants have agreed to pay or caused to be paid, subject to the terms and
conditions set forth herein, in the amount of Six Million, Four Hundred Thirty-Eight Thousand,
Five Hundred Seventy Eight Dollars and Twenty Cents ($6,438,578.20). The "Settlement Fund"

11

constitutes the total financial obligation of Defendants related to the Agreement and from which all payments and financial obligations contemplated by the Parties hereunder shall be paid without any further financial obligation of any kind on the part of Defendants, including, but not limited to, settlement benefits to Settlement Class Members, Notice and Settlement Administration Costs, Taxes, Tax Expenses, Tax-Related Expenses, any Attorneys' Fees and Expenses, any Service Awards, and any costs and fees related to the Class Action Fairness Act of 2005 28 U.S.C § 1715 ("CAFA") notice.

1.44    **"Settlement Website"** means a website created by the Settlement Administrator, the URL for which is to be mutually selected by the Parties, that will inform the Settlement Class of the terms of this Settlement Agreement, their rights, dates, and deadlines and related information, as well as provide Settlement Class Members with the ability to submit a Claim online.

1.45    **"Short Form Notice"** means the short form notice of the proposed class action settlement, substantially in the form as shown in Exhibit B attached hereto. The Short Form Notice will inform Settlement Class Members of, among other things, the Settlement Website, the Claims Deadline, the Opt-Out and Objection Dates, and the scheduled date of the Final Fairness Hearing.

1.46    **"Tax Expenses"** means expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns.

1.47    **"Taxes and Tax-Related Expenses"** means: (a) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendants or their counsel with respect to any income or gains earned by or in respect of the

12

Settlement Fund; (b) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (c) any and all expenses and liabilities incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

1.48    **"Unknown Claims"** means any of the Released Claims that Plaintiffs and Settlement Class Members do not know or suspect to exist in their favor at the time of the release of the Released Parties that, if known by them, might have affected their settlement with, and release of, the Released Parties, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs and Settlement Class Members intend to and expressly shall have waived the provisions, rights, and benefits conferred by California Civil Code § 1542 (or any similar comparable, or equivalent provision of any federal, state or foreign law, or principle of common law which is similar, comparable, or equivalent to California Civil Code § 1542), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs and Settlement Class Members may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs and Settlement Class Members expressly shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released

13

Claims. The Parties acknowledge that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

**2.      The Settlement Fund**

2.1      Defendants will fund or cause to be funded a Settlement Fund in the amount of $6,438,578.20 to be administered by the Settlement Administrator. The Settlement Fund will be paid in two installments: (i) within thirty (30) days following entry of preliminary approval by the Court and the Settlement Administrator providing to Defendants a reasonably detailed written statement of the amount estimated by the Settlement Administrator to pay the Settlement Administration Costs anticipated to be incurred up to the Final Approval Hearing, Defendants will pay to the Settlement Fund Escrow Account the amount estimated by the Settlement Administrator to pay the Settlement Administration Costs anticipated to be incurred up to the Final Approval Hearing with such amount not to exceed $2,500,000; and (ii) the remaining balance within thirty (30) days after the later of the Effective Date or July 15, 2026.  Aside from payment of the Settlement Fund, Defendants will not have any other financial obligation under the settlement, and under no circumstances will Defendants be responsible for or have any liability associated with taxes related to the Settlement Fund. The Parties acknowledge that the settlement consideration set forth herein was negotiated based on Defendants' current estimate of the size of the Settlement Class and eligible class population, and nothing in this Agreement shall be construed as a separate guarantee of any per-capita recovery amount.

2.2      The Settlement Fund shall be used to fund the following: (i) all Notice and Settlement Administration Costs; (ii) any Court-awarded Attorneys' Fees and Expenses; (iii) any Service Awards; (iv) any Taxes, Tax Expenses, and Tax-Related Expenses related to the Settlement Fund; (v) all notice costs required by CAFA, and (vi) all other benefits to the Settlement

14

Class.  Any amount remaining in the Settlement Fund after payment of all of the above shall be paid as set forth in the Settlement Benefits Plan and as approved by the Court.  No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

2.3    The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Defendants in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated or if approval is reversed on appeal, as described in Paragraphs 11.2, 11.3, and 11.4.

2.4    Any eligible Settlement Class Member that does not timely and validly submit a Claim Form or whose claim is not otherwise approved by the Court: (a) shall be deemed to have waived their right to share in the Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Settlement Agreement and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the judgment and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining or prosecuting any of the Released Claims against Defendants, as more fully described in the Settlement Agreement and Notice.

2.5    The Parties agree that the Escrow Account containing the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation

("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund. Further, the Settlement Administrator, within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and the Escrow Agent shall pay from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

2.6     The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraphs 11.2, 11.3, and 11.4.

2.7     Taxes, Tax Expenses, and Tax-Related Expenses relating to the Settlement Fund shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties, their counsel, and their insurers and reinsurers for Taxes, Tax Expenses, and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties

16

and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds in connection with his, her or its benefits under this settlement.

3.    **Notice and Settlement Administration**

3.1    All Notice and Settlement Administration Costs, including, without limitation, all fees and expenses of the Settlement Administrator, shall be paid from the Settlement Fund.

3.2    Within five (5) business days after entry of the Preliminary Approval Order, the Settlement Administrator will be provided the Settlement Class Data that include(s) the full names and current or last known mailing addresses for each individual in the Settlement Class, to the extent reasonably available. The Parties agree that, to the extent email addresses are available for any Settlement Class Members, email notice is the best notice practicable under the circumstances under Fed. R. Civ. P. 23(c)(2)(B).

3.3    The Settlement Administrator will be responsible for administering all aspects of the Settlement Agreement. At least one of Plaintiffs' counsel and one of Defendants' counsel shall be included on all substantive communications with the Settlement Administrator concerning the form and content of Settlement Class Notice whether written or oral. The Settlement Administrator also must consult with Plaintiffs' Counsel and Defendants' Counsel on material decisions regarding claims administration.

3.4    The Parties, Plaintiffs' Counsel, Defendants' Counsel, and Defendants' insurers and reinsurers shall not have any liability whatsoever with respect to (i) any act, omission or

17

determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes or Tax-Related Expenses from the Settlement Fund.

3.5    The Settlement Administrator shall indemnify and hold harmless the Parties, Plaintiffs' Counsel, Defendants' Counsel, and Defendants' insurers and reinsurers for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Settlement Benefits Plan and the administration of the Settlement Agreement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes or Tax- Related Expenses from the Settlement Fund.

4.    **Opt-Out Procedures**

4.1    Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. The written notice must clearly manifest the Person's intent to opt-out of the Settlement Class and must include the name of the proceeding, the individual's full name, current address, telephone number, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the settlement. So-called

18

"mass" or "class" opt-outs shall not be allowed, as set forth in Paragraph 4.4 below. To be effective, written notice must be postmarked no later than sixty (60) days after the Notice Date.

4.2    All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in Paragraph 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of or be bound by the terms of this Settlement Agreement. All Settlement Class Members (Persons falling within the definition of the Settlement Class who do not opt-out of the Settlement Class in the manner set forth in Paragraph 4.1 above) shall be bound by the terms of this Settlement Agreement and Final Approval Order and Judgment entered thereon.

4.3    The Notice must clearly state that any Settlement Class Member who does not file a timely Opt-Out request in accordance with this Section will lose the opportunity to exclude himself or herself from the Settlement Agreement and will be bound by the Settlement Agreement.

4.4    No Person shall exercise any exclusion rights of any other person, or (a) Opt-Out individuals as a group, in the aggregate, or as a class involving more than one Person; or (b) opt-out more than one Person on a single notice, or as an agent or representative. Any such purported Opt-Out requests shall be void, and the Person(s) who is or are the subject of such purported Opt-Out requests shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Releases contained herein, and Judgment entered thereon, unless he or she submits a valid and timely Opt-Out request.

4.5    Within seven (7) days after the deadline for Opt-Outs as set forth in this Section and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid Opt-Outs. If a Person submits both a Claim and an Opt-Out, the Settlement Administrator will advise such Person via email, unless there is no email address for the Person, in which case the notification shall be via mail, and request that the Person withdraw

19

either the Claim or the Opt-Out.  If such Person does not withdraw the Claim or Opt-Out within seven (7) days, the Person will be deemed to have waived and withdrawn the Opt-Out and shall be treated as a Settlement Class Member for all purposes.

4.6     The Parties and their respective counsel agree that they will make no effort to suggest, solicit, facilitate, or otherwise encourage a Person to Opt-Out of the Settlement Class.

5.     **Objection Procedure**

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the objector's full name, address, telephone number, and email address; (ii) the case name and docket number: *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (JKS) (MAH) (D.N.J.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) the identity of all class action cases in which the objector or his or her counsel has objected; (vii) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (viii) the objector's personal signature. To be timely, written notice of an objection in the appropriate form must be received, no later than sixty (60) days after the Notice Date, by the Settlement Administrator at the Post Office box designated in the Long Form Notice. The objector or their counsel may also file their objection with the Court through the Court's ECF system, with service on Plaintiffs' Counsel and Defendants' Counsel, to be made through the ECF system. For

20

all objections mailed to the Settlement Administrator, Plaintiffs' Counsel shall file them with the Court as an exhibit to Plaintiffs' motion for final approval.

5.2     The Notice must set forth the time and place of the Final Fairness Hearing scheduled by the Court that the objector may choose to attend, and notify any objector that he or she may be required to appear for deposition regarding the grounds for their objection and must provide along with their objection the dates when the objector will be available to be deposed during the period from when the objection is filed through the date five (5) days before the Final Fairness Hearing. The Notice shall also state that any Settlement Class Member who does not file a timely and valid objection in accordance with this Section waives the right to object or to be heard at the Final Fairness Hearing and shall be forever barred from making any objection to the Settlement.

5.3     Any Settlement Class Member who fails to comply with the requirements for objecting in Paragraph 5.1, or fails to provide dates for a deposition or otherwise appear for a noticed deposition per Paragraph 5.2, shall waive and forfeit any and all rights he or she may have to appear separately and to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Paragraph 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Approval Order, or the Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

6.     **Settlement Class Certification**

6.1     The Parties agree, for purposes of this settlement only, to the certification of the Settlement Class under Fed.  R. Civ.  P.  23(b)(3). If the settlement set forth in this Settlement

21

Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement or otherwise, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Party's position on the issue of class certification or any other issue. The Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case or action, as to which all their rights are specifically preserved. Defendants reserve the right to contest class certification for all other purposes.

6.2    The Parties acknowledge that there has been no stipulation or agreement as to the class or certification for any purpose other than effectuating the settlement, and that if the Effective Date, for whatever reason, fails to occur, any stipulation or agreement as to the class or certification becomes null and void *ab initio*; this Settlement Agreement or any other settlement-related statement shall not be cited in support of an argument for certifying any class for any purpose related to this Action or any other proceeding; and any orders preliminarily or finally approving the certification of any class contemplated by the Settlement Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any Person or entity in support of claims or defenses or in support or in opposition to a class certification motion.

7.    **Releases**

7.1    As of the Effective Date, all Settlement Class Members, including the Settlement Class Representatives, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, representatives, and any other Person purporting to claim on their

behalf, hereby expressly, generally, absolutely, and unconditionally release and discharge any and all Released Claims against Released Parties.

7.2     The Released Claims include the release of Unknown Claims.  Upon the Effective Date, Plaintiffs and the Settlement Class Members shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

7.3     Upon the Effective Date, Plaintiffs and the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding Paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order.  It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this Section.

7.4     Upon the Effective Date, Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiffs, each and all of the Settlement Class Members, and Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation, except for enforcement of the Settlement Agreement. Any other claims or defenses Defendants may have against such Persons including, without limitation, any claims based upon or arising out of any contractual, employment, or other business relationship with such Persons that are not based upon or do not arise out of the institution,

23

prosecution, assertion, settlement, or resolution of the Litigation are specifically preserved and shall not be affected by the preceding sentence.

8.    **Plaintiffs' Counsel's Attorneys' Fees and Expenses, and Service Award Payments to Plaintiffs**

8.1    The Parties have agreed that, as part of the settlement, the Court shall determine the amount of any award of Attorneys' Fees and Expenses to be paid from the Settlement Fund.

8.2    Plaintiffs' Counsel shall submit a motion to the Court requesting an award of attorneys' fees not to exceed thirty-four percent (34%) of the Settlement Fund, plus accrued interest thereon, plus payment of Plaintiffs' Counsel's incurred litigation expenses no later than 90 days after the issuance of the Preliminary Approval Order (15 days before the Objection and Opt-Out Dates).

8.3    Any Attorneys' Fees and Expenses awarded by the Court ("Fee Award") shall be paid from the Settlement Fund to Plaintiffs' Counsel thirty (30) days after the Effective Date.

8.4    To the extent applicable, and unless otherwise ordered by the Court, Plaintiffs' Lead Class Counsel shall have the sole and absolute discretion to allocate any Attorneys' Fees and Expenses awarded by the Court amongst Plaintiffs' Counsel and any other attorneys for Plaintiffs. Defendants and their insurers and reinsurers shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

8.5    Plaintiffs may move the Court for Service Award payments in an amount up to $5,000.00 to each individual Plaintiff in light of Plaintiffs' institution, prosecution, and substantial participation in the Litigation to be paid from the Settlement Fund. If the Court awards less than Plaintiffs request in Service Awards or attorneys' fees and expenses, the difference will remain in the Settlement Fund to be used for the benefit of the Settlement Class Members. Service Awards ordered by the Court shall be paid within twenty (20) days of the Effective Date of the Settlement.

8.6    In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and costs and expenses and/or the payment of Service Awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the attorneys' fees and costs and/or Service Awards shall constitute grounds for termination of this Agreement or impact the finality or effectiveness of this Agreement.

8.7    Except for any Attorneys' Fees or Expenses paid out of the Settlement Fund as set forth herein and approved by the Court, Plaintiffs and Settlement Class Members shall be responsible for their own attorney's fees and all expenses and costs associated with the Action. Defendants and their insurers and reinsurers shall have no liability or responsibility for any such attorneys' fees and costs beyond those paid out of the Settlement Fund.

8.8    In the event the Effective Date does not occur, or the Fee Award is reversed or modified, or the Settlement is canceled or terminated for any other reason, and such reversal, modification, cancellation, or termination becomes final and not subject to review, and in the event the Fee Award has been paid to any extent, then Plaintiffs' counsel who received any part of the Fee Award shall be obligated, within ten (10) days of receiving notice from Defendants, Defendants' counsel, or a court of appropriate jurisdiction, to refund all fees and expenses paid to them, including interest. As a condition of receiving any of the Fee Award, each Plaintiffs' counsel's law firm, on behalf of itself and each partner and/or shareholder, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for purposes of enforcing this provision, and each are jointly and severally liable and responsible for any required repayment. Plaintiffs' Counsel further stipulate, warrant, and represent, that they have both the

25

actual and apparent authority to enter into this provision on behalf of the law firms. In the event Plaintiffs' Counsel and/or their law firms fail to repay any amounts that are owed pursuant to this provision, the Court may issue orders, including but not limited to judgments and attachment orders, and make appropriate findings for sanctions for contempt of Court.

9.    **Preliminary Approval Order**

9.1    Plaintiffs' Counsel shall file a motion for preliminary approval of the settlement with the Court, attaching as an exhibit this Settlement Agreement and requesting entry of the proposed Preliminary Approval Order (Exhibit F), including the timeline provided therein, requesting, *inter alia*:

(a)    certification of the Settlement Class for settlement purposes only pursuant to Paragraph 6.1;

(b)    preliminary approval of the Settlement Agreement, including the Releases, as set forth herein;

(c)    appointment of Plaintiffs' Counsel to represent the Settlement Class;

(d)    appointment of Plaintiffs as Settlement Class Representatives;

(e)    approval of the Short Form Notice to be mailed to the Settlement Class;

(f)    approval of the Long Form Notice to be posted on the Settlement Website, which, together with the Short Form Notice, shall include a fair summary of the Parties' respective positions, statements that the Persons in the Settlement Class are entitled to benefits under the settlement, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, instructions for making Claims to the extent contemplated herein, and the date, time, and place of the Final Fairness Hearing;

(g)      approval of the Claim Form to be used by Settlement Class Members to make a Claim;

(h)      preliminary approval of the notice plan and the Settlement Benefits Plan;

(i)      appointment of Kroll Settlement Administration as the Settlement Administrator;  and

(j)      appointment of Citibank as Escrow Agent.

10.      **Settlement Administration and Settlement Class Notice**

10.1    Notice shall be provided to the Settlement Class by the Settlement Administrator as follows:

(a)      No later than five (5) days after entry of the Preliminary Approval Order, the Settlement Administrator shall be provided with the Settlement Class Data, as set forth in Paragraph 3.2. The Settlement Class Data shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement or provide data and information in its possession to the Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Settlement Class Data;

(b)      Prior to the dissemination of Notice, the Settlement Administrator shall establish the Settlement Website that will inform the Settlement Class of the terms of this Settlement Agreement, their rights, applicable dates and deadlines, and related information. The Settlement Website shall include, in .pdf format and available for download the following documents: (i) the Short Form Notice; (ii) the Long Form Notice; (iii) the Claim Form; (iv) the Preliminary Approval Order; (v) this Settlement Agreement; (vi) Plaintiffs'

27

Motion for Attorneys' Fees and Expenses and Service Awards; and (vii) any other materials agreed upon by the Parties or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically. The Settlement Website shall not include any advertising and be deactivated 30 days following distribution of all settlement benefits pursuant to the Settlement Benefits Plan;(c) Short Form Notice: Within forty-five (45) days after the entry of the Preliminary Approval Order ("Notice Date"), and subject to the requirements of this Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator shall provide the Short Form Notice to the Settlement Class via email, or via mail where no email address is reasonably available. Before any emailing or mailing under this Paragraph occurs, the Settlement Administrator shall run the postal addresses from the Settlement Class Data through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

(c)    In the event that a Short Form Notice is returned to the Settlement Administrator, either by bounce back of the email or by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Form Notice to the forwarding address within a reasonable period of time after receiving the returned Short Form Notice;

(d)    In the event that subsequent to the first emailing or mailing of a Short Form Notice, and at least 14 days prior to the Opt-Out Date and Objection Date, a Short Form Notice is returned to the Settlement Administrator by bounce back of the email or by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement

28

Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Short Form Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing;

(e)    Publishing, on or before the Notice Date, the Claim Form, Long Form Notice and this Settlement Agreement on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the period during which Claims can be submitted;

(f)    A toll-free help line with an IVR system and live agents shall be made available to provide the Settlement Class with additional information about the settlement. The Settlement Administrator also will provide copies of the Long Form Notice and paper Claim Form, as well as this Settlement Agreement, upon request; and

(g)    Contemporaneously with seeking Final Approval of the Settlement, Plaintiffs' Counsel shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with these provisions regarding notice.

10.2    The Settlement Administrator, on behalf of Defendants, shall timely serve notice of the settlement as required by CAFA, 28 U.S.C. § 1715.  Any and all costs and fees related to any notice of the settlement required by CAFA shall be paid from the Settlement Fund.

10.3    The Settlement Administrator shall administer and process the Claims submitted by Settlement Class Members pursuant to the Settlement Benefits Plan. The Settlement Administrator shall provide Plaintiffs' Counsel and Defendants' Counsel reports as to both Claims

29

and benefits distribution, and Plaintiffs' Counsel and Defendants' Counsel have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Settlement Administrator's determination of whether a Claim is valid shall be binding, subject to the process set forth in the Settlement Benefits Plan. No decision of the Settlement Administrator shall be deemed to constitute a finding, admission, or waiver by Defendants as to any matter of fact, law, or evidence having any collateral effect on any proceedings in any forum or before any authority.

10.4    All Settlement Class Members who fail to timely submit a Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

10.5    No Person shall have any claim against the Settlement Administrator, Defendants, Plaintiffs' Counsel, Plaintiffs, Defendants' Counsel, or Defendants' insurers and/or reinsurers based on distributions of benefits to Settlement Class Members as provided for herein.

11.    **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

11.1    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order as set forth by Paragraph 9.1;

(b)    the Court has entered the Final Approval Order and Judgment; and

(c)    the Judgment has become Final and no longer subject to appeal, as defined in Paragraph 1.13.

30

11.2    If all conditions specified in Paragraph 11.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to Paragraph 11.4 unless Plaintiffs' Counsel and Defendants' Counsel mutually agree in writing to proceed with the Settlement Agreement.

11.3    In addition, Defendants shall have the right to terminate the Settlement Agreement, subject to Paragraph 11.4, if more than a certain number of Persons timely submit requests to Opt-Out of the settlement, which is set forth in the confidential Attachment A hereto. Defendants shall have five (5) business days after being provided the final list of opt-outs by the Settlement Administrator to exercise this right at Defendants' sole discretion. Should Defendants choose to exercise this right, they can do so via written notice to Plaintiffs' counsel James E. Cecchi and Caroline F. Bartlett by email or mail.

11.4    In the event that the Settlement Agreement, the Exhibits attached hereto, or the releases set forth in Paragraphs 7.1 through 7.4 above are not approved or are materially modified by the Court, including any material modification to the class definition, release scope, claims process, and benefits structure or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms: (i) the Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel, (ii) money remaining in the Settlement Fund less amounts already billed or incurred for Notice and Settlement Administration Costs will be returned to Defendants, and (iii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no

31

order of the Court or modification or reversal on appeal of any order reducing the amount of Attorneys' Fees and Expenses or Service Awards to the Plaintiffs shall constitute grounds for cancellation or termination of the Settlement Agreement.

## 12.    **Notices**

12.1    All notices to Plaintiffs' Counsel provided in this Settlement Agreement shall be sent by e-mail and First Class mail to:

James E. Cecchi, Esq.
Carella Byrne Cecchi Brody Agnello, P.C.
5 Becker Farm Road
Roseland, NJ  07068
JCecchi@carellabyrne.com

12.2    All notices to Defendants' Counsel provided in this Settlement Agreement shall be sent by e-mail and First Class mail to:

Bradley J. Bartolomeo, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
7 World Trade Center, 250 Greenwich Street, 11th Floor
New York, NY 10007
Bradley.Bartolomeo@lewisbrisbois.com

## 13.    **Miscellaneous Provisions**

13.1    The Parties (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise reasonable efforts to accomplish the terms and conditions of this Settlement Agreement.

13.2    The Parties agree that the Action is being settled voluntarily by the Parties after consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

32

13.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Settlement Agreement and the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

13.5    This Agreement contains the entire understanding between Defendants and Plaintiffs regarding settlement of the Litigation and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Defendants and Plaintiffs in connection with settlement of the Litigation. Except as otherwise provided herein, each party shall bear its own costs.

13.6    The Parties and their Counsel shall not, at any time, make disparaging public statements regarding Defendants, the Settlement or the Action.

13.7    Any exhibits to this Settlement Agreement and any exhibits thereto are a material part of the settlement and are incorporated and made a part of the Settlement Agreement.

13.8    Plaintiffs' Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any non-material modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

13.9    Each counsel or other Person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

13.10   The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

13.11   The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

13.12   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

13.13   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

13.14   All dollar amounts are in United States dollars (USD).

13.15   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

34

*SIGNATURES ON FOLLOWING PAGES*

On behalf of the Settlement Class, including Gwendolyn Anderson and Tonda Tate:


Dated: April 30, 2026                    By: _____
                                         James E. Cecchi
                                         Carella, Byrne, Cecchi, Brody & Agnello, P.C.
                                         *Lead Counsel for Plaintiffs and the Settlement Class*


Dated: _____                     By: _____
                                         Joseph J. DePalma
                                         Lite DePalma Greenberg & Afanador, LLC
                                         *Counsel for Plaintiffs and the Settlement Class*


Dated: _____                     By: _____
                                         Justin J. Hawal
                                         DiCello Levitt LLP
                                         *Counsel for Plaintiffs and the Settlement Class*


36

On behalf of the Settlement Class, including Gwendolyn Anderson and Tonda Tate:


Dated: _____          By:_____

James E. Cecchi

Carella, Byrne, Cecchi, Brody & Agnello, P.C.

*Lead Counsel for Plaintiffs and the Settlement Class*


Dated: April 30, 2026          By:_____

Joseph J. DePalma

Lite DePalma Greenberg & Afanador, LLC

*Counsel for Plaintiffs and the Settlement Class*


Dated: April 30, 2026          By:_____

Justin J. Hawal

DiCello Levitt LLP

*Counsel for Plaintiffs and the Settlement Class*

On behalf of Sonic Healthcare U.S.A., Aurora Diagnostics, LLC, Clinical Pathology
Laboratories, Inc., and Austin Pathology Associates:

Dated: 5/4/26                          By:_____

                                       Bradley J. Bartolomeo
                                       Lewis Brisbois Bisgaard & Smith, LLP
                                       *Counsel for Sonic Healthcare U.S.A., Aurora*
                                       *Diagnostics, LLC, Clinical Pathology Laboratories,*
                                       *Inc., and Austin Pathology Associates*

37

# EXHIBIT A

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:**
**[DEADLINE]**

</td><td>

**IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC.**
**CUSTOMER DATA SECURITY BREACH LITIGATION**
**SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC,**
**CLINICAL PATHOLOGY LABORATORIES, INC., AND**
**AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT**

Civil Action No. 19-md-2904 (JKS)(MAH)(MDL 2904)

# CLAIM FORM

</td><td></td></tr>
</table>

## GENERAL INSTRUCTIONS

**To receive a payment from this Settlement via an electronic payment, you must submit the Claim Form electronically at www._____.com by Month XX, 2026. If you submit your claim through the mail using this Claim Form, payment will be mailed to the address provided below.**

Complete this Claim Form if you are a Settlement Class Member and you wish to receive Settlement benefits.

You are a member of the Settlement Class and eligible to submit a Claim Form if:

(a) You are an individual to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

(b) You are an individual to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

The following entities and individuals are excluded from the definitions of "Settlement Class Members" or "Class Members" and are not eligible to receive settlement benefits: Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates and their officers and directors; the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge.

Settlement Class Members may submit a claim form either for: (1) Out of Pocket Losses from verifiable unreimbursed costs or expenditures that Settlement Class Member actually incurred and that are fairly and reasonably traceable to the AMCA Security Incident up to $5,000; or (2) Alternative Cash Payment which provides for a $50 per class members payments, both subject to pro rata increases or decreases dependent on the number of claims filed.

Settlement Class Members may also elect to receive up to two (2) years of medical and healthcare information monitoring services by CyEx Medical Shield Pro.

If you intend to make a claim for Out-of-Pocket Losses, you will need to submit supporting documentation. Out-of-Pocket Losses may include, without limitation, the following:

- unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, medical fraud, or other alleged misuse of Settlement Class Members' personal information;

- professional service costs—such as law firms or credit repair services—related to misuse of Settlement Class Members' personal information;

- miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

- credit monitoring costs that were incurred on or after August 1, 2018, through the date of the Settlement Class Member's claim submission;

**IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC,
CLINICAL PATHOLOGY LABORATORIES, INC., AND
AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT**

Civil Action No. 19-md-2904 (JKS)(MAH)(MDL 2904)

# CLAIM FORM

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:
[DEADLINE]**

</td></tr>
</table>

- up to 10 total hours for verified and documented time spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is fairly traceable to the AMCA Security Incident at $25 per hour.

This Claim Form may be submitted electronically *via* the Settlement Website at _____ or completed and mailed, including any supporting documentation, to: *American Medical Collection Agency, Inc. Customer Data Security Breach Litigation* Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates *Settlement, Attn: Claims*, [ADRESS].

## I.  SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.

|  |  |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

|  |  |  |
|---|---|---|
| **City** | **State** | **Zip Code** |

|  |  |
|---|---|
| **Email Address** | **Telephone Number** |

**Notice ID Number, if known**

## II. BENEFIT SELECTION

**Select one (1) of the following options:**

☐   Check this box if you want to receive the Alternative Cash Payment of up to $50. If you select this option, proceed to the next section.

**OR**

QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX

**IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC,
CLINICAL PATHOLOGY LABORATORIES, INC., AND
AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT**

Civil Action No. 19-md-2904 (JKS)(MAH)(MDL 2904)

# CLAIM FORM

| | |
|---|---|
| **Your claim must be submitted online or postmarked by:** **[DEADLINE]** | |

☐ Check this box if you want to receive reimbursement for Out-of-Pocket Losses of up to $5,000.*

**\*You must submit supporting documentation demonstrating that the unreimbursed costs or expenditures that you actually incurred are fairly and reasonably traceable to the AMCA Security Incident.**

*Complete the chart below describing the supporting documentation you are submitting.*

| *Cost Type (fill in all that apply)* | *Approximate Date of Loss* | *Amount of Loss* | *Description of Documentation Provided* |
|---|---|---|---|
| *Example: Credit Repair Service* | *07/17/25 (MM/DD/YY)* | *$100* | *Example: Receipt for credit repair services* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | **TOTAL AMOUNT CLAIMED:** | |

## III. HEALTHCARE INFORMATION MONITORING SERVICES

☐ Check this box if you wish to receive up to two (2) years of medical and healthcare information monitoring services by CyEx Medical Shield Pro.

## IV. ATTESTATION & SIGNATURE

I swear and affirm under penalty of perjury that the information provided in this Claim Form, and any supporting documentation provided is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator or Claims Referee before my claim is considered complete and valid.

_____          _____          _____
Signature                                      Printed Name                                    Date

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

# EXHIBIT B



United States District Court, District of New Jersey
*In re AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION (All Actions Against Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates):* Case No. 19-md-2904

# Class Action Settlement Notice

### *Authorized by the United States District Court*



Example QR Code.
Replace this with case specific QR Code.

| | | |
|---|---|---|
| **Your information may have been impacted in an alleged data breach at a medical collection agency.** | **There is a $6,438,578.20 settlement of a lawsuit.** **You may be entitled to money.** | **To be part of this settlement, you can respond by [date].** **You can visit [website] to learn more.** |

**Key things to know:**

- This is an important legal document.
- If you take no action and are a Settlement Class member, any ruling from the court will apply to you, and you will not be able to sue Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates about the same issues.
- If you have questions or need assistance, please call [phone number].
- You can learn more at [website] or by scanning the QR code.

*AM. MED. COLLECTION AGENCY, INC. CUSTOMER DATA*
*SECURITY BREACH LITIG. SONIC HEALTHCARE U.S.A., AURORA*
*DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC.,*
*AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT*
c/o Settlement Administrator
[ADDRESS]

## Court-Approved Legal Notice

This is an important notice about a class action lawsuit.

«ScanString»
Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

## CLAIM FORM

Claims must be postmarked no later than _____, 2026 or submitted online no later than _____, 2026.

FIRST NAME: _____ LAST NAME: _____

ADDRESS: _____ CITY: _____ STATE: _____ ZIP CODE: _____

**Monetary Compensation**: If you want to submit a claim for Out-of-Pocket Losses, visit **www.website.com** to submit your Claim Form and supporting documentation online or download a Claim Form to complete and return by mail. If you make a claim for Out-of-Pocket Losses you **cannot** also claim an Alternative Cash Payment.

**Alternative Cash Payment**: Do you want an Alternative Cash Payment estimated at $50 instead of Out-of-Pocket Losses? ☐ YES ☐ NO. This value may be increased or decreased after payments for valid claims, settlement administrative costs, service awards to named plaintiffs, and attorneys' fees and expenses are deducted from the Settlement Fund.

**Medical Monitoring Services**: Would you like to receive two (2) year of Monitoring Services through CyEx Medical Shield Pro? ☐ YES ☐ NO. You can receive Monitoring Services in addition to claiming Out-of-Pocket Losses or an Alternative Cash Payment. To receive Monitoring Services, you must provide your email address here: _____.

To receive a payment from this Settlement via an electronic payment, you must submit the Claim Form electronically at **www.website.com** by **Month XX, 2026**. If you submit your claim through the mail using this Claim Form, payment will be mailed to the address provided above.

I swear under penalty of perjury that I am eligible to make a claim and that the information provided in this Claim Form is true.

Signature: _____ Date (mm/dd/yyyy): ___/____/_____ Print Name: _____

_____

_____

_____

AMERICAN MEDICAL COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC,
CLINICAL PATHOLOGY LABORATORIES, INC., AND
AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT
Attn: Claim Forms
[ADDRESS]

# EXHIBIT C



United States District Court, District of New Jersey
*In re AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION (All Actions Against Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates)*
Case No. 19-md-2904

# Class Action Notice

## *Authorized by the District of New Jersey*

| | | |
|---|---|---|
| **Are you an individual who received diagnostic services from Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates?** | **There is a $6,438,578.20 settlement of a lawsuit related to an alleged data breach.** <br><br> **You may be entitled to money.** | **To be part of this settlement, you should:** <br><br> **Read this Notice.** <br><br> **Respond by [date].** |

Important things to know:

- If you take no action and are a Settlement Class Member, you will still be bound by the settlement, and your rights will be affected. ***Please read this Notice carefully and completely.***

- You can learn more at: [website].

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

# Table of Contents

**About This Notice** ..................................................................................**4**

    Why did I get this Notice?..................................................................4

    What do I do next? ...........................................................................4

    What are the most important dates? ................................................5

**Basic Information** ...................................................................................**6**

    What is this lawsuit about? ...............................................................6

    What is a class action? .....................................................................6

    Why is there a settlement?...............................................................6

    How do I weigh my options?.............................................................6

    What is the best path for me? ..........................................................7

**Who is in the settlement?**......................................................................**9**

    Who is included in the settlement? ...................................................9

    Are there exceptions to being included? ...........................................9

**The Settlement Benefits** ......................................................................**10**

    What does the settlement provide? .................................................10

    What claims am I releasing if I stay in the Settlement Class?...........11

**Submitting a Claim Form for Settlement Benefits** .............................**11**

    How do I submit a claim for a settlement benefit?...........................11

    What is the deadline for submitting a claim?...................................12

    When will the settlement benefits be issued? .................................12

**The Lawyers Representing You**............................................................**12**

    Do I have a lawyer in the case? ......................................................12

    Should I get my own lawyer? ..........................................................13

    How will Settlement Class Counsel be paid?...................................13

**Excluding Yourself from the Settlement** .............................................**14**

    How do I opt out of the settlement? ...............................................14

**Commenting on or Objecting to the Settlement** .................................**15**

    How do I tell the Court if I like or do not like the settlement?..........15

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

What is the difference between objecting and excluding?................................ 16

**The Court's Final Fairness Hearing**.................................................................**16**

When is the Court's Final Fairness Hearing? ............................................... 16

Do I have to come to the Final Fairness Hearing?................................................ 17

**If I Do Nothing** .................................................................................................**17**

What happens if I do nothing at all?.................................................................. 17

**Getting More Information** .................................................................................**17**

How do I get more information?.......................................................................... 17

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

# About This Notice

## Why did I get this Notice?

This Notice had been sent to you because you may be a Settlement Class Member in the United States whose Personally Identifiable Information ("PII") and/or Protected Health Information was allegedly impacted in the cybersecurity incident reported by American Medical Collection Agency ("AMCA") as affecting its computer systems between approximately August 1, 2018 through March 30, 2019 ("Security Incident").

The Court in charge of the case is the U.S. District Court for New Jersey, and the lawsuit is known as *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates)*: Civil Action No. 19-md-2904.

The Court authorized this Notice because you are entitled to know about your rights under a proposed class action settlement with Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively, "Defendants") before the Court decides whether to approve the settlement.  If the Court approves the settlement, and after objections and appeals are resolved, a Settlement Administrator appointed by the Court will make the cash payments and distribute access codes for monitoring services that the Settlement provides.

This Notice package explains the lawsuit, the settlement, your rights, what benefits are available, who is eligible for them, and how to get them.

## What do I do next?

Read this Notice to understand the settlement and to determine if you are a Settlement Class Member. Then, decide if you want to:

4

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits from this settlement is by submitting a valid and timely Claim Form.<br><br>The fastest way to submit your Claim Form is online at www.[Settlement Website].com. | ____, 2026 |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the settlement and receive no benefits. This is the only option that potentially allows you to ever be part of any other lawsuit against Defendants or any other Released Parties about the legal claims related to the issues raised in this Litigation, subject to any defenses Defendants may have to such claims, including the statutes of limitations. You can hire your own legal counsel at your own expense. | ____, 2026 |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the settlement, you may object to it by writing to the Court about why you don't like the settlement. You may also object to Settlement Class Counsel's attorneys' fees and expense request, and ask the Court for permission to speak about your objection at the Final Fairness Hearing. | ____, 2026 |
| **DO NOTHING** | Unless you opt out of the settlement, you are automatically part of the settlement. If you do nothing, you will not receive benefits from this settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against Defendants related to the legal claims resolved by this settlement. | No Deadline |

The Court in charge of this case still has to decide whether to approve the settlement.

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important dates?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**
Your deadline to submit a Claim Form: **[date]**

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

# Basic Information

## What is this lawsuit about?

This class action lawsuit concerns the AMCA Security Incident, which may have impacted your personal information. Defendants deny all claims alleged against them and deny all charges of wrongdoing or liability. The settlement is not an admission of wrongdoing or an indication that Defendants have violated any laws, but rather the resolution of disputed claims.

## What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out of the settlement.

## Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Plaintiffs and Defendants have agreed to a settlement to avoid the costs and risks of a trial, and to allow the Settlement Class Members to receive benefits from the settlement. Plaintiffs and their attorneys think the settlement is best for all Settlement Class Members.

## How do I weigh my options?

You have four options. You can stay in the settlement and submit a claim, you can opt out of the settlement, you can object to the settlement, or you can do nothing. This chart shows the effects of each option:

|  | Submit a Claim | Opt Out | Object | Do Nothing |
|---|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES | NO |

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

| Am I bound by the terms of the settlement if I . . . | YES | NO | YES | YES |
|---|---|---|---|---|
| Can I pursue my own case if I . . . | NO | YES | NO | NO |
| Will the class lawyers represent me if I . . . | YES | NO | NO | YES |

## What is the best path for me?

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**



*You can object to the settlement AND submit a Claim Form to receive payment, but you must submit a Claim Form to receive payment.*

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

# Who is in the settlement?

## Who is included in the settlement?

The Settlement Class is defined as:

(a)    Those individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

(b)    Those individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA.

## Are there exceptions to being included?

Yes. Excluded from the Settlement Class are: (i) Defendants and their officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by contacting the Settlement Administrator by mail, email, or by calling toll-free.

*AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT*
c/o Settlement Administrator
[ADDRESS]
info@[SettlementWebsite].com
1-XXX-XXX-XXXX

You may also view the Settlement Agreement at www.[SettlementWebsite].com.

9

# The Settlement Benefits

## What does the settlement provide?

The settlement provides for the creation of a $6,438,578.20 Settlement Fund to pay for: (i) Out-of-Pocket Losses, (ii) Monitoring Services, (iii) Alternative Cash Payments, (iv) Notice and Administrative Costs, (v) Taxes, (vi) Service Awards, and (vii) Attorneys' Fees and Expenses. The settlement benefits are summarized below. Visit WEBSITE for a full description of these benefits.

Two types of claims may be made: (1) Out-of-Pocket Losses from verifiable, documented unreimbursed costs or expenditures that Settlement Class Member actually incurred and that are fairly and reasonably traceable to the AMCA Security Incident up to $5,000; or (2) Alternative Cash Payment which provides for a $50 per Settlement Class Member payment, both subject to pro rata increases or decreases dependent on the number of claims filed.

A Settlement Class Member may also elect to receive two (2) years of CyEx Medical Shield Pro medical and healthcare information monitoring services.

**Compensation for Out-of-Pocket Losses.** Participating Settlement Class Members can claim up to a total of $5,000 per person for out-of-pocket losses incurred as a result of the Security Incident, including, without limitation, the following:  (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, medical fraud, or other alleged misuse of Settlement Class Members' personal information; (ii) professional service costs—such as law firms or credit repair services—related to misuse of Settlement Class Members' personal information; (iii) miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (iv) credit monitoring costs that were incurred on or after August 1, 2018, through the date of the Claims Deadline; (v) up to 10 total hours for verified and documented time spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's Personal Information that is fairly traceable to the AMCA Security Incident at $25 per hour. Out-of-Pocket Losses are subject to increases or decreases pro rata depending upon the number of claims filed.

10

Settlement Class Members submitting claims for Out-of-Pocket Losses must submit documentation and an attestation supporting their claims. This can include receipts or other documentation that document the costs incurred but does not include documentation that is "self-prepared" by the claimant. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation. The attestation must state that the monetary losses are fairly traceable to the Security Incident and were not incurred due to some other event or reason.

**Alternative Cash Payment.** In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for an Alternative Cash Payment estimated to be $50 per valid claimant. After payment of Notice and Administration Expenses, Service Awards, and Attorneys' Fees and Expenses, Out-of-Pocket Losses, and Taxes from the Settlement Fund, the remaining amount of the Net Settlement Fund will be evenly distributed to each Settlement Class Member who submits a timely and Valid Claim for an Alternative Cash Payment.

**Monitoring Services.** During the Claims Period, Settlement Class Members may also claim and enroll in up to two (2) years of medical and healthcare information Monitoring Services provided by CyEx through its Medical Shield Pro product.

## What claims am I releasing if I stay in the Settlement Class?

Unless you opt out of the settlement, you cannot sue, continue to sue, or be part of any other lawsuit against Defendants arising out of or relating to the AMCA Security Incident. The "Releases" section of the Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement is available for review at www.[SettlementWebsite].com.

# Submitting a Claim Form for Settlement Benefits

## How do I submit a claim for a settlement benefit?

The fastest way to submit your Claim Form is online at

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

www.[SettlementWebsite].com. If you prefer, you can download the Claim Form from the website and mail it to the Settlement Administrator at:

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT
Attn: Claims
[ADDRESS]

You may also contact the Settlement Administrator to request a Claim Form by calling toll-free 1-XXX-XXX-XXXX, by emailing info@ [SettlementWebsite].com, or by writing to the address above.

## What is the deadline for submitting a claim?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, along with any supporting documentation, must be mailed so it is postmarked no later than [Claims Deadline].

## When will the settlement benefits be issued?

The Court will hold a Final Fairness Hearing on _____, 2026. If the Court approves the settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them.

Settlement benefits will be distributed if the Court grants final approval of the settlement and after any appeals are resolved, or after the period to seek an appeal has expired.

# The Lawyers Representing You

## Do I have a lawyer in the case?

Yes, the Court appointed James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C.; Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC; and Justin J. Hawal of DiCello Levitt LLP to represent

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

you and other Settlement Class Members as Settlement Class Counsel.

James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068

Joseph J. DePalma
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad St.
Suite 1201
Newark, NJ 07102

Justin J. Hawal
**DICELLO LEVITT LLP**
8160 Norton Parkway
Third Floor
Mentor, Ohio 44060

## Should I get my own lawyer?

You will not be charged for Settlement Class Counsel's services. If you want to be represented by your own lawyer, you may hire one at your own expense.

## How will Settlement Class Counsel be paid?

Settlement Class Counsel will file a Fee Application for an award of attorneys' fees and expenses to be paid from the Settlement Fund of up to one-third of the Settlement Fund. As part of the Fee Application, Settlement Class Counsel will also seek Service Awards of $5,000 for each Class Representative to be paid from the Settlement Fund.

Class Counsel's Fee Application will be available at www.[SettlementWebsite].com after it is filed with the Court.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

# Excluding Yourself from the Settlement

## How do I opt out of the settlement?

If you do not want to receive any benefits from the settlement, and you want to keep your right, if any, to separately sue Defendants about the legal issues in this case (subject to any defenses Defendants may have to such a suit, including the statutes of limitations), there are steps that you must take to exclude yourself from the Settlement Class. This is called requesting an exclusion from, or "opting out" of the Settlement Class. The deadline to submit a request for exclusion from the settlement is [Opt-Out Deadline].

To exclude yourself from the settlement, you must submit a written request for exclusion that includes the following information:

(i)   the name of the proceedings: *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates), Civil Action No. 19-md-2904*, pending in the United States District Court, District of New Jersey;

(ii)   Your full name;

(iii)   Your current mailing address and telephone number;

(iv)   Your personal signature; and

(v)   the words "Request for Exclusion" or a comparable statement that You do not wish to participate in the settlement, or some other clear manifestation of the intent to opt out of the settlement.

Your request for exclusion must be mailed to the Settlement Administrator at the address below, **postmarked no later than [Opt-Out Deadline]**.

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT
ATTN: Exclusion Request
[ADDRESS]

If you exclude yourself, you are telling the Court that you do not want

14

to be part of the settlement. You will not be eligible to receive any settlement benefits if you exclude yourself.

You may only exclude yourself—not any other person. **Any Settlement Class Member who does not file a timely request for exclusion in accordance with this section will lose the opportunity to exclude himself or herself from the settlement and will be bound by the settlement.**

# Commenting on or Objecting to the Settlement

## How do I tell the Court if I like or do not like the settlement?

If you are a Settlement Class Member and you do not like the settlement, you can object to it, if you choose. You can give reasons why you think the Court should not approve it. The Court will consider your views.

For an objection to be a valid objection under the settlement, it must include or substantially comply with the following: (i) Your full name, address, telephone number, and email address; (ii) the case name and docket number: *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation (All Actions Against Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc., and Austin Pathology Associates)*, No. 19-md-2904 (JKS) (MAH) (D.N.J.); (iii) information identifying You as a Settlement Class Member, including proof that You are a member of the Settlement Class, such as the class member identification number on the Short Form or email notice you receive about the settlement; (iv) a written statement of all grounds for the objection, including whether the objection applies only to You, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection You believe applicable; (v) the identity of any and all counsel representing You in connection with the objection; (vi) the identity of all class action cases in which You or Your counsel has objected; (vii) a statement whether You and/or Your counsel will appear at the Final Fairness Hearing; and (viii) Your personal signature on the written objection. The Court, in its discretion, may authorize additional discovery of objectors.

You or Your counsel may also file their objection with the Court

15

through the Court's ECF system, with service on Plaintiffs' Counsel and Defendant's Counsel, to be made through the ECF system.

To be timely, an objection must be mailed to Settlement Administrator, so it is postmarked no later than [**OBJECTION DATE**].

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT
ATTN: Objection
[Address]

## What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement. You can object to the settlement only if you do not exclude yourself from the settlement. Excluding yourself from the settlement is opting out and stating to the Court that you do not want to be part of the settlement. If you opt out of the settlement, you cannot object to it because the settlement no longer affects you.

# The Court's Final Fairness Hearing

## When is the Court's Final Fairness Hearing?

The Court will hold a Final Fairness Hearing on [**DATE**] at [**TIME**], before U.S. District Judge Jamel K. Semper of the U.S. District Court for the District of New Jersey, at the Frank R. Lautenberg U.S.P.O. & Courthouse, 2 Federal Square, Newark, NJ 07102, in Courtroom PO 03.

At the Final Fairness Hearing, the Court will consider whether to approve the settlement, Settlement Class Counsel's Fee Application, and application for Service Awards. The Court will also consider any objections to the settlement that were submitted in accordance with the requirements outlined above.

If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost (***see* above**).

16

The date and time of this hearing may change without further notice. Please check www.[SettlementWebsite].com for updates.

## Do I have to come to the Final Fairness Hearing?

No. Settlement Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Fairness Hearing to talk about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary.

# If I Do Nothing

## What happens if I do nothing at all?

If you are a Settlement Class Member and do nothing, you will remain a part of the Settlement Class but will not get any payments or monitoring services from the settlement.  And, unless you exclude yourself, you will not be able to sue Defendants about claims arising out of or related to the AMCA Security Incident being resolved through this settlement ever again, assuming such claims are not time-barred.

# Getting More Information

## How do I get more information?

This Notice summarizes the proposed settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, www.[SettlementWebsite].com.

If you have additional questions, you may contact the Settlement Administrator by mail, email, or by calling toll-free.

AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

c/o Settlement Administrator
[ADDRESS]
info@[SettlementWebsite].com
1-XXX-XXX-XXXX

Publicly filed documents can also be obtained by visiting the office of the Clerk of the Court, [Address].

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING QUESTIONS ABOUT THIS SETTLEMENT.**

18

# EXHIBIT D

**SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS, LLC, CLINICAL
PATHOLOGY LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES
PROPOSED CONSUMER SETTLEMENT BENEFITS PLAN**

1. Capitalized Terms: Unless defined herein, the capitalized terms used in this Proposed Settlement Benefits Plan ("Benefits Plan") are defined in the Settlement Agreement.

2. Net Settlement Fund: The Settlement Administrator shall use the Net Settlement Fund to pay valid Claims for Out-of-Pocket Losses and Alternative Cash Payments as set forth below, subject to the limitations and pro rata adjustments described in this Benefits Plan and the Settlement Agreement. The Settlement Administrator shall administer and oversee distribution of the Net Settlement Fund pursuant to the Settlement Agreement and the process set forth in this Benefits Plan.

3. Out-of-Pocket Losses: "Out-of-Pocket Losses" are verifiable, documented unreimbursed costs or expenditures that a Settlement Class Member actually incurred and that are fairly and reasonably traceable to the AMCA Security Incident. Settlement Class Members may file a claim for up to $5,000 in Out-of-Pocket Losses, subject to increases or decreases pro rata depending upon the number of claims filed. Out-of-Pocket Losses may include, without limitation, the following:

    a. unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, medical fraud, or other alleged misuse of Settlement Class Members' personal information;
    b. professional service costs—such as law firms or credit repair services—related to misuse of Settlement Class Members' personal information;
    c. miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;
    d. credit monitoring costs that were incurred on or after August 1, 2018, through the date of the Settlement Class Member's claim submission;
    e. up to 10 total hours for verified and documented time spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is fairly traceable to the AMCA Security Incident at $25 per hour.

4. Alternative Cash Payment: In lieu of seeking Out-of-Pocket Losses, Settlement Class Members may submit a claim for Alternative Cash Payment, which shall be up to $50 per Settlement Class Member, subject to pro rata increases or decreases, depending on the number of claims filed.

5. Monitoring Services: In addition to Out-of-Pocket Losses or Alternative Cash Payment, Settlement Class Members will be eligible to claim and enroll in up to two (2) years of the CyEx Medical Shield Pro service ("Monitoring Services"), which shall include and shall be delivered consistent with the standards set forth in Exhibit E to the Settlement Agreement. These services will be provided by CyEx, which will be appointed by the Court as the provider of Monitoring Services and be subject to the Court's jurisdiction for enforcement of the terms of this settlement.

1

6. Claims Period: The "Claims Period" is the period starting from the date the Court enters the Preliminary Approval Order and ending 90 days after the Notice Date. Settlement Class Members must submit claims for Out-of-Pocket Losses or Alternative Cash Payments during the Claims Period. Settlement Class Members may also submit claims for Monitoring Services during the Claims Period.

   a. Any eligible Settlement Class Member that does not timely and validly submit a Claim Form or whose claim is not otherwise approved by the Court: (a) shall be deemed to have waived their right to share in the Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Settlement Agreement and the Settlement and all proceedings, determinations, orders, and judgments in the Action relating thereto, including, without limitation, the judgments, and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining, or prosecuting any of the Released Claims against Defendants Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively "Defendants"), as more fully described in the Settlement Agreement and Notice.

7. Insufficient or Excess Funds:

   a. To the extent total valid claims are greater than the Net Settlement Fund, all valid claims (including Alternative Cash Payments) shall be reduced on a proportional, *pro rata* basis, as determined by the Settlement Administrator.

   b. To the extent total valid claims are less than the Net Settlement Fund, all valid claims shall be increased on a proportional, *pro rata* basis (including Alternative Cash Payments) until the Net Settlement Fund is exhausted, as determined by the Settlement Administrator.

   c. Any remaining funds resulting from the failure of Settlement Class Members to timely negotiate a settlement payment or to timely provide required tax information such that a settlement payment could issue, shall be distributed to Settlement Class Members, or as otherwise ordered by the Court. No funds may revert to Defendants, except as provided in the Settlement Agreement in the event the settlement does not become effective or is terminated.

8. Claims Process: Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically or via mail during the Claims Period (e.g., download a Claim Form for mailing from the Settlement Website). The Settlement Administrator shall verify that each individual who submits a Claim Form is a Settlement Class Member and shall be responsible for evaluating claims and deciding whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Security Incident.

   a. Claims for Out-of-Pocket Losses:

2

i. Settlement Class Members with Out-of-Pocket Losses must submit Reasonable Documentation supporting their claims. "Reasonable Documentation" means documentation supporting a claim, including but not limited to: credit card statements, bank statements, invoices, telephone records, and receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the claimant do not constitute Reasonable Documentation but may be included to provide clarification, context, or support for other submitted Reasonable Documentation.

ii. In assessing what qualifies as "fairly traceable," the Settlement Administrator must consider (1) the timing of the loss, including whether the loss occurred on or after August 1, 2018 through the date of the Settlement Class Member's claim submission; (2) whether the loss involved the possible misuse of the type of personal information accessed in the Security Incident; (3) whether the personal information accessed in the Security Incident that is related to the Settlement Class Member is of the type that was possibly misused; (4) the Class Member's explanation as to how the loss is fairly traceable to the Security Incident; (5) the nature of the loss, including whether the loss was reasonably incurred as a result of the Security Incident; and (6) any other factor that the Settlement Administrator considers to be relevant. The Settlement Administrator shall have the sole discretion and authority to determine whether claimed Out-of-Pocket Losses are valid and fairly traceable to the Security Incident.

iii. If the person executing the Claim Form is acting in a representative capacity, a certification of his, her or its current authority to act on behalf of the Class Member must be included in the Claim Form to the satisfaction of the Settlement Administrator, subject to consultation by Plaintiffs' Counsel and Defendants' Counsel.

iv. The Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

b. <u>Claims for Medical Shield Pro</u>: Notwithstanding any other claim for benefits, all Settlement Class Members will be able to submit a Claim Form requesting enrollment in Medical Shield Pro. Settlement Class Members who submit a valid Claim for Medical Shield Pro will be provided with an enrollment code by email after the Effective Date of the settlement, subject to availability of valid contact information, which will be active for a specified amount of time.

9. <u>Payment Method</u>: Settlement Class Members will be able to select a method of payment, including at least one option for electronic payment (e.g., Venmo, Paypal, or Zelle).

10. <u>Disputes and Appeals</u>:

3

a.  To the extent the Settlement Administrator determines a claim is deficient in whole or part, within 21 days after the Settlement Administrator processes all claims, the Settlement Administrator shall notify the Settlement Class Member in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) of the deficiencies and provide the Settlement Class Member 30 days to cure the deficiencies. The notice shall inform the Settlement Class Member that he or she can either attempt to cure the deficiencies outlined in the notice, or dispute the determination in writing and request an appeal.

b.  If the Settlement Class Member attempts to cure the deficiencies but, in the sole discretion and authority of the Settlement Administrator fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within 14 days of the determination. The Settlement Administrator shall have the sole discretion and authority to determine whether a claim is deficient in whole or part but may consult with the Parties in making individual determinations.

c.  If a Settlement Class Member disputes a determination in writing (including by e-mail where the Settlement Class Member selects e-mail as his or her preferred method of communication) and requests an appeal, the Settlement Administrator shall provide Plaintiffs' Counsel and Defendants' Counsel a copy of the Settlement Class Member's dispute and Claim Form along with all documentation or other information submitted by the Settlement Class Member. Plaintiffs' Counsel and Defendants' Counsel will confer regarding the claim submission, and their agreement on approval or denial of the Settlement Class Member's claim, in whole or part, will be final. If Plaintiffs' Counsel and Defendants' Counsel cannot agree on approval or denial of the Settlement Class Member's claim, in whole or part, the dispute will be submitted to a mutually agreeable neutral who will serve as the claims referee, which will be paid for out of the Settlement Fund. If the Parties are unable to reach agreement on who will serve as the claims referee, they will submit their proposals to the Court. The Court will have final, non-appealable decision-making authority over designating the claims referee. The claims referee's decision will be final and not subject to appeal or further review.

11. <u>Miscellaneous</u>:

a.  No Person shall have any claim against the Settlement Administrator, the Parties' or the Parties' counsel based on distributions of benefits to Settlement Class Members.

b.  Information submitted by Settlement Class Members pursuant to the terms of this Settlement Agreement shall be deemed confidential and protected as such by Plaintiffs' Counsel, Defendants, Defense Counsel and the Settlement Administrator, and is only subject to disclosure as required by law or court order.

4

12. <u>Modification of Settlement Benefits Plan:</u> Should the Parties agree, after Final Approval of the Settlement Agreement, that the provisions of this Settlement Benefits Plan should be modified in the interests of justice, they shall seek the Court's approval for such modification.

# EXHIBIT E



**Product Overview**

# Medical Shield Pro



CyEx Medical Shield Pro monitors medical and healthcare data to determine whether consumers' private medical information is at risk or has been subject to medical fraud. Alerts are sent in real-time when suspicious activity is detected so that action can be taken before it's too late. In the event of fraud, a dedicated case manager will assist in trying to recover the information, and a $1,000,000 insurance policy covers eligible losses due to medical identity theft, including the theft of a healthcare insurance plan ID, and health savings accounts, as well as other types of identity theft with no deductible.

Key features of the protections offered by Medical Shield Pro include the following solutions designed to protect against medical fraud:

- **Healthcare Insurance Plan ID Monitoring:** Tracks and alerts when a registered healthcare, dental, vision, and prescription plan ID is identified as exposed on the dark web.

- **Medicare Beneficiary Identifier ID Monitoring:** Warns if an MBI has been disclosed on the dark web, which could potentially expose Medicare coverage.

- **Medical Record Number Monitoring:** Alerts when a Medical Record Number has been detected on the dark web, which could potentially expose permanent medical and health records from providers, hospitals, and urgent care centers.

- **International Classification of Disease Monitoring:** Notifies when an ICD Code has been detected on the dark web, potentially exposing a private medical diagnosis.

- **National Provider Identifier Monitoring:** An exclusive monitoring service for healthcare providers. Tracks NPI and informs if registered licensing credentials are found on the dark web.

- **Health Savings Account Monitoring:** Monitors registered health savings accounts for unusual or unauthorized transactions that could indicate fraud.

- **Dark Web Monitoring:** Tracks and alerts when personal information is listed for sale on the dark web – such as black market websites, secret chat rooms, and underground forums.

- **$1,000,000 Identity Theft Insurance:** No-deductible insurance for covering expenses due to an identity theft incident.

- **Real-Time Authentication Alerts:** Provides notification when a creditor receives a request for certain types of account transactions using the customer's Social Security Number.

- **High-Risk Transaction Monitoring:** Monitors personal information associated with high-risk transactions, such as online password resets, payday loan applications, tax refunds, wire transfers, and account access requests.

- **Security Freeze Assist:** Helps freeze credit files instantly from up to ten consumer reporting agencies, including the three major credit bureaus.

- **Victim Assistance:** Our team of Identity Theft Recovery Specialists offers immediate remediation assistance if identity theft is suspected.

- **Insight & Tips:** Provides up-to-date information and news curated by industry experts to inform individuals about the latest threats and scams.

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: AMERICAN MEDICAL COLLECTION )    No. 19-md-2904 (JKS) (MAH)
AGENCY, INC. CUSTOMER DATA SECURITY )
BREACH LITIGATION               )    MDL 2904
                                )
This Document Relates To:        )    [PROPOSED] ORDER GRANTING
                                )    PLAINTIFFS' UNOPPOSED MOTION
The Other Labs Track             FOR PRELIMINARY APPROVAL OF
                                      CLASS ACTION SETTLEMENT

WHEREAS, this matter having come before the Court by way of Plaintiffs' Unopposed

Motion for Preliminary Approval of Class Action Settlement and Preliminary Certification of the

Settlement Class (as defined below) ("Motion");

WHEREAS, on April 30, 2026, Plaintiffs, individually and on behalf of the putative

Settlement Class, and Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology

Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively,

"Sonic" or "Defendants") entered into a Class Action Settlement Agreement and Release

("Settlement Agreement"), which, if finally approved by the Court, will result in the settlement of

all claims asserted against the Defendants in the above-captioned action ("Action");

WHEREAS, in full and final settlement of the claims asserted against Defendants, and in

exchange for the release of all Released Claims defined in the Settlement Agreement, Defendants

agree to collectively fund or cause to be funded $6,438,578.20 for a common fund to resolve all

claims for individuals for whom Sonic transmitted personal information to Retrieval-Masters

Creditor's Bureau Inc., d/b/a American Medical Collection Agency's ("AMCA") and whose

information was contained in the computer systems implicated by the cybersecurity incident at

AMCA that occurred between August 1, 2018 and March 30, 2019 (the "Security Incident");

1

WHEREAS, Plaintiffs have moved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an order preliminarily approving the Settlement Agreement, which sets forth the terms and conditions of the Settlement with Defendants;

WHEREAS, Plaintiffs have further moved for this Court's: (a) certification of the Settlement Class for settlement purposes only pursuant to Paragraph 6.1 of the Settlement Agreement; (b) preliminary approval of the Settlement Agreement, including the Releases as set forth herein; (c) appointment of Plaintiffs' Counsel as counsel for the Settlement Class; (d) appointment of Plaintiffs as Settlement Class Representatives; (e) approval of the Short Form Notice to be emailed, or mailed where no email address is available, to Settlement Class Members in a form substantially similar to the one attached as Exhibit B to the Settlement Agreement; (f) approval of the Long Form Notice to be posted on the Settlement Website in a form substantially similar to the one attached as Exhibit C to the Settlement Agreement, which, together with the Short Form Notice, shall include a fair summary of the Parties' respective positions, statements that the Settlement Class Members are entitled to benefits under the Settlement, the general terms of the Settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the Settlement, instructions for making Claims to the extent contemplated herein, and the date, time, and place of the Final Fairness Hearing; (g) approval of the Claim Form to be used by Settlement Class Members to make a Claim in a form substantially similar to the one attached as Exhibit A to the Settlement Agreement; (h) preliminary approval of the notice plan and the Settlement Benefits Plan substantially similar to the one attached as Exhibit D to the Settlement Agreement; (i) appointment of Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator; and (j) appointment of Citibank as Escrow Agent.

WHEREAS, Plaintiffs and Defendants have agreed to the entry of this Preliminary Approval Order (the "Order");

WHEREAS, all terms with initial capitalization used in this Order shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein; and

WHEREAS, the Court has considered the Settlement Agreement and the other documents submitted by the Parties in connection with Plaintiffs' Motion, and good cause appearing therefor:

IT IS THIS _____ day of _____, 2026

ORDERED as follows:

## I.    **Preliminary Approval of the Settlement**

1.    Upon review of the record, the Court finds that the Settlement Agreement resulted from arm's-length negotiations between highly experienced counsel under the auspices of a neutral mediator and that the Court is likely to grant final approval of the Settlement. Therefore, the Settlement Agreement is hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing described below. The Court preliminarily finds that the Settlement set forth in the Settlement Agreement raises no obvious reasons to doubt its fairness and raises a reasonable basis for presuming that it satisfies the requirements under Rule 23 of the Federal Rules of Civil Procedure and due process so that notice of the Settlement should be given as provided in this Order.

2.    At or after the Fairness Hearing, the Court shall determine, among other matters, whether the Settlement warrants final approval.

## II.    **Provisional Certification of the Settlement Class for Settlement Purposes Only**

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purpose of effectuating the Settlement, this Court provisionally certifies a Settlement Class defined as "[t]hose individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their

3

information was involved or may have been involved in the Security Incident affecting AMCA," and "[t]hose individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA." The following entities and individuals are excluded from the definition of "Settlement Class Members":

a.    Defendants and their respective officers and directors;

b.    the Judge and/or Magistrate assigned to evaluate the fairness of this settlement;

c.    any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads nolo contender to any such charge; and

d.    All Persons who would otherwise be Settlement Class Members but who timely and validly request exclusion from the Settlement Class.

The provisional certification of the Settlement Class for settlement purposes shall be vacated and have no force or effect if the Settlement is terminated or not approved by the Court.

4.    Solely for purposes of effectuating the proposed Settlement, the Court preliminarily finds that the prerequisites for class action certification under Rule 23 of the Federal Rules of Civil Procedure are satisfied as: (a) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiffs are typical of the claims of the Settlement Class; (d) the interests of all Settlement Class Members are adequately represented by Plaintiffs and Plaintiffs' Counsel; (e) the issues common to Settlement Class Members predominate over any individualized issues; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These preliminary findings shall be vacated and have no force or effect if the Settlement is terminated or not approved by the Court.

4

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purposes of effectuating the Settlement, Plaintiffs Gwendolyn Anderson and Tonda Tate are appointed as Settlement Class Representatives for the Settlement Class and Plaintiffs' Counsel are appointed as counsel for the Settlement Class. These designations shall be vacated if the Settlement is terminated or not approved by the Court.

III.    **Notice to the Settlement Class**

6.      The Court approves the appointment of Kroll as Settlement Administrator for the Settlement.

7.      The Court finds the proposed form of notice to Settlement Class Members of the proposed Settlement ("Notice"), the proposed summary form of notice ("Short Form Notice"), and the proposed methods of dissemination thereof, as set forth herein, satisfy the requirements under Rule 23 of the Federal Rules of Civil Procedure and due process, and therefore are approved.

8.      Within five (5) days after entry of this Order, the Settlement Administrator will be provided the Settlement Class Data that includes the Settlement Class Members' full names and current or last known mailing addresses, to the extent reasonably available.

9.      The Settlement Administrator shall cause the Short Form Notice, substantially in the form attached as Exhibit B to the Settlement Agreement, to be disseminated no later than forty-five (45) calendar days following the date of the entry of this Order (the "Notice Date") via email, if known, or first class mail, postage prepaid to each potential Settlement Class Member who is readily and reasonably identified.

10.     On or before the Notice Date, the Settlement Administrator shall create a website for the Settlement (the Settlement Website) and establish a settlement-specific toll-free telephone number.

5

11.     The Settlement Administrator shall cause the Long Form Notice, substantially in the form attached to the Settlement Agreement as Exhibit C, and the Claim Form, substantially in the form attached to the Settlement Agreement as Exhibit A, to be posted on the Settlement Website as soon as practicable.

12.     On or before the Notice Date, the Settlement Administrator shall establish a post office box where Settlement Class Members can send completed Claim Forms, requests for exclusion, and other correspondence relating to the Settlement.

**IV.     Schedule and Procedure for Requesting Exclusion and Submitting Objections**

13.     The deadline for Settlement Class Members to request exclusion from the Settlement Class shall be sixty (60) days after the Notice Date (the Opt-Out Date).

14.     As set forth in the Notice, in order to request exclusion, a Settlement Class Member must mail a written request to the following address:

AMERICAN MEDICAL COLLECTION AGENCY, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
SONIC HEALTHCARE U.S.A., AURORA DIAGNOSTICS LLC, CLINICAL PATHOLOGY
LABORATORIES, INC., AND AUSTIN PATHOLOGY ASSOCIATES SETTLEMENT
ATTN: Exclusion Request
[ADDRESS]

15.     The written request for exclusion must include the following information: the name of the proceeding ("*In Re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (JKS)(MAH) (D.N.J.)"), the individual's full name, current address, telephone number, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement.

16.     The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above or the request for exclusion is otherwise accepted by the Court. Persons or entities that request exclusion from the Settlement Class shall

6

not be entitled to share in the benefits of the Settlement, nor be bound by the Settlement Agreement and Final Approval Order and Judgment entered thereon.

17.    No Person shall exercise any exclusion rights of any other person, or (a) Opt-Out individuals as a group, in the aggregate, or as a class involving more than one Person; or (b) to opt-out more than one Person on a single notice, or as an agent or representative. Any such purported Opt-Out requests shall be void, and the Person(s) who is or are the subject of such purported Opt-Out requests shall be treated as a Settlement Class Member(s) and be bound by the Settlement Agreement, including the Releases contained herein, and Judgment entered thereon, unless he or she submits a valid and timely Opt-Out request.

18.    The Settlement Administrator shall keep track of any and all requests for exclusion.

19.    On or before seven (7) days after the Opt-Out Date, the Settlement Administrator shall provide to counsel for the Parties a complete list of all timely and valid Opt-Outs.

20.    Prior to the Fairness Hearing, the Settlement Administrator shall provide a sworn declaration that: (i) attests to implementation of the Notice plan; and (ii) identifies each Person who timely and properly provided written notification of exclusion from the Settlement Class.

21.    Settlement Class Members who wish to object or otherwise be heard with respect to the Settlement, and to appear in person at the Fairness Hearing, must first mail a written objection to the Settlement Administrator at the Post Office box designated in the Long Form Notice no later than sixty (60) days after the Notice Date. The objector or his or her counsel may also file their objection with the Court through the Court's ECF system, with service on Plaintiffs' Counsel and Defendants' Counsel, to be made through the ECF system. For all objections mailed to Settlement Administrator, Plaintiffs' Counsel will file them with the Court as an exhibit to Plaintiffs' motion for final approval.

7

22.     The objection must include: (i) the objector's full name, address, telephone number, and email address; (ii) the case name and docket number: *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (JKS) (MAH) (D.N.J.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) the identity of all class action cases in which the objector or his or her counsel has objected; (vii) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (viii) the objector's personal signature.

23.     Any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Paragraph 5.1 of the Settlement Agreement.

**V.     Schedule and Manner for Submitting Claim Forms**

24.     Settlement Class Members who wish to participate in the Settlement and be eligible to receive benefits from the Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be postmarked (if mailed) and received (if submitted online) no later than ninety (90) days after the Notice Date. By submitting a Claim Form, a Person shall be deemed to have

8

submitted to the jurisdiction of the Court with respect to his, her or its claim and the subject matter of the Settlement.

25.    Each Claim Form submitted must contain the information requested on the Claim Form to satisfy the conditions for claiming Out-of-Pocket Losses or an Alternative Cash Payment, and whether the Settlement Class Member wishes to enroll in Monitoring Services. All Claim Forms: (a) must be properly completed, signed and submitted in a timely manner with Reasonable Documentation, as set forth in the Settlement Benefits Plan attached to the Settlement Agreement as Exhibit D; and (b) if the Person executing the Claim Form is acting in a representative capacity, a certification of his, her or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of the Settlement Administrator, subject to input by the Settling Parties; and (c) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

26.    Any eligible Settlement Class Member that does not timely and validly submit a Claim Form or whose claim is not otherwise approved by the Court: (a) shall be deemed to have waived their right to share in the Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Settlement Agreement and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the judgment and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Claims against Released Parties, as more fully described in the Settlement Agreement and Notice.

## VI.    The Court's Final Approval Schedule and Fairness Hearing Date

27.    As set forth in the timeline below, all briefs and materials in support of final approval of the Settlement, Plaintiffs' Counsel's fee and expense application, and any application for Service Awards to Plaintiffs, shall be filed with the Court no later than fifteen (15) days before the Objection and Opt-Out Date and no later than thirty-five (35) days before the Fairness Hearing. The applications described in this paragraph shall promptly be posted on the Settlement Website, and shall be considered as separate and apart from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.

28.    All reply submissions, including any responses to any objections by Settlement Class Members, shall be filed with the Court no later than seven (7) calendar days prior to the date of the Fairness Hearing.  The timeline is as follows:

| Event | Date |
| --- | --- |
| Settlement Class Data shall be provided to the Settlement Administrator. | _____ [10 days after issuance of Preliminary Approval Order] |
| Notice shall be mailed in accordance with the Notice Plan and this Order. | _____ [45 days after issuance of Preliminary Approval Order] |
| Settlement Class Counsel's Application for Attorneys' Fees and Expenses and request for Service Awards for the Plaintiffs-Settlement Class Representatives. | _____ [90 days after issuance of Preliminary Approval Order (___ days before the Objection and Opt-Out Dates) |
| Deadline for Objections to the Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, and/or the request for Settlement Class Representative Service Awards. | _____ [105 days after issuance of Preliminary Order (___ days after the Notice Date)] |
| Deadline for Requests for Exclusion from the Settlement. | _____ [105 days after issuance of Preliminary Order (___days after the Notice Date)] |
| Plaintiffs to file Motion for Final Approval of the Settlement. | _____ [110 days after issuance of Preliminary Approval Order (__ days after the Notice Date)] |
| Claim Administrator shall submit a declaration to the Court (i) reporting the names of all persons and entities that | _____ [110 days after issuance of Preliminary Approval Order (___ days after the Notice Date)] |

10

| Event | Date |
|---|---|
| submitted timely and proper Requests for Exclusion; and (ii) attesting that Notice was disseminated in accordance with the Settlement Agreement and this Preliminary Approval Order. | |
| Responses of Any Party to any Objections and/or Requests for Exclusion. | _____ [125 days after issuance of Preliminary Approval Order (___days after the Notice Date)] |
| Any submissions by Defendants concerning Final Approval of Settlement. | _____ [125 days after issuance of Preliminary Approval Order ( ___days after the Notice Date)] |
| Final Fairness Hearing will be held at Martin Luther King Building & U.S. Courthouse, 50 Walnut St., Newark, NJ 07102 or by video conference as determined by the Court. | _____ [140 days after issuance of Preliminary Approval Order] |

29.    A hearing on final approval of the Settlement ("Fairness Hearing") shall be held before this Court on _____, 2026 at _____ _.m. in the Courtroom PO3 before the Honorable Jamel K. Semper, U.S.D.J., at the United States District Court for the District of New Jersey, Frank R Lautenberg U.S. Post Office & Courthouse, 2 Federal Square, Newark, NJ 07102. At the Fairness Hearing, the Court will, among other things, consider:

    a.    final certification of the Settlement Class solely for purposes of effectuating the Settlement;

    b.    the fairness, reasonableness, and adequacy of the Settlement and whether the Settlement Agreement should be finally approved and consummated according to its terms;

    c.    whether the Court should approve the proposed Settlement Benefits Plan for distribution of the Net Settlement Fund (*i.e.*, net of Notice and Settlement Administration Costs, Attorneys' Fees and Expenses, Service

11

Awards, Taxes, Tax Expenses, and Tax-Related Expenses, and costs for

procurement of Medical Shield Pro.) to eligible Settlement Class Members;

d.      whether notice of the Settlement constitutes due, adequate, and sufficient

notice of the Settlement meeting the requirements of due process and the

Federal Rules of Civil Procedure;

e.      whether the Action shall be dismissed with prejudice as to Defendants;

f.      whether the release of any and all Released Claims with respect to the

Released Parties shall be deemed effective as of Final Judgment;

g.      whether Persons are permanently enjoined and barred from instituting,

commencing, or prosecuting any action or other proceeding asserting any

Released Claims against Released Parties;

h.      whether the Court retains continuing and exclusive jurisdiction over the

Settlement for all purposes, including its administration and execution and

disputes that may arise; and

i.      whether, under Federal Rule 54(b), there is any just reason for delay and

whether an order of dismissal and Judgment shall be final and appealable

and entered forthwith.

30.     The Fairness Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice. Plaintiffs' Counsel shall be responsible for communicating any such notice promptly to the Settlement Class by posting conspicuous notice on the Settlement Website.

12

31.    In the event that the Settlement does not become final, then, subject to approval of the Court, litigation of the Action against Defendants will resume in a reasonable manner to be approved by the Court upon joint application by the Parties.

32.    If the settlement set forth in the Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of the Settlement Agreement or otherwise, the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.

33.    Neither this Order nor the Settlement Agreement, nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Settlement Agreement and the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

34.    All proceedings in the Action as they relate to the Other Labs track, other than those related to approval of the Settlement Agreement, are hereby stayed.  For the avoidance of doubt, the Action related to claims brought against Defendants Quest Diagnostics Incorporated and

13

Optum360, LLC are not stayed by this Order. Any actions brought by Settlement Class Members concerning the Released Claims are hereby enjoined and stayed pending final approval of the Settlement Agreement.

**IT IS SO ORDERED.**


Dated: _____                    _____
                                                  HON. JAMEL K. SEMPER, U.S.D.J.

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 19-md-2904 (JKS)(MAH) |
| | MDL No. 2904 |
| This Document Relates To: | |
| Sonic Track | |

**DECLARATION OF CARLA A. PEAK OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT**

I, Carla A. Peak, declare as follows:

1.     I am a Managing Director of Kroll Notice Media Solutions ("Kroll Media"),[1] a business unit of Kroll Settlement Administration LLC ("Kroll"), the proposed Settlement Administrator to be appointed in the above-captioned case, whose principal office is located at One World Trade Center, 285 Fulton Street, 31st Floor, New York, New York 10007. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working with me and/or under my general supervision. This declaration is being filed in connection with preliminary approval of the Settlement.

2.     I am a nationally recognized expert in the field of legal notice and I have served as an expert in countless federal and state cases involving class action notice plans.

3.     Kroll has extensive experience in all types of class action matters, having managed more than 4,000 settlements, designed over 1,000 multi-media campaigns, processed more than 100 million claims, and distributed over $30 billion in payments over the past 50 years.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Class Action Settlement Agreement and Release (the "Settlement Agreement") entered into in this Action.

177647941.1

4.      Kroll has administered class action notice plans for numerous consumer protection cases, including data breach and data privacy cases. Examples include: *Bianucci v. Rite Aid Corp*., No. 2:24-cv-03356 (E.D. Pa.); *Douglas v. PurFoods LLC*, No. 4:23-cv-00332 (S.D. Iowa); *Hameed-Bolden v. Forever 21 Retail, Inc*., No. 2:18-cv-3019 (C.D. Cal.); *Hightower v. Receivables Performance Management LLC*, No. 2:22-cv-01683 (W.D. Wash.); *In re Apria Data Breach Litig*., No. 1:23-cv-01003 (S.D. Ind.); *In re Arthur J. Gallagher Data Breach Litig*., No. 1:22-cv-00137 (N.D. Ill.); *In re CorrectCare Data Breach Litig*., No. 5:22-cv-00319 (E.D. Ky.); *In re Evolve Bank & Trust Customer Data Security Breach Litig*., No. 2:24-md-03127 (W.D. Tenn.); *In re Fred Hutchinson Cancer Center Data Breach Litig*., No. 2:23-cv-01893 (Wash. Super. Ct., King Cty.); *In re Great Expressions Data Security Incident Litig*., No. 2:23-cv-11185 (E.D. Mich.); *In re HCA Healthcare, Inc. Data Security Litig*., No. 3:23-cv-00684 (M.D. Tenn.); *In re Lansing Community College Data Breach Litig*., No. 1:23-cv-00738 (W.D. Mich.); *In re MCG Health Data Security Issue Litig*., No. 2:22-cv-00849 (W.D. Wash.); *In re Tenet Healthcare Corporation Data Breach Litig*., No. DC-22-07513 (Tex. Dist. Ct., Dallas Cty.); *In re: T-Mobile Customer Data Security Breach Litig*., No. 21-md-03019 (W.D. Mo.); *In re: Yahoo! Inc. Customer Data Security Breach Litig*., No. 5:16-md-02752 (N.D. Cal.); *Orr v. Intercontinental Hotels Group, PLC*, No. 1:17-cv-1622 (N.D. Ga.); *Rodriguez v. University Property & Casualty Insurance, Co*., No. 16-cv-60442 (S.D. Fla.); *Summers v. Sea Mar Community Health Centers*, No. 22-2-00773-7 (Wash. Super. Ct., King Cty.); *Weigand v. Group 1001 Insurance Holdings, LLC*, No. 1:23-cv-01452 (S.D. Ind.); and *Wright v. Crossroads Trading Co., Inc*., No. 25CV479119 (Cal. Super. Ct., Santa Clara Cty.).

5.      I have personally been involved in a variety of data breach cases, such as *Hasson v. Comcast Cable Communications LLC*, No. 2:23-cv-05039 (E.D. Pa.); *In re Anthem, Inc. Data Breach Litig*., No. 5:15-md-02617 (N.D. Cal.); *In re Arby's Restaurant Group, Inc. Data Security Litig*., No. 1:17-mi-55555 (N.D. Ga.); *In re Chrome Holding Co. (23andMe)*, No. 25-40976-357 (Chapter 11) (Bankr. E.D. Mo.); *In re Experian Data Breach Litig*., No. 8:15-cv-01592 (C.D. Cal.); *In re HealthEC LLC Data Breach Litig*., No. 2:24-cv-00026 (D.N.J.); *In re: The Home Depot, Inc.,*

177647941.1

*Customer Data Security Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.); *In re Orrick, Herrington & Sutcliffe LLP, Data Breach Litig.*, No. 3:23-cv-04089 (N.D. Cal.); *Sonic Corp. Customer Data Security Breach Litig.*, No. 1:17-md-02807 (N.D. Ohio); and *Torres v. Wendy's International, LLC*, No. 6:16-cv-00210 (M.D. Fla.)

6.     In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects of the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center ("FJC").

7.     The anticipated reach of the notice program (the "Notice Plan") is consistent with other effective court-approved notice programs. Additionally, the Notice Plan is intended to comply with the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the "FJC Checklist"), which considers 70-95% reach among class members to be reasonable.

## CAFA Notice

8.     Kroll will provide notice of the proposed settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) (the "CAFA Notice"). Kroll will send the CAFA Notice, which identifies how to access required documents relating to the settlement, via first-class certified mail to (a) the Attorney General of the United States and (b) the applicable state Attorneys General. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the settlement referenced in the CAFA Notice.

## Notice Plan

9.     According to the Settlement Agreement, the proposed Settlement Class consists of (a) those individuals to whom CPL, or AMCA on behalf of CPL, sent notice that their information was involved or may have been involved in the Security Incident affecting AMCA; and (b) those individuals to whom Austin Path, or AMCA on behalf of Austin Path, sent notice that their

177647941.1

information was involved or may have been involved in the Security Incident affecting AMCA. The Settlement Class specifically excludes: (i) Defendants and their officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads nolo contendere to any such charge.

10.     It is Kroll's understanding that it will be provided with the Settlement Class Data pursuant to the Settlement Agreement, which will contain the full names and current or last known addresses for Settlement Class Members, to the extent reasonably available.

### *Email Notice*

11.     Kroll will use the information provided in the Settlement Class Data to perform an email append process. The email append process matches names and postal addresses against third-party data to obtain the corresponding email addresses. Kroll will update the Settlement Class Data with all email addresses obtained through this process.

12.     Kroll will send the Short Form Notice via email (the "Email Notice") to Settlement Class Members for whom an email address is obtained during the email append process and available in the updated Settlement Class Data.

13.     Prior to distributing the Email Notice, all email addresses will be subject to a cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs").

### *Postcard Notice*

14.     Kroll will send the Short Form Notice via a fold-over postcard notice with a detachable Claim Form inclusive of pre-paid Business Reply Mail postage (the "Postcard Notice") by first-class mail to Settlement Class Members who were not sent an Email Notice and who have a physical mailing address in the Settlement Class Data.

15.     In preparation for the Postcard Notice mailing, Kroll will send the relevant Settlement Class Data through the United States Postal Service's ("USPS") National Change of

177647941.1

Address ("NCOA")[2] database. The NCOA process will provide updated addresses for Settlement Class Members and the process will also standardize the addresses for mailing. The Settlement Class Data will be updated accordingly. Kroll will then mail Postcard Notices via first-class mail to Settlement Class Members as described above using the information in the updated Settlement Class Data.

16.    Postcard Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

17.    Postcard Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record. If an updated address is obtained through the advanced search process, Kroll will re-mail the Postcard Notice to the updated address.

18.    The Notice Plan contemplates Settlement Class Data that will allow for Short Form Notice to reach the vast majority of Settlement Class Members through direct mail or email, consistent with due process. Based upon information provided by Lead Class Counsel, Kroll estimates that direct notice will likely reach 90% of the proposed Settlement Class. These assumptions are subject to the accuracy and quality of the data received. Kroll's estimated reach for direct notice is consistent with other court-approved, best-practicable notice programs and FJC guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3]

19.    The results of the mailing efforts will be continuously monitored and analyzed to confirm that the results fall within or exceed expectations.

### Settlement Website

20.    Kroll will work with counsel for the Parties ("Counsel") to create a Settlement Website. The Settlement Website URL will be determined and approved by Counsel. The

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[3] Federal Judicial Center, *Judges' Class Action and Claims Process Checklist and Plain Language Guide* (2010).

Settlement Website will contain a summary of the settlement, will allow Settlement Class Members to contact the Settlement Administrator with any questions, provide notice of important dates such as the Final Fairness Hearing, Claims Deadline, the last day to object to or opt out of the settlement, and will provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, such as Venmo, Zelle, PayPal, or ACH, or payment by check. The Settlement Website will also contain downloadable copies of relevant documents including the Settlement Agreement, Preliminary Approval Order, Short Form Notice, Long Form Notice, Claim Form, and when available, Plaintiffs' Motion for Attorneys' Fees and Expenses and Services Awards, and any other materials agreed upon by the Parties and/or required by the Court.

### *Toll-Free Telephone Number*

21.    Kroll will establish a toll-free telephone number for the settlement. The toll-free telephone number will allow Settlement Class Members to call and obtain information about the settlement through an Interactive Voice Response system.

### *Post Office Box*

22.    Kroll will designate a post office box to receive requests for exclusion, Claim Forms, objections, and correspondence from Settlement Class Members.

### <u>Conclusion</u>

23.    The proposed Notice Plan is expected to reach the vast majority of the Settlement Class by way of the individual direct notice efforts alone, which will be provided primarily via email and U.S. Mail.

24.    In my opinion, the proposed Notice Plan is consistent with other effective settlement notice programs, including the notice program approved by this Court in the Labcorp Track. It is the best notice practicable and meets the "reasonably certain to inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The Notice Plan is designed and expected to meet or exceed the guidelines set forth in Rule 23, the Manual for Complex Litigation (Fourth), and the FJC Checklist.

177647941.1

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on June 9, 2026, in Ocean City, New Jersey.

_____
Carla A. Peak

177647941.1

# EXHIBIT 3



# CLASS ACTION RESUME

Formed in 1976, Carella Byrne is one of the leading law firms in the New Jersey – New York metropolitan area, serving a diverse clientele ranging from small businesses to Fortune 500 corporations. Carella Byrne's class action practice - founded and led by James E. Cecchi - is the preeminent consumer class action firm in the State of New Jersey and across the United States. Mr. Cecchi has held leadership positions in many of the nation's most complex and important consumer class actions effecting consumer rights in the last ten years. The most recent examples, to name a few are: (1) *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*; (2) *In re Takata Airbag Product Defect Litigation*; (3) *In re National Prescription Opiate Litigation;* (4); *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*; (5) *In re Mercedes-Benz Emissions Litigation*; (6) *In re Liquid Aluminum Sulfate Antitrust Litigation;* (7) *In re Volkswagen Timing Chain Product Liability Litigation;* (8) *In re Insulin Pricing Litigation*.

## REPRESENTATIVE MATTERS

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.) (Hon. Charles R. Breyer) (James Cecchi appointed to Steering Committee and as Settlement Class Counsel; settlement in excess of $15,000,000,000 for consumer fraud and warranty claims arising from the use of a defeat device to evade U.S. emissions regulations.)

- *In re: Takata Airbag Products Liability Litigation*, MDL No. 2599 (S.D. Fla.) (Hon. Frederico A. Moreno) (James Cecchi appointed to Steering Committee and as Settlement Class Counsel; settlement in excess of $1,500,000,000 for consumer fraud and warranty claims arising from use of defective and dangerous airbags; the case is ongoing as it pertains to second-wave defendants, including Mercedes Benz USA.)

- *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, MDL No. 2904 (D.N.J.) (Hon. Madeline Cox Arleo) (James Cecchi appointed sole Lead Counsel in national Multi-District data breach litigation.)

- *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) (Hon. Dan A. Polster) (James Cecchi appointed to Plaintiffs' Executive Committee relating to marketing of opioid drugs. Recent settlements include a proposed $26 billion settlement with the nation's largest drug distributors and Johnson & Johnson.  Recent trial team victories include Track 3 bellwether of $650.6 million.)

- *In re: Mercedes-Benz Emissions Litigation*, Civil Action No. 16-cv-881 (D.N.J.) (Hon. Kevin McNulty) (James Cecchi appointed as Interim Co-Lead Counsel for Plaintiffs and the Proposed Class in a case arising out of the alleged use of a defeat device to evade U.S. emissions regulations; settlement with value in excess of $700,000,000 granted final approval.)

- *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (D.N.J.) (Hon. Dennis M. Cavanaugh); *In re Schering-Plough/Enhance Securities Litigation*, Civil Action No.: 08-cv-397 (D.N.J.) (Hon. Dennis M. Cavanaugh); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, Civil Action No.: 08-cv-2177 (D.N.J.) (Hon. Dennis M. Cavanaugh) (consumer and securities fraud claims arising from marketing and sale of anti-cholesterol drugs Vytorin and Zetia) (Co-Lead Counsel in Consumer Cases which settled for $41,500,000 and Liaison Counsel in Securities Cases which collectively settled for $688,000,000.)

- *In re: Liquid Aluminum Sulfate Antitrust Litigation,* MDL No. 2687 (D.N.J.) (Hon. Jose L. Linares) (James Cecchi appointed as Lead Counsel and secured a settlement of greater than $100,000,000.)

- *In Re Effexor XR Antitrust Litigation,* Civil Action No. 11-cv-5661 (D.N.J.) (Hon. Joel A. Pisano) (claims on behalf of indirect purchasers of brand-name drug alleging that manufacturer obtained patent by fraud and enforced patent by sham litigation to maintain illegal monopoly of brand-name drug. James Cecchi appointed as Chair of Plaintiffs' Indirect Purchaser Executive Committee.)

- *Davis Landscape v. Hertz Equipment Rental*, Civil Action No. 06-cv-3830 (D.N.J.) (Hon. Dennis M. Cavanaugh) (Co-Lead Counsel in settlement valued at over $50,000,000 on behalf of contested nationwide class asserting claims that HERTZ' loss/damage waiver charges violated the New Jersey Consumer Fraud Act because it provides no benefit to customers.)

- *In Re: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (D.N.J.) (Hon. Stanley R. Chesler) (securities fraud claims arising from Merck's failure to disclose problems with commercial viability of anti-pain drug Vioxx which settled for more than $1,000,000,000.)

- *In re: Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914 (Hon. Dickson R. Debevoise) (Co-Lead Counsel in $40,000,000 settlement of consumer fraud claims arising from Mercedes' failure to notify Tele-Aid customers of mandated change from analog to digital system, and charging customers to replace system Mercedes knew would be obsolete.)

# EXHIBIT 4

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

## FIRM BIOGRAPHY

### LITE DEPALMA GREENBERG & AFANADOR, LLC

### May 2026

Lite DePalma Greenberg & Afanador, LLC is a general practice law firm, with offices in Newark, Philadelphia and Morristown. The firm specializes in commercial and complex litigation with a concentration in class action matters in the areas of securities, antitrust, consumer fraud, and insurance sales practices. More detail about the firm and its attorneys appears on its website, www.litedepalma.com.

**Diversity and Inclusiveness: Our Tradition**

Lite DePalma Greenberg & Afanador, LLC has a long-standing tradition of recruitment, retention, and advancement of women and minority attorneys. The firm did not attain its diverse team of partners, associates, and staff as a result of a contemporary mission to create diverse workplaces. Long before multiculturalism became the trend, Lite DePalma Greenberg & Afanador, LLC was committed to diversity in the workplace. Having elected its first minority attorney to the partnership over twenty-five years ago, the firm has continually maintained a team of partners, associates, and staff that is representative of various multicultural backgrounds. The firm is committed to the advancement of women and minority attorneys and currently boasts a team comprised of 50% women and/or minority attorneys at the partnership level. We are also committed to staffing cases with a diverse team of seasoned attorneys that are capable of tending to the needs of our clients in today's increasingly diverse global economy. To that end, Lite DePalma Greenberg & Afanador, LLC actively recruits women and minority attorneys. We are immensely proud to have been part of that journey and have witnessed firsthand how this type of trail blazing motivates and inspires our associates.

1022265.2

**LITE DePALMA
GREENBERG &
AFANADOR**

**Community and Leadership: Our Devotion to the Development of the Newark Community and Minority / Socioeconomically Disadvantaged Groups**

Founded in 1978, our law firm began its practice in Newark, New Jersey and has remained a Newark resident at all times.  As a proud member of the Newark community, Lite DePalma Greenberg & Afanador, LLC supports its local charitable, educational, cultural, and pro bono legal institutions. The firm is heavily involved with Newark's educational institutions. The firm has participated in a summer hiring program that employs minority students from University High School on a part-time basis in order to provide inner city students with valuable exposure to a law practice. It also supports Newark's law schools by supporting Seton Hall and Rutgers-Newark, financially and otherwise. Our attorneys are deeply committed to both schools and regularly volunteer their time in alumni, moot court, and other programs. In the cultural arena, the firm was a Founding Sponsor of the New Jersey Performing Arts Center in Newark and a consistent financial supporter of NJPAC since its inception. Among the pro bono legal institutions that Lite DePalma Greenberg & Afanador, LLC has actively assisted are Consumers League of New Jersey and the Center for Auto Safety in Washington, DC.  The firm successfully represented both organizations as amicus curiae in cases before the Supreme Court of New Jersey. Additionally, several of our attorneys were among the first in New Jersey to handle pro bono appeals in the New Jersey Appellate Division's Pro Bono Civil Pilot Program and have participated in several pro bono matters.

**Loyalty: Our Commitment to Family and Personal Relationships**

Lite DePalma Greenberg & Afanador, LLC has long-realized that promoting healthy family and personal relationships is a key component to building a successful and cohesive

2

1022265.2

**LITE DePALMA
GREENBERG &
AFANADOR**

practice. Mindful of the increase in dual income families, the firm strives to create an environment that is respectful of family obligations. Lite DePalma Greenberg & Afanador, LLC endeavors to facilitate flexible work arrangements by offering a fair family leave policy, flex-time, and telecommuting.

## MEMBERS OF THE FIRM

**JOSEPH J. DEPALMA** (Newark Office), the Firm's Managing Member, has a vast breadth of experience in many types of class action cases involving securities, ERISA, antitrust, product liability, and consumer fraud. Mr. DePalma also handles shareholder derivative litigation, commercial litigation, and transactional matters for the firm's corporate clients. He has a Masters Degree in Business Administration and a J.D. degree from Seton Hall University School of Law.

Mr. DePalma has served as Co-Lead Counsel for the State of New Jersey, Division of Investment, as Lead Plaintiff in two prominent class actions that have resulted in significant recoveries: *Reginald Newton v. Tenet Healthcare Corp.,* (Tenet Healthcare Securities Litigation), cv-02-8462-RSWL (C.D. Cal.) ($281.5 million settlement); *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.) ($193 million settlement reached three business days before trial).

Mr. DePalma has also played an active role in obtaining settlements in numerous recognized class actions comprising some of the largest settlements in the nation. Included in such cases are: *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) (over $4 billion paid out in largest insurance sales practices settlement ever) (Liaison Counsel); *In re Lucent Technologies Securities Litig.*, Civil Action No. 00cv621(AJL) (D.N.J.), reported opinions, 2003 WL 25488395 (D.N.J. Dec. 15 2003), 2002 WL 32815233 (D.N.J. July 16, 2002), 217 F. Supp. 2d 529 (D.N.J. 2002), 2002 WL 32818345 (D.N.J., May 9, 2002), 221 F. Supp. 2d

3

1022265.2

463 (D.N.J. 2001), 221 F. Supp. 2d 472 (D.N.J. 2001) (approximate $610 million settlement) (Liaison Counsel); *Galanti v. Goodyear*, Civil Action No. 03-209(SRC) (D.N.J.) ($300 million product liability settlement) (Liaison Counsel); *In re Aremissoft Corp. Securities Litig.,* Civil Action No. 01-CV-2486 (JAP) (D.N.J.), reported opinion, 210 F.R.D. 109 (D.N.J. 2002) (over $250 million recovered to date; case is ongoing) (Liaison Counsel); *In re Royal Dutch/Shell Transport Litigation*, Civil Action No. 04-1398 (JWB) (D.N.J.), reported opinions, 404 F. Supp. 2d 605 (D.N.J. 2005), 380 F. Supp. 2d 509 (D.N.J. 2005) ($90 million ERISA settlement, the largest settlement ever under ERISA) (Liaison Counsel); *P. Schoenfeld Asset Management, LLC v. Cendant Corp.*, Civil Action No. 98-4734(WHW) ($26 million settlement after precedent-setting decision in same case); *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000)) (Liaison Counsel); *Steiner v. MedQuist,* Civil Action No. 04-CV-05487-JBS (D.N.J.), reported opinion, 2006 WL 2827740 (D.N.J. Sept. 29, 2006) ($7.75 million) (Liaison Counsel); *In re Tellium Securities Litig.,* No. 02-CV-5878 (FLW) (D.N.J.), reported opinion, 2005 WL 1677467 (D.N.J. June 30, 2005) ($5.5 million) (Liaison Counsel); and *In re NUI Securities Litig.,* Civil Action No. 02-CV-5220 (MLC) (D.N.J.), reported opinion, 314 F. Supp. 2d 388 (D.N.J. 2004) ($3.5 million) (liaison counsel).

Mr. DePalma's years of experience also include the following major matters: *In re Computron Software, Inc. Securities Litig.*, Civil Action No. 96-1911 (AJL) (approximate $15 million settlement) (Liaison Counsel); *In re USA Detergents, Inc. Securities Litigation*, Master File No. 97-2459 (MTB), District of New Jersey ($10 million settlement) (Liaison Counsel); *In re: The Children's Place Securities Litig.*, Master File No. 97-5021 (JCL), (D.N.J.), reported opinion, 1998 WL 35167284 (D.N.J. Sept. 4, 1998) ($1.7 million settlement) (Liaison Counsel);

4

1022265.2

*Arthur Fields, et al. v. Biomatrix, Inc., et al.*, Civil Action No. 00-CV-3541 (WGB), (D.N.J.) ($2.45 million settlement) (Liaison Counsel); *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 2:13-cv-7418 (D.N.J.), reported opinion, 846 F.3d 625 (2017) (case settled) (Co-Lead Counsel); and *In re Atlas Mining Securities Litig.*, Civil Action No. 07-428-N-EJL (D. Idaho) ($1.25 million) (Lead Counsel).

Some of Mr. DePalma's other court approved class action and mass action settlements, involved product liability, takeover and ERISA matters. In a complex MDL mass action proceeding involving the illegal harvesting of body parts and the untested surgical implanting of those parts, Mr. DePalma, along with a team of nationally recognized colleagues, achieved a global settlement in a case captioned *In re Human Tissue Product Liability Litig.* (D.N.J.). Mr. DePalma achieved a settlement on behalf of shareholders in tender offer litigation, *In re Alpharma Shareholder Litigation*, (N.J. Superior Ct.). In a complex ERISA matter involving two appeals to the Third Circuit, *In re Schering-Plough Corporation ERISA Litigation*, (D.N.J.), Mr. DePalma obtained a settlement of $8.5 million on behalf of a class of participants in a retirement plan alleging breaches of fiduciary duties.

Mr. DePalma is currently involved in and serves in leadership positions in the following class actions in the District of New Jersey: *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, Docket No. 19-md-2904 (co-lead counsel); *In re Emisphere Technologies, Inc. et al., Securities Litigation*, Case No. 2:23-cv-20898-SDW-AME (liaison counsel); *Mendez v. Avis Budget Group, Inc.*, Docket No. 2:2011-cv-06537 (co-lead counsel, recently settled for $45 million); *BCR Carpentry LLC v. FCA US LLC*, 3:21-cv-19364-GC-DEA (liaison counsel); *In re: Fragrance Indirect Purchaser Antitrust Litigation*, 2:23-cv-

5

**LITE DePALMA
GREENBERG &
AFANADOR**

03249 (D.N.J.) (liaison counsel for indirect purchaser plaintiff class); *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.) (liaison counsel); *Vascepa Antitrust Litigation Indirect Purchaser Plaintiffs*, Docket No. 21-12061 (ZNQ)(LHG) (D.N.J.) (executive committee); *In Re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 (D.N.J.) (liaison counsel); *In re CityMD Data Privacy Litigation*, No. 2:24-cv-06972 (D.N.J.) (co-lead counsel); and *In re Prudential Financial, Inc. Data Breach Litigation*, No. 2:24-cv-06818 (D.N.J.) (liaison counsel).

Mr. DePalma has represented defendants in class action litigation involving prisoners' rights: *Ford v. Smith*, 1:20-cv-18863 (NLH)(AMD) (D.N.J.) and *Brown v. Warren*, 1:20-cv-7907 (NLH)(AMD) (D.N.J.). Mr. DePalma has also successfully represented customers of Showtime and AMC in mass arbitrations.

Mr. DePalma has achieved excellent results for clients in other areas of litigation. Among other things, he won large settlements for a condominium association on construction defect and legal malpractice claims and has successfully handled securities arbitrations as well.

Mr. DePalma has lectured in the areas of class action law and in complex commercial litigation. He has also served as a member of the New Jersey Supreme Court's District Ethics Committee.

Mr. DePalma served on the Board of Visitors of the Seton Hall University School of Law from 2011 to 2022. Mr. DePalma served as co-chair of the law school's Small Firm Committee and was a member of its Diversity Counsel.

Mr. DePalma was named as a New Jersey Super Lawyer in the 2007-2024 issues of *New Jersey Monthly* magazine.  He was also named to ALM's 2012 "New Jersey Top Rated Lawyers," listed under "Business & Commercial."

6

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

      **BRUCE D. GREENBERG** (Newark Office) has served as Co-Lead Counsel, Executive Committee or Steering Committee member, or Liaison Counsel in major antitrust, defective products, consumer fraud, and securities class action cases. He also handles sophisticated appellate, commercial and real estate litigation.

      A number of Mr. Greenberg's class action cases have resulted in significant settlements. Among his federal court class action successes are a settlement worth more than $750 million for a nationwide class in *Varacallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) (Co-Lead Counsel), an insurance sales practices case, a $35.75 million nationwide class settlement in *In re STEC Securities Litig.*, No. SACV 09-01304-JVS (MLGx) (Co-Lead Counsel), a securities fraud case, *Cole v. NIBCO, Inc.*, No. 13-7871 (FLW) (TJB) (Co-Lead Counsel), a $43.5 million nationwide settlement in a defective products case, a nationwide consumer settlement worth up to $13 million in *Schwartz v. Avis Rent a Car System, LLC*, Civil Action No. 11-4052 (JLL) (Co-Lead Counsel), a highly valuable nationwide settlement in *In re Samsung DLP Television Class Action Litigation*, Civil Action No. 07-2141 (GEB) (MCA) (Executive Committee), a $9.59 million settlement in *In re N.J. Tax Sale Certificate Antitrust Litig.*, 750 Fed. Appx. 73 (3d Cir. 2018) (Liaison Counsel), settlements totaling over $200 million for a nationwide class in the multidistrict antitrust litigation captioned *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, Civil Action No. 04-5184 (FSH) (D.N.J.) (Liaison Counsel), *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-9066-MEF-SDA (D.N.J.) ("no poach" antitrust case that settled for $10.8 million), and another antitrust class action, *In re Liquid Aluminum Sulfate Antitrust Litigation*, MDL No. 2687, Civil Action No. 16-md-2687 (JLL) (JAD) (District of New Jersey) (Steering Committee and Liaison Counsel), which produced settlements totaling over $90

7

1022265.2

million for a nationwide class. His efforts as Co-Lead Counsel for certified classes in the United States District Court for the Western District of Pennsylvania (*Zeno v. Ford Motor Co.*, 238 F.R.D. 173 (W.D. Pa. 2006), and 480 F. Supp. 2d 825 (W.D. Pa. 2007)), and in the Superior Court of New Jersey, led to a four-state settlement that afforded full benefit of the bargain relief to consumers in *Pedersen v. Ford Motor Co.*, No. GIC 821797 (Cal. Super Ct.). Mr. Greenberg was also instrumental in *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.), where Lite DePalma Greenberg & Afanador, LLC, as Co-Lead Counsel, achieved a $193 million settlement just three business days before trial was to begin.

Mr. Greenberg's New Jersey state court class actions include a settlement valued at $8.6 million for a nationwide class of current and former merchants in *Roma Pizzeria v. Harbortouch f/k/a United Bank Card*, Docket No. HNT-L-637-12 (Co-Lead Counsel); a $100 million settlement for a nationwide consumer class in *Friedman v. Samsung Electronics America, Inc.*, Docket No. BER-L-7250-01 (Liaison Counsel), a comparably sized settlement for a nationwide consumer class in *Summer v. Toshiba America Consumer Products, Inc.*, Docket No. BER-L-7248-01 (Liaison Counsel), another nationwide consumer class settlement in *Barrood v. IBM*, Docket No. MER-L-843-98 (Co-Lead Counsel), which afforded class members full benefit of the bargain relief (Co-Lead Counsel), a $4.9 million settlement in a Fair and Accurate Transactions Act ("FACTA") case, *Baskin v. P.C. Richard & Son, LLC*, Docket No. OCN-L-911-18 (Co-Lead Counsel), a settlement for a New Jersey consumer class worth over $7 million in *Delaney v. Enterprise Rent-A-Car Co.*, Docket No. OCN-L-1160-01 (Co-Lead Counsel), a $4.5 million settlement for a New Jersey consumer class in *DeLima v. Exxon*, Docket No. HUD-L-8969-96 (Co-Lead Counsel), another consumer class settlement worth $1.875 million in *Collins v. Provident Bank*, Docket No.

8

**LITE DEPALMA
GREENBERG &
AFANADOR**

HUD-L-1429-22, and an unprecedented settlement in a class action involving a merger, *Rubin v. Mercer Insurance Group, Inc., et al.*, Docket No. MER-C-102-10 (Co-Liaison Counsel), which afforded stockholders the opportunity to review forward looking financial information of the company, thus allowing shareholders to make a more informed decision concerning the merger.

A 1982 graduate of the Columbia University School of Law, Mr. Greenberg clerked for Justice Daniel J. O'Hern of the Supreme Court of New Jersey for the 1982-83 Term. Before joining the firm, Mr. Greenberg was a partner at one of New Jersey's largest law firms.

Mr. Greenberg appears regularly in the appellate courts. He has argued thirteen times in the Supreme Court of New Jersey, three cases in the Third Circuit Court of Appeals, over 75 cases in New Jersey's Appellate Division, and one case in the Colorado Court of Appeals. Over 40 of his cases have resulted in published, precedential opinions, including major decisions on class actions, mass torts, zoning and land use, restrictive employment covenants, real estate brokerage, and other topics.

Among his many other publications, Mr. Greenberg is the author of the chapter entitled "Supreme Court Review" in *New Jersey Appellate Practice Handbook* (New Jersey ICLE), co-author, with Susana Cruz Hodge, of the chapter entitled "Class Action Litigation" in *New Jersey Federal Civil Procedure* (NJLJ Books (1st ed. 1999 and annual supplements)), and author of "Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements," 84 St. John's L. Rev. 949 (2010). That and other law review articles that he has written have been cited with approval by the Supreme Court of New Jersey, the Appellate Division, and federal and state courts in other jurisdictions. Mr. Greenberg has lectured on class actions for both New Jersey and Pennsylvania CLE, and he delivered the 27th Annual Evangelides Memorial Lecture at

9

Rutgers University's Eagleton Institute on the topic "Class Action Litigation: Who Benefits?" He has served as an expert witness on attorneys' fees in class actions and Chancery litigation and has also spoken on civil trial preparation, appellate practice and other subjects. Mr. Greenberg also writes the New Jersey Appellate Law blog, http://appellatelaw-nj.com, New Jersey's foremost appellate blog, since 2010.

Mr. Greenberg belongs to the New Jersey State Bar Association ("NJSBA") and was Chair of the Association's Appellate Practice Committee from 2004-2006. He is a past Co-Chair of the NJSBA's Class Actions Committee, a position he held from 2008-2016. From 1991-2006, Mr. Greenberg was a member of the Supreme Court of New Jersey Committee on Character. He was also one of the founding members, and a past Chair, of the New Jersey Law Firm Group, a consortium of major law firms to advance hiring of minority lawyers.

Mr. Greenberg has been named to the "New Jersey Super Lawyers" list, for "Appellate Practice," in *New Jersey Monthly* magazine every year since 2005, when that list was first published, and has twice been named to the "New Jersey Super Lawyers" Top 100, most recently in 2020. Mr. Greenberg has been listed in "Best Lawyers in America®" each year since 2019 for "Appellate Practice." He was also named a Fellow of the American Academy of Appellate Lawyers, one of only four New Jersey lawyers who are so designated. Mr. Greenberg was also listed in ALM's 2012 "New Jersey Top Rated Lawyers," under "Commercial Litigation." Mr. Greenberg has an "AV" rating from Martindale-Hubbell.

**VICTOR A. AFANADOR** (Newark Office) chairs the litigation and trial practice group for civil and criminal cases. His experience includes private and public entity litigation including but not limited to tort liability defense, employment related defense of CEPA and LAD matters,

10

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

police related state and federal civil rights defense, condemnation and redevelopment law, complex commercial litigation, and criminal defense. His experience includes trial, oral advocacy and settlement negotiations before the New Jersey Office of Administrative Law, the Superior Court of New Jersey in various vicinages, the Appellate Division, the United States Court for the District of New Jersey, the United States Third Circuit Court of Appeals and the Supreme Court of the United States. In addition, Mr. Afanador served from September 1999 through May of 2005 as Deputy Director of Law for the City of Perth Amboy. In that capacity, he provided counsel to the Mayor, the City Council, and City department directors on legal matters.

Mr. Afanador has successfully tried to verdict jury and bench trials in a myriad of matters. In addition to his trial work, Mr. Afanador has also applied his investigative skills in the class action area. He interviewed Spanish-speaking employees and prepared a report for the Court as part of the firm's responsibilities as Class Administrator for an employment discrimination class action.

Mr. Afanador clerked for Judges Mathias E. Rodriguez and Frederick P. DeVesa, Superior Court of New Jersey, Law Division Criminal Part, in Middlesex County from 1998-1999.

Mr. Afanador was appointed by the Essex County Executive in September of 2005 to serve as a Commissioner on the Essex County Board of Public Utilities. He is a member of the Association of the Federal Bar of the State of New Jersey (Immediate Past President), Seton Hall University School of Law Alumni Association (Past President), New Jersey State Bar Association, the Essex County Bar Association, and the Hispanic Bar Association of New Jersey. He was admitted into the American College of Trial Lawyers as a Fellow in 2023. He is also a proud 2003

11

1022265.2

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

Graduate of the Leadership Newark Fellowship Program and has served on the African Globe

Theatreworks Board of Directors, a professional theater company based in Newark, New Jersey.

Mr. Afanador was designated a Rising Star in May 2006, May 2007, May 2008, May 2009,

May 2010, May 2011, May 2012, and May 2013 issues of *Super Lawyers* and has been selected

as a Super Lawyer every year since 2016 through 2024. He was also named to the "40 Under 40"

issue by the New Jersey Law Journal in 2010.

**SUSANA CRUZ HODGE** (Newark Office) is a member of Lite DePalma Greenberg &

Afanador, LLC and focuses her practice on class actions. Her primary focus is on product liability

and consumer fraud cases. Ms. Hodge has participated in numerous consumer cases, including

*Cole v. NIBCO, Inc.*, No. 13-CV-07871 (D.N.J.), a case involving defective plumbing piping,

tubing and fixtures that resulted in a nationwide consumer settlement worth $44 million; *Schwartz*

*v. Avis Rent a Car System, LLC*, No. 11-4052 (D.N.J.), a case involving fraudulent fee charges that

resulted in a nationwide consumer settlement worth up to $13 million; *In re Shop-Vac Marketing*

*& Sales Practices Litig.*, No. 4:12-MD-2380 (M.D. Pa.), a case involving misrepresentation of the

peak horsepower of wet/dry vacuums that resulted in a nationwide settlement fund valued at $174

million; and *Mendez v. Avis Budget Group, Inc.*, No. 11-cv-6537 (D.N.J.), a case involving the

misrepresentation of toll charges that resulted in a settlement of $45 million on behalf of a

nationwide class of over 10 million consumers.

Recently, Ms. Hodge was appointed co-lead counsel in *In re Plum Baby Food Litigation*,

No. 4:21-cv-00913 (N.D. Cal.), a multi-state class action filed on behalf of purchaser of Plum baby

food products alleged to contain heavy metals and perchlorate. Ms. Hodge was also appointed as

a member of the Executive Committee in *In re Robinhood Outage Litigation,* No. 20-01626-JD

12

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

(N.D. Cal.), which was filed on behalf of users of Robinhood's trading platform. Ms. Hodge was also actively involved in representing plaintiffs in several consumer class actions involving heavy metals, BPA, and other contaminants and toxins in food, including, *Zeiger v. WellPet LLC*, No. 3:17-cv-04056 (N.D. Cal.), where a class of California dog food purchasers was recently certified.

Ms. Hodge also represents individual parties in general business disputes arising from breach of contract and fraud, as well as employment-related issues. In her capacity as a commercial litigator, Ms. Hodge represented a major food and beverage company in recovering millions of dollars fraudulently converted in a Ponzi scheme. She has also represented a struggling local business in closing its doors without filing bankruptcy, which involved negotiating settlements with nearly 100 creditors and successfully pursuing claims against various debtors. Ms. Hodge has investigated, negotiated, and litigated claims by subcontractors and material suppliers in a range of construction-related contractual disputes. Ms. Hodge has also filed and defended commercial and residential construction liens, and payment and performance bond surety claims in cases involving public and private construction projects, and represented developers in breach of contract actions.

Ms. Hodge has briefed and argued before the United States Court of Appeals for the Seventh Circuit, the U.S. District Court for the District of New Jersey, and the New Jersey Superior Court. Ms. Hodge has also participated in appeals to the United States Court of Appeals for the Third, Seventh, and Ninth Circuits, as well as to the Appellate Division of the New Jersey Superior Court involving constitutional and employment law, rent control, and commercial leasing issues.

Ms. Hodge was one of the first attorneys in New Jersey to handle pro bono appeals in the New Jersey Appellate Division's Pro Bono Civil Pilot Program and has participated in several pro

13

1022265.2

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

bono matters. Notably, Ms. Hodge represented an individual in an emergency application to the New Jersey Appellate Division, which led to the client avoiding eviction, and secured a dismissal of a temporary restraining order in another matter that would have imposed automatic prison time for her client.

Ms. Hodge is co-author, with Bruce D. Greenberg, of the chapter entitled "Class Action Litigation" in New Jersey Federal Civil Procedure and has been a panelist in various seminars such as "Significant Developments in Class Actions," hosted yearly by the New Jersey Institute for Continuing Legal Education, and "The Evolving Nature of Class Actions," hosted by New Jersey State Bar Association.

Ms. Hodge is a graduate of Boston College (2001) and Boston College Law School (2005). Prior to joining private practice, Ms. Hodge clerked for the Hon. Thomas J. LaConte, Superior Court of New Jersey, Passaic County. She also taught Legal Writing at Seton Hall University Law School to first year law students prior to joining Lite DePalma Greenberg & Afanador, LLC. Prior to attending law school, Ms. Hodge taught Portuguese, English, and math to young students in Rio de Janeiro, Brazil, as part of Projeto Unicom Rocinha, a Brazilian non-profit organization. Ms. Hodge was named as a "Rising Star" in *New Jersey Monthly* magazine from 2014 to 2019 and has since been named to the "New Jersey Super Lawyers" list every year.

**LAURA K. MUMMERT** (Philadelphia Office) is a member to the firm and is resident in the firm's Philadelphia office. For more than two decades, Ms. Mummert has prosecuted large-scale securities, antitrust, and consumer fraud class action litigation in the healthcare, pharmaceuticals, automotive, entertainment, and other highly regulated industries.

14

1022265.2

Ms. Mummert served as part of the teams that prosecuted *In re General Motors Corp. Securities Litigation*, No. 4:14-cv-11191 (E.D. Mich.), which settled for $300 million, *In re Oppenheimer Champion Fund Securities Litigation*, No. 09-cv-386 (D. Colo.) and *In re Oppenheimer Core Bond Fund Securities Litigation*, No. 09-cv-1186 (D. Colo.) both of which settled for a combined $100 million after successfully opposing the defendants' request for dismissal, and *In re Take-Two Interactive Securities Litigation*, No. 06-cv-00803 (S.D.N.Y.), where investors achieved a $20.1 million settlement. Ms. Mummert also played a significant role in the prosecution of *In re Amgen Inc. Securities Litigation*, No. 07-2536 (C.D. Cal.), which settled for $95 million and resulted in the landmark U.S. Supreme Court decision, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).

She was also part of the lead counsel team in *In re Aftermarket Automotive Sheet Metal Indirect Purchaser Litigation*, No. 2:09-cv-00852 (E.D. Wis), which led to a $9.85 million recovery, and participated on the litigation teams prosecuting several other antitrust class actions, including *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626 (M.D. Fl.) and *In re Dental Supplies Antitrust Litigation*, No. 16-cv-00696 (E.D.N.Y.).

She served as one of the lead attorneys who obtained class certification of a nationwide class against Avis Rent-A-Car Systems, LLC, and Budget Rent-A-Car Systems, Inc., for allegedly charging customers a deceptive fee for earning frequent flyer miles in connection with their car rentals, a case that resulted in a $13.7 million recovery for the class. Ms. Mummert also served on the litigation team in a breach of fiduciary duty action against the Board of Pensions for one of the largest Christian denominations in the United States and obtained a full recovery for each of the plaintiffs.

15

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

She also served on the litigation team that prosecuted the data breach action against Target after hackers stole the personal and financial information of up to 110 million Target customers during the height of the 2013 holiday season, and the team that brought the concussive injury case against the National Hockey League for its failure to disclose to its players the long-term risk of neurodegenerative disorders and diseases involved with repeated head traumas that have become inherent to the league.

In more recent years, she has represented major health insurers in complex, high-stakes cost-recovery litigation. Notably, she was a lead member of the litigation teams prosecuting claims on behalf of several health insurers in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL (E.D. Pa.) and *Blue Cross Blue Shield Ass'n, et al. v GlaxoSmithKline LLC*, No. 12-4663-JS (E.D. Pa).

**LYNN FONTAINE NEWSOME** (Morriston Office), Past President of the New Jersey State Bar Association, has long been recognized as a leader in the legal community. She has practiced exclusively in the area of Family Law since her admission to the Bar in 1981 and is a Certified Matrimonial Attorney and a Fellow of the American Bar Foundation. Ms. Newsome handles all aspects of family law including divorce, custody, palimony, Prenuptial Agreements, civil unions, appeals and domestic violence. She is an experienced litigator who has tried all types of family law matters. She also is a certified mediator and has mediated and arbitrated many matters in addition to accepting appointments as a discovery master and as a guardian.

In addition to being the Past President of the New Jersey State Bar Association, Ms. Newsome is a former Chair of the Family Law Section of the New Jersey State Bar Association and a Past President of the Morris County Bar Association. In addition, she is a long-standing

16

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

member of the New Jersey Supreme Court Family Law Committee. She is a member of the American Bar Association having served in the House of Delegates and sits on the Executive Council of the General Practice, Solo and Small Law Firm Division and is a member of the Family Law and Litigation Section.

She has been honored and recognized by her peers with some of the highest awards bestowed in the legal profession. She was the recipient of the Saul Tischler Family Law Section Award in 2006 for her lifetime contributions to the advancement of Family Law in the State of New Jersey. In 2009, she was awarded the Samuel Saiber Professional Award by the Essex County Bar Association.

She is honored to sit on the Editorial Board of the New Jersey Law Journal. She is a frequent and well recognized lecturer and panelist in the area of family law and professional responsibility. She regularly lectures for the New Jersey Institute for Continuing Legal Education. Her practice includes trial and appellate work as well as mediation. She is a former member of District X Ethics Committee and the New Jersey State Bar Association Ethics Diversionary Committee.

## COUNSEL

**STEVEN J. GREENFOGEL** (Philadelphia Office) is Counsel to the firm and is resident in the firm's Philadelphia office. Throughout his over fifty-year career, Mr. Greenfogel has specialized in class action antitrust litigation, including many of the most significant multidistrict class action price fixing cases of modern times. He has served as Co-Lead Counsel in *In re Chain Link Antitrust Litigation*, Master File CLF-1 (D. Md); *In re Industrial Silicon Antitrust Litigation*, 95-2104 (W.D. Pa) (which he tried to verdict), *In re Isostatic Graphite Antitrust Litigation*, No.

17

1022265.2

2000-cv-4965 (E.D. Pa); and *Gordon v. Amadeus IT Group, S.A.*, 15-cv-03457-KPF (S.D.N.Y.). Mr. Greenfogel also served as one of the main trial counsel as well as co-chairman discovery in *In re High Pressure Laminates Antitrust Litigation*, No. 00-MD-1368(CLB) (S.D.N.Y.) (tried to verdict) and *In re Carbon Dioxide Antitrust Litigation,* MDL 940 (M.D. Fla) (settled after jury selection). In addition to being Co-Chairman of Discovery in *In re Infant Formula Antitrust Litigation*, Master File No. MDL 878 (N.D. Fla), Mr. Greenfogel served as one of plaintiff's trial counsel (settled after jury selection). He has served as a member of Plaintiffs' Executive Committee in numerous cases, including: *In re Municipal Derivatives Antitrust Litigation*, MDL 1950 (S.D.N.Y. 2008); *In re Static Random Access Memory (SRAM) Antitrust Litigation,* cv-1819 (N.D. Cal 2007); and *In re Publication Paper Antitrust Litigation*, MDL 1631 (D. Ct . 2004). Mr. Greenfogel has also played a major role in numerous other multidistrict antitrust class actions, including: *O'Bannon v. National Collegiate Athletic Ass'n*, *et al.*, 4:09-cv-3329 (N.D. Cal 2009) (member of Plaintiff's trial team and co-chairman of discovery); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal 2006); *In re Direct Random Access Memory (DRAM) Antitrust Litigation*, No. 02-cv-01486-OHG (N.D. Cal 2002); *In re NASDAQ Market Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.) (chairman of discovery); *In re Brand Names Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.); *In re Commercial Tissue Antitrust Litigation*, MDL 1189 (N.D. Fla); *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla); *Cumberland Farms v. Browning Ferris Industries, Inc.*, A.A. No. 87-3717; *Superior Beverage/Glass Container Antitrust Litigation*, 89 C 5251 (N.D. Ill.); *In re Chlorine & Caustic Soda Antitrust Litigation*, 86-5428 (E.D. Pa); *In re Records & Tapes Antitrust Litigation*, No. 82 C 7589 (N.D. Ill.); and *In re Broiler Chicken Antitrust Litigation*, No. 18-cv-8637 (N.D. Ga).

18

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

Earlier in his career from 1977 to 1980, Mr. Greenfogel served as an Assistant Attorney General in the Commonwealth of Massachusetts and was the first Chief of its Antitrust Division. He was the author of the Commonwealth's Antitrust Law (M.G.L. 93). During that time, he was a panelist at the New England Antitrust Conference in Boston as well as speaking on antitrust matters at various venues in Massachusetts.

Mr. Greenfogel served as a member of the Board of Trustees of Camden County College from 2000 through 2017, having been appointed to that position by Governors Whitman, McGreevy and Corzine.  He has been selected fourteen times as one of the Top Attorneys in Pennsylvania by *Philadelphia Magazine* and has an "AV" rating from Martindale Hubbell.

**CATHERINE B. DERENZE** (Newark Office) is Counsel with the firm. Catherine plays a significant role in a diverse range of class action matters at the firm, including consumer fraud, data privacy and security, and antitrust litigation.  Representative matters include: *In re Samsung Customer Data Security Breach Litig.*, No. 23-md-3055 (D.N.J.) (appointed liaison counsel); *In re: Conduent Business Services Data Breach Litigation*, No. 25-CV-16953 (D.N.J.) (appointed liaison counsel); *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (D.N.J.) (secured a $6.5 million settlement with one defendant and settlement pending with other defendants); *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.); *In re Wawa, Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa.) (settlement pending); *In re: Hard Disk Drive Suspension Assemblies Antitrust Litig. ("In re HDD")*, No. 19-md-02918 (N.D. Cal.); *In re: Generic Pharmaceutical Pricing Antitrust Litigation,* No. 16-md-2724 (E.D. Pa.); *In Re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 (D.N.J.); *Anaya v. Cencora, Inc.*, et al., 2:24-cv-02961 (E.D. Pa.); *In re CityMD Data Privacy Litigation*,

19

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

No. 2:24-cv-06972 (D.N.J.); *In re Prudential Financial, Inc. Data Breach Litigation*, No. 2:24-cv-06818 (D.N.J.) (nationwide settlement fund of $4.5 million); and *In re Plum Baby Food Litig.*, No. 1:21-cv-2417 (N.D. Cal.).

Ms. Derenze is also developing a burgeoning appellate practice. Notable accomplishments include successfully briefing and arguing before the New Jersey Supreme Court on behalf of amici in *DiFiore v. Pezic*, 254 N.J. 212 (2023).

Ms. Derenze is a graduate of The College of the Holy Cross (2013) and Seton Hall University School of Law (2018). She is a member of the bars of the State of New Jersey and the Federal Bar of New Jersey. Ms. Derenze is also a member of the New Jersey Bar Association and is currently serving for her third year as the co-chair of its Appellate Practice Committee. Before joining LDGA, Ms. Derenze clerked for the Honorable Heidi Willis Currier, J.A.D., of the Appellate Division of the New Jersey Superior Court. Prior to that, she served as an extern to the Honorable Patty Shwartz, of the United States Court of Appeals for the Third Circuit.

In 2023, 2024, and 2025, Ms. Derenze spoke on recent trends in class action litigation for the New Jersey Institute for Continuing Legal Education ("NJICLE") and the New Jersey State Bar Convention, and has spoken for NJICLE several times on appellate practice. She was also named as a "Rising Star" for "Appellate Practice" on the 2024 and 2025 "New Jersey Super Lawyers" list.

**GARY S. LIPSHUTZ** (Newark Office) is Counsel with the firm. Mr. Lipshutz joined the firm in 2024 after spending more than two decades with the City of Newark Law Department, where he was First Assistant Corporation Counsel. Mr. Lipshutz has been certified by the New Jersey Supreme Court as a Civil Trial Attorney since 2013 (having been recertified twice, in 2018

20

1022265.2

and 2023). Mr. Lipshutz has extensive trial and appellate experience in diverse litigated matters, including federal and state civil rights claims, Tort Claim Act, LAD and CEPA, contract, public bidding, and redevelopment matters. Mr. Lipshutz was the City of Newark's lead counsel in connection with the Consent Decree between United States Department of Justice and the City's Department of Public Safety, Division of Police. He also was lead counsel who handled the United States Coast Guard investigation into July 2023 ship fire at Port Newark that caused the death of two Newark firefighters.  Mr. Lipshutz is a graduate of the University of Pennsylvania (B.A.) and the University of Florida (J.D.). He is admitted to the New Jersey and Florida bars.

**NICHOLAS R. McCLELLAND** (Newark Office) is Counsel with the firm. He was admitted to the bar in New Jersey in 2018 and is also admitted to practice in the United States District Court for the District of New Jersey. He attended Syracuse University (B.A. in Philosophy and Political Science 2015) and Seton Hall Law School (J.D. 2018). Following law school, Mr. McClelland served as Judicial Law Clerk to the Honorable Alan G. Lesnewich, J.S.C., of the Superior Court of New Jersey, Union County. Prior to joining LDGA, Mr. McClelland was engaged in the practice as a civil litigation associate at a regional law firm based in Monmouth County.

**EUGENE E. HUTCHINSON** (Newark Office) is Counsel with the firm.  Mr. Hutchinson has a decade of experience litigating class action matters in significant roles, including antitrust and consumer protection litigations, in a range of industries.  Mr. Hutchinson has represented both plaintiffs and defendants in class actions.  Representative matters include: *In re Apple iPhone Antitrust Litig.*, No. 2:24-md-03113 (D.N.J.); *In re Visa Debit Card Antitrust Litig.*, No. 1:24-cv-7435 (S.D.N.Y.); *In re: Hard Disk Drive Suspension Assemblies Antitrust Litig. ("In re HDD")*,

21

No. 19-md-02918 (N.D. Cal.); *Dorce v. City of New York*, 1:19-cv-02216 (S.D.N.Y.); *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-06549 (S.D.N.Y.); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-07488 (S.D.N.Y.); *In re Asacol Antitrust Litig.*, No. 1:15-cv-12730 (D. Mass.); *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (D. Conn.); *In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-md-02472 (D.R.I.); *In re Wire Harness Products Antitrust Litig.*, No. 2:12-cv-00101 (E.D. Mich.).

Mr. Hutchinson also has extensive trial and appellate experience, including in antitrust merger litigation, class actions, and civil rights matters. Notable trial accomplishments include obtaining a record civil rights jury verdict for the plaintiff in *Schand v. City of Springfield*, No. 3:15-cv-30148 (D. Mass.).

Mr. Hutchinson is a graduate of New York University (2010) and the Maurice A. Deane School of Law at Hofstra University (2016). During law school, Mr. Hutchinson served as an Articles Editor for the Hofstra Law Review. Mr. Hutchinson is a member of the bar of the State of New York. Mr. Hutchinson is also a member of the American Bar Association ("ABA") and the ABA Antitrust Law Section. Mr. Hutchinson regularly authors articles related to antitrust litigation, with a focus on pharmaceutical antitrust matters.

## ASSOCIATES

**ANTHONY ZATKOS** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey and the United States District Court for the District of New Jersey in 2002 and the bar in New York in 2003. He is a graduate of Seton Hall University (B.S., Mathematics 1996) and the Seton Hall University School of Law (J.D. 2002).

Early in his legal career, Mr. Zatkos practiced personal injury and civil rights law in New

22

1022265.2

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

York City, as well as family law in New Jersey. He also served as a contributing writer and editor on The Yudes Family Law Citator, published each year by the New Jersey Institute of Legal Education. Since that time, his focus in practice has been electronic discovery, where Mr. Zatkos has learned the nuances of this growing field. With this experience, he has worked on cases covering a myriad of matters, including pharmaceutical patents, mergers, due diligence, residential mortgage-backed securities, anti-trust, bankruptcy, fraud, contract, and, most recently, class action. Prior to joining the firm, Mr. Zatkos worked directly with firm members on several class-action matters.

**COLLIN J. SCHAFFHAUSER** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey in 2023.  Mr. Schaffhauser graduated from Rutgers University New Brunswick in 2016 with a Bachelor's degree in Political Science and Minors in History and German.  Prior to law school, Mr. Schaffhauser worked as a paralegal handling matters related to debtors' and creditors' rights. Mr. Schaffhauser then obtained his J.D. from Rutgers Law School Newark in 2023.

While in law school, Mr. Schaffhauser was a member of the Rutgers Moot Court Board, the Rutgers Journal of Law and Public Policy, and the National Appellate Advocacy Team. In these endeavors, Mr. Schaffhauser argued before the Honorable Kevin McNulty (U.S.D.J.) and won the 2022 Nathan Baker Mock Trial Competition; wrote a note, "A Restraint of Speech as a Restraint of Trade: How Rediscovering Antitrust's Equitable Origins and Evolution Can Help Protect America's Democracy and Economy," published in the Journal of Law and Public Policy in August 2024; and won the second-best brief and fourth-best oralist awards in the 2023 Touro Law – Law & Religion Appellate Competition. Mr. Schaffhauser also worked at a civil litigation

23

1022265.2

**LITE DEPALMA
GREENBERG &
AFANADOR**

firm during law school and handled contract, employment, and personal injury cases, conducting legal research and drafting legal documents for state and federal courts at both the trial- and appellate-level.

Prior to joining LDGA, Mr. Schaffhauser served as a judicial law clerk to the Honorable Maritza Berdote Byrne, J.A.D., of the Appellate Division of New Jersey Superior Court. Outside of LDGA, Mr. Schaffhauser coaches for the Rutgers Law School Newark National Appellate Advocacy Team and helped coach the winners of the 2024 Touro Law – Law & Religion Appellate Advocacy competition.

**ERIN M. McNAMARA** (Newark Office) is an associate with the firm in our Newark office. She was admitted to the bar in New Jersey in 2023. Ms. McNamara graduated from Boston College in 2020 with Bachelor's degrees in English and Psychology. She then obtained her J.D. from Seton Hall Law School in 2023, where she was a Chancellor Scholarship recipient. During law school, she served as a Mock Trial Board Member and worked as a law clerk at a Plaintiff's personal injury firm in Chatham, New Jersey. Prior to joining LDGA, Ms. McNamara served as a Judicial Law Clerk to the Honorable Rosemary E. Ramsay, P.J. Cv. in the Morris County Superior Court, Civil Division.

24

1022265.2

# EXHIBIT 5



Justice in all its

# DIMENSIONS

## Overview

**DiCello Levitt is a leading complex issues and trial law firm focused on achieving justice in all its dimensions in high-stakes litigation nationwide.** The firm represents corporations, public entities, and individuals harmed by unlawful or deceptive conduct and is known for its trial-first approach, preparing every case as if it will go to verdict.

- Founded in **2017**
- **100+** attorneys
- **$25B+ won** for plaintiffs
- **Appointed to lead** dozens of MDLs

DiCello Levitt is one of the few plaintiffs' firms in the nation with a dedicated Trial Center, where attorneys rigorously test arguments before mock juries to develop advanced trial strategies. The firm's attorneys have extensive experience in every phase of litigation, from pre-suit investigation through trial and appeal, and are frequently appointed to leadership roles in multidistrict litigation, class actions, and mass tort proceedings nationwide.

The firm is consistently recognized by leading legal publications and ranking organizations, including being named a **Plaintiffs' Firm of the Year** and **Trial Innovation Firm of the Year** by *ALM* and *The National Law Journal*, earning top-tier rankings from *Chambers USA* and *Benchmark Litigation*, and receiving repeated national honors for excellence in antitrust, cybersecurity, environmental, and other complex litigation.

## Practice Areas

- Agriculture and Biotechnology
- Antitrust and Competition Litigation
- Civil and Human Rights Litigation
- Class Action Litigation
- Commercial Litigation
- Environmental Litigation
- Labor and Employment Litigation
- Mass Tort Litigation
- Personal Injury
- Privacy, Technology, and Cybersecurity
- Product Liability
- Public Client
- Securities and Financial Products Litigation
- Whistleblower Representation



## Landmark Moments

**A Historic Human Rights Verdict Against a Global Bank**

In a landmark verdict, a federal jury found BNP Paribas liable for financing genocide in Sudan, awarding $20.75 million to the three bellwether trial plaintiffs, paving the way for more than 23,000 class members to pursue billions of dollars in claims, on a classwide basis, against BNP Paribas. DiCello Levitt's trial team, led by Lead Trial Counsel Bobby DiCello, presented evidence showing how the bank's illegal transactions fueled Sudan's campaign of violence, resulting in the first-ever verdict holding a global financial institution accountable for enabling crimes against humanity.

*Kashef, et al. v. BNP Paribas, et al.*, No. 1:16-cv-03228 (S.D.N.Y.)

**The Largest Consumer Data Breach Settlement in History**

DiCello Levitt Partner Amy Keller became the youngest woman ever appointed to lead a nationwide multidistrict litigation in the massive Equifax data breach, which exposed the sensitive personal information of nearly 150 million consumers. Notably, the settlement included a cash fund of up to $505 million, a commitment from Equifax to invest $1 billion in security changes, and a guarantee that Equifax would cover credit monitoring for every single class member.

*In re Equifax Inc. Customer Data Security Breach Litigation*, MDL No. 2800 (N.D. Ga.)

**One of the Most Significant Civil Rights Verdicts in History**

DiCello Levitt Partners Robert F. "Bobby" DiCello, Mark DiCello, and Justin Hawal achieved one of the most significant civil rights verdicts in history when a jury awarded Arnold Black $50 million in a case against the City of East Cleveland—a verdict that has been affirmed by all state and federal courts. Arnold was the victim of brazen police misconduct where, after a routine traffic stop, officers detained, beat, and falsely imprisoned him in a storage locker for four days with no food or bathroom facilities.

*Black v. Hicks*, No. CV-14-826010 (Ohio C.P., Cuyahoga County.)

**Pioneering Multidistrict Litigation Leadership**

DiCello Levitt Partner Diandra "Fu" Debrosse made U.S. legal history by being the first Black woman ever appointed co-lead of a multidistrict litigation. More impressively, she shattered that glass ceiling twice in less than a year. On May 27, 2022, Fu was appointed Plaintiffs' Co-Lead Counsel in a products liability case against two of the world's largest manufacturers of infant formula, Abbott Laboratories and Mead Johnson. The case stems from allegations by parents of premature infants who developed the deadly neonatal condition, necrotizing enterocolitis (NEC), after being fed the defendants' infant formula. Then, on March 2, 2023, Fu was appointed Plaintiffs' Co-Lead Counsel in the multidistrict litigation against L'Oréal, Revlon, and other manufacturers of hair-straightening products marketed primarily to Black and Brown consumers after thousands of women nationwide contracted uterine, ovarian, and endometrial cancer from using these products. This litigation prompted the U.S. Food



and Drug Administration to plan regulatory rulemaking for early 2024 to ban chemical hair straighteners and relaxers.

*In re Abbott Laboratories, et al., Preterm Infant Nutrition Products Product Liability Litigation* MDL No. 3026 (N.D. Ill.); *In re Hair Relaxer Marketing Sales Practices and Products Liability Litigation*, MDL No. 3060 (N.D. Ill.)

**$175 Million Consumer Victory Against General Motors**

After securing a $102.6 million jury verdict in one of the few automotive defect class actions ever tried to verdict, DiCello Levitt achieved a $175 million post-trial settlement for more than 28,000 vehicle owners across four states. The case exposed GM's concealment of a known engine defect and delivered meaningful compensation of more than $3,300 per vehicle—far exceeding their trial damages award on a per-vehicle basis. This verdict and ultimate settlement sets a powerful precedent for consumer justice and post-trial recoveries.

*Siqueiros, et al. v. General Motors LLC*, No. 16-cv-07244 (N.D. Cal)

**Groundbreaking Environmental Litigation Over PFAS Contamination**

DiCello Levitt's environmental litigation team is counsel for several states investigating and litigating claims of widespread pollution from a group of contaminants known as PFAS (per- and poly-fluoroalkyl substances). This group of ubiquitous and harmful contaminants has been used in countless applications, including well-known consumer goods such as Teflon and Scotchgard, thousands of industrial products, and certain firefighting foams (AFFF). DiCello Levitt's litigation is aimed at compelling some of the largest chemical companies in the world to provide the financial resources necessary for the firm's state clients to end the contamination caused by PFAS and AFFF and meaningfully protect public health, natural resources, and the environment.

**Addressing One of the Largest Maritime Disasters in U.S. History**

DiCello Levitt has been retained by the City of Baltimore to launch legal action to address the catastrophic impact of the Francis Scott Key Bridge collapse, one of the largest maritime disasters in U.S. history, with damages estimated at more than $1 billion. Through this engagement, the City will take decisive action to hold accountable all entities responsible for the Key Bridge tragedy—including the owner, charterer, manager/operator, and manufacturer of the MV Dali, as well as any other potentially liable third parties—and to mitigate the immediate and long-term harm caused to Baltimore residents by the disaster.

DiCello Levitt has won more than **$25 billion** for clients.

**A Historic Victory for Thousands of Abuse Survivors**

In one of the most consequential resolutions of institutional abuse in U.S. history, DiCello Levitt attorneys played a key role in achieving a $4 billion settlement for approximately 6,800 survivors of sexual abuse in Los Angeles County juvenile detention centers and foster care facilities. This groundbreaking agreement delivered long-overdue justice and financial redress while compelling meaningful reform within the county's juvenile system. Founding Partner Mark DiCello and Partner Doug Rochen, working in collaboration with a coalition of law firms, helped expose decades of systemic abuse, amplified the voices of thousands of vulnerable individuals, and drove sweeping changes in one of the nation's largest youth detention networks.

# The DiCello Levitt Trial Center

At the DiCello Levitt Trial Center, the firm's elite trial lawyers combine extensive litigation experience with a science-based, multidisciplinary approach to understand, engage, and connect with jurors. By applying its proprietary system to understand jurors' decision-making processes, the Trial Center crafts the winning story.

The Trial Center leads high-stakes trials for DiCello Levitt's clients, wielding advanced strategies to gain an edge over adversaries who cling to traditional trial methods. The center also trains DiCello Levitt's lawyers to continuously improve their litigation strategies, trial preparation, and courtroom presentations.

**Shaping the Future of Trial Science**

The DiCello Levitt Trial Center serves as a training solution for the firm's attorneys to sharpen their skills as they engage in significant and consequential litigation; as a research base for focus groups, mock trials, mediation, and arbitration; and as a platform for litigators to test their case with a science-informed method of trial preparation.

The Trial Center capitalizes on the latest research findings in linguistics, literacy, information processing, and cognitive neuroscience to interpret focus group feedback and craft compelling stories for trial. DiCello Levitt's trial lawyers have led thousands of focus groups in the past decade, including comprehensive studies exploring myriad issues that influence jurors.

**Trial First**

The insights and strategy that DiCello Levitt has developed through the Trial Center have materially enhanced the firm's productivity and effectiveness. The firm's attorneys credit multiple landmark trial outcomes in recent years—including a $175 million post-trial settlement in a class action trial against General Motors and a historic human rights verdict against the global bank BNP Paribas—to the Trial Center's research and testing of hundreds of mock jurors in those cases.

**Powered by Nationally Recognized Trial Lawyers**
The Trial Center is helmed by Trial Team Leader Bobby DiCello and Trial Center Coordinator Ken Abbarno, who collaborate with other talented trial lawyers at DiCello Levitt. The Trial Center's attorneys are among the nation's most sought-after trial lawyers because of their knowledge and experience with the decision-making behavior of contemporary jurors and the art of trial messaging.

DiCello Levitt has received repeated accolades for the Trial Center's innovative accomplishments and contributions to the advancement of trial science, including from *The National Law Journal* and the *New York Law Journal*.

## Leading in Diversity

DiCello Levitt embeds diversity, equity, and inclusion into the fabric of the firm's culture, leadership, and advocacy. The firm believes that excellence in complex litigation is strengthened by varied perspectives, lived experiences, and authentic voices. By fostering an environment where attorneys and staff are empowered to contribute fully and advance on merit, DiCello Levitt ensures that diversity is not aspirational but operational, visible, and integral to how the firm serves its clients.

Across the firm, attorneys exemplify these principles through their leadership and professional achievements:

- Amy Keller, managing partner of DiCello Levitt's Chicago office and chair of the Privacy, Technology, and Cybersecurity Litigation Practice Group, was the youngest woman ever appointed to co-lead a class action and has secured more than $2 billion in settlement relief in recent years.

- Diandra "Fu" Debrosse, managing partner of the Birmingham offices and co-chair of the Mass Torts and Civil and Human Rights Litigation Practice Groups, is the first Black woman appointed to co-lead a multidistrict litigation and is a founding member of Shades of Mass, which promotes the appointment of attorneys of color to leadership roles in national litigation.

- Marisa N. DeMato, head of the firm's U.S. Securities Practice, is a nationally recognized securities litigator and an active leader in organizations advancing inclusion within the pension and investment industries.

- Greg Asciolla, managing partner of the New York office and chair of the Antitrust and Competition Litigation Practice Group, holds leadership roles in national bar organizations that promote LGBTQ+ inclusion within the legal profession.

- David Straite, partner in the Privacy, Technology, and Cybersecurity Practice Group and co-chair of the firm's Artificial Intelligence Working Group, is an advocate for LGBTQ+ rights and a recognized voice in privacy and data governance.

DiCello Levitt also implements deliberate internal practices designed to sustain equity and opportunity. The firm maintains inclusive hiring processes, structured promotion assessments, equitable compensation benchmarking, and firmwide access to professional development and inclusive leadership training. The firm's Diversity, Equity & Inclusion Committee promotes recruitment, retention, mentorship, and advancement initiatives, and senior attorneys work closely with emerging lawyers to prepare them for leadership roles in multidistrict litigations, class actions, and trials.

DiCello Levitt's commitment to diversity also informs the communities we represent. The firm has secured landmark relief for Sudanese refugees in human rights litigation, advocates for Native tribes seeking accountability arising from the federal Indian boarding school program, represents survivors of sexual abuse and trafficking, and supports LGBTQ+ students and asylum seekers pursuing equal protection under the law. Through both its internal structure and its external advocacy, the firm demonstrates that diversity and justice are mutually reinforcing commitments.

# DL Cares

DL Cares is DiCello Levitt's charitable foundation dedicated to expanding access to justice in the United States and around the world. Rooted in the firm's conviction that the civil justice system is a powerful vehicle for protecting people and promoting accountability, DL Cares partners with nonprofit organizations working to close the justice gap for underserved and marginalized communities.

DL Cares' first partnership is with Justice Defenders, a nonprofit organization working in Kenya and Uganda to train incarcerated people and prison officers as paralegals and lawyers. Through legal education and practical training, Justice Defenders equips individuals within the justice system to provide free legal advice, representation, and advocacy to thousands who would otherwise lack access to the courts.

Through DL Cares, DiCello Levitt reinforces its mission to use the law not only to secure results in the courtroom but also to help change lives. By supporting organizations dedicated to fairness, accountability, and legal empowerment, DL Cares advances justice.

# Practice Areas

## Agriculture and Biotechnology Litigation

Leveraging its deep knowledge of agricultural biotechnology and complex litigation, DiCello Levitt has built an impressive track record of successfully representing plaintiffs in nationwide commercial and class action lawsuits against large corporate conglomerates. The firm has led several of the largest biotechnology class actions in U.S. history, recovering billions of dollars in compensation for damage inflicted and to cover the effects of future damage. While securing landmark settlements on behalf of its clients, DiCello Levitt has pioneered legal strategies in the agriculture and biotechnology space, including a game-changing model to measure crop contamination damages, that has since become the modern industry standard.

**Representative Matters**

### *In re Genetically Modified Rice Litigation*
DiCello Levitt attorneys achieved aggregate settlements exceeding $1.1 billion for all U.S. long-grain rice farmers as Co-Lead Counsel in the biotechnology multidistrict litigation against Bayer Crop Science for its contamination of the U.S. rice supply with unapproved, genetically modified rice seed traits.

### *In re StarLink Corn Products Liability Litigation*
DiCello Levitt attorneys obtained a record $110 million nationwide settlement for all U.S. corn farmers as Co-Lead Counsel in the biotechnology multidistrict litigation against Aventis CropScience and Garst Seed Company for their contamination of the U.S. corn supply with genetically modified seed traits. The plaintiffs' leadership team devised an innovative damages model that is now used in every crop contamination case.

### *In re Imprelis Herbicide Marketing, Sales Practices, and Products Liability Litigation*
DiCello Levitt attorneys reached a nearly $600 million settlement for homeowners, golf course operators, and other property owners as Co-Lead Counsel in this nationwide class action lawsuit against DuPont, alleging its turf herbicide, Imprelis, killed millions of trees and other nontargeted vegetation and that DuPont knew or should have known its dangers.

## Antitrust and Competition Litigation

DiCello Levitt's Antitrust and Competition Litigation Practice Group continuously leads the most significant private antitrust litigations in the country and has done so over the last several decades. DiCello Levitt's antitrust attorneys are nationally recognized for successes in challenging global anticompetitive conduct with their singular focus on getting businesses and consumers economic justice by righting the anticompetitive wrongs in the marketplace. The practice's sophisticated client base includes small businesses, large corporations, public pension funds, health and welfare funds, municipalities and related quasi-government agencies, and individual consumers. DiCello Levitt's antitrust lawyers pursue class,

competitor, and individual (opt-out) claims involving all types of anticompetitive conduct, including price-fixing and market allocation conspiracies among competitors and monopolization of markets by industry giants.

DiCello Levitt's Antitrust and Competition Litigation Practice Group has repeatedly garnered national and international recognition, including Band 1 top honors from *Chambers USA*.

**Representative Matters**

### Borozny v. RTX Corp., Pratt & Whitney Division, et al.

DiCello Levitt served as Co-Lead Counsel and secured final approval of $60.5 million in settlements in a class action alleging that RTX Corp.'s Pratt & Whitney division and several aerospace engineering contractors engaged in an illegal no-poach agreement to restrict competition for skilled labor by avoiding hiring each other's employees in order to suppress wages. The settlement benefits thousands of aerospace workers employed from 2011 to 2025.

### Fusion Elite All Stars v. Varsity Brands LLC

DiCello Levitt served as Co-Lead Counsel and obtained a $43.5 settlement with Varsity Brands, other Varsity entities, and the United States All Star Federation (USASF) to resolve an antitrust class action over Varsity's monopolization of the All Star Cheer events market. In addition to the cash payments, Varsity consented to significant conduct relief aimed at curbing and unwinding its anticompetitive behavior.

### In re European Government Bonds Antitrust Litigation

DiCello Levitt served as Co-Lead Counsel in a class action alleging that several global financial institutions manipulated prices in the $8 trillion market for European government bonds. We achieved settlements with all ten defendants for a total of $120 million. The litigation was named the third most complicated class action asset recovery opportunity of 2024 by global financial technology company Broadridge.

### In re Novartis and Par Antitrust Litigation

DiCello Levitt served as Lead Counsel for end-payors and secured a $30 million settlement in a class action alleging that a brand and generic drug manufacturer entered into an anticompetitive pay-for-delay agreement for the antihypertensive drug Exforge.

### In re Platinum and Palladium Antitrust Litigation

DiCello Levitt served as Co-Lead Counsel for plaintiffs who alleged that several major domestic and foreign precious metals trading institutions manipulated the futures markets for platinum and palladium. After eight years of litigation and two dismissals by the lower



court, the plaintiffs won their appeal in the Second Circuit, handing a significant victory for investors seeking redress for anticompetitive conduct affecting their platinum and palladium futures investments. As a result, this victory led to a global settlement totaling $20 million.

### *In re Manufactured Home Lot Rents Antitrust Litigation*

DiCello Levitt serves as Co-Lead Counsel in this class action alleging that the defendants—the nation's largest provider of mobile home data, Datacomp, and several large owners of manufactured home communities—conspired to raise the prices of mobile home lot rents by sharing nonpublic, competitively sensitive information through reports published by Datacomp. We investigated this proprietary case for nearly nine months before filing the first action in the nation.

## Civil and Human Rights Litigation

DiCello Levitt is recognized nationally as a leader in the field of civil and human rights litigation. The firm's Civil and Human Rights Litigation Practice Group represents people who have suffered racial, gender, and religious discrimination, police misconduct and brutality, sexual harassment and assault, human trafficking, and other violations of individuals' civil and human rights. DiCello Levitt's visionary advocates have litigated—and won—some of the most significant civil and human rights cases in modern history, including the landmark trial in *Kashef v. BNP Paribas*, which resulted in a $20.75 million jury verdict holding an international bank liable for financing genocide in Sudan, and B*lack v. Hicks*, a case of shocking police brutality and corruption that resulted in one of the largest civil rights verdicts for a single person in American history. The firm's civil rights attorneys are dedicated to achieving justice for those whose rights have been violated, and they have the experience and expertise to take on the powerful individuals, corporations, and governmental institutions who violate those rights.

In recognition of the firm's outstanding work in high-stakes civil rights litigation, DiCello Levitt was named a finalist in *The National Law Journal*'s 2023 Elite Trial Lawyers Awards in the civil rights category, and several of the firm's attorneys were awarded Public Justice's prestigious Trial Lawyer of the Year award in 2021 for their successful prosecution and trial in the *Black v. Hicks* case.

**Representative Matters**

### *Jane Does 1-57 v. Peter Nygard*

DiCello Levitt represents victims of the largest individual international sex trafficking lawsuit in U.S. history, which alleges that Peter Nygard, the Nygard Companies, and his employees committed a decades-long conspiracy to rape, sexually assault, and traffic hundreds of women and girls. Due in large part to the efforts of DiCello Levitt, Peter Nygard has since been convicted in a criminal court of multiple sex crimes.

### Jane Doe 1, et al. v. County of Los Angeles

In one of the most consequential resolutions of institutional abuse in U.S. history, DiCello Levitt attorneys played a key role in achieving a $4 billion settlement for approximately 6,800 survivors of sexual abuse in Los Angeles County juvenile detention centers and foster care facilities. This groundbreaking agreement delivered long-overdue justice and financial redress while driving meaningful reform within the county's juvenile system. Founding Partner Mark DiCello and Partner Doug Rochen, working with a coalition of law firms, helped expose decades of systemic abuse and amplify the voices of thousands of survivors.

### Marquetta Williams, et al. v. City of Canton, Ohio, et al.

DiCello Levitt represents the family of James Williams in a civil rights lawsuit alleging excessive force after a Canton police officer fatally shot the unarmed 46-year-old through a wooden fence without warning. In a significant appellate victory, the Sixth Circuit denied qualified immunity and held that a jury must decide whether the officer's use of deadly force violated clearly established constitutional law, allowing the family's claims to proceed to trial.

### Foster v. Pickens County, et al.

DiCello Levitt represents the family of former NFL player Glenn Foster Jr. in a wrongful death lawsuit alleging that Pickens County law enforcement officers used excessive force and denied medical care while he was in custody. In a significant ruling, a federal court allowed the family's claims to proceed, enabling them to pursue accountability for Foster's death following alleged repeated use of force and failure to intervene.

### Jada Walker, et al. v. City of Akron

DiCello Levitt represented the family of Jayland Walker in a civil rights lawsuit alleging excessive force and unconstitutional policing after eight Akron police officers fired 94 rounds during a 2022 traffic stop, killing the unarmed 25-year-old. The firm secured a $4.85 million settlement with the City of Akron and helped drive reforms to the city's police vehicle pursuit policy following an ongoing review of law enforcement practices.

### Keisha Acton, et al. v. Allister Adel, et al.

In one of the largest settlements ever paid by a prosecutor's office for misconduct of this kind, DiCello Levitt secured a $6 million resolution on behalf of more than 20 peaceful protesters and a photojournalist who were wrongfully arrested and charged as members of a fabricated criminal street gang during 2020 public demonstrations in Phoenix. The civil rights lawsuit alleged that prosecutors pursued serious felony charges based on exaggerated and misrepresented evidence presented to a grand jury; all criminal charges against the plaintiffs were ultimately dismissed. The resolution included prosecutorial reform, including the disbandment of Maricopa County's First Responder Bureau.



*Sonya Williams v. City of Raleigh, et al.*
DiCello Levitt secured a nearly $1 million settlement for the family of Darryl Tyree Williams, a 32-year-old man who died after Raleigh police officers repeatedly used a Taser on him, including while he was restrained on the ground. The lawsuit alleged that officers used unnecessary and excessive force and continued to shock Williams after he was no longer a threat, resulting in one of the largest known settlements by the City of Raleigh in a police use-of-force case.

## Class Action Litigation

DiCello Levitt's Class Action Litigation Practice Group leads some of the largest class actions in the U.S. and consistently delivers innovative and meaningful results for class members. The practice group has recovered billions of dollars in damages for injured class members and clients harmed by corporate entities and executives from many of the world's most powerful corporations in a wide range of industries, including automotive manufacturers, technology companies, financial institutions, and pharmaceutical corporations.

DiCello Levitt's attorneys have decades of experience in class actions involving product liability, antitrust, securities and financial services, environmental law, biotechnology, privacy and cybersecurity, and public clients. They have achieved landmark recoveries for classes harmed by defective products, unfair competition, faulty pharmaceuticals and medical devices, data and security breaches, and other instances of corporate misconduct. The firm's attorneys are frequently named lead or co-lead counsel in large, consequential multidistrict litigations, and they have repeatedly triumphed at the appellate level, including in high-profile appeals that have created new laws and are often cited as precedent.

DiCello Levitt has been honored by the leading industry rankings organizations for its success in class action litigation. In 2021, *Benchmark Litigation* named DiCello Levitt a top plaintiffs' firm nationwide—one of only 12 firms to be recognized—and the firm has received the top honor every year since. *Chambers USA* has repeatedly ranked the firm among the leading plaintiffs' litigation firms nationwide and for its outstanding work in antitrust litigation, and *The Legal 500* has ranked DiCello Levitt for its achievements in product liability, mass tort, and class action litigation.

**Representative Matters**

*Alaska Electrical Pension Fund v. Bank of America Corp.*
DiCello Levitt attorneys served as Class Counsel and secured $504.5 million in settlements from major dealer banks to resolve claims alleging a conspiracy to manipulate ISDAFIX, a key benchmark for valuing various interest rate derivatives.

**NCUA Residential Mortgage-Backed Securities Actions**
DiCello Levitt attorneys served as Lead Counsel in more than a dozen high-profile securities actions that the National Credit Union Administration (NCUA) brought against international investment banks for alleged misrepresentations made to investors in connection with



subprime-backed residential mortgage securities. Those actions were resolved through settlements totaling more than $4.5 billion.

### *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation*

DiCello Levitt secured a $135 million settlement—a landmark result in the trucking industry—as Co-Lead Counsel for a class of truck owners and lessees in this multidistrict class action lawsuit alleging that Navistar's model year 2011–2014 vehicles were equipped with defective MaxxForce diesel engines.

### *In re Honda Idle Stop Litigation*

DiCello Levitt represents consumers in class actions against Honda Motor Co. and its American subsidiary alleging that certain Honda and Acura vehicles contain a defect in their automatic idle-stop systems that can cause engines to stall and fail to restart, leaving vehicles unexpectedly inoperable. The firm secured class certification for thirteen statewide classes and largely defeated Honda's motion for summary judgment before trial, ultimately reaching a nationwide settlement providing injunctive relief valued at approximately $269 million.

### *James S. Powell, II, et al. v. General Motors LLC*

DiCello Levitt was appointed Lead Counsel, alongside three other firms, in a consolidated nationwide class action involving catastrophic engine failures in General Motors vehicles equipped with the 6.2-liter L87 V8 engine. The litigation brings together twelve actions filed on behalf of vehicle owners who experienced low-mileage engine failures allegedly caused by a defect in GM's 6.2-liter engines.

### *In re Eaton Fire Litigation*

DiCello Levitt represents residents and property owners affected by the devastating Eaton Fire in Los Angeles, alleging that Southern California Edison Company's failure to maintain its electrical grid and de-energize power lines during known fire weather conditions caused the wildfire. The firm filed a class action on behalf of thousands of individuals and entities who suffered economic losses or property damage and was later appointed Interim Class Counsel to co-lead all proposed class actions seeking damages from the disaster, one of the most destructive wildfires in California history.

## Commercial Litigation

DiCello Levitt's Commercial Litigation Practice Group has won billions of dollars in verdicts and settlements for clients in commercial disputes. With a focus on bet-the-company and high-stakes litigation, DiCello Levitt's commercial litigators represent clients affected by commodities traders' market manipulation and price fixing by corporate executives, corporate ownership disputes, breaches of contract, and tortious interference claims, as well as a myriad of litigation stemming from a range of conduct leading to economic damages. The firm's driving objective is winning, measured not only by monetary compensation but also in the broad context of clients' overarching business goals. The firm works with clients to map out a successful strategy based on damages, market positioning, public relations



considerations, and long-term profit and loss outlook. Leveraging the same innovative approach applied in court, the Commercial Litigation Practice Group collaborates with clients to obtain the best possible results for their businesses.

**Representative Matters**

**Ownership Dispute Among the Principals of Ivani LLC**
DiCello Levitt represented three of the four owners of a technology company who were denied their contractual ownership and management rights. The key owners are now able to advance the progress of their burgeoning technology company.

***Green Plains Trade Group v. Archer Daniels Midland Company***
DiCello Levitt represents one of the largest ethanol producers in the world against Archer Daniels Midland Company (ADM) for illegally scheming to manipulate the U.S. ethanol market as both a seller and a trader of the same commodity. The scheme made it appear as though there was an oversupply of ethanol in the markets, and ADM's commodities traders allegedly acquired large financial derivative contracts that increased in value as the price of ethanol plummeted. DiCello Levitt's client retained the firm to vindicate their rights and recover their losses stemming from ADM's conduct.

***SitNet LLC v. Meta Platforms Inc***.
DiCello Levitt represents a patent holder who brought an action against Facebook's parent company, Meta Platforms Inc., alleging that Facebook knowingly infringed the plaintiff's patents for technology relating to situational networking, a critical component of targeted advertising.

***Norwegian Air Shuttle ASA v. The Boeing Company***
DiCello Levitt represented Norwegian Airlines in prosecuting economic loss and equitable claims exceeding $1 billion against The Boeing Company and Boeing Commercial Services Europe Limited in an action arising from Boeing's gross negligence, fraud, and breach of contract relating to Boeing's 737 MAX and 787 Dreamliner aircraft. The firm's attorneys secured a confidential settlement in this matter.

## Environmental Litigation

DiCello Levitt's Environmental Litigation Practice Group is recognized among the best in the United States for successfully representing people, businesses, and communities, as well as state and local governments, in lawsuits against some of the largest companies in the world for polluting the environment and endangering human health. DiCello Levitt is frequently chosen by state and local governments to lead groundbreaking environmental contamination cases and is committed to helping people who have suffered exposure to harmful pollution, whether from an acute, catastrophic event or through years of continuous air, water, and soil contamination in their towns and neighborhoods. Known for their efficiency and effectiveness in navigating the complexities of environmental, health, and safety regulations, DiCello Levitt's attorneys help environmentally conscious corporate



clients protect the environment through compliance with federal laws. The firm also guides businesses in the development of safety and health programs and assists companies with air, water, and waste permitting applications.

DiCello Levitt was named *The National Law Journal*'s 2023 **Environmental Protection Law Firm of the Year**.

**Representative Matters**

**Chemical Contaminant Litigation As Special Assistant Attorneys General**
DiCello Levitt has been retained by State Attorneys General to assist their states in multibillion-dollar fights against the manufacturers of PFAS and aqueous film-forming foam (AFFF) and the manufacturers of PCBs for contaminating the states' air, water, and soil. The amount of contamination at issue makes these matters among the largest environmental pollution cases in U.S. history. DiCello Levitt was selected after a highly competitive process involving, at least in one state, fifteen competing proposals submitted by law firms across the United States.

**Chemtool Fire Class Action Litigation**
DiCello Levitt served as Co-Lead Counsel in the Rockton, Illinois community's class action against Chemtool Incorporated following a massive fire and explosions that burned for days at Chemtool's chemical plant. The catastrophic event required the evacuation of the surrounding community and contaminated properties for miles around the plant. In September 2024, the court granted final approval of a $94.5 million class action settlement on behalf of Illinois property owners and tenants within three miles of the facility

**Union, Illinois, Toxic Exposure Cases**
DiCello Levitt represents more than a dozen residents and former residents of Union, Illinois, who have been diagnosed with devastating illnesses after being exposed to carcinogenic chlorinated solvents dumped into the village's environment by nearby factories for decades.

**Climate Change and Deception Litigation**
DiCello Levitt represents multiple cities and counties in lawsuits against major oil companies and their industry trade association, the American Petroleum Institute, alleging that these industry giants promoted and profited from deceptive campaigns to discredit climate science and mislead the public about the role their products play in driving climate change. DiCello Levitt seeks to hold these companies financially accountable for the damage caused by climate change.

## Labor and Employment Litigation

DiCello Levitt's Labor and Employment Litigation Practice Group represents people harmed by the discriminatory and illegal actions of their employers. The firm investigates, litigates, and exposes systemic workplace abuses, holds companies responsible, and ensures fair practices in recruitment, hiring, promotion, and pay. DiCello Levitt's labor and employment

litigators fight for employees who experience discrimination in the workplace based on race, gender, ethnicity, sexual orientation, or religion. They assist women who are denied pay equal to their male peers; pregnant women who are terminated or passed over for promotions; and workers subjected to hostile workplaces, sexual harassment, and disparate treatment. The practice group's extensive experience enables DiCello Levitt to successfully challenge arbitration agreements, noncompete agreements, and other employment contracts and to enforce workers' rights under collective bargaining agreements.

DiCello Levitt understands the risks workers face when they speak out against their employers and knows how to safeguard against retaliation. Not only do the attorneys at DiCello Levitt protect employees' positions and recover compensation for their losses, but they also fight to change the policies and practices that allow labor abuses to take place while ensuring that similar behavior does not occur in the future.

## Representative Matters

### *Waggoner, et al. v. VSE Corp., et al.*
DiCello Levitt negotiated a seven-figure settlement on behalf of a certified collective of unionized workers based on federal contractors' failure to properly pay the firm's clients during rest breaks while working at the Red River Army Depot in Texarkana, Texas.

### *Hodge, et al. v. North Carolina Department of Adult Correction*
DiCello Levitt serves as Co-Lead Counsel in a wage and hour class action on behalf of more than 16,000 North Carolina correctional officers alleging that the State failed to pay for all hours worked, including pre- and post-shift activities critical to maintaining prison safety and security. The firm secured a sweeping summary judgment ruling establishing the State's liability, with the court finding that the plaintiffs have established they are working at all times spent inside prison facilities and must be compensated accordingly.

### *McDaniel, et al. v. Wisconsin Department of Corrections*
DiCello Levitt serves as Co-Lead Counsel in a wage and hour class action alleging that the State of Wisconsin failed to pay correctional officers for all hours worked inside prison facilities. In a major victory, the Wisconsin Supreme Court reversed an appeals court decision and ruled that correctional officers should be granted class action status to pursue their claims.

### Confidential Individual Settlement
DiCello Levitt negotiated a favorable settlement for a woman who was terminated in the hospitality industry after disclosing to the company that she was pregnant.



**Confidential Group Settlements**

DiCello Levitt has achieved numerous multimillion-dollar settlements on behalf of groups of employees and former employees of large companies, international corporations, educational institutions, and other entities who courageously stood up to racial, gender, and other forms of discrimination in all aspects of the employment relationship, from hiring to compensation, promotion, layoff, and termination.

## Mass Tort Litigation

DiCello Levitt's nationally recognized and award-winning attorneys leverage their extensive experience to represent plaintiffs in mass torts involving faulty medical devices, pharmaceuticals, cosmetics, and other illegal practices by defendants in the automotive and biotechnology sectors, among others. DiCello Levitt's Mass Tort Litigation Practice Group also leads cases seeking remediation and financial reparation from global companies responsible for environmental pollution, contamination, and endangering human health. Representing individuals, businesses and investors, municipalities, and State Attorneys General, DiCello Levitt's attorneys have recovered billions of dollars for clients across the United States and effected corporate and legislative changes that protect the safety of all consumers.

DiCello Levitt has received national acclaim for its successful leadership and resolution of mass injury cases and has consistently led the charge on some of the largest such cases in U.S. history, repeatedly getting appointed to leadership positions—including groundbreaking appointments to some of the most diverse plaintiffs' teams ever—by federal judges across the country.

**Representative Matters**

***In re Hair Relaxer Marketing Sales Practices and Products Liability Litigation***
DiCello Levitt serves as Co-Lead Counsel representing thousands of women who have developed uterine, ovarian, and endometrial cancer from using chemical hair relaxers manufactured by L'Oréal, Revlon, and other hair relaxer manufacturers. DiCello Levitt's attorneys filed the first hair relaxer lawsuit and continue to be a leading force in this significant litigation.

***Camp Lejeune Water Litigation v. United States of America***
DiCello Levitt represents thousands of military members and their families who suffered catastrophic injuries and death from the toxic water supply at Camp Lejeune.

***In re Paraquat Products Liability Litigation***
DiCello Levitt serves on the Plaintiffs' Executive Committee of the multidistrict litigation on behalf of thousands of farmers and other licensed applicators—who developed Parkinson's

disease from using the herbicide paraquat—against defendant manufacturers Chevron and Syngenta.

### *Glucagon-like Peptide-1 Receptor Agonists (Glp-1 Ras) Products Liability Litigation*
DiCello Levitt serves on the Plaintiffs' Leadership Committee of the multidistrict litigation against drugmakers Novo Nordisk and Eli Lilly, pursuing damages arising from the severe health risks allegedly caused by Ozempic and similar drugs, including intestinal obstruction, gastroparesis, and other acute gastrointestinal injuries.

### *In re Tepezza Marketing, Sales Practices, and Products Liability Litigation*
DiCello Levitt serves on the Plaintiffs' Executive Committee in the multidistrict litigation against Horizon Therapeutics and represents thousands of plaintiffs who suffered hearing impairment, including complete hearing loss, after taking the prescription drug Tepezza.

### *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*
DiCello Levitt represents thousands of young plaintiffs who have suffered acute injuries because of the defendants' wrongful actions in purposely creating and marketing addictive and defective social media applications. The plaintiffs seek damages against Meta, Snap, ByteDance, and Google.

### *In re Baby Food Products Liability Litigation*
DiCello Levitt represents thousands of children harmed by the defendants' baby food products that were found in a U.S. government investigation to be highly contaminated with heavy metal toxins, including arsenic, lead, cadmium, and mercury. The plaintiffs seek damages against baby food manufacturers and distributors Walmart Inc., Gerber Products Co., and four other defendants, alleging that their products are contaminated with toxic metals, causing infants to develop autism spectrum disorder and other severe health conditions.

## Privacy, Technology, and Cybersecurity

DiCello Levitt's Privacy, Technology, and Cybersecurity Practice Group includes award-winning attorneys and skilled technologists who routinely represent consumers and public clients against some of the largest corporations in the world. DiCello Levitt represents people and businesses affected by major data breaches and wrongful use of their private information. The firm's attorneys have played leading roles in some of the largest data breach, privacy, and technology settlements in the United States, winning significant motions and creating new legal theories and damages models that have been cited in numerous cases across the country.

A first-of-its-kind group with both a dedicated data breach section and privacy section, DiCello Levitt's Privacy, Technology, and Cybersecurity Practice Group has been named *The National Law Journal*'s Practice Group of the Year and is the only law firm to be recognized

by *Law360* for three consecutive years as Cybersecurity and Data Privacy Practice Group of the Year.

**Representative Matters**

### *In re Facebook Internet Tracking Litigation*

DiCello Levitt achieved a substantial settlement on behalf of a class of consumers against Facebook, alleging that Facebook inappropriately collected user data even after users logged out of their accounts. The landmark case established new circuit court precedent that personal information has financial value, and the $90 million settlement included a first-of-its-kind nationwide injunction requiring deletion of the at-issue data that the press hailed as a "watershed moment" in data privacy.

### *Calhoun v. Google*

DiCello Levitt co-leads a data privacy action brought by Google Chrome users whose personally identifiable information (PII) was collected without their consent while not synced with a Google account, in violation of express contractual privacy promises. In August 2024, in a landmark opinion, a unanimous panel of the Ninth Circuit rejected Google's "consent" defense and remanded it to the district court for trial, pending class certification. For this victory, the team was recognized as *Law360*'s "Legal Lions of the Week."

### *Kolstedt, et al v. TMX Finance Corporate Services Inc.*

DiCello Levitt served as Co-Lead Counsel in a nationwide data privacy class action against TMX Finance following a data breach that compromised the personal information of approximately 4.8 million customers, including Social Security numbers, financial account information, and other sensitive data. The firm secured a $42.5 million settlement providing cash payments and debt relief for affected borrowers, along with commitments by TMX to implement enhanced cybersecurity measures.

### *In re LastPass Data Security Incident Litigation*

DiCello Levitt was appointed as Co-Lead Counsel representing millions of consumers in litigation arising from a data breach that exposed LastPass customers' password vault backups. The firm negotiated a landmark settlement that provides significant monetary, injunctive, and in-kind relief to the class, including a first-of-its-kind cryptocurrency theft claims process that enables class members who suffered crypto losses to recover up to $900,000 through a streamlined, cost-efficient process without the need to retain their own counsel.



### In re Consumer Vehicle Driving Data Tracking Collection

DiCello Levitt represents plaintiffs in a multidistrict litigation alleging that General Motors, OnStar, LexisNexis Risk Solutions Inc., and Verisk Analytics Inc. collected and shared sensitive consumer driving data without adequate disclosure or consent. The complaint alleges that the defendants used data such as acceleration, braking, speed, distance traveled, and vehicle identification numbers to track drivers, resulting in increased auto insurance rates and violations of consumer protection and wiretap laws.

### In re Snowflake Inc. Data Security Breach Litigation

DiCello Levitt serves as Co-Lead Counsel in a multidistrict "hub-and-spoke" data breach litigation involving Snowflake and other major companies, including AT&T, Neiman Marcus, Ticketmaster, and Live Nation, arising from breaches affecting hundreds of millions of individuals. The firm has secured significant victories, including settlements with several defendants and defeating motions to compel arbitration and dismiss, positioning the case to advance novel theories of liability in data security litigation.

## Product Liability

When corporations choose their profits over the safety of their customers and the public, DiCello Levitt will act. The firm's product liability attorneys rely on a scientific approach and decades of trial experience to achieve justice for its clients. DiCello Levitt represents individuals, businesses, State Attorneys General, municipalities, and other public clients in individual lawsuits, mass torts, and class actions. Taking on industry goliaths like Abbott, Syngenta, Volkswagen, General Motors, Apple, and Intel, DiCello Levitt has secured more than $20 billion in verdicts and settlements for clients in some of the most significant and well-known product liability cases in the country. The firm's attorneys have successfully wielded their skills on behalf of injured parties in cases involving faulty medical devices, automotive and airplane defects, and other dangerous and defective products. By aggressively pursuing and rooting out corporate malfeasance, DiCello Levitt creates positive and lasting social change—in addition to winning compensation for those already injured.

**Representative Matters**

### In re General Motors LLC Ignition Switch Litigation

DiCello Levitt attorneys achieved a $121.1 million settlement as a member of the Plaintiffs' Executive Committee and as Settlement Allocation Counsel for the nationwide class of vehicle owners against General Motors for damages from the defective ignition switches installed in its vehicles.

### Simerlein, et al. v. Toyota Motor Corporation, et al.

DiCello Levitt obtained a $40 million nationwide settlement for owners and lessees of 2011-2018 Toyota Sienna minivans with malfunctioning power sliding doors. The firm's attorneys

worked with Toyota to create a program to provide needed service and reimburse out-of-pocket repairs for the power sliding doors.

### In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation

DiCello Levitt attorneys served as counsel on a case that ended in a $17 billion recovery against Volkswagen, Audi, and Porsche for defrauding consumers who believed they were buying vehicles with "clean diesel" engines. Leadership in the case was referred to as the "class action dream team."

### Palmieri v. Intervet Inc. d/b/a Merck Animal Health

DiCello Levitt represents a class of plaintiffs against Merck Animal Health for failing to adequately warn pet owners that its flea and tick medication can cause neurological side effects such as seizures.

### Commissioners of Public Works of the City of Greenville, South Carolina v. United States Pipe and Foundry Company LLC, et al.

DiCello Levitt serves as Lead Counsel representing Greenville Water in a lawsuit against U.S. Pipe and its distributors over defective ductile iron pipes installed in the utility's public water system. The complaint alleges that the pipes failed to meet industry standards due to a manufacturing defect, causing corrosion, deterioration of water quality, and damage to public infrastructure.

## Public Client

When corporations harm the public interest through deceptive, dishonest, or dangerous business practices, DiCello Levitt assists state and local governments in recovering the public's damages, penalizing corporate wrongdoing, and enjoining future harm. DiCello Levitt's Public Client Practice Group has worked alongside government attorneys and investigators in numerous high-profile cases and has a deep understanding of the public client perspective. When DiCello Levitt works with public clients, the firm maintains an unwavering focus on what is best for them today, tomorrow, and years into the future. DiCello Levitt's attorneys approach their work as a joint venture, where they provide support through active, ongoing collaboration while drawing on their own significant legal, scientific, and technological resources to aggressively pursue justice and bring about meaningful social change.

**Representative Matters**

### State of New Mexico, ex rel. Hector H. Balderas v. Volkswagen Group of America

DiCello Levitt represented the State of New Mexico against Volkswagen, Audi, and Porsche in litigation arising from the automakers' sale of vehicles with "defeat devices" that the manufacturers installed to evade emissions standards. DiCello Levitt achieved a settlement per vehicle that far exceeded the damages any other state received in related litigation.

### *State of New Mexico v. Takata Corporation, et al.*

DiCello Levitt obtained more than $25 million on behalf of the State of New Mexico against Honda, Ford, and other automobile companies for the marketing and sale of vehicles with Takata airbag inflators susceptible to rupture and capable of causing death and severe injury.

### *State of New Mexico, ex rel. Hector H. Balderas v. Solvay Pharmaceuticals, et al.*

DiCello Levitt secured a $24 million settlement on behalf of the State of New Mexico in an action relating to the deceptive marketing of a testosterone therapy supplement as a "cure" for aging men.

### *People of the State of California v. Kraft Heinz Company Inc., et al.*

DiCello Levitt represents the City of San Francisco in a first-of-its-kind lawsuit against major food manufacturers—including Kraft Heinz, Mondelez, Coca-Cola, PepsiCo, General Mills, Nestlé USA, Kellogg, Mars, and ConAgra—alleging that these corporations engineered and marketed ultra-processed foods designed to be addictive despite having little nutritional value. The complaint seeks to enjoin deceptive marketing practices and secure restitution and civil penalties, aiming to hold defendants accountable for contributing to widespread adverse health outcomes and a public health crisis.

### PFAS Litigation on Behalf of the States of Michigan and Illinois

The States of Michigan and Illinois retained DiCello Levitt in their multibillion-dollar fights against the manufacturers of the "forever chemicals" known as PFAS for contaminating the states' air, water, and soil. The amount of contamination at issue makes these matters among the largest environmental pollution cases in U.S. history.

### Litigation on Behalf of Baltimore City, Maryland

DiCello Levitt represents the City of Baltimore in multiple high-impact actions addressing corporate misconduct affecting public health, safety, and economic stability. These matters include claims arising from the collapse of the Francis Scott Key Bridge, litigation against Philip Morris International and Swedish Match for allegedly marketing Zyn nicotine pouches to minors through deceptive practices, and a lawsuit against DraftKings and FanDuel alleging the companies exploit individuals with gambling disorders through targeted inducements and unfair practices. The firm also represents Baltimore in groundbreaking actions against X Corp. and xAI over the alleged generation and dissemination of non-consensual sexualized deepfake content through the Grok AI system and against major social casino operators for allegedly operating illegal online gambling platforms disguised as lawful sweepstakes in violation of consumer protection laws.

## Securities and Financial Products Litigation

DiCello Levitt's Securities and Financial Products Litigation Practice Group has worked on—and won—some of the highest-profile securities actions ever filed, including cases against Enron, AOL/Time Warner, BP, Pfizer, Petrobras, Valeant and Volkswagen, as well as the $1 billion securities class action against Merck & Co. Inc. over alleged misrepresentations about the safety of its drug Vioxx. Many of DiCello Levitt's attorneys have worked for the U.S.



Department of Justice, prosecuting financial crimes such as those arising from the residential mortgage-backed securities crisis. Collaborating with a team of e-discovery specialists, investigators, and forensic accountants with federal and state law enforcement experience, the Securities and Financial Products Litigation Practice Group is quick to grasp complex structured finance issues, from mortgage-backed and asset-backed collateralized debt obligations to credit-default swaps and credit-linked notes. When DiCello Levitt suspects financial misconduct, the firm secures serious recoveries for its clients.

DiCello Levitt was named one of the 2023 **Top Boutiques** by the *Daily Journal* in recognition of its leadership in "huge and international" securities litigation matters and legal excellence in the state of California.

**Representative Matters**

### *Kempen International Funds, et al. v. Syneos Health Inc., et al.*
DiCello Levitt serves as Lead Counsel in a national securities class action against Syneos Health Inc. and its former executives. The lawsuit alleges that Syneos made misleading statements about the collapse of its new business and nearly $3 billion in uncollectable receivables and, as a result, defrauded purchasers of Syneos common stock. The court largely denied the defendants' motion to dismiss, allowing the case to proceed to discovery.

### *Saleh v. AstraZeneca PLC, et al.*
DiCello Levitt serves as Lead Counsel in a securities class action against AstraZeneca and certain of its current and former executives, arising out of allegations that AstraZeneca failed to disclose that it was embroiled in a widespread insurance fraud investigation in China, ultimately resulting in the detention of the AstraZeneca China President.

### *In re Avantor Inc. Securities Litigation*
DiCello Levitt serves as Co-Lead Counsel in this securities class action against Avantor and certain of its senior executives. The lawsuit arises out of allegations that Avantor concealed that it had severely underinvested in its supply chain infrastructure, inventory management systems, and customer service leading to customer attrition and materially overstated goodwill in connection with its acquisition of VWR Corporation.

### *Gehring, et al. v. American Portfolios Advisors Inc., et al.*
DiCello Levitt serves as Co-Lead Counsel and represents a class of account holders whose cash was automatically swept into low interest-bearing accounts at Osaic. The action arises out of allegations that various Osaic entities breached their fiduciary duties and contractual obligations to their customers through their cash sweep programs.

### *Devlin v. Equitable Financial Life Insurance Company*
DiCello Levitt serves as Lead Counsel on behalf of hundreds of thousands of public school teachers and other employees who invested in EQUI-VEST variable annuities through retirement plans in a securities class action against Equitable and certain of its executives.



The lawsuit alleges that Equitable misrepresented the fees and expenses being charged on EQUI-VEST annuities.

### Smith v. F5 Inc., et al.

DiCello Levitt was appointed Lead Counsel in this securities class action against F5 and certain of its senior executives. The lawsuit arises out of allegations that F5 misled investors about the strength of its cybersecurity capabilities while concealing a years-long security breach in which a nation-state threat actor accessed the company's internal systems and stole sensitive source code and vulnerability information, exposing more than 260,000 systems worldwide to potential exploitation.

**Milestone Cases**

### In re Enron Corporation Securities Litigation

DiCello Levitt attorneys were among the more than 70 attorneys who led this historic action that obtained a $7.2 billion recovery—the largest securities class action recovery in history—for investors, primarily from Wall Street's largest banks and the company's auditor, Arthur Andersen.

**AOL Time Warner Individual Actions**

DiCello Levitt attorneys devised a creative and unique strategy to pursue an institutional investor group action to recover losses resulting from the disastrous merger of AOL and Time Warner. The group action for dozens of institutional investors, including state and local pension funds and multi-employer funds, was ultimately successful in recovering $629 million for investors.

### Merck & Co. Inc. Securities, Derivative & "ERISA" Litigation

DiCello Levitt attorneys were integral members of the Co-Lead Counsel team that secured a unanimous decision from the U.S. Supreme Court in favor of shareholders with respect to the statute of limitations for securities fraud claims and that ultimately secured a settlement for more than $1 billion on behalf of the lead plaintiffs, including the Public Employees' Retirement System of Mississippi, and the class.

### In re Initial Public Offering Securities Litigation

DiCello Levitt Founding Partner Adam Levitt served on the Plaintiffs' Executive Committee, recovering more than $500 million for shareholders.

### In re Valeant Pharmaceuticals International, Inc. Securities Litigation

A DiCello Levitt attorney was an integral member of the Lead Counsel team that obtained a $1.21 billion settlement for defrauded Valeant investors, the largest securities class action settlement against a pharmaceutical manufacturer.



## Whistleblower Representation

DiCello Levitt's Whistleblower Representation Practice Group represents whistleblowers across the United States and around the globe in pursuing whistleblower actions and securing awards for their role in recovering monies wrongly obtained. DiCello Levitt's attorneys bring a wealth of knowledge from their deep experience as prosecutors at the U.S. Department of Justice and other government agencies, as well as their prior work in private practice. Through its vigorous advocacy, which includes the use of analytics, comprehensive investigations, and extensive legal analysis, DiCello Levitt has successfully collaborated with the government to litigate significant whistleblower actions. With a notable track record of success on behalf of its clients, DiCello Levitt has pursued private litigation across a wide range of industries, including residential mortgage-backed securities, life sciences and medical devices, industrial manufacturing, and government procurement.

DiCello Levitt's whistleblower advocates have extensive experience representing whistleblowers in bringing claims under the federal False Claims Act and its state and local analogues, as well as various agency whistleblower programs. DiCello Levitt also represents consumers, fraud victims, whistleblowers, and government agencies against pharmaceutical companies for fraud, waste, abuse, and deceptive practices in the manufacture, marketing, and sale of drugs and devices.

**Representative Matters**

***United States of America ex rel. Gill et al. v. CVS Health Corp., et al.***
DiCello Levitt serves as Co-Counsel in representing whistleblower Michael Gill in his partially intervened lawsuit against CVS Health Corporation and its subsidiaries. Mr. Gill alleges that CVS violated the federal and state False Claims Act by fraudulently billing for and improperly retaining payments on various drug products and healthcare services.

**Municipal Bond Rate Rigging Cases**
DiCello Levitt represents whistleblower Edelweiss Fund LLC in a set of related lawsuits brought under state false claims acts against some of the largest banks in the nation for allegedly colluding to set inflated interest rates on municipal bonds. The first of these lawsuits, *Illinois ex rel. Edelweiss v. JP Morgan Chase, et al.*, was settled in 2023 for $70 million.

***State of Illinois ex rel. Kenny Gilman v. Fieldturf USA Inc.***
DiCello Levitt obtained a substantial settlement during the second week of a jury trial on behalf of whistleblowers in a *qui tam* action over defective athletic fields sold and installed in Illinois.

**"An extraordinary plaintiffs' firm ..."**

**"... top of the line in litigation strategy and representing clients zealously."**

— Chambers and Partners

## Awards and Recognition

**Chambers USA**

Band 1:
Litigation: Mainly Plaintiffs, Illinois (2021-2025)

Bands 1 and 2:
Litigation: Mainly Plaintiffs, Alabama; Antitrust: Plaintiff, Nationwide; Product Liability: Plaintiffs, Nationwide (2022-2025); Antitrust: Mainly Plaintiff, New York (2021-2025)

Attorneys recognized: Adam Levitt, Greg Asciolla, Diandra "Fu" Debrosse, and Amy Keller

**Chambers Global**

Attorney recognized: Amy Keller

**Benchmark Litigation**

Highly Recommended Firm: Top Plaintiffs (2021-2026)
Plaintiff Firm of the Year Finalist (2024 and 2026)

Ranked: Competition/Antitrust (2023 and 2026)

Attorneys recognized: Mark DiCello, Adam Levitt, Greg Asciolla, Diandra "Fu" Debrosse, Greg Gutzler, Justin J. Hawal, Amy Keller, and Corban Rhodes

**Law360**

Cybersecurity and Privacy Practice Group of the Year (2020-2022)

Class Action Practice Group of the Year (2020)

Competition/Antitrust MVP: Greg Asciolla (2023)

Cybersecurity & Data Privacy MVP: David Straite (2022)

**Lawdragon**

500 Global Plaintiff Lawyers: Mark DiCello, Adam Levitt, Greg Asciolla, Diandra "Fu" Debrosse, Bobby DiCello, Greg Gutzler, and Amy Keller

500 Leading Lawyers: Mark DiCello, Adam Levitt, Greg Asciolla, Diandra "Fu" Debrosse, Bobby DiCello, and Amy Keller

500 Leading Global Litigators: Greg Asciolla and Scott Gilmore

500 Leading Litigators: Mark DiCello, Adam Levitt, Greg Asciolla, and Diandra "Fu" Debrosse

500 Leading Global Antitrust and Competition Lawyers: Greg Asciolla, Alex Barnett, Carrie Syme, and Geralyn Trujillo

500 Leading Global Cyber Lawyers: Nada Djordjevic, Amy Keller, Corban Rhodes, and David Straite

500 Leading Civil Rights and Plaintiff Employment Lawyers: Ken Abbarno, Bobby DiCello, and Diandra "Fu" Debrosse

500 Leading Environmental Lawyers: Dan Flynn, Scott Gilmore, and Anna Claire Skinnner

500 Leading Plaintiff Consumer Lawyers: Mark DiCello, Adam Levitt, Ken Abbarno, Diandra "Fu" Debrosse, Bobby DiCello, Scott Gilmore, Amy Keller, Dan Schwartz, and John E. Tangren

500 Leading Plaintiff Financial Lawyers: Adam Levitt, Greg Asciolla, Alex Barnett, Marisa N. DeMato, Bobby DiCello, Greg Gutzler, Steve Jodlowski, Amy Keller, Brian O'Mara, Roxana Pierce, Caroline M. Robert, Henry Rosen, and David Straite

**The Legal 500**

Ranked: Product Liability, Mass Tort and Class Action – Plaintiff; Antitrust: Civil Litigation/Class Actions – Plaintiff (2022 and 2024-2025); Securities Litigation: Plaintiff (2024-2025)

Attorneys recognized: Greg Asciolla, Alex Barnett, Jonathan Crevier, Amy Keller, Brian O'Mara, Roxana Pierce, and Geralyn Trujillo

**The National Law Journal**

Elite Trial Lawyers Practice Areas of the Year Finalist: Antitrust, Civil Rights/Discrimination, Privacy/Data Breach, Technology (Including AI), Trial Strategy Innovation (2026)

Elite Trial Lawyers Civil Rights Winner (2024)

Elite Trial Lawyers Plaintiffs Firm of the Year (2023)

Practice areas of the year: Trial Strategy Innovation, Privacy/Data Breach, and Environmental Protection (2023)

Elite Women of the Plaintiffs Bar: Diandra "Fu" Debrosse (2023)

Elite Trial Lawyers: Justin Hawal and Amy Keller (2021)

Trailblazers: Mark DiCello (2020), Adam Levitt (2020), Ken Abbarno (2021), Diandra "Fu" Debrosse (2022), Greg Gutzler (2021), and David Straite (2022)

**The New York Law Journal**

New York Legal Awards Innovation Winner (2023)

Distinguished Leader Award: Greg Asciolla (2023)

    

## Members of the Firm

DiCello Levitt's attorneys are litigators and trial lawyers who have tried cases to verdict—successfully—across the spectrum of complex commercial litigation, financial fraud and securities litigation, public client litigation, class actions, defective drug and device cases, catastrophic injuries, and other areas of law.



## Mark A. DiCello
Partner

**EMAIL:**
madicello@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

University of Dayton, B.A.

After 20 years of jury trials and serving in lead roles in some of the largest personal injury cases in Ohio and around the country, Mark DiCello co-founded DiCello Levitt to create a first-of-its-kind firm that brought together top talent in the most important areas of complex litigation.

Beginning his career as an Assistant County Prosecutor, Mark honed his trial skills, streamlining and simplifying issues presented to juries. After representing the state in criminal matters, Mark wanted to turn his attention to ensuring that victims were represented in other ways: via the private civil justice system.

Mark's clients range from individuals suffering catastrophic personal injuries to groups of plaintiffs harmed by medical devices, pharmaceutical products, chemicals, automobiles, and more. He has led headline-grabbing mass tort and product liability cases and co-led massive multidistrict litigations. Mark has been recognized by a number of different organizations, including being ranked by Super Lawyers and receiving the Crisis Management Trailblazer and Elite Boutique Trailblazer awards from *The National Law Journal*. *Lawdragon* has recognized Mark as one of the 500 Leading Plaintiff Consumer Lawyers, and *Benchmark Litigation* recognizes Mark as a Litigation Star in Product Liability and Personal Injury. Mark is also rated an "AV" Preeminent Attorney by Martindale-Hubbell and is a member of The Summit Council, a national group of noted trial lawyers with several multi-million-dollar jury verdicts.

Understanding that technology often evolves at a faster pace than the law, Mark frequently teaches other lawyers about how to best use new tools in discovery to counter some of the most sophisticated arguments presented by Big Tech defendants. For example, Mark is a frequent lecturer on using trial science to reach jurors, modeling damages for large-scale litigation, and leveraging technology to develop discovery in some of the most difficult, scorched-earth litigation. By developing cutting-edge techniques to represent those individuals hurt by large corporations, Mark presents their stories after a vigorous focus-group and mock-trial process, in coordination with the DiCello Levitt Trial Center.

Mark presently represents thousands of individual service members and their families who were injured at the U.S. Marine Corps Base Camp Lejeune by exposure to drinking water contaminated with industrial solvents, benzene, and other chemicals. Leading the charge to hold the government accountable for his clients' catastrophic injuries and losses, Mark employs his decades of experience in leading mass torts and complex litigation to achieve justice for those willing to make the ultimate sacrifice.

Mark continues to lead with vision and, together with co-founder Adam Levitt, has built a diverse and fearless team of lawyers focused on some of the most important litigation of our time.



## Adam Levitt
Partner

**EMAIL**
alevitt@dicellolevitt.com

**EDUCATION**
Northwestern University School of Law, J.D.

Columbia College, Columbia University, A.B., *magna cum laude*

Adam Levitt is one of the nation's leading advocates for plaintiffs in complex, multidistrict, class action, public client, mass tort, and commercial litigation. Drawing on his extensive experience pursuing and obtaining justice for those who have been wronged by powerful defendants, he co-founded DiCello Levitt to create a top-tier complex issues and trial firm founded on excellence, trust, and respect.

In his decades-long career, Adam has scored numerous significant and precedent-setting victories, delivering more than $20 billion in recoveries to clients in biotechnology, financial services, securities, insurance coverage, consumer protection, automotive defects, agricultural products, and antitrust disputes. He has been appointed to leadership positions in many historic and headline-grabbing litigations, including three of the largest biotechnology class actions in U.S. history, where he served as co-lead counsel, helped recover more than $1.7 billion on behalf of plaintiffs, and created a crop contamination damages model that set the modern industry standard. He was also retained by multiple State Attorneys General to hold some of the world's largest chemical companies accountable for widespread environmental contamination from their "forever chemicals" known as PFAS (per- and polyfluoroalkyl substances) and was retained by the City of Baltimore to address the catastrophic impact of the Francis Scott Key Bridge collapse, one of the largest maritime disasters in U.S. history. Additionally, as part of a leadership group characterized as a "class action dream team," Adam helped secure a $16 billion settlement in litigation arising from Volkswagen's emissions scandal, and, in a rare class action trial, he and his fellow co-lead counsel secured a milestone $102.6 million jury verdict against General Motors for hiding engine defects from consumers.

Adam is also a leader in the legal profession and a frequent speaker on multidistrict litigation, consumer protection, automotive litigation, biotechnology, corporate governance, securities litigation, and internet privacy. Nationally recognized as an authority on class action litigation, Adam writes a monthly class action column in *The National Law Journal*, has testified before the Illinois Supreme Court Rules Committee on class action practice, and chairs an annual class action litigation conference in Chicago.

As a founding partner of DiCello Levitt, Adam has cultivated a diverse roster of skilled litigators to advance the cause of justice for individuals, businesses, and public clients through class action, business-to-business, whistleblower, personal injury, civil rights, and mass tort litigation. With a long history of working with public clients, Adam and his partners understand the wants and needs of government officials and their teams, and, as experts in trial practice and jury persuasion, they consistently achieve best-in-class results for their clients.

Adam's own groundbreaking work on behalf of plaintiffs has been recognized locally and nationally in prestigious ranking directories and publications, including *Chambers USA*, *Benchmark Litigation*, *The National Law Journal*, *Crain's Chicago Business,* and *Lawdragon*.



## Kenneth Abbarno

Partner

**EMAIL**
kabbarno@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

Canisius College, B.A.

Ken Abbarno is a seasoned trial lawyer whose career has been defined by results in the courtroom. With more than three decades of experience trying complex cases nationwide, Ken is known for his steady command of the facts and his ability to connect with jurors in difficult cases. He has led or co-led hundreds of high-exposure matters, securing multimillion-dollar verdicts and settlements for clients in catastrophic injury, transportation, civil rights, medical malpractice, and other complex cases.

As the managing partner of DiCello Levitt's Cleveland office, general counsel for the firm, and co-coordinator of the DiCello Levitt Trial Center, Ken plays a central role in shaping and executing the firm's trial strategy. He oversees trial preparation from the earliest stages of discovery, using in-house focus groups, mock juries, and case framing research to sharpen messaging and anticipate how jurors will respond to complex facts. This trial-first approach—honed through years of courtroom experience—has contributed to more than $2 billion in verdicts and settlements since the firm's founding. Ken's leadership has been pivotal in some of the firm's most consequential trials, including his work on the team that secured a $20.75 million jury verdict against global banking giant BNP Paribas for financing genocide in Sudan—a landmark result paving the way for tens of thousands of survivors to seek billions more in recovery.

Ken's ability to balance legal precision with genuine empathy makes him an advocate that clients trust during the most difficult periods of their lives. Drawing on his early experience as a defense lawyer, he brings a 360-degree view of the courtroom—anticipating opposing arguments, mastering the details, and ensuring every case is trial-ready. His work on high-profile civil rights cases, including his representation of the family of Jayland Walker, a young Black man killed in a police shooting in Akron, demonstrates his commitment to accountability and justice at the highest levels.

A recognized leader in his field, Ken has earned numerous accolades throughout his career, including being named to *Lawdragon*'s 500 Leading Plaintiff Consumer Lawyers and Ohio Super Lawyers every year since 2010. He is also featured in *The Best Lawyers in America* for transportation law.

Ken's impact reaches beyond his legal work. As a mentor, he is dedicated to developing the next generation of trial attorneys and advancing their careers. His service as an assistant football coach and community volunteer further reflects his deep commitment to supporting and empowering young people.



**Mark M. Abramowitz**
Partner

**EMAIL**
mabramowitz@dicellolevitt.com

**EDUCATION**
University of Toledo College of Law, J.D.

University of Guelph, B.A.

Mark Abramowitz has demonstrated expertise in leveraging cutting-edge technology in DiCello Levitt's modern and evolving trial practice to achieve what were previously believed to be impossible results for his clients. An internet technology expert, he is a student of integrating technology into the practice of law. He has been selected to serve on national discovery review teams and is regularly consulted on cloud-based systems, discovery technology, the Internet of Things, and litigation concerning data storage and security. He has also testified before the Ohio State Legislature multiple times on data security and related issues.

Mark is a respected litigator and trial lawyer who has recouped life changing compensation for clients around the country. He has expertise and experience ranging from defective products to Internet technology disputes. Mark is recognized for breaking barriers in medical malpractice litigation through groundbreaking work in exposing electronic medical record alterations and successfully expanding states' damages caps in joint replacement surgery cases.

Mark was a member of the trial team that, in 2022, secured a $102.6 million verdict in the class action case *Raul Siqueiros, et al. v. General Motors LLC*, Case No. 3:16-cv-07244, in the U.S. District Court for the Northern District of California.

Mark brings a unique voice to the Sedona Conference's Data Security and Privacy Liability working group and is one of the authors of Sedona's Biometric Privacy Primer. He has also served as a Trustee of the Ohio Association for Justice since 2014. Mark is currently Editor-in-Chief of *Ohio Trial* and is a member of *Law360's* Personal Injury Editorial Advisory Board.



**Greg Asciolla**

Partner

**EMAIL**
gasciolla@dicellolevitt.com

**EDUCATION**
Catholic University of America, J.D.

Boston College, B.A., *cum laude*

Greg Asciolla is a partner in DiCello Levitt's New York office, where he serves as Chair of the firm's Antitrust and Competition Litigation Practice, Managing Partner of the New York office, and Co-Chair of the DEI Committee. Greg focuses on representing businesses, public pension funds, and health and welfare funds in complex antitrust and commodities class actions, including price-fixing, monopolization, commodities manipulation, pay-for-delay agreements, and other anticompetitive practices. He also has successfully represented, pro bono, three Ugandan LGBTQ clients seeking asylum in the United States.

Recovering billions on behalf of his clients, Greg leads extensive investigations into potential anticompetitive conduct, often resulting in first-to-file cases. Prior to joining DiCello Levitt, Greg chaired a nationally recognized antitrust practice group as a partner and oversaw significant growth in group size, leadership appointments, cases filed, investigations, and reputation. He also served as a partner in the antitrust practice group at a top ranked AmLaw100 firm. Greg began his career as an attorney at the U.S. Department of Justice's Antitrust Division.

Greg is regularly appointed to leadership positions in major antitrust cases in federal courts throughout the United States, including *Generic Drugs Pricing Antitrust Litigation*, *European Government Bonds Antitrust Litigation*, *Platinum and Palladium Antitrust Litigation*, *Surescripts Antitrust Litigation*, *Crop Inputs Antitrust Litigation*, *Opana ER Antitrust Litigation*, *Borozny v. Raytheon*, *Fusion Elite v. Varsity Brands*, and *Novartis and Par Antitrust Litigation*.

Named a "Titan of the Plaintiffs Bar" and "Competition/Antitrust MVP" by *Law360* as well as a leading plaintiffs' competition lawyer by *Global Competition Review* and *Chambers USA*, Greg is often recognized for his experience and involvement in high-profile cases. He has been named one of the "Leading Plaintiff Financial Lawyers in America" by *Lawdragon*, a "Distinguished Leader" by *New York Law Journal*, a "Litigation Star" by *Benchmark Litigation*, and a "Leading Lawyer" and a "Next Generation Lawyer" by *The Legal 500*, with sources describing him as "very effective plaintiffs' counsel" and "always act[ing] with a good degree of professionalism."

Greg makes substantial contributions to the antitrust bar. In 2016, he was elected to the Executive Committee of the New York State Bar Association Antitrust Law Section, where he currently serves as the Finance Officer. He concurrently serves as Vice Chair of the ABA's Diversity.Advanced Committee, Co-Chairman of the Antitrust and Trade Regulation Committee of the New York County Lawyers' Association, and Treasurer and Membership Director of the Committee to Support the Antitrust Laws. Greg is an annual invitee of the exclusive Antitrust Forum, serves as the U.S. representative to the Business & Banking Litigation Network, and is on the Advisory Board of the American Antitrust Institute.



## Alex Barnett
Partner

**EMAIL**
abarnett@dicellolevitt.com

**EDUCATION**
St. John's University School of Law, J.D.

University of Pennsylvania, B.A.

Alex Barnett is a partner in DiCello Levitt's New York office and a member of the firm's Antitrust and Competition Litigation Practice Group. An accomplished attorney with decades of experience in complex and class action litigation, Alex's practice focuses on advocating for consumers, public clients, and businesses injured by antitrust violations, unfair competition, and unlawful or unjust business practices.

For nearly 30 years, and with empathy for the persons and entities he represents, Alex has dedicated himself to litigation that is aimed at bringing about economic and social justice. His work has earned him a spot on *Lawdragon*'s 500 Leading Plaintiff Financial Lawyers list every year from 2019 through 2025 and on *Lawdragon*'s 500 Leading Global Antitrust and Competition Lawyers in 2025 and 2026. In 2019, it earned him, along with his colleagues, the American Antitrust Institute's Outstanding Antitrust Litigation Achievement in Private Law Practice Award. And it has earned him invitations to serve as a panel speaker at conferences regarding antitrust law and class action practice.

Alex demonstrates his commitment to justice in his other endeavors as well. He is a past president of the Committee to Support the Antitrust Laws (COSAL), the only organization in the United States dedicated to lobbying for strong antitrust laws and effective private enforcement. He served as the vice chair of Public Justice's Food Project, which aims to address structural and institutional inequities in the food system. Prior to his litigation career, he served as the executive director of the International Association of Jewish Lawyers and Jurists (American Section), whose mission is the promotion of the rule of law.

Alex was on the advisory council of Rescuing Leftover Cuisine (RLC), a national nonprofit food rescue organization, operating across the United States and headquartered in New York City, that provides solutions to prevent excess wholesome cuisine from being wasted. In addition, Alex served as a volunteer for the following organizations: K.E.E.N. (Kids Enjoy Exercise Now), an organization dedicated to empowering youth with disabilities, providing them with access to recreational opportunities and helping them develop athletic skills; New York Cares, an organization that provides volunteer assistance to charities and nonprofit organizations throughout the metropolitan New York area; D.C. Cares, an organization that provides volunteer assistance to charities and nonprofit organizations throughout the Washington, D.C., area; and A Broader Image Inc., a Washington, D.C., nonprofit organization that provided internet access and other technology-based educational tools to children in inner-city schools.

Alex and his wife are active participants in the multiracial family community and have served as speakers for and supporters of various organizations dedicated to fostering understanding and acceptance of multiracial families, including LovingDay.org. They also founded a stuffed animal company and, through that entity, donated thousands of newly made stuffed animals to children in New York City's Homes for the Homeless program.



## J. Gordon Bergstresser
Partner

**EMAIL**
gbergstresser@dicellolevitt.com

**EDUCATION**
New England School of Law, J.D.

Lycoming College, B.A.

Alex is a graduate of the University of Pennsylvania and St. John's University School of Law.

Gordon Bergstresser's passion for ESI flows from his recognition that every case litigated by the firm, from the largest data breach class action to an individual tort victim, is brought because someone was harmed by another's wrongful conduct. Gordon's experience includes in-depth collection and review of ESI in a number of industries, including data privacy, internet tracking, mobile devices, cryptocurrency, securities exchange platforms, automotive, pharmaceutical, security contractors, and food labeling. This wide range of hands-on experience gives him a wealth of knowledge to draw upon when new cases with pressing ESI issues come through the door.

Gordon's approach builds advantages into the ESI workflow at the outset of a case. When the time comes for the litigation team to marshal the ESI needed to achieve the best outcome for a client, Gordon has already created the infrastructure so that important evidence can be quickly located and presented.

Gordon's background includes working in review rooms to produce ESI for civil defendants, giving him unique insight in his current work receiving document productions on behalf of plaintiffs. Crafting search terms and leveraging predictive coding is central to Gordon's strategy for finding the smallest of needles in the largest of haystacks. He has experience in all of the major review platforms, including Relativity and Everlaw, ensuring that every case, whether ESI is managed directly by DiCello Levitt or with partner firms, can be brought to successful resolution for our clients.





## Jonathan Crevier
Partner

**EMAIL**
jcrevier@dicellolevitt.com

**EDUCATION**
Benjamin N. Cardozo School of Law, J.D., *cum laude*

New York University, B.A., *magna cum laude*

DiCello Levitt Partner Jonathan Crevier prosecutes complex antitrust class actions on behalf of businesses and consumers. He actively litigates cases against a number of the world's largest companies in antitrust matters involving price-fixing, monopolization, illegal information exchanges, exclusive dealing, tying, and other anticompetitive practices. Jonathan is heavily involved in one of the largest, most complex antitrust cases of all time, *In re Generic Pharmaceuticals Pricing Antitrust Litigation* (E.D. Pa.). He was also a member of DiCello Levitt's trial team in *In re Opana ER Antitrust Litigation* (N.D. Ill.).

As part of the firm's nationally recognized Antitrust and Competition Litigation Practice Group, Jonathan leads DiCello Levitt's antitrust investigation unit. In this capacity, Jonathan has investigated and filed several cutting-edge antitrust cases, including *In re Manufactured Home Lot Rents Antitrust Litigation* (N.D. Ill.) and *Unger v. The Walt Disney Company* (N.D. Cal.).

Prior to joining the firm, Jonathan was an associate in a nationally recognized competition and antitrust litigation group, where he represented plaintiffs in complex antitrust matters. He also previously served as a Judicial Intern for the Honorable Henry Pitman, U.S.M.J., in the District Court for the Southern District of New York.

Jonathan and his wife Christine live in Denver, Colorado where they are active in their local community and school district. Outside of work, Jonathan enjoys spending time outdoors.





# Diandra "Fu" Debrosse
Partner

**EMAIL**
fu@dicellolevitt.com

**EDUCATION**
Case Western Reserve University
School of Law, J.D.

City College of the City University of
New York, B.A., *summa cum laude*

Diandra "Fu" Debrosse is a fearless plaintiffs' attorney who fights unapologetically for individuals and public entities injured by wrongful conduct, whether by defective medical devices, drugs, or cosmetics, environmental contamination, corporate misconduct, or civil rights abuse. Nationally recognized as a powerhouse in mass torts, class actions, products liability, discrimination, and sexual assault claims, Fu has recovered nearly $1 billion in damages for her clients. Blending her exceptional talents in multidistrict and mass tort litigation with state-of-the-art tools, Fu uses sophisticated modeling to identify technology-based and other forms of discrimination, including environmental injustice, defective devices, and unfair insurance practices.

As the managing partner of DiCello Levitt's Birmingham office, co-chair of the firm's Mass Torts division, and co-chair of its Civil and Human Rights Litigation Practice Group, she holds prominent leadership positions in numerous multidistrict litigations. She is Co-Lead Counsel in the massive products liability multidistrict litigation against two of the world's largest infant formula manufacturers, Abbott Laboratories and Mead Johnson, and in the MDL against L'Oréal and other makers of disease-causing hair relaxer products marketed primarily to Black and Latina women. Fu also holds leadership positions in several other significant MDLs, including the litigation against Chevron and Syngenta for their marketing and sale of the disease-causing herbicide paraquat, as well as the social media MDL in which the plaintiffs are seeking damages against Meta Platforms, TikTok, YouTube, and others for creating defective products that encourage addictive behavior, resulting in various emotional and physical harms, including death.

Fu also leads many systematic civil rights and sexual assault cases; represents the City of Baltimore in legal actions addressing the catastrophic of the Francis Scott Key Bridge collapse; and represents dozens of Alabama, Mississippi, Georgia, Maryland, and North Dakota counties and a number of cities and counties in Maryland, Delaware, and other jurisdictions in two separate prescription opiate MDLs.

Fu was recognized by *Forbes* as one of the top 200 attorneys in the United States in 2024, and *The National Law Journal* named her to its 2023 list of Elite Women of the Plaintiffs Bar. In 2022, 2023, and 2024, *Lawdragon* recognized Fu as one of the 500 Leading Consumer Lawyers. *Chambers USA* 2022 ranked the firm's Litigation: Mainly Plaintiffs team among the top five in Alabama, and the *Birmingham Business Journal* honored Fu with a Best of the Bar Award and Who's Who in Law recognitions in 2021, 2022, and 2023.

Fu is a founding member of Shades of Mass, an organization dedicated to encouraging the appointment of Black and brown attorneys in national mass tort actions. She is a board member of Public Justice and the Southern Trial Lawyers Association. Fu previously served as a hearing officer for the Alabama State Bar, held leadership roles in the American Association for Justice and the Alabama Access to Justice Commission, and acted as Alabama State Bar vice president and commissioner.

Fu is fluent in French and Haitian Creole and functional in Spanish. Her steadfast pursuit of justice is motivated in large part by her experience as a mother of two extraordinary young girls.



# Marisa N. DeMato
Partner

**EMAIL**
mdemato@dicellolevitt.com

**EDUCATION**
University of Baltimore School of
Law, J.D.

Florida Atlantic University, B.A.

Marisa N. DeMato is a nationally recognized securities litigator and Head of the U.S. Securities Practice Group. With more than twenty years of experience in complex securities litigation, Marisa is a passionate advocate dedicated to protecting the investments of public and multiemployer labor pension funds. She has built her practice around safeguarding the retirement security of teachers, firefighters, police officers, municipal employees, and building trade workers across the United States and Canada. As the daughter of a retired detective and a nurse, Marisa's commitment to public safety and the well-being of public sector employees is both personal and professional.

Throughout her career, Marisa has played a central role in groundbreaking shareholder litigation, securing significant settlements and implementing critical corporate governance reforms. Notably, she represented the Seattle City Employees' Retirement System in achieving a landmark $90 million settlement and historic governance reforms at Twenty-First Century Fox following systemic workplace harassment at Fox News. Her extensive litigation experience includes securing multimillion-dollar recoveries in high-profile cases involving LifeLock, Camping World, Rent-A-Center, and Castlight Health as well as substantial recoveries in actions such as *In re Managed Care Litigatio*n ($135 million), *Cornwell v. Credit Suisse Group* ($70 million), and *Ross v. Career Education Corporation* ($27.5 million).

At DiCello Levitt, Marisa serves as an integral member of the Securities and Financial Products Litigation Practice Group, playing a key role in case evaluation and development. She leverages her deep expertise in advising and representing institutional investors on opportunities to recover losses through shareholder litigation, guiding the firm's clients from initial case evaluation through settlement negotiations.

Beyond her litigation successes, Marisa is a tireless advocate for women's empowerment and leadership in the pension, investment, and legal communities. She has founded and led firm-wide initiatives that have earned national and international recognition for their positive impact on diversity, equity, and inclusion, including events shortlisted for awards by *Chambers USA* and *Euromoney*. Through her strategic programming and community-building efforts, Marisa continues to champion women's leadership and economic opportunities.

A respected voice in the fields of securities and financial products litigation, Marisa is an accomplished speaker who has presented at conferences across the United States and Europe on topics related to securities litigation, fiduciary responsibility, corporate governance, and diversity initiatives. Her insights and advocacy have led to invitations to testify before legislative bodies, including the Texas House of Representatives' Pensions Committee.

Marisa has received numerous accolades for her legal and advocacy work, including recognition by *The National Law Journal* as a Plaintiffs' Lawyers Trailblazer and by *The American Lawyer* as a Northeast Trailblazer. She has also been named among *Lawdragon*'s 500 Leading Plaintiff Financial Lawyers in America.

Marisa actively participates in professional and community organizations, including the National Conference on Public Employee Retirement Systems (NCPERS), the National Association of Public Pension Attorneys (NAPPA), the National Association of Securities Professionals (NASP), and the Investors in Education Committee supporting the Neighborhood Youth Association (NYA), which provides educational opportunities to inner-city youth in Los Angeles.

Driven by a deep sense of justice and fairness instilled from childhood, Marisa's approach to the law is defined by her commitment to ensuring that workers have a voice and a seat at the table when confronting powerful corporate interests, providing vigorous and compassionate representation to those she serves.



**Chuck Dender**
Partner

**EMAIL**
cdender@dicellolevitt.com

**EDUCATION**
Cornell Law School, J.D.

New York University Stern School of Business, M.B.A.

Temple University, B.A.

Chuck Dender is an experienced litigator who leads DiCello Levitt's Whistleblower Litigation Practice Group. With a proven record of excellence for his clients, the foundation of Chuck's broad litigation experience was formed while defending some of the most significant commercial litigation matters in the U.S. over the last two-plus decades. While Chuck began his litigation career on the defense side of the table, he is a plaintiffs' attorney at heart. He now represents plaintiffs exclusively. With a background that includes membership in the International Brotherhood of Teamsters, Chuck has personally experienced what it's like to be a plaintiff in need of outstanding legal representation.

Chuck represents aggrieved investors — both individuals and entities — in all aspects of complex litigation against players in the financial services industry, as well as other public and private companies. He also represents whistleblowers who cooperate with government agencies in their efforts to shine the light on corporate malfeasance.

In whistleblower matters, Chuck has a keen understanding of both the types of information that government agencies are looking for and the best methods for presenting that information to the agencies so they can act and wield justice from corporate wrongdoers. Chuck has authored compelling whistleblower submissions on behalf of both corporate insiders and interested outsiders. He has the good fortune of learning this complicated dance under the tutelage of Jordan Thomas, the principal architect of the Securities and Exchange Commission's Whistleblower Program. Chuck has also presented whistleblowers and supporting witnesses in front of the highest-ranking members of the SEC's Whistleblower Program during multiple-day interviews.

Chuck is experienced in a wide range of legal disciplines, with a specific focus representing clients in litigation involving the financial services industry or any matter where the calculation and presentation of damages is anything but a run-of-the-mill issue.

Chuck's legal expertise is enhanced by his MBA, with a specialization in finance and quantitative finance from the New York University Stern School of Business. This additional accreditation and education gives Chuck a unique advantage when it comes to identifying issues related to financial crimes and damages issues, including working with economists and other expert witnesses. As proof of this point, Chuck played a key role in presenting the damages model of one of the largest financial institutions in the world after the collapse of Lehman Brothers Holding, Inc.



## Bobby DiCello
Partner

**EMAIL**
rfdicello@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

Northwestern University, M.A.

University of Dayton, B.A.

Bobby DiCello is a nationally recognized trial lawyer whose work has reshaped how complex cases are tried and won. Known for his command of the courtroom and ability to turn evidence into narrative that resonates with juries, Bobby has earned record verdicts across the country in cases ranging from catastrophic injury and wrongful death to human rights and financial misconduct. His trial results speak for themselves—outcomes that not only secure justice for clients but also set new standards for accountability in modern trial practice.

A former prosecutor who is known today as veteran trial strategist, Bobby has first-chaired catastrophic injury and death cases, civil rights and police misconduct trials, medical malpractice actions, mass tort bellwethers, *qui tam* matters, financial services cases, and complex criminal trials. Among his landmark results is a $50 million jury verdict for Arnold Black in *Black v. Hicks*—one of the most significant civil rights verdicts for a single plaintiff, challenged up to the U.S. Supreme Court. In addition, Bobby led the trial team that secured a $20.75 million jury verdict against BNP Paribas for financing genocide in Sudan—a landmark human rights verdict that not only held a global bank liable for enabling atrocities but also opened the door for tens of thousands of survivors to seek billions more in recovery.

Bobby also builds the systems that produce those results. He leads the DiCello Levitt Trial Center, where he and his colleagues apply a research-driven process—rooted in linguistics, literacy, information processing, and cognitive neuroscience—to map how judges and jurors actually make decisions. Through iterative focus groups, mock trials, and real-world presentation testing, the Trial Center uncovers the themes, visuals, and storytelling that move decision-makers. That trial-first approach has helped drive firmwide outcomes totaling more than $2 billion.

Beyond the courtroom, national media and the legal community turn to Bobby for insight into high-profile trials. ABC News enlisted him for weeks of live analysis during "The Death of George Floyd—Derek Chauvin on Trial," where he explained strategy, evidence, and juror psychology to audiences in the U.S. and abroad.

Bobby's work has earned sustained recognition. Public Justice named him Trial Lawyer of the Year for *Black v. Hicks*, and *The National Law Journal* has twice honored him as an "agent of change" in its annual list of Plaintiffs' Lawyers Trailblazers.

A teacher as much as an advocate, Bobby trains lawyers across the country through the Trial Center and consults on theme development, case framing, motion practice, and courtroom visuals. At every stage of a case, his focus is the same—giving clients back their voices and making the truth impossible to ignore.



## Nada Djordjevic
Partner

**EMAIL**
ndjordjevic@dicellolevitt.com

**EDUCATION**
University of Illinois College of Law, J.D., *summa cum laude,* Order of the Coif

Grinnell College, B.A.

Nada Djordjevic brings justice to those who are harmed by consumer fraud, unfair business practices, data privacy breaches, deceptive insurance sales practices, and other egregious acts. With more than two decades of experience representing plaintiffs in class actions and complex commercial litigation matters, Nada zealously protects the interests of aggrieved clients throughout the United States.

Nada's clients benefit from her skilled and varied litigation practice. In addition to consumer protection cases and class actions, she has represented clients in issues related to securities fraud, ERISA violations, deceptive insurance sales practices, and qui tam cases under the False Claims Act.

Nada was recently named to the Plaintiffs' Executive Committee as the Chair of Damages in the multidistrict class action litigation against Samsung Electronics related to multiple data breaches in 2022 involving more than 50 million consumers.

Nada's litigation successes include a $25 million settlement on behalf of 800,000 people in a class action lawsuit. The action involved claims of violations of state consumer protection and deceptive practices laws against a major athletics event organizer. She also represented a multistate plaintiff class in a data breach case that resulted in one of the largest breach-related settlements in healthcare history. Nada was also part of the litigation team that negotiated settlements worth more than $275 million for universal life insurance policyholders in two nationwide class actions alleging improper monthly policy charges.





## Daniel R. Ferri
Partner

**EMAIL**
dferri@dicellolevitt.com

**EDUCATION**
University of Illinois College of Law, J.D., *magna cum laude*

New York University, B.A., *cum laude*

Dan Ferri is a partner at DiCello Levitt whose practice focuses on representing public clients and consumers in high-impact matters involving fraud, breach of contract, and deceptive or unfair business practices. He has helped achieve hundreds of millions of dollars in recoveries on behalf of states, municipalities, consumers, and 401(k) plans and participants—bringing an aggressive approach and a strong command of the law to every stage of litigation. His current clients include the States of New Mexico, Arizona, and Kentucky, and the City of Baltimore.

Dan has played a critical role on teams handling a wide range of complex public client and consumer matters. He helped secure final approval of a $175 million post-trial settlement for more than 40,000 General Motors vehicle owners after he and his partners obtained a jury verdict in one of the few automotive defect class actions ever tried to verdict.

In the public client space, Dan successfully represented the State of New Mexico in litigation against AbbVie concerning the marketing and sale of the testosterone replacement drug AndroGel. Dan also helped lead New Mexico's "clean diesel" litigation against Volkswagen, as well as its litigation against automakers for selling vehicles equipped with dangerous Takata airbag inflators, securing settlements in each litigation that delivered the strongest per-vehicle recoveries in the country.

Dan currently represents consumers in a class action against Honda over 2015–2021 Honda and Acura vehicles equipped with an automatic idle-stop feature that can fail to restart the engine, leaving vehicles unexpectedly inoperable in traffic. In addition, he is part of the team representing the City of Baltimore in litigation against DraftKings and FanDuel, alleging deceptive promotions and data-driven targeting designed to exploit vulnerable gamblers in violation of Baltimore's Consumer Protection Ordinance. His practice also includes representing 401(k) plans and participants in actions brought under ERISA, along with other complex consumer, public client, and insurance-related class actions.

Dan is a member of the Northern District of Illinois Trial Bar.





## Daniel R. Flynn
Partner

**EMAIL**
dflynn@dicellolevitt.com

**EDUCATION**
Indiana University Maurer School of Law, J.D., *cum laude*

Illinois Wesleyan University, B.A.

Dan Flynn represents governmental entities, individual consumers, and corporate clients—all with one primary goal in mind: ensuring the protection of human health and the environment. His stewardship ensures not only that polluters be held responsible for contamination and clean-up, but that communities receive the justice they deserve. As chair of DiCello Levitt's Environmental Litigation Practice Group, Dan assists corporate entities, governmental agencies, and the public by ensuring that companies that have contaminated the environment and violated regulations take responsibility for their actions. Through common law claims, citizen suits, enforcement actions, and contribution and cost recovery actions, he ensures polluters and bad actors remediate the harm they have caused.

Dan is part of the DiCello Levitt team working with several states in investigating and addressing poly- and perfluoroalkyl substance (PFAS) contamination and polychlorinated biphenyls (PCB) contamination. DiCello Levitt's environmental team works with state attorneys general in pursuing claims against PFAS and AFFF manufacturers and PCB manufacturers for damage that these contaminants have done to state natural resources and the environment.

Dan also represents public clients in litigation seeking to hold the world's largest fossil fuel companies accountable for decades of deception concerning climate change and the costs and other consequences that climate change is imposing on those governments.

Dan is a court appointed Co-Lead Counsel of *In re Bio-Lab Class Actions*, a case on behalf of more than 90,000 residents and business owners in Conyers, Georgia, and the surrounding area who have been affected by a catastrophic chemical fire.

Dan and DiCello Levitt's environmental team served as Co-Lead Counsel in the Rockton, Illinois community's class action against Chemtool Incorporated, *Grasley v. Chemtool, Inc.*, No. 2021-L-0000162 (Winnebago Cty.), for contamination resulting from a chemical plant fire that burned for days, which required the evacuation of the surrounding community and resulted in contamination of properties for miles around the plant, which settled for $100 million.

Dan and DiCello Levitt's environmental team also joined with co-counsel in representing several residents and former residents of Union, Illinois in filing suit against companies responsible for polluting the groundwater with carcinogenic chlorinated solvents.

Dan also frequently counsels clients on developing and maintaining state-of-the-art environmental, safety, and health programs that ensure the protection of human health and the environment and that all employees enjoy safe and healthful workplaces. He works closely with both his clients to enhance environmental protection and employee safety and health well beyond EPA's and OSHA's minimum requirements.

Dan received his bachelor's degree from Illinois Wesleyan University and graduated cum laude with his J.D. from Indiana University Maurer School of Law.



## Scott Gilmore
Partner

**EMAIL**
sgilmore@dicellolevitt.com

**EDUCATION**
George Washington University
Law School, J.D., *high honors*,
Order of the Coif

Oxford University, Certificate in
International Human Rights Law

McGill University, B.A.

Scott Gilmore is a leading international human rights litigator who holds powerful institutions accountable for mass atrocities, terrorism financing, and other grave violations of international law. He represents victims of genocide, crimes against humanity, war crimes, and terrorism in complex, high-stakes litigation against multinational corporations, financial institutions, and sovereign actors. His work has helped secure historic jury verdicts and advance novel legal theories in some of the most challenging cases in the world, winning close to $400 million in judgments and settlements.

Throughout his career, Scott has focused on litigating some of the most complex disputes involving foreign sovereign immunity, extraterritorial jurisdictions, multinational defendants, and grievous human rights abuses. He has taken on heads of state, foreign governments, and some of the world's largest banks, overcoming jurisdictional and immunity defenses to bring claims on behalf of victims who otherwise would have no access to justice. His practice frequently involves navigating foreign legal systems, coordinating cross-border investigations, and building evidentiary records in environments shaped by conflict and political instability.

Among his recent victories, Scott played a central role on the team that secured a landmark $20.75 million jury verdict against BNP Paribas for financing genocide in Sudan—the first trial in history to hold an international bank responsible for supporting genocide. He worked on the case from motion practice through trial, helping develop the legal theories under foreign law, build the evidentiary record, and shape the strategy that carried the case to verdict. The litigation required distilling a complex record of atrocities and international financial transactions into a clear, compelling narrative for jurors. The verdict marked a watershed moment in human rights litigation and paved the way for tens of thousands of survivors to pursue further recovery.

In addition to his human rights practice, Scott works on cutting-edge matters involving climate and environmental harms, emerging technology, cybersecurity, and antitrust claims, bringing the same strategic discipline to high-stakes disputes across industries.

Before joining DiCello Levitt, Scott was a partner at a leading international disputes firm, where he led complex class and individual litigation and appeals involving human rights, sanctions and anti-terrorism claims, environmental and climate harms, data privacy, intellectual property, and antitrust matters. During his tenure there, he built and litigated headline-grabbing cases and led significant international legal efforts, including negotiating a cross-border dispute that resulted in the extradition of ISIS terrorists to the United States to stand trial for the murder of American hostages. He also contributed to drafting provisions of the Ukraine Invasion War Crimes Deterrence and Accountability Act (2022), extending extraterritorial jurisdiction under the federal War Crimes Statute.

Earlier in his career, Scott investigated and led groundbreaking human rights litigation at the Center for Justice and Accountability, pursuing claims under the Alien Tort Statute, Foreign Sovereign Immunities Act, and Electronic Communications Privacy Act at the trial, appellate, and Supreme Court levels. There, he secured the first-ever war crimes judgment against Syria for the assassination of U.S. journalist Marie Colvin and successfully reinstated torture claims on appeal against former Haitian dictator Jean-Claude "Baby Doc" Duvalier.

In addition to his litigation practice, Scott serves as an adjunct professor at Georgetown Law, where he teaches human rights law and international investigations. He is fluent in French and is an accomplished rock and jazz musician.



## Markus Green

Partner

**EMAIL**
mgreen@dicellolevitt.com

**EDUCATION**
Rutgers Law School, J.D.

John Jay College of Criminal
Justice, B.S., *summa cum laude*

Markus Green is a seasoned advocate who dedicates his practice to empowering communities and consumers harmed by corporate wrongdoing. With more than 25 years of extensive global legal experience—spanning government service, corporate counsel, and complex litigation—Markus leverages his deep understanding of government and private sector dynamics to hold powerful interests accountable and protect the rights of marginalized people. As partner at DiCello Levitt, Markus specializes in representing public sector clients, including State Attorneys General, in consumer protection and civil rights litigation.

During his tenure at the New Jersey Office of the Attorney General, Markus served as Executive Assistant Attorney General and Chief of Staff, overseeing major litigation, coordinating significant policy initiatives, and managing interactions between various divisions within the office. Earlier in his career, Markus honed his prosecutorial skills as an Assistant District Attorney at the New York County District Attorney's Office, where he investigated and prosecuted complex felony white-collar crimes, identity theft, and fraud cases related to the aftermath of the September 11 attacks.

Markus brings a uniquely multifaceted perspective to his practice, informed by nearly two decades at Pfizer, where he held senior positions including Vice President and Assistant General Counsel. In this role, Markus managed nationwide government investigations and high-stakes litigation, skillfully navigating congressional inquiries and regulatory scrutiny. His global experience handling investigations across multiple countries—including Brazil, China, Egypt, Japan, and Nigeria—has given him a rare aptitude for handling nuanced, culturally complex disputes.

Central to Markus's approach is his commitment to amplifying the voices of communities historically underserved by legal systems. He actively seeks litigation opportunities that connect consumer rights with broader civil rights concerns, such as cases addressing discriminatory business practices that disproportionately affect communities of color. His advocacy emphasizes the crucial role State Attorneys General play as frontline consumer protectors, assisting their offices with strategic support and supplemental resources to effectively combat corporate misconduct.

Known for his empathetic advocacy, exceptional judgment, and ability to forge genuine connections, Markus is adept at building powerful coalitions among diverse stakeholders. His reputation for crisis management and innovative thinking has earned him recognition and accolades, including the National Black Prosecutors Association (NBPA) honoring him with the President's Award and naming their youth conference after him, Pfizer granting him its General Counsel Award, and the Appleseed Network giving him their Pillars of Justice Award.

Markus is deeply committed to public service and community engagement. He serves on numerous influential boards, including those of the Congressional Black Caucus Foundation, where he serves as Treasurer of its Executive Committee; Appleseed Network; and Grow, Unite, Build Africa (GUBA), where he advances educational opportunities and advocates for women's rights across the African diaspora. Markus also remains closely involved with his alma mater, John Jay College of Criminal Justice, guiding first-generation college students toward meaningful careers in public service.

Guided by an unwavering belief in the power of law as an instrument of justice and social equity, Markus continues to champion litigation that not only seeks remedies for past wrongs but also proactively shapes fairer, safer, and more just communities.



**Steven L. Groopman**
Partner

**EMAIL**
sgroopman@dicellolevitt.com

**EDUCATION**
George Washington University
Law School, J.D.

Brown University, A.B., *magna cum laude*

Steven L. Groopman is a seasoned class action attorney and a partner in DiCello Levitt's Antitrust and Competition Litigation Practice Group. He focuses primarily on high-stakes antitrust matters—with particular expertise in the health care sector—bringing a strategic, deeply researched approach to cases involving complex markets, sophisticated corporate conduct, and significant economic harm. He also has experience in consumer fintech litigation.

Steve is known for developing cutting-edge, proprietary cases—often before the issues receive mainstream coverage—through deep investigation and analysis. He has significant experience litigating on behalf of union health and welfare benefit funds, individual consumers, and small independent businesses against large corporate defendants. His health care antitrust practice has successfully challenged tactics used to delay, deter, and undermine generic and biosimilar competition, and other conduct affecting competition and pricing in pharmaceutical and health care markets. He also has developed and litigated antitrust claims in other sectors, including real estate and airlines.

Before joining DiCello Levitt, Steve was a partner in the Boston office of an esteemed class action and complex litigation firm. Earlier in his career, he clerked for the Hon. Dickinson R. Debevoise of the U.S. District Court for the District of New Jersey and practiced at a litigation and white-collar defense boutique in New York. During law school, Steve interned at the World Organization for Human Rights and for the Hon. Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York. He also served as a student-attorney in an appellate defender clinic. Prior to law school, he worked as a reporter-researcher at *The New Republic* in Washington, D.C.

Steve has been recognized by *Benchmark Litigation* as a Massachusetts Future Star and previously on its 40 & Under list in the plaintiff class action category. He has also been honored by Super Lawyers in the New England/Massachusetts jurisdiction and previously as a Rising Star.



## Greg G. Gutzler
Partner

**EMAIL**
ggutzler@dicellolevitt.com

**EDUCATION**
University of Michigan, J.D.

University of California –
Berkeley, B.A.

Greg Gutzler is the lawyer you call in the most high-conflict cases. He is relentless and one of the few lawyers with a track record of recovering billions of dollars for his clients. Greg is a trusted resource for taking on Wall Street giants, holding global corporations accountable for their misconduct, and battling billion-dollar defendants on behalf of survivors of sexual abuse and workplace discrimination. Whether securing a record-breaking $1 billion verdict or leading landmark human rights lawsuits, Greg brings an aggressive and strategic approach to every case. With experience on both sides of the courtroom, including leading his own boutique firm and serving as a partner at an Am Law 100 firm, he is the advocate for clients who, like him, refuse to back down.

Greg specializes in complex litigation, including complex commercial litigation, headline-making human rights and sexual abuse cases, securities actions, whistleblower cases, and claims involving discriminatory employment practices. Clients turn to him not just for his legal expertise but for his ability to manage high-intensity conflicts with confidence, precision, and compassion.

Greg is at the forefront of major human rights and sexual abuse cases. He was a critical part of the DiCello Levitt trial team that helped secure a $20.75 million jury victory against global bank BNP Paribas for financing genocide in Sudan—a landmark case that set a powerful precedent for financial accountability in international human rights cases. In addition, Greg serves as lead counsel in a civil suit against former fashion mogul Peter Nygard, involving the world's largest-ever sex trafficking case, which spans six countries and fifty years of abuse. He also represents survivors of sexual assault and sexual abuse in the case against World Wrestling Entertainment (WWE) and Vince and Linda McMahon, a prominent case against music and media giant Sean "Diddy" Combs, and the wide-ranging RICO and sex trafficking case against the NXIVM cult, among other high-profile sexual abuse cases.

Greg has led more than a dozen major actions against global investment banks, securing over $4.5 billion for investors. He has taken on contentious commercial disputes, representing businesses, hedge funds, private equity firms, and individuals in contract, valuation, and ownership conflicts, including a patent infringement case against DuPont in which he secured a $1 billion jury verdict using innovative damages theories that set new precedents.

Outside of his legal work, Greg lends his time and energy to causes that reflect his deep sense of justice and empathy. He volunteers with his rescue dog, Sugar, at a mental health and substance abuse treatment center, offering comfort and companionship to those in recovery. Additionally, he is actively involved with Justice for Our Daughters, a nonprofit dedicated to advocating for survivors of gender-based violence and ensuring their voices are heard.





## Eli Hare
Partner

**EMAIL**
ehare@dicellolevitt.com

**EDUCATION**
Tulane University School of Law, J.D.

University of Alabama, University Honors College, B.A., *cum laude*

Eli Hare is a trial attorney focusing on mass torts, civil and human rights violation cases, personal injury, environmental contamination, and employment discrimination disputes. He represents people and public entities victimized by companies that cause harm by manufacturing and selling defective products, chemicals, and medical devices. People who have had their constitutional rights trampled on by governmental institutions and those who have suffered discrimination in the workplace because of their race, gender, or sexuality also rely on Eli to provide effective, hands-on legal counsel.

Deeply involved in every stage of litigation, Eli's experience includes briefing and arguing motions, leading complex discovery, overseeing expert work, and managing the review of millions of documents produced in discovery. Eli is involved in litigation in state and federal courts across the United States, as well as before administrative bodies and in alternative dispute resolution forums.

Eli was recently appointed to the Plaintiffs Executive Committee of the *In re Future Motions Inc. Products Liability Litigation* and the Leadership Development Committee of the *In re Hair Relaxer Marketing Sales Practices and Products Liability Litigation*.

Prior to joining DiCello Levitt, Eli worked with a prominent, national plaintiffs'-side law firm, where he represented people injured by wrongful conduct, environmental contamination, and civil rights abuses. He also worked at a large defense firm, where he represented businesses, municipalities, and nonprofit organizations through all stages of litigation. Prior to beginning his legal practice, Eli served as a judicial extern to a federal judge in the U.S. District Court for the Northern District of Alabama.



**Justin J. Hawal**
Partner

**EMAIL**
jhawal@dicellolevitt.com

**EDUCATION**
Cleveland Marshall College of Law, J.D., *cum laude*

Saint Louis University, B.A., *cum laude*

Justin Hawal has a broad range of experience representing clients nationwide in complex mass tort, class action, civil and human rights, and catastrophic injury litigation.

Justin has played a key role in several trials yielding millions of dollars in verdicts, including cases involving police misconduct, catastrophic injuries, and death due to governmental and corporate wrongdoing. He is heavily involved in multiple nationwide mass torts, including multidistrict litigation related to defective hair relaxers, preterm infant formula, and baby foods contaminated with toxic heavy metals. He has also been integrally involved in major nationwide class actions, representing consumers and governmental entities against corporate giants such as Equifax, Marriott, Netflix, Hulu, and Sonic Healthcare USA, among others.

Justin is an integral member of the DiCello Levitt team pursuing claims against some of the largest social media companies in the world for their alleged role in the 2022 Buffalo mass shooting in Buffalo, New York. He represents South Carolina's Greenville Water system in ongoing litigation against U.S. Pipe and its distributors over defective ductile iron pipes installed in the public utility's water system. And he is a key member of the team that filed the largest single international sex trafficking lawsuit in U.S. history, brought against former fashion mogul Peter Nygard, alleging a decades-long conspiracy involving rape, sexual assault, and human trafficking across the U.S., Canada, and the Bahamas.

Justin's work also extends to appellate practice, where he has briefed and argued cases in appellate courts across the country, including intermediate appellate courts in Ohio, New York, and South Carolina, the Supreme Court of Ohio, the Supreme Court of Tennessee, and the U.S. Court of Appeals for the Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits. Most recently, Justin led the appeal in a federal civil rights case involving a fatal police shooting, in which the Sixth Circuit affirmed the denial of summary judgment on qualified immunity grounds, clearing the way for the family's excessive force claims to proceed to trial.

Justin was recently named to *Benchmark Litigation*'s 40 & Under list, was one of only 40 attorneys nationwide to be named a 2021 Rising Star by *The National Law Journal*'s Elite Trial Lawyers, and has been named a Super Lawyers Rising Star annually since 2020. Justin was also awarded Public Justice's 2021 Trial Lawyer of the Year for his work on the trial team in *Black v. Hicks*, a groundbreaking civil rights case involving shocking police misconduct and resulting in a $50 million jury award.



## Steve Jodlowski
Partner

**EMAIL**
stevej@dicellolevitt.com

**EDUCATION**
California Western School of Law,
J.D., *cum laude*

University of Central Oklahoma,
B.M.

For nearly 20 years, Steve Jodlowski has been actively involved in a variety of cases involving securities fraud, antitrust, competition, corporate takeover, consumer fraud, and commercial litigation. Representing investors, shareholders, and policyholders, he has recovered nearly $2 billion for clients around the world.

Steve has represented institutional and individual shareholders in corporate takeover actions and breach of fiduciary litigation in state and federal court. He has handled pre- and post-merger litigation stemming from the acquisition of publicly listed companies in the biotechnology, oil and gas, information technology, specialty retail, electrical, banking, finance, and real estate industries, among others.

In recent years, he has specialized in representing investors in a series of antitrust actions involving the manipulation of benchmark rates, including the *ISDAfix Antitrust Litigation*, which resulted in the recovery of $504.5 million on behalf of investors, and the *SSA Bonds Antitrust Litigation*, which resulted in the recovery of $95.5 million on behalf of investors. He served as co-lead class counsel in *Thompson v. 1-800 Contacts, Inc.*, where he helped recover $40 million in settlements from various contact lens retailers. Steve also served on the trial team in an antitrust monopolization case against a multinational computer and software company and represented more than 100 newspaper publishers in the *Google Digital Advertising Antitrust Litigation*.

*Super Lawyers* named Steve a "Rising Star" for five straight years. He was also named a finalist for Consumer Attorneys of California's Attorney of the Year Award for his work in *Negrete v. Allianz Life Insurance Co. of North America* and more recently was recognized by the American Antitrust Institute's Antitrust Enforcement Awards for the category of Outstanding Antitrust Litigation Achievement in Private Law Practice. Based in part on his work in the ISDAfix and SSA Bonds litigation, his antitrust group was named by *Law360* as Competition Practice Group of the Year for 2019 and recognized by *The National Law Journal* as a finalist in its list of 2020 Elite Trial Lawyers in the antitrust category.



## Amy Keller, CIPP/US
Partner

**EMAIL**
akeller@dicellolevitt.com

**EDUCATION**
John Marshall Law School, J.D.
(*n/k/a The University of Illinois at Chicago School of Law*)

University of Michigan, B.A.

Amy Keller has held leadership positions in a variety of complex litigations across the nation, where she successfully litigated high-profile and costly data security and consumer privacy cases. As the Managing Partner of the firm's Chicago office and the Privacy, Technology, and Cybersecurity practice chair, she is the youngest woman ever appointed to serve as co-lead class counsel in a nationwide class action. In the multidistrict litigation against Equifax related to its 2017 data breach, Amy represented nearly 150 million class members and helped to secure a $1.5 billion settlement, working alongside federal and state regulators to impose important security practice changes to protect consumer data.

Amy has represented consumers against industry titans like Apple, Marriott, Electrolux, and BMW, securing victories against each. She has been appointed to leadership positions in more multidistrict litigations than any other woman in the past eight years, each case requiring sophistication in not only understanding complex legal theories, but also in presenting multifaceted strategies and damages modeling to ensure favorable results. For example, in leading a nationwide class action related to a data breach that exposed the confidential information of over 300 million individuals, Amy worked with her team to develop an argument recognized by the trial court that the loss of someone's personal information, alone, could trigger financial liability, and later secured a rare victory, certifying that case to proceed as a class action to trial. In another matter, Amy defended her team's victory all the way to the U.S. Supreme Court, ensuring that consumers would be able to band together as a class when a company defrauds them for small amounts individually that are worth millions of dollars in the aggregate.

Amy is rated by *Chambers & Partners* for her work in cybersecurity litigation and is an elected member of the American Law Institute. She serves on the Steering Committee of the Sedona Conference's Working Group 11, which focuses on advancing the law on issues surrounding technology, privacy, artificial intelligence, and data security, and she is also on drafting teams for both Model Data Breach Notification Principles and Statutory Remedies and the California Consumer Privacy Act. Her work in cybersecurity and privacy has been recognized many times over—in both 2021 and 2022, she was honored as one of Benchmark Litigation's Top 250 Women in Litigation; in 2020 and 2021, she was named by *The National Law Journal* as one of the Elite Women in the Plaintiffs' Bar; and the practice group which she chairs has won Practice Group of the Year in 2020, 2021, and 2022 by *Law360* and in 2020 by *The National Law Journal*. Amy is also recognized by Illinois Super Lawyers as a "Rising Star," and was named a "trailblazer" by *The National Law Journal.* In 2022, Amy was named to the "40 Under 40" list for *Crain's Chicago* for her leadership in litigation roles and promoting diversity and inclusivity in the bar.

Amy proudly holds leadership positions in both the American Association for Justice and the Public Justice Foundation, organizations which both focus on access to the courts for civil litigants.





## David Middleman
Partner

**EMAIL**
dmiddleman@dicellolevitt.com

**EDUCATION**
Oklahoma City University School of Law, J.D.

University of Houston, B.S.

During the past three decades, David Middleman has built and advanced large-scale litigation on behalf of people harmed by defective pharmaceutical products, medical devices, toxic exposures, and other corporate misconduct. With a focus on identifying emerging cases and further strengthening DiCello Levitt's mass tort capabilities, he helps position the firm at the forefront of high-impact litigation against some of the world's largest corporations.

David has represented plaintiffs in all 50 states in matters involving catastrophic personal injury, wrongful death, commercial automobile and trucking accidents, product liability, toxic torts, premises liability, and claims against multinational pharmaceutical and health care companies.

David is widely recognized for developing a scalable approach to mass tort litigation, combining national client outreach, strategic partnerships, and disciplined case development to efficiently build and support high-volume dockets. He co-founded Pulaski & Middleman, a firm dedicated almost exclusively to pharmaceutical and medical device litigation, where he helped develop and manage tens of thousands of claims nationwide and contributed to recoveries totaling billions of dollars. Earlier in his career, he co-founded Middleman Levin, launching the firm immediately after law school and growing its practice through innovative client engagement strategies.

At DiCello Levitt, David leverages this experience to help drive the firm's mass tort efforts from the earliest stages of case development through resolution. His work draws on a deep network within the plaintiffs' bar and a longstanding ability to evaluate claims, structure litigation strategies, and scale complex matters efficiently. He also brings experience advising on litigation finance and case valuation, including work on large-scale portfolios and bankruptcy-related matters.

Throughout his career, David has remained focused on ensuring that individuals harmed by corporate misconduct have meaningful access to justice, particularly in cases where the scale and complexity of the litigation would otherwise put relief out of reach.



**Brian O'Mara**
Partner

**EMAIL**
briano@dicellolevitt.com

**EDUCATION**
DePaul University College of Law, J.D.

University of Kansas, B.G.S.

Brian O'Mara is the managing partner of DiCello Levitt's San Diego office and a partner in the Las Vegas office. His practice focuses on investigating and prosecuting complex securities, antitrust, and consumer protection litigation in state and federal courts across the United States. Brian also leads the firm's new shareholder matters group, which evaluates new cases, advises institutional clients in connection with lead plaintiff motions, and assists them in securing appointment as lead plaintiff.

Over the past 20 years, Brian has served as lead or co-lead counsel in numerous shareholder, consumer protection, and antitrust actions involving companies in the financial services, technology, pharmaceutical, entertainment and gaming, and telecommunications industries, which have yielded billions of dollars in recoveries. He has helped institutional investors protect their fund investments by securing leadership positions in dozens of securities and antitrust actions and has been responsible for a number of significant trial and appellate court rulings in the securities and antitrust space.

Prior to joining DiCello Levitt, Brian was a partner at a leading complex litigation law firm and served as chief underwriter officer for a global private equity and advisory firm specializing in litigation finance, judgment enforcement, asset recovery, and related strategies serving claimants, law firms and other professional service firms, and businesses across the globe. In this capacity, Brian was responsible for directing the firm's underwriting process for prospective investments and managing the firm's investment portfolio, which included litigation and arbitration disputes in jurisdictions around the world.

Brian has been twice recognized by the American Antitrust Institute's Antitrust Enforcement Awards for the category of Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in the ISDAfix price-fixing litigation and the EpiPen class action alleging antitrust and RICO violations. He has also been named a Super Lawyer by *Super Lawyers Magazine* for the past six consecutive years and recognized as a Leading Plaintiff Financial Lawyer by *Lawdragon*.

Brian graduated from the University of Kansas with a degree in economics, and he received his law degree from DePaul University College of Law, where he was the recipient of a CALI Excellence for the Future Award in securities regulation. Following graduation, Brian began his legal career serving as the law clerk to the Honorable Jerome M. Polaha in the Second Judicial District Court for the State of Nevada.



**Roxana Pierce**
Partner

**EMAIL**
rpierce@dicellolevitt.com

**EDUCATION**
Thomas Jefferson School of Law, J.D.

Pepperdine University, B.A.

Sorbonne University, France, *with honors*

DiCello Levitt Partner Roxana Pierce is the co-founder of the firm's Securities Practice Group and an international attorney who brings a unique level of diversity and experience to her litigation practice, protecting investor rights and the rights of victims of consumer fraud, waste, and abuse.

Representing governmental and private pension funds, large institutional investors, attorneys general, international banks, asset managers, foreign governments, multi-national corporations, and sovereign wealth funds and individuals, Roxana has served clients from more than 20 states and 82 countries, with extensive experience in the Middle East, Europe, and Asia. Zealous and passionate, Roxana advocates for her clients through litigation, arbitration, mediation, and in negotiations.

Roxana represents clients in consumer protection, securities, products liability, contracts, and other claims in private, group, and class actions. Prior to joining DiCello Levitt, Roxana became a seasoned attorney through her experience working on cases against the world's largest pharmaceutical and automobile manufacturers as well as litigation concerning the 2008 global financial crisis. In addition, Roxana's background includes contract negotiations for hundreds of projects, including several valued at more than $1 billion, with governmental and corporate leaders both foreign and domestic.

When recognizing DiCello Levitt as a Recommended Firm in the Securities Litigation: Plaintiff category, *The Legal 500* highlighted the Securities Practice Group for its "outstanding technical skills and the capacity to listen to clients and take their concerns on board." The publication also commended Roxana for her "outstanding skills in proactive communication." In addition, Roxana was named a Leading Plaintiff Financial Lawyer by *Lawdragon* in 2024.

Deeply committed to serving her community, Roxana serves as Director and Board member to The Invisible Hand Foundation, Inc., which provides funding to Washington, D.C. and Maryland-area residents facing hardships. For her work with that organization, Roxana was honored by the National Center for Children and Families with the Humanitarian Spirit Award for Advocacy.

Roxana studied French at the Sorbonne University in France before earning her bachelor's degree in international affairs and international relations from Pepperdine University. She is fluent in Farsi and proficient in French and Turkish. Roxana began her legal career as a paralegal with focus on corporate law, receiving her certificate from the University of San Diego. She earned her Juris Doctor from Thomas Jefferson School of Law, where she focused on international law.





## Adam Prom
Partner

**EMAIL**
aprom@dicellolevitt.com

**EDUCATION**
The University of Texas School of Law, J.D.

Marquette University, B.A., *magna cum laude*

Adam Prom has contributed significantly to and led a variety of complex litigations that have resulted in settlements worth hundreds of millions of dollars. He has represented consumers and employees, businesses of all sizes, survivors of sexual violence, whistleblowers, and public entities in all manner of cases, including those involving consumer protection, privacy, product liability, False Claims Act *qui tam,* and business disputes.

Adam's practice focuses on complex business disputes, representing both plaintiffs who have been harmed by others' unscrupulous business practices and defendants who have been unfairly accused of the same. Adam is also a leading advocate in headline-making human rights and sexual abuse cases, representing survivors in high-profile matters against disgraced music and media mogul Sean 'Diddy' Combs, the NXIVM cult in a sweeping RICO and sex trafficking case, World Wrestling Entertainment (WWE), and Vince and Linda McMahon, among others.

Adam's broad knowledge base and experience sets him apart and allows him to successfully traverse any subject matter, all the while focusing on redressing harm caused by others. Adam has represented individuals and businesses against industry titans like Google, Meta, CVS, Nissan, and Navistar. He has been listed annually since 2019 by *Super Lawyers* as an Illinois Rising Star and now an Illinois Super Lawyer, and the American Bar Association honored him with the On The Rise – Top 40 Young Lawyers Award in 2023.

In addition to monetary recoveries for the firm's clients, Adam also pursues important injunctive relief to correct business practices moving forward. In one case, in addition to a settlement fund of $21 million, Adam served as part of a team that obtained an agreed injunction to ensure the humane treatment of animals.

Adam has substantial trial experience in state and federal court, and he has successfully led and won multiple arbitrations for individuals and businesses in forums like AAA and JAMS, including a multi-day arbitration against a multi-billion dollar group of trusts.

Adam has demonstrated a commitment to public service and has been active in multiple legal advocacy organizations including Public Justice, the American Association for Justice, and other state and federal bar associations.





## Corban Rhodes

Partner

**EMAIL**
crhodes@dicellolevitt.com

**EDUCATION**
Fordham University School of Law, J.D., *cum laude*

Boston College, B.A., *magna cum laude*

Corban Rhodes is a seasoned litigator who has recovered more than a billion dollars for consumers and investors in some of the country's largest and most historic cybersecurity, data privacy, and securities fraud cases. Working at the intersection of law and technology, Corban focuses on cases that involve the intentional misuse or misappropriation of consumer data and data breaches.

As co-lead plaintiffs' counsel in the *Facebook Biometric Information Privacy Litigation* matter, Corban helped secure a landmark $650 million settlement in one of the first cases asserting consumers' biometric privacy rights under Illinois law. He has litigated cases of negligence or malfeasance leading to data breaches, including a class action against Yahoo for one of the largest known data breaches in history that affected nearly 3 billion consumers. Continuing his groundbreaking work at this critical moment for privacy rights and the law, he currently represents consumers in pivotal web browser privacy cases, including in *Calhoun v. Google* and *Google RTB Consumer Privacy Litigation*.

Corban also prosecutes complex securities fraud cases on behalf of institutional investors, representing both large public pension funds and individual investors. He successfully resolved dozens of cases against some of the largest Wall Street banks in the wake of the mortgage-backed securities financial crisis. His work in securities fraud cases has held companies accountable to investors for fraud and market manipulation in the banking, pharmaceutical, and manufacturing sectors in some of the largest securities class actions of the last decade.

Corban has been recognized by *Law360* as a Rising Star and as one of five attorneys on its Top Attorneys Under 40 for Consumer Protection. He was also named by *Benchmark Litigation* as a Future Star and on its New York 40 Under 40 list and by *Super Lawyers* as a New York Rising Star, and he received a Thurgood Marshall Award for his pro bono representation of a death row inmate appealing from capital punishment. He is an active member of the Sedona Conference Working Group 11 on Data Security and Privacy Liability and sits on the *Law360* Cybersecurity & Privacy Editorial Board. He is a regular speaker and writer on issues related to protecting the rights of the individual against corporate malfeasance.



## Doug Rochen
Partner

**EMAIL**
drochen@dicellolevitt.com

**EDUCATION**

California Western School of Law, J.D.

University of Michigan, B.A.

Douglas Rochen is a distinguished trial attorney recognized for his dynamic advocacy and unwavering commitment to clients nationwide. As a partner at DiCello Levitt, Doug's practice is focused on single-event catastrophic injuries and sexual abuse litigation.

Doug has secured numerous significant verdicts and settlements, achieving justice and substantial compensation for victims of traumatic brain injury, paralysis, amputation, catastrophic orthopedic loss, severe sensory impairments, and wrongful death. He has obtained multiple seven- and eight-figure awards, including a more than $25 million settlement in product defect cases, a $14.5 million personal injury settlement involving a cycling accident, and a $9 million award for defective roadway design where pedestrians were struck by an errant vehicle. He was also part of the landmark $114 million settlement against the prison in Dublin, California, in which each victim was awarded an average of $1.2 million.

In his advocacy for survivors of sexual abuse, Doug has secured landmark settlements and verdicts in complex cases against powerful entities and individuals. Most recently, Doug was Liaison Counsel in a historic $4 billion settlement for survivors of sexual abuse in Los Angeles County's juvenile detention and foster care systems—the largest payout of its kind in U.S. history. He represented over 2,000 individuals subjected to sexual abuse, assault, and harassment while incarcerated in California jails and prisons, addressing systemic abuses such as those at the Federal Correctional Institution in Dublin, within the Los Angeles County juvenile justice system, and at various women prisons in California, all known as sites of rampant misconduct.

A respected leader within the legal community, Doug has been an active member of the American Association for Justice, holding key leadership roles to influence legislation protecting vulnerable populations. Additionally, his service with the Consumer Attorneys of California (CAOC) and Consumer Attorneys Association of Los Angeles (CAALA) reflects his commitment to ensuring fair treatment for victims of corporate misconduct. He also has authored numerous articles in prominent legal journals and magazines on topics ranging from workers' compensation to rights of sexual abuse survivors to the use of experts in product liability cases.





## Henry Rosen
Partner

**EMAIL**
hrosen@dicellolevitt.com

**EDUCATION**
University of Denver, J.D.

University of California, San Diego, B.A.

Henry Rosen is a results-driven litigator with over three decades of experience recovering money on behalf of institutional and individual investors. A leading attorney in securities fraud class actions, he has obtained more than $1 billion in monetary recovery for investors.

Henry has significant experience running all aspects of large, complex litigation. From ensuring his institutional and individual investor clients are prepared for depositions and court, to overseeing massive document reviews, to handling hundreds of depositions, to preparing pleadings and for oral argument before the court, Henry is a hands-on and meticulous attorney.

Some of Henry's notable representations in large complex securities fraud class actions include:

- *In re Cardinal Health, Inc. Securities Litigation*: This $600 million settlement is the largest recovery ever in a securities fraud class action in the U.S. Court of Appeals for the Sixth Circuit.
- *Jones v. Pfizer Inc.*: A $400 million settlement was reached on the eve of trial for investors in this misclassification of revenue case.
- *In re FirstEnergy*: Recovered $89.5 million for investors in a securities fraud class action after this Ohio utility company artificially inflated its stock price through false statements and omissions.

Henry is the lead litigator responsible for the ongoing 2016 Brazilian arbitration against Petrobras before the Bovespa panel in São Paulo, Brazil, a case brought by 24 institutional investors, including the largest sovereign wealth funds globally and public pension funds across the United States.



## **Dan Schwartz**
Partner

**EMAIL**
dschwartz@dicellolevitt.com

**EDUCATION**
New York University School of
Law, J.D., *magna cum laude*, Order
of the Coif

Brandeis University, Ph.D.
Candidate, M.A.

Vassar College, B.A.

Dan Schwartz works for individuals, small businesses, and public clients in complex multidistrict, commercial, public client, and class action litigations and arbitrations. An experienced litigator with deep knowledge of a wide range of matters, Dan has successfully represented clients in high stakes disputes involving, among other things, affirmative and defensive antitrust claims, fraud, the False Claims Act, consumer privacy, FLSA class and collective actions, trade secret misappropriation, the Anti-Kickback Statute, defamation, securities fraud, toxic tort, bankruptcy, the Affordable Care Act, and patent matters.

Dan has also represented clients on appeal in a number of significant cases in state and federal courts, including arguing a First Amendment matter of first impression in the Seventh Circuit Court of Appeals. He previously worked for several major international law firms and clerked for the Honorable Carlos T. Bea of the U.S. Court of Appeals for the Ninth Circuit.

Dan graduated *magna cum laude* from New York University School of Law and was elected to the Order of the Coif. Prior to his legal career, Dan graduated Phi Beta Kappa from Vassar College and earned a Master of Arts from Brandeis University. He is a proficient Russian speaker.





## Michael D. Shroge
Partner

**EMAIL**
mshroge@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of
Law, J.D.

Cleveland State University, B.A.

Michael Shroge has dedicated his career to securing justice for individuals and families devastated by medical negligence and catastrophic injury. As a partner in DiCello Levitt's Cleveland office, Michael is a relentless advocate for victims of medical malpractice, poor nursing home care, high-stakes personal injury, and wrongful death claims. A top-tier trial lawyer with decades of experience navigating complex medical litigation, he has built a reputation for representing patients against powerful hospitals and clinics, physicians and health care workers, and other corporate health care entities that fail them.

A former elite figure skater, Michael represented the United States at the 1988 Junior World Championships and competed on the U.S. National Figure Skating Team for several years before turning his focus toward academics and the courtroom. After earning his law degree from Cleveland-Marshall College of Law, he began his legal career on the defense side, working at one of Ohio's largest medical malpractice defense firms and later serving as associate general counsel at the Cleveland Clinic.

Over the years, Michael has secured significant victories for victims of medical negligence, including in a nearly decade-long case that reached the Supreme Court of Ohio, where he fought to overturn a lower court ruling and allow his client's case to proceed. His cases have spanned birth injuries, wrongful deaths caused by medication errors, and emergency room failures that led to preventable tragedies. In one particularly striking case, Michael successfully represented a widow whose husband died of a heart attack after a hospital emergency department illegally refused to treat him, securing justice for the grieving family and exposing systemic failures in hospital emergency care.

Michael's relentless pursuit of justice extends beyond the courtroom. He has been a powerful advocate in the Ohio Legislature, lobbying for laws that protect the rights of injured patients and ensure fair compensation for victims of medical malpractice. His contributions to legal reform have earned him multiple Distinguished Service Awards from the Ohio Association for Justice.
Recognized as an Ohio Super Lawyer for over a decade, Michael is also a sought-after speaker on legal ethics, professionalism, and trial strategy. Outside of his practice, Michael remains active in his community, dedicating his time to local arts initiatives and youth sports programs.





## Anna Claire Skinner
Partner

**EMAIL**
askinner@dicellolevitt.com

**EDUCATION**
Vanderbilt University Law School, J.D., Order of the Coif

Washington and Lee University, B.A., *cum laude*

Anna Claire represents governmental entities, individual consumers, and corporate clients, with the primary purpose of the protection of human health and the environment. She has litigated cases in both administrative tribunals and state and federal court from inception through settlement and trial. She has experience with numerous environmental statutes and regulations, including the Clean Water Act, the Clean Air Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Emergency Planning and Community Right-to-Know Act, and the Resource Conservation and Recovery Act.

Anna Claire is part of the DiCello Levitt team working with several states in investigating and addressing poly- and perfluoroalkyl substance (PFAS) contamination and polychlorinated biphenyls (PCB) contamination. DiCello Levitt's environmental team works with state attorneys general in pursuing claims against PFAS and AFFF manufacturers and PCB manufacturers for damage that these contaminants have done to state natural resources and the environment.

Anna Claire also represents public clients in litigation seeking to hold the world's largest fossil fuel companies accountable for decades of deception concerning climate change and the costs and other consequences that climate change is imposing on those governments.

Anna Claire is a leader of the law and briefing committee in In re Bio-Lab Class Actions, a case in which DiCello Levitt was appointed Co-Lead Counsel on behalf of more than 90,000 residents and business owners in Conyers, Georgia, and the surrounding area who have been affected by a catastrophic chemical fire.

Anna Claire and DiCello Levitt's environmental team served as Co-Lead Counsel in the Rockton, Illinois community's class action against Chemtool Incorporated, Grasley v. Chemtool, Inc., No. 2021-L-0000162 (Winnebago Cty.), for contamination resulting from a chemical plant fire that burned for days, which required the evacuation of the surrounding community and resulted in contamination of properties for miles around the plant, which settled for $94.5 million. Anna Claire and DiCello Levitt's environmental team also joined with co-counsel in representing several residents and former residents of Union, Illinois in filing suit against companies responsible for polluting the groundwater with carcinogenic chlorinated solvents.





## Peter Soldato
Partner

**EMAIL**
psoldato@dicellolevitt.com

**EDUCATION**
University of Chicago Law School, J.D.

Butler University, B.A.

Peter Soldato is a tireless advocate for clients in and out of the courtroom, representing people harmed by corporate negligence and systemic failures in health care, elder care, and policing. He focuses his practice on complex litigation involving civil rights violations, catastrophic injuries, and wrongful death, bringing a relentless commitment to accountability and justice in high-stakes cases.

Peter began his career in the public sector, honing his courtroom skills as a major crimes prosecutor, and later served as a public defender, where he built a reputation for compelling advocacy on behalf of marginalized and underserved communities.

As a graduate of the Trial Lawyer's College and a contributing member of the DiCello Levitt Trial Center, Peter has had repeated success using focus group analysis to distill even the most complex cases into clear and compelling narratives that judges and juries can understand, resulting in positive outcomes for clients across a wide range of disputes.

Peter has played a central role in securing significant courtroom victories for his clients. Recently, he helped lead the trial team that obtained a $5.7 million jury verdict against Hitachi Healthcare Americas Corporation after the company sold a defective MRI system under false pretenses. The case exposed deceptive practices in the medical imaging resale market, holding a major manufacturer accountable for misrepresenting the quality and capabilities of refurbished diagnostic equipment and resulted in a jury verdict for compensatory and punitive damages.

Peter is actively litigating several civil rights cases challenging the use of excessive force by law enforcement. He represents multiple individuals in lawsuits against the City of Canton, Ohio, alleging that police officers improperly deployed K-9 units against unarmed and compliant individuals during arrests. The lawsuits raise serious questions about how police dogs are trained, supervised, and deployed, and seeks both substantial damages and reforms to ensure that K-9 units are not used as weapons against members of the community.

Peter also focuses a large part of his practice on representing the elderly and their families in cases involving nursing home negligence and wrongful death, holding long-term care facilities accountable for systemic lapses in resident care and safety.

In addition to his trial work, Peter has secured meaningful results in pro bono matters for people harmed by wrongful prosecutions and institutional failures. In one such pro bono matter, Peter obtained the dismissal of 33 criminal charges, including arson and attempted murder, against a Cleveland resident who had spent nearly two years wrongfully incarcerated while awaiting trial. In another matter, Peter secured the acquittal of a city's mayoral candidate after an incumbent mayor had accused the candidate of committing assault during a campaign event. After Peter's skillful cross-examination of the incumbent mayor—during which it was made clear that the charges were simply an attempt to stifle a perceived political opponent—the jury acquitted the candidate after less than 20 minutes of deliberation.

In his free time, Peter contributes to his local community by coaching youth soccer teams. He is also a member of the Board of Directors for the Cleveland Metropolitan Bar Foundation and the Cleveland Academy of Trial Attorneys.



**David A. Straite, CIPP/US**
Partner

**EMAIL**
dstraite@dicellolevitt.com

**EDUCATION**
Villanova University School of Law, J.D., *magna cum laude*, Managing Editor, *Villanova Law Review,* and Order of the Coif

Tulane University, Murphy Institute of Political Economy, B.A.

David is one of the nation's leading voices for the recognition of property rights in personal data, a 10-year effort culminating in the Ninth Circuit's landmark April 2020 decision in *In re: Facebook Internet Tracking Litigation* and the Northern District of California's March 2021 decision in *Calhoun v. Google*, both of which he argued. David also successfully argued for the extraterritorial application of the Computer Fraud and Abuse Act in 2019 in *In re: Apple Device Performance Litigation*, and filed the first-ever data privacy class action under seal to address a dangerous website vulnerability under Court supervision in *Rodriguez v. Universal Prop. & Cas. Ins. Co.* As M.I.T. Technology Review magazine put it, David is "something of a pioneer" in the field. In September 2022, Law360 named him a Cybersecurity/Privacy "MVP." He also protects investors in securities, corporate governance, and hedge fund litigation in federal court and in the Delaware Court of Chancery, admitted to practice in both New York and Delaware.

David is a former adjunct professor at Yeshiva University's Sy Syms School of Business, teaching Business Law and Ethics every fall semester from 2015-2021. He has co-authored *Dobbs Ruling Means It's Time to Rethink Data Collection* in Law360 (2022), *Google and the Digital Privacy Perfect Storm* in E-Commerce Law Reports (UK) (2013), authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009), and was a contributing author for Maher M. Dabbah & K.P.E. Lasok, QC, Merger Control Worldwide (2005). He speaks frequently on topics related to both privacy and investor protection.

David co-chairs the firm's Diversity, Equity and Inclusion Committee, which seeks to promote diversity within the firm and the legal profession generally. In 2022, David was also appointed to the LGBTQ Rights Committee of the New York City Bar Association, whose mission is to address "legal and policy issues in legal institutions and in the court system that affect lesbian, gay, bisexual, transgender and queer individuals."

David also co-chairs the firm's Artificial Intelligence Working Group, tasked with vetting new AI products and related contracts; coordinating firm-wide training; drafting all relevant AI policies; and leading the AI ethics subcommittee. David has presented on numerous panels addressing the law of AI.

Prior to joining the firm, David was a partner with Kaplan Fox & Kilsheimer LLP, and helped launch the US offices of London-based Stewarts Law LLP before that, where he was the global head of investor protection litigation. Prior to joining the plaintiffs' bar, David was an associate with the New York office of Skadden Arps Slate Meagher & Flom LLP.





## Carrie Syme
Partner

**EMAIL**
csyme@dicellolevitt.com

**EDUCATION**
New York University School of Law, J.D., *cum laude*

Yale University, B.A., *magna cum laude*

Carrie Syme is a partner in DiCello Levitt's Antitrust and Competition Litigation Practice Group, bringing a formidable background in complex litigation, government enforcement, and trial advocacy. With over a decade of experience prosecuting high-stakes antitrust violations for the U.S. Department of Justice, Carrie is a tenacious advocate for those harmed by corporate misconduct and collusion.

Carrie was instrumental in DiCello Levitt's historic trial victory against BNP Paribas for financing genocide in Sudan—a landmark $20.75 million verdict that set a powerful precedent for financial accountability in international human rights cases.

Before joining DiCello Levitt, Carrie served for 13 years as a trial attorney in the DOJ's Antitrust Division, including more than two years as Assistant Chief of its New York office, where she led investigations and prosecutions involving price-fixing, bid-rigging, and market allocation conspiracies. She played a pivotal role in some of the division's largest and most complex cases, including on the winning trial team in *United States v. Apple Inc.* concerning the e-books market and a landmark series of criminal prosecutions of major banks and traders engaged in foreign currency exchange market manipulation.

Carrie also played a critical role in the DOJ's criminal enforcement efforts against anticompetitive employment practices, leading the investigation and prosecution against executives of major aerospace industry companies in one of the first criminal no-poach cases. Her extensive trial experience has sharpened her ability to navigate the most intricate antitrust disputes, making her a formidable litigator in the courtroom.

Prior to her government service, Carrie spent more than a decade at a prominent full-service law firm, where she handled commercial and intellectual property litigation for a diverse range of clients.



## John E. Tangren
Partner

**EMAIL**
jtangren@dicellolevitt.com

**EDUCATION**
University of Chicago Law School, J.D., *with honors*

University of Chicago, B.A., *with honors*

As Chair of the Firm's Consumer Products Group, John Tangren has exclusively represented plaintiffs for the past decade in multistate automotive defect class actions. In addition to the hundreds of millions of dollars he's recovered for his clients, he also obtained nearly half a million dollars in sanctions for discovery misconduct in a class action involving unintended acceleration in Ford vehicles. Most recently, John was a member of a trial team and led plaintiffs' presentation on damages in a multi-state class action involving oil consumption of trucks and sports-utility vehicles, in which the jury awarded the class $102.6 million. The verdict—a rarity in class action litigation—is one of the highest-ever achieved for an automotive defect class action, setting the bar for litigating similar cases across the country. In another case, involving ignition switch defects, John served as Settlement Allocation Counsel in a blockbuster $121.1 million settlement against General Motors.

John's professional accomplishments are among the most impressive in the country. He has recovered hundreds of millions of dollars in product defect cases, including $600 million for property damage caused by an herbicide, $135 million for defective heavy truck engines, and $45 million and $40 million in cases involving defective SUV parts, all while setting himself apart as an expert legal writer and tactician.

John's expertise in legal writing is recognized in the community; John frequently presents to other lawyers on how to best communicate their message, present advocacy in compelling ways, and use tools and technology to streamline the process. He also presents on other topics—ranging from communications with absent class members at an annual antitrust conference, to issues related to Article III standing in the federal court system. Some of his other presentations have included a lecture to members of the Chicago Bar Association concerning the Class Action Fairness Act and its impact on litigation since its passage, the use of discovery tools and techniques for electronically-stored information, and how to avoid legal ethics violations and liability for malpractice by following established protocols and procedures.

John has been recognized as an Illinois Super Lawyer, in the National Trial Lawyers "Top 40 Under 40," and as an Emerging Lawyer by the Law Bulletin Publishing Company.



**Geralyn Trujillo**
Partner

**EMAIL**
gtrujillo@dicellolevitt.com

**EDUCATION**
University of Texas at Austin School of Law, J.D.

Georgetown University, B.S.

Geralyn Trujillo is a partner in DiCello Levitt's New York office and a member of the Antitrust and Competition Litigation Practice Group. With extensive experience litigating antitrust matters on behalf of government entities and as defense counsel, Geralyn brings a unique strategic perspective to her cases.

Before joining DiCello Levitt, Geralyn spent fifteen years in government service enforcing the antitrust laws at both the state and federal level. During her tenure at the Federal Trade Commission's Bureau of Competition, she served as lead attorney in significant matters resulting in commission victories and led investigations across a variety of industries, including healthcare, digital platforms, medical devices, consumer goods, and industrial products. At the Office of the New York State Attorney General, Geralyn investigated anticompetitive conduct and litigated cases involving pricing fixing and anticompetitive mergers and acquisitions.

Prior to her work in government, Geralyn spent ten years at an esteemed multinational law firm, representing public and private companies in antitrust matters, including mergers and acquisitions, civil antitrust litigation, and government investigations.

Geralyn is an active member of the Executive Committee and Diversity Committee of the New York State Bar Association's Antitrust Law Section and is a member of the American Bar Association's Antitrust Section.



**Anne Box**
Senior Counsel

**EMAIL**
abox@dicellolevitt.com

**EDUCATION**
University of Tulsa, College of Law, J.D.

University of Tulsa, B.S.

Anne Box is a strategic and results-driven trial lawyer with a deep background in securities, antitrust, and other complex litigation. She serves as senior counsel in DiCello Levitt's Securities and Financial Products Practice Group in San Diego, where she represents institutional investors and banks in cases against major financial institutions and corporations that engage in fraud and deceptive practices.

Before joining DiCello Levitt, Anne Box built an extensive litigation career spanning civil and criminal cases. As a partner at a prominent complex securities litigation firm, she represented institutional investors in high-stakes securities fraud class actions, supervising litigation teams from complaint through trial preparation and settlement negotiations. She played a key role in securing significant recoveries, including a $7.2 billion settlement in the landmark *In re Enron Corporation Securities Litigation* and a groundbreaking case against major credit rating agencies for their role in the subprime mortgage crisis. Later, as counsel at another distinguished firm, Anne continued advocating for investors and businesses harmed by financial misconduct, litigating cases involving mortgage-backed securities fraud, breach of fiduciary duty, and antitrust violations in the pharmaceutical sector.

Anne founded and operated her own law firm, where she advised corporate executives on compensation and employment matters and consulted on complex litigation. Her diverse experience also includes serving as a chief felony prosecutor in Texas, where she tried over 100 jury trials to verdict, and litigating energy disputes on behalf of major oil companies early in her career. She also served as an articles editor for the *Energy Law Journal* while in law school.

Outside of her legal practice, Anne is committed to community service. She is the president of the Friends of the Mission Hills-Hillcrest/Knox Library, supervising 60-plus volunteers and providing support to the San Diego Public Library branch by organizing programs, operating a bookstore, and hosting fundraising events. She also volunteers with KSDS Jazz 88.3 FM, supporting the station's fundraising efforts and community outreach programs.



## Elton H. Darby III
Senior Counsel

**EMAIL**
edarby@dicellolevitt.com

**EDUCATION**
University of Alabama School of Law, J.D

University of Mississippi, B.A., *magna cum laude*

Elton Darby is a senior counsel at DiCello Levitt's Birmingham, Alabama, office. He believes authenticity, empathy, and understanding are critical to building trust and effectively advocating for his clients. With focus on mass tort, personal injury, and civil and human rights litigation, Elton puts his passion and experience to work for individuals who have suffered injury and injustice at the hands of others.

Prior to joining DiCello Levitt, Elton represented individuals, small companies, small financial institutions, and large corporations in business-related disputes, including general liability, workers' compensation, premises liability, and bankruptcy. He chose his current direction in representing individual clients because he wants to make a difference in the lives of the most vulnerable, rather than defending those with the most power.

Elton received his Juris Doctor from the University of Alabama School of Law. During law school, he worked in the Civil Law Clinic, helping students and local residents in West Alabama address legal issues that local law firms would not pursue. He also served as senior editor of the *Civil Rights and Civil Liberties Law Review*.





## Kathleen Herkenhoff
Senior Counsel

**EMAIL**
kherkenhoff@dicellolevitt.com

**EDUCATION**
Pepperdine University School of Law, J.D.

University of California, Berkeley, B.A.

Kathleen Herkenhoff is a veteran complex litigation attorney with more than 30 years of experience representing government entities, institutional investors, pension funds, and individuals in securities, consumer, antitrust, and shareholder derivative litigation, as well as representing both individuals and classes in employment and data privacy matters. She has appeared in courts nationwide, at both the state and federal level, and has frequently litigated before the Judicial Panel on Multidistrict Litigation and the Ninth Circuit Court of Appeals. As senior counsel in DiCello Levitt's San Diego office, she brings a proven record of success of more than $1.5 billion recovered for clients and advancing corporate governance reforms.

Kathleen has secured leadership appointments in a number of high-stakes securities and consumer class actions, achieving appellate victories and delivering meaningful results for investors and consumers harmed by corporate misconduct. Known for her meticulous preparation, strategic insight, and keen ability to frame complex cases, she ensures that cases advance efficiently from complaint through discovery, briefing, and resolution.

Among her recent achievements, Kathleen co-chaired the Law and Briefing Committee in *In re Apple Device Performance Litigation*, successfully defending the $310 million settlement on appeal, and represented the CalSTRS public pension fund in *In re Facebook Derivative Litigation*, in which she successfully defeated defendants' attempt to obtain dismissal of the case on demand futility grounds. She also played a central role in securing her former firm's leadership position in *In re FTX Cryptocurrency Litigation* with a focus on the claims against the auditors that historically provided services to the various FTX entities.

At the outset of her legal career, Kathleen served as a staff attorney at the U.S. Securities and Exchange Commission, where she prosecuted securities fraud and insider trading cases, securing a $22 million judgment in a complex offering fraud. She then joined a large class action litigation firm, where she served as a partner and helped to obtain recoveries exceeding $1 billion in litigation involving HealthSouth ($671 million), AOL Time Warner ($618 million), Mattel ($122 million), Honeywell International ($100 million) and many other corporate entities, including large value recoveries and enhanced corporate governance improvements in shareholder derivative actions.

In 2010, Kathleen spearheaded the launch of a boutique firm's California office, managing its securities class and shareholder derivative actions through early 2017. In that role, she secured leadership positions and obtained multimillion-dollar settlements in cases such as *In re Diamond Foods Inc. Shareholder Derivative Litigation* and drafted innovative Foreign Corrupt Practices Act-related reforms in *In re SciClone Pharmaceuticals Inc. Shareholder Derivative Litigation*, which a judge described as "the most detailed and extensive corporate governance changes" she had seen in a derivative settlement.

Kathleen's background also includes serving as a partner at a law firm focused on employment litigation—including individual, class, and PAGA actions—while continuing her securities and consumer work. Prior to joining DiCello Levitt, Kathleen worked on behalf of a local government, allowing for additional insight into the effective defense of public entities. Her passion, however, has always been in practicing in the field of securities class and shareholder derivative actions. One of her fondest memories in litigation to date was successfully arguing before the Ninth Circuit Court of Appeals to defeat a writ by a competing movant to the appointment of her former firm's client as Lead Plaintiff in a securities class action.



## Alexius Miller
Senior Counsel

**EMAIL**
amiller@dicellolevitt.com

**EDUCATION**
University of California, Hastings College of the Law, J.D. (n/k/a University of California College of the Law, San Francisco)

Indiana University, B.A.

Alexius Miller is a seasoned litigator with more than two decades of experience adeptly navigating complex litigation. Known for her analytical insight, strategic diligence, and meticulous attention to detail, Alexius consistently crafts compelling arguments and innovative approaches that secure meaningful outcomes for her clients. As senior counsel at DiCello Levitt, she represents plaintiffs in complex mass torts and civil rights litigation. Her legal background, spanning private practice and government roles, uniquely equips her to anticipate opposing counsels' tactics and vigorously advocate for clients facing systemic injustices and corporate misconduct.

Alexius has a proven track record advocating for plaintiffs in high-stakes civil rights, consumer protection, whistleblower, and class action cases. Previously, she served as a Deputy Attorney General at the California Office of the Attorney General, where she spearheaded sophisticated investigations and litigation involving whistleblower allegations related to financial wrongdoing and corporate governance. Alexius also served as in-house counsel at the Judicial Council of California, handling sensitive litigation and providing strategic guidance in cases involving judicial entities, and as a staff attorney for the Ninth Circuit Court of Appeals.

Among her notable successes, Alexius has secured impactful, high-dollar settlements, including a $1.1 billion resolution in litigation addressing disability access violations by California's transportation department and a $95.5 million settlement in litigation involving fraudulent recruitment practices by Education Management Corporation to obtain federal funding. She has also achieved significant victories on complex summary judgment and other dispositive motions in cases involving civil rights violations and consumer protection claims.

Outside of our legal practice, Alexius has served as a law lecturer at the University of California Hastings College of the Law (now the University of California College of Law) and Temple University in Tokyo, Japan, where she developed curricula and taught courses in legal research and writing, moot court, and appellate advocacy. Her passion for teaching consistently earned her recognition as Best Moot Court Professor at UC Hastings.



## Caroline Robert
Senior Counsel

**EMAIL**
cmrobert@dicellolevitt.com

**EDUCATION**
University of San Diego School of Law, J.D.

University of San Diego, B.A., *magna cum laude*

Caroline Robert is a senior counsel in DiCello Levitt's Securities and Financial Services Litigation practice based in San Diego. Her practice is focused on representing institutional investors in complex securities litigation matters. With a history of high-stakes victories against Wall Street banks and large corporations, she has an impressive track record of success for clients impacted by financial misdeeds or securities regulations violations.

In the wake of 2008's worldwide financial crisis, Caroline played an integral role in litigation that secured settlements on behalf of institutional investors against Wall Street banks for their part in structuring residential mortgage-backed securities (RMBS) that subsequently collapsed. These matters included the high-profile action brought by China Development Industrial Bank (CDIB) against Morgan Stanley to recover losses CDIB suffered as a result of its investment in the STACK 2006-1 collateralized debt obligation tied to RMBS. Caroline's experience also includes representation of international institutional investors impacted by Volkswagen and Daimler's defeat device emissions scandal in representative actions in Germany under the Capital Market Investors' Model Proceeding Act (KapMuG).

Prior to joining DiCello Levitt, Caroline represented clients in complex securities litigation matters and also gained experience in real estate litigation and transactions for financial institutions and other related clients.

Committed to pro bono work, Caroline has provided legal counsel through the Immigration Legal Clinic at the University of San Diego School of Law and received honor's recognition for her service. She has also provided pro bono service through the San Diego Legal Aid Society, which garnered her the State Bar of California's prestigious Wiley W. Manuel Award.

Born and raised in France, Caroline is multilingual; she is fluent in French, English, and Spanish. She holds a bachelor's degree from the University of San Diego, where she double-majored in international relations and Spanish language and literature. Caroline earned her Juris Doctor at the University of San Diego School of Law and is admitted to practice law in California, New York, and the District of Columbia.



## Jarett Sena
Senior Counsel

**EMAIL**
jsena@dicellolevitt.com

**EDUCATION**
Fordham University School of Law,
J.D., cum laude

University of Wisconsin-Madison,
B.A., Phi Beta Kappa

Jarett Sena is a senior counsel in DiCello Levitt's New York office whose practice focuses on counseling institutional investor clients around the world and litigating securities-related matters and complex commercial disputes on their behalf. He has litigated all aspects of securities opt-out and business valuation matters in courts around the country. Specifically, Jarett has successfully prosecuted securities opt-out litigation, class actions, appraisal proceedings, breach of fiduciary duty cases, and other complex commercial disputes on behalf of investors.

Prior to joining DiCello Levitt, Jarett was the Director of Litigation Analysis at ISS Securities Class Action Services, where he provided unbiased guidance and analysis to pension fund, asset manager, sovereign wealth, private wealth, and hedge fund clients on securities-related matters in the U.S. and abroad. In his role, Jarett also developed an opt-out monitoring service to help clients make informed decisions about whether to pursue direct action. Prior to ISS, Jarett worked for several prominent, New York-based plaintiffs' firms, where he represented institutional investors in securities fraud matters, business valuation disputes, fiduciary duty claims, and other complex commercial disputes and class actions from inception through trial.

An experienced litigator, Jarett has been an integral trial team member in high-profile bench trials in the Delaware Court of Chancery. He was also a leading member of a team named Kids in Need of Defense's 2021 Newark Pro Bono Team of the Year for its work achieving asylum for a father forcibly separated from his son.



## James Ulwick
Senior Counsel

**EMAIL**
julwick@dicellolevitt.com

**EDUCATION**
Loyola University Chicago, J.D., *cum laude*

Kenyon College, B.A.

James Ulwick is a senior counsel in DiCello Levitt's Chicago office with experience litigating complex commercial cases and actions involving serious injuries. He represents individuals, businesses, and public entities in a wide range of disputes, protecting their interests in state and federal courts across the country.

Prior to joining the firm, James was an insurance defense attorney, representing individuals, corporations, and local municipalities through all stages of litigation.

He has successfully argued for the dismissal of several suits, including their subsequent appeals in multiple state courts of appeal, and has successfully obtained favorable resolutions for his clients through dispositive motions, mediation, and settlement. While this experience was valuable, James joined the firm because he wanted to pivot his focus from defending insurance companies to protecting consumers and those injured by corporate malfeasance.

Outside of the office, James has focused on assisting in the development of the next generation of trial and appellate litigators by coaching the Loyola University Chicago National Health Law Moot Court Team.



## Robert J. DiCello
Of Counsel

**EMAIL**
rjdicello@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

John Carroll University, B.A., *magna cum laude*

A co-founder of one of DiCello Levitt's predecessor firms, Robert DiCello has amassed more than 45 years of professional experience and an extensive list of seven- and eight-figure recoveries for victims of injustice. He has deep experience in a wide range of class actions, personal injury cases, complex mass torts, and probate matters. Over his long and successful career, he has won multiple appeals before the Ohio Supreme Court.

Robert put himself through Cleveland-Marshall College of Law while working as a safety director at U.S. Steel Corporation. While in law school, he was selected to join the *Cleveland-Marshall Law Review*. He began his legal career as an assistant prosecutor in the Lake County Prosecutor's Office and later become President of the Lake County Bar Association. He formed his own firm in 1978, managing it with great success over nearly 40 years until its members founded DiCello Levitt.





## Tricia McCormick
Of Counsel

**EMAIL**
tmccormick@dicellolevitt.com

**EDUCATION**
University of San Diego School of
Law, J.D., *cum laude*

University of Michigan, B.A.

Tricia McCormick represents institutional investors and individuals in securities class action cases. As a member of a team that maintains contact with clients who wish to become actively involved in securities fraud litigation, Tricia is active in all phases of the firm's lead plaintiff motion practice.

Tricia has litigated numerous cases against public companies in state and federal courts that have recovered hundreds of millions of dollars for investors. She has been instrumental in securing appointment of clients as lead plaintiff in dozens of cases across the United States that have resulted in significant recoveries for the classes.

Before joining DiCello Levitt, Tricia worked for 25 years at a prominent complex litigation firm where she focused on securities litigation, litigated derivative actions, and helped establish the firm's lead plaintiff group.



## Timothy R. O'Reilly
Of Counsel

**EMAIL**
toreilly@dicellolevitt.com

**EDUCATION**
University of Nevada, Las Vegas,
William S. Boyd School of Law, J.D.

University of Nevada, Las Vegas,
B.S.

Timothy R. O'Reilly is an accomplished attorney who oversees DiCello Levitt's Las Vegas office. Tim combines extensive litigation experience with a focus on complex business disputes and catastrophic personal injury matters. He has also advised clients on a broad range of transactional matters, including business and real estate transactions, gaming law, and regulatory compliance.

Tim's advocacy is defined by his commitment to achieving exceptional results, whether through strategic pretrial motions or compelling representation in bench and jury trials. His broad experience and client-centered approach make him a trusted partner in navigating high-stakes legal challenges.

Tim has also offered legal counsel in select criminal matters and administrative proceedings across Nevada, including representing professional athletes in various capacities. Committed to advancing the legal profession, Tim has served as a mentor in the State Bar of Nevada's Transitioning Into Practice (TIP) program, where he provides invaluable guidance and support to newly admitted attorneys, sharing the insights and experience that have defined his distinguished career.

Before joining DiCello Levitt and the O'Reilly Law Group, where he serves as president, Tim worked at the Clark County District Attorney's Criminal Appeals Division, where he drafted appellate briefs for cases before the Clark County District Court, Nevada Supreme Court, and United States Supreme Court. He also served at the Nevada Attorney General's Office in the Department of Transportation, contributing to the Litigation Division's work on eminent domain and condemnation cases.

While in law school, Tim completed judicial externships with Chief Justice William A. Maupin of the Nevada Supreme Court and Chief Judge Lee Gates of the Clark County District Court. Additionally, he clerked in the DUI Division of the Clark County District Attorney's Office, where he assisted with case preparation and grand jury hearings.

Born and raised in Las Vegas, Tim has established himself as a leader in the local culture and a dedicated member of the community. His journey embodies the spirit of a true Las Vegas local. While serving as the starting placekicker for the University of Nevada, Las Vegas, Tim earned multiple academic honors, including recognition as a UNLV Football Scholar Athlete, while pursuing his ultimate goal of attending law school at UNLV.

Today, Tim continues to grow in his professional career and business ventures while remaining deeply rooted in the Las Vegas community. His commitment to giving back to the city he will always call home has only strengthened over time.

Together with his wife, Tamara, Tim is raising their four children in Las Vegas, ensuring his legacy of connection and service continues. He is also a founding board member of Lexicon Bank, where he remains an active member of the Board of Directors. Established in 2019, Lexicon Bank serves as a community-focused financial partner for professionals, small businesses, and nonprofits across Southern Nevada.





## Stephanie Schroder
Of Counsel

**EMAIL**
sschroder@dicellolevitt.com

**EDUCATION**
University of Kentucky, College of Law, J.D.

University of Kentucky, B.A.

Stephanie Schroder is the Co-Head of the U.S. Securities Practice Group at DiCello Levitt. Based in the firm's San Diego office, Stephanie has more than twenty-four years of experience representing institutional investors, including public and multi-employer pension funds, in complex securities litigation and providing counsel on corporate fraud matters. She is deeply committed to advancing accountability and transparency in the United States and global financial markets.

Stephanie has represented institutional investors in securities fraud litigation that has resulted in billions of dollars in collective recoveries. Before joining DiCello Levitt, Stephanie was part of a team that obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest securities class action settlement ever. Additional prominent cases include: *In re AT&T Corp. Sec. Litig.* ($100 million recovery at trial); *In re FirstEnergy Corp. Sec. Litig.* ($89.5 million recovery); *Rasner v. Sturm* (*FirstWorld Communications*); and *In re Advanced Lighting Sec. Litig.* Stephanie also specializes in derivative litigation for breaches of fiduciary duties by corporate officers and directors. Significant litigation includes *In re OM Grp. S'holder Litig.* and *In re Chiquita S'holder Litig.* Stephanie previously represented clients that suffered losses from the historic Madoff fraud in the *Austin Capital* and *Meridian Capital* litigations, which were also successfully resolved. In addition, Stephanie is a frequent lecturer on securities fraud, shareholder litigation, and options for institutional investors seeking to recover losses caused by securities and accounting fraud.

Stephanie is a member of the Bar in California and Kentucky. She earned her Bachelor of Arts degree from the University of Kentucky and her Juris Doctor degree from the University of Kentucky, College of Law. In 2006, she helped campaign for her father, the late Justice Wil Schroder, who was elected to the Kentucky Supreme Court and served from 2007, until his retirement in January 2013.





## Adam Teitelbaum
Of Counsel

**EMAIL**
ateitelbaum@dicellolevitt.com

**EDUCATION**
University of Michigan Law School, J.D., *magna cum laude,* Order of the Coif

University of Maryland, B.A., *cum laude*

Adam Teitelbaum is a seasoned litigator who has devoted his career to protecting consumers from deceptive and unfair business practices. With more than a decade of experience ideating and leading complex matters, he focuses on novel and emerging consumer protection issues across industries, representing state and local governments in cases that level the playing field for consumers.

Most recently, Adam served as director of the Office of Consumer Protection in the District of Columbia Office of the Attorney General, where he led and supervised hundreds of litigation and pre-suit investigation consumer protection matters. In that role, he oversaw high-profile, boundary-pushing actions, regularly taking on the world's largest companies, including Big Tech and Big Oil. He led and supervised the District's lawsuits against TikTok, alleging that the company operated an intentionally addictive platform that harmed children and ran an illegal virtual currency system in violation of District law, and against Meta, alleging that it designed addictive features that harmed young users. He also supervised the District's landmark $15.2 million settlement with Juul—the largest litigated recovery under the District's consumer protection law at the time. Also while at the Office of the Attorney General, Adam served as Lead Counsel in the housing discrimination case against DARO Management Services that resulted in a $10 million civil penalty, the largest in a housing discrimination case in U.S. history.

Under Adam's leadership, the Office of Consumer Protection pursued matters spanning data privacy, deceptive fees and pricing, dark patterns, predatory marketing and lending practices, and other consumer fraud actions. He led case development and strategy, argued key motions and led settlement negotiations in high-profile cases, reviewed and edited hundreds of pleadings, and testified before the D.C. Council on legislation affecting consumers. He also supervised a mediation program that resolved thousands of consumer complaints annually and has returned millions of dollars to D.C. residents.

Before joining the District of Columbia Office of the Attorney General, Adam served as a deputy city attorney in Los Angeles, where he led consumer fraud, data privacy, and wage theft actions, including a novel privacy case against IBM related to location tracking and a wage theft case that resulted in a record $1.6 million stipulated judgment with full restitution for workers. He previously practiced complex commercial litigation at global firms and clerked at the U.S. Court of Appeals for the Fifth Circuit and the U.S. District Court for the Central District of California.



## Jordan A. Thomas
Of Counsel

**EMAIL**
jthomas@dicellolevitt.com

**EDUCATION**
Southwestern Law School, J.D.

Bennington College, B.A.

Jordan Thomas is a trailblazing whistleblower advocate whose practice is dedicated to representing individuals reporting violations of federal securities laws. Jordan established the nation's first whistleblower practice exclusively focused on securities law violations, securing precedent-setting whistleblower awards and launching many of the U.S. Security and Exchange Commission's most high-profile cases. He was one of the principal architects of the SEC Whistleblower Program, and his pioneering work in private practice has been profiled in leading publications such as *The New Yorker*, *The New York Times*, and *NPR*.

Jordan's clients won one of the largest single-case SEC whistleblower awards in history—more than $83 million—for reporting misconduct at Merrill Lynch, which led to a $415 million settlement with the commission. In addition to significant monetary recoveries, Jordan has represented clients in landmark matters, including the first officer of a public company to win an SEC whistleblower award, the first SEC whistleblower to receive criminal immunity, and the first SEC whistleblower to receive a whistleblower award based on retaliation by his company.

A longtime public servant and seasoned trial lawyer, Jordan entered private practice from the SEC, where he served as an assistant director and, previously, as an assistant chief litigation counsel in the Division of Enforcement. In helping create the SEC Whistleblower Program, he led fact-finding visits to other federal agencies with whistleblower programs, drafted proposed legislation and implemented rules, and briefed House and Senate staffs on proposed legislation. Throughout his tenure at the SEC, he investigated, litigated, and supervised a wide variety of enforcement matters and was assigned to many of the commission's highest-profile actions, including those involving Enron, Fannie Mae, UBS, and Citigroup. His SEC enforcement cases have resulted in more than $35 billion in monetary sanctions and relief for harmed investors.

Before joining the SEC, Jordan was a trial attorney at the Department of Justice, specializing in complex financial services litigation involving the Federal Deposit Insurance Corporation and Office of Thrift Supervision. He began his legal career as a Navy judge advocate on active duty and recently retired as a captain in the Navy's Reserve Law Program. While in law school, he worked as a stockbroker.

Jordan has held leadership roles in the legal community, including serving as chair of the Investor Rights Committee of the District of Columbia Bar and as a board member of the City Bar Fund, the pro bono affiliate of the Association of the Bar of the City of New York. He is also a nationally recognized writer, speaker, and media commentator on securities enforcement, corporate ethics, and whistleblower issues.

Jordan understands the importance of client anonymity. With this in mind, he gives clients and potential clients the option to communicate with him through secure and encrypted applications such as Signal and Telegram.

Beyond his legal practice, Jordan regularly volunteers in the NICU of his local children's hospital.





## Ryder Thomas
Of Counsel

**EMAIL**
rthomas@dicellolevitt.com

**EDUCATION**
University of the Pacific,
McGeorge School of Law, J.D.

Cornell University, M.B.A.

University of Georgia, B.A.

Ryder Thomas counsels hedge funds, pension funds, sovereign wealth funds, family offices, and large multi-class asset managers on matters related to corporate fraud, investor rights, and securities-related litigation in the U.S. securities markets and abroad.

Ryder began his career as a lawyer in the San Diego and San Francisco offices of a national law firm, where he focused on securities, mergers and acquisitions (M&A), antitrust, and consumer class action litigation. He subsequently joined a highly esteemed San Francisco complex litigation boutique, where he litigated complex financial cases on behalf of private and public companies, bankruptcy trustees, and creditors' committees as both plaintiffs' and defense counsel.

In addition to his deep legal experience, Ryder has a diverse financial background. As an investment banker in the San Francisco office of GCA Savvian (since acquired by Houlihan Lokey), he specialized in M&A and private capital transactions on behalf of high-growth technology companies. Later, as a founding member of the hedge fund coverage group at Houlihan Lokey, he worked with multi-strategy hedge funds on idea generation as well as M&A, public and private financings, complex valuations, and financial restructuring engagements across industry verticals.



**Robert G. Wilson**
Of Counsel

**EMAIL**
rwilson@dicellolevitt.com

**EDUCATION**
University of Michigan Law
School, J.D., *magna cum laude*

Albion College, B.A., *cum laude*

Robert Wilson is a former senior Securities and Exchange Commission enforcement official whose career spans more than two decades investigating and prosecuting federal securities law violations by some of the world's largest corporate and financial institutions. With extensive experience across every phase of the enforcement process — from initiating investigations through trial and settlement — Bob brings unparalleled insight into representing SEC whistleblowers and others seeking accountability in complex securities matters.

During 25 years with the SEC's Division of Enforcement, Bob held multiple leadership roles, including Deputy Assistant Director and Branch Chief. In those positions, he selected and planned enforcement actions, supervised investigative teams, negotiated settlements, and litigated cases in federal court. He successfully prosecuted and oversaw scores of high-impact matters involving corporate accounting fraud, auditor misconduct, foreign bribery, broker-dealer and investment adviser fraud, and insider trading.

Bob played a central role in some of the SEC's most significant enforcement actions, including landmark Foreign Corrupt Practices Act cases such as *SEC v. Halliburton Co. and KBR, Inc.*; *SEC v. Albert J. Stanley*; *SEC v. Technip*; *SEC v. ENI S.p.A. and Snamprogetti Netherlands, B.V.* — the largest set of related FCPA actions ever brought by the commission. Those matters resulted in approximately $400 million in disgorgement paid to the SEC, and more than $1.2 billion in criminal fines and restitution. Bob also led other parallel investigations with the U.S. Department of Justice, including *SEC v. Sean Healy*, involving a $20 million Ponzi scheme that resulted in a 15-year criminal sentence.

Before joining the SEC, Bob served at the U.S. Department of Commerce's International Trade Administration, enforcing U.S. trade laws and agreements, and spent five years as a Revenue Officer with the Internal Revenue Service. After leaving the SEC, he founded Pelican Partners LLC, a legal and financial consulting firm, and co-founded the first law firm exclusively dedicated to representing SEC whistleblowers.

Bob's work has earned him significant recognition, including being named a Securities Litigation Star by Benchmark Litigation and receiving the SEC's Chairman's Award for Excellence.





## Hani Farah
Senior Associate

**EMAIL**
hfarah@dicellolevitt.com

**EDUCATION**
University of San Diego School of Law, J.D., *cum laude*

University of California, San Diego, B.A., *cum laude*

Hani Farah is a senior associate in DiCello Levitt's San Diego office and a part of the Securities and Financial Services Litigation practice. Hani advises investors who have suffered losses due to fraud in the securities markets and has nearly 10 years of experience litigating securities fraud class action cases. He also advises and represents institutional investors with respect to individual securities actions, providing investors with options for recovery of their investment losses outside of class actions.

Prior to joining DiCello Levitt, Hani practiced at two leading national securities litigation law firms and collaborated with and learned from some of the best securities fraud class action lawyers in the country. He has served on litigation teams that successfully prosecuted securities fraud class actions against corporations in the insurance, health care, and veterinary industries, securing tens of millions of dollars in settlements. He also played a critical role in the representation of institutional investors in numerous securities opt-out cases, including actions against Valeant Pharmaceuticals, American Realty Capital Properties, Teva Pharmaceuticals, and Symantec Corporation, among others. Additionally, Hani has significant experience advising investors on international securities matters, including shareholder actions in Europe, Asia, South America, and Australia.

Hani graduated *cum laude* from the University of California, San Diego, where he studied political science and history, before earning his law degree from the University of San Diego School of Law in 2015, also graduating *cum laude*. He has been recognized by the National Trial Lawyers as a Top 40 Under 40 Civil Plaintiffs' Lawyer in the state of California.



## Justin S. Abbarno
Associate

**EMAIL**
jabbarno@dicellolevitt.com

**EDUCATION**
The Ohio State University Moritz
College of Law, J.D.

The University of Dayton, B.A.,
*summa cum laude*

Justin Abbarno is an aggressive, creative, results-oriented trial lawyer whose practice focuses primarily on medical malpractice, nursing home neglect, catastrophic injury, sexual assault, product liability, and mass torts. He is steadfast in his devotion to seeking justice and works to hold individuals and businesses accountable for the harms that his clients have suffered.

Justin has litigated multiple jury and bench trials to verdict, as well as multiple arbitrations to final decision. An advocate for advancing the craft of trial practice, he is a contributing member of the DiCello Levitt Trial Center, where he helps attorneys fine-tune their cases through focus groups and mock trials.

During law school, Justin was a key member of The Ohio State University's award-winning Moritz College of Law's Mock Trial Team. He also received the Michael F. Colley Award, as a top mock trial performer in the 2020 graduating class and was named Best Attorney during the 2019 Ohio Attorney General's Mock Trial Competition. Before law school, Justin graduated from the University of Dayton, *summa cum laude*, where he was elected to serve the undergraduate student body as a representative for the UD Student Government Association and was appointed to serve as the Speaker of the Student Body Senate. During his undergraduate studies, Justin worked on a successful Senate campaign and was an intern in the United States House of Representatives. Justin was also a member of UD's NCAA Division 1 FCS Football program and was named to the Pioneer Football League's All-Academic Team.



**Omega L. Adams**

Associate

**EMAIL**
oadams@dicellolevitt.com

**EDUCATION**
Flagler College, B.A., *magna cum laude*

Samford University, Cumberland School of Law, J.D., *magna cum laude*

Omega Adams' practice includes mass tort litigation, complex personal injury cases, and civil and human rights advocacy. Representing clients from diverse communities across the United States, Omega challenges systemic and corporate misconduct—from negligent manufacturing and dangerously defective products to discriminatory practices in the workplace and abuses of power by government actors.

Guided by the conviction that every person is entitled to the full protections and privileges promised under the law, Omega is dedicated to securing justice for those who have been marginalized, silenced, or left behind by the legal system. Omega approaches each case with authenticity, empathy, and an unwavering commitment to understanding every client's unique experiences.

While attending law school, Omega clerked at DiCello Levitt and served as student materials editor for the *Cumberland Law Review*, Vol. 55. She was also a member of the nationally ranked Cumberland National Trial Team, earning recognition as a quarterfinalist at the AAJ Student Trial Advocacy National Competition for two consecutive years and serving as the James O. Haley federal trial competition director. During her tenure on Cumberland's trial team, Omega garnered numerous advocacy honors, including the Loyola National Civil Trial Competition Ethical Advocacy Award, William J. Peeler Advanced Advocacy Award, Michael V. Rasmussen Outstanding Advocate Award, Sara L. Williams Best 2L Advocate Award, and Drexel Battle of the Experts Trial Outstanding Advocate Award.





## Kelsey Anderson
Associate

**EMAIL**
kanderson@dicellolevitt.com

**EDUCATION**
University of California College of the Law, San Francisco, J.D.

Université Paris-Panthéon-Assas, LL.M.

Columbia University, School of International and Public Affairs, Master of European Law

University of Southern California, B.A.

Kelsey Anderson is an associate in DiCello Levitt's San Diego office. As part of the Securities and Financial Products Litigation Practice Group, she uses her experiences to understand the needs of domestic and international clients and help them protect their investments and maximize their recoveries in fraud-related disputes. Representing individual shareholders and business entities in private, group, and class actions, Kelsey is dedicated to recouping her clients' wrongfully lost assets.

Prior to joining DiCello Levitt as an associate, Kelsey worked as law clerk for the firm, compiling legal research and managing the evidence database for international securities litigation. While at the University of California College of Law, San Francisco, Kelsey participated in the Haiti Justice Partnership, where she interviewed asylum seekers at the U.S.-Mexico border and contributed to a report submitted to the Inter-American Commission on Human Rights. She worked in-house through the Corporate Counsel Externship Program at Recology, a recycling and sustainable waste management company, and served as senior articles editor for the *UC Law Journal*. Kelsey's legal career has included a judicial externship for the Honorable Justice Joshua P. Groban at the Supreme Court of California and a legal clerkship focusing on land use and housing legislation.

Kelsey completed her law degree at the University of California College of the Law, San Francisco, and a Master of Law at Université Paris-Panthéon-Assas. Prior to law school, she earned a Master of International Affairs from Columbia University, School of International and Public Affairs, and a Bachelor of Arts in communication from the University of Southern California. She has worked in the human rights nonprofit sector, in digital media, and in foreign language education. Kelsey has lived in the United States, Japan, the United Kingdom, France, and Colombia.



## Emma Bruder
Associate

**EMAIL**
ebruder@dicellolevitt.com

**EDUCATION**
Benjamin N. Cardozo School of
Law, J.D.

University of Michigan, Ann Arbor,
B.A.

Emma Bruder is an associate in DiCello Levitt's New York Office whose practice focuses on data privacy and cybersecurity, representing plaintiffs affected by wrongful use or exposure of their private information. She also works on high-profile cases involving sexual abuse, trafficking, and civil rights violations, helping to advance justice for survivors and other vulnerable individuals.

Prior to joining DiCello Levitt, Emma practiced at an esteemed New York-based plaintiffs' firm, where she worked on plaintiff class actions in cybersecurity and data privacy, employment and labor, and civil rights law. While at Yeshiva University's Benjamin N. Cardozo School of Law, Emma served as notes editor for the *Cardozo Journal of Equal Rights and Social Justice*. She also interned at the Legal Aid Society's Domestic Violence Unit, the Manhattan District Attorney's Office, the Bronx Defenders' Family Defense Practice, and the Queens District Attorney's Office's Domestic Violence Bureau.

Emma received her Bachelor of Arts from the University of Michigan, where she majored in sociology, concentrating in law, justice, and social change, and minored in creative writing and philosophy. At Michigan, Emma was also selected to perform in the wind ensemble as a flutist, and she volunteered at the Sexual Assault Prevention and Awareness Center.



## Elizabeth Carpenter
Associate

**EMAIL**
ecarpenter@dicellolevitt.com

**EDUCATION**
Loyola University Chicago School of Law, J.D.

DePaul University, B.A.

Elizabeth Carpenter is an associate in DiCello Levitt's Chicago office, where her practice is focused on protecting human health and the environment. Combining her commitment to environmental law with her knowledge of public policy, Elizabeth provides clients with a deeper understanding of the evolving environmental issues that shape their cases.

Elizabeth is part of the DiCello Levitt team working with several states in investigating and addressing poly- and perfluoroalkyl substance (PFAS) contamination and polychlorinated biphenyls (PCB) contamination. DiCello Levitt's environmental team works with state attorneys general in pursuing claims against PFAS and AFFF manufacturers and PCB manufacturers for damage that these contaminants have done to state natural resources and the environment.

Elizabeth also represents public clients in litigation seeking to hold the world's largest fossil fuel companies accountable for decades of deception concerning climate change and the costs and other consequences that climate change is imposing on those governments.

Elizabeth is a member of the discovery committee in In re Bio-Lab Class Actions, a case in which DiCello Levitt was appointed Co-Lead Counsel on behalf of more than 90,000 residents and business owners in Conyers, Georgia, and the surrounding area who have been affected by a catastrophic chemical fire.

Prior to joining DiCello Levitt, Elizabeth was the sole judicial law clerk for the Acting Presiding Judge of Law Division of the Circuit Court of Cook County, where she assisted on more than 200 written opinions, and served as the Motion Section Pool Clerk Coordinator. While studying at Loyola University Chicago School of Law, Elizabeth worked as a research assistant to professors James Thuo Gathii and Steven Ramirez and as the head law clerk for a nationally recognized, Chicago-based plaintiffs' law firm.

Elizabeth is dedicated to serving in volunteer positions which advance the rule of law and democracy. Elizabeth is the co-chair of the Chicago Bar Association's Environmental Law Committee, where she coordinates and teaches CLE for Chicago attorneys seeking greater expertise on emerging environmental law issues. Elizabeth also serves on the Chicago Bar Association's Board of Managers. On the state level Elizabeth serves on the League of Women Voters of Illinois Board of Directors and in the General Assembly of the Illinois State Bar Association. Elizabeth's pursuit of environmental advocacy and justice also led her to serve on the League of Women Voters Lake Michigan Region Board of Directors as a representative of the State of Illinois.





Noah Cozad is an associate in DiCello Levitt's New York office litigating antitrust class actions against some of the world's largest and most powerful companies across diverse industries, including technology, agriculture, and entertainment. Noah works hard to ensure consumers and businesses can recover from the harms caused by unlawful price-fixing and monopolistic conduct.

Noah has contributed to a number of cases, including multiple class actions brought against meat packing companies for alleged price fixing; a class action brought by pharmacies alleging inflated fees and conspiracy to restrain trade; and a class action against manufactured home community owners for alleged conspiracy to fix home lot rental prices.

In law school, Noah acted as a community mediator in disputes, such as parenting and neighbor conflicts. After law school, he worked as a judicial clerk for a trial court judge in Minneapolis. In this position, Noah observed and was actively involved in a large variety of cases, from inception to trial. Noah has also represented clients pro bono, including one case against the federal government regarding an incarcerated individual denied necessary healthcare.

## Noah Cozad
Associate

**EMAIL**
ncozad@dicellolevitt.com

**EDUCATION**
University of Minnesota Law School, J.D.

University of Minnesota, B.A.



## James Crisafulli
Associate

**EMAIL**
jcrisafulli@dicellolevitt.com

**EDUCATION**
The George Washington University Law School, J.D.

Northwestern University, B.A.

James Crisafulli specializes in environmental litigation and has assisted lawyers in litigating some of the largest and most groundbreaking environmental cases in the country. James constantly searches for innovative ways to push the law forward to serve his clients, and his focus on efficacy and efficiency helps clients consistently achieve meaningful results.

While in law school, James worked with a variety of firms and organizations bringing important environmental lawsuits against polluters across the United States. As a law clerk at a leading, California-based environmental litigation firm, he helped sue the largest fossil fuel companies in the world for their roles in implementing a campaign of deception concerning the impacts of fossil fuels on the climate, work that he continues with DiCello Levitt. Relatedly, James fought for the rights of youth to a healthy environment and safe climate as a law clerk at the nonprofit, public interest law firm Our Children's Trust. James also served as a law clerk in the U.S. Department of State's Office of the Legal Adviser, where he researched international environmental law issues and helped prepare for treaty negotiations, among other duties, and he was a legal intern at a New York-based social justice law firm, where he drafted complaints seeking redress for greenwashing and harmful agricultural practices. In these roles, James gained valuable experience not only in environmental litigation matters but also in consumer protection and public client representation.

James graduated from the George Washington University Law School at the top of his class. During his time there, he was published in two flagship law journals for his environmental law scholarship and was recognized for his contributions to the field. James also advanced to the international finals in a global environmental law moot court competition hosted by Stetson Law School and was individually recognized for his oral advocacy. James graduated in three years from Northwestern University with a degree in political science, after which he completed the Coro Fellowship in Public Affairs in Los Angeles, where he is from.





**Eaghan Davis**
Associate

**EMAIL**
edavis@dicellolevitt.com

**EDUCATION**
Northeastern University School of
Law, J.D.

University of Michigan, B.A.

Eaghan Davis is a passionate advocate for justice, leveraging his legal insights to champion the rights of clients and balance the scales between powerful corporations and the public. In a world where money and influence often dictate outcomes, he is committed to empowering people to hold companies accountable for greed and negligence.

Before joining DiCello Levitt, Eaghan served as a law clerk to Michigan Supreme Court Justice Richard H. Bernstein, where he was exposed to some of the state's most pressing issues, including the Flint water contamination cases, where the court held that citizens of Flint had the right to sue the State of Michigan for their exposure to lead, PFAS, Legionella, and other harmful materials in state-supplied drinking water. As an Assistant Attorney General in the Office of the Illinois Attorney General, Criminal Division, Eaghan represented the public's interests in a variety of matters in Illinois state and federal courts, including arguing before the Illinois Supreme Court in *People v. Gorss*, 2022 IL 126464 (2022). After leaving public service, Eaghan joined a Chicago class action boutique, where he represented patients in antitrust lawsuits against pharmaceutical companies for their delay of generic medications that significantly lower prescription costs.

While attending the Northeastern University School of Law, Eaghan interned for Michigan Supreme Court Chief Justice Bridget Mary McCormack, U.S. District Court for the Eastern District of Michigan Judge Victoria A. Roberts, and two Boston plaintiffs' law firms. Recognizing the significant role mentors played in his legal education, Eaghan now serves as a moot court judge and coach at Michigan State University College of Law.





**Éviealle Dawkins**
Associate

**EMAIL**
edawkins@dicellolevitt.com

**EDUCATION**
Howard University School of Law, J.D.

University of Maryland, College Park, B.A.

Éviealle Dawkins has developed deep personal perspectives on justice and responsibility that are foundational to her legal practice. As a DiCello Levitt associate, Éviealle applies her insight to litigation work on behalf of plaintiffs injured by civil or human rights abuses, environmental hazards, and other acts of corporate malfeasance. Prior to joining DiCello Levitt, Éviealle honed her litigation research skills on claims ranging from consumer protection and toxic tort to data and privacy.

While attending Howard University School of Law, Éviealle held an externship with the ADR Consortium Clinic at the Equal Employment Opportunity Commission, where she participated in mediations to resolve employment discrimination claims and assisted parties through the mediation and settlement process. She also served as a summer law clerk for the Maryland Office of the Attorney General's Thurgood Marshall Clerkship Program in the Civil Rights and Legislative Affairs Divisions. As a student attorney in her law school's Fair Housing Clinic, she represented low-income families in the District of Columbia Landlord Tenant Court. A merit scholarship recipient, Éviealle was also a member of the Charles Hamilton Houston National Moot Court Team and served on the Executive Boards of the Student Bar Association and her professional membership organizations.

Between earning her bachelor's degree in English language and literature at the University of Maryland and enrolling in law school, Éviealle worked on electoral and issue-based campaigns as the Operations Director for a Washington D.C.-based political consulting firm. Éviealle served as a White House intern in Spring 2013. She also served as a Congressional Intern for U.S. Congressman Edolphus "Ed" Towns while completing her undergraduate studies.



## Joseph Frate
Associate

**EMAIL**
jfrate@dicellolevitt.com

**EDUCATION**
Case Western Reserve University
School of Law, J.D.

Ohio University, B.A., *cum laude*

Joe Frate's compassion, diligence, and effective communication result in successful case outcomes for his clients.

As an associate in DiCello Levitt's Cleveland office, Joe has made important contributions to victories in numerous personal injury, product liability, and civil and human rights cases, including the landmark $20.75 million jury verdict in the precedent-setting case against global bank BNP Paribas for financing genocide in Sudan. He helped secure a $102.6 million jury verdict against General Motors in a rare class action trial—and a subsequent $175 million settlement—for thousands of vehicle owners affected by defective GM engines.

Joe received his Juris Doctor from Case Western Reserve University School of Law (Case Western). During his time at Case Western, he was a member of the Milton Kramer Health and Human Trafficking Law Clinic, where he represented and assisted disenfranchised citizens in receiving Social Security benefits and criminal record expungements. Joe was also named to the Dean's list during his time at Case Western.

Prior to law school, Joe graduated from Ohio University, *cum laude*, where he was elected to serve as Commissioner for off-campus students for the University's Student Senate.



**Kaitlyn Forbes**
Associate

**EMAIL**
kforbes@dicellolevitt.com

**EDUCATION**
University of San Diego School of Law, J.D.

University of Michigan, B.A., with honors

At DiCello Levitt, Kaitlyn A. Forbes represents individuals in complex litigation involving civil and human rights, personal injury, and product liability matters. She is actively involved in mass tort and single-event cases, including matters involving allegations of sexual abuse and other serious misconduct. Kaitlyn works closely with clients to develop their cases and support them throughout the litigation process, bringing a thoughtful, detail-oriented approach focused on achieving meaningful outcomes.

Prior to joining DiCello Levitt, Kaitlyn represented health care providers and institutional clients in complex litigation matters, including professional liability and insurance disputes. Through this experience, she developed a strong understanding of how institutions operate, evaluate risk, and respond to claims— insight she now uses to effectively advocate for individuals seeking accountability and recovery.

In addition to her litigation practice, Kaitlyn serves as an appointed member of the Institutional Review Board at the University of California San Diego. In this role, she reviews research involving human subjects to ensure compliance with federal, state, and institutional regulations, with a particular focus on informed consent, ethical standards, and the protection of participant rights. This work reflects her broader commitment to safeguarding individuals and ensuring accountability in institutional decision-making.

Kaitlyn's commitment to advocacy began while attending the University of Michigan, where she interned with the Wayne County Prosecutor's Office in the sexual assault and homicide divisions. There, she supported attorneys handling cases involving serious harm and gained early exposure to victim-centered advocacy. She also developed foundational litigation skills as a member of the University of Michigan Mock Trial Team.

Kaitlyn earned her law degree from the University of San Diego School of Law, where she was selected as a member of the San Diego Law Review and served as president of the Student Bar Association. In those roles, she led student initiatives, collaborated with faculty and administration, and developed the analytical and leadership skills that continue to inform her practice today.



## Hannah Grace
Associate

**EMAIL**
hgrace@dicellolevitt.com

**EDUCATION**
New York University School of Law, J.D.

Stanford University, B.A.

Hannah Grace leverages class actions to advance justice for her clients. An associate in the firm's New York office, she litigates on behalf of people wronged by corporate malfeasance, focusing her practice on data privacy and commercial litigation.

Before beginning her career in plaintiff-side work, Hannah clerked for the Honorable Joseph N. Laplante at the U.S. District Court for the District of New Hampshire. Hannah was previously a litigation associate at a large U.S. law firm, where her pro bono legal experience included representing a tenant in a landlord/tenant dispute, a parent in family court proceedings, and victims of racial discrimination.

Hannah graduated from New York University School of Law, where she externed at the New York State Office for the Attorney General, participated in the Racial Justice Clinic, and served as development editor at the *Annual Survey of American Law*. Prior to law school, Hannah graduated from Stanford University with a bachelor's degree in English and completed an AmeriCorps service term at a childhood literacy nonprofit organization.



## Madeline R. Harding
Associate

**EMAIL**
mharding@dicellolevitt.com

**EDUCATION**
Georgetown University Law Center,
J.D.

Quinnipiac University, B.A.

Madeline Harding is an associate in DiCello Levitt's New York office, where her practice focuses on civil and human rights litigation, personal injury, and whistleblower matters. Drawing on more than six years of experience as a prosecutor, Madeline brings seasoned trial advocacy and a trauma-informed approach to representing individuals who have suffered harm, discrimination, and injustice.

Recently, Madeline played an important role on the trial team in *Kashef, et al. v. BNP Paribas, et al.*—a landmark human rights case in which a federal jury awarded more than $20 million to survivors of the genocide in Sudan, holding the global bank accountable for financing crimes against humanity.

Before joining DiCello Levitt, Madeline served as a senior felony assistant district attorney in the Domestic Violence Bureau of the Kings County District Attorney's Office in Brooklyn, New York. There, she led the prosecution of complex felony cases involving sexual assault, domestic violence, and homicide. She successfully tried and secured convictions in numerous high-stakes trials, including those involving charges of rape in the first degree and murder in the second degree. At any given time, she managed a demanding docket of 25–30 active felony cases, from investigation and indictment through trial.

Madeline earned her law degree from Georgetown University Law Center and holds a bachelor's degree in legal studies from Quinnipiac University. During law school, she served as a judicial intern at the U.S. District Court for the Southern District of New York.



## Madeline Hills
Associate

**EMAIL**
mhills@dicellolevitt.com

**EDUCATION**
University of Wisconsin Law School, J.D., *magna cum laude*, Order of the Coif

University of Missouri, B.A., *summa cum laude*

Madeline Hills is an associate in DiCello Levitt's class action group, where her practice is focused on breach of contract, products liability, and data security. Madeline is devoted to confronting systemic injustices, empowering individuals, and achieving impactful legal outcomes through collective action.

Madeline previously served as an Assistant Attorney General in the Civil Litigation Section of the Missouri Attorney General's Office. There, she defended state entities and officials in a broad range of matters, including general torts, civil rights, administrative procedure, and class actions. Notably, Madeline defended the state labor agency's administration of Missouri's fund for tort victims through a bench trial to favorable verdict; she served as third chair in a jury trial defending state officials against intentional tort claims; and she secured a victory on behalf of two state court judges before the U.S. Court of Appeals for the Eighth Circuit in a case alleging civil rights violations.

While in law school, Madeline worked as a student law clerk to the Honorable Judge Duane Benton of the U.S. Court of Appeals for the Eighth Circuit and the Honorable Justice Ann Walsh Bradley of the Wisconsin Supreme Court. She also served as vice president of communications for First Generation Lawyers and as a student researcher for the State Democracy Research Initiative.



## Nicholas Horattas
Associate

**EMAIL**
nhorattas@dicellolevitt.com

**EDUCATION**
Case Western Reserve School of
Law, J.D.

University of Akron, B.A.

Nicholas "Niko" Horattas represents individuals as part of DiCello Levitt's Personal Injury, Mass Tort, and Class Action Litigation practice groups. He advocates for clients who have suffered injuries or harm caused by the wrongful conduct of others, including negligent individuals and corporations as well as unfair and deceptive business practices. He believes strongly in holding businesses accountable and is committed to helping his clients recover damages for injuries suffered at the hands of large corporations that have prioritized profits over their customers' and surrounding communities' well-being. Whether he is representing a single client or hundreds of clients in a mass or class action, Niko ensures that each client feels personally represented.

After earning a bachelor's degree in Corporate Finance and Business Administration at the University of Akron, Niko received his law degree from Case Western Reserve University School of Law where he was recognized as a Law and Leadership Scholar. During law school, he held a judicial clerkship and later served as a certified legal intern at the Milton A. Kramer Law Clinic at Case Western Reserve. Prior to becoming an Associate at DiCello Levitt, Niko worked at the firm as a law clerk. He also previously served as a legal clerk for a medical malpractice law firm where he worked on cases involving the professional negligence of healthcare providers.





## Mitch Laing
Associate

**EMAIL**
mlaing@dicellolevitt.com

**EDUCATION**
The Ohio State University Moritz
College of Law, J.D.

Samford University, B.A.

Mitch Laing developed a solid experiential foundation as an assistant prosecutor and committed trial lawyer that he now brings to DiCello Levitt. As an associate at the firm, his focus is on personal injury, including product liability, medical malpractice, and mass disaster claims across the United States.

Mitch joined DiCello Levitt to help people who have been devastated by wrongful conduct and who need top-flight representation to put their lives back together. Mitch fights daily on behalf of those in need.

Prior to joining DiCello Levitt, Mitch served as an assistant prosecuting attorney for Union County, Ohio, and as a law clerk for the Columbus, Ohio, city attorney prosecutor's division. He holds a Bachelor of Arts in political science and economics from Samford University in Birmingham, Alabama, and earned his law degree from The Ohio State University's Moritz College of Law.





## Corey Lipton
Associate

**EMAIL**
clipton@dicellolevitt.com

**EDUCATION**
University of Michigan, J.D.

University of Michigan, M.P.P.

University of Michigan, B.A.

Corey Lipton is an associate in DiCello Levitt's New York office, where he focuses on antitrust and complex litigation, representing clients nationwide in cases involving monopolization, price fixing, and other anticompetitive practices.

Corey is committed to holding corporations accountable when their unlawful conduct harms consumers, workers, and businesses. He first joined DiCello Levitt as a summer associate and then as a law clerk, gaining direct experience with the firm's nationally recognized antitrust team and learning how strategic litigation can deliver meaningful results for clients. He also previously worked on the political campaigns of Michigan candidates running for state and federal office.

Corey earned his J.D. from the University of Michigan Law School and his Master of Public Policy from the University of Michigan's Ford School. His dual training in law and public policy gives him a strong foundation for analyzing the economic and systemic impact of corporate misconduct, equipping him to advocate effectively for clients in high-stakes litigation.





## Stacey MacKinnon
Associate

**EMAIL**
smackinnon@dicellolevitt.com

**EDUCATION**
University of Florida Levin College
of Law, J.D.

Florida State University, B.A.

Stacey MacKinnon is an associate in DiCello Levitt's New York office and a member of the firm's electronically stored information (ESI) team. Stacey works with clients and partners to ensure that the firm responds appropriately and accurately to e-discovery requests, attending to any client concerns in that process. She analyzes and summarizes documents produced by defense counsel, gathering the best evidentiary support for her clients and using that evidence to prepare her fellow counsel for crucial depositions and interrogatory responses. Be it healthcare fraud, intellectual property rights, or environmental justice, Stacey's keen eye for detail has uncovered case-deciding evidence that malevolent actors would have preferred to remain hidden.

A champion of data privacy, Stacey leverages her wealth of experience handling the most sensitive information to develop workflows and best practices that safeguard privileged or otherwise protected information. She has applied this knowledge in her roles leading several multilingual e-discovery teams to ensure adherence to U.S. and international data privacy laws, including the European Union's General Data Protection Regulation (GDPR).

Prior to joining DiCello Levitt, Stacey spent fifteen years honing her ESI skills. Working for a Fortune 500 company, she helped discover a scheme to defraud the federal government and the Environmental Protection Agency. She investigated failure-to-warn claims against pharmaceutical manufacturers as well as misappropriation of intellectual property in the software industry, protecting the rights of inventors and innovators. During an assignment with a team of specialists in Switzerland, she uncovered a well-disguised, multimillion-dollar shell company scheme that would have threatened the client bank's very existence.

Stacey is a member of Phi Beta Kappa. She earned her Juris Doctor from the University of Florida and studied French at L'Institut Catholique de Paris. She is also proficient in German.



## Joseph "J.J." Nelson
Associate

**EMAIL**
jnelson@dicellolevitt.com

**EDUCATION**
Cleveland State University College of Law, J.D., *cum laude*

Cleveland State University Monte Ahuja College of Business, M.B.A.

University of Mount Union

Joseph "J.J." Nelson is an associate in DiCello Levitt's Chicago office, where his practice focuses on complex litigation, including class actions and commercial disputes.

Before joining DiCello Levitt, J.J. clerked for judges at various levels of the judiciary, including the United States Court of Appeals for the Seventh Circuit and the Supreme Court of Ohio. In these positions, he conducted extensive research, drafted opinions and orders, and advised judges on a broad range of issues.

J.J. earned his law degree and graduated *cum laude* from Cleveland State University College of Law, where he served as editor-in-chief of the *Global Business Law Review*, regional moot court director for the Black Law Students Association, and research assistant for Professor Heidi Gorovitz Robertson. J.J. earned his bachelor's degree from the University of Mount Union, where he participated in the school's track and field team.





## Jordyn Parks
Associate

**EMAIL**
jparks@dicellolevitt.com

**EDUCATION**
Case Western Reserve University
School of Law, J.D.

University of Cincinnati, B.S., *summa cum laude*

Jordyn Parks represents individuals and classes who have suffered injury and injustice due to police misconduct, corporate malfeasance, discrimination, and other wrongdoing. With a focus on civil and human rights, labor and employment, and class action litigation, Jordyn works to rectify racial, gender, and economic disparities and promote systemic change to advance the cause of equality.

While attending Case Western Reserve University School of Law, she honed her litigation skills through the Kramer Law Clinic's human trafficking and re-entry divisions, helping survivors of human trafficking seek justice against their abusers and assisting formerly incarcerated individuals with criminal record expungements. She was also a member of the Black Law Student Association's Executive Board during law school, where she crafted demands toward faculty and staff and advocated for changes to improve the experience of students of color at the law school. Prior to joining DiCello Levitt, Jordyn interned with the Cleveland Municipal Court and the Cuyahoga County Juvenile Court and served as an intern and a law clerk at several Cleveland-area law firms, including a civil rights and criminal defense firm, where she gained valuable experience in litigation involving wrongful imprisonment and other civil rights abuses.

In her capacity as an attorney and in her personal life, Jordyn strives to inspire and create a better world for future generations.





## Theo Salem-Mackall
Associate

**EMAIL**
tsalemmackall@dicellolevitt.com

**EDUCATION**
Georgetown University Law Center, J.D., c*um laude*

Colgate University, B.A., *magna cum laude*

Theo Salem-Mackall is an associate at DiCello Levitt. His practice focuses on litigating high-level antitrust and competition matters across a wide range of industries.

Prior to joining DiCello Levitt, Theo clerked for Magistrate Judge Valerie Figueredo in the Southern District of New York. Theo also practiced at a major international law firm, working across their enforcement, litigation, and antitrust practice groups.

During his time at Georgetown University Law Center, Theo worked as a managing editor on the *Annual Survey of White Collar Crime* and on the Executive Board of the *American Criminal Law Review*. He interned in the Enforcement Division of the Securities and Exchange Commission and worked with Professor Maria Glover to help her generate a groundbreaking paper on mass arbitration. He also directly represented low-income tenants facing eviction proceedings in D.C. Superior Court and held a fellowship with the Washington Legal Clinic for the Homeless. Prior to law school, Theo spent over two years working as a paralegal at the Defense, Industrials, and Aerospace Section of the Antitrust Division of the Department of Justice.





**Elijah Savage**
Associate

**EMAIL**
esavage@dicellolevitt.com

**EDUCATION**
Lewis & Clark Law School, J.D.

University of California, Santa
Barbara, B.A., *with honors*

Elijah Savage is an associate attorney in DiCello Levitt's Chicago office whose practice focuses on class action, employee benefit, and public client litigation. A steadfast advocate for the public interest, Elijah strives to uphold the highest standards of justice and transparency, working to achieve impactful and fair outcomes for those he represents.

Elijah earned his law degree from Lewis & Clark Law School, where he was an associate editor of *Environmental Law*, was selected as one of two 2023 Wyss Scholars, and served as a judicial extern to a federal judge in the U.S. District Court for the District of Oregon. He also worked as a law clerk for Professor Robert Klonoff, where he gained practical experience in aggregate and complex litigation.





## Andrea Shang
Associate

**EMAIL**
ashang@dicellolevitt.com

**EDUCATION**
Northwestern Pritzker School of
Law, J.D.

Barnard College, B.A.

Andrea Shang is an associate in DiCello Levitt's Chicago office. Her practice focuses on class actions and public clients in state and federal courts across the United States.

Prior to joining DiCello Levitt, Andrea worked at an international firm, where she litigated commercial and employment matters, class actions, and mass torts. Andrea also maintained an active pro bono practice, representing asylum seekers and students with disabilities.

While at Northwestern Pritzker School of Law, Andrea served on the board of the *Northwestern Journal of Law and Social Policy* and interned for multiple government agencies, including the U.S. Department of Labor and the New York State Office of the Attorney General. She also served as a judicial intern at the U.S. District Court for the Eastern District of New York.



## Maggie Sposato
Associate

**EMAIL**
msposato@dicellolevitt.com

**EDUCATION**
City University of New York School of Law, J.D.

University of Vermont, B.S.

Maggie's career focuses on serving the public interest. As an associate in DiCello Levitt's New York office and a member of the firm's electronically stored information (ESI) team, she contributes to a variety of cases across different practice areas, including whistleblower; mass tort; civil and human rights; and privacy, technology, and cybersecurity litigation. Maggie leverages her experience in database management, target searching, and training predictive coding models to creatively and proactively problem-solve for her clients.

Before joining DiCello Levitt, Maggie spent 10 years as a solo practitioner, providing services to nonprofit organizations in all stages of development. She handled a variety of issues including incorporation, tax exemption, compliance, organizational structure, contracts, governance issues, and trademark registration. Additionally, she served as a court-appointed receiver in a commercial litigation involving a shareholder dispute.

Prior to going into solo practice, Maggie worked as an associate and of counsel for several small law firms, handling nonprofit and small business transactional matters, affordable housing issues including HDFC structure and conversion, real estate transactions, and civil litigation including landlord-tenant proceedings.

Maggie continues to support nonprofit organizations through pro bono consultations on incorporation and tax exemption. She serves on the boards of Innate Health Research, a consulting group dedicated to changing the way people think about mental health; Williamsburg Music Center, a jazz performance space founded to foster the appreciation of American classical music and jazz and to honor the African music diaspora; and Allocate NYC, which Maggie founded herself to assist individuals experiencing housing instability.

While earning her law degree at the City University of New York School of Law, Maggie was a staff member of the *New York City Law Review*, editing the public interest practice and articles sections. She also served in the Community Economic Development Clinic, where she worked directly with nonprofit organizations. She interned at an organization serving individuals with HIV, assisting attorneys on issues facing the community, including landlord-tenant proceedings, bankruptcy, discrimination under the Americans With Disabilities Act, and fair hearings for denial of public benefits.

At the University of Vermont, Maggie was a member of the school's Division I swim team, serving as captain her senior year. She received the Joseph Fisher Award and was a four-time America East qualifier and an Eastern College Athletic Conference qualifier.





## Ellen Teuscher
Associate

**EMAIL**
eteuscher@dicellolevitt.com

**EDUCATION**
Harvard Law School, J.D.

The University of Texas at Austin, B.A.

Ellen Teuscher is an associate in DiCello Levitt's New York office who represents plaintiffs in complex data privacy and cybersecurity matters.

During law school, Ellen worked in the Harvard Cyberlaw Clinic, where she drafted and presented a privacy memorandum to the Vermont legislature, co-authored an amicus brief before the Massachusetts Supreme Judicial Court on police records access, and prepared a complaint in a Freedom of Information Act case. She served as president of the Harvard Plaintiffs' Law Association and as executive finance director of the National Plaintiffs' Law Association, and she held editorial roles with the Harvard Journal of Law and Technology and Harvard Civil Rights–Civil Liberties Law Review.

Ellen previously worked as a summer associate with DiCello Levitt and as a summer associate and law clerk at other distinguished firms. Before entering the legal field, she worked at a digital communication and advertising firm, managing political and corporate clients and developing digital advocacy campaigns. She earned her B.A. in government and humanities, both with honors, from the University of Texas at Austin, where she was a Bill Archer Fellow





## Michael P. Trexler
Associate

**EMAIL**
mtrexler@dicellolevitt.com

**EDUCATION**
University of Akron School of Law, J.D.

University of Akron, B.A., *cum laude*

Michael Trexler is an associate in DiCello Levitt's Cleveland office, where his practice is focused on employment, personal injury, product liability, and mass tort litigation. Michael works to empower clients to seek compensation for their injuries and losses through individual and mass claims. He fights for employees' rights and to ensure workplace injustices are addressed. With dedication and compassion, Michael strives to make a meaningful difference in the lives of the people he represents.

After earning his bachelor's degree in criminology and criminal justice from the University of Akron, Michael received his law degree from the University of Akron School of Law, where he was recognized as an honor scholar. During law school, he held a judicial internship with the Honorable John Adams in the U.S. District Court for the Northern District of Ohio and worked as a law clerk at DiCello Levitt.



## Rebecca Trickey
Associate

**EMAIL**
rtrickey@dicellolevitt.com

**EDUCATION**
Case Western Reserve University,
B.A., *cum laude*

Northwestern University Pritzker
School of Law, J.D., *cum laude*

Rebecca Trickey is an associate in DiCello Levitt's Chicago office. She represents individuals and classes who have been wronged by corporate deception and unfair business practices. A fierce advocate for the right to privacy in the digital age, Rebecca focuses her practice on data privacy and cybersecurity matters, ensuring that bad actors are held accountable for misusing or negligently handling their customers' data.

Prior to joining DiCello Levitt, Rebecca litigated complex bankruptcy matters at a distinguished international firm, representing clients across a wide variety of industries. At her previous firm, she also maintained a robust pro bono practice, advocating on behalf of asylum seekers and working towards expanding tenants' rights in the Chicago area.

While attending the Northwestern Pritzker School of Law, Rebecca was an associate editor of the *Journal of Law and Social Policy*, president of Collaboration for Justice, and a board member of Invisible Identities, an advocacy organization for lawyers with disabilities. In addition to graduating from Northwestern with honors and dean's list recognition, Rebecca received recognition as a Public Service Star for her community service commitments. Rebecca regularly volunteers with Chicago-area organizations dedicated to helping young people understand their constitutional rights and increasing youth engagement with public policy.



**Julia Veeser**
Associate

**EMAIL**
jveeser@dicellolevitt.com

**EDUCATION**
Chicago-Kent College of Law,
J.D., *cum laude*

University of Michigan, B.A.

A lifelong advocate for others, Julia Veeser understands the importance of putting clients' needs at the forefront of legal problem solving. With a focus in data privacy and commercial litigation, Julia strives to promote honest business practices and enhance corporate transparency through strategic advocacy and efficient communication.

While in law school, Julia was a notes and comments editor for the *Chicago-Kent Law Review* and served as an executive board member for Chicago-Kent's Moot Court Honor Society. As a CALI Award recipient in privacy law and a Dean's List honoree, Julia's devotion to legal excellence brought her to DiCello Levitt, where she worked as a law clerk before beginning as an associate attorney.

Julia also graduated from the University of Michigan with a double major in political science and Spanish. On top of balancing a rigorous academic schedule, Julia participated in varsity athletics, where she achieved two national cheerleading championships and was a four-time U-M Athletic Academic Achievement Award recipient.



## Mollie Weiss
Associate

**EMAIL**
mweiss@dicellolevitt.com

**EDUCATION**
Georgetown University Law Center, J.D., *magna cum laude*, Order of the Coif

Carleton College, B.A.

Mollie Weiss is an associate in DiCello Levitt's New York office, where her practice focuses on complex litigation, including commercial disputes, class actions, and cases on behalf of sexual assault survivors.

Before joining DiCello Levitt, Mollie clerked for the Honorable Barry Ted Moskowitz of the United States District Court for the Southern District of California. She also volunteered at the New York Legal Assistance Group's Federal Pro Se Clinic and practiced at a prestigious, New York-based law firm, where she primarily worked on patent, antitrust, and complex commercial litigation, as well as on a pro bono immigration matter.

Mollie earned her law degree from the Georgetown University Law Center, graduating *magna cum laude* and selected for inclusion in the Order of the Coif. While in law school, she was a student attorney at Georgetown's Juvenile Justice Clinic, representing young people charged with delinquency, and interned in both the special litigation and trial divisions of the Public Defender Service of the District of Columbia. Mollie also served as managing editor of the *Georgetown Law Journal*'s *Annual Review of Criminal Procedure*.



**Jay R. Wexler**
Associate

**EMAIL**
jwexler@dicellolevitt.com

**EDUCATION**
Cornell Law School, J.D.

Cornell University, B.S.

Jay Wexler is an associate in DiCello Levitt's Antitrust and Competition Practice Group in New York. He represents individuals and businesses harmed by anticompetitive practices, using private litigation to hold powerful actors accountable.

Jay brings passion, creativity, and nearly a decade of experience investigating and litigating complex commercial and class action matters in venues across the country. Clients turn to Jay for his deep understanding of federal and state antitrust violations such as monopolization, monopoly leveraging, price fixing, wage fixing, no-poach agreements, illegal information exchanges, group boycotts, exclusive dealing, unfair competition, and tying. Jay litigates against companies and trade associations across a variety of industries, including consumer products, emerging technologies, securities, telecommunications, and sports.

Before joining DiCello Levitt, Jay clerked for the Honorable Anne M. Nardacci, U.S. District Judge for the Northern District of New York. Jay previously served as a trial attorney for a federal agency, where he prosecuted individuals and businesses for violating laws, regulations, or the terms of government agreements. He also worked as a litigation associate in the top-tier antitrust group of an international law firm, representing both plaintiffs and defendants—particularly in sports and technology cases involving employment or intellectual property issues. With the benefit of these experiences, Jay is well-acquainted with all aspects of federal litigation, from investigation through class certification, dispositive briefing, fact and expert discovery, evidentiary disputes, and ultimately trial and appeal.

Jay earned his law degree from Cornell Law School, where he was an articles editor for the *Journal of Law and Public Policy* and an administrative law research assistant. During law school, Jay also worked at a nonpartisan think tank where he researched and litigated civil rights and elections matters. Jay earned his bachelor's degree in industrial and labor relations from Cornell University, with minors in American law and society, German, and inequality studies.

**Birmingham**
T: 205.855.5700

**New York**
T: 646.933.1000

**Chicago**
T: 312.214.7900

**San Diego**
T: 619.923.3939

**Cleveland**
T: 440.953.8888

**Santa Fe**
T: 505.810.0770

**Las Vegas**
T: 702.723.9777

**Washington, DC**
T: 202.975.2288

**DiCelloLevitt.com**

