

Ricardo Solano Jr.
Partner
P: +1 973.596.4471
rsolano@ftbgibbons.com

July 13, 2026

**VIA ECF**

The Honorable Jamel K. Semper, U.S.D.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

RE:    *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, No. 19-md-2904(JKS)(MAH) — Joint Response to July 6, 2026 Order

Dear Judge Semper:

Pursuant to the Court's July 6, 2026 Order (ECF 915), Plaintiffs and Defendants Quest Diagnostics Incorporated and Optum360, LLC (together, "Defendants") jointly submit this letter regarding their positions on whether supplemental briefing of the pending class certification and *Daubert* motions (ECF 823, 833, 835, 837) is warranted following the Court's June 24, 2026 Opinion and Order (ECF 906, 907).

**Plaintiffs' Proposal:**

The Court asked a narrow question: whether Judge Hammer's ruling on the scope of Mr. Strebe's rebuttal report warrants supplemental briefing on the pending class certification and *Daubert* motions (ECF 823, 833, 835, 837). It does not. Those motions are fully briefed and were untouched by a ruling that addressed only the scope of a single rebuttal report.

Plaintiffs' proposal tracks the docket. Because the ruling does not warrant supplemental briefing, Plaintiffs propose to file a renewed class certification motion by September 4, 2026, with Defendants' opposition due October 2, 2026, and Plaintiffs' reply due October 16, 2026, and to administratively terminate the pending motions while the final stage of expert discovery ordered in ECF 906 (Mr. Strebe's deposition and Defendants' sur-rebuttal report) proceeds. Because Defendants' sur-rebuttal report is due September 17, 2026, this sequence allows the renewed motion and any *Daubert* practice to move forward together toward a decision on the merits. Plaintiffs respectfully ask the Court to adopt that schedule.

**I.     Judge Hammer's rebuttal-scope ruling does not warrant supplemental briefing, because it left the fully briefed class certification and *Daubert* motions untouched.**

Page 2

Judge Hammer found that specific portions of Mr. Strebe's rebuttal report exceeded the proper scope of rebuttal. The Court held that the fix was to permit Defendants to depose Mr. Strebe and serve a sur-rebuttal report, and it directed that no further expert reports would follow. ECF 906 at 23, 25–26. The sur-rebuttal the Court authorized is confined to the problem it cures. It reaches only the portions of Mr. Strebe's rebuttal that the Court found improper. Nothing in the ruling opens the door to a response to the balance of his report, much less to certification itself. Those measures are the alternative relief Defendants themselves requested in the motion the Court resolved.

What the ruling did not do is reach the merits of Rule 23 or the pending *Daubert* motions, which remain fully briefed and were not addressed in the Court's Opinion and Order. ECF 906, 907. A rebuttal-scope ruling that prescribes a deposition and a bounded sur-rebuttal does not require the parties to re-brief certification or to re-argue *Daubert* motions that turn on other experts. Defendants obtained the package of alternative relief they asked for: a deposition, a sur-rebuttal report, and an order barring any further expert reports. They cannot convert that targeted expert-discovery cure into class certification sur-reply briefing the Court never ordered.

## II.    The efficient way to address the ruling is a renewed, Quest/Optum-specific certification motion, not a one-sided sur-reply.

**Efficiency.**  Plaintiffs' reply was an omnibus brief covering the Quest/Optum, LabCorp, and Sonic tracks, and settlements have since mooted the LabCorp and Sonic tracks, leaving much of the reply directed at parties no longer in the case.[1] A renewed motion directed solely at Quest and Optum would present the Court with a single, self-contained set of arguments rather than a cross-track brief from which the Court must subtract the settled material clause by clause. That is the efficient course, and it falls squarely within this transferee court's remit under 28 U.S.C. § 1407 to promote the just and efficient conduct of the transferred actions. Defendants respond that the Court can simply disregard what is no longer relevant, but that answer places on the Court the very sorting burden a renewed motion would eliminate. And it concedes that the record is cluttered with settled-track material a clean motion would remove.

**Narrowing on reply.**  Refining a class definition in response to an opposition is a routine feature of certification practice, not a new theory that demands a sur-reply. Rule 23 permits the Court to alter or amend a certification order before final judgment, and the Court's independent obligation to define an appropriate class carries with it the power to narrow or modify a proposed definition. Fed. R. Civ. P. 23(c)(1)(C); *see also, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 140 n.10 (E.D. Pa. 2015); 7A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1759 (3d ed.). Courts in this District do exactly that. In *Portillo v. National Freight, Inc.*, the court certified a class only after narrowing the plaintiffs' proposed definition on its own, excluding drivers bound by a Texas choice-of-law clause and setting "full-time" at 80% of assigned loads. 336 F.R.D. 85, 98 (D.N.J. 2020). It narrowed the class in response to the defendants' opposition and grounded the move in its "inherent authority to redefine a proposed class." *Id.* at 92 n.3. Indeed, the Supreme Court has long recognized that a certification order is "inherently tentative" and that a district court "remains free to modify it in the light of subsequent developments in the litigation." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.11 (1978); 7A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1785.4 (3d ed.). If a

---

[1]*See* ECF 832 at 5–7, 23, 28–29, 33, 56–59.

Page 3

class may be refined even after certification, Plaintiffs may certainly refine one before any certification ruling has issued: it helps the Court discharge its own independent duty to conduct a "rigorous analysis" of Rule 23's requirements.

The changes Defendants label "new" narrowed rather than expanded the case: on reply, Plaintiffs created two date-based Quest subclasses keyed to the December 1, 2016 assignment of the AMCA contract to Optum, added a standalone Optum class under Minnesota law limited by that same date, and withdrew the California CMIA subclass entirely. ECF 832 at 5, 30. Those refinements answered Defendants' own contention that Quest and Optum occupied different positions at different times—precisely what a reply brief exists to do. If the Court may itself redefine a class to bring it within Rule 23, a plaintiff's own narrowing on reply is not the sort of unfair surprise that justifies extraordinary briefing.

**A scheduling question, not a sanction.** Defendants' recurring charge that a renewed motion would "reward" Plaintiffs' "misconduct" asks the Court to apply the wrong standard. The Court posed a case-management question, i.e., how most efficiently to resolve certification on an orderly record. Punishing litigation conduct requires findings under Rule 37 or the Court's inherent power, made with notice and an opportunity to be heard; it is not accomplished through a scheduling order. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–50 (1991). Defendants have never invoked any of those vehicles. Their "misconduct" narrative also conflates two different experts: Gary Olsen, the damages expert Plaintiffs withdrew and replaced through a substitution process Defendants themselves negotiated (ECF 769), and Mr. Strebe, the rebuttal expert whose report the Court sustained as proper rebuttal, apart from the discrete portions it found outside the permitted scope. Drawing that line is ordinary in case management, not a finding of misconduct. Neither the revised class definitions nor the Minnesota-law refinement has anything to do with either expert's conduct.

**Burden and sequencing.** As the parties seeking certification, Plaintiffs bear the burden on Rule 23, and the ordinary order of briefing gives the movant the reply. Plaintiffs' proposal honors that structure and, in the same stroke, cures the concern Defendants press. Defendants would file a full opposition to the operative classes, and Plaintiffs would reply. A full opposition lets Defendants say everything they contend the rebuttal ruling left them no room to address without bending the process. Defendants' proposal bends the process and fixes nothing better. It inverts the order, converting a narrow rebuttal ruling into a sur-reply that gives the non-moving party the final word on a motion it does not have to prove. Sur-replies are disfavored and are not permitted in this District without leave of Court. L. Civ. R. 7.1(d)(6). Defendants' authorities do not hold otherwise: *National Utility Service* denied a further brief to the party that had itself injected a new issue on reply; it did not hold that a defendant may obtain the last word whenever a plaintiff narrows a class. *Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 445–46 (D.N.J. 1999). In all events, even if some portion of the reply were treated as new, the complete cure is a fresh opposition and reply on the operative classes—which lets Defendants respond in full, more than a one-sided sur-reply would give either side. This is the same motion, on the same opening and rebuttal experts and the same operative classes, cleared of settled tracks.

**Defendants' remaining objections.** Defendants' other objections do not hold together. They insist the renewed motion is both a dangerous "do-over" that would let Plaintiffs rewrite their case and, in the same breath, "unnecessary" because it will contain no significant changes. Both cannot be true: if the motion changes little, Defendants suffer no prejudice; if it streamlines the

One Gateway Center, Newark, New Jersey 07102 +1 973.596.4500
**FBT Gibbons LLP | fbtgibbons.com**

Page 4

record, it advances the very efficiency the Court asked about. Renewal after an initial denial is a recognized course, not a do-over: in *Processed Egg*, the court denied certification without prejudice and invited Plaintiffs to revise and renew their motion, with a defined opportunity for Defendants to respond. *See In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 170–71 (E.D. Pa. 2015). Defendants' suggestion that Plaintiffs could "simply consent" to the sur-reply fares no better, because Plaintiffs are not obliged to acquiesce in one-sided briefing the Local Rules disfavor. And to the extent Defendants fear the renewed motion will not stay limited, Plaintiffs can be held to their representation to rely on the same experts and operative classes, and the Court may cabin the motion's scope under its case-management authority. Fed. R. Civ. P. 16(c)(2). That safeguard—like a longer opposition window if the proposed schedule is too tight—is far less drastic than denying renewal outright.

**III.    No supplemental *Daubert* briefing is warranted now, and a single all-expert deadline is inequitable.**

**The pending motions are unaffected.**  Defendants' omnibus *Daubert* motion is directed at Plaintiffs' non-Strebe experts, and Plaintiffs' *Daubert* motions address Mr. Miller and Mr. Tomasini—challenges cabined to those experts, with the Tomasini challenge already supported by Mr. Strebe's rebuttal. Nothing in Mr. Strebe's forthcoming deposition or Defendants' sur-rebuttal changes the opinions those motions address. Because expert admissibility and certification are intertwined, the pending motions should be administratively terminated and decided together with the renewed certification briefing. A court must resolve a *Daubert* challenge to expert testimony that is critical to certification before it can rely on that testimony to find Rule 23 satisfied. *In re Blood Reagents Antitrust Litig.,* 783 F.3d 183, 187 (3d Cir. 2015). After Defendants depose Mr. Strebe and serve their sur-rebuttal, either side may choose to move (Defendants as to Mr. Strebe, and Plaintiffs as to Defendants' sur-rebuttal expert), but there is no need to predetermine that now.

**The proposed schedule.**  Defendants' schedule is inequitable on its face. Their October 8, 2026, deadline for all *Daubert* motions as to all experts would give Defendants roughly ten to eleven months to prepare for Mr. Strebe's deposition and to serve a sur-rebuttal following his October 2025 report, while leaving Plaintiffs about three weeks from receipt of that sur-rebuttal on September 17, 2026 to depose Defendants' expert and move. A schedule that affords one side months and the other weeks to litigate the same issue should not be entered. It is premature as well as lopsided: Defendants concede that any supplemental *Daubert* briefing is contingent—they "may need" to supplement existing motions and would file new ones only as expert discovery "depend[s]" on how it unfolds—which is a reason to sequence that briefing after the ordered deposition and sur-rebuttal, not to fix firm deadlines now. The schedule also presupposes the very sur-reply leave Defendants have not obtained and Plaintiffs oppose. L. Civ. R. 7.1(d)(6). Plaintiffs accordingly request that the Court so order their proposed schedule for a renewed class certification motion (Plaintiffs' motion due September 4, 2026, Defendants' opposition due October 2, 2026, and Plaintiffs' reply due October 16, 2026), administratively terminate ECF 823, 833, 835, and 837, and decline to authorize a sur-reply.

**Defendants' Position:**
    Judge Hammer found that Plaintiffs' expert, Matthew Strebe, improperly included new, non-

Page 5

rebuttal material in the report Plaintiffs submitted with their class certification reply brief. The Court subsequently asked whether Judge Hammer's ruling warrants supplemental briefing on the pending class certification and *Daubert* motions. It does.

Defendants should be permitted to file a sur-reply addressing the new arguments, evidence, and class definitions Plaintiffs presented in their reply brief, including more than 30 citations to Strebe's report.[2] The Court should also permit Defendants to file a *Daubert* motion directed to Strebe's opinions and to supplement their existing *Daubert* motions, if Defendants believe it necessary, following Strebe's deposition. That relief follows directly from Plaintiffs' decision to introduce new material on reply and from Judge Hammer's decision to permit Defendants to serve a sur-rebuttal report responding to Strebe. It is the most efficient path forward, cures the prejudice identified by Judge Hammer, and allows the Court to resolve class certification on a complete and orderly record. No further submission from Plaintiffs is necessary.

Plaintiffs' response largely ignores the question that the Court asked the Parties to answer. Instead, Plaintiffs request a re-do on class certification briefing under guise of efficiency. Their proposal should be rejected because it would reward Plaintiffs for their own misconduct in submitting an improper expert report. And it would exacerbate, rather than cure, the prejudice to Defendants that Judge Hammer identified. *See* ECF 906 at 21–22. Plaintiffs have *already* been permitted one extraordinary opportunity to re-submit their motion for class certification after expert discovery revealed that one of their experts had plagiarized significant portions of his report. They then unilaterally revised their motion for class certification further through their reply brief. They have had two bites at the apple; they should not get a third. Should the Court be entertaining Plaintiffs' request, Defendants respectfully request a hearing in light of the significant expense and delays that would follow from a third class certification motion.

Plaintiffs should not be given yet another opportunity to start from a blank slate because they are dissatisfied with their existing motion. Nor should Plaintiffs be permitted to file an additional response to Defendants' sur-reply and effectively obtain the last word. Defendants' requested sur-reply is necessitated solely by Plaintiffs' decision to submit new arguments and evidence in reply. The appropriate course is straightforward: permit Defendants to file a sur-reply, allow no further class certification briefing, and then decide class certification on a complete and orderly record.

Defendants propose the following schedule:

| Filing | Proposed Deadline |
|---|---|
| Defendants' Sur-Reply in Opposition to Class Certification | October 8, 2026 |
| *Daubert* Motions (including any supplementation of prior *Daubert* motions filed by Defendants) | October 8, 2026, or other such date as the Court deems appropriate following completion of the limited expert process |
| Oppositions to *Daubert* Motions | October 29, 2026, or other such date as the Court deems appropriate following completion of the limited expert process |
| Replies in Support of *Daubert* Motions | November 12, 2026, or other such date as the Court deems appropriate following completion of the limited expert process |

---

[2] *See* ECF 832 at 8, 9, 11–19, 23, 44–45, 54.

Page 6

### I.    Defendants should be given leave to file a sur-reply to respond to Plaintiffs' new class definitions and improper rebuttal evidence.

The delays in resolving Plaintiffs' class certification motion are directly a result of Plaintiffs' own conduct. Plaintiffs served their initial Motion for Class Certification on November 1, 2024, nearly two years ago, and more than five years after this case was initiated. Expert discovery followed, and Defendants learned during the deposition of Plaintiffs' principal damages expert, Gary Olsen, that he had plagiarized portions of his opinion. Plaintiffs thereafter requested to withdraw Mr. Olsen. Despite the substantial time, expense, and delay caused by Plaintiffs' expert's misconduct, Defendants worked cooperatively with Plaintiffs to negotiate a process for replacing Olsen with a new expert. *See* ECF 769. Plaintiffs served a second motion for class certification on June 4, 2025 to account for this substitution. Defendants served their opposition to Plaintiffs' motion on September 2, 2025.

Then, on October 22, 2025, Plaintiffs served a reply brief in support of class certification. Although Plaintiffs had served separate class certification motions pertaining to the Quest/Optum, Labcorp, and Sonic tracks, they insisted on serving a combined reply over Defendants' objections. *See* ECF 787 & 788. In that reply, Plaintiffs unveiled new class definitions and yet another expert, Matthew Strebe. ECF 832. Defendants moved to strike Strebe's report as improper rebuttal. ECF 806. In the alternative, Defendants sought an opportunity to depose Strebe, serve a sur-rebuttal expert report, and move to exclude Strebe's testimony pursuant to Federal Rule of Evidence 702. *Id.* at 10-11.

On June 24, 2026, Judge Hammer found that specific portions of the Strebe Report were improper rebuttal. *See* ECF 906. The Court found that Plaintiffs' conduct had prejudiced Defendants and ordered alternative remedies that Defendants' motion to strike sought—a deposition of Strebe and the opportunity to file a sur-rebuttal report. *See id.* at 25–26. Judge Hammer specifically ordered that no further expert reports will be permitted. *See id* at 23.

Sur-replies are warranted where one party introduces new evidence, arguments, or theories for the first time on reply, leaving the opposing party no opportunity to meaningfully respond in the ordinary course of briefing. *See Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 445–46 (D.N.J. 1999) (discussing its grant of a sur-reply to defendants "[i]n the interests of justice" when plaintiff first raised an issue in its reply brief); *St. Clair Intell. Prop. Consultants, Inc. v. Samsung Elecs. Co.*, 291 F.R.D. 75, 80 (D. Del. 2013) ("A court may grant leave to file a sur-reply if it responds to new evidence, facts, or arguments."). Courts in this District have exercised their discretion to grant sur-replies where needed to address issues newly raised in reply briefs, explaining that "reply briefs should respond to arguments raised in the opposition brief, or explain a position in the initial brief that the respondent refuted . . . . Reply briefs are not the time to present new argument." *Smithkline Beecham PLC v. Teva Pharms. USA, Inc.*, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007); *see also Nat'l Util. Serv., Inc.*, 45 F. Supp. 2d at 445–46.

**New Proposed Classes.** Plaintiffs' class certification brief asked the Court to certify a single nationwide negligence and negligence *per se* class under New Jersey law, along with one California sub-class. ECF 824 at 4. In their reply, Plaintiffs altered that definition for the negligence class, advancing, for the first time, a divided "Quest Class" and "Optum Class," and further sub-dividing the putative Quest Class into sub-classes based on when their data was sent to AMCA. ECF 832 at 5. These changes alter the proposed class structure to which Defendants responded in opposition, and Defendants should be given the opportunity to explain why Plaintiffs' belated restructuring does not cure the fundamental failure of Plaintiffs to meet the Rule 23 standard. A sur-reply is the necessary and appropriate remedy for Plaintiffs' late-stage maneuver.

**New Choice of Law Analysis.** Plaintiffs' class certification brief argued that New Jersey law will apply to the claims each putative class member is asserting against both Quest and Optum360. ECF 824 at 4. In their reply, for the first time, Plaintiffs argued that the claims against Optum360 are

Page 7

governed by Minnesota law. ECF 832 at 5. Optum360 should be given the opportunity to respond to Plaintiffs' new argument and analysis.

**New Evidence.** As Judge Hammer found, Strebe included improper, non-rebuttal material in his "rebuttal" report, including impermissible analyses of the findings of third parties, and impermissible reliance on analysis of a particular dark web marketplace. *See* ECF 906 at 13, 15–16, 18. As noted above, Plaintiffs' Reply cites to Strebe's report more than 30 times.

Those opinions are a central component of Plaintiffs' reply brief and are cited in support of Plaintiffs' standing, causation, and damages arguments. *See* ECF 832 at 11–19, 44–45, 54. Absent a sur-reply, Plaintiffs' reliance on those improper materials would remain unanswered. A sur-reply is therefore necessary to ensure that the Court evaluates class certification on a fair and complete record rather than one shaped by Plaintiffs' introduction of new theories and evidence on reply. *See Johnson v. Walmart Stores E., LP*, 772 F. Supp. 3d 551, 554 n.1 (D.N.J. 2025) (granting a sur-reply to "allow the Court to more fully and fairly evaluate Defendant's motion").

II.     **Plaintiffs should *not* be permitted to re-brief class certification or file a sur-sur-reply.**

Plaintiffs' proposal to restart the class certification briefing cycle for a third time is not supplemental briefing; rather, it is an attempt to capitalize on their own improper conduct. Judge Hammer's Opinion and Order provided a narrow procedure to remediate the prejudice caused by Plaintiffs' submission of an improper rebuttal report. Plaintiffs now seek to transform that limited process into a complete reset of class certification briefing. Under this perverse formulation of what should flow from Plaintiffs' own improper rebuttal, Plaintiffs would reap the benefit of knowing Defendants' opposition arguments, the Court's analysis of the Strebe Report, and the additional expert discovery necessitated by Plaintiffs' own reply-stage submission. That request should be denied.

Worse still, despite having had nearly two years to litigate class certification, Plaintiffs propose giving Defendants only 28 days to respond to a motion that is likely to contain substantive changes. This asymmetry is striking. Plaintiffs would have the accumulated benefit of two years of briefing, expert reports, depositions, and the Court's own analysis of the Strebe Report to inform their "renewed" motion, as well as nearly two months to draft it. By contrast, Plaintiffs propose that Defendants have just four weeks to respond.  And if Plaintiffs' motion truly will not contain significant changes, there is no need for a new motion in the first place.

Nor should Plaintiffs be permitted to file a response to Defendants' sur-reply. The purpose of a sur-reply is to remedy prejudice created when a party raises new arguments, evidence, or theories for the first time on reply. Plaintiffs have already had their opportunity to brief the issues they chose to raise in their reply. As the *National Utility Service* court held, Plaintiffs "raised the issue in [their] reply brief and ha[ve] already had an opportunity to brief the issue." *Nat'l Util. Serv., Inc.*, 45 F. Supp. 2d at 445–46. Defendants' requested sur-reply merely provides the response that Plaintiffs' reply-stage submissions prevented them from making in the ordinary course. Allowing Plaintiffs yet another submission would defeat the very purpose of the sur-reply. *See id.* Courts in the Third Circuit routinely deny requests for supplemental briefing from the party that improperly and belatedly introduced new evidence, facts, or arguments. *See id.*; *St. Clair Intell. Prop. Consultants, Inc.*, 291 F.R.D. at 80; *Amlin Underwriting, Ltd. v. Caribbean Auto Mart of St. Croix, Inc.*, 2010 WL 3825106, at *2 (D.V.I. Sept. 28, 2010) (granting a sur-reply when one party improperly "raised a new argument in its reply," and

Page 8

denying that party's request for additional reply on the grounds that it "**defies logic, as [that party] raised the issue itself for the first time in reply**.") (emphasis added). Those principles fit like a glove here.

Plaintiffs' efficiency argument is similarly unpersuasive. Plaintiffs contend that renewed briefing would permit them to remove references to parties who have since settled and otherwise streamline the existing briefing. But the Court is fully capable of evaluating the existing record and disregarding issues that are no longer relevant. Any marginal streamlining benefit does not justify reopening class-certification briefing for a third time. To the extent Plaintiffs seek to revise, refine, or improve their prior briefing in light of developments that occurred after their reply was filed, that is precisely the advantage they should not receive as a result of having introduced improper material on reply.

Nor is there any meaningful assurance that Plaintiffs' renewed motion would simply replicate their existing arguments. Plaintiffs have informed Defendants only that they do not expect to make significant changes to the prior briefing. Given the procedural history of this case—including Plaintiffs' introduction of new class definitions, a new choice-of-law theory, and new expert opinions in reply—Defendants should not be required to assume that renewed briefing would be limited.

Plaintiffs' claim that their proposal promotes efficiency is illogical. According to Plaintiffs, allowing them to re-serve class certification briefing would avoid litigating Defendants' request for leave to file a sur-reply. Yet Plaintiffs could avoid that issue altogether by simply consenting to Defendants' request. In any event, Plaintiffs can hardly object to a sur-reply when their own proposal contemplates additional briefing on what is effectively their third motion for class certification. Plaintiffs' position thus reveals their true objective. They are not seeking efficiency; they are seeking another opportunity to revise their class certification arguments while ensuring that they retain the final word in the class certification briefing.

The proper course is straightforward. Defendants should be permitted to file a sur-reply addressing the new matters raised in Plaintiffs' reply brief. No further class-certification briefing should be permitted. The Court can then decide class certification on a complete record and finally bring nearly two years of class-certification proceedings to a close.

### III.    The Parties should be given a short period of time to file new or revised *Daubert* motions.

Plaintiffs assert that no supplemental *Daubert* briefing is warranted. Defendants disagree. Depending on the substance of Strebe's deposition testimony and Defendants' rebuttal expert's report (if any), Defendants may need to supplement existing *Daubert* motions, as Strebe's opinions overlap with the subject matter of some of the other individuals Plaintiffs have identified as experts. In addition, both sides may need to file new *Daubert* motions as to Strebe and Defendants' sur-rebuttal expert. Whether and to what extent supplemental *Daubert* briefing is required will depend on how expert discovery develops over the coming weeks, but Defendants respectfully request that the Court enter their proposed schedule to allowing both sides to file any additional or supplemental *Daubert* motions and complete briefing by mid-November so that this matter may finally be ripe for decision on the merits.

Respectfully submitted,

**FBT GIBBONS LLP**
*Attorneys for Defendant Quest*
*Diagnostics Incorporated*

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
*Attorneys for Plaintiffs and the Class*

Page 9

By: /s/ Ricardo Solano, Jr.
    RICARDO SOLANO, JR.

By: /s/ James E. Cecchi (by permission)
    JAMES E. CECCHI

**SIDLEY AUSTIN LLP**
*Attorneys for Defendant Quest*
*Diagnostics Incorporated*

By: /s/ Daniel C. Craig (by permission)
    DANIEL C. CRAIG

**ALSTON & BIRD LLP**
*Attorneys for Defendant Optum360, LLC*

By: /s/ Kristine M. Brown (by permission)
    KRISTINE M. BROWN

**O'TOOLE SCRIVO, LLC**
*Attorneys for Defendant Optum360, LLC*

By: /s/ Thomas P. Scrivo (by permission)
    THOMAS P. SCRIVO