**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Civil Action No. 19-md-2904(JKS)(MAH) |
| This Document Relates To: *Labcorp Track* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FINAL CERTIFICATION OF THE SETTLEMENT CLASS**

*Attorneys for Plaintiffs and the Settlement Class*

**TABLE OF CONTENTS**

**TITLE**                                                                                                              **PAGE**

TABLE OF AUTHORITIES ...................................................................................................... iii

I.      INTRODUCTION.......................................................................................................... 1

II.     INCORPORATION BY REFERENCE ......................................................................... 2

III.    SUMMARY OF SETTLEMENT TERMS .................................................................... 3

        a.   Settlement Class .................................................................................................. 3

        b.   Settlement Amount.............................................................................................. 3

        c.   Released Claims .................................................................................................. 4

IV.     THE NOTICE PLAN COMPORTS WITH REQUIREMENTS OF RULE 23 OF THE
        FEDERAL RULES OF CIVIL PROCEDURE ............................................................. 5

        a.   The Notice Plan and the Form of Notice meet the requirements of Rule 23 and
             constitutional due process. ................................................................................. 5

V.      ARGUMENT ................................................................................................................. 7

        A.   The Proposed Settlement is Fair, Reasonable, and Adequate and Warrants Final
             Approval .............................................................................................................. 7

             1.   The Law Favors and Encourages Settlement of Class Action Litigations.............. 7

             2.   Standards for Final Approval ............................................................................. 11

        a.   The Girsh Factors................................................................................................ 11

             i.     The complexity, expense, and likely duration of the litigation ........ 11

             ii.    The reaction of the class to the settlement ...................................... 12

             iii.   The stage of the proceedings............................................................ 13

             iv.    The risks of establishing liability and damages............................... 14

             v.     The risks of maintaining the class action through trial and appeal.. 15

             vi.    The ability of the defendants to withstand a greater judgment........ 15

i

vii. The range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ............................................................... 16

3. Prudential Considerations also Support the Settlement .................................... 17

VI. CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED .......... 20

VII. CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Austin v. Penn. Dept. of Corr.*,
876 F. Supp. 1437 (E.D. Pa. 1995) ...................................................................9

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304, 1314 (3d Cir. 1993) .................................................................13

*Beltran v. SOS Ltd.*,
2023 WL 319895 (D.N.J. Jan. 3, 2023) ..........................................................13

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018)...........................................................................14

*Boone v. City of Phila.*,
668 F. Supp. 2d 693 (E.D. Pa. 2009) .............................................................13

*Castro v. Sanofi Pasteur Inc.*,
2017 WL 4776626 (D.N.J. Oct. 20, 2017)..........................................11, 12, 17

*Chakejian v. Equifax Info. Servs., LLC*,
275 F.R.D. 201 (E.D. Pa. 2011).....................................................................18

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000)................................................................13, 17

*Dewey v. VW of Am.*,
728 F. Supp. 2d 546 (D.N.J. 2010) ................................................................15

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
604 F. Supp. 446 (E.D. Pa. 1985) ..................................................................17

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*,
2025 WL 3771284 (D.N.J. Dec. 31, 2025) .....................................................10

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)...................................................................... *passim*

*Granillo v. FCA US LLC*,
2019 WL 4052432 (D.N.J. Aug. 27, 2019) .....................................................10

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ...........................................................................5

*Halley v. Honeywell Int'l*,
2016 WL 1682943 (D.N.J. Apr. 26, 2016) ......................................................16

*Henderson v. Volvo Cars of N. Am., LLC,*
2013 WL 1192479 (D.N.J. Mar. 22, 2013)................................................................................15

*In re Am. Family Enters.,*
256 B.R. 377 (D.N.J. 2000) .......................................................................................................9, 11

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. 299 (N.D. Cal. 2018)..............................................................................................4

*In re AremisSoft Corp. Sec. Litig.,*
210 F.R.D. 109 (D.N.J. 2002)...................................................................................................6

*In re Auto. Refinishing Paint Antitrust Litig.,*
617 F. Supp. 2d 336 (E.D. Pa. 2007) .......................................................................................14

*In re Baby Products Antitrust Litig.,*
708 F.3d 163 (3d. Cir. 2013)......................................................................................................20

*In re Capital One Data Sec. Breach Litig.,*
2022 WL 18107262 (E.D. Va. Sept. 13, 2022).........................................................................4

*In re Cendant Corp. Litig."",*
264 F.3d 201(3d Cir. 2001)............................................................................................. *passim*

*In re Cendant Corp. Sec. Litig.,*
109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001)...................................9

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,*
269 F.R.D. 468 (E.D. Pa. 2010)................................................................................................8, 15

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.,*
795 F.3d 380 (3d Cir. 2015)........................................................................................................8

*In re Electrical Carbon Prods. Antitrust Litig.,*
447 F. Supp. 2d 389 (D.N.J. 2006) ...........................................................................................13

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
999 F.3d 1247 (11th Cir. 2021) .................................................................................................4

*In re Fasteners Antitrust Litig.,*
2014 WL 285076 (E.D. Pa. Jan. 24, 2014)................................................................................18, 19

*In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)............................................................................................. *passim*

*In re Ins. Brokerage Antitrust Litig.,*
282 F.R.D. 92 (D.N.J. 2012).......................................................................................................5, 11

iv

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012) ...............................................................................16

*In re Linerboard Antitrust Litig.*,
  321 F. Supp. 2d 619 (E.D. Pa. 2004) ........................................................................13, 17

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) ........................................................................12

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................................9

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016).................................................................................9, 13, 16

*In re PAR Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013)......................................................................17

*In re Pet Foods Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010)..................................................................................13, 18

*In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*,
  177 F.R.D. 216 (D.N.J. 1997).........................................................................................5

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
  962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)................................9, 12

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)..............................................................................15

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013)..........................................................................12

*In re Schering-Plough Corp. Sec. Litig.*,
  2009 WL 5218066 (D.N.J. Dec. 31, 2009)........................................................................15

*In re Valeant Pharm. Int'l Sec. Litig.*,
  2020 WL 3166456 (D.N.J. June 15, 2020)........................................................................11

*In re Warfarin Sodium Antitrust Litig*,
  212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004).......................................14

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)........................................................................... *passim*

*In re Yahoo, Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 421811 (N.D. Cal. July 22, 2020)........................................................................4

v

*Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*,
 148 F.3d 283 (3d Cir. 1998)................................................................................ *passim*

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
 2017 WL 2734714 (D.N.J. June 26, 2017) ..............................................................19

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985)...................................................................................................5

*Pro v. Hertz Equip. Rental Corp.*,
 2013 WL 3167736 (D.N.J. June 20, 2013) ..............................................................14

*Sheinberg v. Sorensen*,
 2016 WL 3381242 (D.N.J. June 14, 2016) ..............................................................13

*Spring Garden United Neighbors, Inc. v. City of Philadelphia*,
 1986 WL 1525 (E.D. Pa. Feb. 4, 1986) ....................................................................9

*Stoetzner v. U.S. Steel Corp.*,
 897 F.2d 115 (3d Cir. 1990)......................................................................................7

*Sullivan v. DB Invs.*,
 667 F.3d 273 (3d Cir. 2011)......................................................................................9

*Walsh v. Great Atl. & Pa. Tea Co., Inc.*,
 726 F.2d 956 (3d Cir. 1983)......................................................................................7

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
 899 F. Supp. 1297 (D.N.J. 1995) ............................................................................14

**Statutes**

28 U.S.C. § 1715(b) ...........................................................................................................7

28 U.S.C. § 1715(d) ...........................................................................................................7

Class Action Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.* .........................................7

**Other Authorities**

Fed. R. Civ. P. 23(a) ........................................................................................................20

Fed. R. Civ. P. 23(b)(3).....................................................................................................20

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................5, 6

Fed. R. Civ. P. 23(e) .......................................................................................................5, 7

Fed. R. Civ. P. 23(e)(2)..............................................................................................................7, 8

Fed. R. Civ. P. 23(e)(2)(B)(i)-(vii) ..............................................................................................5

Fed. R. Civ. P. 23(e) .................................................................................................................21

Fed. R. Civ. P. 23(e)(3)................................................................................................................8

Fed. R. Civ. P. 23(g) ................................................................................................................20

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Gina Allende et al.,[1] by and through their attorneys James E. Cecchi, Stuart A. Davidson, and Linda P. Nussbaum (collectively, "Plaintiffs"), and on behalf of themselves and a settlement class of similarly situated individuals, hereby submit this Motion for Final Approval of Class Action Settlement and Memorandum in Support.

## I.    INTRODUCTION

On April 21, 2026, this Court preliminarily approved the non-reversionary $35,000,000 cash Settlement between Plaintiffs and Defendant Laboratory Corporation of America Holdings ("Defendant" or "Labcorp") and ordered that notice be given to the class. ECF No. 865. The Settlement negotiated on behalf of the Settlement Class provides for various categories of benefits for Settlement Class Members, including: reimbursements up to $5,000 for out-of-pocket expenses associated with the Security Incident, an alternative cash payment of up to $50, and two years of valuable medical information monitoring services provided by CyEx. Plaintiffs' Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement after seven years of intensive fact and expert discovery, rounds of motion practice, including full class certification and *Daubert* briefing, and arm's-length negotiations with an experienced mediator. This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a vigorous defense mounted by Labcorp, which was represented by formidable, well-regarded lawyers with considerable  experience defending cases involving cybersecurity incidents. This result was achieved only after repleading Plaintiffs' claims and litigating two motions to dismiss that created

---

[1] The other named Plaintiffs include Tracy Buhr, Martha Cuvillier, David Finch, Rosario Gadero, Sheera Harris, Timothy Judelsohn, Carol Kaplan, Sandra Lassiter, Holly Laufenberg, Aleksandr Nazemnikov, Justin Nelson-Carter, Sherrie Palmer, George Rothwell, Valerie Scott, Tatyana Shulman, Cameron Spencer, Kristopher Thomas, Edith Thrower, Melanie Vazquez, Wendy Wallach, and Debra Wrenn.

substantial challenges for Plaintiffs. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the complexities of cybersecurity litigation, and Plaintiffs did and would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Plaintiffs' Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail and email. Based on its experience, Kroll has reason to believe that Settlement Class Notice reached 97.84% of the Class, easily meeting the due process standard. *See* Declaration of Elias Rose (hereinafter "Rose Decl.") ¶ 14. The Notices were written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. Out of 11,825,034 Settlement Class Members who were mailed or emailed notice of the Settlement, only four Settlement Class Members have sought to be excluded from the Settlement, and three have objected. *Id.* ¶ 19. This fact alone speaks volumes about the Settlements' fairness to the Settlement Class.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant Plaintiffs' separate request for attorneys' fees, expenses, and service awards. ECF No. 912.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, and for factual and procedural background on this case, Plaintiffs refer this Court to, and hereby incorporate, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 857, filed on March 13, 2026, and the accompanying

Exhibits including the proposed Settlement Agreement filed in conjunction therewith. Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, filed on July 2, 2026. ECF No. 912.

### III.    SUMMARY OF SETTLEMENT TERMS

#### a.    Settlement Class

The Settlement Class is defined as:

> All individuals for whom Labcorp transmitted personal information to Retrieval-Masters Creditor's Bureau, Inc. d/b/a American Medical Collection Agency ("AMCA"), and whose information was contained in the computer systems implicated by the cybersecurity incident at AMCA that occurred between approximately August 2018 and March 2019.

Excluded from the Settlement Class are (i) Labcorp and its officers and directors; (ii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Security Incident or who pleads *nolo contendere* to any such charge. Also excluded are those Settlement Class Members who validly opted out of the settlement. The Settlement Class includes approximately 11,825,034 members.

#### b.    Settlement Amount

Labcorp will create a non-reversionary cash Settlement Fund in the amount of $35,000,000. The Settlement Fund will be funded in two installments: (i) $1,000,000 thirty (30) days following the entry of preliminary approval by the Court; and (ii) the remaining $34,000,000 forty-five (45) days following the entry of the Final Approval Order and Judgment. The Settlement Fund will be used to pay approved claims which fall into a variety of categories. First, participating Settlement Class Members will have the option to be reimbursed for verifiable expenses associated with the Security Incident up to a total of $5,000, which includes up to 10 total hours of time (at $25 per

3

hour) spent remedying fraud, identity theft, or other similar misuse of a Settlement Class Member's personal information that is verifiable and fairly traceable to the Security Incident. In addition, if the Settlement Class Members do not wish to submit documentation related to any fraudulent activity, the Settlement Class Members are eligible for an Alternative Cash Payment of up to $50. Either option is subject to a *pro rata* increase or decrease depending upon the number of claims submitted.

In addition, participating Settlement Class Members can enroll in two years of CyEx's Medical Shield Pro services to monitor medical and healthcare information which will also be paid out of the settlement fund. If any funds are left over after payment of all valid claims, those funds will be distributed on a *pro rata* basis to holders of valid claims. Every participating Settlement Class Member is eligible for benefits from the common fund. No funds may revert to Defendant.

The types of benefits the proposed agreement provides mirror recent settlements courts have approved in cases involving cybersecurity incidents, including this Court in the instant matter, *See* ECF Nos. 510-3 (CareCentrix Settlement Agreement describing benefits), 609 (Final Approval Order), as well as: *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1258-59 (11th Cir. 2021); *In re Capital One Data Sec. Breach Litig.*, 2022 WL 18107262, at *11 (E.D. Va. Sept. 13, 2022); *In re Yahoo, Inc. Customer Data Sec. Breach Litig.*, 2020 WL 421811, at *10-12 (N.D. Cal. July 22, 2020); and *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 310-11 (N.D. Cal. 2018). There are many more.

### c. Released Claims

The Settlement Agreement includes standard release language of all claims which were alleged or could have been alleged in the pending class action, reserving such claims related to the enforcement of the Settlement Agreement. *See* Section 7 of the Settlement Agreement.

4

**IV.    THE NOTICE PLAN COMPORTS WITH REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The Settlement Class Members are entitled to notice of the proposed Settlement and an opportunity to be heard. *See* Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). "[W]here a settlement class has been provisionally certified and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 109 (D.N.J. 2012) (citing *Larson v. Sprint Nextel Corp.*, 2009 WL 1228443, at *2 (D.N.J. Apr. 29, 2009)). "[Rule] 23(c)(2)(B)-compliant notice must inform class members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the class member's right to retain an attorney; (5) the class member's right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under." *Id.* (citing *Larson*, 2009 WL 1228443 at *7); Fed. R. Civ. P. 23(e)(2)(B)(i)-(vii). Rule 23(e) notice must contain a summary of the litigation sufficient to "apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 177 F.R.D. 216, 231 (D.N.J. 1997).

**a.    The Notice Plan and the Form of Notice meet the requirements of Rule 23 and constitutional due process.**

The Notice Plan represents the best notice practicable. The Notice Plan approved by this Court in its Preliminary Approval Order provided for individual direct notice of Settlement Class Members through direct mail and email. ECF No. 865. The Claim Form, postcard notice and email

5

notice are clear and concise and directly apprised Settlement Class Members of all the information they needed to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B). The Notice Program is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), and due process. The Notice plan also provided for the creation of a dedicated settlement website and toll-free hotline where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement. (*Id.*)

To satisfy due process, "notice to class members must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002) (internal quotation marks omitted).

The plan for dissemination of Notice satisfies all Rule 23 and due process requirements. The direct notice effort consisted of: (1) between June 1, 2026 and June 5, 2026, postcard Notice was mailed via United States Postal Service ("USPS") first class mail, postage prepaid to 5,771,014 Settlement Class Members and emails were sent to 6,054,020 Settlement Class Members, Rose Decl. ¶¶ 9-10; (2) prior to mailing, the Settlement Class Member mailing list was processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS, *id.* ¶ 5; and (3) follow up efforts by Kroll:  as of July 27, 2026, Kroll has received 1,708,869 postcard Notices returned by the USPS as undeliverable, causing Kroll to either remail the postcard Notices to those that were returned to Kroll with a forwarding address from USPS or to resend the postcard Notice to addresses that had no forwarding address from USPS but were found using an address verification search ("skip trace") for a total of 1,453,842 postcard Notices. *Id.* ¶¶ 11, 13. As of June 27, 2026, 1,329,197 emails were rejected as undeliverable to which Kroll

6

is sending postcard Notices in accordance with section 10.1 of the Settlement Agreement. *Id.* ¶ 12.

The Settlement Website received 521,125 page views by approximately 358,000 total unique users

as of July 27, 2026 and the telephone hotline received 9,058 calls and 773 callers have been

connected to live operators. *Id.* ¶ 7.

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq*., mandates that

"[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days

after the later of the dates on which the appropriate Federal official and the appropriate State official

are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). On March 20, 2026,

as required by 28 U.S.C. § 1715(b), Kroll served notice of the proposed settlement on the

appropriate officials. *Id.* ¶ 4. No federal or state officials have objected to the settlement.

As of July 27, 2026, Kroll has received four requests for exclusion, and only three

objections to the Agreement. Rose Decl. ¶ 19. The deadline to submit a claim is September 3,

2026. As of July 27, 2026, Kroll has received a total of 152,697 claims. *Id.* ¶¶ 15-16.[2]

## V.    ARGUMENT

### A.    The Proposed Settlement is Fair, Reasonable, and Adequate and Warrants Final Approval

#### 1.    The Law Favors and Encourages Settlement of Class Action Litigations

Under Rule 23(e), a settlement must be "fair, reasonable and adequate" to be approved.

Fed. R. Civ. P. 23(e)(2); *see Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales*

*Practice Litig. Agent Actions),* 148 F.3d 283, 323 (3d Cir. 1998); *Stoetzner v. U.S. Steel Corp.,* 897

F.2d 115, 118 (3d Cir. 1990); *Walsh v. Great Atl. & Pa. Tea Co., Inc*., 726 F.2d 956, 965 (3d Cir.

1983). In making that determination, the court must "consider[] whether: (A) the class

---

[2] Claim submissions are still subject to final audits, including the full assessment of each claim's validity and a review for duplicate submissions.

representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

In evaluating the settlement, the court acts as a fiduciary, responsible for protecting the rights of the absent settlement class members and is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant Corp. Litig.*, 264 F.3d 201, 231(3d Cir. 2001) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)). There is a strong judicial policy in favor of resolution of litigation before trial particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also GMC Truck*, 55 F.3d at 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.")). The determination of adequacy "primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." *In  re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 392 (3d Cir. 2015). As illustrated below, these criteria are satisfied here.

Class action settlements are fair where: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (quoting *Cendant*, 264 F.3d at 232 n.18); *see In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016); *GMC Trucks*, 55 F.3d at 785; *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011).

A fair, reasonable and adequate settlement need not be the "ideal settlement." A settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (citations omitted); *see also In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001); *Austin v. Penn. Dept. of Corr.*, 876 F. Supp. 1437, 1457 (E.D. Pa. 1995) (when evaluating whether a class action settlement is fair, reasonable, and accurate, "courts have accorded significant weight to the view of experienced counsel who have engaged in arm's-length negotiations"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 68 (S.D.N.Y. 1993) ("Experienced counsel's opinions are entitled to substantial weight by the Court in determining whether to approve [a] settlement."); *Spring Garden United Neighbors, Inc. v. City of Philadelphia*, 1986 WL 1525, at *3 (E.D. Pa. Feb. 4, 1986) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight."). As discussed in depth below, as well as in the Fee Brief and supporting papers, counsel for the parties are seasoned litigators with decades of experience in complex class action cases, who unreservedly recommend this Settlement.

There can be no doubt that the negotiations that led to this Settlement were undertaken at arm's length. As discussed *supra*, the Settlement Agreement with Labcorp is the result of hard-fought, arm's-length negotiations between Plaintiffs' Counsel and Defendant's counsel, all experienced and capable lawyers in complex class actions. Plaintiffs' Counsel and Defendant's counsel vigorously advocated their respective clients' positions in the settlement negotiations and were prepared to proceed to trial if no settlement was reached.  Declaration of James E. Cecchi ("Cecchi Decl.") submitted in connection with Plaintiffs' Motion for Preliminary Approval, ECF No. 857-2 at ¶¶ 4-6, 8.

The best interests of the Settlement Class were of paramount importance throughout the negotiation process. Plaintiffs' Counsel conducted extensive discovery over the course of seven years and concluded that a settlement was in the best interest of the Settlement Class. *Id.* at ¶ 9; *see also* Declaration of James E. Cecchi submitted in connection with Plaintiffs' Motion for Attorneys' Fees, ECF No. 912-2 at ¶¶ 9-10; *id.* Exhs. 6-7.  As a result, Counsel for all parties had significant knowledge of the strengths and weaknesses of the parties' claims and defenses when the Settlement was reached.

Finally, there have been only three objections to the Settlement and only four Settlement Class Members have elected to exclude themselves from the Settlement. *See* Rose Decl. ¶ 19. " The 'dearth of objections strongly supports approval of the requested fee.'" *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC,* 2025 WL 3771284, at *22 (D.N.J. Dec. 31, 2025) (citation omitted); *Granillo v. FCA US LLC*, 2019 WL 4052432, at *9 (D.N.J. Aug. 27, 2019) (holding objection rate of 0.02% of total class members supported finding that requested attorneys' fees award was reasonable). This factor therefore supports approving both the Settlement and the requested Fee Award. Plaintiffs will address the objections and exclusions in a separate response on August 10,

2026, pursuant to the schedule set by the Court. ECF No. 865.

## 2. Standards for Final Approval

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate." *GMC Truck*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). The elements of this test – known as the "*Girsh* factors"—are, generally (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Id.* "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Valeant Pharm. Int'l Sec. Litig.,* 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) (citing *In re Am. Family Enters.*, 256 B.R. at 418).

### a. The Girsh Factors

#### i. The complexity, expense, and likely duration of the litigation

The first *Girsh* factor looks to the "complexity, expense, and likely duration of the litigation." *Girsh*, 521 F.2d at 157. This factor addresses the "probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at 233. Settlements are favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. at 103 (quoting *In re Warfarin.*, 391 F.3d at 536); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *3 (D.N.J. Oct. 20, 2017) (internal quotations omitted) ("Settlement is favored under this factor if litigation is expected to be complex,

11

expensive and time consuming."); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (noting that additional costs associated with trial of multi-district class action and the delayed recovery for the class weighs in favor of settlement).

Cases involving cybersecurity incidents are known to be complex, lengthy, and expensive to litigate. If this case proceeds rather than settles, decisions on the class certification and *Daubert* motions could engender interlocutory appeals, motions for summary judgment, pre-trial motions, trial, and post-trial appeals. Thus, if this litigation continues, even if Plaintiffs recover, they likely will not recover for many years after considerable additional expenses are incurred. Taking all these factors together, the first *Girsh* factor weighs in favor of settlement.

### ii.   The reaction of the class to the settlement

The second *Girsh* factor "requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *2 (D.N.J. Oct. 1, 2013); *see also In re the Prudential Ins. Co. of Am.*, 962 F. Supp. at 537 (small number of negative responses to settlement favors approval). It is well-established that the lack of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See Castro*, 2017 WL 4776626 at *4 n.3.

The Settlement Administrator sent 11,825,034 postcard and email Notices to potential Settlement Class Members. *See* Rose Decl. ¶¶ 5, 9-10. The July 27, 2026 deadline to file objections or requests for exclusion has passed. As of July 27, 2026, three Settlement Class Members have filed or served any objections to the Settlement and only four individuals have filed requests for exclusion. *See id.* ¶ 19. Accordingly, the reaction of the Settlement Class overwhelmingly supports approval of the Settlement.

12

### iii.    The stage of the proceedings

"The third Girsh factor 'captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 438-39 (quoting *In re Warfarin*, 391 F.3d at 537). "[C]ourts generally recognize that a proposed class action settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000); *see also In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 630 (E.D. Pa. 2004). Post-discovery  settlements "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

At the time of Settlement, Plaintiffs and Labcorp had engaged in seven years of intensive discovery, including reviewing tens of thousands of produced documents, and conducting numerous fact and expert depositions—ultimately leading to fully briefed motions for class certification. Thus, Plaintiffs were "able to gain an appreciation of the merits of the case as well as the legal theories and risks." *In re Pet Foods Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010); *see also Sheinberg v. Sorensen*, 2016 WL 3381242, at *7 (D.N.J. June 14, 2016) (recognizing the role of "meaningful discovery" in evaluating and arriving at a proper settlement amount (quoting *In re Electrical Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006)). Additionally, the parties participated in mediation by retaining retired Magistrate Judge Diane M. Welsh, to help negotiate the proposed settlement. *See Beltran v. SOS Ltd.*,  2023 WL 319895, at *4-5 (D.N.J. Jan. 3, 2023) (parties' mediation efforts assessed as part of third *Girsh* factor weighed in favor of approval of settlement).

13

### iv. The risks of establishing liability and damages

The fourth *Girsh* factor examines "the risks of establishing liability." *Girsh*, 521 F.2d at 157. Under this factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018) (quoting *GMC Truck*, 55 F.3d at 814). In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risks." *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) (quoting *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995)). And "no matter how confident one may be of the outcome of the litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007). Although Plaintiffs' Counsel believe the claims presented in the actions are meritorious, they are experienced counsel who understand "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. Labcorp has defended itself at every step of the litigation and would certainly continue to press forward with their defenses through trial. The Settlement provides certainty to the Class and substantial benefits now.

Similarly, the fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Cendant*, 264 F.3d at 238 (quoting *GMC Truck*, 55 F.3d at 816). The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319. In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d

14

Cir. 2004). Here, in a complex action like this one involving a cybersecurity incident, there is no doubt such a battle of experts would occur.

### v.   The risks of maintaining the class action through trial and appeal

The sixth *Girsh* factor also supports approving the proposed settlement. Plaintiffs would need to maintain class certification throughout the length of the suit, and Labcorp could challenge certification, move to decertify at any point, and attempt to challenge it on appeal. *See Prudential*, 148 F.3d at 321; *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003) ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved."); *Dewey v. VW of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010) ("the specter of decertification makes settlement an appealing alternative."). This increases the overall cost of the suit and risks Plaintiffs' overall chance of success. A settlement avoids those issues. Thus, the sixth *Girsh* factor weighs in favor of settlement.

### vi.   The ability of the defendants to withstand a greater judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. Even the "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538; *see also In re Schering-Plough Corp. Sec. Litig.*, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"); *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral").

Here pressing for a larger settlement after seven years of litigation is not in the best interests of the Class. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *11 (D.N.J.

15

Mar. 22, 2013) ("Plaintiffs acknowledge that 'there is currently no indication that Volvo here would be unable to withstand a more significant judgment,' but 'to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the [settlement] is within the range of reasonableness and provides substantial benefits to the Class.'") (citing cases where settlement was approved despite defendants' ability to withstand a greater judgment)); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484 (D.N.J. 2012) ("But even assuming there are sufficient funds to pay a greater judgment, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement") (internal quotations and citations omitted); *see also Halley v. Honeywell Int'l*, 2016 WL 1682943, at *14 (D.N.J. Apr. 26, 2016) ("[e]ven if [defendant] could afford a greater amount than the Settlement would require, that doesn't support rejecting an otherwise reasonable settlement . . . this factor is not relevant") (internal quotation omitted)). Moreover, this factor—Defendant's ability to withstand a greater judgment—only matters "when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 440. This is not at issue here, as the settlement benefits are excellent and is in the form of a non-reversionary common fund.

> **vii. The range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation**

The eighth and ninth *Girsh* factors, taken together, ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted

16

for the risk of not prevailing, with the amount of the proposed settlement." *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *7 (D.N.J. July 29, 2013) (citing *GMC Trucks*, 55 F.3d at 806).

Assessment of a settlement, however, need not be tied to an exact formula. *See Prudential*, 148 F.3d at 322. The Third Circuit has cautioned against demands that a settlement approach the maximum possible recovery, noting that a settlement is, after all, a compromise. *Id.* at 316-17. "In conducting this evaluation, it is recognized that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *Castro*, 2017 WL 4776626, at *6 (citing *Johnson & Johnson*, 900 F. Supp. 2d at 484-85). Accordingly, a settlement may still be within a reasonable range, even though it represents only a fraction of the potential recovery. *Cullen*, 197 F.R.D. at 144; *Linerboard*, 321 F. Supp. 2d at 632; *see also Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) ("The court must review a settlement to determine whether it falls within a 'range of reasonableness,' not whether it is the most favorable possible result of litigation."). "[C]lass action settlements are presumptively fair where (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *See In re Warfarin*, 391 F. 3d at 35 (internal quotation marks omitted). Here, the Settlement is reasonable and fair as all of the above factors were met—the parties negotiated with the assistance of retired Magistrate Judge Welsh, robust discovery was completed, Plaintiffs' Counsel is very well-experienced in similar litigation, and there have been only three objections.

### 3.    Prudential  Considerations also Support the Settlement

While the Court must apply the *Girsh* factors in analyzing for final approval, it may also

consider the "*Prudential* Factors" set forth in the Third Circuit decision, *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), when appropriate. *See In re Pet Food*, 629 F.3d at 350. These additional factors include:

1.  [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

2.  the existence and probable outcome of claims by other classes and subclasses;

3.  the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants;

4.  whether class or subclass members are accorded the right to opt out of the settlement;

5.  whether any provisions for attorneys' fees are reasonable; and

6.  whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* at 323.

The first factor has been met. As discussed *supra*, Plaintiffs and Plaintiffs' Counsel gained a well-developed understanding of the strengths and weaknesses of the case through extensive litigation, including two separate motions to dismiss, the exchange of discovery, production of substantial documents, class certification motion practice, and mediation with retired Magistrate Judge Welsh. *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding that where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of the case, and mediation efforts undertaken," this factor supported approval of settlement); *In re Fasteners Antitrust Litig.*, 2014 WL 285076, at *11 (E.D. Pa. Jan. 24, 2014) ("A substantial amount of information has been provided to Settlement Class Counsel

such that counsel are capable of making an informed decision about the merits of the case if it were to proceed to trial, and about the fairness of the settlement terms.").

With respect to the second and third *Prudential* considerations, class claims remain pending against Quest and Optum. The parties are presently re-briefing their motion for class certification and *Daubert* motions in the Quest/Optum track, ECF No. 919, and for preliminary approval of the settlement in the Other Labs track involving the Sonic Defendants. While Plaintiffs' Counsel is confident that one or more classes will be certified against the Quest and Optum Defendants, the outcome is nonetheless uncertain. The Settlement Class here is well-positioned to obtain substantial benefits, while avoiding the risks associated with those uncertainties. These factors therefore weigh in favor of settlement.

The remaining *Prudential* factors all support approval of the Settlement. *See In re Fasteners,* 2014 WL 285076 at *11 (finding it "significant" that, despite being given opportunity to opt out, only one class member did so). The fifth *Prudential* factor is met because, as set forth in the Fee Brief, ECF No. 912, Plaintiffs' Counsel's request for attorneys' fees is reasonable. The sixth factor is met too because the proposed Settlement Agreement outlines the formula for processing of claims and the allocation of settlement funds and the process by which the Settlement will be administered as described *supra*. Indeed, the Settlement Agreement provides for a robust process to assist Settlement Class Members and for an extended claims period during which claims can be filed. Courts generally accept such routine claims administration processes as fair and reasonable. *See, e.g.*, *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, *10 (D.N.J. June 26, 2017).

Finally, the Third Circuit has added an additional factor to test the reasonableness of a settlement: whether the settlement provides a "direct benefit" to members of the class. *See In re*

19

*Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d. Cir. 2013). Here, this factor is easily satisfied as every Settlement Class Member who files a valid claim form will receive a monetary payment and is eligible for additional benefits.

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested, for purposes of the Settlement only, that the Court certify the Settlement Class under Rules 23(a) and (b)(3). In the Preliminary Approval Order, this Court preliminarily certified the Settlement Class. ECF No. 865. As Subdivision (f) to the Committee Notes on Rules—2018 Amendment to Federal Rules of Civil Procedure directs, the Court's decision at preliminary approval "determin[es] that the prospect of eventual class certification justifies giving notice," but the Court cannot actually certify the Settlement Class until this final approval stage. Nothing has changed to alter the propriety of the Court's preliminary certification, and only three Settlement Class Members have objected to the Settlement. For all the reasons stated in Plaintiffs' Memorandum  of Law in Support of Plaintiffs' Motion for Preliminary Approval of Settlement and Approval of Dissemination of Notice of Settlement, ECF No. 857, incorporated herein by reference, Plaintiffs request the Court grant final certification to the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Plaintiffs Gina Allende, Tracy Buhr, Martha Cuvillier, David Finch, Rosario Gadero, Sheera Harris, Timothy Judelsohn, Carol Kaplan, Sandra Lassiter, Holly Laufenberg, Aleksandr Nazemnikov, Justin Nelson-Carter, Sherrie Palmer, George Rothwell, Valerie Scott, Tatyana Shulman, Cameron Spencer, Kristopher Thomas, Edith Thrower, Melanie Vazquez, Wendy Wallach, and Debra Wrenn as Class Representatives, and, under Rule 23(g), appoint James Cecchi of Carella Byrne Cecchi Olstein Brody & Agnello, P.C., Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP, and Linda P. Nussbaum of Nussbaum Law Group, PC as Class Counsel.

20

## VII.    CONCLUSION

For the reasons discussed herein and in other supporting documents, Plaintiffs respectfully request that  the  Court  enter  the  Proposed  Order  Granting  Final  Approval  of Class  Action Settlement and finally certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(e).

Dated: July 30, 2026

**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**

By:  _____ */s/ James E. Cecchi*_
        JAMES E. CECCHI

James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Lead Counsel for Plaintiffs*

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1225 Franklin Avenue
Suite 325
Garden City, NY 11530
Telephone: (917) 438-9189

Stuart A. Davidson
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000

*Labcorp Track Co-Lead Counsel*

21