**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Civil Action No. 19-md-2904(JKS)(MAH) |
| This Document Relates To: *Labcorp Track* | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO OBJECTIONS**

*Attorneys for Plaintiffs and the Settlement Class*

## TABLE OF CONTENTS

**TITLE**                                                                                    **PAGE**

TABLE OF AUTHORITES ................................................................................ ii

INTRODUCTION ..........................................................................................1

LEGAL STANDARD .....................................................................................3

ARGUMENT ...............................................................................................4

   I.   Four Objections to the Proposed Settlement Do Not Militate in Favor of
       Denial of the Settlement...........................................................................4

   II.  Objections as to the Adequacy of the Settlement Benefits..............................6

CONCLUSION .............................................................................................13

## TABLE OF AUTHORITIES

**CASE**                                                                      **PAGE**

*In re Am. Family Enters.*,
    256 B.R. 377 (D.N.J. 2000) ..............................................................................3

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018)...................................................................12

*Asghari v. Volkswagen Grp. of Am., Inc.*,
    2015 WL 12732462 (C.D. Cal. May 29, 2015)...............................................12

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .............................................................................3

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) .............................................................................1, 6

*In re Capital One Consumer Data Sec. Breach Litig.*,
    2022 WL 18107627 (E.D. Va. Sept. 13, 2022) ................................................9

*In re Equifax Customer Data Sec. Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Jan. 13, 2020).....................................................12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................................*passim*

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .....................................................................*passim*

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ...........................................................12

*In re Onix Grp., LLC Data Breach Litig.*,
    2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024)................................8

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
    148 F.3d 283 (3d Cir. 1998) .............................................................................4

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
    962 F. Supp. 450 (D.N.J. 1997).......................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ...........................................................................7

*In re S. Ohio Corr. Facility*,
    173 F.R.D. 205 (S.D. Ohio 1997)....................................................................6

*Skeen v. BMW of N. Am., LLC*,
    2016 WL 4033969 (D.N.J. July 26, 2016) .....................................................13

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ........................................................................2, 6

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ...........................................................................6

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ...........................................................4

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)...................................................................1, 4, 5

*In re Volkswagen Timing Chain Prods. Liab. Litig.*,
    2018 WL 11413299 (D.N.J. Dec. 14, 2018).....................................................5

*Walsh v. Great Atl. & Pac. Tea Co.*,
    96 F.R.D. 632 (D.N.J.)....................................................................................1

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ...........................................................................3

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995))....................................................................5

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
    2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) .............................................13

*Yaeger v. Subaru of Am., Inc.*,
    2016 WL 4541861 (D.N.J. Aug. 31, 2016) ..............................................5, 8, 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................................8, 9, 10, 12

**Other Authorities**

Class Action Fairness Act, 28 U.S.C. § 1715(b) .......................................................5

Fed. R. Civ. P. 23(e)(2)..............................................................................................3

## INTRODUCTION

Strong judicial policy favors resolution of litigation before trial "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Truck*"). While the reaction of class members to a proposed settlement is – and should be – a factor the Court considers in evaluating a settlement, "the court must balance the reaction of the class with all the other factors examined in considering the settlement, and can find the settlement terms fair, notwithstanding objections from the class." *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 654 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 235 (D.N.J. 2005) ("[T]he issue is whether the settlement is adequate and reasonable, not whether one could conceive of a better settlement.").

Here, there are ***only four objections*** to the Settlement,[1] out of a Settlement Class numbering well over 11 million. Such a miniscule number of objections demonstrates overall satisfaction with the Settlement. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993) (a "paucity of protestors . . . militates in favor of

---

[1] All capitalized terms herein shall have the meanings ascribed to them in the Settlement Agreement. Exhibit 1 to the Declaration of James E. Cecchi, submitted in connection with Plaintiffs' Motion for Preliminary Approval, ECF No. 857-2.

1

the settlement"); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"). Further, an analysis of the grounds for the objections does not support denial of the Settlement in connection with the second factor under *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)—the reaction of the Settlement Class to the settlement.

As set forth in greater detail below, the Objectors argue that the Settlement does not adequately compensate Settlement Class Members because: (i) the alternative cash payment of $50 is insufficient, (ii) the out-of-pocket loss reimbursement requires proof that places an unfair evidentiary burden on individuals, (iii) the medical monitoring for two years is inadequate given the data at issue, and (iv) other unique issues related to certain Objectors' mental and physical health, among other things. Courts have routinely rejected these types of objections. These objections ignore the reality of settlements, which necessarily require compromises. That the Settlement does not provide compensation for every conceivable bucket of alleged harm, or even as much compensation as one would hope for, is an insufficient basis to deny approval, especially in light of the robust nature of the compensation the Settlement does provide.

Accordingly, the Court should overrule the objections and grant final approval of the Settlement.

2

## LEGAL STANDARD

Class action settlements may be approved upon the Court's finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). The Third Circuit has adopted a nine-factor test, known as the *Girsh* factors, to guide the Court's analysis of whether a settlement is "fair, reasonable, and adequate." *See Girsh*, 521 F.2d at 157; *see also In re Am. Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000) ("These factors are a guide and the absence of one or more does not automatically render the settlement unfair.").

Among other things, a settlement is presumed fair and reasonable where the settlement is vigorously negotiated at arm's length by experienced counsel who are fully familiar with all aspects of class action litigation. *See GMC Truck*, 55 F.3d at 796. "The role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013). Rather, "significant weight should . . . be given 'to the belief of experienced counsel that the settlement is in the best interest of the class.'" *In re Am. Family Enters.*, 256 B.R. at 421 (citation omitted).

3

## ARGUMENT

**I.    Four Objections Out of Millions of Settlement Class Members Strongly Supports Settlement Approval**

As demonstrated in Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 925) (the "Final Approval Motion"), the *Girsh* factors weigh in favor of approval of the Settlement. The Settlement was vigorously negotiated at arm's length, is fair, reasonable, and adequate, and the infinitesimally small number of objections to the Settlement do not warrant its rejection. *See id.*; *see also GMC Truck*, 55 F.3d at 785; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001) ("[T]hose objecting to the proposed settlement have a heavy burden of proving the unreasonableness of the settlement."); *Varacallo*, 226 F.R.D. at 240 ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness.").

The only *Girsh* factor that is relevant here—the reaction of the Settlement Class—"attempts to gauge whether members of the class support the Settlement." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 148 F.3d 283, 318 (3d Cir. 1998). To evaluate this factor, "the number and vociferousness of the objectors" must be examined. *GMC Truck*, 55 F.3d at 812. Generally, "silence constitutes tacit consent to the [settlement] agreement." *Id.* (quotation omitted).

As to the number of objectors, there are 11,825,034 Settlement Class Members. Despite this large number of Settlement Class Members, there are ***only***

*four objections* in this case.[2] That amount represents ***an extremely small fraction (approximately 0.000034%)*** of the Settlement Class. *See Varacallo*, 226 F.R.D. at 235, 259 (approving settlement where "only about .003% of the Class submitted objections to the Court" and finding "this is a tiny percentage of the total Class"). Under *Girsh*, such a paucity of objections supports approval of the Settlement. *See In re Volkswagen Timing Chain Prods. Liab. Litig.*, 2018 WL 11413299, at *3 (D.N.J. Dec. 14, 2018) (granting final approval and overruling a total of 43 objections); *Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *7 n.5 (D.N.J. Aug. 31, 2016) ("There can be little doubt that the initial presumption [of fairness] applies here . . . [in part] because the proposed settlement drew only thirty-four objections."); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997) (small number of negative responses to settlement favors approval), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297,

---

[2] None of the State Attorneys General or the U.S. Attorney General objected to the Settlement, despite all receiving statutory notice of the Settlement under the Class Action Fairness Act. *See* 28 U.S.C. § 1715(b). No objections were lodged regarding Plaintiffs' request for attorneys' fees, reimbursement of expenses, or Class Representative service awards, and only four Settlement Class Members sought to exclude themselves from the Settlement, all of which further demonstrates the overall positive reaction of the Settlement Class to the Settlement.

1301 (D.N.J. 1995) (100 objections out of 30,000 class members weighs in favor of settlement), *aff'd*, 66 F.3d 314 (3d Cir. 1995).[3]

## II.    Objections as to the Adequacy of the Settlement Benefits

In addition to the fact that there are only **four** objections out of 11,825,034 Settlement Class Members, the substance of those objections lack foundation.

Mr. Carter[4] argues that the $50 alternative cash payment is inadequate and "fails to act as a meaningful remedy"; that two years of medical monitoring through CyEx is an insufficient time period and "leaves class members entirely vulnerable to identity theft, medical fraud, and financial exploitation in the long term without any ongoing protection"; and that the requirement to provide proof of out-of-pocket

---

[3] *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) ("[M]inimal number of objections and requests for exclusion are consistent with class settlements we have previously approved."); *Stoetzner*, 897 F.2d at 119 (small number of objections favors settlement); *Bell Atl. Corp.*, 2 F.3d at 1314 (same); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 214 (S.D. Ohio 1997) (where only twenty-five objections were filed, the "relatively small number of class members who object is an indication of a settlement's fairness") (citation omitted).

[4] Mr. Carter's objection is attached hereto as Exhibit A. Pursuant to the Court's Preliminary Approval Order, ECF No. 865, Mr. Carter's objection is deficient for the following reasons: it fails to include his telephone number (ECF No. 865, ¶ 22(i)), the identity of any and all counsel representing the objector in connection with the objection (*id.* ¶ 22(v)), the identity of all class actions in which the objector or his or her counsel has objected (*id.* ¶ 22(vi)), and a statement whether the objector or his counsel will appear at the Final Fairness Hearing (*id.* ¶ 22(vii)). Although the Court may overrule Mr. Carter's objection for these deficiencies, Plaintiffs nonetheless respond to the substance of his objection.

6

expenses for the reimbursement benefit "places an unfair evidentiary burden on individuals."

Mr. Johnson[5] objects to the adequacy of the settlement because it does not allegedly account "for the long-term and uncertain nature of the damages" . . . "that may not become apparent until years later." He is concerned that Settlement Class Members will release their claims for "only a modest payment" given the "uncertainty of future damages." Mr. Johnson does not object to the CyEx medical monitoring benefit.[6]

Ms. Shepherd objects because she wants to be included in the subset of Lead Plaintiffs or be considered for a separate allocation award because of the high level of stress that presumably (although she does not say expressly) the Security Incident caused her. She objects to the $50 alternative cash payment as inadequate "for the anguish she endured." As to the $5,000 reimbursement for out-of-pocket losses, she

---

[5] Mr. Johnson's objection is attached hereto as Exhibit B. Mr. Johnson's objection is also deficient because he fails to identify class action settlements where he previously filed an objection. ECF No. 865, ¶ 22(vi).

[6] While not an objection, Mr. Johnson "request[s] that the Court carefully review the requested attorneys' fees and expenses[.]" *See* Ex. B. Because this Court is already required "to engage in [a] robust assessment[] of the fee award reasonableness factors," Counsel does not address such request in this Supplemental Response. *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 302 (3d Cir. 2005).

states it is not "what [she] would consider the case in [her] situation."[7] She does not address the CyEx medical monitoring benefit in her objection.

Mr. Blevins,[8] who states he intends to appear at the Final Fairness Hearing, seeks "a higher settlement amount" due to physical and mental harm, harassment, property damage, and hindrance of his professional career he contends he suffered in the aftermath of the Security Incident. He also does not address the CyEx medical monitoring benefit.

Mr. Carter and Mr. Johnson say they seek a better settlement for the Settlement Class, whereas Ms. Shepherd and Mr. Blevins appear to seek a better settlement for themselves. Regardless, this "argument—that the settlement should have been better—has been frequently rejected by courts." *In re Onix Grp., LLC Data Breach Litig.*, 2024 U.S. Dist. LEXIS 225686, *32-33 (E.D. Pa. Dec. 13, 2024); *see also Yaeger*, 2016 WL 4541861, at *17 (overruling objections that asked the court to impose a better settlement); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *14 (N.D. Cal. July 22, 2020) (overruling objections that challenge the sufficiency of the relief finding that these objections fail to "take into account the risks and delays involved in proceeding to class

---

[7] Ms. Shepherd's objection is attached hereto as Exhibit C.

[8] Mr. Blevins' objection is contained in Exhibit D, but because it includes numerous pages of sensitive personal health information, Plaintiffs are filing his objection under seal.

certification, summary judgment and/or trial"). Here, the Court conducted a thorough analysis of the Settlement at the preliminary approval stage and provisionally found "it raises no obvious reasons to doubt its fairness." ECF No. 865, ¶ 1; *see also* ECF No. 925-1 (final approval memorandum of law addressing fairness of settlement benefits). Nothing has changed to alter the Court's analysis on final approval.

Moreover, where Settlement Class Members suffered unique damages, such as the mental, emotional, physical, harassment, property or professional harm that Ms. Shepherd and Mr. Blevins purportedly experienced, the proper course is to opt out from the Settlement to be able to pursue those damages on an individual basis. *In re Yahoo!*, 2020 WL 4212811, at *15 (overruling objections as to the sufficiency of the settlement because objectors suffered unique damages which are better pursued on an individual basis); *see also id.* at *16 ("emotional distress too speculative to constitute a measure of damages in data breach cases"); *In re Capital One Consumer Data Sec. Breach Litig.*, 2022 WL 18107627, at *8 (E.D. Va. Sept. 13, 2022) (overruling objection '[w]here the essence of the objection is that, to be fair and reasonable, the Settlement Agreement must be tailored to each individual's circumstance . . . as simply unworkable") (internal quotation and citation omitted). But neither did, and the time period during which they could have opted out has passed.

9

As to Mr. Carter and Mr. Johnson's concerns about the two-year duration of the medical monitoring benefit, "to the extent that objectors would prefer the Settlement to provide longer term [medical monitoring services], this preference does not render the Settlement inadequate." *In re Yahoo!*, 2020 WL 4212811, at *17. As set forth in Exhibit E of the Declaration of James E. Cecchi, ECF No. 857-2, filed in connection with Plaintiffs' Motion for Preliminary Approval, the CyEx Medical Shield Pro[9] product offered to Settlement Class Members provides two years of

---

[9] Key features of the Medical Shield Pro include:

- **Healthcare Insurance Plan ID Monitoring:** Tracks and alerts when a registered healthcare, dental, vision, and prescription plan ID is identified as exposed on the dark web.
- **Medicare Beneficiary Identifier ID Monitoring:** Warns if an MBI has been disclosed on the dark web, which could potentially expose Medicare coverage.
- **Medical Record Number Monitoring:** Alerts when a Medical Record Number has been detected on the dark web, which could potentially expose permanent medical and health records from providers, hospitals, and urgent care centers.
- **International Classification of Disease Monitoring:** Notifies when an ICD Code has been detected on the dark web, potentially exposing a private medical diagnosis.
- **National Provider Identifier Monitoring:** An exclusive monitoring service for healthcare providers. Tracks NPI and informs if registered licensing credentials are found on the dark web.
- **Health Savings Account Monitoring:** Monitors registered health savings accounts for unusual or unauthorized transactions that could indicate fraud.
- **Dark Web Monitoring:** Tracks and alerts when personal information is listed for sale on the dark web – such as black market websites, secret chat rooms, and underground forums.
- **$1,000,000 Identity Theft Insurance:** No-deductible insurance for covering expenses due to an identity theft incident.

robust and valuable monitoring of medical and healthcare data, including certain data allegedly at issue in this litigation:

> to determine whether consumers' private medical information is at risk or has been subject to medical fraud. Alerts are sent in real-time when suspicious activity is detected so that action can be taken before it's too late. In the event of fraud, a dedicated case manager will assist in trying to recover the information, and a $1,000,000 insurance policy covers eligible losses due to medical identity theft, including the theft of a healthcare insurance plan ID, and health savings accounts, as well as other types of identity theft with no deductible.

*Id.* Thus, the medical monitoring service directly addresses harms Plaintiffs allege arise from the Security Incident—medical fraud and identity theft—and provides Settlement Class Members with valuable benefits.

Finally, Mr. Carter's objection—that "strict, documented proof of out-of-pocket losses up to $5,000 places an unfair evidentiary burden on individuals"—

---

- **Real-Time Authentication Alerts:** Provides notification when a creditor receives a request for certain types of account transactions using the customer's Social Security Number.
- **High-Risk Transaction Monitoring:** Monitors personal information associated with high-risk transactions, such as online password resets, payday loan applications, tax refunds, wire transfers, and account access requests.
- **Security Freeze Assist:** Helps freeze credit files instantly from up to ten consumer reporting agencies, including the three major credit bureaus.
- **Victim Assistance:** Our team of Identity Theft Recovery Specialists offers immediate remediation assistance if identity theft is suspected.
- **Insight & Tips:** Provides up-to-date information and news curated by industry experts to inform individuals about the latest threats and scams.

should also be overruled. First, putting aside that Mr. Carter would be required to prove his alleged injuries were he to sue Labcorp on his own behalf (which he did not do), common sense dictates that proof is required to evidence claims for out-of-pocket losses for the avoidance of fraud. Courts routinely approve settlements that provide for reimbursement claims that have a proof requirement. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325 (N.D. Cal. 2018) (granting final approval over objection that the requirement of supporting documentation is overly burdensome where the claims process was "easy to navigate" and only required "documentation that should naturally exist and have been retained or is obtainable."); *In re Yahoo!*, 2020 WL 4212811, at *22 (granting final approval over objection to documentation requirement and approving claim documentation procedure for recovery of out-of-pocket costs); *In re Equifax Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *8 (N.D. Ga. Jan. 13, 2020) (explaining that documentation requirements "are routine," "less stringent than a plaintiff would have to present during discovery or trial," and "necessary to ensure that the settlement fund is used to pay legitimate claims."); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F. Supp. 2d 997, 1010 (E.D. Wis. 2010) (approving claim documentation requirements because "allowing class members to file claims without providing [claim documentation] would encourage fraudulent claims"); *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462,

12

at *29 (C.D. Cal. May 29, 2015) (approving claim documentation requirements which "require[d] proof of compliance with the [class vehicle's] oil maintenance schedule"); *In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, 2016 WL 5338012, at *14 (N.D. Ohio Sept. 23, 2016) (finding that a "minimal proof requirement 'strike[s] a proper balance between…avoiding fraudulent claims and…allowing as many class members as possible to claim benefits.'"); *Yaeger*, 2016 WL 4541861, at *13 (overruling several objections to requirement "for documentation of past repairs" because requiring "documentation…is reasonable to prevent fraud[]" and "[t]he proof c[ould] be 'anything" so long as it "corroborate[d] that an individual paid for a repair.'"); *Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *9 (D.N.J. July 26, 2016) (finding the requirement to provide documentation of vehicle service history "is not unreasonable.").

Moreover, the Settlement Agreement provides for an appeal process whereby Settlement Class Members can seek review of their denied claims (at no charge) and therefore issues with regard to the quantum or type of proof necessary to claim out-of-pocket loss can be addressed as part of that process. ECF No. 857-2, Exh. D, ¶ 10(c).

## CONCLUSION

For the foregoing reasons, the Court should deny the objections to the Settlement. In addition, as set forth in the Final Approval Motion, because the

Settlement is fair, reasonable, and adequate, and because the Settlement Class meets all requirements of Rule 23(a) and 23(b)(3), Plaintiffs respectfully submit that certification of the Settlement Class for settlement purposes, payment of the incentive awards, and final approval of the Settlement is warranted. In addition, because the award of attorneys' fees and reimbursement of expenses are justified, Plaintiffs respectfully submit that they should be approved.

Dated: August 10, 2026

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By:    */s/ James E. Cecchi*
          JAMES E. CECCHI

James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Lead Counsel for Plaintiffs*

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1225 Franklin Avenue
Suite 325
Garden City, NY 11530
Telephone: (917) 438-9189

Stuart A. Davidson
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432

14

Telephone: (561) 750-3000

*Labcorp Track Co-Lead Counsel*

15