**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC., CUSTOMER DATA SECURITY BREACH LITIGATION** | **19-md-2904 (JKS) (MAH)**<br>**MDL No. 2904**<br><br>**OPINION**<br>**(FILED UNDER SEAL)**[1] |

## I. INTRODUCTION

Presently before the Court is Defendants' letter-motion to strike one of Plaintiffs' rebuttal expert reports. Mot. to Strike, Nov. 11, 2025, D.E. 806. The Court has reviewed Plaintiffs' response, D.E. 809, and Defendants' reply, D.E. 812, and has considered this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. At issue is whether the Court should strike the rebuttal expert report by Plaintiffs' cybersecurity expert, Matthew Strebe ("Strebe"). Ex. F ("Strebe Report"), D.E. 806-7. Defendants argue the Strebe Report does not qualify as a proper rebuttal report because it impermissibly bolsters one of Plaintiffs' initial expert reports. Alternatively, Defendants request leave to depose Strebe and file a sur-rebuttal expert report. For the reasons set forth below, Defendants' motion is denied,

[1] The Court has filed the Opinion and Order under seal because the letters filed in connection with this motion, and accompanying exhibits, were filed under seal. Within fourteen days of the issuance of this Opinion and the accompanying Order, any party seeking to seal all or part of those filings must file an appropriate motion to seal pursuant to Local Civil Rule 5.3. Failure to do so will be deemed waiver and result in the Opinion and Order being unsealed.

without prejudice to Defendants' right to depose Strebe and submit a sur-rebuttal report as addressed herein.

## II. BACKGROUND

"This litigation arises out of a data security breach on the systems of American Medical Collection Agency (AMCA), a breach that reportedly compromised patient data that various medical diagnostic testing companies had provided to AMCA of billing and collection purposes." Transfer Order of MDL Panel, July 31, 2019, D.E. 1. The Court, writing primarily for the parties, assumes familiarity with facts and the lengthy procedural history of this matter. Suffice it to say, AMCA, a debt collector, received patient data from Quest Diagnostics Incorporated ("Quest"), Optum360, LLC ("Optum"), Laboratory Corporation of America Holdings ("Labcorp"), and Sonic Healthcare USA and its affiliates ("Sonic") (collectively, "Defendants") for the purposes of collecting those patients' unpaid bills for medical services. AMCA stored this data on a database. Plaintiffs allege that the patient data was compromised during a data breach, and that the data was made available on the dark web.

Defendants move to strike one of Plaintiffs' rebuttal expert reports in support of Plaintiffs' request for class certification. D.E. 806. Plaintiffs' class certification motion presents five expert reports, including the November 1, 2024 report of cybersecurity expert Mary T. Frantz. Ex. A ("Frantz Report"), D.E. 806-2. Pursuant to an Amended Scheduling Order, Defendants produced three expert reports, including Matteo Tomasini's September 2, 2025 expert report. Ex. E ("Tomasini Report"), D.E. 806-6. At issue here is one of Plaintiffs' three rebuttal expert reports, the Strebe Report. D.E. 806-7. Pursuant to the operative scheduling order, the Strebe Report was served on October 22, 2025. *See* Am. Sched. Order, July 21, 2025, D.E. 776.

Defendants' motion asserts that the Strebe Report does not offer permissible rebuttal opinions. Defendants argue that "the Strebe Report is an improper attempt, under the guise of 'rebuttal,' to introduce a new expert with a new methodology to bolster (or perhaps replace) a core opinion already offered by another of Plaintiffs' experts." D.E. 806, at 7. Defendants argue that allowing the Strebe Report to stand would prejudice them for various reasons: Defendants have already spent time and resources responding to the Frantz Report, and now would have to expend more resources to respond to the Strebe Report; Plaintiffs gained a tactical advantage by producing the Strebe Report after Defendants filed their responding expert reports and class certification opposition briefs; and expert discovery would need to be reopened, delaying adjudication of class certification. *Id.* at 8-9. Defendants also contend that Plaintiffs willfully failed to comply with the operative scheduling order and that Plaintiffs already have an expert, Frantz, who has provided a rebuttal report on the same topics. *Id.* at 9-10. In the alternative, Defendants request an opportunity to depose Strebe, file a sur-rebuttal report, and move to exclude his testimony. *Id.* at 10. Defendants' reply letter reiterates these arguments. *See generally*, D.E. 812.

Plaintiffs argue that the Strebe Report was timely served and that it "is framed, organized, and executed as a direct rebuttal to [the Tomasini Report]." D.E. 809, at 4. Plaintiffs assert that rebuttal reports are allowed to cite new evidence and employ new methodologies to counter opposing opinions, that the Strebe Report's background section provides permissible context as to why the methods in the Tomasini Report fail, and that proper rebuttal can include some overlap with the initial expert report. *Id.* at 6-8. Plaintiffs also argue that even if the Strebe Report has deficiencies, Defendants have not demonstrated sufficient prejudice as to warrant the "draconian measure" of striking the report. *Id.* at 9. Plaintiffs also oppose Defendants'

alternative request to file a sur-rebuttal report, but do not object to allowing Defendants' the opportunity to depose Strebe. *Id.* at 12.

## III. STANDARD OF REVIEW

A party must disclose the identity of any witness that may be used at trial to the other parties. Fed. R. Civ. P. 26(a)(2)(A). To offer expert testimony, a party needs to disclose, for each expert witness, a written report including "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A scheduling order may allow for rebuttal reports wherein a party may submit expert rebuttal testimony "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 550 (D.N.J. 2004); *In re Asbestos Prods. Liab. Litig. v. Fiberboard Corp.*, Nos. 09-74351x, 09-74410, 2012 WL 661673, at *3 (E.D. Pa. Feb. 8, 2012) (striking rebuttal report for "presenting few, if any, refuting arguments made by the opposing party"). "Absent a stipulation or a court order, [rebuttal] disclosures must be made . . . within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). The extreme sanction of striking a rebuttal report "should not be imposed where an untimely or improper expert disclosure amount to only a 'slight deviation from pre-trial notice requirements' or occasions only 'slight prejudice' to the movant." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 792 (3d Cir. 1994)).

## IV. DISCUSSION

### a. The Strebe Report Properly Contradicts the Tomasini Report in Part[2]

Rebuttal reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Withrow*, 967 F. Supp. 2d at 1002 (citation omitted). But "expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal." *Id.*; *see also Blake v. Securitas Sec. Servs.*, 292 F.R.D. 15, 18-19 (D.D.C. 2013) (prohibiting rebuttal testimony that exceeded the scope of the opposing party's expert's critiques).

A party cannot use rebuttal reports to correct any oversights in its expert's initial report. *See Crowley*, 322 F. Supp. 2d at 551. "An expert's rebuttal report should be stricken if it contains new opinions or information which contradicts the expert's initial report, but need not be stricken if it contains merely 'an elaboration of and [is] consistent with an opinion/issue previously addressed' in the expert's initial report." *Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2013 WL 5410531, at *2 (D.N.J. Sept. 26, 2013) (alteration in original) (quoting *Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 284-85 (W.D. Pa. 2009)). There is no bright-line rule requiring every expert opinion to "be preliminarily stated in the report, or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006). "While the applicable case law prohibits an expert from using rebuttal as a 'do-over' of an original report,

---

[2] The parties dispute whether the Strebe Report was timely. *Compare* D.E. 806, at 8 (arguing the Strebe Report was untimely) *with* D.E. 809, at 3 (arguing that the Strebe Report was timely filed). At bottom, the timeliness arguments hinge on whether the Strebe Report constitutes permissible rebuttal. If so, then it was timely filed under the operative scheduling order. *See* D.E. 776. If not, then the Strebe Report should have been disclosed with Plaintiffs' initial briefs supporting class certification. Accordingly, the Court need only determine whether the Strebe Report constitutes permissible rebuttal.

courts have refrained from 'automatically exclud[ing] anything an expert could have included in his or her original report.'" *Haskins*, 2013 WL 5410531, at *2 (quoting *Crowley*, 322 F. Supp. 2d at 551).

*Crowley* is instructive. The *Crowley* defendants' responding expert criticized the methodology employed by the plaintiff's expert. The plaintiff's expert rebuttal report attached a transcript on which that expert relied. The defendants moved to strike the transcript, arguing that the expert's failure to cite the transcript in the initial report should bar its subsequent introduction in the rebuttal report. *Id.* at 551. The court disagreed, finding the defendants' interpretation of permissible rebuttal to be "substantially more narrow than the Third Circuit's." *Id.* The court explained that rebuttal evidence, whether included in the initial expert report or not, only needed to "repel" the opposing expert's testimony. *Id.* A rule automatically barring evidence on rebuttal that could have been offered in the initial report "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." *Id.*

To determine whether the Strebe Report properly contradicts the Tomasini Report, or whether it improperly attempts to bolster the Frantz Report, the Court will examine each report in turn.

**i. Frantz Report**

Frantz provided her expert opinion on four topics: [redacted]

Frantz Report, at 3 ¶ 9. Essentially, Frantz opined that [redacted] *Id.* at 4 ¶ 18-19, 91 ¶ 329.

Frantz based the fourth opinion—[redacted] *Id.* at 4 ¶ 19. Defendants deposed Frantz regarding her report on January 15, 2025. *See* Ex. B ("Frantz Dep."), D.E. 806-3.

Frantz described [redacted] Frantz Report, at 92 ¶ 329(a). [redacted] *Id.* ¶ 330. Frantz's report did not attempt to duplicate those 2019 findings.

Frantz described [redacted]

---

[3] The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 "was passed by Congress in August 1996 to address a number of issues regarding the national health care and health insurance system." *Citizens for Health v. Leavitt*, 428 F.3d 167, 171 (3d Cir. 2005).

[4] [redacted] Frantz Report, at 15 ¶ 40.

[redacted] *Id.* ¶ 329(b). Frantz purported to rely on documents [redacted] *Id.* at 94 ¶ 339. Again, Frantz's report did not attempt to duplicate [redacted] 2019 findings.

[redacted] *Id.* at 25 ¶ 58. Frantz asserted that [redacted] *Id.* at 95 ¶¶ 341-43. Like with the [redacted] findings, Frantz did not replicate [redacted] evidence.

Finally, [redacted] *Id.* at 92 ¶ 329(d). [redacted] *Id.* at 95 ¶ 344. [redacted] *Id.* at 98 ¶ 360.

Utilizing these sources, Frantz concluded [redacted] *Id.* at 99 ¶ 366.

---

[5] Otherwise known as "The Onion Router . . . network—a constituent part of the dark web—which allows users to conceal their actual internet protocol ("IP") addresses while accessing the internet." *United States v. Werdene*, 883 F.3d 204, 207 (3d Cir. 2018).

[6] Frantz states that [redacted] Frantz Report, at 97 ¶ 354 n.456.

Case 2:19-md-02904-JKS-MAH Document 964 Filed 09/24/25 Page 9 of 26 PageID: 43091

ii. **Tomasini Report**

Defendants retained Tomasini to review and respond to the Frantz Report [redacted] Tomasini Report, at 4 ¶ 1. In other words, the Tomasini Report [redacted] Tomasini countered the Frantz Report with four opinions of his own. *Id.* at 5 ¶¶ 8-11.

Tomasini first opinion criticized Frantz's methodologies. Specifically, Tomasini [redacted]. *Id.* at 9, 13. Tomasini also asserted that [redacted] *Id.* at 16. Finally, Tomasini opined that [redacted] *Id.* at 19. Specifically, Tomasini opined that [redacted] *id.* at 21, and that [redacted], *id.* at 23. In sum, Tomasini stated that [redacted] *Id.* at 36.

Tomasini's second opinion was that [redacted] *Id.* at 43. Tomasini relied on analysis conducted by "Prescient, a global risk management and intelligence service firm" where Tomasini worked from May 2019 to May 2025. *Id.* at 6 ¶ 14. Tomasini directed and supervised a search of [redacted]. *Id.* at 43 ¶ 147. Prescient did not find [redacted]

[redacted] *Id.* at 44 ¶¶ 148-152.

Tomasini's third opinion was that [redacted] *Id.* at 46. According to Tomasini, Prescient identified [redacted]. *Id.* at 47. Tomasini asserted that [redacted] *Id.* at 51. Finally, Tomasini related that Prescient identified [redacted] *Id.* at 54. Essentially, Tomasini opined that [redacted] *Id.* at 52 ¶ 183.

Finally, Tomasini opined that [redacted] *Id.* at 58. In other words, Tomasini offered that [redacted]

**iii. Strebe Report and Analysis**

On October 22, 2025, Plaintiffs served the Strebe Report. D.E. 806-7. Plaintiffs specifically retained Strebe to respond to the Tomasini Report. *Id.* at 10 ¶ 37. Strebe was asked to address three contentions made in the Tomasini Report: [redacted]

[redacted] *Id.* ¶ 39.

The Court finds that although most of the Strebe Report constitutes proper rebuttal, certain portions do not. The Tomasini Report directly attacks the Frantz Report in four ways: [redacted] Portions of the Strebe Report are proper rebuttal because they repel Tomasini's opinions and explain why Strebe believes those opinions are unreliable. *See Haskins*, 2013 WL 5410531, at *3. Starting at Section VI,[7] the Court will review each section of the Strebe Report to determine whether it falls into the category of permissible rebuttal or impermissible bolstering.

Section VI describes the [redacted] employed throughout the Strebe Report. *Id.* at 12 ¶ 44. [redacted] *Id.* ¶ 46. Essentially, [redacted]. *Id.* Strebe analogizes the [redacted]. *Id.*

---

[7] Section I sets forth Strebe's professional qualifications and expertise. Section II lists other cases in which Strebe has provided testimony. Section III describes the materials Strebe used to reach his conclusions. Section IV summarizes Strebe's interpretation of the assignment at hand. Section V provides general background for this suit. Defendants do not appear to argue that these portions of the Strebe Report are problematic. Even if they did, the Court would disagree.

[redacted] *Id.* at 13 ¶ 47.

Defendants assert that "it is improper to introduce a new methodology on reply." D.E. 806, at 6. Sometimes that is true. *See Bowman v. Int'l Bus. Mach. Corp.*, No. 11-593, 2013 WL 1857192, at *7 (S.D. Ind. May 2, 2013) (stating that "[p]laintiffs do not have free reign to produce a rebuttal report containing additional analyses on the basis that this is the same subject matter of the initial reports. A rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticism of such methodologies"); *Byrd v. Aaron's, Inc.*, No. 11-101, 2017 WL 1093286, at *5 (W.D. Pa. Mar. 22, 2017) (striking rebuttal report in which the plaintiffs sought "to establish a new theory and methodology").

But if a rebuttal report "is limited to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief," *Crowley*, 322 F. Supp. 2d at 550 (quotation omitted), then the report "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert," *Withrow*, 967 F. Supp. 2d at 1002 (quotation omitted). And "an expert can rely on new methodologies to rebut another expert's opinions." *Mayer v. ADCS Clinics, LLC*, No. 21-5305, 2025 WL 3162334, at *1 (E.D. Pa. Nov. 12, 2025) (citing *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016)). Accordingly, the Court finds the Strebe Report may employ [redacted] but only if (1) the analysis is used to rebut a specific argument made in the Tomasini Report, and (2) the conclusion is consistent with the Frantz Report. Absent those conditions, the Strebe Report would impermissibly (1) include arguments that fail to rebut the Tomasini Report, and (2) constitute a "do-over" the Frantz Report.

Section VII ("the background section") of the Strebe Report includes additional background information on the [redacted] that Strebe asserts are "relevant" to responding to the Tomasini Report. D.E. 806-7, at 13-31 ¶¶ 48-102. Defendants argue that the Strebe Report "attempts to bolster Frantz's other opinions, under the guide of providing 'background.'" D.E. 806, at 6. Plaintiffs counter that the "background section properly provides context for why Mr. Tomasini's methods fail." D.E. 809, at 8.

The Court disagrees with Plaintiffs. First, the Strebe Report's twenty-three-page background section is longer than the background sections of the Frantz and Tomasini Reports combined. The sheer length of the background section suggests that Plaintiffs might be attempting to use Strebe's rebuttal to impermissibly "correct . . . oversights in [their] case-in-chief." *Haskins*, 2013 WL 5410531, at *2.

Second, it is unclear to the Court why the Strebe Report requires such an extensive background section. Strebe explained that [redacted] *Id.* at 24 ¶ 82. But "[r]ebuttal reports, under Rule 26(a)(2)(D)(ii), are meant solely to contradict or rebut evidence from another party, not to address general subject matter." *Lammering v. Korn*, No. 23-59, 2025 WL 3551726, at *4 (D.V.I. Dec. 11, 2025) (citing *Withrow*, 967 F. Supp. 2d at 1000)). The background section here appears to "address general subject matter" rather than "contradict or rebut" any specific findings or evidence in the Tomasini Report. Accordingly, the extensive background section is not proper rebuttal.[8]

[8] As noted above, some portions of the Strebe Report constitute permissible rebuttal. Those sections themselves include sufficient background information to comprehend Strebe's rebuttals.

Section VIII of the Strebe Report states: [redacted] Strebe Report, at 31 (cleaned up). As a preliminary matter, the Court agrees with Defendants that the above is not necessarily an accurate representation of Tomasini's opinion. *See* D.E. 812, at 3. Tomasini's opinion was that [redacted] Tomasini Report, at 8.

Defendants assert that [redacted] D.E. 812, at 3. But Tomasini also opined that [redacted] *Id.* ¶ 24. Tomasini then went a step further, and offered his own interpretations of the evidence from [redacted] *See id.* at 9 ("[redacted]"); *id.* at 15 ("[redacted]"); *id.* at 18 ("[redacted]").

It would be a permissible use of a rebuttal report to critique (1) Tomasini's critique of Frantz's methodology, and (2) Tomasini's interpretation of the evidence both Tomasini and Frantz analyzed. The Strebe Report does both.

Section VIII subsections (A), (B), and (C) opine that, contrary to Tomasini's conclusions, Frantz properly relied on the [redacted]. Strebe first critiques Tomasini's methodology. Strebe asserts that [redacted]. Strebe Report, at 31 ¶ 103 (arguing that [redacted]

[redacted] Strebe then critiques Tomasini's interpretations of the evidence, [redacted] *Id.* at 31 ¶ 103. Thus, Strebe repels Tomasini's interpretations of [redacted]

Having established that Strebe directly rebutted Tomasini, the Court now analyzes whether Strebe's conclusions align with the Frantz Report. The Court does so because application of [redacted] a methodology that Frantz did not use, would not be permissible rebuttal if Strebe used that methodology to arrive at a different conclusion than Frantz's initial report. *See Haskins*, 2013 WL 5410531, at *2 (distinguishing impermissible contradictions from permissible consistent elaborations in a rebuttal report). The Court finds that, with respect to the [redacted] evidence, the Strebe Report is a consistent elaboration of the Frantz Report. Both reports use that same evidence to arrive at the same conclusion: [redacted]. These sections of the Strebe Report do not impermissibly "attempt to correct a flaw in [Frantz's] reasoning." *Lavell v. Camden Cnty. Coll.*, No. 21-6832, 2023 WL 4074077, at *5 (D.N.J. June 20, 2023). Rather, these sections serve to permissibly "explain, repel, counteract or disprove" Tomasini's critiques. *See United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974). Accordingly, the Court finds that Section VIII subsections (A), (B), and (C) constitute permissible rebuttal.

The Court reaches a different conclusion for Section VIII subsection (D) ("[redacted] section"), titled "[redacted]" Strebe Report, at 54. As noted above, Tomasini's opinion (1) critiqued Frantz's

methodology [redacted], and (2) arrived at a differing conclusion based on that same evidence. But Tomasini was under no obligation to consider [redacted] because Frantz never analyzed those findings.

It is well-established that rebuttal reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert . . . expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal." *Withrow*, 967 F. Supp. 2d at 1002 (quotation omitted). Strebe's analyses of [redacted] findings fall into the latter category. Nothing in those analyses directly responds to the contents of the Tomasini Report—precisely because, as Strebe notes, [redacted]. Strebe Report, at 54. Accordingly, Sections VIII(D)(1), (2), and (3) do not constitute proper rebuttal.

Section IX of the Strebe Report opines that "Tomasini's [redacted]." Strebe Report, at 61. Like the previous section, this characterization of Tomasini's opinion does not exactly align with the actual opinion, which was that [redacted]." Tomasini Report, at 46. But this section directly challenges Tomasini's opinions, and therefore constitutes permissible rebuttal.

Defendants categorize Tomasini's second opinion as follows: Tomasini [redacted]' [redacted] D.E. 806, at 7 (emphasis in original). Defendants also state that [redacted]

[redacted] D.E. 812, at 3-4. As Defendants also correctly note, rebuttal reports must "explain, repel, counteract or disprove the evidence of the adverse party." *Crowley*, 322 F. Supp. 2d at 551. The Court finds that the Strebe Report serves to "counteract and disprove" Tomasini's second opinion.

Tomasini affirmatively opined that [redacted] *See* Tomasini Report § VI. Strebe primarily counters that opinion and methodology by asserting that, [redacted] Strebe Report, at 61 ¶¶ 187-89. The Strebe Report acknowledges that [redacted] *Id.* ¶ 190. Additionally, Strebe asserts that [redacted] *Id.* at 68 ¶ 210. For the most part, this section of the Strebe Report permissibly critiques [redacted]

Portions of Section IX, however, exceed Tomasini's opinion and do not constitute permissible rebuttal. These paragraphs mention that Tomasini [redacted]

[redacted] It is fair for Strebe to criticize Tomasini's [redacted] But opining that Tomasini should have reviewed other specific sources, and subsequently describing those sources, exceed the scope of the Tomasini Report. Accordingly, the following paragraphs are not proper rebuttal: *Id.* ¶ 90 ([redacted]); ¶ 202 ([redacted]); ¶ 203 ([redacted]); ¶ 221 ([redacted]). The remaining portions of Section IX constitute fair attempts to "counteract or disprove" Tomasini's [redacted], and thus constitute permissible rebuttal.

Finally, Section X of the Strebe Report opines that "[redacted]" Strebe Report, at 73. Defendants do not appear to raise any specific objection regarding Section X. *See generally* D.E. 806. Instead, they generally categorize Section X as a "legal relevance question not within the scope of proper expert testimony." D.E. 812, at 6. But whether expert opinions are legally relevant or may properly be admissible as expert testimony is more appropriately raised via a motion in limine under Federal Rule of Evidence 702, rather than a motion to strike. *See United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) ("The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."). Certainly, Defendants will have that opportunity. Beyond that, Defendants offer no other arguments in support of striking Section X, and therefore no further analysis is required of the Court. *See Cousins v. Berryhill*, No. 17-836, 2017 WL 5070230, at *10 n.5 (M.D. Pa. Nov. 3, 2017) ("[A]n argument not raised in the opening brief is deemed waived.").

In the interests of completeness, however, the Court finds that Section X appears to be proper rebuttal to Tomasini's third opinion. Tomasini's third opinion stated that: "[redacted] Tomasini Report, at 46. Tomasini asserted [redacted] *Id.* at 47 ¶ 159.

The Strebe Report rebuts Tomasini. It asserts that [redacted] Strebe Report, at 73 ¶ 229. The Court finds Section X of the Strebe Report to be permissible rebuttal because it counteracts Tomasini's attempt to [redacted]

Defendants also assert that Strebe "did not address Opinion 4 at all." D.E. 812, at 6. Defendants are mostly correct. [redacted] Strebe Report, at 10 ¶ 39(c). But it appears the Strebe Report only distinguishes [redacted]. *See id.* at 31 ¶ 102 ("[redacted]).

**c. The Balance of Factors Weighs Against Striking Plaintiffs' Expert Rebuttal Report**

The Court having found that the background and [redacted] sections are not proper rebuttal, it must consider whether it is appropriate to strike the report under Federal Rule of Civil Procedure 37(c)(1). The Third Circuit has instructed that a trial court faced with such a motion should consider five factors:

> (1) the prejudice or surprise in fact of the party against whom the evidence would have been presented,
>
> (2) the ability of that party to cure the prejudice,
>
> (3) the extent to which the presentation of evidence would disrupt the orderly and efficient trial of the case or other cases in the court,
>
> (4) bad faith or willfulness in failing to comply with the court's order, and
>
> (5) the importance of the excluded evidence.

*LabMD Inc. v. Boback*, 47 F.4th 164, 189 (3d Cir. 2022) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).[9] "The importance of the evidence is often the most significant factor." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012). "Although district courts tend to err on the side of admitting expert testimony in such cases, . . .

---

[9] These factors, sometimes called the "*Pennypack* factors," originated in *Meyers v. Pennypack Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977). *See, e.g.*, *Withrow*, 967 F. Supp. 2d at 1003-04. "[T]hese factors are sometimes articulated in slightly different ways." *Id.* at 1001 n.11. For example, some courts analyze an additional factor: "the explanation for the failure to disclose." *See id.* at 1000. Others omit that explanation factor completely. *See, e.g.*, *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 559 (D.N.J. 2022). Older Third Circuit decisions analyzed only the first four factors and omitted the fifth "importance" factor listed here. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *Paoli*, 35 F.3d at 791. Pursuant to *LabMD*, 47 F.4th at 189, the Undersigned finds it appropriate to consider the fifth factor.

such testimony may be excluded in order to protect against the flouting of discovery deadlines . . . ." *Withrow*, 967 F. Supp. 2d at 1001 (quotation omitted).

**i. Prejudice or Surprise**

First, Defendants argue that they were prejudiced by "Plaintiffs' ambush introduction of a new expert witness on the same day that class certification proceedings were supposed to conclude." D.E. 806, at 8. That is an overstatement. Most sections of the Strebe Report constituted proper rebuttal expert opinions. And under the operative Scheduling Order, Plaintiffs timely served the Strebe Report on October 22, 2025. *See* Am. Scheduling Order, July 21, 2025, D.E. 776.

Plaintiffs, on the other hand, aver that "even if the Court finds any deficiency, the report should not be excluded because any failure [to disclose] was substantially justified or is harmless." D.E. 809, at 9 (alteration in original) (quoting Fed. R. Civ. P. 37(c)(1)). Plaintiffs assert that Defendants cannot demonstrate "prejudice because they had an opportunity to, but did not, depose Mr. Strebe about his rebuttal report." *Id.* at 10. Plaintiffs also contend that they offered an alternative schedule under which Defendants would have had an additional fifteen days to depose Strebe before filing *Daubert*[10] motions, but Defendants rejected. *Id.*

There are several reasons to conclude that Defendants have been prejudiced, albeit to a limited extent. At seventy-eight pages, the Strebe Report constitutes an extensive amount of additional material to digest while preparing *Daubert* motions—even with the benefit of fifteen additional days. D.E. 812, at 9-10. And although a significant portion of the Strebe Report

[10] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). "*Daubert*'s reliability requirement ensures that an expert's testimony is 'based on the methods and procedures of science, not on subjective belief and unsupported speculation.'" *Cohen v. Cohen*, 125 F.4th 454, 461-62 (3d Cir. 2025) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80-81 (3d Cir. 2017)).

constitutes mere elaboration of ideas from the Frantz Report, or proper critiques of Tomasini's methodologies, the Court agrees with Defendants that they should have had a reasonable opportunity to depose Strebe, as they did with Frantz. Defendants have also had to expend time and resources litigating the instant motion to strike a rebuttal report that was partially improper. But "the prejudice alone is not severe enough to justify striking the report[,]" *Lavell*, 2023 WL 4074077, at *6, if the Court has the ability to cure that prejudice.

**ii. Ability to Cure Prejudice**

Defendants aver that this prejudice cannot be cured. D.E. 806, at 9; *see also* D.E. 812, at 9 (describing the prejudice as "incurable"). Defendants assert that Plaintiffs "gained a tactical advantage" "by waiting until after Defendants filed their class certification opposition briefs and expert reports." D.E. 806, at 9. Defendants urge the Court not to "bless Plaintiffs' prejudicial tactics." *Id.* Defendants alternatively argue that if the Court denies the instant motion to strike, the Court should also afford Defendants an opportunity to: (1) depose Strebe, (2) serve a sur-rebuttal report, and (3) move to exclude Strebe's testimony. *Id.* at 10.

Plaintiffs "do not object to Defendants deposing Mr. Strebe or seeking to exclude his testimony." D.E. 809, at 12. But Plaintiffs object to Defendants' request to serve a sur-rebuttal report, fearing that to do so would "create endless loops of expert testimony." *Id.*

The Court concludes that the prejudice to Defendants is redressable.[11] The Court will allow the Defendants an opportunity to depose Strebe regarding the background and [redacted]

[11] Defendants argue that refusal to strike the Strebe Report would unacceptably delay disposition of the remainder of this case, because the case schedule will be disrupted, and class certification will be delayed by several months. D.E. 806, at 9. The Court disagrees. There is no trial date, or even a date for the final pretrial conference. Although a limited reopening of discovery inevitably will delay adjudication of the class certification motion, the delay will not be so egregious as to be undue. *Lavell*, 2023 WL 4074077, at *8 (citing *Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574 (M.D. Pa. 2022) (holding that discovery adjustments would not

[redacted] sections, as well as [redacted] methodology. The Court also will allow the Defendants an opportunity to serve a sur-rebuttal report that is limited to Strebe's analysis of the [redacted] and [redacted] methodology. Thereafter, the Court will not permit any further expert reports. This approach strikes a fair balance between allowing the Strebe Report to stand pursuant to the *LabMD Inc.* factors, and remedying the prejudice suffered by the Defendants from those sections of the report that are not permissible as rebuttal.

**iii. Bad Faith or Willfulness**

Defendants' bad faith or willfulness argument is premised on finding that the Strebe Report is a late initial expert report. *See* D.E. 806, at 9 ("there is no legitimate explanation for the late-served Strebe Report other than to try to sandbag Defendants to gain a tactical advantage"); D.E. 812, at 11 (categorization the Strebe Report as a "late disclosure"). Plaintiffs counter that the Strebe Report was not offered in bad faith because the operative scheduling order allowed rebuttal reports, and the Strebe Report constituted proper rebuttal.

The Court does not find bad faith or willfulness. "[T]he Third Circuit requires an egregious showing of bad faith" to strike a rebuttal report. *Holbrook v. Woodham*, No. 05-304, 2008 WL 544719, at *3 (W.D. Pa. Feb. 28, 2008). The record here is well short of that. In the main, the Strebe Report offers proper rebuttal opinions. Moreover, the Plaintiffs offered the report within the deadline for rebuttal reports. Therefore, the Court rejects the suggestion that Plaintiffs attempted to "sandbag" Defendants.

---

"disrupt the orderly efficient trial of the case" when case was not scheduled for trial, even though discovery had gone on for over two years)). Moreover, "[c]ourts in the Third Circuit regularly find that this factor does not support striking an expert report or disclosures 'if no trial date has yet been set.'" *Kimmel v. Mass. Bay Ins. Co.*, No. 21-12743, 2023 WL 8714336, at *10 (D.N.J. Dec. 15, 2023) (quoting *White v. Beaver Cnty.*, No. 17-998, 2019 WL 5395215, at *2 (W.D. Pa. Oct. 22, 2019)).

### iv. Importance of the Evidence

The final, "and often the most prominent *Pennypack* factor" addresses "the importance of the evidence to be excluded." *Jazz Pharms. Ir. Ltd. v. Lupin Inc.*, No. 21-14271, 2026 WL 191182, at *11 (D.N.J. Jan. 26, 2026) (citing *ZF Meritor*, 696 F.3d at 299). Defendants argue that Strebe's testimony is unnecessary, because Plaintiffs' other expert, Frantz, already rebutted the Tomasini Report. D.E. 806, at 10. Plaintiffs briefly respond that Strebe's analysis is crucial to addressing Tomasini's opposition to the Frantz Report. D.E. 809, at 11. But Plaintiffs' letter is otherwise silent as to the importance of Strebe's testimony and the consequences of excluding the Strebe Report.

The fact that Frantz also submitted a rebuttal report,[12] *see* D.E. 806-9, could weigh against the importance of Strebe's testimony. But the Court finds that Frantz and Strebe, for the most part, rebutted different aspects of the Tomasini Report. Frantz's rebuttal more generally critiqued Tomasini for not considering [redacted] D.E. 806-9, at 2 ¶ 8. But Strebe was retained to address three specific aspects of the Tomasini Report, D.E. 806-7, at 10 ¶ 39. Those three contentions were: [redacted] Strebe Report, at 10 ¶ 39.

It is true that Frantz's rebuttal report and the Strebe Report overlap to some extent. For example, both Strebe and Frantz discuss new evidence that neither the initial Frantz Report nor

[12] Whether Frantz's rebuttal report constitutes permissible rebuttal or impermissible bolstering is not at issue here.

the Tomasini Report analyzed. However, when "some, but not all" of a witness's "testimony was covered by the testimony of another . . . witness," the Third Circuit has not considered the fifth *Pennypack* "factor as particularly favorable to either side." *Konstantopoulos*, 112 F.3d at 720. Accordingly, the Undersigned finds the fifth factor to be neutral.

On balance, although the first factor weighs in favor of striking the new portions of the Strebe Report, the second, third, and fourth factors weigh against exclusion, and the final factor is neutral. Accordingly, the Court finds that exclusion of the Strebe Report is not warranted, and therefore Court denies Defendant's request to strike the report in its entirety.

## V. CONCLUSION

The majority of the Strebe Report is proper rebuttal that adequately responds to the Tomasini Report. It is true that the Strebe Report introduces a lengthy background section, a new methodology, and an analysis of new evidence that constitutes an impermissible bolstering of the initial Frantz Report. However, the *Pennypack* factors weigh against the extreme sanction of striking the Strebe Report. To cure Defendant's prejudice, Defendant may (1) depose Strebe, and (2) serve a sur-rebuttal report that responds solely to the new evidence and [redacted]

methodology. Accordingly, Defendants' motion to strike Plaintiffs' rebuttal expert report as impermissibly bolstering one of Plaintiffs' initial reports is denied.[13]

The parties will meet and confer concerning the deadlines by which Defense Counsel will depose Strebe, and submit the sur-rebuttal report. The parties shall submit the agreed-upon deadlines to the Court by July 1, 2026.

An appropriate Order accompanies this Opinion.

*s/ Michael A. Hammer*________
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**

Dated: June 24, 2026

[13] Nothing in this ruling limits Defendants' right to challenge the Strebe Report under Federal Rule of Evidence 702, via an in limine motion. *See Lavell*, 2023 WL 4074077, at *9, n.8 ("The Court's ruling here preserves Defendant[s'] ability to attack the report at later stages of this litigation, such as through a motion in limine.").