**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION

This Document Relates To: *Other Labs Track*

Civil Action No. 19-md-2904(JKS)(ADS)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVES' SERVICE AWARDS**

---

***Attorneys for Plaintiffs and the Settlement Class***

# TABLE OF CONTENTS

**Title** **Page**

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Discovery ........ 3

B. Settlement and Notice ........ 5

III. PLAINTIFFS' COUNSEL'S APPLICATION FOR AWARD OF REQUESTED FEES AND EXPENSES WARRANTS APPROVAL ........ 5

A. The Settlement Class Has Received Reasonable Notice of the Requested Fees and Litigation Expenses, and Has Been Given a Reasonable Opportunity to Object ........ 6

B. The Fees Requested by Plaintiffs' Counsel are Fair and Reasonable........ 7

i. Percentage of Recovery Method ........ 8

(1) The size of the fund created and the number of persons benefitted........10

(2) The presence or absence of substantial objections by members of the settlement class to the settlement terms and/or fees requested by counsel ........11

(3) The skill and efficiency of the attorneys involved........12

(4) The complexity and duration of the litigation........12

(5) The risk of nonpayment ........13

(6) The amount of time devoted to the case by Plaintiffs' counsel ........15

(7) The awards in similar cases ........16

(8) The value of benefits attributable to the efforts of Plaintiffs' Counsel relative to the efforts of other groups, such as government agencies conducting investigations ............................ 17

(9) The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained ...................................................... 18

ii. Lodestar Cross Check ................................................................... 18

(1) Plaintiffs'counsel's hourly rates are reasonable ........................... 19

(2) The number of hours Plaintiffs' counsel worked is reasonable ...................................................................... 21

(3) Plaintiffs' counsel's fee results in a negative multiplier of 3.34, which is strong evidence that the fee is reasonable ............. 21

IV. PLAINTIFFS' COUNSEL'S COSTS AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ........................................................................ 22

V. SERVICE AWARDS FOR CLASS REPRESENTATIVES ........................................... 22

VI. CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Case** **Page**

*Acevedo v. BrightView Landscapes, LLC*,
2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) .....22

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
263 F.R.D. 226 (E.D. Pa. 2009).....22, 23

*In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*,
19-md-2904 (D.N.J.) (JKS) (ADS)..... *passim*

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002).....11, 12

*In re AT&T Corp.*,
455 F.3d 160 (3d Cir. 2006).....8, 18, 19

*Bezio v. Gen. Elec. Co.*,
655 F. Supp. 2d 162 (N.D.N.Y. 2009) .....24

*Castro v. Sanofi Pasteur Inc.*,
2017 WL 4776626 (D.N.J. Oct. 23, 2017).....9, 13, 21

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....21

*In re Cendant Corp. Prides Litig.*,
243 F.3d 722 (3d Cir. 2001).....8

*Cohen v. Subaru of Am., Inc.*,
No. 1:20-CV-08442-CPO-AMD (D.N.J. Dec. 10, 2024), .....20

*In re Comcast Corp. Set-Top Television Boz Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019).....21

*In re Diet Drugs (Phenterine/ Fenfluramie/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009).....10, 17

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*,
553 F. Supp. 2d 442 (E.D. Pa. 2008) .....14

*In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*,
2018 WL 2722458 (D.N.J. May 10, 2018) .....9

*Elkin v. Walter Inv. Mgmt. Corp.*,
2018 WL 8951073 (E.D. Pa. Dec. 17, 2018) ....................23

*In re Fasteners Antitrust Litig.*,
2014 WL 296954 (E.D. Pa. Jan. 27, 2014) ....................14

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*,
2025 WL 3771284 (D.N.J. Dec. 31, 2025) ....................20

*In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*,
2016 WL 6909078 (N.D. Ohio Jan. 26, 2016)....................7

*Fulton-Green v. Accolade, Inc.*,
2019 WL 316722 (E.D. Pa. Sep. 24, 2019) ....................14

*Gelis v. BMW of N. Am., LLC*,
178 4 F.4th 810 (3d Cir. June 11, 2026) ....................8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig. ("GM Truck")*,
55 F.3d 768 (3d Cir. 1995)....................9, 13, 16

*Glaberson v. Comcast Corp.*,
2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) ....................22

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000).................... *passim*

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017)....................9, 17

*In re HealthEC LLC Data Breach Litig.*,
No. 2:24-CV-00026 (D.N.J. Jan. 13, 2026), ECF Nos. 183, 185 ....................20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................7, 10

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2022 WL 16533571 (E.D. Pa. Oct. 28, 2022)....................23

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)....................9, 17

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)....................8, 18

*Kanefsky v. Honeywell Int'l Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022) .................... *passim*

*Karcich v. Stuart (In re Ikon Off. Sols., Inc., Sec. Litig.)*,
194 F.R.D. 166 (E.D. Pa. 2000)....................18

*Khanna v. Sokoloff*,
2017 WL 825215 (D.N.J. Mar. 2, 2017)....................19, 20

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
2019 WL 4877563 (D.N.J. Oct. 3, 2019)....................8

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
2018 WL 7108059 (D.N.J. Dec. 3, 2018)....................9

*Lupian v. Joseph Cory Holdings*,
2019 WL 3283044 (D.N.J. July 22, 2019)....................9

*In re Merck & Co., Inc., Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 10, 2010)....................9, 14, 17, 18

*Milliron v. T-Mobile USA, Inc.*,
2009 WL 3345762 (D.N.J. Sep. 10, 2009)....................17

*Moore v. GMAC Mortg.*,
2014 WL 12538188 (E.D. Pa. Sept. 19, 2014)....................20

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
2016 WL 5844319 (D.N.J. Oct. 3, 2016)....................21

*In re Nat'l Football League Players' Concussion Injury Litig.*,
2018 WL 1635648 (E.D. Pa. Apr. 5, 2018)....................12

*In re Nutella Mktg. & Sales Pracs. Litig.*,
589 F. App'x 53 (3d Cir. 2014)....................8

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016)....................22

*Oliver v. BMW of N. Am., LLC*,
2021 WL 870662 (D.N.J. Mar. 8, 2021)....................12, 13

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013)....................23

*In re Philips/Magnavox TV Litig.*,
2012 WL 1677244 (D.N.J. May 14, 2012)....................19

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)....................10

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*,
51 F.3d 1179 (3d Cir. 1985)........................................19

*In re Remeron Direct Purchaser Antitrust Litig.*,
2005 WL 3008808 (D.N.J. Nov. 9, 2005) ........................................17, 18

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)........................................15

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................17

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)........................................8, 10, 19, 20

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ........................................9, 22

*Strougo v. Mallinckrodt Pub. Ltd. Co.*,
2025 WL 1805498 (D.N.J. Apr. 25, 2025) ........................................20

*Talone v. Am. Osteopathic Ass'n*,
2018 WL 6318371 (D.N.J. Dec. 3, 2018)........................................13

*Tavares v. S-L Distrib. Co.*,
2016 WL 1743268 (M.D. Pa. May 2, 2016)........................................14

*In re U.S. Steel Consol. Cases*,
2023 WL 11997192 (W.D. Pa. Mar. 21, 2023) ........................................21

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020)........................................18

*In re Valeant Pharm. Int'l, Inc. Third Party Payor Litig.*,
2022 WL 525807 (D.N.J. Feb. 22, 2022) ........................................21

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 358611 (D.N.J. Feb. 1, 2021) ........................................10

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016)........................................13

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23(h) ........................................7

Fed. R. Civ. P. 23(h)(1)........................................6

**Other Authorities**

Edward R. Becker, C.J., *Third Circuit 2001 Task Force Report on Selection of Plaintiffs' Counsel*, 74 Temp. L. Rev. 689 (2001)....................9

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d), Plaintiffs Gwendolyn Anderson and Tonda Tate, by and through their attorneys James E. Cecchi of Carella Byrne Cecchi Brody & Agnello, P.C., Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC, Justin J. Hawal of DiCello Levitt LLP, and Steven M. Nathan of Hausfeld LLP (collectively, "Plaintiffs"), on behalf of themselves and a Settlement Class of similarly situated individuals, hereby move this Court to approve an award of attorneys' fees in the amount of $2,189,116.59, expenses of $144,191.47, and for service awards in the amount of $5,000 per Settlement Class Representative (totaling $10,000). In support of this Motion, Plaintiffs rely upon the following Memorandum, and (a) the Declaration of James E. Cecchi ("Cecchi Decl."); (b) the Settlement Agreement between Plaintiffs and ) Defendants Sonic Healthcare U.S.A., Aurora Diagnostics LLC, Clinical Pathology Laboratories, Inc. ("CPL"), and Austin Pathology Associates ("Austin Path") (collectively, "Sonic" or "Defendants"), attached as Exhibit 1 to the Declaration of James E. Cecchi in Support of Plaintiffs' Motion for Preliminary Approval ("Motion for Preliminary Approval") (ECF No. 901-2); (c) the Declaration of Elias Rose of Kroll ("Rose Decl."); (d) the records, pleadings, and papers filed in this action, and (e) upon such other documentary, oral evidence, or argument as may be presented to the Court at or prior to the Final Approval Hearing currently scheduled for January 7, 2027 at 11:00 a.m.

## I. INTRODUCTION

This class action lawsuit arises out of a cybersecurity incident affecting the computer systems of American Medical Collection Agency ("AMCA"), one of Defendants' debt collection vendors, that occurred between August 1, 2018 and March 30, 2019 (the "Security Incident"). Prior to reaching a settlement in this case, the parties engaged in all of the usual hallmarks of a difficult and hotly contested litigation – motions to dismiss, amended pleadings, document and paper discovery, disputes regarding the scope of discovery, fact and corporate depositions, expert

discovery, class certification motion practice, including *Daubert* motions, and, ultimately, numerous settlement negotiations with the assistance of experienced mediators, including former U.S. Magistrate Judge Diane M. Welsh.

Plaintiffs believe that they have achieved an excellent result for the Settlement Class. Although Plaintiffs are highly confident that they would ultimately succeed on the merits of their claims and class certification, there were obvious risks to continued litigation – risks that are eliminated through this settlement. Plaintiffs are equally confident in the merits of their fee application. A tremendous amount of work went into this settlement and the litigation as a whole. It has been a hard-fought battle that continues against certain other defendants. In light of the work, time, and expense incurred, our application for $2,189,116.59 in fees is significantly less than our $25,634,914.70 total lodestar (after subtracting the $11,900,000 fees granted in the Labcorp settlement) and, as to the lodestar allocated to the Other Labs Track of $7,302,222.80, yields a ***negative*** 3.34 multiplier. Cecchi Decl. ¶¶ 4-13. Plaintiffs also seek an award of costs and expenses of $144,191.47, and Service Awards of $5,000 for each named Plaintiff. *Id.* ¶¶14-22.

Plaintiffs' Counsel's fee and expense request is fair and reasonable under both a percentage of the benefit approach and a lodestar approach. For these reasons, the Court should grant the motion, and award Plaintiffs' Counsel the requested fees and expenses, and make service awards to the Settlement Class Representatives.

## II. BACKGROUND

Plaintiffs incorporate by reference from the Motion for Preliminary Approval the factual and procedural history of this Action, including those concerning settlement discussions between the parties. Below, Plaintiffs solely discuss Plaintiffs' Counsel's efforts to prosecute this Action.

Plaintiffs' Counsel spent seven years vigorously litigating this case against Sonic to put themselves in a strong position to reach a settlement that provides substantial benefits to the Settlement Class. Prior to even engaging in discovery, Plaintiffs' Counsel spent significant time investigating the facts and legal claims against Sonic, as well as communicating with and vetting the claims of a substantial number of potential named Plaintiffs. As the docket reflects, Plaintiffs' Counsel also researched and authored a robust Complaint, including subsequent amendments, and fully litigated Sonic's two motions to dismiss. Once discovery commenced, Plaintiffs' Counsel vigorously litigated against the full-throttle defense that Sonic mounted. There were numerous discovery disputes before Magistrate Judge Hammer and Special Master Mark Falk. Plaintiffs' Counsel identified, retained, and worked with a number of liability experts, including in areas of cybersecurity and the Dark Web (Mary Frantz and Mathew Strebe), the HIPAA regulatory framework (Sharon Anolik), and to understand the data produced by AMCA to measure the class size and the types of PII and PHI included in the breach (Jonathan F. Lee), and with damages experts, including to understand the harm arising from stolen PII and PHI by cybercriminals (Amy Worley) and for actuarial services (Scott J. Witt). Throughout this process, Plaintiffs' Counsel also participated in regular court conferences regarding the efficient and fair management of this litigation, ensuring that the interests of the Settlement Class were vigorously represented every step of the way.

## A. Discovery

Plaintiffs' Counsel engaged in years of discovery ensuring they fully understood all of the strengths, weaknesses, and risks associated with Settlement Class Members' claims before resolving this case by settlement. Plaintiffs' Counsel drafted and served multiple sets of written discovery on Sonic, including Requests for Production of Documents, Interrogatories, and Requests for Admission. Plaintiffs' Counsel also drafted and served responses to multiple sets of

written discovery Sonic propounded, working closely with Settlement Class Representatives on those responses. The fulsome exchange of discovery between the parties also resulted in a substantial number of discovery disputes that were navigated by Plaintiffs' Counsel in front of the Magistrate Judge and Special Master Falk, in a manner that ensured Settlement Class Members' interests were represented to the fullest extent possible.

Plaintiffs' Counsel also worked with the Settlement Class Representatives to search for and produce hundreds of pages of documents and conduct forensic ESI searches of their emails based upon negotiated ESI search terms, which also required Plaintiffs' Counsel to review all such documents and ESI prior to production for relevance and privilege. After negotiating additional ESI search terms for Defendant's document searches, Plaintiffs' Counsel also reviewed hundreds of thousands of documents that were produced by Sonic, AMCA, and other third parties.

Plaintiffs' Counsel drafted and served multiple Rule 30(b)(6) deposition notices and engaged in negotiations regarding Rule 30(b)(6) deposition topics with Sonic. Plaintiffs' Counsel also identified numerous current and former Sonic employees from whom they sought depositions. Overall, Plaintiffs' Counsel took three (3) fact depositions, three (3) corporate representative depositions, six (6) third party depositions, and three (3) expert depositions. The three corporate representative depositions resulted in disputes before Special Master Falk. Additionally, both named Plaintiffs were deposed.

Plaintiffs' Counsel fully briefed a class certification motion in the Other Labs track and briefed and opposed numerous corresponding *Daubert* motions.

Finally, as described above, Plaintiffs' Counsel retained and worked with numerous experts with respect to both liability and damages to prosecute their case against Sonic and to ensure that

they understood the strengths, weaknesses, and risks associated with Settlement Class Members' claims before entering into settlement negotiations.

**B. Settlement and Notice**

The proposed Settlement was reached after numerous arms-length negotiations among counsel and under the auspices of Judge Welsh. As set forth above, significant time and resources were expended to ensure that Settlement Class Members' interests were strongly represented during settlement negotiations. The parties met with retired Magistrate Judge Diane M. Welsh on January 15, 2026, for an all-day in-person mediation, before the settlement was reached. These settlement negotiations required substantial preparation and research so that Plaintiffs' Counsel could obtain the best possible results for the Settlement Class. The Settlement Agreement itself took months of intensive negotiations, which was eventually finalized on April 30, 2026.

After the Settlement was reached, Plaintiffs' Counsel spent and, continue to spend, significant time and resources developing a robust settlement administration and notice program that comports with both the requirements of Rule 23 and the Due Process Clause. Among other tasks, Plaintiffs' Counsel worked with the Settlement Administrator to prepare Notice and Claims documents, helped develop a settlement website, and will continue to monitor for potential opt outs and objections to the Settlement. To the extent final approval is granted, Plaintiffs' Counsel will continue to expend time and resources for a considerable length of time to ensure that the Settlement administration follows the court-approved claims process.

**III. PLAINTIFFS' COUNSEL'S APPLICATION FOR AWARD OF REQUESTED FEES AND EXPENSES WARRANTS APPROVAL**

Plaintiffs' Counsel respectfully seek the Court's approval of an award of $2,189,116.59 (representing 34% of the common fund), and $144,191.47 in reasonable litigation expenses in connection with their work on behalf of Plaintiffs and the Settlement Class in this litigation.

Plaintiffs' Counsel have provided the Settlement Class with appropriate notice of their intention to make this request, and the Settlement Class will have an adequate opportunity to object to this Motion after its filing. For the reasons set forth below, this fee and expense request is reasonable and should be granted.

### A. The Settlement Class Has Received Reasonable Notice of the Requested Fees and Litigation Expenses, and Has Been Given a Reasonable Opportunity to Object

Fed. R. Civ. P. 23(h)(1) provides that "[n]otice of the motion [for an award of attorneys' fees and costs] must be served on all parties and, for motions by Plaintiffs' Counsel, directed to class members in a reasonable manner." That requirement is satisfied here. On October 5, 2026, Kroll caused the court-approved Email Notice to be sent to 1,353,072 Settlement Class Members for whom an email address was obtained through the append process and postcard Notice was mailed via United States Postal Service ("USPS") first class mail with postage prepaid to 386,696 Settlement Class Members for whom no email address was available, Rose Decl. ¶¶ 11-12; (2) prior to mailing postcard Notice, the mailing list for those Settlement Class Members for whom a physical address was known was processed through the USPS National Change of Address database to identify updated addresses for individuals who filed a change of address card with the USPS, *id.* ¶ 9; (3) as of November 10, 2026, Kroll has received 66,167 postcard Notices returned by the USPS as undeliverable, causing Kroll to automatically remail the postcard Notices to those that were returned to Kroll with a forwarding address (1,149) from USPS or to resend the postcard Notice to addresses that had no forwarding address from USPS but which are found using an address verification search ("skip trace"), *id.* ¶¶ 15-16; and (4) as of November 10, 2026, 595,050 emails were rejected/bounced back as undeliverable. In accordance with section 10.1 of the Settlement Agreement, Kroll sent Postcard Notices to these Settlement Class Members, *id.* ¶ 14.

The Notices informed Settlement Class Members that Settlement Class Counsel would ask the Court to award attorneys' fees of up to 34% of the Sonic Settlement Fund, reimbursement of reasonable and necessary litigation expenses, and service awards of $5,000 for both Plaintiffs, all to be paid from the Settlement proceeds. The Notices also provided detailed instructions on how to object, and directed Settlement Class Members to the settlement website, where Settlement Class Counsel will post this Motion on November 18, 2026.

Settlement Class Members have thus been on notice of the requested fees, expenses, and service awards since the Notices were mailed/emailed. Objections are due December 3, 2026, giving Settlement Class Members two weeks after this Motion is filed to review it and lodge any objections. ECF No. 941. Settlement Class Counsel will respond to any objections on December 23, 2026.

### B. The Fees Requested by Plaintiffs' Counsel are Fair and Reasonable

"In a certified class action, the court may award reasonable attorney's fees and . . . costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, in the Settlement Agreement, the parties agreed that Plaintiffs' Counsel will move the Court for an Order awarding attorneys' fees, costs, and expenses expressed as a percentage of the Settlement Fund not to exceed thirty-four percent of the fund (34%). ECF No. 901-2, Ex.1 ¶ 8.2. Courts often prefer that litigants agree to a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of the fee."); *In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*, 2016 WL 6909078, at *9 (N.D. Ohio Jan. 26, 2016) (citing *Bailey v. AK Steel Corp.*, 2008 WL 553764, at *1 (S.D. Ohio, Feb. 28, 2008)) ("Negotiated and agreed-upon attorneys' fees as part of a class action settlement are encouraged as an 'ideal' toward which the parties should strive."). Moreover, "[t]he Supreme Court has recognized that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is

entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Nutella Mktg. & Sales Pracs. Litig.*, 589 F. App'x 53, 58 (3d Cir. 2014) (quoting *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000)).

**i. Percentage of Recovery Method**

Where there is a common fund, like here, the generally favored method for determining attorneys' fees is the percentage-of-recovery method. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.") (citation and internal quotation marks omitted); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *6-9 (D.N.J. Oct. 3, 2019) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (same)); *see also Gelis v. BMW of N. Am., LLC*, 178 4 F.4th 810, 820 (3d Cir. June 11, 2026) ("Where an agreement or court order creates a common fund, the prevailing party's attorney is generally 'entitled to a reasonable attorney's fee from the fund as a whole' even though the attorney has not negotiated a fee arrangement with the client.") (citing *Boeing Co. v. Van Gemert*, 444, U.S. 472, 478-80 (1980)).

The Third Circuit has rejected benchmark percentages, preferring more qualitative standards. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) ("We have generally cautioned against overly formulaic approaches in assessing and determining the amounts and reasonableness of attorneys' fees.") (citation omitted); *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 736-37 (3d Cir. 2001) (district court may not rely on formulaic application of appropriate range in awarding attorney fees under percentage-of-fund method in a class action, but must consider relevant circumstances of particular case, including size of settlement). Indeed, the Third Circuit 2001 Task Force on Selection of Plaintiffs' Counsel recommended that courts "avoid rigid

adherence to a 'benchmark'" and concluded that "a percentage fee, tailored to the realities of the particular case, remains superior to any other means of determining a reasonable fee for Plaintiffs' Counsel." Edward R. Becker, C.J., *Third Circuit 2001 Task Force Report on Selection of Plaintiffs' Counsel*, 74 Temp. L. Rev. 689, 707 (2001).

While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig. ("GM Truck")*, 55 F.3d 768, 822 (3d Cir. 1995). Typically, courts in the Third Circuit, including this one, have viewed fee percentage-of-recovery amounts of 34% as reasonable. *See In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig. ("AMCA")*, 19-md-2904 (D.N.J.) (JKS) (ADS), ECF No. 912-1 at 6 (seeking 34% of common fund in fees), ECF No. 940 (granting fee request); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *9 (D.N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund.") (citing *GM Truck*, 55 F.3d at 822).[1]

---

[1] *See, e.g.*, *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 499-500 (3d Cir. 2017) (affirming percentage-of-recovery fee award of 28% after deduction of costs); *Lupian v. Joseph Cory Holdings*, 2019 WL 3283044, at *6 (D.N.J. July 22, 2019) ("Such [one-third] percentage awards are consistent with fees in this District in contingency cases"); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 101-02 (D.N.J. 2001) (same and collecting cases)); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, 2018 WL 2722458, at *2 (D.N.J. May 10, 2018) ("The Court finds that the requested fee of one-third of the total amount of the McWane Settlement is fair and reasonable and within the range of fees ordinarily awarded in this district and throughout the Third Circuit."); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving 33% fee award in MDL 1663); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (awarding attorney fee of one-third (plus expenses) in common fund of $10.7 million); *In re Merck & Co., Inc., Vytorin ERISA Litig.*,

In determining what constitutes a reasonable award under the percentage-of-recovery approach, the Third Circuit has deemed the ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (the "*Gunter/Prudential* factors"), to be instructive. They are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Plaintiffs' Counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

*Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 336-40; *In re Diet Drugs (Phenterine/ Fenfluramie/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

Although district courts should "engage in robust assessments of the [*Gunter/Prudential* factors] when evaluating a fee request," these factors are not exhaustive and should not be applied in a formulaic way. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 301-02. This Court should approve Plaintiffs' Counsel's request based on these factors.

**(1) The size of the fund created and the number of persons benefitted**

The most significant factor in setting fees is the size of the fund created. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *5 (D.N.J. Feb. 1, 2021); *see also Hensley*, 461 U.S. at 436 (the "critical factor is the degree of success obtained"). Here, Plaintiffs' Counsel

---

2010 WL 547613, at *9-11 (D.N.J. Feb. 10, 2010) (awarding attorney fee of one-third (plus expenses) in RICO common fund of $41.5 million).

obtained a significant amount for the Settlement Class, negotiating a non-reversionary settlement payment of $6,438,578.20. The common fund will be used to pay approved claims which fall into a variety of categories. First, participating Settlement Class Members will have the option of being reimbursed for verifiable Out-of-Pocket Losses fairly and reasonably traceable to the Security Incident up to a total of $5,000. ECF No. 901-2, Ex. D ¶ 3. The qualifying expenses are not all inclusive but generally include expenses the Settlement Class Members incurred remedying identity theft or fraudulent activity fairly and reasonably traceable to the Security Incident. If Settlement Class Members do not wish to submit documentation related to any fraudulent activity, they are eligible for Alternative Cash Payment of up to $50. *Id.* ¶ 4. Either option is subject to *pro rata* increase or reduction depending upon the number of claims submitted. In addition, participating Settlement Class Members can enroll for up to two years of medical information monitoring services by CyEx Medical Shield Pro which will also be paid out of the settlement fund. *Id.* ¶ 5. If any funds are left over after payment of all valid claims, those funds shall be distributed to Settlement Class Members. *Id.* ¶ 7. Thus, every participating Settlement Class Member is eligible for benefits from the common fund.

This represents an outstanding recovery, particularly in light of the complexity, duration, and expense of continued litigation and the risk of establishing liability and damages at trial. Given the size of the fund, as well as the number of Settlement Class Members entitled to benefits, this first factor therefore strongly supports Plaintiffs' Counsel's fee request.

**(2) The presence or absence of substantial objections by members of the settlement class to the settlement terms and/or fees requested by counsel**

Although the objection period remains open, the absence of any objection to the fee request to date supports approval. *See, e.g.*, *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 131-32 (D.N.J. 2002). Likewise, no Settlement Class Member has objected to the requested litigation

expenses or service awards. Plaintiffs' Counsel will address any objections in Plaintiffs' responsive submission on December 23, 2026.

**(3) The skill and efficiency of the attorneys involved**

Plaintiffs' Counsel are highly experienced attorneys with substantial experience prosecuting complex data privacy and data breach class actions. ECF 901-2, Exs. 3-5. That experience is reflected in the substantial recovery obtained, demonstrating that Plaintiffs' Counsel zealously pursued Plaintiffs' and the Settlement Class's interests. *See*, *e.g.*, *Oliver v. BMW of N. Am.*, *LLC*, 2021 WL 870662, at *10 (D.N.J. Mar. 8, 2021) (citing *AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of the Plaintiffs' Counsels' services to the class are the results obtained")).

Counsel has efficiently litigated this case for seven years, while avoiding duplication of effort and excessive time and cost expenditures. Cecchi Decl. ¶¶ 1-2, 9. Plaintiffs' Counsel have thus acted both skillfully and efficiently. The considerable activities of counsel prior to settlement, and indeed, the success of the settlement itself speaks to the skill and efficiency of counsel. *See generally AremisSoft*, 210 F.R.D. at 132 ("'[T]he single clearest factor reflecting the quality of Plaintiffs' Counsels' services to the class are the results obtained.'") (citation omitted). Also, no Objector has taken issue with the skill or efficiency of Plaintiffs' Counsel in securing this Settlement Agreement, nor could they. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1635648, at *5 (E.D. Pa. Apr. 5, 2018) ("No one has taken issue with the skill or efficiency of Plaintiffs' Counsel in securing this Settlement Agreement, nor could they. This factor weighs heavily in Plaintiffs' Counsel's favor."). Accordingly, this factor supports the proposed fee award.

**(4) The complexity and duration of the litigation**

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation." *GM Truck*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). This litigation has been pending for seven years, having been initially filed in July 2019. Although "Plaintiffs' claims faced legal hurdles and years of uncertainty," Plaintiffs' Counsel still "brought in a settlement that provides tangible benefits to the Class now." *See Oliver*, 2021 WL 870662, at *10. Settlements are favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial" just as they would have here if the parties had not settled as detailed in the Motion for Final Approval. *Talone v. Am. Osteopathic Ass'n*, 2018 WL 6318371, at *14 (D.N.J. Dec. 3, 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) (internal quotation marks omitted)); *Castro*, 2017 WL 4776626, at *3 (internal quotation marks omitted) ("[s]ettlement is favored under this factor if litigation is expected to be complex, expensive and time consuming.")). Ultimately, additional litigation efforts could still result in a recovery less than that achieved by the Settlement, or even nothing at all. Even if Plaintiffs would have recovered a large judgment at trial on behalf of Settlement Class Members, their actual recovery would likely be postponed for years. There is also the possibility that Plaintiffs would recover nothing. The Settlement secures a recovery for the Settlement Class now, rather than the "speculative promise of a larger payment years from now." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016). Thus, the fourth *Gunter* factor weighs in favor of approval.

**(5) The risk of nonpayment**

Plaintiffs' Counsel, who have litigated this case completely on contingency, have invested 10,198.90 hours of attorney time allocated to the Other Labs Track, *see* Cecchi Decl. ¶¶ 12-13,

Exhs. 3-5, while facing a risk of receiving nothing in compensation for their efforts. *See Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022) (citing *In re Merck & Co. Vytorin ERISA Litig.*, 2010 WL 547613, at *14) ("[T]he Court has already analyzed the risk of nonpayment (factor 5) by noting the various risks, including the risk of an unsuccessful trial or appeal, that would render Plaintiffs, and their contingency-fee based counsel unable to recover anything at all"); *see also Fulton-Green v. Accolade, Inc.*, 2019 WL 316722, at *13 (E.D. Pa. Sep. 24, 2019) ("Plaintiffs' Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable."); *Tavares v. S-L Distrib. Co.*, 2016 WL 1743268, at *11 (M.D. Pa. May 2, 2016) (citing *Gunter*, 327 F. Supp. 2d at 438) ("[C]ourts have noted that where plaintiffs' counsel faces a risk of nonpayment . . . that risk should be considered when assessing attorneys' fee awards.").

Plaintiffs also "faced significant risk at the beginning of the litigation," in that they "risked being unable to establish liability and causation or to achieve class certification under Rule 23 of the Federal Rules of Civil Procedure." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 553 F. Supp. 2d 442, 478 (E.D. Pa. 2008), *aff'd*, 582 F.3d 524 (3d Cir. 2009). Plaintiffs established that "the risks associated with establishing liability if litigation were to continue were substantial, and thus weighed in favor of approving the settlement. The Third Circuit has found that this risk of establishing liability is relevant to the analysis of whether there is a risk of nonpayment." *In re Fasteners Antitrust Litig.*, 2014 WL 296954, at *6 (E.D. Pa. Jan. 27, 2014) (citing *In re Rite Aid,* 396 F.3d at 304 (noting that analysis supporting risk of liability *Girsh* factor is relevant to risk of nonpayment *Gunter* factor)).

Despite the serious litigation risks, Plaintiffs' Counsel were able to forge a resolution that provides significant present benefits to the Settlement Class, including substantial monetary benefits. Thus, there is little doubt that Plaintiffs' Counsel undertook a significant risk here and the fee award, respectfully, should reflect that risk.

In addition, Plaintiffs' Counsel have advanced substantial costs of the litigation for court fees, travel expenses, mailing expenses, transcripts, expert costs, Special Master and Mediator costs, and a host of other items, *see, e.g.*, Cecchi Decl. Ex. 2, which would not be reimbursed absent a successful result. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). Accordingly, this factor also supports the proposed fee award.

**(6) The amount of time devoted to the case by Plaintiffs' counsel**

Plaintiffs' Counsel devoted 10,198.90 hours, through November 16, 2026, allocated to the Other Labs Track of this litigation.[2] *See* Cecchi Decl. ¶ 13. This represents a significant commitment of resources to this litigation and strongly supports the requested fee award. The time expended by Plaintiffs' Counsel has been necessary to effectively litigate this action and obtain this recovery.

Plaintiffs' Counsel spent time on the case necessary to the overall litigation and settlement of the case including, among other things:

- Investigating the facts and allegations in the Complaint and its subsequent amendments;

[2] Plaintiffs' Counsel anticipate that they will still expend many more hours to complete this action, including hours filing a motion for final approval, attending the final approval hearing, and communicating with Kroll, defense counsel, and Settlement Class Members through the completion of the Claims process.

- Drafting and filing of the Complaint and its subsequent amendments;
- Opposition briefing to two separate motions to dismiss;
- Working on and responding to multiple sets of written discovery;
- Extensive fact discovery, including reviewing hundreds of thousands of documents;
- Searching for and producing relevant documents;
- Negotiating ESI search terms;
- Conducting ESI searches of Plaintiffs' email inboxes;
- Negotiating Rule 30(b)(6) deposition topics;
- Conducting and defending numerous fact, corporate, and expert depositions;
- Briefing and arguing numerous discovery disputes;
- Identifying, retaining and working with numerous experts;
- Drafting class certification motions and briefing and drafting and opposing related *Daubert* motions
- Drafting mediation memoranda and participating in those mediations; and
- Working with the Settlement Administrator to prepare Notice and Claims documents in preparation of the Settlement.

**(7) The awards in similar cases**

As noted above, the Third Circuit has held in common fund cases, in which the percentage-of-recovery methodology is used, that fees between 19% and 45% of the settlement fund are reasonable. *GM Truck*, 55 F.3d at 822. Here, the requested award of attorneys' fees of $2,189,116.59 equals 34% of the Settlement Fund. Thus, the requested award is well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements. *See AMCA*, ECF No. 940 ¶ 14 & ECF No. 912 (approving fee award of 34% in Labcorp Track); *Kanefsky*, 2022 WL 1320827, at *11 (approving fee award equal to 29.2% of the

$10 million settlement fund); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 155 (approving fee award equal to 33 1/3% of $10.5 million settlement); *In re Merck*, 2010 WL 547613 at *14 (approving fees equal to 33.33% of $41.5 million settlement fund); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *13 (D.N.J. Sep. 10, 2009) (approving fees equal to 33 1/3 % of $13.5 million settlement fund)); *AremisSoft*, 210 F.R.D. at 133-34 (awarding 33⅓% of initial recovery); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *1, *4-6 (D.N.J. Nov. 9, 2005) (awarding 33 1/3%); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) ("stating that a review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value of one-third").

**(8) The value of benefits attributable to the efforts of Plaintiffs' Counsel relative to the efforts of other groups, such as government agencies conducting investigations**

No governmental agencies initiated litigation against Sonic related to this matter. The benefits to Settlement Class Members through this settlement were achieved solely from the efforts of Plaintiffs' Counsel, which militates in favor of the fee award. *See generally Halley*, 861 F.3d at 496 (factors for determining reasonableness of percentage-of- recovery fee award includes "'the value of benefits attributable to the efforts of Plaintiffs' Counsel relative to the efforts of other groups, such as government agencies conducting investigations'") (citation omitted); *In re Diet Drugs*, 582 F.3d at 544 (affirming district court finding that fee applicants played significant and essential role in creating value of settlement agreement; "this case differed from the typical antitrust or securities litigation . . . 'where government prosecutions frequently lay the groundwork for private litigation,' . . . . The [District] Court concluded that . . . Plaintiffs' Counsel had not relied on 'the government or other public agencies to do their work for them as has occurred in some cases.'").

**(9) The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained**

As noted above, the fee requested equals 34% of the common fund. Courts in the Third Circuit have found private contingency requests significantly higher to be reasonable. *See Kanefsky*, 2022 WL 1320827 at *11 ("The requested award of fees and expenses relative to the size of the recovery and constructive common fund is also in line with contingent fees that are routinely negotiated in the private marketplace.") (citing *In re Merck* 2010 WL 547613 at *12 ("the 33 1/3 % fee award requested reflects commonly negotiated fees in the private marketplace.")); *Remeron*, 2005 WL 3008808, at *16 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *Karcich v. Stuart (In re Ikon Off. Sols., Inc., Sec. Litig.)*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery")).

**ii. Lodestar Cross Check**

The Third Circuit has suggested that courts "cross-check" the percentage of recovery award against the "lodestar" that contributed to that recovery. *See Gunter*, 223 F.3d at 195 n.1. The case law counsels the use of a soft lodestar to cross-check the percentage of fund approach, not as a substitute for the percentage of fund approach. *See In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *14 (D.N.J. June 15, 2020) ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method.'") (citation omitted). In "cross-checking" a percentage-of-recovery award against counsel's lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "'mathematical precision'" or "'bean counting.'" *In re AT & T Corp.*, 455 F.3d at 169 n.6 (quoting *In re Rite-Aid Corp. Sec. Litig.*, 396 F.3d at 306); *accord In re Ins. Brokerage Antitrust Litig.*, 579

F.3d at 280 (cross-check involves "an abridged analysis" of lodestar). Indeed, the Third Circuit has cautioned that "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT & T Corp.*, 455 F.3d at 164; *accord Rite-Aid*, 396 F.3d at 307 ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method."). Courts "may rely on summaries submitted by counsel and need not review billing records." *Rite-Aid*, 396 F.3d at 306-07. In short, a lodestar cross-check serves merely as a rough, "back-of-the-envelope" yardstick to gauge the reasonableness of a percentage-of-the-recovery fee request.

Pursuant to this method, the Court initially evaluates: (1) the reasonableness of the hourly rate; and (2) whether the hours were reasonably expended. *See Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185, 1188 (3d Cir. 1985). The Court then multiplies the hours worked by the applicable hourly rates in order to calculate the lodestar. *Id.*

**(1) Plaintiffs' counsel's hourly rates are reasonable**

In setting the lodestar crosscheck amount, a court multiplies the number of hours worked on a client's case by a reasonable billing rate for such services in the given geographical area provided by a lawyer of comparable experience. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 280. "When performing this analysis, the Court 'should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter.'" *In re Philips/Magnavox TV Litig.*, 2012 WL 1677244, at *16 (D.N.J. May 14, 2012) (citing *In re Rite Aid*, 396 F.3d at 306). "Reasonable rates are determined by assessing the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Khanna v. Sokoloff*, 2017 WL 825215, at *3 (D.N.J. Mar. 2, 2017) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

Plaintiffs' Counsel's rates are their customary and standard billing rates. Cecchi Decl. ¶ 12, Exs 3-5. "The court has broad discretion in determining an appropriate hourly rate." *Khanna*, 2017 WL 825215 at *3 (citing *Cassagne v. Law Offs. of Weltman, Weinberg & Reis Co., LPA*, 2011 WL 5878379, at *2 (D.N.J. Nov. 23, 2011)). Plaintiffs' Counsel's hourly rates are consistent with the rates courts have found reasonable in other class actions. *See, e.g.*, *AMCA,* 19-md-2904 (D.N.J.) (JKS)(ADS), ECF Nos. 940 & 912-2 (approving partner hourly rates of $1,600, $1,450, and 1,300); *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, 2025 WL 3771284, at *22-23 (D.N.J. Dec. 31, 2025) (approving partner hourly rates of $1,300, $1,100, and $1,000); *Cohen v. Subaru of Am., Inc.,* No. 1:20-CV-08442-CPO-AMD (D.N.J. Dec. 10, 2024), ECF Nos. 244, 260 (approving hourly rates of up to $1,395); *Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2025 WL 1805498, at *2 (D.N.J. Apr. 25, 2025) (approving hourly rates of up to $1,300). Further, these rates are consistent with the rates deemed to be reasonable in data beach actions. *In re HealthEC LLC Data Breach Litig.*, No. 2:24-CV-00026 (D.N.J. Jan. 13, 2026), ECF Nos. 183, 185 (approving hourly rates of up to $1,600 in data breach litigation).

The hourly rates of each attorney and paralegal are appropriately tailored to the individual's level of seniority and experience. The highest hourly rates are limited to only those attorneys with the greatest expertise. *See* Cecchi Decl. Exh. 1, 6, 7; *see also Moore v. GMAC Mortg.*, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) ("A reasonable hourly rate reflects an attorney's experience and expertise, [thus] the rates for individual attorneys vary.").

The combined allocated lodestar of Plaintiffs' Counsel through November 16, 2026, is $7,302,222.80. *See* Cecchi Decl.¶ 13.

**(2) The number of hours Plaintiffs' counsel worked is reasonable**

The number of hours incurred by Plaintiffs' Counsel from the Other Labs track, 10,198.90, *id.*, was reasonable for a case of this type and size. Plaintiffs' Counsel vigorously litigated this case for seven years, and these hours were necessary to the overall litigation and settlement of this case.

**(3) Plaintiffs' counsel's fee results in a negative multiplier of 3.34, which is strong evidence that the fee is reasonable**

The lodestar cross-check ensures that a proposed fee award does not result in counsel being paid a fee "vastly in excess of what any lawyer could reasonably charge per hour." *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001). A lodestar multiplier of less than one indicates that counsel is receiving less than they would have received if they had been paid on an hourly basis. *Castro*, 2017 WL 4776626, at *9. Generally, a negative multiplier is strong evidence that the requested fees are reasonable. *E.g.*, *In re Valeant Pharm. Int'l, Inc. Third Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022); *Castro*, 2017 WL 4776626 at *9 (negative multiplier of .928 provides strong evidence of reasonableness); *In re N.J. Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *11 (D.N.J. Oct. 3, 2016) ("negative multiplier confirms the reasonableness of the requested fee award"); *accord In re Comcast Corp. Set-Top Television Boz Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) ("negative multiplier suggests that Plaintiff's fee request is reasonable"); *In re U.S. Steel Consol. Cases*, 2023 WL 11997192, at *2 (W.D. Pa. Mar. 21, 2023) ("[t]he fee awarded results in a negative lodestar multiplier of .81 which confirms the reasonableness of the requested fee"). Here, Plaintiffs' Counsel's requested fee award results in a negative lodestar multiplier of 3.34, which confirms its reasonableness.

## IV. PLAINTIFFS' COUNSEL'S COSTS AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Plaintiffs' Counsel requests an award of $144,191.47 in out-of-pocket litigation costs, both contributions to the litigation fund, as well as soft costs. Cecchi Decl. ¶¶ 14-22.

All of the expenses were reasonable and necessary for the successful prosecution of this case and should be approved. Plaintiffs' Counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Kanefsky*, 2022 WL 1320827 at *12 (citing *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d at 108). The expense categories are consistent with the types of expenses commonly approved by courts in the Third Circuit. *See id.* at *12; *see also In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016); *Acevedo v. BrightView Landscapes, LLC*, 2017 WL 4354809, at *20 (M.D. Pa. Oct. 2, 2017) (awarding Plaintiffs' Counsel's expenses of, e.g., filing fees, mediation fees, and legal research costs); *Glaberson v. Comcast Corp.*, 2015 WL 5582251, at *10 (E.D. Pa. Sept. 22, 2015) (awarding Plaintiffs' Counsel's expenses of, *e.g.*, expert witness fees and legal research costs); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (awarding Plaintiffs' Counsel's expenses of, e.g., "expert witness fees; mediation fees; . . . legal research; . . . and service of process"). Further, Plaintiffs' Counsel will incur additional expenses on this case going forward, including working with Kroll (the Settlement Administrator), communicating with Settlement Class Members, and attending the Final Approval Hearing.

## V. SERVICE AWARDS FOR CLASS REPRESENTATIVES

Plaintiffs' Counsel request the approval of a $5,000 Service Award for both Class Representatives (totaling $10,000) for their extensive time and effort pursuing the litigation on behalf of the Settlement Class. "Unlike the attorneys' fee analysis, a district court need not employ

factors to determine the amount of class representative awards." *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *12 (E.D. Pa. Oct. 28, 2022) (citing *Brady v. Air Line Pilots Ass'n*, 627 F. App'x 142, 146 (3d Cir. 2015)).

The Settlement Class Representatives' efforts included, among other things, engaging in telephone calls with Plaintiffs' Counsel regarding various issues that arose during the course of this seven-year litigation, responding to multiple sets of written discovery, conducting numerous searches for relevant documents in their possession, custody, or control, providing information about their electronic devices, and permitting invasive electronic searches of their email inboxes. Additionally, both Settlement Class Representatives prepared for and attended depositions, which necessitated taking off work.

The Service Awards requested, given the extensive amount of time devoted by Plaintiffs to the litigation, fits within awards approved by the Third Circuit. *See, e.g.*, *AMCA*, 19-md-2904 (D.N.J.) (JKS)(ADS), ECF No. 940 ¶ 15 (granting service awards of $5,000 per class representative); *Kanefsky*, 2022 WL 1320827, at *12 (finding the requested case contribution awards of $10,000 to each class representative to be fair and reasonable); *In re Innocoll Holdings*, 2022 WL 16533571, at *12-13 (awarding class representatives $10,000 each when they had prepared for and sat for depositions, searched for and produced documents, reviewed pleadings, and oversaw counsel from a fund of $2.755 million); *Elkin v. Walter Inv. Mgmt. Corp.*, 2018 WL 8951073, at *2 (E.D. Pa. Dec. 17, 2018) (awarding lead plaintiff $10,000 from settlement fund of $2.95 million); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (approving an award of $18,000 from a settlement fund of $8.1 million after finding that the lead plaintiff had reviewed and approved pleadings and regularly communicated with lead counsel); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 263 F.R.D. at 245 (awarding

representative plaintiffs incentive payments in amounts of $10,500 and $5,000, for a total of $115,000, finding those amounts to be "reasonable compensation considering the extent of the named plaintiffs' involvement and the sacrifice of their anonymity."); *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 168 (N.D.N.Y. 2009) (incentive awards in amount of $5,000 each are "within the range of awards found acceptable for class representatives.").

## VI. CONCLUSION

For the reasons set herein, Plaintiffs' Counsel respectfully request that the Court grant the request for an award of attorneys' fees and expenses, and for an award of Service Awards to the Settlement Class Representatives.

Dated: November 18, 2026

/s/ James E. Cecchi
JAMES E. CECCHI
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
*Lead Counsel for Plaintiffs*

Joseph J. DePalma
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel.: (973) 623-3000
jdepalma@litedepalma.com

Justin J. Hawal
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.: (440) 953-888
jhawal@dicellolevitt.com
*Other Labs Track Co-Lead Counsel*